IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30004 |
| | ) | (Chapter 11) |
| THE RUINS, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |

## **MOTION FOR JOINT ADMINISTRATION**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside"), and The Ruins, LLC ("Ruins") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 1015, and move this Honorable Court to jointly administer the three above-captioned proceedings, and in support thereof state as follows:

**I.      Introduction**

Several years ago, a Fargo-based real estate developer set out to address a palpable shortage in the Watertown, South Dakota housing market. In so doing, he and his team endeavored to create three separate apartment complexes, working closely with the local municipality to realize the benefits of tax increment financing, looked to a single bank to furnish additional financing, and

1

structured the projects in a manner that would synergize efforts by staggering work in such a fashion as to allow subcontractors to finish work on one job site and then almost immediately shift focus to the next job site. Three separate legal entities—Generations, Parkside, and Ruins—were created for these three separate-but-related efforts.

For various reasons—and first day motions seem an inappropriate forum for the castigation of third parties—all three legal entities are today petitioning for chapter 11 relief. The operations of two entities (Generations and Parkside) have been committed to the oversight of a state court receiver; the third entity is yet to complete construction but is far closer to the finish line than to the starting block. There is an abiding hope that the reorganization process will permit those former two efforts to thrive sans the inefficiency of receivership, while also allowing the latter project to obtain the financing requisite to complete construction and give the residents of Watertown, South Dakota a chic new housing option.

While there are slight differences reflected in the three Debtors' schedules, the major creditor composition of all three cases is nearly identical. Similarly, all three entities have the same principal. And it is not a coincidence that all three entities are seeking to reorganize on the same date, in the same court. So it appears eminently sensible, as these Debtors enter the chapter 11 process, for the cases to be jointly administered.

## II.     Standard

The Federal Rules of Bankruptcy Procedure openly contemplate the joint administration of affiliates' bankruptcy estates, permitting, *inter alia*:

> If a joint petition or two or more petitions are pending in the same court by or against … (4) a debtor and an affiliate, the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest.

Fed. R. Bankr. P. 1015(b).

### III. Argument: Joint Administration is Appropriate

While the Debtors do not instantly seek an order of substantive consolidation (though they certainly reserve their right to seek such relief at a later date), it is immediately apparent that the factual and legal issues in these three cases will furnish significant overlap. The Debtors are all apartment complexes (or, with Ruins, as soon-to-be apartment complex) in the same city. The Debtors are all impacted by the same actions, *vel non*, of an out-of-town lender, and will all have to confront similar resulting lender liability issues. The Debtors all share a principal and the same proposed reorganization counsel. And, upon information and belief, the largest creditor of each entity will be represented by the same attorney in all three cases, with logic dictating that other creditors—should they elect to engage counsel—will likely utilize a similar overlapping representation.

Joint administration has been previously afforded where multiple debtors are "related" entities that are "controlled" by a common individual. *In re Texas Health Enterprises, Inc.*, 246 B.R. 832, 833 (Bankr. E.D. Tex. 2000). *See also*, *In re City Homes III LLC*, 564 B.R. 827, 829 (Bankr. D. Md. 2017) ("The other Debtors were described as 'affiliates' with 'common ownership through CHI' and because of this interconnectedness, the Joint Administration Motion was granted on September 12, 2013 and the cases have since been collectively administered through the portal of City Homes III's Docket."). This reality is buttressed by Title 11 of the United States Code (the "Bankruptcy Code") defining "affiliate" so as to include entities that are "directly or indirectly own[ed], control[led], or h[eld] with power to vote" by a single entity. 11 U.S.C. § 101(2)(B). The provisions of Federal Rule of Bankruptcy Procedure 1015, in turn, permit the joint administration of affiliates' bankruptcy estates.

Here, the Debtors are all wholly owned by Jesse Craig. They each operate for the same purpose, in the same market. The composition of their creditor bases (secured and unsecured) is nearly (albeit not entirely) identical.[1] They have used many of the same subcontractors and vendors. They have worked with the same municipality. And, at the core of their troubles, they have each been reliant upon the same out-of-state bank to honor certain financing commitments made at the outset of the Debtors entry into the Watertown marketplace.

To be sure, it is not merely that the Debtors qualify for joint administration. It is, too, that to administer these cases separately would be to invite unnecessary duplication of myriad efforts, leading to the incursion of unnecessary legal fees and risking the waste of judicial resources. Judicial economy well favors the joint administration of their three cases.

### IV.     Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) jointly administer, but not substantively consolidate, these three cases; (ii) designate the matter of *In re Generations on 1st, LLC* as the lead case, in which all filings—excepting proofs of claim—shall be docketed; (iii) direct each Debtor to continue to maintain a separate claims register; and (iv) afford such other and further relief.

*[Signature on Following Page]*

---

[1] It does bear notation that the overlap between the two entities previously in receivership is greater than is the overlap with the entity yet to complete construction, with operation-side trade creditors being present in the former two cases but not the latter case.

Respectfully Submitted,

Dated: January 6, 2025 By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of January, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

5