IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | (*Joint Administration Motion Pending*) |

**MOTION TO REJECT MANAGEMENT AGREEMENT**

Come now Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively, the "Debtors," and each a "Debtor"), pursuant to Sections 365(a) of Title 11 of the United States Code (the "Bankruptcy Code"), as well as Federal Rule of Bankruptcy Procedure 6006, and move this Honorable Court for leave to reject the Receivership and Management Agreement (the "Agreement," a copy of which is attached hereto as Exhibit A")[1] between Red River State Bank ("RRSB" or the "Lender")) and HME Companies, LLC ("HME" or the "Receiver"), and in support thereof state as follows:

I.     **Introduction**

In the spirit of an unusual first day request: the Debtors believe this motion should be denied as moot. Neither Generations nor Parkside is party to the Agreement, the Agreement is not listed on Schedule G in either case, and it appears there is a wholesale absence of privity between

---

[1] The Agreement, as attached, is unsigned. The Debtors do not have a fully executed version of the document but, upon information and belief, do not believe the executed version to materially— if at all—differ from that appended hereto.

1

both Debtors and HME. But, courtesy of the slightly unusual factual background of these two cases, HME is currently working—pursuant to what appears to be a valid contract—as manager of the Debtors' respective apartment building properties. And, to whatever extent that contract may give rise to an obligation of the two estates, Generations and Parkside are eager to promptly reject the same and arrest the accrual of administrative expenses.

**II.     Standard**

The Bankruptcy Code allows, *inter alia*, "…the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

In assessing a request to reject an unexpired lease, courts traditionally look to the exercise, *vel non*, of the trustee's (or, as it is, debtor-in-possession's) "business judgment." *See, e.g.*, *In re Noranda Aluminum, Inc.*, 549 B.R. 725, 727–28 (Bankr. E.D. Mo. 2016) ("In the Eighth Circuit, the business judgment test is used 'in deciding whether to approve a trustee's motion to assume, reject, or assign an unexpired lease or executory contract, [which] entails a determination that the transaction is in the best interest of the estate.' ") (quoting *Four B. Corp. v. Food Barn Stores, Inc., (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n. 16 (8th Cir. 1997); citing *Crystalin, L.L.C. v. Selma Props., Inc. (In re Crystalin, L.L.C.)*, 293 B.R. 455, 463–64 (8th Cir. BAP 2003)).

As noted by the *Noranda* Court, "[t]he business judgment test 'is not an onerous one and does not require the bankruptcy court to place 'itself in the position of the trustee or debtor-in-possession and determining whether assuming the [lease] would be a good business decision or a bad one.' ' " *Noranda*, 549 B.R. at 728 (quoting *Crystalin*, 293 B.R. at 464 (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993))).

The test has two prongs. First, ". . .the assumption of a lease must be in the 'exercise of a sound business judgment' showing benefit to the estate." *Crystalin*, 293 B.R. at 464 (quoting *In re*

*Global Int'l Airways*, 35 B.R. 881, 886 (Bankr. W.D. Mo. 1983)). And, second, assuming a showing of sound business judgment is made, "the bankruptcy court should not interfere with the trustee or debtor-in-possession's business judgment 'except upon a finding of bad faith or gross abuse of their 'business discretion.' " *Crystalin*, 293 B.R. at 464 (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

### III.     Factual Background

Generations and Parkside are both single asset real estate entities that developed and now operate eponymous apartment complexes in Watertown, South Dakota. Much of the construction was financed with loans from RRSB and, as one might imagine with a trio of related bankruptcy cases now pending, there came a point in time when the Debtors and RRSB ceased to see eye-to-eye on certain core points.

The Debtors maintain RRSB made materially false representations about the bank's ability to extend credit, the Lender then used a series of ruses to forestall the honor of promises upon which the Debtors had relied, at least one bank officer endeavored to conceal wrongdoing through an ill-fated scheme, RRSB pressured insiders of the Debtors into becoming personal borrowers for reasons that remain perfectly unclear, and, when the Lender's liability became greater than could be ignored, RRSB went in search of technical defaults and then triggered an assignment of rents followed by receivership proceedings. The Lender, in turn, would almost assuredly paint a very different picture of the dealings between the parties, casting itself as either a victim of corrupt internal management or a naïve small town lender that ought not have ever solicited the Debtors'

principal to help address a then-extant housing shortage in a town nearly 200 miles from the bank's nearest branch.

The good news is that, for purposes of this motion, that complex web of dueling claims need not be unwoven or adjudicated on the merits. What matters instantly, rather, is that on October 1, 2024, a state court placed the buildings owned by Generations and Parkside into receivership, appointing HME to act as receiver. Pursuant to that order, it appears RRSB and HME entered into the Agreement, providing the economic terms upon which HME would manage the two properties. The contract provides for HME to manage both properties, to collect a management fee, to collect a receivership fee, to collect an onboarding fee, to collect a marketing services fee, to be reimbursed expenses, and to perform various services. *See* Agreement, Ex. A, *passim*.

