IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | Jointly Administered |

**LIMITED OPPOSITION TO RED RIVER STATE BANK'S MOTION
FOR ENTRY OF AN ORDER REQUIRING CERTAIN ENTITIES
TO PROVIDE INFORMATION PURSUANT TO BANKRUPTCY RULE 2004**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside") and The Ruins, LLC ("Ruins") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, in limited opposition to Red River State Bank's Motion for Entry of an Order Requiring Certain Entities to Provide Information Pursuant to Bankruptcy Rule 2004 (the "Motion," as found at DE #58) and state as follows:

**I.     Introduction**

Sunlight is a disinfectant and information is a good thing. Those may be two of the only things about which the Debtors and Red River State Bank ("RRSB") agree at this juncture, with the Debtors lamenting the bank's destruction of e-mail records and inability to furnish payment histories, as the bank laments discovery that was not fully pursued before state court litigation was stayed. And it necessarily follows that the Debtors do not take issue with RRSB using properly calibrated subpoenas to elicit records from third parties; Generations and Parkside have nothing to hide and, if they did, this Honorable Court would be a curious locale for them to have voluntarily

1

taken up temporary residence. But there should, too, be some constraints on the enormously broad swath of subpoenas RRSB seeks to issue.

In particular, with litigation now pending between the Debtors and RRSB, examinations under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") are inappropriate vehicles for the advancement of discovery that will—or even merely can—be pursued in the litigation. Similarly, while the reach of Rule 2004 against third parties is no doubt broader, there is still a necessary limit on the scope such that abusive and harassing ends may not be achieved through Rule 2004. While the Debtors do *not* suggest RRSB is pursuing Rule 2004 discovery for abusive or openly harassing ends, the Debtors do have a concern that the broad scope of certain requests may be perceived as such. And this concern is amplified by the fact that many of the suggested requests are directed either toward (i) insiders of the Debtors, whose cooperation will be instrumental to the success of these cases; or (ii) contractors of Ruins, whose goodwill will be necessary to a resumption of construction on the entity's apartment project.

For these reasons, and as extrapolated upon *infra*, the Debtors pose a limited objection to the Motion, asking this Honorable Court to (i) forbid discovery against the Debtors; (ii) limit discovery of sensitive financial information from third parties; and, otherwise (iii) permit the discovery to occur.[1]

---

[1] Parties do, of course, retain the right to object to subpoenas once issued. As such, while there are some more technical parade-of-horribles concerns that may animate from the proposed discovery—including the *carte blanche* requests for "all communications" without any saving proviso to exempt attorney/client communications—such is not addressed herein. The Debtors do not for a moment believe RRSB is endeavoring to subpoena privileged communications and the Debtors have no real concerns about such communications being produced in any event.

II.    **Argument: The Debtors' Examinations—and Those of Co-Debtors—Ought Not be Taken**

In fairness to RRSB, it merits mention that when the Motion was filed, there was no active litigation between and amongst the parties. The Motion was docketed on February 25, 2025; it would not be until the next day that the matter of *Generations, et al. v. Red River State Bank*, Case No. 25-07009 (Bankr. D.N.D. 2025) (the "Adversary Proceeding") was docketed.[2] And while it is thusly improper to surmise RRSB ought to have not brought the Motion in the first place, based on some bare hunch that litigation might soon ensue, it is nonetheless proper to posit that the relief available to RRSB has now been curtailed by virtue of the Adversary Proceeding.

Axiomatically, "'. . . once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004. . .'" *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); citing *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). *See also In re French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992) ("If a contested matter or adversary proceeding is pending, Rule 2004 should not be used, but, rather, the various discovery provisions of the Federal Rules of Civil Procedure should apply.").

