UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>Generations on 1st, LLC,<br><br>      Debtor.<br><br>In re:<br><br>Parkside Place, LLC,<br><br>      Debtor. | Case No.: 25-30002<br><br>Chapter 11<br><br><br><br>Case No. 25-30003 |

**PLAN OBJECTION**

**(GENERATIONS ONLY)**

Red River State Bank (the "Bank") hereby objects to confirmation of the Chapter 11 Plan of Reorganization (the "Plan") [ECF 93] filed by Generations on 1st, LLC (the "Debtor" or "Generations"). The Bank respectfully submits that the Plan is presently unconfirmable and invites the Debtor to amend the Plan to resolve the following issues.

1. First, the Chapter 11 plans filed by the Debtor and its affiliate, Parkside Place, LLC ("Parkside") are nearly identical, but the financial condition of Generations and Parkside are very different. Historically, Generations has had a higher vacancy rate than Parkside, and it has struggled to cash flow. Although both debtors have paid the amounts due to the Bank under the Cash Collateral Stipulations in this case, this should not be taken as evidence that Generations is currently "cash flow positive." In reality, Generations has been negatively amortized during the pendency of this case – Generations has not even paid accrued interest.

If Generations cannot prove feasibility, the Plan will be unconfirmable under §1129(a)(11). The Debtor should provide cash flow projections as soon as possible to address this concern.

2. Second, the Plan clearly assumes Generations can "cram up," but the proposed treatment of the Bank in Section 3.2.1 fails to satisfy the "fair and equitable" requirements of 11 U.S.C. § 1129(b)(2)(A). See, e.g., Rake v. Wade, 508 U.S. 464, 472 n.8 (1993); Till v. SCS Credit Corp., 541 U.S. 465, 474 (2004); In re Topp, 75 F. 4th 959, 963 (8th Cir. 2023)(requiring an upward interest rate adjustment for post-default credit risk). Under applicable law, Debtor must reinstate at the contract rate or the prevailing rate of interest, with adequate compensation for additional credit risk. Id. It cannot reinstate based on an allegedly promised rate, nor can it use threats of "lender liability" to discount the Bank's plan treatment. The sale option in Section 4.3. of the Plan is also not "fair and equitable" under § 1129(b)(2)(A) because it does not preserve the Bank's credit bid rights under 11 U.S.C. 363§(k). RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 206 (2012). The Bank will submit alternative plan language to the Debtor to resolve these issues.

3. Third, the Plan improperly classifies general unsecured claims into three separate classes. For example, the Class 7 claim of Blacktail Investments, LLC ("Blacktail") has been "gerrymandered" to create an "impaired accepting class." 11 U.S.C. § 1129(a)(10). The Plan should be revised to create a single class of general unsecured claims and if Blacktail is statutory or non-statutory insider, it should be disregarded for voting purposes. U.S. Bank, N.A. v. Village at Lakeridge, LLC, 583 U.S. (2018).

4. Fourth, the Plan repeatedly prioritizes the interests of insiders over the Debtor's fiduciary duty to its creditors in this case. For example, the proposed treatment of existing equity interest holders in Section 3.2.8 of the Plan violates the absolute priority rule.

Additionally, Section 4.7 of the Plan would create a long-term injunction to shield non-debtor third parties, including insiders, from avoidance actions and other legitimate causes of actions (the "Third Party Injunction"). Without consent, the Third-Party Injunction renders the Plan unconfirmable under 11 U.S.C. § 1129(a)(1) or § 1129(a)(3). Harrington v. Purdue Pharma L.P. (In re Purdue Pharma), 603 U.S. 204, (2024). This provision will complicate confirmation in an already perilous case. To protect the estate and decrease the chances of liquidation, the Third Party Inunction should be removed from the Plan.

5. Similarly, 11 U.S.C. § 1129(a)(5) requires the Plan to specify who will manage and operate the reorganized debtor and to disclose the compensation to insiders for such services. As drafted, the Plan obscures the fact that insiders are currently charging above-market rates for the Debtor's management and charging inflated office expenses to the Debtor's estate. Because feasibility is at risk in the Plan, Debtor should identify an independent third-party management company and/or a management agreement should be negotiated on an arms-length basis. The Bank will submit alternative plan language to Debtor to resolve this issue.

6. Lastly, the Plan does not provide "adequate means of implementation," as required by 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). In particular, the Plan lacks adequate remedies for post-confirmation defaults. The Bank will submit alternative plan language to Debtor to resolve this issue.

For all the foregoing reasons, the Bank respectfully requests that the Court enter an Order denying confirmation of the Plan. Alternatively, Debtor should amend the Plan to resolve the foregoing issues.

Dated this 16th day of May, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
    Kesha L. Tanabe
    ktanabe@vogellaw.com
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    **ATTORNEYS FOR RED RIVER STATE BANK**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| In re: | Lead Case No.: 25-30003 |
|---|---|
| Parkside Place, LLC, | Chapter 11 |
| Debtor. | |

## CERTIFICATE OF SERVICE

    Kesha L. Tanabe hereby certifies that filing of this document caused service via CM/ECF upon all CM/ECF recipients.

Dated: May 16, 2025

                                               */s/ Kesha L. Tanabe*
                                               Kesha L. Tanabe