IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | Jointly Administered |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30004 |
| | ) | |
| THE RUINS, LLC | ) | |
| | ) | Not Jointly Administered |
| Debtor | ) | |
| _____ | ) | |

**DISCOVERY STATUS REPORT**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside") and The Ruins, LLC ("Ruins") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, pursuant to this Honorable Court's Notice of Telephonic Mid Discovery Status Conference, DE #129 in the jointly administered case, and report as follows:

While all three Debtors have issued written discovery to Red River State Bank ("RRSB"), responses thereto have not yet come due and, as such, the Debtors have no extant deficiency-centric grievances to express herein. As has been previously shared both formally and informally, it is the intent of the Debtors to receive written responses (including a document production) and to thereafter, in the ensuing two week period, take the deposition of one or more RRSB executives

1

and/or agents. Except as discussed *infra*, the Debtors have no reason to believe this course of action will not be feasible.

It had not been the Debtors' intent to file a substantive status report, insofar as the prompting order only called for such a filing if there exist any "concerns," DE #129 in the jointly administered cases. However, in light of RRSB's filings of even date, DE #134 in the jointly administered cases, the Debtors would be remiss to not briefly respond.

*First*, to whatever extent RRSB has used its filing to express discovery-centric grievances with the Debtors (as opposed to with related third parties), such is enormously disappointing. The concerns raised by RRSB are not ones previously shared in a post-production good faith discussion and, in candor, took the Debtors by surprise. All three Debtors are committed to honoring their discovery obligations and have striven to do so; to the extent the bank believes there has been a shortcoming, such assuredly could have been expressed in a less-public medium.

*Second*, RRSB makes note that part—but not all—of the Debtors' document production bore the Bates stamps of insiders, from their document production. This was not an accident but, rather, the byproduct of internal deliberations amongst counsel for the Debtors. To the extent certain documents were obtained by the Debtors *only* in the form they had been produced by insiders, undersigned counsel made a decision to not remove the Bates stamps from those records because such would (i) constitute the alteration of documents from the form in which they are held by the Debtors; and (ii) would needlessly create a deception of "fresh" or "additional" documents being produced, when all implicated parties are assuredly best served by readily being able to recognize which parts of the production are—and which parts are not—redundant to those produced by insiders.

2

*Third*, and most concerningly: RRSB has intimated in its filing that it will not be producing, to the Debtors, documents received via subpoena from third parties. It appears to be RRSB's rationale that (i) the Debtors ought to already have these records; (ii) RRSB ought not have had to expend resources subpoenaing these records; and (iii) it is inequitable for the Debtors to enjoy the spoils of RRSB's efforts and resources.

For want of ambiguity, if RRSB takes this position and withholds subpoenaed records, the Debtors will seek substantive, appropriately-tailored sanctions. Each Debtor has issued a document request, to RRSB, for all records obtained via third party subpoena.[1] It is, quite genuinely, difficult to fathom how this request could give rise to a good faith objection. And if RRSB declines to produce records in response to this request (which, to be sure, RRSB still has several weeks to do), such will almost assuredly be without proper justification.

More broadly, these are cases where the Debtors have observed—from the outset—that RRSB appears to be playing an elegant form of "keep away" with pertinent records. The bank has not only failed to voluntarily produce historic payment and disbursement records but, indeed, has now shown the temerity to seek stay relief, against the Ruins, without producing such records, notwithstanding the mandate of Local Rule 4001-2(A). This is, at irreducible minimum, deeply suspicious. It simply does not make sense for a regulated financial institution to be so closely and zealously guarding records that ought to be innocuous in nature—whether they be the institution's own loan histories or those records obtained from third parties via subpoena.

The prevailing norm is for subpoenaed records to be contemporaneously produced to an opposing party upon receipt. This is a norm, anecdotally, that is being closely followed in a

---

[1] There are actually two document requests from each Debtor; one covering subpoenas issued in these bankruptcy proceedings and one covering subpoenas issued in prior state court proceedings.

3

contemporaneous, unrelated and subpoena-heavy case pending in this Honorable Court. That RRSB has elected to shirk this norm is concerning. If RRSB subsequently refuses—as threatened in its status report—to hand over such records in response to a now-pending request under Federal Rule of Civil Procedure 34, such will speak volumes of the bank's modus operandi whilst also running afoul of the rules governing discovery. And the Debtors wish to be express, as far in advance as possible (indeed, scantly an hour after the status report was filed), that such a maneuver would be difficult to confront with anything shy of the gravest skepticism that these are bankruptcy cases beget by a bank's tortious conduct and being stymied by that same bank's gamesmanship.

Respectfully Submitted,

Dated: July 30, 2025       By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

4