UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>GENERATIONS ON 1ST, LLC,<br><br>Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>PARKSIDE PLACE, LLC,<br><br>Debtor. | Case No.: 25-30003<br><br>Chapter 11 |

**OBJECTION OF RED RIVER STATE BANK TO DEBTORS'
MOTIONS FOR LEAVE TO USE CASH COLLATERAL**

### INTRODUCTION

Red River State Bank ("RRSB"), by and through the undersigned counsel, hereby objects (the "Objection") to the Third Motion for Leave to Use Cash Collateral (the "Motion") filed by Debtor Generations on 1st, LLC ("Generations") and Debtor Parkside Place, LLC ("Parkside")(collectively, the "Debtors"). ECF No. 137. In support, RRSB states as follows:

### BACKGROUND

**I.  Generations Collateral**

RRSB and Generations are parties to the following Promissory Notes:

   a.  Promissory Note dated March 15, 2021, in the original principal sum of $1,565,200.00 ("First Generations Note"). The maturity date of the First Generations Note was March 15, 2023. Generations ECF No. Claim 1 Part 2, Ex. A.

   b.  Promissory Note dated September 14, 2021, in the original principal sum of $2,976,430.98 ("Second Generations Note"). The maturity date of the

    Second Generations Note was March 31, 2022.  Generations ECF No. Claim 1 Part 2, Ex. B.

c.    Promissory Note dated October 14, 2021, in the original principal sum of $1,094,025.15 ("Third Generations Note").  The maturity date of the Third Generations Note was March 31, 2022.  Generations ECF No. Claim 1 Part 2, Ex. C.

d.    Promissory Note dated November 9, 2021, in the original principal sum of $424,259.84 ("Fourth Generations Note"). The maturity date of the Fourth Generations Note was March 31, 2022.  Generations ECF No. Claim 1 Part 2, Ex. D.

e.    Promissory Note dated December 8, 2021, in the original principal sum of $843,168.59 ("Fifth Generations Note").  The original maturity date of the Fifth Generations Note was March 31, 2022.  Generations ECF No. Claim 1 Part 2, Ex. E.

f.    Promissory Note dated January 5, 2022, in the original principal sum of $653,729.65 ("Sixth Generations Note").  The original maturity date of the Sixth Generations Note was December 31, 2022.  Generations ECF No. Claim 1 Part 2, Ex. F.

g.    Promissory Note dated February 3, 2022, in the original principal sum of $274,043.60 ("Seventh Generations Note").  The original maturity date of the Seventh Generations Note was December 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. G.

h.    Promissory Note dated April 17, 2023, in the original principal sum of $8,100,000.00 ("Eighth Generations Note"). The original maturity date of the Eighth Generations Note is December 1, 2026.  Generations ECF No. Claim 1 Part 2, Ex. H.

i.    Promissory Note dated April 17, 2023, in the original principal sum of $561,365.10 ("Ninth Generations Note"). The original maturity date of the Ninth Generations Note was March 31, 2023.  Generations ECF No. Claim 1 Part 2, Ex. I.

(hereinafter, collectively, the "Generations Notes").

To secure payment on the Generations Notes, Generations made in favor of, executed, and delivered to RRSB a Construction Mortgage - One Hundred Eighty Day Redemption (the "First RRSB Mortgage") on the following-described real property:

> Generations on First Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
>
> Street Address:        26 1st Ave. SW, Watertown, SD 57201
>
> Tax ID:             9580

(hereinafter, the "Generations Real Property"). The First RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 7262 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 3, 2021, at 10:09 a.m. Generations ECF No. Claim 1 Part 2, Ex. Q.

On or about April 17, 2023, as additional security for Generations Notes, Generations made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "Generations AOR") with respect to the Generations Real Property. The Generations AOR was properly executed, acknowledged, and recorded in Book 992 on Page 154 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on May 5, 2023, at 10:12 a.m. Generations ECF No. Claim 1 Part 2, Ex. S. RRBS began enforcement of its assignment of rents set forth in both the RRSB Mortgage and the Generations AOR in February 2024 by sending notice to Generations and to all known tenants of the Generations Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the Generations Real Property via an Order Appointing Receiver in the state court action of *RRSB v. Generations et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota. Generations ECF No. Claim 1 Part 2, Ex. T.

3

**II.   Parkside Collateral**

RRSB and Parkside are parties to a Promissory Note dated as of December 13, 2021, in the original principal amount of $4,2000,000 (the "Parkside Note"). Parkside Proof of Claim No. 1, Part 2, Ex. A. To secure payment on the Parkside Note, Parkside made in favor of, executed, and delivered to RRSB a Mortgage Collateral Real Estate Mortgage One Hundred Eighty Day Redemption (the "Parkside Mortgage") on the following-described real property:

> Parkside Place Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
>
> Street Address:     82nd St. NE, Watertown, SD 57201
>
> Tax ID:             9358

(hereinafter, the "Parkside Real Property").  The Parkside Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 8073 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:11 a.m.  Parkside ECF No. Claim 1 Part 2, Ex. I.

On or about December 13, 2021, as additional security for Parkside Note, Parkside made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "Parkside AOR") with respect to the Parkside Real Property.  The Parkside AOR was properly executed, acknowledged, and recorded in Book 990 on Page 8076 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:14 a.m.  Parkside ECF No. Claim 1 Part 2, Ex. J. RRBS began enforcement of its assignment of rents set forth in both the Parkside Mortgage and the Parkside AOR in February 2024 by sending notice to Parkside and to all known tenants of the Parkside Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the

4

Parkside Real Property via an Order Appointing Receiver in the state court action of *RRSB v. Parkside et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota. Parkside ECF No. Claim 1 Part 2, Ex. K.

The Parkside Mortgage also secures the following promissory notes executed and delivered by Mulinda Craig to RRSB:

   a. Promissory Note dated April 26, 2021 in the principal sum of $1,477,500.00 ("First Mulinda Note"). The original maturity date of the First Mulinda Note was December 15, 2022.

   b. Promissory Note dated May 27, 2021 in the principal sum of $1,321,100.00 ("Second Mulinda Note"). The original maturity date of the Second Mulinda Note was December 15, 2022.

   c. Promissory Note dated June 22, 2021 in the principal sum of $1,652,500.00 ("Third Mulinda Note"). The original maturity date of the Third Mulinda Note was December 15, 2024.

   d. The First Mulinda Note, the Second Mulinda Note, and the Third Mulinda Note are hereinafter referred to collectively as the "Mulinda Notes.

(collectively, the "Mulinda Notes"). True and correct copies of the Mulinda Notes are attached to Parkside Proof of Claim No. 1, Part 2, Ex. B-D.

## LAW AND ARGUMENT

Under Section 363, a debtor in possession may only use cash collateral: (a) with the consent of the secured creditor, or (b), after notice and a hearing, through order of the court. 11 U.S.C. § 363(c)(2). Because RRSB has not consented beyond August 28, 2025, Debtors may only use cash collateral "in accordance with the provisions of" Section 363. Debtors admit Section 363 requires it to pay RRSB "adequate protection" for the use of cash collateral in which RRSB possesses an interest. *See* 11 U.S.C. § 363(e).

5

In turn, Section 361 provides three alternative means for providing adequate protection. *In re Martin*, 761 F.2d 472, 474, 476 (8th Cir. 1985). Adequate protection may be provided by:

> (1) Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) Granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

What constitutes adequate protection for use of cash collateral must be determined on a case-by-case basis. *In re Martin*, at 476-77. To encourage reorganization, the courts must be flexible in applying the adequate protection standard. *Id*. This flexibility, however, must not operate to the detriment of the secured creditor's interest. *Id.* In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *Id.* at 476-77. Furthermore, if a secured creditor holds both a mortgage securing

6

debt on property and a perfected security interest in rents derived from the property, like RRSB does in this case, such creditor has two distinct and constitutionally-protected property interests which must be considered and adequately protected as a condition of permitting a debtor-in-possession to use such creditor's post-petition rents as cash collateral. *See In re Apple Tree Partners, L.P.*, 131 B.R. 380, 400 (Bankr. W.D. Tenn. 1991).

In this case, Debtors argue that Creditor is adequately protected if the Creditor is: (i) given automatically perfected replacement liens to the extent of any diminution; (ii) paid $14,500.00 per month by Parkside; and (iii) paid $25,000.00 per month by Generations. *See* Doc. 137 at p. 2. Debtors' proposal simply fails to adequately protect RRSB.

First, Debtors' proposal to give Creditor replacement liens provides no protection whatsoever if the Debtors are permitted to spend down RRSB's post-petition rents under a cash collateral order. Recall, RRSB's claims are secured by prepetition liens on all Parkside and Generations Real Property and AOR. Pursuant to § 552(b), RRSB already has a perfected security interest in post-petition rents. Unless the Debtors intended to offer new unencumbered assets to RRSB, such pledging the Debtors' Chapter 5 claims, the Debtors have no new collateral to which a replacement lien could attach. Put simply, an offer of "replacement liens" does not give RRSB something that it doesn't already have and thus, it cannot constitute adequate protection to RRSB for allowing the Debtors to spend down its cash collateral during the pendency of this case.

Second, Generations' and Parkside's proposed cash payments to RRSB only are wholly inadequate. The Generations Notes are currently accruing interest at a rate of $1,512.92 per diem. In other words, to pay just interest as it accrues on the Generations Notes during the pendency of this case, Generations would have to pay RRSB a total of $45,387.60 per month.

7

Pursuant to stipulation, Generations has paid $35,000 per month in interest on the Generations Notes. [ECF No. 140] By contrast, the Motion seeks to pay $25,000 per month. Debtor bears the burden of providing adequate protection yet it has provided absolutely no explanation or support for why it should be permitted to pay $25,000 per month as adequate protection to RRSB. If Generations was permitted to do so, the outstanding balance of the Generations Notes would increase by at least $20,000 per month. By simple math, the court could ascertain the extent to which RRSB would be damaged by the pendency of these cases. If a debtor in possession can only "cash flow" by negatively amortizing its debt during the pendency of its Chapter 11 bankruptcy case, RRSB respectfully submits that such debtor has failed to "insure that the secured creditor receives the value for which he bargained," as the Eighth Circuit clearly required for a finding of adequate protection. *In re Martin*, at 474.

Parkside's proposal to pay $14,500.00 per month to Creditor also fails to adequately protect Creditor. The Parkside Note is currently accruing interest at a rate of $459.12 per diem. The First, Second and Third Mulinda Notes are currently accruing interest at a rate of $159.14 per diem, $235.26 per diem, and $294.28 per diem, respectively. For Parkside to pay interest only as it accrues on the Parkside and Mulinda Notes, Debtor would have to pay RRSB $1,147.80 per diem, or $34,434 in interest per month during the pendency of its case. Pursuant to stipulation only, Parkside has paid only $14,500 per month in adequate protection to RRSB. [ECF No. 140] But absent the consent of the secured lender, this payment does not constitute adequate protection as a matter of law. Again, RRSB respectfully submits that the pendency of the Parkside case will increase RRSB's losses because the loan balances are increasing due to Parkside's failure to pay the full amount of interest as it comes due. This is not indubitable equivalence. On the contrary, by simple math, RRSB can demonstrate the increased risk of

8

loss associated with approving Debtors' proposed monthly payments. Accordingly, Parkside has also failed to meet its burden to prove adequate protection and its Motion should be denied.

Third, RRSB is also concerned that its cash collateral has been diverted to make excessive post-petition payments to insiders during the pendency of these cases. In the bankruptcy context, adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property. *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985). For example, the most recent MOR for the month of July [ECF No. 155] indicates that the Generations estate paid a total of $9,666.44, which is approximately 12% of gross income, as "management" expenses to insiders. The most recent MOR for the month of July [ECF No. 156] indicates that the Generations estate paid $5,919.68, which is approximately 14% of gross income, as "management" expenses to insiders. These charges are more than double the amount paid to the prepetition receiver for comparable property management services. Additionally, the inclusion of "offsite" rent and utilities raises questions about whether the insiders are allocating part of their general overhead to the Debtors' estates each month. Counsel for RRSB has asked for clarification about the management fees. To date, the Debtors have not provided any clarification about the management fees, nor have the insiders agreed to reduce their management fees to a market rate. Excessive payments to insiders constitute a dollar-for-dollar reduction in the value of RRSB's collateral. Without adequate controls for such losses, RRSB further submits the Motions should be denied.

## CONCLUSION

This Court should deny the Motions because Debtors have failed to offer RRSB adequate protection for the use of its post-petition rents. Debtors' proposed payments are not

9

sufficient to pay interest only, let alone full debt service, on the Parkside, Generations or Mulinda Notes. Allowing the Debtors to negatively amortize such notes during the pendency of these bankruptcy cases will increase its risk of financial loss by tens of thousands of dollars per month. Debtors have also permitted excessive post-petition payments to insiders out of RRSB's cash collateral, causing a dollar-for-dollar reduction in its cash collateral with no corresponding benefit to the estates. For all the foregoing reasons, Debtors have failed to meet their burden to prove that such payments constitute adequate protection in this case. RRSB respectfully requests the denial of Debtors' Motions on an interim or final basis.

Dated: August 20, 2025.

**VOGEL LAW FIRM**

BY: /s/ *Kesha L. Tanabe*
Kesha L. Tanabe (#0387520)
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK

10

**Re:**   **Generations On 1st LLC**
       **Case No. 25-30002**

       **Parkside Place, LLC**
       **Case No. 25-30003**

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | ) | |
| | ) SS | **CERTIFICATE OF SERVICE** |
| COUNTY OF CASS | ) | |

On August 20, 2025, the undersigned caused the following document(s):

**OBJECTION OF RED RIVER STATE BANK TO DEBTORS' THIRD MOTIONS FOR LEAVE TO USE CASH COLLATERAL**

to be served electronically to the following:

*ALL ECF Participants.*


                                        */s/ Kesha L. Tanabe*
                                        Kesha L. Tanabe