# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>    Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place, LLC,<br><br>    Debtor. | Case No.: 25-30003<br><br>(Chapter 11)<br><br>(Jointly Administered) |

### NOTICE OF MOTION AND MOTION TO TERMINATE EXCLUSIVITY PERIOD OF DEBTORS GENERATIONS AND PARKSIDE

**TO:** The Debtor, the Debtor's attorney, the United States Trustee, and other entities specified in the applicable Federal Rules of Bankruptcy Procedure:

NOTICE IS HEREBY GIVEN that Red River State Bank ("RRSB") has filed a Motion to Terminate the Exclusivity Period, a copy of which is herewith served upon you.

Written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 1st Avenue North, Suite 210, Fargo ND 58102-4932, with a copy mailed to counsel for RRSB, whose name and address is listed below, within fourteen (14) days from the date of the mailing of this Notice. Any objections not filed and served may be deemed waived. If a hearing on the motion is scheduled, you will be provided notice. UNLESS A RESPONSE TO THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

Dated: September 24, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
  Kesha L. Tanabe (#0387520)
  ktanabe@vogellaw.com
  Jack Buck (#09539)
  jbuck@vogellaw.com
  218 NP Avenue
  PO Box 1389
  Fargo, ND  58107-1389
  701.237.6983
  ATTORNEYS FOR RED RIVER STATE
  BANK

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2025, a copy of the foregoing was served electronically upon filing via CM/ECF.

  */s/ Kesha L. Tanabe*
BY: Kesha L. Tanabe (#0387520)

2

4924-1991-3323 v.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 25-30002 |
|---|---|
| Generations on 1st LLC, | Chapter 11 |
| Debtor. | |
| In Re: | Case No.: 25-30003 |
| | (Chapter 11) |
| Parkside Place, LLC, | |
| Debtor. | (Jointly Administered) |

**MOTION TO TERMINATE EXCLUSIVITY**

Red River State Bank ("RRSB"), by and through counsel, seeks an order, pursuant to 11 U.S.C. § 1121(d)(1) and Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure, terminating the Debtors' exclusive right to propose a plan of reorganization in the above-captioned cases (the "Motion"). In support of its Motion, RRSB respectfully states as follows:

1. Generations on 1st, LLC ("Generations") and Parkside Place LLC ("Parkside") (collectively, the "Debtors") commenced their Chapter 11 cases by filing voluntary petitions on January 6, 2025. [ECF 1]

2. By operation of Section 1121(b), the Debtors each had the exclusive right to file a plan of reorganization in their respective cases for the first 120 days after the petition date (the "Exclusivity Period").

3. On May 5, 2025, the Debtors filed a Motion to Extend the Exclusivity Period [ECF 95] (the "Motion to Extend Exclusivity").

3

4924-1991-3323 v.1

4. On May 6, 2025, Generations filed a plan of reorganization [ECF 93] (the "Generations Plan"). RRSB filed an objection to the Generations Plan on May 16, 2025 [ECF 107] (the "Generations Objection").

5. On May 6, 2025, Parkside also filed a plan of reorganization [ECF 94] (the "Parkside Plan"). RRSB filed an objection to the Parkside Plan [ECF 106] on May 16, 2025 (the "Parkside Objection").

6. Objections to the Motion to Extend Exclusivity were due on May 20, 2025. Based upon Debtors' representation that they would negotiate in good faith to resolve the Generations and Parkside Objections, RRSB did not object.

7. The Court entered an order granting the Motion to Extend Exclusivity on May 23, 2025 [ECF 108]. As a result, the Exclusivity Period currently expires on January 1, 2026.

8. As of the date hereof, Debtors have not filed a response to the Generations or Parkside Objections nor have they amended the Generations or Parkside Plans.

9. Specifically, the following issues outlined in the Parkside Objection remain wholly unresolved:

   a. RRSB has not consented to the proposed treatment of its claim in Section 3.2.1 of the Plan. The proposed treatment also fails to satisfy the "fair and equitable" requirements of 11 U.S.C. § 1129(b)(2)(A).

   b. RRSB objects to Parkside's characterization of RRSB and its claim in Section 3.2.1 of the Plan.

   c. The Plan, as drafted, fails to provide any payment for the Mulinda Notes (as defined in the Affidavit of Charles Aarestad) [ECF 167]. RRSB has not received any payments on the Mulinda Notes since April 17, 2023.

4

d. The proposed treatment of existing equity interest holders in Section 3.2.8 of the Plan violates the absolute priority rule.

e. 11 U.S.C. § 1129(a)(5) requires the Plan to specify who will manage and operate the reorganized debtor and disclose the compensation that will be paid to insiders for such services. In Parkside's case, the Plan should identify an independent third-party management company, and a management agreement should be negotiated on an arms-length basis.

f. Section 4.7 of the Plan would create a long-term injunction to shield non-debtor third parties, including insiders, from avoidance actions and other legitimate causes of actions (the "Third Party Injunction"). Without consent, the Third-Party Injunction renders the Plan unconfirmable under 11 U.S.C. § 1129(a)(1) or § 1129(a)(3).

g. The sale option described in Section 4.3 of the Plan is not "fair and equitable" under § 1129(b)(2)(A) because it does not preserve RRSB's credit bid rights under 11 U.S.C. § 363(k).

h. The Plan unjustifiably classifies general unsecured claims into three different classes, a clear attempt to gerrymander an impaired accepting class.

i. The Plan does not provide "adequate means of implementation," as required by 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). In particular, the Plan lacks adequate remedies for post-confirmation defaults.

j. The Plan should provide cash flow projections to prove the Plan is feasible and subsequent liquidation or reorganization will not be inevitable in this

4924-1991-3323 v.1

case. If Parkside fails to do so, the Plan will be unconfirmable under §1129(a)(11).

See ECF 106.

10. Similarly, Generations has not responded to any of the following issues outlined in the Generations Objection:

    a. Generations has been negatively amortized during the pendency of this case – Generations has not even paid accrued interest. If Generations cannot prove feasibility, the Plan will be unconfirmable under §1129(a)(11). Generations should provide cash flow projections as soon as possible to address this concern.

    b. The Plan clearly assumes Generations can "cram up," but the proposed treatment of RRSB in Section 3.2.1 fails to satisfy the "fair and equitable" requirements of 11 U.S.C. § 1129(b)(2)(A). Generations must reinstate at the contract rate or the prevailing rate of interest, with adequate compensation for additional credit risk. Generations cannot reinstate based on an allegedly promised rate, nor can it use threats of "lender liability" to discount RRSB's plan treatment. The sale option in Section 4.3 of the Plan is also not "fair and equitable" under § 1129(b)(2)(A) because it does not preserve RRSB's credit bid rights under 11 U.S.C. § 363(k).

    c. The Plan, as drafted, fails to provide any payment for the Mulinda Notes (as defined in the Affidavit of Charles Aarestad) [ECF 167]. RRSB has not received any payments on the Mulinda Notes since April 17, 2023.

6

    d. The Plan improperly classifies general unsecured claims into three separate classes. The Plan should be revised to create a single class of general unsecured claims and if Blacktail Investments, LLC is a statutory or non-statutory insider, it should be disregarded for voting purposes.

    e. The Plan repeatedly prioritizes the interests of insiders over Generations' fiduciary duty to its creditors in this case. Additionally, Section 4.7 of the Plan would create a Third-Party Injunction. Without consent, the Third-Party Injunction renders the Plan unconfirmable under 11 U.S.C. § 1129(a)(1) or § 1129(a)(3). To protect the estate and decrease the chances of liquidation, the Third-Party Injunction should be removed from the Plan.

    f. 11 U.S.C. § 1129(a)(5) requires the Plan to specify who will manage and operate the reorganized debtor and to disclose the compensation to insiders for such services. As drafted, the Plan obscures the fact that insiders are currently charging above-market rates for Generations' management and charging inflated office expenses to Generations' estate. Because feasibility is at risk in the Plan, Generations should identify an independent third-party management company and/or a management agreement should be negotiated on an arms-length basis.

    g. The Plan does not provide "adequate means of implementation," as required by 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). In particular, the Plan lacks adequate remedies for post-confirmation defaults.

See ECF 107.

4924-1991-3323 v.1

11. As of the date of filing, the Exclusivity Period has been pending for over 260 days. During this time, Debtors have used the Exclusivity Period to stonewall major stakeholders in the case. RRSB has sent multiple redlines with proposed solutions and shared financial projections and amortization schedules to discuss important confirmation issues like feasibility. To date, Debtors have not responded with a redlined plan, amended plan or pro formas.

12. For all the foregoing reasons, RRSB respectfully requests entry of an order terminating the Exclusivity Period to allow other stakeholders in the case to file a plan of reorganization.

Dated: September 24, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
    Kesha L. Tanabe (#0387520)
    ktanabe@vogellaw.com
    Jack Buck (#09539)
    jbuck@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR RED RIVER STATE BANK

4924-1991-3323 v.1

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>    Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place, LLC,<br><br>    Debtor. | Case No.: 25-30003<br><br>(Chapter 11)<br><br>(Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TERMINATE EXCLUSIVITY PERIOD OF DEBTORS GENERATIONS AND PARKSIDE**

Red River State Bank ("RRSB") submits this memorandum of law in support of its motion pursuant to 11 U.S.C. § 1121(d)(1) to terminate the Debtors' exclusive right to propose a plan of reorganization in the above-captioned cases (the "Motion"). Parkside Place, LLC ("Parkside") and Generations on 1st LLC ("Generations")(collectively, the "Debtors") have had the exclusive right to file a plan for more than 260 days. At this time, plan negotiations are non-existent and there is no evidence of forward movement toward confirmation in these cases. Meanwhile, the secured debt is negatively amortized and interest continues to accrue on RRSB's secured claim. Termination of the Exclusivity Period (defined below) is necessary to move these cases toward completion.

## JURISDICTION

This is a core matter pursuant to 28 U.S.C. § 157(b)(2), and the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

9

4924-1991-3323 v.1

**LAW AND ARGUMENT**

As a general rule, Debtors have the exclusive right to file a plan of reorganization for the first 120 days of a Chapter 11 case (the "Exclusivity Period"). 11 U.S.C. § 1121(b). However, the Code recognizes that terminating or reducing the Exclusivity Period may be appropriate in certain cases. For example, Section 1121(c) expressly permits another party in interest to file a plan if the Debtor fails to produce a plan that has been accepted by creditors within the first 180 days of a Chapter 11 case. Similarly, Section 1121(d)(1) permits the Court to modify the Exclusivity Period "for cause."

Section 1121(d) does not define what constitutes "cause" to increase or decrease the duration of the Exclusivity Period. However, the Eighth Circuit B.A.P. has provided factors to be considered to determine whether cause exists under Section 1121(d):

1. the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure;

2. the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information;

3. the existence of good faith progress towards reorganization;

4. the existence of an unresolved contingency;

5. the fact that the debtor is paying bills as they become due;

6. the length of previous extensions of exclusivity;

7. breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors;

8. the debtor's failure to resolve fundamental reorganization matters essential to its survival; and

9. the gross mismanagement of the debtor.

10

See In re Hoffinger Indus., Inc., 292 B.R. 639, 643-44 (Bankr. App. 8th Cir. 2003). The bankruptcy court may exercise discretion to decide which factors are relevant and to give appropriate weight to each such factor. Id. at 644.

Bankruptcy courts often grant motions to terminate exclusivity where, as here, it has the potential to move the case forward. See In re Adelphia Commc'n Corp., 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006).  Such courts have terminated exclusivity if the Debtors are not using the Exclusivity Period to make good faith progress towards reorganization or to engage in negotiations with creditors. See In re Naturals, 669 B.R. 326, 338-40 (Bankr. C.D. Cal. 2025). Courts have also terminated exclusivity due to a lack of creditor support for an existing plan, finding that it precludes any reasonable prospect of confirmation. In re New Meatco Provisions, LLC, No. 2:13-BK-22155-PC, 2014 WL 917335, at *3 (Bankr. C.D. Cal. Mar. 10, 2014)

The first factor in favor of reducing the exclusivity period is that Parkside and Generations are relatively small, single asset real estate cases. An Exclusivity Period of over 260 days should have been sufficient for these cases.  The Debtors are closely held with common ownership and common secured creditors.  They do not have a financial structure or other special circumstances to justify a long exclusivity period or slow progress due to complexity.  Cf. In re Dow Corning Corp., 208 B.R. 661, 665 (Bankr. E.D. Mich. 1997) (citing In re Dow Corning Corp., 86 F.3d 482, 486 (6th Cir. 1996) (finding case to be complex where global settlement contemplated creation of a $4.25 billion fund to cover approximately 440,000 plaintiffs). In fact, the cases are primarily disputes between the Debtors and their secured creditors. There are no unencumbered assets for other creditors.

11

Second, and perhaps most importantly, the Debtors are not making good faith progress toward reorganization. Generations and Parkside filed "placeholder" plans on the 120th day. Both Debtors failed to confirm plans by the 180th day of the case. Indeed, after 260 days, the Debtors have not even filed a Disclosure Statement nor have they circulated drafts of a new plan or plan amendments to resolve existing plan objections filed by RRSB or Watertown Development Company ("WDC").

Third, RRSB's secured claim is increasing each day that the cases continue to linger in bankruptcy. The amounts paid by Debtors under the existing cash collateral stipulation are less than the actual amount of accrued interest on the secured debt. [ECF 157, pp. 7-8; ECF Nos. 164-167] Debtor appears to be using the Exclusivity Period as a stall tactic to avoid paying the full amount of accrued interest as it comes due on the secured debt in both cases.

Fourth, Debtor is using exclusivity to pressure creditors to acquiesce to a plan for the benefit of insiders. For as long as the Generations and Parkside cases remain in a holding pattern and the Debtors have the exclusive right to control the prosecution of Chapter 5 claims, the Debtors are not suing insiders for prepetition preferences and fraudulent transfers. Similarly, the Debtors are using exclusivity to insist on a plan that preserves 100% of old equity and provides a plan injunction to insiders who are not making any financial contributions to the plan.

Fifth, there are no plan negotiations in the case. The Debtors are simply ignoring stakeholders' requests for an amended plan and/or disclosure statement. Both Generations and Parkside have wholly failed to negotiate with creditors. After eight months, there is no credible evidence that the Debtors are willing to negotiate or able to present a plan with support from

12

the major stakeholders in the case. There is simply no reasonable prospect of confirmation in these cases.

Sixth, there is no disadvantage or prejudice to creditors or the estate if another party is permitted to propose a plan. Frankly, if the Debtors won't move the case forward, another party in interest should be permitted to do so. See In re Hoffinger Indus., Inc., 292 B.R. at 340. (If none of the factors weighs against terminating exclusivity, the Court may find cause under Section 1121(d)).

On balance, several factors weigh in favor of granting the Motion, including:

(1) the adequacy of the prior exclusivity period, especially given the small size and relative simplicity of the Debtors' cases;

(2) Debtors' lack of good faith progress towards reorganization;

(3) Debtors' failure to pay all accrued interest in full as it comes due;

(4) Debtors' use of exclusivity to obtain an unfair bargaining position over creditors, likely for the benefit of insiders and at the expense of major stakeholders;

(5) a complete standstill in plan negotiations; and

(6) no prejudice to creditors will result from permitting an alternative party in interest to propose a plan.

After 261 days, Parkside has failed to advance a feasible Plan and refused to engage in good faith plan negotiations. Debtors have no incentive to confirm a plan while insiders receive valuable benefits and Generations and Parkside enjoy a "holiday" from paying the full amount due on the RRSB's loans. If the Exclusivity Period continues until January 6, 2026, Debtor will have no incentive to make progress towards reorganization.

13

## CONCLUSION

For the foregoing reasons, RRSB respectfully requests this Court grant its motion to reduce or terminate the Exclusivity Period.

Dated: September 24, 2025.

**VOGEL LAW FIRM**

BY: /s/ *Kesha L. Tanabe*
    Kesha L. Tanabe (#0387520)
    ktanabe@vogellaw.com
    Jack Buck (#09539)
    jbuck@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR RED RIVER STATE BANK

4924-1991-3323 v.1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: <br><br> Generations on 1st LLC, <br><br> Debtor. | Case No.: 25-30002 <br><br> Chapter 11 |
| In Re: <br><br> Parkside Place, LLC, <br><br> Debtor. | Case No.: 25-30003 <br><br> (Chapter 11) <br><br> (Jointly Administered) |

**ORDER**

This matter came before the Court upon a motion filed by Red River State Bank to terminate the Debtors' exclusive right to propose a plan of reorganization in the above-captioned cases pursuant to 11 U.S.C. § 1121(d)(1) (the "Motion"). Based on the Motion and the record herein, it is hereby ordered that the Motion is granted and the Debtors' exclusivity periods are hereby terminated.

By: _____

U.S. Bankruptcy Judge

15

4924-1991-3323 v.1