IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: ) | Case No. 25-30002 | |
| ) | (Chapter 11) | |
| GENERATIONS ON 1ST, LLC ) | | |
| ) | | |
| Debtor ) | | |
| ) | | |
| ) | | |
| In re: ) | Case No. 25-30003 | |
| ) | (Chapter 11) | |
| PARKSIDE PLACE, LLC ) | | |
| ) | | |
| Debtor ) | | |
| ) | Jointly Administered | |

**OPPOSITION TO MOTION TO TERMINATE EXCLUSIVITY**

Come now Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, in opposition to the Motion to Terminate Exclusivity (the "Motion"), DE #174, filed by Red River State Bank ("RRSB"), and state as follows:

**I.    Introduction**

Early in these jointly administered cases, the Debtors moved for an extension of the exclusivity period based on the premise that RRSB's longstanding refusal to provide loan payment histories invited logistical issues in crafting so-called "100%" plans of reorganization. That motion was granted, without objection, in May 2025. Now that RRSB has finally provided payment histories, and claim amounts (subject to setoff and allocation of cross-collateralized obligations)

1

have finally been liquidated,[1] RRSB seeks to terminate exclusivity. Such an effort is both procedurally and substantively improper.

As a starting point, insofar as the exclusivity deadline has already been extended by order of this Honorable Court, the Motion appears to be mislabeled. This is not a motion seeking to terminate exclusivity; this is a motion for reconsideration. The exclusivity period has already been adjusted by court order; RRSB's efforts to now undermine that prior order equate to efforts to seek reconsideration of a prior ruling. And the Motion comes nowhere near establishing cause for such.

Equally, however, the Motion would merit denial on the merits even if construed as one simply seeking to terminate exclusivity. While RRSB may feign that it did not object to a prior motion because the bank was hopeful plan negotiations would be fruitful, (i) such was never the Debtors' understanding; (ii) any such quid-pro-quo would have assuredly resulted in some documentation; and (iii) it is RRSB that has acted in bad faith in the negotiation process. To the contrary, the original motion to extend exclusivity was plain that the Debtors wished to obtain claim sums before proposing plans that could be supported by disclosure statements and balloted. Those figures have now been obtained, with time sufficient for amended plans and disclosure statements to be prepared. Yet RRSB apparently does not wish to allow the Debtors the opportunity that was sought—and granted—when exclusivity was extended in the first instance.

To be sure, the Debtors did not seek an extension of exclusivity so they could negotiate with RRSB. Nor did they enter into some variety of agreement whereby an objection to their motion would be withheld in exchange for negotiations. The Debtors, rather, sought an extension

---

[1] The claim amounts may be revisited where appropriate. 11 U.S.C. § 502(j). The Debtors are currently exploring whether or not certain anomalies encompass the affidavits on which stipulated claim resolutions were based. But such is very much *not* the subject of this brief nor an issue presently before this Honorable Court.

2

of exclusivity for the plain and unmistakable reason that they needed to garner payment history information before filing plans and disclosure statements that could merit confirmation. To the extent RRSB now seeks to rewrite this history—especially as the bank's own tactics (which will *not* be elaborated upon herein) have decimated the latest round of negotiations—such is deeply unfortunate but, equally, not cause sufficient to grant the Motion.

**II.     Argument: RRSB Has Not Provided Grounds Upon Which to Reconsider the Prior Order**

This Honorable Court has made clear that the exclusivity period furnished in Section 1121(c)(3) of Title 11 of the United States Code "is extended to January 1, 2026." Order, DE #108. In so doing, and as expressly requested in the underlying motion (the "Motion to Extend Exclusivity"), DE #95, the statutory deadline was formally altered. The alteration was for good cause: the Debtors did not have payment histories—despite having made repetitive then-informal requests to RRSB for the same—that could be used to reasonably approximate the bank's claims before application of any setoff stemming from litigation. And there is not now any reason to reconsider that previously-granted relief.

Under Federal Rule of Civil Procedure 60—made applicable by Federal Rule of Bankruptcy Procedure 9024—a prior order of this Honorable Court may be reconsidered (i) where a clerical mistake, oversight or omission is present, Fed. R. Civ. P. 60(a); (ii) where there is mistake, inadvertence, surprise or excusable neglect, Fed. R. Civ. P 60(b)(1); (iii) where there is new discovered evidence that is pertinent in nature and was not discoverable at the time of the original ruling, Fed. R. Civ. P. 60(b)(2); (iv) where there is fraud, misrepresentation or misconduct, Fed. R. Civ. P. 60(b)(3); (v) for voidness, Fed. R. Civ. P. 60(b)(4); (vi) where there has been satisfaction of a judgment or discharge of the obligation thereunder, Fed. R. Civ. P. 60(b)(5); or (vii) where there exists other reasons that justify relief, Fed. R. Civ. P. 60(b)(6).

The Motion does not make—and, in fairness, does not endeavor to make—any of these arguments. Rather, RRSB is focused almost singularly on its objections to two plans of reorganization that the Debtors openly acknowledged, at the time of filing, to be placeholder plans. Now that payment histories have been received, the Debtors are working to file new plans, alongside disclosure statements, that can be properly considered and balloted inside of the extended exclusivity period. This is what the Debtors openly sought to do. This is what this Honorable Court allowed in its prior order. And there is no reason, under Rule 60, for the prior order to now be reconsidered.

### III. Argument: There Does Not Exist Cause to Terminate Exclusivity

Some attention is also properly paid to the incongruity between the reality of these cases and that suggested by RRSB in the Motion. The bank posits that exclusivity was extended so negotiations could be had and so plan comments could be reviewed. *See* Motion, DE #174, *passim*. Yet the underlying extension of exclusivity was so payment histories could be received and new plans could be fashioned. *See* Motion to Extend Exclusivity, DE #95, *passim*. The bank may not like how negotiations have gone in the interim but the Debtors do not much like how negotiations have played out either (as evidenced by the blizzard of contested filings to grace the docket of late). Such is not cause to terminate exclusivity and, more pointedly, hopes of two acutely adverse parties finally fomenting some delicate peace was never the cause seized upon to extend exclusivity in the first instance.

The standard to terminate exclusivity is "for cause." 11 U.S.C. § 1121(d)(1). As observed by the Eighth Circuit Bankruptcy Appellate Panel, a nine prong, disjunctive analysis guides requests to shorten (or, as here, terminate) the exclusivity period in chapter 11 cases:

> In deciding whether or not to extend or shorten the exclusivity periods, courts have relied on such factors as: (1) the large size of the debtor and the consequent

4

> difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure; (2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information; (3) the existence of good faith progress towards reorganization; (4) the existence of an unresolved contingency; (5) the fact that the debtor is paying bills as they become due; (6) the length of previous extensions of exclusivity; (7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors; (8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; (9) the gross mismanagement of the debtor.

*Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (citing *In re Texaco, Inc.*, 6 B.R. 322, 326 (Bankr. S.D.N.Y. 1987); *Gaines v. Perkins, (In re Perkins)*, 71 B.R. 294, 298 (W.D. Tenn. 1987); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr. D.D.C. 1986); *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y. 1987); *In re Swatara Coal Co.*, 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985); *In re Trainer's Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982); *In re Ravenna Industries, Inc.*, 20 B.R. 886, 890 (Bankr. Ohio 1982); *Teacher's Insurance and Annuity Asso. of America v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338, 344 (E.D. Mich. 1981); *In re Sharon Steel Corp.*, 78 B.R. 762, 766 (Bankr. W.D. Pa. 1987); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Me. 1982)).

Analysis of these factors is today little different than it was when the Debtors sought to extend exclusivity so they could review payment histories and endeavor to better understand the claims of their largest secured (and unsecured) creditors. Size and financial complexity did not matter then and do not matter now. There was not a creditors' committee then and there is not one now. Post-petition bills were being paid then (except where neglected by the bank's hand-picked receiver, in a brief post-petition, pre-turnover window) and are still being paid now. And there has not been any gross mismanagement of the estates at any time.

This leaves only a handful of factors. One massive unresolved contingency—the size of RRSB's claims and support thereof—has now been partially resolved, with the Debtors looking to seize upon said resolution as they work to docket new plans within the exclusivity period. Good faith progress has also been made through that claims resolution process; RRSB may not like that this progress has not included the reaching of a global agreement (nor do the Debtors like that RRSB has manufactured a counterfactual cash collateral breach and alleged the same just hours after a stipulation was docketed), but the operative question is progress toward a plan—not progress toward a plan the bank will endorse. And while there has been a breakdown in plan negotiations (punctuated by events occurring, ironically, well *after* the Motion was filed), the Debtors do continue to make meaningful plan progress.

At core, there simply is not cause to deprive the Debtors of the exclusivity period upon which they have relied for several months. That period is nearing a close, with just-sufficient time remaining to docket new plans and disclosure statements, and to solicit votes thereupon. If the Debtors are unsuccessful in so doing, RRSB will be free to propose a competing plan in less than a few months (absent an intervening extension of exclusivity, which is genuinely not anticipated to be sought). But there exists no cause to permit RRSB to do such now.

Finally, it bears notation that the Motion is, in many regards, somewhat cynical. RRSB held back payment histories despite myriad informal requests, necessitating the original exclusivity extension. RRSB did not object to that extension. The Debtors have proceeded accordingly. Yet, now that those payment histories are finally in hand, and now that claim amounts are finally liquidated (subject to setoffs and debt allocations), RRSB has—almost immediately—sought to terminate exclusivity. RRSB has also manufactured a counterfactual cash collateral breach and refused to consent to a continuation of cash collateral on status quo terms. And RRSB

6

has now, too, sought summary judgment in state court in the stayed litigation involving these two debtors, against one of their co-defendants (this *not* being the case where stay relief was granted by consent).

It is difficult to credit these actions as being those of a good faith participant in the reorganization process. And such would seem all the more reason to permit the Debtors through year's end, as previously ordered, to confirm plans of reorganization that are not dictated by a clearly-hostile creditor with at-best-conflicted motives.

### IV.     Conclusion

WHEREFORE, the Debtors respectfully pray the Motion be denied, and for such other and further relief as may be just and proper.

|  |  | Respectfully Submitted, |
|---|---|---|
| Dated: October 8, 2025 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |
|  |  | *Counsel for the Debtors* |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of October, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig