# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>GENERATIONS ON 1ST, LLC,<br><br>Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>PARKSIDE PLACE, LLC,<br><br>Debtor. | Case No.: 25-30003<br><br>Chapter 11 |

### OBJECTION OF RED RIVER STATE BANK TO DEBTORS' MOTIONS FOR LEAVE TO USE CASH COLLATERAL

#### INTRODUCTION

Red River State Bank ("RRSB"), by and through the undersigned counsel, hereby objects (the "Objection") to the Fourth Motion for Leave to Use Cash Collateral (the "Motion") filed by Debtor Generations on 1st, LLC ("Generations") and Debtor Parkside Place, LLC ("Parkside") (collectively, the "Debtors"). ECF No. 184. In support, RRSB states as follows:

#### BACKGROUND

**I.  Generations Collateral**

RRSB and Generations are parties to the following Promissory Notes:

    a.    Promissory Note dated March 15, 2021, in the original principal sum of $1,565,200.00 ("First Generations Note"). The maturity date of the First Generations Note was March 15, 2023. Generations ECF No. Claim 1 Part 2, Ex. A.

    b.    Promissory Note dated September 14, 2021, in the original principal sum of $2,976,430.98 ("Second Generations Note"). The maturity date of the

  Second Generations Note was March 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. B.

c. Promissory Note dated October 14, 2021, in the original principal sum of $1,094,025.15 ("Third Generations Note"). The maturity date of the Third Generations Note was March 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. C.

d. Promissory Note dated November 9, 2021, in the original principal sum of $424,259.84 ("Fourth Generations Note"). The maturity date of the Fourth Generations Note was March 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. D.

e. Promissory Note dated December 8, 2021, in the original principal sum of $843,168.59 ("Fifth Generations Note"). The original maturity date of the Fifth Generations Note was March 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. E.

f. Promissory Note dated January 5, 2022, in the original principal sum of $653,729.65 ("Sixth Generations Note"). The original maturity date of the Sixth Generations Note was December 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. F.

g. Promissory Note dated February 3, 2022, in the original principal sum of $274,043.60 ("Seventh Generations Note"). The original maturity date of the Seventh Generations Note was December 31, 2022. Generations ECF No. Claim 1 Part 2, Ex. G.

h. Promissory Note dated April 17, 2023, in the original principal sum of $8,100,000.00 ("Eighth Generations Note"). The original maturity date of the Eighth Generations Note is December 1, 2026. Generations ECF No. Claim 1 Part 2, Ex. H.

i. Promissory Note dated April 17, 2023, in the original principal sum of $561,365.10 ("Ninth Generations Note"). The original maturity date of the Ninth Generations Note was March 31, 2023. Generations ECF No. Claim 1 Part 2, Ex. I.

(hereinafter, collectively, the "Generations Notes").

4911-6963-0064 v.1

To secure payment on the Generations Notes, Generations made in favor of, executed, and delivered to RRSB a Construction Mortgage - One Hundred Eighty Day Redemption (the "<u>First RRSB Mortgage</u>") on the following-described real property:

> Generations on First Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
>
> Street Address:    26 1st Ave. SW, Watertown, SD 57201
>
> Tax ID:    9580

(hereinafter, the "<u>Generations Real Property</u>").  The First RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 7262 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 3, 2021, at 10:09 a.m.  Generations ECF No. Claim 1 Part 2, Ex. Q.

On or about April 17, 2023, as additional security for Generations Notes, Generations made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "<u>Generations AOR</u>") with respect to the Generations Real Property.  The Generations AOR was properly executed, acknowledged, and recorded in Book 992 on Page 154 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on May 5, 2023, at 10:12 a.m.  Generations ECF No. Claim 1 Part 2, Ex. S. RRSB began enforcement of its assignment of rents set forth in both the RRSB Mortgage and the Generations AOR in February 2024 by sending notice to Generations and to all known tenants of the Generations Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the Generations Real Property via an Order Appointing Receiver in the state court action of *RRSB v. Generations et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota.  Generations ECF No. Claim 1 Part 2, Ex. T.

**II.    Parkside Collateral**

4911-6963-0064 v.1

RRSB and Parkside are parties to a Promissory Note dated as of December 13, 2021, in the original principal amount of $4,2000,000 (the "Parkside Note"). Parkside Proof of Claim No. 1, Part 2, Ex. A. To secure payment on the Parkside Note, Parkside made in favor of, executed, and delivered to RRSB a Mortgage Collateral Real Estate Mortgage One Hundred Eighty Day Redemption (the "Parkside Mortgage") on the following-described real property:

> Parkside Place Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
>
> Street Address:    82nd St. NE, Watertown, SD 57201
>
> Tax ID:    9358

(hereinafter, the "Parkside Real Property"). The Parkside Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 8073 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:11 a.m. Parkside ECF No. Claim 1 Part 2, Ex. I.

On or about December 13, 2021, as additional security for Parkside Note, Parkside made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "Parkside AOR") with respect to the Parkside Real Property. The Parkside AOR was properly executed, acknowledged, and recorded in Book 990 on Page 8076 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:14 a.m. Parkside ECF No. Claim 1 Part 2, Ex. J. RRSB began enforcement of its assignment of rents set forth in both the Parkside Mortgage and the Parkside AOR in February 2024 by sending notice to Parkside and to all known tenants of the Parkside Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the Parkside Real Property via an Order Appointing Receiver in the state court action of *RRSB v.*

4

*Parkside et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota. Parkside ECF No. Claim 1 Part 2, Ex. K.

The Parkside Mortgage also secures the following promissory notes executed and delivered by Mulinda Craig to RRSB:

    a.    Promissory Note dated April 26, 2021 in the principal sum of $1,477,500.00 ("First Mulinda Note"). The original maturity date of the First Mulinda Note was December 15, 2022.

    b.    Promissory Note dated May 27, 2021 in the principal sum of $1,321,100.00 ("Second Mulinda Note"). The original maturity date of the Second Mulinda Note was December 15, 2022.

    c.    Promissory Note dated June 22, 2021 in the principal sum of $1,652,500.00 ("Third Mulinda Note"). The original maturity date of the Third Mulinda Note was December 15, 2024.

    d.    The First Mulinda Note, the Second Mulinda Note, and the Third Mulinda Note are hereinafter referred to collectively as the "Mulinda Notes.

(collectively, the "Mulinda Notes"). True and correct copies of the Mulinda Notes are attached to Parkside Proof of Claim No. 1, Part 2, Ex. B-D.

## LAW AND ARGUMENT

Under Section 363, a debtor in possession may only use cash collateral: (a) with the consent of the secured creditor, or (b), after notice and a hearing, through order of the court. 11 U.S.C. § 363(c)(2). Because RRSB has not consented beyond October 15, 2025, Debtors may only use cash collateral "in accordance with the provisions of" Section 363. Debtors admit Section 363 requires it to pay RRSB "adequate protection" for the use of cash collateral in which RRSB possesses an interest. *See* 11 U.S.C. § 363(e).

5

In turn, Section 361 provides three alternative means for providing adequate protection. *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). Adequate protection may be provided by:

(1) Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) Granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

What constitutes adequate protection for use of cash collateral must be determined on a case-by-case basis. *See In re Martin*, 761 F.2d at 476. To encourage reorganization, the courts must be flexible in applying the adequate protection standard. *Id*. This flexibility, however, must not operate to the detriment of the secured creditor's interest. *Id.* In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *Id.* at 476-77. Furthermore, if a secured creditor holds both a mortgage securing

6

4911-6963-0064 v.1

debt on property and a perfected security interest in rents derived from the property, like RRSB does in this case, such creditor has two distinct and constitutionally-protected property interests which must be considered and adequately protected as a condition of permitting a debtor-in-possession to use such creditor's post-petition rents as cash collateral. *See In re Apple Tree Partners, L.P.*, 131 B.R. 380, 400 (Bankr. W.D. Tenn. 1991).

A debtor in possession has the duty to protect and conserve the property in its possession for the benefit of the creditors. *Matter of Halux, Inc.*, 665 F.2d 213, 216 (8th Cir. 1981); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (A debtor-in-possession must act as a fiduciary of his creditors to protect and conserve property in his possession for the benefit of the creditors and to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization of the business). Section 345(b) of the Bankruptcy Code mandates, among other things, that debtors and trustees deposit or invest estate money so as to safeguard the money for the benefit of the debtor's creditors. *In re Ditech Holding Corp.*, 605 B.R. 10, 15 (Bankr. S.D.N.Y. 2019).

To ensure that those parties meet their obligations under section 345, the U.S. Trustee monitors fiduciaries and depositories, and requires that chapter 11 estate assets be held in debtor-in-possession accounts at Authorized Depositories – *i.e.*, those that have entered into a Uniform Depository Agreement ("UDA") with the U.S. Trustee. *Id.* (citing UST Guidelines at ¶ 5 (mandating that all debtor-in-possession bank accounts be opened at an Authorized Depository)). The UDA requires the Authorized Depository to maintain collateral in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit, unless otherwise provided for by an order of the bankruptcy court. *Id.* Congress did not intend to leave to the debtor's discretion compliance

4911-6963-0064 v.1

with the minimum requirements of § 345(b). *See In re Evans Products Co.*, 50 B.R. 13, 15 (Bankr. S.D. Fla. 1985).

In this case, Debtors argue that RRSB is adequately protected if RRSB receives: (i) automatically perfected replacement liens to the extent of any diminution; (ii) $19,266.67 per month from Parkside; and (iii) $39,666.67 per month from Generations. *See* ECF No. 184 at p. 2. Debtors' proposal is insufficient to constitute adequate protection for RRSB.

### A. Replacement Liens are an Illusory Form of Adequate Protection in this Case

First, Debtors' proposal to give RRSB replacement liens provides no additional protection whatsoever if the Debtors are permitted to spend down RRSB's post-petition rents under a cash collateral order. Recall, RRSB's claims are secured by prepetition liens on all Parkside and Generations Real Property and AOR. Pursuant to § 552(b), RRSB already has a perfected security interest in post-petition rents. Unless the Debtors intended to offer new unencumbered assets to RRSB, such pledging the Debtors' Chapter 5 claims, the Debtors have no new collateral to which a replacement lien could attach. Put simply, an offer of "replacement liens" does not give RRSB something that it doesn't already have and thus, it cannot constitute adequate protection to RRSB for allowing the Debtors to spend down its cash collateral during the pendency of this case.

### B. If the Secured Debt is Negatively Amortized During the Pendency of these Cases, the Secured Creditor's Risk of Loss is Compounding

Second, Generations' and Parkside's proposed monthly cash payments are too low to provide adequate protection to RRSB. To evaluate the adequacy of a proposed monthly payment, RRSB respectfully submits Debtors must pay an amount equal to the accrued interest due on the debt as it accrues during the pendency of the case. For example, the Generations Notes are currently accruing interest at a rate of $1,482.16 per diem. To pay interest only on

8

the Generations Notes, the monthly payment to RRSB – just to maintain the current level of indebtedness as of the Petition Date – Generations must pay $44,464.80 per month. By contrast, the Motion proposes that Generations' monthly payment should be only $39,666.67. Debtor bears the burden of providing adequate protection yet Generations has provided absolutely no explanation or support for why it should be permitted to pay 10% less than the actual accrued interest due on the Generations Notes. By simple math, the court could ascertain the extent to which RRSB would be damaged by the pendency of these cases – almost $5,000 per month. If a debtor in possession can only "cash flow" by negatively amortizing its debt its case is pending, RRSB respectfully submits that such debtor has failed to "insure that the secured creditor receives the value for which he bargained," as the Eighth Circuit clearly required for a finding of adequate protection. *In re Martin*, 761 F.2d at 474.

Parkside's proposal to pay $19,266.67 per month to Creditor also fails to adequately protect RRSB. The Parkside Note is currently accruing interest at a rate of $454.28 per diem. The First, Second and Third Mulinda Notes are currently accruing interest at a rate of $159.14 per diem, $235.26 per diem, and $294.28 per diem, respectively. For Parkside to pay interest only as it accrues on the Parkside and Mulinda Notes, Debtor would have to pay RRSB $1,142.96 per diem, or $34,288.80 in interest per month during the pendency of its case. Pursuant to stipulation only, Parkside has paid only $14,500 per month in adequate protection to RRSB. [ECF No. 159]. But absent the consent of the secured lender, this payment does not constitute adequate protection as a matter of law. Again, RRSB respectfully submits that the pendency of the Parkside case will increase RRSB's losses due to Parkside's failure to pay the full amount of interest as it comes due. This is not indubitable equivalence. Again, by simple math, RRSB can demonstrate its losses associated with Debtors' proposed monthly payments.

9

4911-6963-0064 v.1

Accordingly, Parkside has failed to meet its burden to prove adequate protection and the Motion should be denied until Debtors can at least pay accrued interest on the Notes.

### C. Excessive Transfers to Insiders Under the Cash Collateral Budget Represent a Dollar-for-Dollar Diminution of RRSB's Cash Collateral

Third, RRSB has previously expressed concerns about line items in the cash collateral budget that permit excessive post-petition payments to insiders during the pendency of these cases. In the bankruptcy context, adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property. *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985). CP Business Management, Inc. and other insiders are currently permitted by stipulation to request reimbursement of certain expenses under $250. [ECF No. 159]. However, the MOR for the month of August indicates the Parkside estate paid Jesse Craig $1,755.00 on August 29, 2025, and has an outstanding check to CP Business Management, Inc. for $4,878.87. [ECF No. 163]. Similarly, the Generations estate paid Jesse Craig $3,285.00 on August 29, 2025 and has an outstanding check to CP Business Management, Inc. for $7,463.89. [ECF No. 162]. These charges are more than double the amount paid to the prepetition receiver for comparable property management services. Additionally, the inclusion of "offsite" rent and utilities raise questions about whether the insiders are allocating part of their general overhead to the Debtors' estates each month. Counsel for RRSB has asked for clarification about the management fees. To date, the Debtors have not resolved such concerns, nor have the insiders agreed to reduce their management fees to a market rate. Excessive payments to insiders constitute a dollar-for-dollar reduction in the value of RRSB's cash collateral. RRSB will not consent, and this Court should not authorize the Debtors to use RRSB's cash collateral unless

Debtors reduce payments to insiders under the cash collateral budget. Without adequate controls for such losses, the Motion should be denied.

### D. Substantial Cash Collateral is Trapped in an IOLTA Account to RRSB's Detriment, With No Corresponding Benefit to the Estate

Lastly, RRSB is concerned that excessive prepetition rents continue to be held by Debtor's counsel in a law firm trust account (the "IOLTA"). [ECF No. 159]. Early in this case, the parties stipulated that a prepetition receiver was holding prepetition rents from Parkside in the amount of $124,341.92 and from Generations in the amount of $229,184.07 (collectively, the "Prepetition Rents"). [ECF No. 65] Pursuant to a stipulation, Debtor released Prepetition Rents to RRSB from Parkside in the amount of $35,948 and from Generations in the amount of $105,660.80. Id. The most recent MOR for Generations indicates that $90,592.04 remains in the IOLTA. [ECF No. 162]. The most recent MOR for Parkside indicates that $73,853.15 remains in the IOLTA. [ECF No. 163]. RRSB renews its objection to Debtors' position that such funds are subject to turnover. [ECF 31]. As memorialized in the Parkside AOR and Generations AOR, Debtors assigned the Prepetition Rents to RRSB. The Motion fails to even mention the Prepetition Rents, likely because Debtors cannot offer replacement liens, cash payments or anything of indubitable equivalence to RRSB. Debtors also fail to demonstrate that their retention of the Prepetition Rents constitutes a "necessary use" of cash collateral. RRSB is left to speculate whether Debtors are withholding the Prepetition Rents to inflate the perception of administrative solvency, or to divert attention from the fact that the Parkside and Generations Notes have been negatively amortized since the Petition Date. RRSB will not consent, and this Court should not authorize the Debtors to use RRSB's cash collateral unless Debtors turnover the Prepetition Rents and reduce RRSB's risk of loss by paying down the indebtednesss represented by the Notes.

11

## CONCLUSION

This Court should deny the Motion because Debtors have failed to offer RRSB adequate protection for the use of its both pre- and post-petition rents. Debtors' proposed payments are not sufficient to pay interest only, let alone full debt service, on the Parkside, Generations or Mulinda Notes. Allowing the Debtors to negatively amortize such notes during the pendency of these bankruptcy cases will increase its risk of financial loss by tens of thousands of dollars per month. Debtors have also permitted excessive post-petition payments to insiders out of RRSB's cash collateral, causing a dollar-for-dollar reduction in its cash collateral with no corresponding benefit to the estates. Moreover, throughout the pendency of these cases, Debtors have failed to transfer the Prepetition Rents from the IOLTA to RRSB, or even the DIP accounts. For all the foregoing reasons, Debtors have failed to meet their burden to prove adequate protection in this case and RRSB respectfully requests denial of the Motion.

Dated: October 14, 2025

**VOGEL LAW FIRM**

BY: */S/ KESHA L. TANABE*
Kesha L. Tanabe (#0387520)
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
Drew J. Hushka (#08230)
Jack M. Buck (#09539)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK

12

4911-6963-0064 v.1

**Re:   Generations On 1st LLC**
   Case No. 25-30002

   **Parkside Place, LLC**
   Case No. 25-30003

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | ) | |
| | ) SS | **CERTIFICATE OF SERVICE** |
| COUNTY OF CASS | ) | |

On October 14, 2025, the undersigned caused the following document(s):

**OBJECTION OF RED RIVER STATE BANK TO DEBTORS' FOURTH MOTION FOR LEAVE TO USE CASH COLLATERAL**

to be served electronically to the following:

*ALL ECF Participants.*

　　　　　　　　　　　　　　　　　　　　*/s/ Kesha L. Tanabe*
　　　　　　　　　　　　　　　　　　　　Kesha L. Tanabe

13

4911-6963-0064 v.1