UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re:<br><br>GENERATIONS ON 1ST, LLC,<br><br>        Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
|---|---|
| In Re:<br><br>PARKSIDE PLACE, LLC,<br><br>        Debtor. | Case No.: 25-30003<br><br>Chapter 11 |

**RED RIVER STATE BANK'S REPLY IN SUPPORT OF MOTION TO TERMINATE EXCLUSIVITY**

Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively, the "Debtors") filed an objection (the "Objection") [ECF No. 189] to the motion (the "Motion") [ECF No. 174] filed by Red River State Bank ("RRSB") to terminate exclusivity pursuant to 11 U.S.C. § 1121(d)(1). RRSB hereby submits this reply in support of the Motion.

**A. The Exclusivity Period Can be Modified More than Once per Chapter 11 Case**

A core premise of the Objection is that once the exclusivity period has been modified, it cannot be modified again. For example, Debtors state that the "statutory deadline was formally altered," implying it was permanently fixed and it is now unchangeable. Id. at p. 3. The Objection cites to no legal support for this premise. Instead, it segues to a discussion about Federal Rule of Civil Procedure 60 and motions for reconsideration.

4938-3992-3315 v.1

But Rule 60 is a red herring in this matter. The statutory predicate for the relief sought in the Motion is set forth in Section 1121(d)(1) of the Bankruptcy Code. First, common sense belies the Debtors' premise. Parties routinely seek to modify the exclusivity period more than once per Chapter 11 case. Second, they do so because the plain language of Section 1121(d)(1) authorizes the Court "to extend or shorten the exclusivity periods." Section 1121 expressly contemplates that the exclusivity period can be modified more than once, and it can be enlarged or reduced – exclusivity is not a one-time, one-way street for the sole benefit of the Debtors. The only constraint on the Court's authority to modify exclusivity periods is set forth in Section 1121(d)(2), which limits the maximum duration for exclusivity. The Motion was intended, and it is properly considered by the Court, within the purview of Section 1121(d)(1) and as a motion to reduce or terminate exclusivity "for cause."

**B. Current Circumstances Support Finding Cause to Modify the Exclusivity Period**

Based on the Motion and Objection, Debtors and RRSB appear to agree that Section 1121(d)(1) does not define "cause." The parties both cited the same list of factors to determine whether cause exists to modify the exclusivity period. Bunch v. Hoffinger Indus., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003). Debtors believe the *Hoffinger* factors weigh in favor of continuing exclusivity through January 2026. RRSB disagrees and it is eager to propose a competing plan, to move these cases toward confirmation.

On reply, RRSB seeks only to highlight that the B.A.P. generated the list of *Hoffinger* factors by considering the legislative history of Section 1121(d). The purpose of exclusivity is to "facilitate the rehabilitation of debtors in Chapter 11," but Congress warned that an "extension should not be employed as a tactical measure to put pressure on parties in interest to yield to a plan they consider unsatisfactory." 292 B.R. 639. This concern is memorialized

2

in the seventh *Hoffinger* factor: a breakdown in plan negotiations may be "cause" if the "continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors." Id.

Plan negotiations in these cases have reached a standstill over the proposed treatment of insiders. Debtors are perhaps emboldened by this Court's recent decision in the *Twin Falls* case. The plan, as drafted, suggests the Debtors can reinstate matured debt to cram up on secured creditors. If they do, the apartment buildings would generate sufficient cash flow to fund plan payments, for the primary goal of obtaining a plan injunction to shield insiders from chapter 5 claims and any other personal liability for their prepetition conduct. The insiders will provide no new consideration under the plan; on the contrary, they will continue to extract cash from Generations and Parkside in the form of above-market management contracts, duplicative "reimbursements" for management services, and distributions to equity.

RRSB is prepared to introduce extensive evidence to demonstrate a profound and unresolvable conflict of interest between the insiders who currently serve as debtors-in-possession and the best interests of creditors in this case. From RRSB's perspective, Debtors are abusing the fact that the secured debt is negatively amortized, combined with a long period of exclusivity, to stonewall and pressure RRSB to capitulate to plan terms that prioritize insiders over creditors. After 280 days of exclusivity, this conflict of interest explains why the Debtors have not produced a single redline or draft plan amendment to resolve plan objections and why there is no other concrete evidence of progress such as a draft disclosure statement.

Ultimately, RRSB moved to terminate exclusivity as a more cost-effective alternative to appointment of a Chapter 11 trustee in these cases. In the absence of a bona fide fiduciary for the estate, RRSB hopes to work with other stakeholders in the case to file a competing plan

3

and move the cases toward confirmation. The balance of the Objection consists of *ad hominem* attacks and baseless insinuation. RRSB opts not to respond based on its good faith belief that the evidence will speak for itself at the evidentiary hearing on October 20, 2025.

Dated: October 15, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
    Kesha L. Tanabe (#0387520)
    ktanabe@vogellaw.com
    Jack M. Buck (#09539)
    jbuck@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR RED RIVER STATE BANK

4938-3992-3315 v.1