Strangely, parts of the Agreement provide "Generations shall pay…," while other parts of the Agreement provide "Properties shall pay…" *Id.* at p. 11.[2] So while the Agreement is between RRSB and HME, it at least purports to cast at least some affirmative monetary obligations upon the Debtors.

Upon filing these two bankruptcy cases, and in accord with governing law, the Debtors made demand on HME for a turnover of the assets subject to the prior receivership. *See* DE #10 (in both cases). The Debtors have every confidence these demands will be met with prompt compliance and reasonably anticipate reclaiming possession of their titular assets in the coming days, with the Debtors' former property management company, CP Business Management, Inc.

---

[2] The Debtors do not have a copy of the agreement for Parkside but believe it to be substantively identical saving and excepting the interlineation of that Debtor's name in the place of Generations.

4

("CP"), set to resume management of the two properties.[3] In fact, for reasons that need not be litigated instantly, CP is still in possession of the majority (albeit not whole) of the security deposits placed by tenants of the two residential apartment buildings.

## IV. Argument: The Agreement Should Be Rejected

Generations and Parkside are both confident they do not wish to retain the services of HME as a property manager. Even putting aside quality-of-service issues, HME appears to have operated on an economic model punctuated by a litany of differing fee types, deriving not merely a standard management fee but, too, myriad nickel-and-dime entitlements. The Debtors are not parties to the Agreement and, as such, do not believe they are obligated to pay any post-petition fees for HME's services. But in the off-chance HME may later seek to contend otherwise, Generations and Parkside wish to swiftly reject the Agreement so as to stop the incursion of any administrative expense claims that may ensue.

The first question, under *Crystalin*, is sound business judgment. Certainly terminating a property management agreement, where the manager's role as receiver is ceasing by operation of law, is facially sensible. If the management agreement provided for below-market rates, or the provision of uniquely specialized services otherwise unavailable on the local market, there may be some debate to whether or not efforts ought to be made to preserve the arrangement in a non-

---

[3] A separate application to employ CP will be docketed herein. While CP is not a "professional" within the scope of Section 327, the terms of CP's compensation will constitute a use of estate property. The Debtors believe this may well be in the ordinary course, since apartment buildings necessarily engage and compensate property managers. But, in an abundance of caution, they will nonetheless file an application in accord with Section 363(b), so as to ensure the engagement is undertaken openly and with notice to all. This is particularly so since the Debtors acknowledge CP, while no doubt the best qualified property manager in Watertown, to also be an insider of the Debtors.

receivership capacity. But there is a better, less expensive alternative available in the Watertown marketplace, which already has a proven track record of successfully operating the two properties.

The Debtor is cognizant HME may endeavor to file a Section 503(b) claim for post-petition work as manager of the two properties. Should such come to pass, Generations and Parkside will, of course, holistically review the claim(s) and assess if there exist any bona fide grounds of objection thereto (starting, naturally, with whether or not a theory of privity even gives rise to the filing of a claim). But, in the interim, both Debtors want to ensure the temporal scope of any such claims be as limited as possible. There is, plainly, no reason to incur an administrative obligation to a property manager that is no longer managing property. And it is accordingly altogether sensible to reject the Agreement, to whatever extent the Debtors are bound thereby, and ensure any ensuing claims litigation not be inclusive of administrative obligations.

This sound exercise of business judgment leaves only the second question, under *Crystalin*, of whether there is bad faith or a gross abuse of discretion. The Debtors respectfully submit that neither such scenario is instantly extant. What the Debtors propose instantly is simply a return to the pre-receivership status quo. HME is not in an optimal position to work cooperatively with Generations and Parkside to assess the stabilization of rents, make further inroads with tenants, and oversee the two properties. It is not bad faith to excuse a receiver when the receivership ends, nor is it an abuse of discretion to do so. The Debtors are focused on operating these two properties for the benefit of all creditors; moving past HME is an important step to doing so.

**V.    Conclusion**

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter an order rejecting the Agreement; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

                                                Respectfully Submitted,

Dated: January 7, 2025           By:    /s/ Maurice B. VerStandig
                                                        Maurice B. VerStandig, Esq.
                                                        The Dakota Bankruptcy Firm
                                                        1630 1st Avenue N
                                                        Suite B PMB 24
                                                        Fargo, North Dakota 58102-4246
                                                        Phone: (701) 394-3215
                                                        mac@dakotabankruptcy.com
                                                        *Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 7th day of January, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

                                                            /s/ Maurice B. VerStandig
                                                            Maurice B. VerStandig