As observed by the United States Bankruptcy Court for the Southern District of New York, of the rationale underlying this principle:

> The pending proceeding rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery, and reflects a concern that a party to litigation

---

[2] While likely not a coincidence—it seems both sets of parties likely took to lengthy drafting measures while engaged in behind-the-scenes negotiations—the proximate timing of the Adversary Proceeding being filed is also not directly correlative to the Motion being filed. Or, stated otherwise, the Debtors most certainly did not draft a 28-page complaint in direct response to the Motion being docketed; as the length of the pleading might suggest, the document had already been drafted—and was in circulation for comment and revisions—at the time the Motion was docketed.

could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit.

*SunEdison, Inc.*, 572 B.R. at 490 (citing *In re Glitnir banki hf.*, 2011 Bankr. LEXIS 3296, 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011); *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009); *Enron Corp.*, 281 B.R. at 840-41; *Bennett Funding Group*, 203 B.R. at 29-30).

Here, the Adversary Proceeding is now pending between and amongst the Debtors and RRSB. And while the foregoing case law does not *per se* mandate some nexus between the topic of an adversary proceeding and the topic of Rule 2004 discovery, such a nexus is nonetheless extant in this case, with both clearly concerning the loans made by RRSB to the Debtors (and, when RRSB ran into lending limit issues, nominees of the Debtors), the manner in which funds were disbursed, the parties to whom funds were disbursed, and the Debtors' obligations to repay those funds.

In light of this overlapping subject matter, and the "pending proceeding rule" spoken to by the various above-cited courts, it necessarily follows that the Rule 2004 examinations of the Debtors—and the other co-borrowers to whom RRSB made loans on which the Debtors are obligated or for which the Debtors pledged their assets as collateral—should not proceed. Matters related to those loans and the disposition of those funds are soundly within the scope of the Adversary Proceeding and may be accordingly addressed through discovery under Federal Rule of Civil Procedure 26, *et seq*.

Specifically, all of the parties to whom RRSB proposes to seek information in accord with Exhibit B-2 to the Motion, *except* Prevail, LLC and Town & Country Credit Union, appear to either be Debtors, co-borrowers, or entities that borrowed funds pursuant to notes secured by the

4

assets of one or more Debtors. And it is thusly urged that the discovery contemplated in Exhibit B-2 only be permitted as to Prevail, LLC and Town & Country Credit Union.

### III. Argument: Financial Discovery Should be Curtailed

The Debtors' objection to the taking of Rule 2004 examinations of other third parties is far more curtailed. While there is likely *some* argument these examinations might run afoul of the pending litigation rule, such seems a touch too topically remote to be interposed in good faith and, in any event, the Debtors do—very genuinely—welcome efforts that will tend to clear their good names of some of the more unsavory allegations being cast about by RRSB. These discovery requests, however, should be topically circumscribed, so as to avoid the requests entering the fray of harassing, abusive and vexatious matter—even if inadvertently.

As observed by the United States Bankruptcy Court for the District of Delaware, certain limitations bind Rule 2004 examinations—notwithstanding the (in)famous pronouncement of such efforts being permissible "fishing expeditions:" "There are, however, limits to the use of Rule 2004 examinations. 'It may not be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (quoting *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (quoting *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984))).

Here, Exhibit B-1 to the Motion proposes to seek from third parties "Records of payments received for services and materials provided including *but not limited to* copies of checks (front and back), wire transfer records, etc. . ." Motion, DE #58, at Exhibit B-1, pp. 24-25 (emphasis added). This may be fairly construed—even if not outwardly intended—to be inclusive of a request for bank statements and tax returns, which are, no doubt, "records of payments." Yet asking third parties to produce their bank statements and tax returns is, no doubt, to ask far too much. These

5

are inherently sensitive documents that should not be readily subjected to awkward production or the prying eyes of third parties. Nor are these documents that serve any readily-apparent purpose; merely asking for invoices, cancelled checks and wire records is, no doubt, well sufficient unto itself.

For these reasons, the Debtors ask that *any* subpoena issued to *any* party, pursuant to the Motion, be accompanied by language indicating the subpoena does *not* seek that party's bank records or tax returns.

### IV.   Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) deny the Motion in part; (ii) grant the Motion in part; and (iii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: March 12, 2025     By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig