Page 1

1              UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF NORTH DAKOTA
2
3     In Re:                          )
                                      )
4     Generations on 1st, LLC,        ) Bankruptcy No.:
                                      ) 25-30002
5       Debtor, Jointly Administered  )
        (Main Case).                  ) Chapter 11
6                                     )
      ------------------------------- )
7                                     )
      In Re:                          ) Bankruptcy No.
8                                     ) 25-30003
      Parkside Place, LLC,            )
9                                     ) Chapter 11
          Debtor, Jointly Administered. )
10    ------------------------------- )
                                      )
11    In Re:                          ) Bankruptcy No.
                                      ) 25-30004
12    The Ruins, LLC,                 )
                                      ) Chapter 11
13        Debtor.                     )
14
15
16                 D E P O S I T I O N
17                        OF
18                   MULINDA CRAIG
19
20
21
22    DATE:    Wednesday, September 24, 2025
23    PLACE:   Vogel Law Firm
24             Fargo, North Dakota
25    BY:      Charla A. Pawlik, RPR

Page 2

```
 1                A P P E A R A N C E S
 2
 3    FOR THE DEBTORS:
 4          The Dakota Bankruptcy Firm
            Attorneys at Law
 5          1630 First Avenue North - Suite B
            Fargo, North Dakota  58102
 6          By:  Christianna Cathcart
                 christianna@dakotabankruptcy.com
 7
 8    FOR JESSE CRAIG AND MULINDA CRAIG:
 9          Schwab, Thompson & Frisk
            Attorneys at Law
10          820 34th Avenue East
            Suite 200
11          West Fargo, North Dakota  58078
            By:  Daniel J. Frisk
12               dan@stf.law
13
14    FOR RED RIVER STATE BANK:
15          Vogel Law Firm
            Attorneys at Law
16          218 NP Avenue
            P.O. Box 1389
17          Fargo, North Dakota  58107
            By:  Caren W. Stanley
18               cstanley@vogellaw.com
19
20    ALSO PRESENT:
21          Jesse Craig, Charles Aarestad and Danielle
            Harless
22
23
24
25
```

Page 3

1                    C O N T E N T S
2                     W I T N E S S
3                                                    PAGE
4            MULINDA CRAIG
5                  Examination by Ms. Stanley         4
6
7
8                    E X H I B I T S
9   DEPOSITION
    EXHIBIT NO.                                    MARKED
10
11  Exhibit 29     SBA Form 1919 Signed by Mulinda    47
12                 Sue Craig dated 4-15-21
13  Exhibit 30     SBA Form 1919 Signed by Mulinda    52
14                 Sue Craig dated 6-15-21
15  Exhibit 31     SBA Form 1919 Signed by Mulinda    54
16                 Sue Craig dated 5-15-21
17  Exhibit 32     Check to Brady Punt dated 6-8-22   58
18                 (FCCU Subpoena 669)
19  Exhibit 33     Check to Nichole Mathiason         60
20                 (FCCU Subpoena 665)
21  Exhibit 34     Check to Crown Jewels dated        67
22                 6-29-22 (RRSB FCCU Subpoena 838)
23
24
25

Page 4

1                   P R O C E E D I N G S

2                   (Whereupon, the deposition of MULINDA

3       CRAIG commenced at 8:51 a.m. as follows:)

4                        MULINDA CRAIG,

5       HAVING BEEN FIRST DULY SWORN TO TESTIFY THE TRUTH,

        THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, RELATIVE

6       TO THE CAUSE SPECIFIED, TESTIFIED AS FOLLOWS:

7                        EXAMINATION

8       BY MS. STANLEY:

9                   Q.   Good morning.

10                  A.   Morning.

11                  Q.   Can you please state your full name for

12      the court reporter?

13                  A.   It's Mulinda Craig, also known as Mindy

14      Craig.

15                  Q.   And how do you spell your first name

16      just --

17                  A.   First name is spelled M-u-l-i-n-d-a.

18                  Q.   Okay.  And where -- where are you from

19      originally?

20                  A.   Born in Wisconsin.

21                  Q.   Wisconsin.  What part of Wisconsin?

22                  A.   Tomah.

23                  Q.   Okay.  Did you graduate from high

24      school there?

25                  A.   Yes.

Page 5

1            Q.   And what about -- how did you wind up

2     in this area of North Dakota, Minnesota?

3            A.   My husband and I had some mutual

4     friends so we met through mutual friends back in

5     Wisconsin.  And he was currently living in Fargo.  I

6     was in Wisconsin.  We decided to make a relationship

7     so...

8            Q.   When --

9            A.   And --

10           Q.   -- about was that?

11           A.   2010.

12           Q.   Okay.  Did you graduate from college?

13           A.   No.

14           Q.   Okay.  Did you do any -- did you

15    graduate from high school?

16           A.   Yes.

17           Q.   And that's Tomah?

18           A.   Yes.

19           Q.   Okay.  What did you do after high

20    school?

21           A.   I worked for my local family dentist as

22    a dental assistant.  And in the interim I was on the

23    waiting list for a dental hygiene program that had

24    about a four-year-long wait list.

25           Q.   Okay.

```
                                            Page 6

 1              A.   So I was doing my gen eds, taking some

 2      just --

 3              Q.   Where was --

 4              A.   -- general classes.

 5              Q.   Where was that at?

 6              A.   In La Crosse, Wisconsin.

 7              Q.   How far is La Crosse from Tomah?

 8              A.   45 minutes.

 9              Q.   Okay.  Were you living in La Crosse

10      then?

11              A.   No.  I was in Tomah.

12              Q.   Okay.  So the -- what's the furthest

13      you have gone in -- in like educational background?

14              A.   Like on the questionnaires and when --

15      I put some college.

16              Q.   Okay.  And that was just like the

17      generals under --

18              A.   Yes.

19              Q.   -- the initial --

20              A.   Yes.

21              Q.   Okay.  As your attorney earlier -- you

22      were here on Monday --

23              A.   Yes.

24              Q.   -- for the depositions of Charles and

25      Danielle; correct?
```

Page 7

1            A.   Yes.

2            Q.   Okay.  So don't be offended, but I'm

3     going to ask you the same question of --

4            A.   Sure.

5            Q.   -- are you under the influence this

6     morning of any alcohol or drugs?

7            A.   No.

8            Q.   Okay.  And nothing that may impair your

9     ability to answer questions?

10           A.   No.

11           Q.   Okay.  Can you tell me how old you are?

12           A.   I am 38.

13           Q.   Okay.  That's always a sensitive

14    question.

15           A.   Sorry.  I had to think about it for a

16    second.  The years all blur together really.

17           Q.   So when you moved -- did you move up

18    here in 2010 you said?

19           A.   Correct.

20           Q.   Okay.  And did you have -- find a job

21    when you moved up here or what did you -- what did

22    you start to do?

23           A.   So Jesse had the property management

24    company.  And he had a property manager that was

25    not -- or excuse me, an office manager that was not

Page 8

1    doing a great job.  So he knew he needed to replace

2    her and I knew I needed a job anyway so it made sense

3    for me to take over that position.

4              Q.    So the property management company is

5    Craig Properties?

6              A.    Yes.

7              Q.    Okay.  And so that was -- that was open

8    and an existing company in 2010?

9              A.    Yes.

10             Q.    And how many -- at that time in 2010

11   how many employees did Craig Properties have?

12             A.    Three I believe.  Three.

13             Q.    And then when you started working for

14   it did you become the fourth?

15             A.    Nope.  I -- he let the office manager

16   go and I took over her position.

17             Q.    Okay.  So stayed at three?

18             A.    Yes.

19             Q.    How long is it -- has it always been

20   like that number of employees or increased?

21             A.    At Craig Properties?

22             Q.    Yes.

23             A.    It's kind of fluctuated a little bit.

24   I don't have a whole lot to do with Craig Properties

25   any longer so I -- I couldn't say how many true

Page 9

1    employees versus independent contractors there are.

2            Q.    Okay.  When did you -- so explain to me

3    from 2010 till, you know, like now what your

4    involvement with Craig Properties was.

5            A.    In 2014 we had our twins.  And they

6    were micro-preemies born 15 weeks early so we spent

7    four and a half months in the NICU.  And at that time

8    Jesse's oldest daughter knew that she would like to

9    take over the business at some point, kind of get her

10   feet wet a little bit more.  So she took over my

11   position when I was focused on our twins.  So that

12   was a good transition time for me to step away and

13   then she stepped in.

14           Q.    In 2014?

15           A.    2014, yes.

16           Q.    Okay.  And then when did you start or

17   did CP Business Management come into existence?

18           A.    CP Business Management would have been

19   2016 or 2017.  Jesse had purchased a conglomerate of

20   all in one Coldwell Banker real estate, mortgage,

21   title, property management and commercial real estate

22   company.  And then the property management side of

23   things wasn't doing the greatest.  So he came to

24   me -- I was a stay-at-home mom.  Came to me and asked

25   me if I would step in and help kind of turn things

Page 10

```
 1    over is what I did.
 2           Q.   So this was '16, '17?
 3           A.   It would have been 2015.  So we were
 4    still under Coldwell Banker's umbrella.  And then --
 5           Q.   Okay.
 6           A.   -- 20 -- I believe it was 2015 or 2016
 7    we split off, renamed the property management company
 8    to CP Business Management.
 9           Q.   What was it before that?
10           A.   I think it was just Coldwell Banker
11    Property Management I believe.
12           Q.   Oh.  So Craig Properties is separate
13    from Coldwell Banker or CP -- what then became CP
14    Business Management; is that right?
15           A.   Correct.
16           Q.   Okay.  Did you have any involvement
17    with Craig Development?
18           A.   Minor.
19           Q.   So what -- what did you -- when you say
20    minor, what do you mean by that?  Can you expand a
21    little?
22           A.   Well, Jesse and my's office is
23    kitty-corner from each other.  So at the beginning of
24    Craig Development I really had no involvement.  And
25    then I would say probably the last four or five years
```

Page 11

```
 1    or so little random things pop up that he asks help
 2    on, needs help on.
 3             Q.   Okay.  So is it fair to say that you
 4    would only -- you don't work for Craig Development?
 5             A.   Correct.
 6             Q.   And is it fair to say you do not work
 7    for Craig Properties?
 8             A.   Correct.
 9             Q.   Okay.  Do you have authority to write
10    checks for Craig Development?
11             A.   I do not believe I do.
12             Q.   What about Craig Properties?  Do you
13    have authority to write checks for that one?
14             A.   Do not.
15             Q.   There was some discussion yesterday
16    about Jesse has a stamp with -- for checks.
17             A.   Yeah.
18             Q.   Do you have access to that?
19             A.   I do.
20             Q.   Do you use it?
21             A.   Yes.
22             Q.   And what do you -- which entity do you
23    use -- use it for?
24             A.   CP Business Management's checking is
25    his signature.
```

Page 12

1           Q.   Okay.  Do you ever --

2           A.   So I have that stamp.

3           Q.   Are there different stamps or just one?

4           A.   This -- it's the same signature that

5      the Fargo Rubber and Stamp made stamps of so it's the

6      same swoops.

7           Q.   So -- I mean, and when I think of a

8      stamp, right -- I'm old so I think a big hand -- you

9      know, like you --

10          A.   Sure.

11          Q.   -- stamp it on -- on the paper.  Is

12     that -- do I have that right or am I --

13          A.   It's not the big handheld clunk-clunk

14     one.  It's the -- just a little like, yeah,

15     3-inch-by-3-inch.

16          Q.   Okay.

17          MR. FRISK:  Get with the times, Caren.

18          Q.   (Ms. Stanley continuing)  Is there more

19     than one of --

20          A.   More than one stamp?

21          Q.   Yeah.

22          A.   Yes.

23          Q.   Okay.  And are they like allocated for

24     different properties or...?

25          A.   No, it's -- well, since he's the signer

Page 13

1   on the CP Business Management checking account, all

2   the checks get signed by him or that stamp.

3           Q.   Okay.  And who else uses that stamp

4   other than you?

5           A.   I have mine that I keep in my office.

6   I believe he has one.  And then Jordan I believe has

7   one for Craig Properties.

8           Q.   Okay.  Do you have access to online

9   banking for Craig Properties?

10          A.   I do not.

11          Q.   What about do you have online banking

12  access for Craig Development?

13          A.   I do not.

14          Q.   And then I'm guessing you do have it

15  though for CP Business Management?

16          A.   Yes.

17          Q.   Okay.  Are you an owner of CP Business

18  Management?

19          A.   I am.

20          Q.   What is the percentage ownership?

21          A.   50.  50-50.

22          Q.   With you and...?

23          A.   Jesse.

24          Q.   And when did that ownership percentage

25  start?

Page 14

1          A.   I believe when we went through the name

2     change.  The ownership changed from the Coldwell

3     Banker umbrella to the name change to me being an

4     owner.

5          Q.   How many employees does CP Business

6     Management have currently?

7          A.   Employees?  One.  Myself.

8          Q.   So in the 2016, '17 time frame when it

9     became CP Business Management, how many employees

10    were there?

11         A.   Five I believe.  Five I believe.

12         Q.   And then since that time maybe they

13    left or been terminated from the employment?

14         A.   Correct.

15         Q.   Okay.  Did they voluntarily leave or

16    were they terminated?

17         A.   All left voluntarily.  Different

18    positions, life changes.

19         Q.   How many office locations does CP have?

20         A.   Two.

21         Q.   And where are they?

22         A.   Fargo and Watertown, South Dakota.

23         Q.   How many -- in Fargo how many

24    properties does CP Business Management actually

25    manage?

```
                                                  Page 15

 1              A.    There are...  I believe there's nine

 2    total in Fargo.

 3              Q.    Okay.  What is the arrangement with the

 4    nine in Fargo?  Do they have to pay overhead for like

 5    the CP Business Management office?  Do they get

 6    allocated a fee for that?

 7              A.    They do not.

 8              Q.    And what about in Watertown?  Which

 9    properties does CP Business Management manage?

10              A.    Loft -- or sorry.  Generations and

11    Parkside.

12              Q.    Just those two?

13              A.    Yes.

14              Q.    And are Generations and Parkside

15    allocated an overhead for that office?

16              A.    They are currently.

17              Q.    So that's different than how it's --

18    the arrangement for the Fargo properties?

19              A.    Currently.

20              Q.    Is there -- you said currently.  Is

21    there plans to change that?

22              A.    Correct.

23              Q.    And what is -- are you going to get rid

24    of the Watertown office?

25              A.    Yes.  When the lease is up at The
```

Page 16

1    Lofts, then we have either a space to move into at

2    Generations on 1st or if The Ruins is completed,

3    there's a designated space in The Ruins to move into.

4              Q.    What is -- can you just give me an

5    overview of what the IT, the technology setup is for

6    CP Business Management?

7              A.    Can you be more specific?

8              Q.    That's a fair question.  Do you have

9    like your servers and -- and all of that, is that

10   in -- on site in Fargo or is that all in the cloud or

11   how is -- is there an IT company that manages it?

12             A.    So we have -- majority of everything is

13   on a cloud.  We have Chameleon Technologies who

14   handles the majority of our IT if we need.  And then

15   -- or actually -- they get mad at me.  I'm just

16   spewing.  Our website is -- currently we're trying to

17   figure out how to reconfigure the CP Business

18   Management website.

19             Q.    So --

20             A.    The company switched hands a few times

21   and now we don't have a contact at all.

22             Q.    So -- Chameleon?

23             A.    Yes.

24             Q.    Are they based out of Fargo or are they

25   somewhere --

```
                                               Page 17

 1          A.   Originally it was out of Fargo, and now

 2   he's remote and comes to Fargo quite often.

 3          Q.   Okay.  Does CP Business Management

 4   share its IT setup with Craig Development?

 5               MR. FRISK:  What do you mean by setup?

 6               THE WITNESS:  Yeah.

 7          Q.   (Ms. Stanley continuing)  Like your

 8   email system.

 9          A.   No.  Those are separate.  We've got two

10   different --

11          Q.   -- email servers?

12          A.   Yes.

13          Q.   So like what is your email?

14          A.   Mcraig@cpbusmgt.com.

15          Q.   And what would Jesse's email be?

16          A.   Jcraig@craigprop.com.

17          Q.   Do you have a craigprop.com email?

18          A.   I do not.

19          Q.   You indicated earlier that your offices

20   are close to each other though.

21          A.   Yes.

22          Q.   Like physically within 10 feet?

23          A.   Give or take, yes.

24          Q.   Okay.  Earlier Jesse had indicated that

25   he was not tech savvy.  Would you agree with that
```

Page 18

1    characterization?

2                A.    Yes.

3                Q.    Okay.  Do you assist him in -- assist

4    him with technology matters?  Let's say that.

5                A.    Some, yes.

6                Q.    So like what would he need assistance

7    with or what do you help him with?

8                A.    Things that come to my mind right now

9    are getting columns to tabulate in Excel.  The

10   printer wasn't feeding paper correctly and printing

11   correctly so changing the settings for that.  And

12   recently our software for the property management

13   accounting software just changed how they do their

14   logins.  And now it's a code that gets sent to your

15   phone every --

16               Q.    Oh.

17               A.    -- so often, and that wasn't working.

18   I guess stuff like that.

19               Q.    Do you ever assist him with -- so you

20   said Excel spreadsheets, you have helped with Excel

21   spreadsheets.

22               A.    Yes.

23               Q.    Do you input data for him into Excel

24   spreadsheets?

25               A.    No.

Page 19

1           Q.    Do you know if Jordan helps him with

2     that?

3           A.    That I could not answer.

4           Q.    What is your understanding of Jordan's

5     role with respect to CP Development?

6           A.    CP Development?

7           Q.    Right.

8                 MR. FRISK:  There's no such thing as --

9                 THE WITNESS:  Yeah.

10                MR. FRISK:  -- CP Development.

11          Q.    (Ms. Stanley continuing)  Or I'm sorry.

12    Craig Development.  My bad.  Apologies.

13          A.    Well, as Jesse testified yesterday, she

14    wanted to step into the development side of things,

15    and then she wanted to focus on having a family so

16    then she's strictly doing property management things.

17          Q.    For CP -- or sorry, Craig Properties?

18          A.    Yes.

19          Q.    So Jordan only works for Craig

20    Properties at this point?

21          A.    To my knowledge, yes.

22          Q.    Okay.  Does she work for CP Business

23    Management?

24          A.    She does not.

25          Q.    Do you -- so you indicated earlier you

Page 20

1   don't have any banking access for Craig Development;

2   correct?

3           A.   Correct.

4           Q.   And what about -- and you don't have it

5   also for Craig Properties?

6           A.   Correct.

7           Q.   Would there be any reason that Craig

8   Properties would pay you money directly?

9                MR. FRISK:  Objection to form.

10               THE WITNESS:  Yeah.

11               MR. FRISK:  Calls for speculation.  If

12  you want to give her an example of what it was, she

13  probably could answer.

14          Q.   (Ms. Stanley continuing)  If I -- I

15  don't have the bank statements in front of me, but if

16  there are, you know, cash payments or monthly

17  payments to Mindy Craig, what would the reason for

18  that be?

19          A.   From Craig Properties?  What's the time

20  frame you are talking?

21          Q.   Bank statements were provided from

22  2021 -- 20 -- 2021 to current.

23          A.   And there's monthly checks?

24          Q.   Not monthly but fairly regularly.

25               MR. FRISK:  I'm going to object on the

Page 21

1   form again.  You're just asking her ambiguous and

2   vague time periods.  Again if you had a specific

3   dollar amount, she could answer it.  And the other

4   objection's on speculative.  She's going to have to

5   speculate as to what you mean by timing and what

6   payments are.

7          Q.   (Ms. Stanley continuing)  Do you ever

8   get paid money from Craig Properties in the last

9   three years?

10          MR. FRISK:  And again I'll -- same

11   objection as to form.

12          A.   Not that I recall off the top of my

13   head.

14          Q.   (Ms. Stanley continuing)  Does Craig

15   Properties owe you any money in the last three years?

16          A.   No.

17          Q.   Do you know if Craig Properties is

18   used to pay -- Craig Properties funds is used to pay

19   personal expenses for the family?

20          MR. FRISK:  Objection as to form.

21   Again she's already testified that she doesn't

22   know -- she doesn't have a banking relationship with

23   Craig Properties.  She --

24          MS. STANLEY:  She -- she was here

25   yesterday though when he indicated that the mortgage

Page 22

1   for the house is paid from that.

2              MR. FRISK:  Well, do you want her to

3   testify as to what she knows from yesterday?

4              MS. STANLEY:  She was here.

5              MR. FRISK:  So to the extent you were

6   here yesterday, Mindy, and heard that, you can answer

7   if you recall.  I'm going to object to the form

8   again.

9              MS. STANLEY:  That's fine.

10             MR. FRISK:  I mean, if we have certain

11  dollar amounts, it's going to go on -- and it's

12  already been asked and answered by Jesse Craig.  He's

13  the one who testified that he pays the mortgage

14  sometimes out of this --

15        Q.   (Ms. Stanley continuing)  And I'm

16  asking, are you aware of any family household

17  expenses paid in the last three years out of the

18  Craig Properties --

19             MR. FRISK:  Again I'll --

20        Q.   -- bank account?

21             MR. FRISK:  -- still object as to form.

22  And, Mindy, if you remember from yesterday's

23  deposition, you can answer to the extent you

24  remember.

25             A.   I...  Short answer I think to clear up

Page 23

```
 1   any confusion is our finances are kept separate.

 2   Personal are kept separate.  We don't have any

 3   crossover.  And that's how it's always been our

 4   entire marriage, our entire relationship.  So if

 5   there are personal expenses paid out of XYZ account,

 6   I wouldn't be able to attest either way.  As Dan

 7   said, Jesse made the comment yesterday, yes, mortgage

 8   was paid out.

 9           Q.   (Ms. Stanley continuing)  In the last

10   three years what -- has Craig Properties paid for any

11   of your vehicles?

12           A.   That I do not -- I don't know what

13   account car payments come out of.

14           Q.   For the car that you drive you don't

15   know?

16           A.   The car that I drive comes out of my

17   checking account.

18           Q.   Okay.  Where's your checking account?

19           A.   Altra.  Which you have the bank

20   statements for.

21           Q.   Is that the one in Wisconsin?

22           A.   Yes.

23           Q.   And it's a -- is Altra with an A or a

24   U?

25           A.   A.
```

Page 24

1              Q.   Okay.  What -- what -- how many

2      vehicles do you -- do you have?

3              A.   I personally have two.

4              Q.   How many does Jesse have?

5              MR. FRISK:   Objection as to form.  It's

6      calling for speculation.  You can answer if you know.

7              A.   I -- truly I couldn't tell you off the

8      top of my head.  He's got a couple older vehicles.

9      There's vehicles that employees of -- or contractors

10     of Craig Properties drives.  I don't know what all is

11     considered personal, what all is considered business

12     or where the cutoffs are.  I don't know how those are

13     all situated.

14             Q.   So you have your own personal account,

15     checking account?

16             A.   Yes.

17             Q.   And then your -- you have control of

18     the CP Business Management bank account at Starion;

19     right?

20             A.   Correct.

21             Q.   Okay.  And I did receive the Starion

22     Bank statements from you --

23             A.   Uh-huh.

24             Q.   -- so thank you.  I'm curious about --

25     there were monthly checks for $1,500 that were

Page 25

1    redacted.

2             A.    Yes.

3             Q.    Can you tell me why they were redacted

4    and what was --

5             A.    They are for outside owners that have

6    nothing to do with this case for people that I manage

7    for.

8             Q.    So they're owners of properties that

9    you manage for?

10            A.    Yes.

11            Q.    And they get $1,500 a month?

12            A.    Currently.

13            Q.    Okay.

14            A.    I think it might have changed a little

15   bit over the years.

16            Q.    That is Goff?

17            A.    Yeah.

18            MR. FRISK:  Well, I'm going to -- hang

19   on a second.  I'm going to object as to form.  That

20   is what?

21            MS. STANLEY:  Goff --

22            MR. FRISK:  Goff.

23            MS. STANLEY:  -- is the last name.

24            MR. FRISK:  Right.  I think that the

25   design there is she has outside business interests;

Page 26

1    right?  She manages apartments and properties for

2    other people.  I don't know that we want to -- unless

3    it relates to Craig let's not throw those names

4    around.  She is taking steps to make sure that

5    they're not disclosed while being -- that would

6    affect her ability to make her outside income.  She

7    doesn't rely solely on Jesse's apartments.  She runs

8    other apartments.

9               Q.  (Ms. Stanley continuing)  Okay.  Do you

10   have an interest in Prevail, LLC?

11              A.  I do not.

12              Q.  Did you ever do any work for Prevail,

13   LLC?

14              A.  Did not.

15              Q.  Had any ownership in it?

16              A.  No.

17              Q.  What about Prevail Realty, LLC?

18              A.  That was set up.  Nothing ever ran

19   through there to my knowledge.

20              Q.  You mean like it never had any business

21   or --

22              A.  I don't believe so.

23              Q.  Do you have a real estate agent

24   license?

25              A.  No.

Page 27

1          Q.    Did you ever take classes or anything
2    towards obtaining one?
3          A.    Yes.
4          Q.    You just didn't -- did you -- you just
5    didn't finish?
6          A.    I did have a license.  I do not
7    currently hold my license.
8          Q.    Okay.  When did you get the license?
9          A.    2016 I believe, maybe '17.
10          Q.    And did you just let it lapse?
11          A.    I did.
12          Q.    When did that happen?
13          A.    This last -- 2020...  End of 2024 it
14    would have lapsed.
15          Q.    And were you -- as part of Prevail
16    Realty what did you -- what did you do for that?  I
17    mean, I saw that there was a podcast or something or
18    a -- or a business advertisement for it; is that
19    right?
20          A.    What kind of business advertisement I
21    guess?
22          Q.    I thought you went on the TV or the
23    radio or something talking about Prevail Realty.
24          A.    Not that I recall.
25          Q.    Who did you work with for Prevail?

Page 28

1    Like anybody else involved in that?

2                    MR. FRISK:  Objection.  Form and

3    relevancy.

4            A.    Jesse Kiihl has his South Dakota

5    license so he was going to also work under Prevail

6    Realty.  And I believe there was another gal in

7    Watertown that was working on getting her license and

8    her plan was also to work under Prevail Realty, but I

9    was already under a different brokerage.

10                   Q.    Which brokerage?

11                   A.    Mainstream Realty.

12                   Q.    Okay.  You ever have to take any ethics

13   classes as -- to get your real estate license?

14                   A.    Yes.

15                   Q.    Ever take any classes on mortgage

16   fraud?

17                   A.    I don't believe on mortgage fraud.

18                   Q.    Okay.  Jesse Kiihl was the property --

19   I'm sorry, project manager for Parkside, Generations

20   and The Ruins; correct?

21                   A.    Yes.

22                   Q.    Did you work with him on those projects

23   at all?

24                   MR. FRISK:  Objection as to form.

25   Which projects are you talking about?

Page 29

1              MS. STANLEY:  Parkside, Generations and

2      Ruins.

3              A.   As far as Jesse Kiihl and his

4      project --

5              MR. FRISK:  Hang on a second.  She's

6      pretty -- she testified she works for CP Business

7      Management.  To the extent she worked for these

8      entities or what are you --

9              MS. STANLEY:  I mean, they have

10     disclosed emails where she's emailing with Jesse

11     Kiihl.

12             MR. FRISK:  On the real -- on this

13     real estate agency thing or on -- as a --

14             MS. STANLEY:  On the -- on The Ruins --

15             MR. FRISK:  Projects?

16             MS. STANLEY:  -- the three Watertown

17     projects, yes.

18             MR. FRISK:  During construction or

19     after -- after they've been opened?

20             MS. STANLEY:  I -- I think --

21             MR. FRISK:  She managed them after they

22     were opened.

23             MS. STANLEY:  I believe that they were

24     during the construction phase --

25             MR. FRISK:  Okay.

Page 30

```
 1              MS. STANLEY:  -- so I would like to ask
 2    her that question.
 3              MR. FRISK:  Perfect.  But just identify
 4    whether it's construction or ownership 'cause she --
 5    or construction or operations.
 6              Q.   (Ms. Stanley continuing)  So do you
 7    recall having communications by email with Jesse
 8    Kiihl?
 9              A.   Yes.
10              Q.   And was it -- what do you recall about
11    those email communications?
12              A.   We -- majority was regarding the Knox
13    Boxes for the properties.
14              Q.   The what boxes?
15              A.   Knox Boxes.
16              Q.   What's a Knox Box?
17              A.   They are the fire department -- you
18    have to have them -- you have to have a form
19    submitted to you by the fire department giving
20    them -- giving you the authority to order the Knox
21    Box which is keyed to their municipal key or their
22    fire department key if there's ever an emergency --
23              Q.   Uh-huh.
24              A.   -- so the fire department is the only
25    one that ever has access to that box.
```

Page 31

```
 1            Q.   Is that the only thing you ever really
 2    recall talking to him about on the three Watertown
 3    projects?
 4            A.   There may have been a -- I don't know
 5    if there's an email about it -- a phone call about --
 6    we had a roof leak at Generations he looked at.
 7            Q.   So this would have been after it was
 8    constructed --
 9            A.   Yes.
10            Q.   -- and there's tenants?
11            A.   Yes.
12            Q.   Okay.  Did you pay any -- take
13    responsibility for paying during the construction
14    phase excise taxes for the three Watertown projects?
15            A.   No.
16            Q.   So you don't know if -- if -- have any
17    knowledge about paying taxes on Parkside, Generations
18    or The Ruins?
19            A.   I submitted the pay -- or the -- not
20    the pay request.  The amount that was owed.  But that
21    is the extent of -- I didn't make any payments to --
22            Q.   So like --
23            A.   -- for excise tax.
24            Q.   -- a reporting thing?
25            A.   Yes.
```

Page 32

1          Q.    To the state of South Dakota?

2          A.    Yes.

3          Q.    Is this something you did monthly?

4          A.    Yes.

5          Q.    For all three of the projects?

6          A.    Yes.

7          Q.    So any other -- but you didn't actually

8    pay it; is that what you're saying?

9          A.    Correct.

10          Q.    Or pay it through Craig Development or

11   through Craig Properties?

12          A.    No.  Yes, correct, I did not pay that.

13          Q.    So did you just have to tell Jesse he

14   needs to pay this?

15          A.    He would tell me the amount that needed

16   to be reported and that's what I would do.

17          Q.    So you would just do the reporting of

18   the amounts?

19          A.    Correct.

20          Q.    And had nothing to do with any payments

21   remitted to the state?

22          A.    Correct.

23          MR. FRISK:  Well, I'm going to object

24   because it mischaracterizes the -- the answer.  I

25   think what she's getting at is that she would get a

Page 33

1    number from Jesse and put it on a form.  I don't want

2    there to be a misconstrue that -- misconstrued that

3    she's doing the calculation.

4                  MS. STANLEY:  No.  No.  Just -- I

5    believe he said she made the payments but...

6                  MR. FRISK:  He would give her a number

7    and she would make the payment?

8                  MS. STANLEY:  I think that's what he

9    testified to yesterday, but we'll have to look at the

10   transcript when it comes out.  So I just wanted to

11   clarify that though.

12                 Q.   (Ms. Stanley continuing)  Is there any

13   other clerical work like that -- I don't know.

14   That's probably a bad term for that, clerical work.

15   But that you can think of that you would do on behalf

16   of those three projects?

17                 A.   Yes, I think that's a fair statement.

18                 Q.   That there is or there isn't?

19                 A.   There is not.

20                 Q.   Okay.  None that you can think of

21   anyway?

22                 A.   Correct.

23                 Q.   Okay.  Did you ever deal with in

24   respect to The Ruins any of the subcontractors such

25   as if they're sending in paperwork or invoices?

Page 34

```
 1              MR. FRISK:  I'm going to object as to
 2    form just 'cause that's really broad.
 3              Q.  (Ms. Stanley continuing)  Did you ever
 4    receive and look at paperwork from subcontractors on
 5    The Ruins when it was being constructed?
 6              A.   In terms of like what was submitted for
 7    draw requests or what?
 8              Q.   Sure.
 9              A.   No.
10              Q.   Had no involvement with the draw
11    requests at all?
12              A.   No.
13              Q.   No --
14              A.   I take that back.  I did have to send
15    Charles -- Jesse was out of town one time, and I had
16    to scan something in and send it to Charles.  It was
17    the first time I had ever done that.  And I think
18    there's even an email saying:  I hope I did this
19    right 'cause I don't know what I'm doing.
20              Q.   So how would the invoices come into the
21    office?  Would they like just have his name on and
22    they go on his desk or...?
23              A.   I could not -- I didn't see any
24    invoices.  I don't receive the mail.  So if they came
25    in by mail, I wouldn't have any idea.  If they came
```

Page 35

1    in by email, I wouldn't have any idea.

2            Q.   Okay.

3            A.   If they came in person, I wouldn't have

4    any idea.

5            Q.   And so when there would be unpaid

6    contractors, did you ever take any calls from unpaid

7    contractors regarding these three projects?

8            A.   Did not.

9            Q.   So you never -- are you testifying you

10   never reviewed any of the draw requests before they

11   were submitted other than that one you just

12   referenced with Charles?

13           A.   Every now and again Jesse would need

14   help tabulating the tabs at the bottom, but that is

15   about the extent of it.

16           Q.   What do you mean, the tabs at the

17   bottom?

18           A.   He -- well, he testified yesterday he

19   kept a -- the big sheet of paper.

20                MR. FRISK:  And I want to make an

21   objection.  Again it mischaracterizes her testimony.

22   She didn't -- she said she did not review the draw

23   requests.  Caren, you said -- suggested she did

24   review the draw requests.  Her conduct was limited to

25   faxing a piece of paper or something to Charles one

Page 36

1    time so I don't want you to misconstrue that as she

2    reviewed a draw request and sent it to -- to Charles.

3    She didn't review it.  She merely -- I meant scanned

4    it.  Nobody faxes anymore.

5            Q.  (Ms. Stanley continuing)  So tell me

6    about this spreadsheet.  I know -- I know what you're

7    referencing and I can't --

8            A.   Yeah, it was like the -- similar to

9    what the big -- the one that had all the yellow --

10           Q.   Okay.

11           A.   -- things on it.

12           Q.   I think that was 24 -- Exhibit 24 or 25

13   from yesterday.

14           A.   Okay.  So -- well, in that scope of

15   things there would have been some extra tabs I

16   believe at some point or another that had a

17   running --

18           Q.   These ones --

19           A.   Yes.

20           Q.   -- Exhibits 24 and 25?  I think this is

21   the one with the yellow, is 25; right?

22           A.   Yeah.  So I think like here at some

23   point would have been like the running totals of --

24           Q.   Of the --

25           A.   -- each line.

Page 37

1              Q.    Okay.

2              A.    And for whatever reason sometimes those

3      would not calculate across or down so I'd need to do

4      that --

5              Q.    So just --

6              A.    -- or help him with that.

7              Q.    -- help with the Excel skills?

8              A.    Yes.

9              Q.    Okay.  Which that's fair 'cause I need

10     that help all the time as well.  Did you ever have

11     any -- assist Jesse with altering invoices?

12             A.    No.

13             Q.    Did you -- he testified yesterday about

14     financial statements and that there was a financial

15     statement that had a bank account altered.  Did you

16     assist with that?

17                   MR. FRISK:  I object as to form.  I

18     think -- the term altered.  I think the account

19     number was redacted.

20                   MS. STANLEY:  No, I believe he said he

21     switched two of the numbers.

22                   MR. FRISK:  In an effort to redact it,

23     right.  You -- you can ask her the question.  I'm

24     just going to note my objection on there --

25                   MS. STANLEY:  Sure.

Page 38

1                MR. FRISK:  -- as to form.

2                MS. STANLEY:  I think you have done

3     that.

4          Q.   So --

5                MR. FRISK:  And you can answer to the

6     extent you independently recall.

7          A.   I have no knowledge of that.

8          Q.   So no knowledge --

9          A.   Other than what was said yesterday.

10         Q.   Okay.  So you did not assist him in --

11               MR. FRISK:  Asked and answered.

12         Q.   -- moving numbers around on financial

13    statements; is that correct?

14         A.   Correct.

15         Q.   And you had no knowledge that he had

16    done this?

17         A.   No.

18         Q.   Did you ever assist with gathering

19    documents for financial statements for...?

20         A.   Other than if he asked for like a

21    balance sheet or something, that most likely would

22    have been the extent of it.

23         Q.   Do you do the bookkeeping for CP

24    Business Management?

25         A.   CP Business Management, yes.

Page 39

```
 1              Q.   Do -- you don't do the -- do you do the
 2     bookkeeping though for Craig Properties?
 3              A.   No.
 4              Q.   Who does; do you know?
 5              A.   I wouldn't be able to specifically say.
 6     I think --
 7                   MR. FRISK:  Objection as to form.
 8     Answer only if you know.  Don't speculate.
 9              A.   No.
10                   MR. FRISK:  And then slow it down
11     because I'm slow.  I can't think of objections fast.
12     I'm like the slowest guy in the world now.
13                   THE WITNESS:  Okay.
14                   MR. FRISK:  So before you answer give
15     me a chance to at least think about it for a second.
16                   THE WITNESS:  Okay.
17                   MR. FRISK:  Thank you.
18              Q.   (Ms. Stanley continuing)  Have you
19     reviewed what's Exhibit 17 from yesterday which --
20     what's that one?
21              A.   18.
22              Q.   Oh, it must be this one.  This is the
23     declaration of Charles Aarestad.  Re:  The Mulinda
24     Notes.
25              A.   No, I have not reviewed them.
```

Page 40

1          Q.    Okay.

2                MR. FRISK:  Wait.  This is Exhibit 17.

3                MS. STANLEY:  18.  I'm -- this is 16.

4                MR. FRISK:  Oh, 16.

5                THE WITNESS:  16.

6                MR. FRISK:  Which one did you want?

7                MS. STANLEY:  Oh.

8                MR. FRISK:  17 or 16?

9                MS. STANLEY:  That says Parkside.  I

10   want the one that says Mulinda Notes.  17.  My

11   apologies.  Sorry.

12                MR. FRISK:  I don't mean to lord over

13   you but...

14                THE WITNESS:  No, that's fine.

15                MS. STANLEY:  Now we got them all

16   messed up too.

17                (Off the record.)

18          A.    Okay.

19          Q.    Is this the first time you have seen

20   Exhibit 17?

21          A.    In its entirety, yes.

22          Q.    So you just saw parts of it?

23          A.    I had seen that it was attached to an

24   email.  I have not specifically gone through it.

25          Q.    Okay.  If you look at Exhibit 1-A which

Page 41

1    is page 1 of -- there you go -- 1 of 56, are you

2    familiar with this promissory note in the sum of

3    1,477,500?

4              A.   I am to the extent that it's been

5    supplied to attorneys over the last two years.

6              Q.   Is that your signature on page 3 of the

7    promissory note?  Oh, you went one page too far.

8              A.   Appears to be.

9              Q.   Do you recall signing this note?

10             A.   I do not.

11             Q.   You don't recall signing this?

12             A.   This one I do not.

13             Q.   Do you recall signing any others?

14             A.   Yes.  I remember signing a

15   approximately 400-and-some-change-thousand-dollar

16   note and a $600,000-and-some-change note prior to all

17   these that are in this exhibit.

18             Q.   So these -- this Exhibit 1-A is dated

19   2021.

20             A.   Correct.

21             Q.   You're saying you signed a 400 and a

22   $600,000 one prior to this?

23             A.   Yes.  And not $400,000 even and

24   $600,000 even.  It was odd numbers.

25             Q.   Sure.  Sure.  Are you saying this note

Page 42

1    was fraudulently obtained in your name?

2              MR. FRISK:  Object.  Objection as to

3    form.  That calls for a legal conclusion.  You can

4    answer as a layperson to the extent you know

5    anything.

6              A.   I very vividly and very specifically

7    for whatever reason remember the 400 and $600,000

8    note.  And when the notice of default I believe came

9    out in 2024 --

10             Q.   The one from me do you mean?

11             A.   Yes.  I was extremely shocked at the

12   amounts for me.  I do not recall signing these.  I

13   have racked my brain trying to think of what in the

14   world, where was I, when did this happen.

15             MR. FRISK:  We'll just note that when

16   she said "these," she's pointing --

17             THE WITNESS:  The -- the --

18             MR. FRISK:  -- to --

19             THE WITNESS:  -- three in front of me

20   in Exhibit --

21             MR. FRISK:  Which are Exhibits...?

22             THE WITNESS:  1-A, 2-A, 3-A.

23             Q.   (Ms. Stanley continuing)  So do you have

24   any -- would you have ever had conversations with

25   Martin Peterson?

Page 43

1          A.   I did, yes.

2          Q.   And was it during this time frame?

3          A.   Yes.

4          Q.   And what do you recall of those

5   communications?

6          A.   We were working on a SBA loan.  He had

7   brought that to our attention.  When I say "our," I

8   mean mine and Jesse's.  Was working on -- so the SBA

9   was the EIDL and the PPP.  Those were two different

10  loans that he brought to our attention.

11         Q.   So that was right during COVID --

12         A.   Yeah --

13         Q.   -- is that right?

14         A.   -- it was at the end or mid 2020 if I

15  remember correctly.  Maybe the end.  And then the 400

16  and the $600,000 notes were -- I don't recall the

17  dates on those exactly, but I just remember he came

18  into the office and said:  I need your signatures.

19  This is super short term.  It will be wrapped up into

20  permanent financing.  And --

21         Q.   For the 400 and the 600?

22         A.   Yes.

23         Q.   Okay.

24         A.   And I -- like I said, I don't recall

25  these ones.  Any other communications with Martin and

Page 44

1   I were from real estate matters.  He was helping a

2   person get a loan for buying some multi-family,

3   single-family homes.

4          Q.   Do you recall -- what was the PPP loan

5   for, what entity?

6          A.   Mindy Craig Photography, and CP

7   Business Management I believe also applied for that.

8          Q.   Do you -- at the time you had a

9   photography business?

10          A.   Yes.  Still do.

11          Q.   You still do?

12          A.   Uh-huh.

13          Q.   Okay.  Is it just you as an employee?

14          A.   Correct.

15          Q.   If you look at Exhibit 1-B, this is for

16   the $1.477 million loan, and that's the one that we

17   referred to as the First Mulinda Note.

18          A.   Uh-huh.

19          Q.   Do you see the disbursements in the

20   middle there?  It indicates that there's a lot of --

21   several cashier's checks --

22          A.   I do see that.

23          Q.   -- to Craig Development.  Do you have

24   any recollection of these?

25          A.   I do not.

Page 45

1          Q.   Any reason to dispute that these checks

2     were issued to Craig Development?

3          A.   I -- I would not be able to answer that

4     'cause I don't -- these don't look familiar to me.

5          Q.   Okay.   Do you have any reason to think

6     anyone forged your signature on that document?

7          A.   It looks like my signature.   I -- like

8     I said, I have racked my brain trying to remember

9     meeting with Martin, seeing Martin.   With these large

10    dollar amounts I certainly would believe that

11    something that large would stick out, but as far as

12    forging I -- I don't know.

13         Q.   Have you asked Jesse if he forged your

14    signature on these documents?

15         A.   Specifically, no.

16         Q.   Have you asked Jesse how these -- if he

17    recalls how these loans came about?

18         A.   There was roundtable discussion I

19    guess, and it was that more or less it was supposed

20    to have been rolled into permanent financing.   And

21    that's about the extent of anything, the conversation

22    went.

23         Q.   And when you say roundtable discussion,

24    what do you mean by that?

25         A.   It was:   Where did these amounts come

Page 46

1   from?  I don't remember signing these.  I thought I

2   had a 400 and a 600?  And he just said:  I thought

3   those were taken care of in permanent financing.

4          Q.   So did he acknowledge to you though

5   that the note -- or that those loans had been issued?

6          A.   Yes.

7          MR. FRISK:  Well, I'm going to --

8   mischaracterizes the testimony.  When you say --

9          MS. STANLEY:  She said "yes" so...

10          MR. FRISK:  Okay.  Well, but she also

11   testified that -- that she didn't know anything about

12   that and she thought that they had gone into

13   permanent financing so...

14          MS. STANLEY:  Okay.  Let's -- what time

15   is it?

16          THE WITNESS:  9:42.

17          MS. STANLEY:  Okay.

18          MR. FRISK:  I have 10:30.  And I can

19   run over to court and be back.  So if we can go to

20   10:30 -- 10:25, take my break, I'll run over to court

21   and I will run up to the clerk and tell her to get me

22   in right away.  It's just a pretrial, setting it for

23   trial.

24          MS. STANLEY:  Yeah.  Okay.  Let me --

25   let me take like a five-minute --

Page 47

1                    MR. FRISK:  Sure.

2                    MS. STANLEY:  -- ten-minute one.  9:42

3       so 9:50?

4                    MR. FRISK:  Yeah, I'm good.

5                    MS. STANLEY:  Okay.

6                    (Off the record from 9:42 a.m. to

7       10:03 a.m.)

8            Q.   (Ms. Stanley continuing)  You had

9       mentioned something about SBA loans and talking to

10      Martin about SBA loans; correct?

11           A.   Yes.

12           Q.   And you thought that was -- what did

13      you think that was for again?

14           A.   The EIDL I believe it was.

15           Q.   The EIDL loans --

16           A.   Yes.

17           Q.   -- the emergency ones?

18           A.   Yes.

19           Q.   I'm going to give you -- let's mark

20      this as...  Well, hang on.  Let me make sure I got

21      the right one.  Exhibit 29.

22                       (Whereupon, Deposition Exhibit

                         29 was marked for identification

23                       by the court reporter.)

24                    MS. STANLEY:  I just wrote 29 on that

25      for you.  Do you want one too, Dan?

Page 48

1              MR. FRISK:  I'll just share.

2         Q.   (Ms. Stanley continuing)  Okay.  If you

3    look -- let me find the page for you, if that's okay.

4         A.   Yeah.  Oh, I'm sorry.

5         Q.   Yeah.  No, no.

6              MS. CATHCART:  What page is that?

7              MS. STANLEY:  It's kind of in the

8    middle and it says page 1.  These forms are always

9    interesting.  Wait a minute.  Do you start out

10   page -- at the beginning page 2 and then it's a

11   $1.477 million loan or are the pages all mixed up?

12   Look at the second -- no, no, you're only front.

13   Second page.

14             MR. FRISK:  She's looking.

15             MS. STANLEY:  Is that a 1.477...?

16             MS. CATHCART:  Yeah.

17             MS. STANLEY:  Okay.  So let's look at

18   that.

19             MS. CATHCART:  So page 2?

20             MS. STANLEY:  Yes.

21        Q.   (Ms. Stanley continuing)  Are you

22   familiar with having made an SBA loan application for

23   this sum of money with Martin -- the assistance of

24   Martin Peterson?

25        A.   I believe that this was not approved.

Page 49

1    The SBA kicked it back.

2            Q.    The SBA what?

3            A.    Kicked it back or --

4            Q.    Okay.

5            A.    -- said it wasn't --

6            Q.    But did you apply for this?

7            A.    -- eligible or something like that.

8    Yes --

9            Q.    Okay.

10           A.    -- I do recognize this under direction

11   of Martin.

12           Q.    And it indicates this was for working

13   capital; is that right?  In the middle there,

14   "Purpose of the loan."

15           A.    That's what Martin put in, yes.

16           Q.    Okay.  And was that working capital for

17   your Mindy Photography business or was this for

18   construction of the Watertown projects?

19           A.    Is there another page that goes with

20   this?  Because I believe it had -- there was one for

21   Mindy Craig Photography.

22               MR. FRISK:  And I'll just object to the

23   form.  It calls for speculation.  She can't find

24   the first page.

25           A.    Truly I don't recall what the purpose

Page 50

1    was.  You'd have to ask Martin.

2            Q.    (Ms. Stanley continuing)  So you signed

3    it, but you don't recall what the purpose was for?

4            A.    Not off the top of my head.

5            Q.    And that's your signature though on

6    page -- I believe it's page 5.

7            A.    Yes.

8            Q.    And do you see on page 5 that...

9            A.    Yep, you can go ahead.

10           Q.    You're on page 5?

11           A.    Yep, page 5.

12           Q.    Okay.

13           A.    The signature page?

14           Q.    Yep.

15           A.    Yep.

16           Q.    Do you see where it has the

17    Representations section at the top?

18           A.    Yes.

19           Q.    And does it say, "All SBA loan proceeds

20    will be used only for business related purposes as

21    specified in the loan application"?

22           A.    Yes.

23               MR. FRISK:  You're asking her if she

24    sees that on page 5?

25               MS. STANLEY:  Yes.

Page 51

```
 1              Q.    (Ms. Stanley continuing)  And you're
 2     not looking at page 5.  This is page 5.
 3              A.    Yes, I do see that.
 4              Q.    Okay.  And can you read the Accuracy
 5     Certification section on page 5, please?
 6              A.    I certify -- certify that the
 7     information provided in this application and the
 8     information I have provided in all supporting
 9     documents and forms is true and accurate.  I realize
10     that the penalty for knowingly making a false
11     statement to obtain a guaranteed loan from the SBA is
12     that I may be fined up to $250,000 and/or be put in
13     jail for up to 5 years under 18 USC 1001; under 15
14     USC 645 by imprisonment of not more than two years
15     and/or a fine of not more than 5,000; and, if false
16     statements are submitted to a Federally insured
17     institution, I may be fined up to 1 million and/or be
18     put in jail for up to 30 days under 18 USC 1014.
19              Q.    So you -- I just want to confirm.  You
20     made this application --
21              A.    Uh-huh.
22              Q.    -- but you don't know the reason for
23     it?
24              MR. FRISK:  Objection as to form.
25     Mischaracterizes her testimony.  She already said she
```

Page 52

1   wasn't sure if this was for the photography business

2   or not, and it clearly doesn't have the page on it.

3   You can answer to the extent you remember.

4          A.   The extent of what I recall was that

5   Martin put together the application, and what it was

6   for -- to be used for says working capital.  That's

7   the extent of what I recall.

8          Q.   And you -- you recall signing it?

9          A.   Yes, I believe so.

10          MS. STANLEY:  Let's mark this one as

11   30.

12               (Whereupon, Deposition Exhibit

                  30 was marked for identification

13               by the court reporter.)

14          Q.   (Ms. Stanley continuing)  I'll give it

15   to you.  Make sure you put that one --

16          A.   Yes.

17          Q.   -- back together.  Okay.  You are

18   looking at Exhibit 30; correct?

19          A.   Yes.

20          Q.   And if you look at page 2, is this for

21   a -- the amount of loan request on this one indicates

22   1,652,500?

23          A.   Yes.

24          Q.   Okay.  And does that again indicate the

25   purpose of the loan was for working capital?

Page 53

1          A.   Yes.

2          Q.   And did you -- is this your signature

3    on page 5?

4          A.   Appears to be.

5          Q.   Okay.  Do you know on this one what the

6    purpose of the loan was for?

7          A.   Just by the page 2 stating working

8    capital.

9          Q.   And you submitted this application for

10   SBA funds; correct?  Or gave permission for Martin

11   Peterson to submit it?

12         A.   I don't recall this one.

13         Q.   You recall the one that we just looked

14   at?

15         A.   I recall filling out an application for

16   an SBA, but I don't recall multiples.

17         Q.   You only recall one?

18         A.   One.

19         Q.   And you don't -- do you remember the

20   amount of the one that was submitted?

21         A.   I think it was this first one.

22         Q.   The 1.6?

23         A.   Point 4.

24         Q.   Oh, the first one was Exhibit 29,

25   1.477?

Page 54

1           A.   Yep, I don't remember -- I believe that

2      was -- well, judging by the dates that was the first

3      one.  The amounts, I -- I couldn't attest to you.  I

4      just remember filling out one application.

5           Q.   Okay.  If we look on page 6, does that

6      look like your handwriting?

7           A.   Appears to.

8           Q.   And then page 8, again the

9      representations, acknowledgments and authorizations?

10          A.   Appears to.

11               MR. FRISK:  On 8?  You mean 8?

12               MS. STANLEY:  Yes, there's a signature

13     page on page 8.

14               MR. FRISK:  Oh, I thought you said 6.

15               MS. STANLEY:  There's one on 6 as well.

16     Or not -- there's writing on page 6.

17               MR. FRISK:  Oh.

18               MS. STANLEY:  Not signature but

19     initials.  All right.  And let's do one more.  This

20     is 31?

21               THE REPORTER:  Correct.

22                   (Whereupon, Deposition Exhibit

                         31 was marked for identification

23                       by the court reporter.)

24          Q.   (Ms. Stanley continuing)  And I notice

25     you're looking at the exhibits --

Page 55

1          A.    Yeah --

2          Q.    -- for --

3          A.    -- I'm looking at my signature and I'm

4    also looking at the dates to see if they coordinate,

5    are the same, if it would have been all in one time

6    when the signing.  And even just jogging my memory as

7    to what the world...

8          Q.    Here's Exhibit 31.  Just make sure I

9    got the right numbers.  Here's 31.  And if you look

10   on page 2 of 31, does this appear to be a loan

11   request -- SBA loan request from Mulinda Sue Craig in

12   the sum of $1,321,100?

13         A.    Yes.

14         Q.    And if you look on page 5, does that

15   appear to be your signature?

16         A.    It does appear, but it looks like it

17   was either transferred -- it doesn't look like a wet

18   signature so I'm not sure.  It's not as clear as the

19   other ones so I don't know.

20         Q.    Okay.  Let's look at page 6.  Does that

21   appear to be your writing on page 6?

22         A.    Yeah, again it almost looks like it was

23   transferred.  Not as clear as the other ones.

24         Q.    So --

25         A.    It appears to be my initialing, but the

Page 56

1    other ones were very specifically clear.  These ones

2    are very -- not.

3                MR. FRISK:  Well, just let the record

4    reflect that Exhibit 29 and 30 and 31 were

5    photocopies.  We don't have the originals.

6                MS. STANLEY:  That's true.  They're not

7    here today.

8           Q.   (Ms. Stanley continuing)  Please look at

9    page 8.  Does that appear to be your signature?

10          A.   Appears to, but again it looks odd.

11          Q.   It looks like it's been photocopied

12   multiple times --

13          A.   Yeah.

14          Q.   -- is that correct?

15          A.   Yeah.

16          Q.   Okay.  Do you have any recollection of

17   making this request for an SBA loan in that sum of

18   $1.321 million?

19          A.   That does not ring a bell to me.

20          Q.   And this one indicates the purpose of

21   the loan was for working capital again; is that

22   correct?

23          A.   That is what the paperwork states.

24          Q.   Would there be any reason that Mindy

25   Photography would need loans in these amounts?

Page 57

```
 1          A.   No.  Is there a business tax ID on any
 2   of them --
 3          Q.   Not that I have seen.
 4          A.   -- that the bank has?
 5          Q.   No.
 6          A.   'Cause the bank would have the
 7   originals of these; correct?
 8          Q.   (Indicating.)
 9          A.   And in the loan file is there any
10   documentation --
11          Q.   If there was --
12          A.   -- as to what it's for?
13          Q.   My understanding of the forms is -- if
14   you look at page 9, that is where if it was on behalf
15   of an entity that would be filled out.  But that's
16   just my understanding of the forms.  So would --
17   would you have submitted loan applications for these
18   amounts on behalf of Mindy Photography?
19          A.   Not for these amounts, no.
20          Q.   Was there any other business you would
21   have submitted these on behalf of?
22          A.   No.  The PPP was for Mindy Craig
23   Photography, and I believe CP Business Management
24   also got one.
25
```

Page 58

1                    (Whereupon, Deposition Exhibit

                     32 was marked for identification by

2                    the court reporter.)

3           Q.   (Ms. Stanley continuing)  Handing you

4    what's been marked as Exhibit 32, and can you

5    identify what this document is?  Oh, sorry.

6           A.   It is a check from Craig Development

7    for $600.

8           Q.   Made out to who?  I can't...

9           A.   Brady Punt.

10          Q.   P-u-n-t?

11          A.   Yes.

12          Q.   Is this your handwriting?

13          A.   Yes.

14          Q.   What is -- who's Brady Punt?

15          A.   Was a horse trainer, owner.

16          Q.   Who -- is this somebody that you used

17   as a horse trainer, owner?

18          A.   No.

19          Q.   Who -- why would Craig Development make

20   a payment for $600 to Brady Punt?

21          A.   Good question.  As Jesse stated

22   yesterday, he uses the 824 out of the Craig

23   Development checking in the Yardi system --

24          Q.   Uh-huh.

25          A.   -- for personal expenses.  This would

Page 59

1    have been one of those instances.

2              Q.    And you wrote the check out though?

3              A.    It looks like I did.

4              Q.    Can you recall other instances where --

5    or did you not indicate you were not authorized or

6    are you authorized to write on the Craig Development

7    account?

8              A.    I may have been back then.  I'm not

9    currently now to my knowledge.  And if they didn't

10   kick it back, I must be or must have been.

11             Q.    Well, is that your -- I mean, is that

12   how you sign?  The authorized signature, is that you

13   signing in your name or is that you signing Jesse's

14   name?

15             A.    That's me signing mine.

16             Q.    That's your --

17             A.    -- signature.  But it's shortened over

18   the years.

19             Q.    Okay.  Do you recall making other

20   payments out of the Craig Development account?

21   Writing other checks I should say.

22             A.    If I did, it would have been Jesse

23   handing me a check for whatever the case may have

24   been.

25             Q.    So are the -- the horse interaction, is

```
                                               Page 60

 1    that Jesse doing that or, I mean, who -- who rides

 2    the horses?

 3              A.   Our daughters.

 4              Q.   The younger twins?

 5              A.   Yes.

 6              Q.   Okay.  Both of them?

 7              A.   Yes.

 8              Q.   Do you ride horses?

 9              A.   No.

10              Q.   Does Jesse ride horses?

11              A.   He does not.

12                   (Whereupon, Deposition Exhibit

                      33 was marked for identification

13                    by the court reporter.)

14              MR. FRISK:  Do you want to take -- you

15    guys want to take your midmorning right now and let

16    me run over?

17              MS. STANLEY:  You need to run?  Okay.

18                   (Off the record from 10:23 a.m. to

19    10:57 a.m.)

20              MS. STANLEY:  It is 10:57.  We're back

21    on the record.  Mr. Frisk hurried back from a

22    scheduling conference so thank you for hurrying back.

23              Q.   (Ms. Stanley continuing)  I'm handing

24    you what's been marked as Exhibit 33.  Is that your

25    handwriting on Exhibit 33?
```

Page 61

```
1           A.   Yes.

2           Q.   And can you identify the document?

3           A.   It's a check from Craig Development for

4     $9,000.

5           Q.   And made out to...?

6           A.   I think it's Nichole Mathison.

7     Mathiason.

8           Q.   And it looks like it says "3 saddles"

9     to me.  Is that right?

10          A.   Yes.

11          Q.   Okay.  Does this ring any bells?

12          A.   Vaguely.

13          Q.   And was that -- so the authorized

14    signature, is that you signing your name or are you

15    signing Jesse's name?

16          A.   My name.

17          Q.   Okay.  So you were authorized to write

18    this check?

19          A.   I believe this is the same time frame

20    as Exhibit 32.  And at the time I may have had

21    signature authority.  I can't recall.  The bank

22    didn't kick it back so I must have.

23          Q.   Did you remove yourself from having

24    signatory authority?

25          A.   No.  No, not that I recall.  I just
```

Page 62

```
 1   can't recall how the checking account was set up
 2   initially.  I don't recall.
 3            Q.   Do you have recollection of any other
 4   checks that you may have written for Craig
 5   Development or Craig Properties?
 6            A.   In what time frame?
 7            Q.   In 2020 to 2024.
 8            A.   Yes.  I don't know about Craig
 9   Properties though.  Craig Development, yes.  Craig
10   Properties, I don't believe there should have been
11   any on Craig Properties.  I wouldn't have access to
12   that check -- or a check blank at all.
13            Q.   And I think earlier -- just remind me.
14   Earlier I think you testified that you don't recall
15   ever getting payments to you from either Craig
16   Development or Craig Properties.  To you in your
17   individual capacity.
18            A.   You asked for Craig Properties --
19            Q.   Okay.
20            A.   -- not Craig Development.
21            Q.   Did you -- in that time frame of 2020
22   to '24 did you receive funds from Craig Development?
23            A.   Yes.
24            Q.   What was the purpose?
25            A.   Multitude of reasons.  To pay down the
```

Page 63

1    car loans.  To -- or -- yes, pay down car loans, but

2    like they're monthly payments.  Reimbursement for

3    random expenses.  I mean, it all -- like I said, if

4    anything, it went through the 824 account.  So it was

5    in our Yardi system.  Or Jesse's part of the Yardi

6    system.  'Cause we have two different ones.  It would

7    all be tracked in there as to what it was for, how

8    much or whatnot.

9           Q.   Is the Yardi system -- you have this

10    for both Craig Development and Craig Properties?

11           A.   We have two separate systems,

12    completely separate systems.  It's -- yes, it's Yardi

13    software, but there are two logins, there two -- they

14    don't cross over at all.  I don't have it on my

15    computer.  I don't have access to it.  And likewise

16    for CP Business Management, Craig Development doesn't

17    have a login or access to it.

18           Q.   So the Yardi software is used for

19    Craig -- CP Business --

20           A.   Yes.

21           Q.   -- correct?

22           A.   Yes.

23           Q.   Okay.  And it's also used for Craig

24    Properties?

25           A.   Craig Properties, I don't know how

Page 64

1    their account is set up, but there's different

2    subcategories.  I don't know if it's a Craig

3    Properties heading or if it's a Craig Development

4    heading or if it's just a Craig heading.  I don't

5    know.

6            Q.   Uh-huh.  Okay.

7            A.   And then all the different

8    subcategories for the different checking accounts,

9    entities, buildings, bank account, all of it.  And

10   same thing for CP Business Management.

11           Q.   So is there like two -- two licenses?

12           A.   Uh-huh.

13           Q.   One for --

14           A.   Yes.

15           Q.   Okay.  And is Jesse the only one who

16   has access to the Craig one, Craig Properties, Craig

17   Development one?

18           A.   Jordan would also have access.  And I

19   believe anyone that she's had working under her over

20   numerous years may have had access.  Just -- you can

21   limit certain aspects and scopes to just seeing

22   maintenance, just seeing tenants, just seeing bank

23   account information, just seeing financials, all

24   that.

25           Q.   Okay.  Interesting.  So I -- you said I

Page 65

1   had asked you about Craig Properties --

2          A.    Correct.

3          Q.    -- and that you had not received any

4   funds from Craig Properties to your recollection.

5          A.    Not that I can recall.

6          Q.    Okay.  And then just to clarify.  You

7   have received funds though from Craig Development?

8          A.    Yes.

9          Q.    And they were during that time period

10  of 2020 to 2024?

11         A.    Would have been vehicle payments that

12  get written out to me, and then they come out of my

13  bank account as auto payments.  And then just like I

14  said random personal expenses.  I don't even -- I

15  couldn't even tell you what else.

16         Q.    But you weren't --

17         A.    Is there something specific that you're

18  asking --

19         Q.    Well, you --

20         A.    -- that I can help?

21         Q.    -- you weren't doing any work for Craig

22  Development; right?

23         A.    No.

24         Q.    So these were gifts?

25                MR. FRISK:  Objection to form.  She's

Page 66

1   previously testified that the nature of these were

2   just personal expense reimbursements, not gifts, and

3   that's -- that would have legal connotations if they

4   were not -- if they were gifts.  We know what they

5   were.  They were just reimbursements for stuff.

6           Q.    (Ms. Stanley continuing)  Well, when

7   you say reimbursements for stuff, were they things

8   that you had paid on behalf of Craig Development that

9   you are asking for it to reimburse you?

10          A.    No.  It would have been Jesse paying

11  for whatever the item was that maybe I personally

12  paid for.  It went on my credit card or my debit card

13  or whatever the case may have been.

14          Q.    So were these things to benefit Craig

15  Development or to benefit Jesse in his individual

16  capacity?

17          MR. FRISK:  Objection as to form.

18  She's previously testified that there's a subcategory

19  of personal expenses that Jesse uses his account for.

20  Go ahead and answer to the extent you can.  And I

21  don't remember what the question was so...

22          A.    A little bit of both.  I can't recall

23  anything specifically off the top of my head to give

24  as an example for Craig Development specifically

25  paying for versus Jesse Craig and the 824 out of the

Page 67

1    Craig Development account paying for.  Even some
2    random things in Watertown, the lake home.  I can't
3    recall specifically.
4            Q.  (Ms. Stanley continuing)  So is 824
5    the -- like the accounting number for Craig
6    Development?
7            A.   824 is a...
8            Q.   Like the Yardi number or something?
9            A.   Yeah.  Yes --
10            Q.   Okay.
11            A.   -- would be the best I guess, the
12    terminology for that.
13            Q.   What's the one for Craig Properties?
14            A.   That one I don't -- I don't know.  I
15    don't know how Craig Properties subcategorizes
16    anything.
17            Q.   Do you...
18            MS. STANLEY:  Well, let's mark this
19    one.  This is...?
20            THE REPORTER:  34.
21                (Whereupon, Deposition Exhibit
                    34 was marked for identification by
22                the court reporter.)
23            Q.   (Ms. Stanley continuing)  I'm giving
24    you Exhibit 34.  Can you identify this document?
25            A.   It's a Craig Development check.

Page 68

1          Q.   Made out to...?

2          A.   Crown Jewels.

3          Q.   And it's dated it looks like June 29th

4    of 2022.

5          A.   Yes.

6          Q.   Did you receive any jewelry on this

7    date, on or about this time from Jesse?

8          A.   I don't believe so.

9          Q.   Are you aware of any jewelry purchases

10   by Jesse around this time for anything else?

11         A.   You would have to ask him specifically.

12   I know that he helped his now son-in-law with some

13   jewelry, but I don't know --

14         Q.   Like buying --

15         A.   -- a date.

16         Q.   -- buying jewelry for --

17         A.   Yes.

18         Q.   -- other people?

19         A.   Yes.

20         Q.   Is this Jesse's signature?

21         A.   Yes.

22         Q.   Are you aware of other personal

23   expenses similar to this coming out of the Craig

24   Development, LLC account?

25         A.   I would not be aware.  I couldn't tell

Page 69

1    you.

2                    MS. STANLEY:  I have no further

3    questions.

4                    MR. FRISK:  We'll read and sign.  And

5    then I think Mac's office gets a -- wants a copy.

6                    MS. CATHCART:  Yeah.

7                    MR. FRISK:  I don't necessarily.  I

8    don't need a copy.

9                    (Whereupon, the deposition of MULINDA

10   CRAIG was concluded at 11:07 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 70

1                    REPORTER'S CERTIFICATE
2

STATE OF NORTH DAKOTA )
3                             )
COUNTY OF CASS        )
4
5            I hereby certify that I reported the
deposition of MULINDA CRAIG on September 24, 2025, at
6    the Vogel Law Firm, Fargo, North Dakota, and that the
witness was by me first duly sworn to tell the whole
7    truth;
8            That the testimony was transcribed by me
and is a true record of the testimony of the witness;
9
             That the cost of the original has been
10   charged to the party who noticed the deposition, and
that all parties who ordered copies have been charged
11   at the same rate for such copies;
12           That I am not a relative or employee or
attorney or counsel of any of the parties, or a
13   relative or employee of such attorney or counsel;
14           That I am not financially interested in the
action and have no contract with the parties,
15   attorneys or persons with an interest in the action
that affects or has a substantial tendency to affect
16   my impartiality;
17           That the right to read and sign the
deposition transcript by the witness was reserved.
18
             WITNESS MY HAND AND SEAL THIS 26th day of
19   September, 2025.
20
21
22
23   Charla A. Pawlik, RPR
Notary Public
24   Cass County, North Dakota
My commission expires September 4, 2026.
25

Page 71

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313


September 26, 2025


To: Maurice VerStandig


Case Name: Generations On 1St LLC, Et Al v.


Veritext Reference Number: 7619968


Witness:  Mulinda Craig       Deposition Date:  9/24/2025


Dear Sir/Madam:

Enclosed please find a deposition transcript.  Please have the witness

review the transcript and note any changes or corrections on the

included errata sheet, indicating the page, line number, change, and

the reason for the change.  Have the witness' signature notarized and

forward the completed page(s) back to us at the Production address
shown
above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of

this letter, the reading and signing will be deemed waived.

Sincerely,
Production Department



NO NOTARY REQUIRED IN CA

Page 72

1                          DEPOSITION REVIEW
                     CERTIFICATION OF WITNESS
2
         ASSIGNMENT REFERENCE NO: 7619968
3        CASE NAME: Generations On 1St LLC, Et Al v.
         DATE OF DEPOSITION: 9/24/2025
4        WITNESS' NAME: Mulinda Craig
5        In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7        I have made no changes to the testimony
   as transcribed by the court reporter.
8

   _____          _____
9  Date                     Mulinda Craig
10       Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
         They have read the transcript;
13       They signed the foregoing Sworn
               Statement; and
14       Their execution of this Statement is of
               their free act and deed.
15
         I have affixed my name and official seal
16
   this _____ day of_____, 20____.
17

                     _____
18                   Notary Public
19                   _____
                     Commission Expiration Date
20
21
22
23
24
25

Page 73

```
 1              DEPOSITION REVIEW
              CERTIFICATION OF WITNESS
 2
          ASSIGNMENT REFERENCE NO: 7619968
 3        CASE NAME: Generations On 1St LLC, Et Al v.
          DATE OF DEPOSITION: 9/24/2025
 4        WITNESS' NAME: Mulinda Craig
 5        In accordance with the Rules of Civil
     Procedure, I have read the entire transcript of
 6   my testimony or it has been read to me.
 7        I have listed my changes on the attached
     Errata Sheet, listing page and line numbers as
 8   well as the reason(s) for the change(s).
 9        I request that these changes be entered
     as part of the record of my testimony.

10
          I have executed the Errata Sheet, as well
11   as this Certificate, and request and authorize
     that both be appended to the transcript of my
12   testimony and be incorporated therein.
13   _____        _____
     Date                   Mulinda Craig
14
          Sworn to and subscribed before me, a
15   Notary Public in and for the State and County,
     the referenced witness did personally appear
16   and acknowledge that:
17        They have read the transcript;
          They have listed all of their corrections
18            in the appended Errata Sheet;
          They signed the foregoing Sworn
19            Statement; and
          Their execution of this Statement is of
20            their free act and deed.
21        I have affixed my name and official seal
22   this _____ day of_____, 20_____.
23        _____
          Notary Public
24
          _____
25        Commission Expiration Date
```

Page 74

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS MIDWEST

ASSIGNMENT NO: 7619968

PAGE/LINE(S) /        CHANGE        /REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____        _____

Date                     Mulinda Craig

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____

DAY OF _____, 20_____ .

_____

Notary Public

_____

Commission Expiration Date

[& - 58]                                                                                    Page 1

| & | | | |
| --- | --- | --- | --- |

**&**

**&**   2:9

**1**

**1**   40:25 41:1,1
  41:18 42:22
  44:15 48:8
  51:17
**1,321,100**   55:12
**1,477,500**   41:3
**1,500**   24:25
  25:11
**1,652,500**   52:22
**1.321**   56:18
**1.477**   44:16
  48:11 53:25
**1.477...**   48:15
**1.6**   53:22
**10**   17:22
**1001**   51:13
**1014**   51:18
**10:03**   47:7
**10:23**   60:18
**10:25**   46:20
**10:30**   46:18,20
**10:57**   60:19,20
**11**   1:5,9,12
**1100**   71:1
**11:07**   69:10
**1389**   2:16
**15**   9:6 51:13
**16**   10:2 40:3,4
  40:5,8

**1630**   2:5
**17**   10:2 14:8
  27:9 39:19
  40:2,8,10,20
**17952**   70:22
**18**   39:21 40:3
  51:13,18
**1820**   71:2
**1919**   3:11,13,15
**1st**   1:4 16:2
  71:6 72:3 73:3

**2**

**2**   42:22 48:10
  48:19 52:20
  53:7 55:10
**20**   10:6 20:22
  72:16 73:22
  74:22
**200**   2:10
**2010**   5:11 7:18
  8:8,10 9:3
**2014**   9:5,14,15
**2015**   10:3,6
**2016**   9:19 10:6
  14:8 27:9
**2017**   9:19
**2020**   27:13
  43:14 62:7,21
  65:10
**2021**   20:22,22
  41:19
**2022**   68:4

**2024**   27:13
  42:9 62:7
  65:10
**2025**   1:22 70:5
  70:19 71:4
**2026**   70:24
**216-523-1313**
  71:3
**218**   2:16
**24**   1:22 36:12
  36:12,20 62:22
  70:5
**25**   36:12,20,21
**25-30002**   1:4
**25-30003**   1:8
**25-30004**   1:11
**250,000**   51:12
**26**   71:4
**26th**   70:18
**29**   3:11 47:21
  47:22,24 53:24
  56:4
**29th**   68:3

**3**

**3**   12:15,15 41:6
  42:22 61:8
**30**   3:13 51:18
  52:11,12,18
  56:4
**31**   3:15 54:20
  54:22 55:8,9
  55:10 56:4

**32**   3:17 58:1,4
  61:20
**33**   3:19 60:12
  60:24,25
**34**   3:21 67:20
  67:21,24
**34th**   2:10
**38**   7:12

**4**

**4**   3:5 53:23
  70:24
**4-15-21**   3:12
**400**   41:15,21
  42:7 43:15,21
  46:2
**400,000**   41:23
**44114**   71:2
**45**   6:8
**47**   3:11

**5**

**5**   50:6,8,10,11
  50:24 51:2,2,5
  51:13 53:3
  55:14
**5,000**   51:15
**5-15-21**   3:16
**50**   13:21
**50-50**   13:21
**52**   3:13
**54**   3:15
**56**   41:1
**58**   3:17

[58078 - appear]                                    Page 2

**58078**  2:11
**58102**  2:5
**58107**  2:17

**6**

**6**  54:5,14,15,16
  55:20,21
**6-15-21**  3:14
**6-29-22**  3:22
**6-8-22**  3:17
**60**  3:19
**600**  43:21 46:2
  58:7,20
**600,000**  41:16
  41:22,24 42:7
  43:16
**645**  51:14
**665**  3:20
**669**  3:18
**67**  3:21

**7**

**7619968**  71:7
  72:2 73:2 74:2

**8**

**8**  54:8,11,11,13
  56:9
**820**  2:10
**824**  58:22 63:4
  66:25 67:4,7
**838**  3:22
**8:51**  4:3

**9**

**9**  57:14
**9,000**  61:4
**9/24/2025**  71:8
  72:3 73:3
**9:50**  47:3

**a**

**a.m.**  4:3 47:6,7
  60:18,19 69:10
**aarestad**  2:21
  39:23
**ability**  7:9 26:6
**able**  23:6 39:5
  45:3
**above**  71:17
**access**  11:18
  13:8,12 20:1
  30:25 62:11
  63:15,17 64:16
  64:18,20
**accordance**
  72:5 73:5
**account**  13:1
  22:20 23:5,13
  23:17,18 24:14
  24:15,18 37:15
  37:18 59:7,20
  62:1 63:4 64:1
  64:9,23 65:13
  66:19 67:1
  68:24
**accounting**
  18:13 67:5

**accounts**  64:8
**accuracy**  51:4
**accurate**  51:9
**acknowledge**
  46:4 72:11
  73:16
**acknowledg...**
  54:9
**act**  72:14 73:20
**action**  70:14,15
**actually**  14:24
  16:15 32:7
**address**  71:15
**administered**
  1:5,9
**advertisement**
  27:18,20
**affect**  26:6
  70:15
**affects**  70:15
**affixed**  72:15
  73:21
**agency**  29:13
**agent**  26:23
**agree**  17:25
**ahead**  50:9
  66:20
**al**  71:6 72:3
  73:3
**alcohol**  7:6
**allocated**  12:23
  15:6,15
**altered**  37:15
  37:18

**altering**  37:11
**altra**  23:19,23
**ambiguous**
  21:1
**amount**  21:3
  31:20 32:15
  52:21 53:20
**amounts**  22:11
  32:18 42:12
  45:10,25 54:3
  56:25 57:18,19
**answer**  7:9
  19:3 20:13
  21:3 22:6,23
  22:25 24:6
  32:24 38:5
  39:8,14 42:4
  45:3 52:3
  66:20
**answered**
  22:12 38:11
**anybody**  28:1
**anymore**  36:4
**anyway**  8:2
  33:21
**apartments**
  26:1,7,8
**apologies**  19:12
  40:11
**appear**  55:10
  55:15,16,21
  56:9 72:11
  73:15

**[appears - brain]** Page 3

**appears** 41:8 53:4 54:7,10 55:25 56:10
**appended** 73:11,18
**application** 48:22 50:21 51:7,20 52:5 53:9,15 54:4
**applications** 57:17
**applied** 44:7
**apply** 49:6
**approved** 48:25
**approximately** 41:15
**area** 5:2
**arrangement** 15:3,18
**asked** 9:24 22:12 38:11,20 45:13,16 62:18 65:1
**asking** 21:1 22:16 50:23 65:18 66:9
**asks** 11:1
**aspects** 64:21
**assignment** 72:2 73:2 74:2
**assist** 18:3,3,19 37:11,16 38:10 38:18

**assistance** 18:6 48:23
**assistant** 5:22
**attached** 40:23 73:7
**attention** 43:7 43:10
**attest** 23:6 54:3
**attorney** 6:21 70:12,13
**attorneys** 2:4,9 2:15 41:5 70:15
**authority** 11:9 11:13 30:20 61:21,24
**authorizations** 54:9
**authorize** 73:11
**authorized** 59:5,6,12 61:13,17
**auto** 65:13
**ave** 71:1
**avenue** 2:5,10 2:16
**aware** 22:16 68:9,22,25

**b**

**b** 2:5 3:8 44:15
**back** 5:4 34:14 46:19 49:1,3

52:17 59:8,10 60:20,21,22 61:22 71:15
**background** 6:13
**bad** 19:12 33:14
**balance** 38:21
**bank** 2:14 20:15,21 22:20 23:19 24:18,22 37:15 57:4,6 61:21 64:9,22 65:13
**banker** 9:20 10:10,13 14:3
**banker's** 10:4
**banking** 13:9 13:11 20:1 21:22
**bankruptcy** 1:1 1:4,7,11 2:4
**based** 16:24
**beginning** 10:23 48:10
**behalf** 33:15 57:14,18,21 66:8
**believe** 8:12 10:6,11 11:11 13:6,6 14:1,11 14:11 15:1 26:22 27:9 28:6,17 29:23

33:5 36:16 37:20 42:8 44:7 45:10 47:14 48:25 49:20 50:6 52:9 54:1 57:23 61:19 62:10 64:19 68:8
**bell** 56:19
**bells** 61:11
**benefit** 66:14 66:15
**best** 67:11
**big** 12:8,13 35:19 36:9
**bit** 8:23 9:10 25:15 66:22
**blank** 62:12
**blur** 7:16
**bookkeeping** 38:23 39:2
**born** 4:20 9:6
**bottom** 35:14 35:17
**box** 2:16 30:16 30:21,25
**boxes** 30:13,14 30:15
**brady** 3:17 58:9,14,20
**brain** 42:13 45:8

[break - commenced]                                                           Page 4

| | | | |
|---|---|---|---|
| **break**  46:20 | **capacity**  62:17 | **chance**  39:15 | 44:21 45:1 |
| **broad**  34:2 | 66:16 | **change**  14:2,3 | 59:21 62:4 |
| **brokerage**  28:9 | **capital**  49:13 | 15:21 41:15,16 | **christianna**  2:6 |
| 28:10 | 49:16 52:6,25 | 71:13,14 73:8 | 2:6 |
| **brought**  43:7 | 53:8 56:21 | 74:3 | **civil**  72:5 73:5 |
| 43:10 | **car**  23:13,14,16 | **changed**  14:2 | **clarify**  33:11 |
| **buildings**  64:9 | 63:1,1 | 18:13 25:14 | 65:6 |
| **business**  9:9,17 | **card**  66:12,12 | **changes**  14:18 | **classes**  6:4 27:1 |
| 9:18 10:8,14 | **care**  46:3 | 71:12 72:7 | 28:13,15 |
| 11:24 13:1,15 | **caren**  2:17 | 73:7,9 | **clear**  22:25 |
| 13:17 14:5,9 | 12:17 35:23 | **changing**  18:11 | 55:18,23 56:1 |
| 14:24 15:5,9 | **case**  1:5 25:6 | **chapter**  1:5,9 | **clearly**  52:2 |
| 16:6,17 17:3 | 59:23 66:13 | 1:12 | **clerical**  33:13 |
| 19:22 24:11,18 | 71:6 72:3 73:3 | **characterizati...** | 33:14 |
| 25:25 26:20 | **cash**  20:16 | 18:1 | **clerk**  46:21 |
| 27:18,20 29:6 | **cashier's**  44:21 | **charged**  70:10 | **cleveland**  71:2 |
| 38:24,25 44:7 | **cass**  70:3,24 | 70:10 | **close**  17:20 |
| 44:9 49:17 | **cathcart**  2:6 | **charla**  1:25 | **cloud**  16:10,13 |
| 50:20 52:1 | 48:6,16,19 | 70:23 | **clunk**  12:13,13 |
| 57:1,20,23 | 69:6 | **charles**  2:21 | **code**  18:14 |
| 63:16,19 64:10 | **cause**  4:6 30:4 | 6:24 34:15,16 | **coldwell**  9:20 |
| **buying**  44:2 | 34:2,19 37:9 | 35:12,25 36:2 | 10:4,10,13 |
| 68:14,16 | 45:4 57:6 63:6 | 39:23 | 14:2 |
| | **certain**  22:10 | **check**  3:17,19 | **college**  5:12 |
| **c** | 64:21 | 3:21 58:6 59:2 | 6:15 |
| **c**  2:1 3:1 4:1 | **certainly**  45:10 | 59:23 61:3,18 | **columns**  18:9 |
| **ca**  71:25 | **certificate**  70:1 | 62:12,12 67:25 | **come**  9:17 18:8 |
| **calculate**  37:3 | 73:11 | **checking**  11:24 | 23:13 34:20 |
| **calculation** | **certification** | 13:1 23:17,18 | 45:25 65:12 |
| 33:3 | 51:5 72:1 73:1 | 24:15 58:23 | **comes**  17:2 |
| **call**  31:5 | **certify**  51:6,6 | 62:1 64:8 | 23:16 33:10 |
| **calling**  24:6 | 70:5 | **checks**  11:10 | **coming**  68:23 |
| **calls**  20:11 35:6 | **chameleon** | 11:13,16 13:2 | **commenced**  4:3 |
| 42:3 49:23 | 16:13,22 | 20:23 24:25 | |

**[comment - craig]** Page 5

| | | | |
|---|---|---|---|
| **comment** 23:7 | **construction** | 15:22 20:2,3,6 | 63:16,19 64:10 |
| **commercial** | 29:18,24 30:4 | 24:20 28:20 | **cpbusmgt.com.** |
| 9:21 | 30:5 31:13 | 32:9,12,19,22 | 17:14 |
| **commission** | 49:18 | 33:22 38:13,14 | **craig** 1:18 2:8,8 |
| 70:24 72:19 | **contact** 16:21 | 41:20 44:14 | 2:21 3:4,12,14 |
| 73:25 74:25 | **continuing** | 47:10 52:18 | 3:16 4:3,4,13 |
| **communicati...** | 12:18 17:7 | 53:10 54:21 | 4:14 8:5,11,21 |
| 30:7,11 43:5 | 19:11 20:14 | 56:14,22 57:7 | 8:24 9:4 10:12 |
| 43:25 | 21:7,14 22:15 | 63:21 65:2 | 10:17,24 11:4 |
| **company** 7:24 | 23:9 26:9 30:6 | **corrections** | 11:7,10,12 |
| 8:4,8 9:22 10:7 | 33:12 34:3 | 71:12 73:17 | 13:7,9,12 17:4 |
| 16:11,20 | 36:5 39:18 | **correctly** 18:10 | 19:12,17,19 |
| **completed** 16:2 | 42:23 47:8 | 18:11 43:15 | 20:1,5,7,17,19 |
| 71:15 | 48:2,21 50:2 | **cost** 70:9 | 21:8,14,17,18 |
| **completely** | 51:1 52:14 | **counsel** 70:12 | 21:23 22:12,18 |
| 63:12 | 54:24 56:8 | 70:13 | 23:10 24:10 |
| **computer** | 58:3 60:23 | **county** 70:3,24 | 26:3 32:10,11 |
| 63:15 | 66:6 67:4,23 | 72:10 73:15 | 39:2 44:6,23 |
| **concluded** | **contract** 70:14 | **couple** 24:8 | 45:2 49:21 |
| 69:10 | **contractors** 9:1 | **court** 1:1 4:12 | 55:11 57:22 |
| **conclusion** 42:3 | 24:9 35:6,7 | 46:19,20 47:23 | 58:6,19,22 |
| **conduct** 35:24 | **control** 24:17 | 52:13 54:23 | 59:6,20 61:3 |
| **conference** | **conversation** | 58:2 60:13 | 62:4,5,8,9,9,11 |
| 60:22 | 45:21 | 67:22 72:7 | 62:15,16,18,20 |
| **confirm** 51:19 | **conversations** | **covid** 43:11 | 62:22 63:10,10 |
| **confusion** 23:1 | 42:24 | **cp** 9:17,18 10:8 | 63:16,19,23,25 |
| **conglomerate** | **coordinate** | 10:13,13 11:24 | 64:2,3,4,16,16 |
| 9:19 | 55:4 | 13:1,15,17 | 64:16 65:1,4,7 |
| **connotations** | **copies** 70:10,11 | 14:5,9,19,24 | 65:21 66:8,14 |
| 66:3 | **copy** 69:5,8 | 15:5,9 16:6,17 | 66:24,25 67:1 |
| **considered** | **corner** 10:23 | 17:3 19:5,6,10 | 67:5,13,15,25 |
| 24:11,11 | **correct** 6:25 | 19:17,22 24:18 | 68:23 69:10 |
| **constructed** | 7:19 10:15 | 29:6 38:23,25 | 70:5 71:8 72:4 |
| 31:8 34:5 | 11:5,8 14:14 | 44:6 57:23 | 72:9 73:4,13 |

**[craig - duly]**                                                                 Page 6

74:20
**craigprop.com**
  17:17
**craigprop.com.**
  17:16
**credit**  66:12
**cross**  63:14
**crosse**  6:6,7,9
**crossover**  23:3
**crown**  3:21
  68:2
**cstanley**  2:18
**curious**  24:24
**current**  20:22
**currently**  5:5
  14:6 15:16,19
  15:20 16:16
  25:12 27:7
  59:9
**cutoffs**  24:12

**d**

**d**  1:16 4:1,17
**dakota**  1:1,24
  2:4,5,11,17 5:2
  14:22 28:4
  32:1 70:2,6,24
**dakotabankru...**
  2:6
**dan**  2:12 23:6
  47:25
**daniel**  2:11
**danielle**  2:21
  6:25

**data**  18:23
**date**  1:22 68:7
  68:15 71:8
  72:3,9,19 73:3
  73:13,25 74:20
  74:25
**dated**  3:12,14
  3:16,17,21
  41:18 68:3
**dates**  43:17
  54:2 55:4
**daughter**  9:8
**daughters**  60:3
**day**  70:18
  72:16 73:22
  74:22
**days**  51:18
  71:18
**deal**  33:23
**dear**  71:10
**debit**  66:12
**debtor**  1:5,9,13
**debtors**  2:3
**decided**  5:6
**declaration**
  39:23
**deed**  72:14
  73:20
**deemed**  71:19
**default**  42:8
**dental**  5:22,23
**dentist**  5:21
**department**
  30:17,19,22,24

71:22
**deposition**  3:9
  4:2 22:23
  47:22 52:12
  54:22 58:1
  60:12 67:21
  69:9 70:5,10
  70:17 71:8,11
  72:1,3 73:1,3
**depositions**
  6:24
**design**  25:25
**designated**
  16:3
**desk**  34:22
**development**
  10:17,24 11:4
  11:10 13:12
  17:4 19:5,6,10
  19:12,14 20:1
  32:10 44:23
  45:2 58:6,19
  58:23 59:6,20
  61:3 62:5,9,16
  62:20,22 63:10
  63:16 64:3,17
  65:7,22 66:8
  66:15,24 67:1
  67:6,25 68:24
**different**  12:3
  12:24 14:17
  15:17 17:10
  28:9 43:9 63:6
  64:1,7,8

**direction**  49:10
**directly**  20:8
**disbursements**
  44:19
**disclosed**  26:5
  29:10
**discussion**
  11:15 45:18,23
**dispute**  45:1
**district**  1:1
**document**  45:6
  58:5 61:2
  67:24
**documentation**
  57:10
**documents**
  38:19 45:14
  51:9
**doing**  6:1 8:1
  9:23 19:16
  33:3 34:19
  60:1 65:21
**dollar**  21:3
  22:11 41:15
  45:10
**draw**  34:7,10
  35:10,22,24
  36:2
**drive**  23:14,16
**drives**  24:10
**drugs**  7:6
**duly**  4:5 70:6

[e - finances]                                                      Page 7

| e | | | f |
|---|---|---|---|
| **e**  1:16 2:1,1 3:1 3:2,8 4:1,1 | **enclosed**  71:11 | 40:25 41:17,18 | **fair**  11:3,6 16:8 |
| **earlier**  6:21 | **entered**  73:9 | 42:20 44:15 | 33:17 37:9 |
| 17:19,24 19:25 | **entire**  23:4,4 | 47:21,22 52:12 | **fairly**  20:24 |
| 62:13,14 | 72:5 73:5 | 52:18 53:24 | **false**  51:10,15 |
| **early**  9:6 | **entirety**  40:21 | 54:22 55:8 | **familiar**  41:2 |
| **east**  2:10 | **entities**  29:8 | 56:4 58:1,4 | 45:4 48:22 |
| **eds**  6:1 | 64:9 | 60:12,24,25 | **family**  5:21 |
| **educational** | **entity**  11:22 | 61:20 67:21,24 | 19:15 21:19 |
| 6:13 | 44:5 57:15 | **exhibits**  36:20 | 22:16 44:2,3 |
| **effort**  37:22 | **errata**  71:13,18 | 42:21 54:25 | **far**  6:7 29:3 |
| **eidl**  43:9 47:14 | 73:7,10,18 | **existence**  9:17 | 41:7 45:11 |
| 47:15 | 74:1 | **existing**  8:8 | **fargo**  1:24 2:5 |
| **either**  16:1 23:6 | **estate**  9:20,21 | **expand**  10:20 | 2:11,17 5:5 |
| 55:17 62:15 | 26:23 28:13 | **expense**  66:2 | 12:5 14:22,23 |
| **eligible**  49:7 | 29:13 44:1 | **expenses**  21:19 | 15:2,4,18 |
| **email**  17:8,11 | **et**  71:6 72:3 | 22:17 23:5 | 16:10,24 17:1 |
| 17:13,15,17 | 73:3 | 58:25 63:3 | 17:2 70:6 |
| 30:7,11 31:5 | **ethics**  28:12 | 65:14 66:19 | **fast**  39:11 |
| 34:18 35:1 | **exactly**  43:17 | 68:23 | **faxes**  36:4 |
| 40:24 71:17 | **examination** | **expiration** | **faxing**  35:25 |
| **emailing**  29:10 | 3:5 4:7 | 72:19 73:25 | **fccu**  3:18,20,22 |
| **emails**  29:10 | **example**  20:12 | 74:25 | **federally**  51:16 |
| **emergency** | 66:24 | **expires**  70:24 | **fee**  15:6 |
| 30:22 47:17 | **excel**  18:9,20 | **explain**  9:2 | **feeding**  18:10 |
| **employee**  44:13 | 18:20,23 37:7 | **extent**  22:5,23 | **feet**  9:10 17:22 |
| 70:12,13 | **excise**  31:14,23 | 29:7 31:21 | **figure**  16:17 |
| **employees**  8:11 | **excuse**  7:25 | 35:15 38:6,22 | **file**  57:9 |
| 8:20 9:1 14:5,7 | **executed**  73:10 | 41:4 42:4 | **filled**  57:15 |
| 14:9 24:9 | **execution** | 45:21 52:3,4,7 | **filling**  53:15 |
| **employment** | 72:14 73:19 | 66:20 | 54:4 |
| 14:13 | **exhibit**  3:9,11 | **extra**  36:15 | **finances**  23:1 |
| | 3:13,15,17,19 | **extremely** | |
| | 3:21 36:12 | 42:11 | |
| | 39:19 40:2,20 | | |

[financial - great]                                                                    Page 8

| | | | |
|---|---|---|---|
| **financial**  37:14 | **form**  3:11,13 | 29:21,25 30:3 | 28:19 29:1 |
| 37:14 38:12,19 | 3:15 20:9 21:1 | 32:23 33:6 | 31:6,17 71:6 |
| **financially** | 21:11,20 22:7 | 34:1 35:20 | 72:3 73:3 |
| 70:14 | 22:21 24:5 | 37:17,22 38:1 | **getting**  18:9 |
| **financials** | 25:19 28:2,24 | 38:5,11 39:7 | 28:7 32:25 |
| 64:23 | 30:18 33:1 | 39:10,14,17 | 62:15 |
| **financing**  43:20 | 34:2 37:17 | 40:2,4,6,8,12 | **gifts**  65:24 66:2 |
| 45:20 46:3,13 | 38:1 39:7 42:3 | 42:2,15,18,21 | 66:4 |
| **find**  7:20 48:3 | 49:23 51:24 | 46:7,10,18 | **give**  16:4 17:23 |
| 49:23 71:11 | 65:25 66:17 | 47:1,4 48:1,14 | 20:12 33:6 |
| **fine**  22:9 40:14 | **forms**  48:8 51:9 | 49:22 50:23 | 39:14 47:19 |
| 51:15 | 57:13,16 | 51:24 54:11,14 | 52:14 66:23 |
| **fined**  51:12,17 | **forward**  71:15 | 54:17 56:3 | **giving**  30:19,20 |
| **finish**  27:5 | **four**  5:24 9:7 | 60:14,21 65:25 | 67:23 |
| **fire**  30:17,19,22 | 10:25 | 66:17 69:4,7 | **go**  8:16 22:11 |
| 30:24 | **fourth**  8:14 | **front**  20:15 | 34:22 41:1 |
| **firm**  1:23 2:4 | **frame**  14:8 | 42:19 48:12 | 46:19 50:9 |
| 2:15 70:6 | 20:20 43:2 | **full**  4:11 | 66:20 |
| **first**  2:5 4:5,15 | 61:19 62:6,21 | **funds**  21:18 | **goes**  49:19 |
| 4:17 34:17 | **fraud**  28:16,17 | 53:10 62:22 | **goff**  25:16,21 |
| 40:19 44:17 | **fraudulently** | 65:4,7 | 25:22 |
| 49:24 53:21,24 | 42:1 | **further**  69:2 | **going**  7:3 15:23 |
| 54:2 70:6 | **free**  72:14 | **furthest**  6:12 | 20:25 21:4 |
| **five**  10:25 | 73:20 | **g** | 22:7,11 25:18 |
| 14:11,11 46:25 | **friends**  5:4,4 | **g**  4:1 | 25:19 28:5 |
| **fluctuated**  8:23 | **frisk**  2:9,11 | **gal**  28:6 | 32:23 34:1 |
| **focus**  19:15 | 12:17 17:5 | **gathering** | 37:24 46:7 |
| **focused**  9:11 | 19:8,10 20:9 | 38:18 | 47:19 |
| **follows**  4:3,6 | 20:11,25 21:10 | **gen**  6:1 | **good**  4:9 9:12 |
| **foregoing** | 21:20 22:2,5 | **general**  6:4 | 47:4 58:21 |
| 72:13 73:18 | 22:10,19,21 | **generals**  6:17 | **graduate**  4:23 |
| **forged**  45:6,13 | 24:5 25:18,22 | **generations**  1:4 | 5:12,15 |
| **forging**  45:12 | 25:24 28:2,24 | 15:10,14 16:2 | **great**  8:1 |
| | 29:5,12,15,18 | | |

**[greatest - item]**                                    Page 9

| | | | |
|---|---|---|---|
| **greatest** 9:23 | **heard** 22:6 | **identification** | **influence** 7:5 |
| **guaranteed** | **help** 9:25 11:1 | 47:22 52:12 | **information** |
| 51:11 | 11:2 18:7 | 54:22 58:1 | 51:7,8 64:23 |
| **guess** 18:18 | 35:14 37:6,7 | 60:12 67:21 | **initial** 6:19 |
| 27:21 45:19 | 37:10 65:20 | **identify** 30:3 | **initialing** 55:25 |
| 67:11 | **helped** 18:20 | 58:5 61:2 | **initially** 62:2 |
| **guessing** 13:14 | 68:12 | 67:24 | **initials** 54:19 |
| **guy** 39:12 | **helping** 44:1 | **impair** 7:8 | **input** 18:23 |
| **guys** 60:15 | **helps** 19:1 | **impartiality** | **instances** 59:1 |

**h**

| | | | |
|---|---|---|---|
| **h** 3:8 | **high** 4:23 5:15 | 70:16 | 59:4 |
| **half** 9:7 | 5:19 | **imprisonment** | **institution** |
| **hand** 12:8 | **hold** 27:7 | 51:14 | 51:17 |
| 70:18 | **home** 9:24 67:2 | **inch** 12:15,15 | **insured** 51:16 |
| **handheld** 12:13 | **homes** 44:3 | **included** 71:13 | **interaction** |
| **handing** 58:3 | **hope** 34:18 | **income** 26:6 | 59:25 |
| 59:23 60:23 | **horse** 58:15,17 | **incorporated** | **interest** 26:10 |
| **handles** 16:14 | 59:25 | 73:12 | 70:15 |
| **hands** 16:20 | **horses** 60:2,8 | **increased** 8:20 | **interested** |
| **handwriting** | 60:10 | **independent** | 70:14 |
| 54:6 58:12 | **house** 22:1 | 9:1 | **interesting** |
| 60:25 | **household** | **independently** | 48:9 64:25 |
| **hang** 25:18 | 22:16 | 38:6 | **interests** 25:25 |
| 29:5 47:20 | **huh** 24:23 | **indicate** 52:24 | **interim** 5:22 |
| **happen** 27:12 | 30:23 44:12,18 | 59:5 | **invoices** 33:25 |
| 42:14 | 51:21 58:24 | **indicated** 17:19 | 34:20,24 37:11 |
| **harless** 2:21 | 64:6,12 | 17:24 19:25 | **involved** 28:1 |
| **head** 21:13 | **hurried** 60:21 | 21:25 | **involvement** |
| 24:8 50:4 | **hurrying** 60:22 | **indicates** 44:20 | 9:4 10:16,24 |
| 66:23 | **husband** 5:3 | 49:12 52:21 | 34:10 |
| **heading** 64:3,4 | **hygiene** 5:23 | 56:20 | **issued** 45:2 |
| 64:4 | | **indicating** 57:8 | 46:5 |

**i**

| | | | |
|---|---|---|---|
| | **idea** 34:25 35:1 | 71:13 | **item** 66:11 |
| | 35:4 | **individual** | |
| | | 62:17 66:15 | |

[j - locations]                                                                        Page 10

| j | | | |
|---|---|---|---|
| **j**  2:11 | **jordan's**  19:4 | **knowingly** | **life**  14:18 |
| **jail**  51:13,18 | **judging**  54:2 | 51:10 | **likely**  38:21 |
| **jcraig**  17:16 | **june**  68:3 | **knowledge** | **likewise**  63:15 |
| **jesse**  2:8,21 | **k** | 19:21 26:19 | **limit**  64:21 |
| 7:23 9:19 | | 31:17 38:7,8 | **limited**  35:24 |
| 10:22 11:16 | **keep**  13:5 | 38:15 59:9 | **line**  36:25 |
| 13:23 17:24 | **kept**  23:1,2 | **known**  4:13 | 71:13 73:7 |
| 19:13 22:12 | 35:19 | **knows**  22:3 | 74:3 |
| 23:7 24:4 28:4 | **key**  30:21,22 | **knox**  30:12,15 | **list**  5:23,24 |
| 28:18 29:3,10 | **keyed**  30:21 | 30:16,20 | **listed**  73:7,17 |
| 30:7 32:13 | **kick**  59:10 | **l** | **listing**  73:7 |
| 33:1 34:15 | 61:22 | | **little**  8:23 9:10 |
| 35:13 37:11 | **kicked**  49:1,3 | **l**  4:17 | 10:21 11:1 |
| 45:13,16 58:21 | **kiihl**  28:4,18 | **la**  6:6,7,9 | 12:14 25:14 |
| 59:22 60:1,10 | 29:3,11 30:8 | **lake**  67:2 | 66:22 |
| 64:15 66:10,15 | **kind**  8:23 9:9 | **lapse**  27:10 | **living**  5:5 6:9 |
| 66:19,25 68:7 | 9:25 27:20 | **lapsed**  27:14 | **llc**  1:4,8,12 |
| 68:10 | 48:7 | **large**  45:9,11 | 26:10,13,17 |
| **jesse's**  9:8 | **kitty**  10:23 | **law**  1:23 2:4,9 | 68:24 71:6 |
| 17:15 26:7 | **knew**  8:1,2 9:8 | 2:15,15 68:12 | 72:3 73:3 |
| 43:8 59:13 | **know**  9:3 12:9 | 70:6 | **loan**  43:6 44:2 |
| 61:15 63:5 | 19:1 20:16 | **layperson**  42:4 | 44:4,16 48:11 |
| 68:20 | 21:17,22 23:12 | **leak**  31:6 | 48:22 49:14 |
| **jewelry**  68:6,9 | 23:15 24:6,10 | **lease**  15:25 | 50:19,21 51:11 |
| 68:13,16 | 24:12 26:2 | **leave**  14:15 | 52:21,25 53:6 |
| **jewels**  3:21 | 31:4,16 33:13 | **left**  14:13,17 | 55:10,11 56:17 |
| 68:2 | 34:19 36:6,6 | **legal**  42:3 66:3 | 56:21 57:9,17 |
| **job**  7:20 8:1,2 | 39:4,8 42:4 | 71:1 74:1 | **loans**  43:10 |
| **jogging**  55:6 | 45:12 46:11 | **letter**  71:19 | 45:17 46:5 |
| **jointly**  1:5,9 | 51:22 53:5 | **license**  26:24 | 47:9,10,15 |
| **jordan**  13:6 | 55:19 62:8 | 27:6,7,8 28:5,7 | 56:25 63:1,1 |
| 19:1,19 64:18 | 63:25 64:2,5 | 28:13 | **local**  5:21 |
| | 66:4 67:14,15 | **licenses**  64:11 | **locations**  14:19 |
| | 68:12,13 | | |

**[loft - mischaracterizes]**                                              Page 11

| | | | |
|---|---|---|---|
| **loft** 15:10 | 58:8 61:5 68:1 | **manager** 7:24 | **meant** 36:3 |
| **lofts** 16:1 | 72:7 | 7:25 8:15 | **meeting** 45:9 |
| **login** 63:17 | **mail** 34:24,25 | 28:19 | **memory** 55:6 |
| **logins** 18:14 | **main** 1:5 | **manages** 16:11 | **mentioned** 47:9 |
| 63:13 | **mainstream** | 26:1 | **merely** 36:3 |
| **long** 5:24 8:19 | 28:11 | **mark** 47:19 | **messed** 40:16 |
| **longer** 8:25 | **maintenance** | 52:10 67:18 | **met** 5:4 |
| **look** 33:9 34:4 | 64:22 | **marked** 3:9 | **micro** 9:6 |
| 40:25 44:15 | **majority** 16:12 | 47:22 52:12 | **mid** 43:14 |
| 45:4 48:3,12 | 16:14 30:12 | 54:22 58:1,4 | **middle** 44:20 |
| 48:17 52:20 | **make** 5:6 26:4 | 60:12,24 67:21 | 48:8 49:13 |
| 54:5,6 55:9,14 | 26:6 31:21 | **marriage** 23:4 | **midmorning** |
| 55:17,20 56:8 | 33:7 35:20 | **martin** 42:25 | 60:15 |
| 57:14 | 47:20 52:15 | 43:25 45:9,9 | **midwest** 71:17 |
| **looked** 31:6 | 55:8 58:19 | 47:10 48:23,24 | 74:1 |
| 53:13 | **making** 51:10 | 49:11,15 50:1 | **million** 44:16 |
| **looking** 48:14 | 56:17 59:19 | 52:5 53:10 | 48:11 51:17 |
| 51:2 52:18 | **manage** 14:25 | **mathiason** 3:19 | 56:18 |
| 54:25 55:3,4 | 15:9 25:6,9 | 61:7 | **mind** 18:8 |
| **looks** 45:7 | **managed** 29:21 | **mathison** 61:6 | **mindy** 4:13 |
| 55:16,22 56:10 | **management** | **matters** 18:4 | 20:17 22:6,22 |
| 56:11 59:3 | 7:23 8:4 9:17 | 44:1 | 44:6 49:17,21 |
| 61:8 68:3 | 9:18,21,22 | **maurice** 71:5 | 56:24 57:18,22 |
| **lord** 40:12 | 10:7,8,11,14 | **mcraig** 17:14 | **mine** 13:5 43:8 |
| **lot** 8:24 44:20 | 13:1,15,18 | **mean** 10:20 | 59:15 |
| **m** | 14:6,9,24 15:5 | 12:7 17:5 21:5 | **minnesota** 5:2 |
| | 15:9 16:6,18 | 22:10 26:20 | **minor** 10:18,20 |
| **m** 4:17 | 17:3 18:12 | 27:17 29:9 | **minute** 46:25 |
| **mac's** 69:5 | 19:16,23 24:18 | 35:16 40:12 | 47:2 48:9 |
| **mad** 16:15 | 29:7 38:24,25 | 42:10 43:8 | **minutes** 6:8 |
| **madam** 71:10 | 44:7 57:23 | 45:24 54:11 | **mischaracteri...** |
| **made** 8:2 12:5 | 63:16 64:10 | 59:11 60:1 | 32:24 35:21 |
| 23:7 33:5 | **management's** | 63:3 | 46:8 51:25 |
| 48:22 51:20 | 11:24 | | |

**[misconstrue - official]**                                                      Page 12

| | | | |
|---|---|---|---|

**misconstrue**
33:2 36:1

**misconstrued**
33:2

**mixed** 48:11

**mom** 9:24

**monday** 6:22

**money** 20:8
21:8,15 48:23

**month** 25:11

**monthly** 20:16
20:23,24 24:25
32:3 63:2

**months** 9:7

**morning** 4:9,10
7:6

**mortgage** 9:20
21:25 22:13
23:7 28:15,17

**move** 7:17 16:1
16:3

**moved** 7:17,21

**moving** 38:12

**mulinda** 1:18
2:8 3:4,11,13
3:15 4:2,4,13
39:23 40:10
44:17 55:11
69:9 70:5 71:8
72:4,9 73:4,13
74:20

**multi** 44:2

**multiple** 56:12

**multiples** 53:16

**multitude**
62:25

**municipal**
30:21

**mutual** 5:3,4

**my's** 10:22

**n**

**n** 1:16 2:1 3:1,1
3:2 4:1,17
58:10

**name** 4:11,15
4:17 14:1,3
25:23 34:21
42:1 59:13,14
61:14,15,16
71:6 72:3,4,15
73:3,4,21

**names** 26:3

**nature** 66:1

**necessarily**
69:7

**need** 16:14 18:6
35:13 37:3,9
43:18 56:25
60:17 69:8

**needed** 8:1,2
32:15

**needs** 11:2
32:14

**never** 26:20
35:9,10

**nichole** 3:19
61:6

**nicu** 9:7

**nine** 15:1,4

**nope** 8:15

**north** 1:1,24
2:5,5,11,17 5:2
70:2,6,24

**notarized**
71:14

**notary** 70:23
71:25 72:10,18
73:15,23 74:23

**note** 37:24 41:2
41:7,9,16,16,25
42:8,15 44:17
46:5 71:12

**notes** 39:24
40:10 43:16

**notice** 42:8
54:24

**noticed** 70:10

**np** 2:16

**number** 8:20
33:1,6 37:19
67:5,8 71:7,13

**numbers** 37:21
38:12 41:24
55:9 73:7

**numerous**
64:20

**o**

**o** 1:16,16 3:1
4:1

**object** 20:25
22:7,21 25:19
32:23 34:1
37:17 42:2
49:22

**objection** 20:9
21:11,20 24:5
28:2,24 35:21
37:24 39:7
42:2 51:24
65:25 66:17

**objection's**
21:4

**objections**
39:11

**obtain** 51:11

**obtained** 42:1

**obtaining** 27:2

**odd** 41:24
56:10

**offended** 7:2

**office** 7:25 8:15
10:22 13:5
14:19 15:5,15
15:24 34:21
43:18 69:5

**offices** 17:19

**official** 72:15
73:21

**[oh - periods]**                                                        Page 13

**oh** 10:12 18:16
39:22 40:4,7
41:7 48:4
53:24 54:14,17
58:5
**ohio** 71:2
**okay** 4:18,23
5:12,14,19,25
6:9,12,16,21
7:2,8,11,13,20
8:7,17 9:2,16
10:5,16 11:3,9
12:1,16,23
13:3,8,17
14:15 15:3
17:3,24 18:3
19:22 23:18
24:1,21 25:13
26:9 27:8
28:12,18 29:25
31:12 33:20,23
35:2 36:10,14
37:1,9 38:10
39:13,16 40:1
40:18,25 43:23
44:13 45:5
46:10,14,17,24
47:5 48:2,3,17
49:4,9,16
50:12 51:4
52:17,24 53:5
54:5 55:20
56:16 59:19
60:6,17 61:11

61:17 62:19
63:23 64:6,15
64:25 65:6
67:10
**old** 7:11 12:8
**older** 24:8
**oldest** 9:8
**ones** 36:18
43:25 47:17
55:19,23 56:1
56:1 63:6
**online** 13:8,11
**open** 8:7
**opened** 29:19
29:22
**operations** 30:5
**order** 30:20
**ordered** 70:10
**original** 70:9
**originally** 4:19
17:1
**originals** 56:5
57:7
**outside** 25:5,25
26:6
**overhead** 15:4
15:15
**overview** 16:5
**owe** 21:15
**owed** 31:20
**own** 24:14
**owner** 13:17
14:4 58:15,17

**owners** 25:5,8
**ownership**
13:20,24 14:2
26:15 30:4

**p**

**p** 1:16 2:1,1 4:1
58:10
**p.o.** 2:16
**page** 3:3 41:1,6
41:7 48:3,6,8
48:10,10,13,19
49:19,24 50:6
50:6,8,10,11,13
50:24 51:2,2,5
52:2,20 53:3,7
54:5,8,13,13,16
55:10,14,20,21
56:9 57:14
71:13,15 73:7
74:3
**pages** 48:11
**paid** 21:8 22:1
22:17 23:5,8
23:10 66:8,12
**paper** 12:11
18:10 35:19,25
**paperwork**
33:25 34:4
56:23
**parkside** 1:8
15:11,14 28:19
29:1 31:17
40:9

**part** 4:21 27:15
63:5 73:9
**parties** 70:10
70:12,14
**parts** 40:22
**party** 70:10
**pawlik** 1:25
70:23
**pay** 15:4 20:8
21:18,18 31:12
31:19,20 32:8
32:10,12,14
62:25 63:1
**paying** 31:13
31:17 66:10,25
67:1
**payment** 33:7
58:20
**payments**
20:16,17 21:6
23:13 31:21
32:20 33:5
59:20 62:15
63:2 65:11,13
**pays** 22:13
**penalty** 51:10
**people** 25:6
26:2 68:18
**percentage**
13:20,24
**perfect** 30:3
**period** 65:9
**periods** 21:2

[permanent - racked]                                                                 Page 14

| | | | |
|---|---|---|---|
| **permanent** 43:20 45:20 46:3,13 | **place** 1:8,23 | **proceeds** 50:19 | 28:18 |
| **permission** 53:10 | **plan** 28:8 | **production** 71:15,17,22 | **provided** 20:21 51:7,8 |
| **person** 35:3 44:2 | **plans** 15:21 | **program** 5:23 | **public** 70:23 72:10,18 73:15 73:23 74:23 |
| **personal** 21:19 23:2,5 24:11 24:14 58:25 65:14 66:2,19 68:22 | **please** 4:11 51:5 56:8 71:11,11 | **project** 28:19 29:4 | **punt** 3:17 58:9 58:14,20 |
| **personally** 24:3 66:11 72:11 73:15 | **podcast** 27:17 | **projects** 28:22 28:25 29:15,17 31:3,14 32:5 33:16 35:7 49:18 | **purchased** 9:19 |
| **persons** 70:15 | **point** 9:9 19:20 36:16,23 53:23 | **promissory** 41:2,7 | **purchases** 68:9 |
| **peterson** 42:25 48:24 53:11 | **pointing** 42:16 | **properties** 8:5 8:11,21,24 9:4 10:12 11:7,12 12:24 13:7,9 14:24 15:9,18 19:17,20 20:5 20:8,19 21:8 21:15,17,18,23 22:18 23:10 24:10 25:8 26:1 30:13 32:11 39:2 62:5,9,10,11,16 62:18 63:10,24 63:25 64:3,16 65:1,4 67:13 67:15 | **purpose** 49:14 49:25 50:3 52:25 53:6 56:20 62:24 |
| **phase** 29:24 31:14 | **pop** 11:1 | | **purposes** 50:20 |
| **phone** 18:15 31:5 71:3 | **position** 8:3,16 9:11 | | **put** 6:15 33:1 49:15 51:12,18 52:5,15 |
| **photocopied** 56:11 | **positions** 14:18 | | |
| **photocopies** 56:5 | **ppp** 43:9 44:4 57:22 | | **q** |
| **photography** 44:6,9 49:17 49:21 52:1 56:25 57:18,23 | **preemies** 9:6 | | **question** 7:3,14 16:8 30:2 37:23 58:21 66:21 |
| **physically** 17:22 | **present** 2:20 | | **questionnaires** 6:14 |
| **piece** 35:25 | **pretrial** 46:22 | | **questions** 7:9 69:3 |
| | **pretty** 29:6 | | **quite** 17:2 |
| | **prevail** 26:10 26:12,17 27:15 27:23,25 28:5 28:8 | **property** 7:23 7:24 8:4 9:21 9:22 10:7,11 18:12 19:16 | **r** |
| | **previously** 66:1 66:18 | | **r** 2:1 4:1 |
| | **printer** 18:10 | | **racked** 42:13 45:8 |
| | **printing** 18:10 | | |
| | **prior** 41:16,22 | | |
| | **probably** 10:25 20:13 33:14 | | |
| | **procedure** 72:5 73:5 | | |

**[radio - rides]**                                                                    Page 15

**radio**  27:23
**ran**  26:18
**random**  11:1
  63:3 65:14
  67:2
**rate**  70:11
**read**  51:4 69:4
  70:17 72:5,6
  72:12 73:5,6
  73:17
**reading**  71:19
**real**  9:20,21
  26:23 28:13
  29:12,13 44:1
**realize**  51:9
**really**  7:16
  10:24 31:1
  34:2
**realty**  26:17
  27:16,23 28:6
  28:8,11
**reason**  20:7,17
  37:2 42:7 45:1
  45:5 51:22
  56:24 71:14
  73:8 74:3
**reasons**  62:25
**recall**  21:12
  22:7 27:24
  30:7,10 31:2
  38:6 41:9,11
  41:13 42:12
  43:4,16,24
  44:4 49:25

50:3 52:4,7,8
53:12,13,15,16
53:17 59:4,19
61:21,25 62:1
62:2,14 65:5
66:22 67:3
**recalls**  45:17
**receipt**  71:18
**receive**  24:21
  34:4,24 62:22
  68:6
**received**  65:3,7
**recently**  18:12
**recognize**
  49:10
**recollection**
  44:24 56:16
  62:3 65:4
**reconfigure**
  16:17
**record**  40:17
  47:6 56:3
  60:18,21 70:8
  73:9
**red**  2:14
**redact**  37:22
**redacted**  25:1,3
  37:19
**reference**  71:7
  72:2 73:2
**referenced**
  35:12 72:11
  73:15

**referencing**
  36:7
**referred**  44:17
**reflect**  56:4
**regarding**
  30:12 35:7
**regularly**  20:24
**reimburse**  66:9
**reimbursement**
  63:2
**reimburseme...**
  66:2,5,7
**related**  50:20
**relates**  26:3
**relationship**
  5:6 21:22 23:4
**relative**  4:5
  70:12,13
**relevancy**  28:3
**rely**  26:7
**remember**
  22:22,24 41:14
  42:7 43:15,17
  45:8 46:1 52:3
  53:19 54:1,4
  66:21
**remind**  62:13
**remitted**  32:21
**remote**  17:2
**remove**  61:23
**renamed**  10:7
**replace**  8:1
**reported**  32:16
  70:5

**reporter**  4:12
  47:23 52:13
  54:21,23 58:2
  60:13 67:20,22
  72:7
**reporter's**  70:1
**reporting**
  31:24 32:17
**representations**
  50:17 54:9
**request**  31:20
  36:2 52:21
  55:11,11 56:17
  73:9,11
**requests**  34:7
  34:11 35:10,23
  35:24
**required**  71:25
**reserved**  70:17
**respect**  19:5
  33:24
**responsibility**
  31:13
**returned**  71:18
**review**  35:22
  35:24 36:3
  71:12 72:1
  73:1
**reviewed**  35:10
  36:2 39:19,25
**rid**  15:23
**ride**  60:8,10
**rides**  60:1

**[right - similar]**                                                    Page 16

| right 10:14 | s | section 50:17 | 74:1 |
|---|---|---|---|

**right** 10:14
  12:8,12 18:8
  19:7 24:19
  25:24 26:1
  27:19 34:19
  36:21 37:23
  43:11,13 46:22
  47:21 49:13
  54:19 55:9
  60:15 61:9
  65:22 70:17
**ring** 56:19
  61:11
**river** 2:14
**role** 19:5
**rolled** 45:20
**roof** 31:6
**roundtable**
  45:18,23
**rpr** 1:25 70:23
**rrsb** 3:22
**rubber** 12:5
**ruins** 1:12 16:2
  16:3 28:20
  29:2,14 31:18
  33:24 34:5
**rules** 72:5 73:5
**run** 46:19,20
  46:21 60:16,17
**running** 36:17
  36:23
**runs** 26:7

**s**

**s** 1:16 2:1 3:1,2
  3:2,8 4:1 71:15
  73:8,8 74:3
**saddles** 61:8
**savvy** 17:25
**saw** 27:17
  40:22
**saying** 32:8
  34:18 41:21,25
**says** 40:9,10
  48:8 52:6 61:8
**sba** 3:11,13,15
  43:6,8 47:9,10
  48:22 49:1,2
  50:19 51:11
  53:10,16 55:11
  56:17
**scan** 34:16
**scanned** 36:3
**scheduling**
  60:22
**school** 4:24
  5:15,20
**schwab** 2:9
**scope** 36:14
**scopes** 64:21
**seal** 70:18
  72:15 73:21
**second** 7:16
  25:19 29:5
  39:15 48:12,13

**section** 50:17
  51:5
**see** 34:23 44:19
  44:22 50:8,16
  51:3 55:4
**seeing** 45:9
  64:21,22,22,23
**seen** 40:19,23
  57:3
**sees** 50:24
**send** 34:14,16
**sending** 33:25
**sense** 8:2
**sensitive** 7:13
**sent** 18:14 36:2
**separate** 10:12
  17:9 23:1,2
  63:11,12
**september** 1:22
  70:5,19,24
  71:4
**servers** 16:9
  17:11
**set** 26:18 62:1
  64:1
**setting** 46:22
**settings** 18:11
**setup** 16:5 17:4
  17:5
**several** 44:21
**share** 17:4 48:1
**sheet** 35:19
  38:21 71:13
  73:7,10,18

**74:1**
**shocked** 42:11
**short** 22:25
  43:19
**shortened**
  59:17
**shown** 71:16
**side** 9:22 19:14
**sign** 59:12 69:4
  70:17
**signatory** 61:24
**signature** 11:25
  12:4 41:6 45:6
  45:7,14 50:5
  50:13 53:2
  54:12,18 55:3
  55:15,18 56:9
  59:12,17 61:14
  61:21 68:20
  70:22 71:14
**signatures**
  43:18
**signed** 3:11,13
  3:15 13:2
  41:21 50:2
  72:13 73:18
**signer** 12:25
**signing** 41:9,11
  41:13,14 42:12
  46:1 52:8 55:6
  59:13,13,15
  61:14,15 71:19
**similar** 36:8
  68:23

**[sincerely - sum]** Page 17

| | | | |
|---|---|---|---|
| **sincerely** 71:21 | **speculation** | 48:7,15,17,20 | **stf.law** 2:12 |
| **single** 44:3 | 20:11 24:6 | 48:21 50:2,25 | **stick** 45:11 |
| **sir** 71:10 | 49:23 | 51:1 52:10,14 | **strictly** 19:16 |
| **site** 16:10 | **speculative** | 54:12,15,18,24 | **stuff** 18:18 66:5 |
| **situated** 24:13 | 21:4 | 56:6,8 58:3 | 66:7 |
| **skills** 37:7 | **spell** 4:15 | 60:17,20,23 | **subcategories** |
| **slow** 39:10,11 | **spelled** 4:17 | 66:6 67:4,18 | 64:2,8 |
| **slowest** 39:12 | **spent** 9:6 | 67:23 69:2 | **subcategorizes** |
| **software** 18:12 | **spewing** 16:16 | **starion** 24:18 | 67:15 |
| 18:13 63:13,18 | **split** 10:7 | 24:21 | **subcategory** |
| **solely** 26:7 | **spreadsheet** | **start** 7:22 9:16 | 66:18 |
| **solutions** 71:1 | 36:6 | 13:25 48:9 | **subcontractors** |
| 74:1 | **spreadsheets** | **started** 8:13 | 33:24 34:4 |
| **somebody** | 18:20,21,24 | **state** 2:14 4:11 | **submit** 53:11 |
| 58:16 | **stamp** 11:16 | 32:1,21 70:2 | **submitted** |
| **son** 68:12 | 12:2,5,8,11,20 | 72:10 73:15 | 30:19 31:19 |
| **sorry** 7:15 | 13:2,3 | **stated** 58:21 | 34:6 35:11 |
| 15:10 19:11,17 | **stamps** 12:3,5 | **statement** | 51:16 53:9,20 |
| 28:19 40:11 | **stanley** 2:17 | 33:17 37:15 | 57:17,21 |
| 48:4 58:5 | 3:5 4:8 12:18 | 51:11 72:13,14 | **subpoena** 3:18 |
| **south** 14:22 | 17:7 19:11 | 73:19,19 | 3:20,22 |
| 28:4 32:1 | 20:14 21:7,14 | **statements** | **subscribed** |
| **space** 16:1,3 | 21:24 22:4,9 | 20:15,21 23:20 | 72:10 73:14 |
| **specific** 16:7 | 22:15 23:9 | 24:22 37:14 | 74:21 |
| 21:2 65:17 | 25:21,23 26:9 | 38:13,19 51:16 | **substantial** |
| **specifically** | 29:1,9,14,16,20 | **states** 1:1 56:23 | 70:15 |
| 39:5 40:24 | 29:23 30:1,6 | **stating** 53:7 | **sue** 3:12,14,16 |
| 42:6 45:15 | 33:4,8,12 34:3 | **stay** 9:24 | 55:11 |
| 56:1 66:23,24 | 36:5 37:20,25 | **stayed** 8:17 | **suggested** |
| 67:3 68:11 | 38:2 39:18 | **step** 9:12,25 | 35:23 |
| **specified** 4:6 | 40:3,7,9,15 | 19:14 | **suite** 2:5,10 |
| 50:21 | 42:23 46:9,14 | **stepped** 9:13 | 71:2 |
| **speculate** 21:5 | 46:17,24 47:2 | **steps** 26:4 | **sum** 41:2 48:23 |
| 39:8 | 47:5,8,24 48:2 | | 55:12 56:17 |

**[super - total]**                                        Page 18

**super** 43:19
**superior** 71:1
**supplied** 41:5
**supporting**
  51:8
**supposed** 45:19
**sure** 7:4 12:10
  26:4 34:8
  37:25 41:25,25
  47:1,20 52:1
  52:15 55:8,18
**switched** 16:20
  37:21
**swoops** 12:6
**sworn** 4:5 70:6
  72:10,13 73:14
  73:18 74:21
**system** 17:8
  58:23 63:5,6,9
**systems** 63:11
  63:12

**t**

**t** 1:16 3:1,1,2,8
  58:10
**tabs** 35:14,16
  36:15
**tabulate** 18:9
**tabulating**
  35:14
**take** 8:3 9:9
  17:23 27:1
  28:12,15 31:12
  34:14 35:6

46:20,25 60:14
  60:15
**taken** 46:3
**talking** 20:20
  27:23 28:25
  31:2 47:9
**tax** 31:23 57:1
**taxes** 31:14,17
**tech** 17:25
**technologies**
  16:13
**technology**
  16:5 18:4
**tell** 7:11 24:7
  25:3 32:13,15
  36:5 46:21
  65:15 68:25
  70:6
**ten** 47:2
**tenants** 31:10
  64:22
**tendency** 70:15
**term** 33:14
  37:18 43:19
**terminated**
  14:13,16
**terminology**
  67:12
**terms** 34:6
**testified** 4:6
  19:13 21:21
  22:13 29:6
  33:9 35:18
  37:13 46:11

62:14 66:1,18
**testify** 4:5 22:3
**testifying** 35:9
**testimony**
  35:21 46:8
  51:25 70:8,8
  72:6,7 73:6,9
  73:12
**thank** 24:24
  39:17 60:22
**thing** 19:8
  29:13 31:1,24
  64:10
**things** 9:23,25
  11:1 18:8
  19:14,16 36:11
  36:15 66:7,14
  67:2
**think** 7:15
  10:10 12:7,8
  22:25 25:14,24
  29:20 32:25
  33:8,15,17,20
  34:17 36:12,20
  36:22 37:18,18
  38:2 39:6,11
  39:15 42:13
  45:5 47:13
  53:21 61:6
  62:13,14 69:5
**thirty** 71:18
**thompson** 2:9
**thought** 27:22
  46:1,2,12

47:12 54:14
**thousand** 41:15
**three** 8:12,12
  8:17 21:9,15
  22:17 23:10
  29:16 31:2,14
  32:5 33:16
  35:7 42:19
**throw** 26:3
**till** 9:3
**time** 8:10 9:7
  9:12 14:8,12
  20:19 21:2
  34:15,17 36:1
  37:10 40:19
  43:2 44:8
  46:14 55:5
  61:19,20 62:6
  62:21 65:9
  68:7,10
**times** 12:17
  16:20 56:12
**timing** 21:5
**title** 9:21
**today** 56:7
**together** 7:16
  52:5,17
**tomah** 4:22
  5:17 6:7,11
**took** 8:16 9:10
**top** 21:12 24:8
  50:4,17 66:23
**total** 15:2

**[totals - work]**                                                                 Page 19

| | | | |
|---|---|---|---|
| **totals** 36:23 | 63:13,13 64:11 | **veritext** 71:1,7 | **way** 23:6 |
| **towards** 27:2 | 64:11 | 74:1 | **we've** 17:9 |
| **town** 34:15 | **u** | **veritext.com.** | **website** 16:16 |
| **tracked** 63:7 | **u** 4:17 23:24 | 71:17 | 16:18 |
| **trainer** 58:15 | 58:10 | **verstandig** 71:5 | **wednesday** |
| 58:17 | **uh** 24:23 30:23 | **versus** 9:1 | 1:22 |
| **transcribed** | 44:12,18 51:21 | 66:25 | **weeks** 9:6 |
| 70:8 72:7 | 58:24 64:6,12 | **vividly** 42:6 | **went** 14:1 |
| **transcript** | **umbrella** 10:4 | **vogel** 1:23 2:15 | 27:22 41:7 |
| 33:10 70:17 | 14:3 | 70:6 | 45:22 63:4 |
| 71:11,12 72:5 | **under** 6:17 7:5 | **vogellaw.com** | 66:12 |
| 72:12 73:5,11 | 10:4 28:5,8,9 | 2:18 | **west** 2:11 |
| 73:17 | 49:10 51:13,13 | **voluntarily** | **wet** 9:10 55:17 |
| **transferred** | 51:18 64:19 | 14:15,17 | **whatnot** 63:8 |
| 55:17,23 | **understanding** | **w** | **wind** 5:1 |
| **transition** 9:12 | 19:4 57:13,16 | **w** 2:17 3:2 | **wisconsin** 4:20 |
| **trial** 46:23 | **united** 1:1 | **wait** 5:24 40:2 | 4:21,21 5:5,6 |
| **true** 8:25 51:9 | **unpaid** 35:5,6 | 48:9 | 6:6 23:21 |
| 56:6 70:8 | **usc** 51:13,14,18 | **waiting** 5:23 | **witness** 17:6 |
| **truly** 24:7 | **use** 11:20,23,23 | **waived** 71:19 | 19:9 20:10 |
| 49:25 | **used** 21:18,18 | **want** 20:12 | 39:13,16 40:5 |
| **truth** 4:5,5,5 | 50:20 52:6 | 22:2 26:2 33:1 | 40:14 42:17,19 |
| 70:7 | 58:16 63:18,23 | 35:20 36:1 | 42:22 46:16 |
| **trying** 16:16 | **uses** 13:3 58:22 | 40:6,10 47:25 | 70:6,8,17,18 |
| 42:13 45:8 | 66:19 | 51:19 60:14,15 | 71:8,11 72:1,4 |
| **turn** 9:25 | **v** | **wanted** 19:14 | 72:11 73:1,4 |
| **tv** 27:22 | **v** 71:6 72:3 | 19:15 33:10 | 73:15 |
| **twins** 9:5,11 | 73:3 | **wants** 69:5 | **witness'** 71:14 |
| 60:4 | **vague** 21:2 | **watertown** | **work** 11:4,6 |
| **two** 14:20 | **vaguely** 61:12 | 14:22 15:8,24 | 19:22 26:12 |
| 15:12 17:9 | **vehicle** 65:11 | 28:7 29:16 | 27:25 28:5,8 |
| 24:3 37:21 | **vehicles** 23:11 | 31:2,14 49:18 | 28:22 33:13,14 |
| 41:5 43:9 | 24:2,8,9 | 67:2 | 65:21 |
| 51:14 63:6,11 | | | |

**[worked - younger]**                                                    Page 20

| | |
|---|---|
| **worked**  5:21 | 47:4 48:4,5,16 |
| 29:7 | 55:1,22 56:13 |
| **working**  8:13 | 56:15 67:9 |
| 18:17 28:7 | 69:6 |
| 43:6,8 49:12 | **year**  5:24 |
| 49:16 52:6,25 | **years**  7:16 |
| 53:7 56:21 | 10:25 21:9,15 |
| 64:19 | 22:17 23:10 |
| **works**  19:19 | 25:15 41:5 |
| 29:6 | 51:13,14 59:18 |
| **world**  39:12 | 64:20 |
| 42:14 55:7 | **yellow**  36:9,21 |
| **wrapped**  43:19 | **yep**  50:9,11,14 |
| **write**  11:9,13 | 50:15 54:1 |
| 59:6 61:17 | **yesterday** |
| **writing**  54:16 | 11:15 19:13 |
| 55:21 59:21 | 21:25 22:3,6 |
| **written**  62:4 | 23:7 33:9 |
| 65:12 | 35:18 36:13 |
| **wrote**  47:24 | 37:13 38:9 |
| 59:2 | 39:19 58:22 |

| **x** |
|---|
| **x**  3:8 |
| **xyz**  23:5 |

| **yesterday's** |
|---|
| 22:22 |
| **younger**  60:4 |

| **y** |
|---|
| **yardi**  58:23 |
| 63:5,5,9,12,18 |
| 67:8 |
| **yeah**  11:17 |
| 12:14,21 17:6 |
| 19:9 20:10 |
| 25:17 36:8,22 |
| 43:12 46:24 |

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.



**SBA 7a Borrower Information Form**
For use with all 7(a) Programs

OMB Control No. 3245-0348
Expiration Date: 09/30/2023

### Purpose of this form:

The purpose of this form is to collect information about the Small Business Applicant ("Applicant") and its owners, the loan request, existing indebtedness, information about current or previous government financing, and certain other topics. The information also facilitates background checks as authorized by section 7(a)(1)(B) of the Small Business Act. 15 U.S.C. 636(a)(1)(B). Submission of the requested information is required for SBA or the Lender to determine eligibility for financial assistance. Failure to submit the information would affect that determination.

Instructions for completing this form: *This form is to be completed by the Applicant and all individuals identified below and submitted to an SBA Participating Lender.* This form is divided into three sections: Section I requests

information about the Small Business Applicant and must be completed in its entirety, signed and dated by an authorized representative of the Small Business Applicant that is requesting a business loan. *A separate Section I is required to be completed and signed for each co-applicant (e.g. "Eligible Passive Company (EPC)" or "Operating Company (OC)").*

Sections II and III of this form requests information about each of the Applicant's owners - Section II for individuals, Section III for each entity owning an equity interest in the Applicant (e.g. Employee Stock Ownership Plan ("ESOP"), 401(k) plan, Limited Liability Company, or other entity owner entities and trusts. *A separate Section II and/or Section III is required to be completed and signed by*:

- o For a sole proprietorship, the sole proprietor;
- o For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm; or any partner that is involved in management of the applicant business;
- o For a corporation, all owners of 20% or more of the corporation, and each officer and director;
- o For limited liability companies, all members owning 20% or more of the company, each officer, director, and managing member;
- o Any person hired by the Applicant to manage day-to-day operations of the Applicant business ("key employee"); and
- o Any Trustor (if the Applicant is owned by a trust).
- o Each entity owning an equity interest in the Applicant.

All parties listed above are considered "Associates" of the Small Business Applicant as defined in 13 CFR § 120.10. *A separate Section I (for the Applicant and each Co-Applicant), Section II (for individuals), and Section III (for entities) is required to be completed and signed by each Associate of the Small Business Applicant.*

### Definitions:

1. **Affiliation** - Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party (or parties) controls or has power to control both. For example, affiliation may arise through ownership, common management (including through a management agreement), or when there is an identity of interest between close relatives with identical, or substantially identical, business interests. The complete definition of "affiliation" is found at 13 CFR § 121.301(f).

2. **Close Relative** - Close Relative is a spouse; a parent; or a child or sibling, or the spouse of any such person.

3. **Eligible Passive Company ("EPC")** - is a small entity or trust which does not engage in regular and continuous business activity which leases real or personal property to an Operating Company for use in the Operating Company's business, and which complies with the conditions set forth in 13 CFR § 120.111.

4. **Household Member** - A "household member" of an SBA employee includes: a) the spouse of the SBA employee; b) the minor children of said individual; and c) the blood relatives of the employee, and the blood relatives of the employee's spouse who reside in the same place of abode as the employee. [13 CFR § 105.201(d)]

5. **Operating Company ("OC")** - is an eligible small business actively involved in conducting business operations now or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations personal property owned by an Eligible Passive Company.

*For clarification regarding any of the questions or terms contained herein, please contact your Lender.*



EXHIBIT  29
WIT: M CRAIG
DATE: 9/24/25
CHARLA A. PAWLIK



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Applicant Business Legal Name (OC ☐ EPC ☐): | Mulinda Sue Craig |
|---|---|
| **Operating Business Legal Name (OC):** | |
| **DBA or Trade name, if applicable:** | |

**Is the Applicant a?:  Cooperative: ☐   ESOP: ☐   401(k) Plan: ☐   Trust: ☐   Other: ☐   N/A: ☒**

**Do you plan to use a 401(K) Plan (including a Rollover for Business Start Up (ROBS) Plan) for equity? ☐ Yes   ☒ No**

**Will a Management Company be hired by the Applicant to manage the day-to-day operations?  ☐ Yes   ☒ No**
**(If yes, provide a copy of the management agreement)**

| Primary Business Address | Business Tax ID | Primary Business Phone |
|---|---|---|
| 1405 1st Ave N Fargo ND 58102 | | 701-239-2630 |
| **Project Address (if other than primary business address)** | **Primary Contact Name** | **Email Address** |
| | Mindy Craig | mindyphotography@live.com |

| Amount of Loan Request: | $ 1,477,500 | # of existing employees employed by business? (including owners): | 0001 |
|---|---|---|---|
| | | # of jobs to be created as a result of the loan? (including owners): | 0000 |
| | # of jobs that will be retained as a result of the loan that otherwise would have been lost? (including owners): | | 0001 |

| Purpose of the loan (i.e. Purchase Real Estate; Construction; Equipment; Inventory; Eligible Debt Refinancing; Working Capital; etc.): | $ 1,477,50 for: Working Capital | $ for: |
|---|---|---|
| | $ for: | $ for: |
| | $ for: | $ for: |

*If financial statements provided to the lender do not include a schedule of business debt, provide on a separate attachment.*

### Ownership of the Applicant

List all proprietors, partners, officers, directors, members, and holders of outstanding stock. 100% of ownership must be reflected. Attach a separate sheet if necessary. Based on the instructions to this form not all owners will need to complete the Associate's Information section of this form.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP* | 401K* | COOP* |
|---|---|---|---|---|---|---|---|
| Mulinda Sue Craig | Owner | 100 | -9822 | 405 20th Ave E  West Fargo ND 58078 | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |

If any owner(s) is an ESOP, a 401(k) plan, or a Cooperative, please provide details and relevant documentation to the Lender as appropriate.

\* Any Applicant owned in part, or in whole, by an ESOP or 401(k) plan must also provide to the Lender evidence that the Applicant, ESOP or the 401(k) plan are in compliance with all applicable IRS, Treasury, and Department of Labor requirements and it will comply with all relevant operating and reporting requirements.



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Unless stated otherwise, if any of the questions below are answered "Yes," please provide details on a separate sheet.**

| # | Question | Yes | No |
|---|----------|-----|-----|
| 1 | Are there co-applicants? *(If "Yes," please complete a separate Section I: Applicant Business Information for each.)* | ☐ | ☒ |
| 2 | Has an application for the requested loan ever been submitted to the SBA, a lender, or a Certified Development Company, in connection with any SBA program? | ☐ | ☒ |
| 3 | Has the Applicant and/or its Affiliates ever obtained or applied for a direct or guaranteed loan from SBA, or another Federal agency loan program (including, but not limited to USDA, B&I, FSA, EDA), or been a guarantor on such a loan? *(if "Yes," answer questions 3.a) and 3.b) below.)* | ☒ | ☐ |
| | a)  Is any of the financing currently delinquent? | ☐ | ☒ |
| | b)  Did any of this financing ever default and cause a loss to the Federal Government? | ☐ | ☒ |
| 4 | Is the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? | ☐ | ☒ |
| 5 | Does the Applicant Business operate under a Franchise/License/Distributor/Membership/Dealer/Jobber or other type of Agreement? *(If "Yes," provide copies of your agreement(s) and any other relevant documents.)* | ☐ | ☒ |
| 6 | Does the Applicant have any Affiliates per <u>13 CFR 121.301</u>? *(If "Yes", attach a listing of all Affiliates.)* | ☒ | ☐ |
| 7 | Has the Applicant and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☒ |
| 8 | Is the Applicant and/or its Affiliates presently involved in any pending legal action? | ☐ | ☒ |
| 9 | Are any of the Applicant's products and/or services exported (directly or indirectly), is there a plan to begin exporting (directly or indirectly) as a result of this loan, or is this an Export Working Capital Program (EWCP)* loan?  *(If "Yes," answer questions 9.a) and 9.b) below.)* | ☐ | ☒ |
| | a)  Provide the estimated total export sales this loan will support. | $ | |
| | *\* (For EWCP loans, in a separate attachment, provide details of the underlying transaction(s) for which the loan is needed, countries where the buyers are located and a description of products and/or services to be exported.)* | | |
| | b)  List of principal countries of export (list at least 1) | | |
| 10 | Has the Applicant paid or committed to pay a fee to the Lender or a third party to assist in the preparation of the loan application or application materials, or has the Applicant paid or committed to pay a referral agent or broker a fee? | ☒ | ☐ |
| 11 | Are any of the Applicant's revenues derived from gambling, loan packaging, or from the sale of products or services, or the presentation of any depiction, displays or live performances, of a prurient sexual nature?  If "Yes," provide details under a separate attachment. | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

SBA may not provide financial assistance to an applicant where there is any appearance of a conflict of interest with an SBA or other Federal government employee. *If any of the questions below are answered "Yes," please provide details on a separate sheet.*

With the exception of question 15, if any of the questions below are answered "Yes," this application may not be submitted under any delegated processing method, but must be submitted by the Lender under non-delegated processing. Note: This does not mean that your loan will be denied, only that your Lender will need to use different SBA procedures to process this loan. If the answer to question 15 is "Yes," the application may be processed under a lender's delegated authority only after the lender receives clearance to do so from SBA.

| # | Question | Yes | No |
|---|----------|-----|-----|
| 12 | Is any sole proprietor, partner, officer, director, stockholder with a 10 percent or more interest in the Applicant an SBA employee or a Household Member of an SBA employee? (13 CFR 105.204). "Household Member" means spouse and minor children of an employee, all blood relations of the employee and any spouse who resides in the same place of abode with the employee (13 CFR §105.201(d)). | ☐ | ☒ |
| 13 | Is any employee, owner, partner, attorney, agent, owner of stock, officer, director, creditor or debtor of the Applicant a former SBA employee who has been separated from SBA for less than one year prior to the request for financial assistance? (13 CFR 105.203) | ☐ | ☒ |
| 14 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member of Congress, or an appointed official or employee of the legislative or judicial branch of the Federal Government? (13 CFR 105.301(c)) | ☐ | ☒ |
| 15 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a Federal Government employee or Member of the Military having a grade of at least GS-13 or higher (or Military equivalent)? (13 CFR 105.301(a)) | ☐ | ☒ |
| 16 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member or employee of a Small Business Advisory Council or a SCORE volunteer? (13 CFR 105.302(a)) | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

### By Signing Below, You Make the Following Representations, Acknowledgement, and Certification
### REPRESENTATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.
- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

### ACKNOWLEDGEMENT

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

| | |
|---|---|
| _(signature)_ | 04/15/2021 |
| Signature of Authorized Representative of Applicant | Date: |
| Mulinda Sue Craig | Owner |
| Print Name | Title |

## SBA 7(a) Borrower Information Form
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Individual Owner's Full Legal Name | Social Security / Tax ID No. | Date of Birth | Place of Birth (City, State, Country) |
|---|---|---|---|
| Mulinda Sue Craig | ▧9822 | ▧ | Tomah, WI USA |
| Home Address | | Home Phone | % of Ownership |
| | | 701-369-0980 | 100 |
| Applicant Legal Name: | | Mulinda Sue Craig | |

Veteran/Gender/Race/Ethnicity data is collected for program reporting purposes only.

Disclosure is voluntary and has no bearing on the credit decision.

| | | Enter Response |
|---|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not | 1 |
| Gender | M=Male; F=Female; X=Not Disclosed | F |
| Race (more than 1 may be) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5 |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N |

| | Question | Yes | No |
|---|---|---|---|
| 17 | Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? (If "YES," the loan request is not eligible for SBA assistance.) | ☐ | ☒ |
| | Initial here to confirm your response to question 17 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |
| 18 | Have you been arrested in the last 6 months for any criminal offense? | ☐ | ☒ |
| | Initial here to confirm your response to question 18 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |
| 19 | For any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | ☐ | ☒ |
| | Initial here to confirm your response to question 19 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |

If you answer "Yes" to questions 18 or 19, you must furnish details, including dates, location, fines, sentences, level of charge (whether misdemeanor or felony), dates of parole/probation, unpaid fines or penalties, name(s) under which charged, and any other pertinent information. If you answer "Yes" to question 19 and are currently on parole or probation, the loan request is not eligible for SBA assistance.

| 20 | ☒ I am a U.S. Citizen OR<br>☐ I have Lawful Permanent Resident (LPR) status.<br>☐ I am not a U.S. Citizen or Lawful Permanent Resident.* | USCIS Registration Number: |
|---|---|---|
| | | Country of Citizenship: |
| | Initial here to confirm your response to question 20 (originally initialed, or an acceptable electronic signature, and not typed.) → | |

* Businesses with ownership that includes Foreign Nationals or Foreign Entities may be eligible only if the business is at least 51% owned and controlled by U.S. citizens and/or those who have LPR status from USCIS whose status will be verified by the Lender in accordance with SBA Loan Program Requirements.

SBA Form 1919 (Revised 09/20)        6



**SBA 7(a) Borrower Information Form**
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification

## REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.

- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.

- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.

- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

## ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_____          04/15/2021
Signature                                Date: _____

Mulinda Sue Craig
Print Name and Title



### SBA 7(a) Borrower Information Form
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Applicant Legal Name:**

| Entity Owner Legal Name | Tax ID | Phone |
|---|---|---|
| | | |
| Address of Entity Owner | Primary Contact Name | Email Address |
| | | |

| Identify in what capacity you are Completing this Section?  Check all that apply. |
|---|
| ☐ 401(k) Plan          ☐ ESOP          ☐ Other (Explain in separate attachment): |

### Entity Ownership

List all proprietors, partners, officers, directors, members, Trustees, and holders of outstanding stock in the entity owner. 100% of ownership must be disclosed. Attach a separate sheet if necessary.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP * | 401(k) * | Co-Op* |
|---|---|---|---|---|---|---|---|
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |

*If any of the questions below are answered "Yes," please provide details on a separate sheet.*

| # | Question | Yes | No |
|---|---|---|---|
| 27 | Is the Entity, or any of its owners, presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? (If "Yes," the application is not eligible for SBA financial assistance). | ☐ | ☐ |
| 28 | Does the entity have any Affiliates? *(If "Yes," attach a listing of all Affiliates.)* | ☐ | ☐ |
| 29 | Has the entity and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☐ |
| 30 | Is the entity and/or its Affiliates presently involved in any pending legal action? | ☐ | ☐ |
| 31 | Has the Entity ever obtained a direct or guaranteed loan from SBA or any other Federal agency or been a guarantor on such a loan?  (This includes, but is not limited to USDA, FHA, EDA.) | ☐ | ☐ |
| | (a) If you answered "Yes" to Question 31, is any of the financing presently considered delinquent? | ☐ | ☐ |
| | (b) If you answered "Yes" to Question 31, did any loan that was for a business purpose ever default and cause a loss to the Government, including a compromise, resolution or settlement of a loan's principal balance for less than the full amount due? <br> *(If you answer "Yes" to either 31(a) or 31(b) above, please provide Lender with a written explanation)* | ☐ | ☐ |



**SBA 7(a) Borrower Information Form**
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification**

## REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.

- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.

- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.

- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

## ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

Signature of Authorized Representative of Entity

Date:

Print Name and Title



### SBA 7(a) Borrower Information Form
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Please read the following notices regarding use of federal financial assistance programs and then sign and date the certification.**

This application and any assistance provided pursuant to this application is subject to the following laws, regulations, and Executive Orders.

### Privacy Act (5 U.S.C. 552a); Collection of Social Security Number (31 U.S.C.7701)

*Authorities and Purpose for Collecting Information*: SBA is collecting the information on this form, including social security numbers and other personal information, to make a character and credit eligibility decision in connection with you or your company's application for SBA assistance. SBA may also use social security numbers for the purpose of collecting and reporting on any delinquent fees or other amounts owed SBA. Under the provisions of 31 U.S.C. 7701, the applicant business and any guarantor of the loan are required to provide their social security numbers or other taxpayer identification numbers in order to do business with SBA. Failure to provide this information would affect your ability to obtain a 7(a) loan. For other individuals signing this application, the submission of the social security number is voluntary and failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled.

In evaluating whether the applicant satisfies the criteria for a 7(a) loan, SBA considers whether the applicant and each of its Associates possess good character. In making this determination, SBA considers the person's integrity, candor, and criminal history if any. SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), of the Small Business Act, 15 USC Section 636(a)(1)(B). In addition, for all forms of assistance, SBA is authorized to make all investigations necessary to ensure that a person has not engaged in acts that violate or will violate the Small Business Act, 15 U.S.C. 634(b)(11). In conducting the criminal background check, SBA also uses your social security number to distinguish you from other individuals with the same or similar name or other personal identifiers. This use is permitted under Executive Order 9397.

*Routine Uses*: Some of the information collected may be checked against criminal history indices of the Federal Bureau of Investigation. When the information collected indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature, SBA may refer it to the appropriate agency, whether Federal, State, local, or foreign, charged with responsibility for or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. See SBA's Privacy Act System of Records, at 74 Fed. Reg. 14890 (2009) (as amended from time to time) for other published r

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** -- As required by this statute, SBA provides this notice of its right to access your financial records held by financial institutions, including any institution participating in a loan or loan guarantee, that are or have been doing business with you or your business. The law provides that SBA shall have a right of access to your financial records in connection with its consideration or administration of assistance to you in the form of a Government loan or loan guaranty agreement. SBA is required to provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records, after which no further certification is required for subsequent access. The law also provides that SBA's access rights continue for the term of any approved loan or loan guaranty agreement. No further notice to you of SBA's access rights is required during the term of any such agreement.

The law also authorizes SBA to transfer to another Government authority any financial records included in an application for a loan, or concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan or loan guarantee or to collect on a defaulted loan or loan guarantee. No other transfer of your financial records to another Government authority will be permitted by SBA except as required or permitted by law.

**Freedom of Information Act (5 U.S.C. 552)** -- This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers the amount of the loan, and the type of loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Debt Collection Act of 1982 (5 U.S.C. 5514 note) and Debt Collection Improvement Act of 1996 (31 U.S.C. 3701 et seq.)** -- These laws require SBA to aggressively collect any loan or other payments that become delinquent. SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may take one or more of the following actions: (1) report the status of your loan(s) or other debt owed to SBA to credit bureaus, (2) hire a collection agency to collect your loan or other delinquent debt, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice or other attorneys for litigation, or (6) foreclose on collateral or take other action permitted in the loan instruments. Finally, if you default on an SBA loan and fail to fully reimburse the Agency for any resulting loss, SBA may
refer you to the computer database of delinquent Federal debtors maintained by the Department of Housing and Urban Development or another Federal agency. This referral may result in your being disqualified from receiving financial assistance from other Federal agencies. In addition, unless SBA is reimbursed in full for the loss, you will not eligible for additional SBA financial assistance.

**Flood Disaster Protection Act (42 U.S.C. 4011)** -- Regulations have been issued by the Federal Insurance Administration (FIA) and by SBA implementing this Act and its amendments. These regulations prohibit SBA from making certain loans in an FIA designated floodplain unless Federal Flood insurance is purchased as a condition of the loan. Failure to maintain the required level of flood insurance makes the applicant ineligible for any financial assistance from SBA, including disaster assistance.

**Executive Orders -- Floodplain Management and Wetland Protection (42 F.R. 26951 and 42 F.R. 26961)** -- SBA discourages settlement in or development of a floodplain or a wetland. This statement is to notify all SBA loan applicants that such actions are hazardous to both life and property and should be avoided. The additional cost of flood preventive construction must be considered in addition to the possible loss of all assets and investments due to a future flood.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** -- The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights Legislation (13 C.F.R. 112, 113, 117)** -- All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. This includes making their goods and services available to handicapped clients or customers. All business borrowers will be required to display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** -- The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Executive Order 11738 -- Environmental Protection (38 F.R. 251621)** -- The Executive Order charges SBA with administering its loan programs in a manner that will result in effective enforcement of the Clean Air Act, the Federal Water Pollution Act and other environment protection legislation.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Lead-Based Paint Poisoning Prevention Act (42 U.S.C. 4821 et seq.)** -- Borrowers using SBA funds for the construction or rehabilitation of a residential structure are prohibited from using lead-based paint (as defined in SBA regulations) on all interior surfaces, whether accessible or not, and exterior surfaces, such as stairs, decks, porches, railings, windows and doors, which are readily accessible to children under 7 years of age. A "residential structure" is any home, apartment, hotel, motel, orphanage, boarding school, dormitory, day care center, extended care facility, college or other school housing, hospital, group practice or community facility and all other residential or institutional structures where persons reside.

**Executive Order 12549, Debarment and Suspension (2 CFR 180, adopted by reference in 2 CFR Part 2700 (SBA Debarment Regulations))**
-- By submission of this loan application, you certify and acknowledge that neither you nor any Associates have within the past three years been: (a) debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a transaction by any Federal department or agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the Regulations; or (d) delinquent on any amounts due and owing to the U.S. Government or its agencies or instrumentalities as of the date of execution of this certification.

If you are unable to certify and acknowledge (a) through (d), you must obtain and attach a written statement of exception from SBA permitting participation in this loan.  You further certify that you have not and will not knowingly enter into any agreement in connection with the goods  and/or services purchased with the proceeds of this loan with any individual or entity that has been debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a Transaction. All capitalized terms have the meanings set forth in 2 C.F.R. Part 180.

**NOTE:** According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 15 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503.
**PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**



**SBA 7a Borrower Information Form**
For use with all 7(a) Programs

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

## Purpose of this form:

The purpose of this form is to collect information about the Small Business Applicant ("Applicant") and its owners, the loan request, existing indebtedness, information about current or previous government financing, and certain other topics. The information also facilitates background checks as authorized by section 7(a)(1)(B) of the Small Business Act, 15 U.S.C. 636(a)(1)(B). Submission of the requested information is required for SBA or the Lender to determine eligibility for financial assistance. Failure to submit the information would affect that determination.

Instructions for completing this form: *This form is to be completed by the Applicant and all individuals identified below and submitted to an SBA Participating Lender.* This form is divided into three sections: Section I requests information about the Small Business Applicant and must be completed in its entirety, signed and dated by an authorized representative of the Small Business Applicant that is requesting a business loan. *A separate Section I is required to be completed and signed for each co-applicant (e.g. "Eligible Passive Company (EPC)" or "Operating Company (OC)").*

Sections II and III of this form requests information about each of the Applicant's owners - Section II for individuals, Section III for each entity owning an equity interest in the Applicant (e.g. Employee Stock Ownership Plan ("ESOP"), 401(k) plan, Limited Liability Company, or other entity owner entities and trusts. *A separate Section II and/or Section III is required to be completed and signed by:*

- o For a sole proprietorship, the sole proprietor;
- o For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm; or any partner that is involved in management of the applicant business;
- o For a corporation, all owners of 20% or more of the corporation, and each officer and director;
- o For limited liability companies, all members owning 20% or more of the company, each officer, director, and managing member;
- o Any person hired by the Applicant to manage day-to-day operations of the Applicant business ("key employee"); and
- o Any Trustor (if the Applicant is owned by a trust).
- o Each entity owning an equity interest in the Applicant.

All parties listed above are considered "Associates" of the Small Business Applicant as defined in 13 CFR § 120.10. *A separate Section I (for the Applicant and each Co-Applicant), Section II (for individuals), and Section III (for entities) is required to be completed and signed by each Associate of the Small Business Applicant.*

## Definitions:

1. **Affiliation** - Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party (or parties) controls or has power to control both. For example, affiliation may arise through ownership, common management (including through a management agreement), or when there is an identity of interest between close relatives with identical, or substantially identical, business interests. The complete definition of "affiliation" is found at 13 CFR § 121.301(f).

2. **Close Relative** - Close Relative is a spouse; a parent; or a child or sibling, or the spouse of any such person.

3. **Eligible Passive Company ("EPC")** - is a small entity or trust which does not engage in regular and continuous business activity which leases real or personal property to an Operating Company for use in the Operating Company's business, and which complies with the conditions set forth in 13 CFR § 120.111.

4. **Household Member** - A "household member" of an SBA employee includes: a) the spouse of the SBA employee; b) the minor children of said individual; and c) the blood relatives of the employee, and the blood relatives of the employee's spouse who reside in the same place of abode as the employee. [13 CFR § 105.201(d)]

5. **Operating Company ("OC")** - is an eligible small business actively involved in conducting business operations now or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations personal property owned by an Eligible Passive Company.

*For clarification regarding any of the questions or terms contained herein, please contact your Lender.*

EXHIBIT ___30___
WIT: M CRAIG
DATE: 9/24/25
CHARLA A. PAWLIK



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| | |
|---|---|
| **Applicant Business Legal Name  (OC ☐ EPC ☐):** | Mulinda Sue Craig |
| **Operating Business Legal Name (OC):** | |
| **DBA or Trade name, if applicable:** | |

**Is the Applicant a?:  Cooperative:** ☐   **ESOP:** ☐   **401(k) Plan:** ☐   **Trust:** ☐   **Other:** ☐   **N/A:** ☒

**Do you plan to use a 401(K) Plan (including a Rollover for Business Start Up (ROBS) Plan) for equity?** ☐ Yes   ☒ No

**Will a Management Company be hired by the Applicant to manage the day-to-day operations?** ☐ Yes   ☒ No
**(If yes, provide a copy of the management agreement)**

| **Primary Business Address** | **Business Tax ID** | **Primary Business Phone** |
|---|---|---|
| 1405 1st Ave N Fargo ND 58102 | | 701-239-2630 |
| **Project Address (if other than primary business address)** | **Primary Contact Name** | **Email Address** |
| | Mindy Craig | mindyphotography@live.com |

| | | | |
|---|---|---|---|
| Amount of Loan Request: | $ 1,652,500 | # of existing employees employed by business? (including owners): | 0001 |
| | | # of jobs to be created as a result of the loan? (including owners): | 0000 |
| | # of jobs that will be retained as a result of the loan that otherwise would have been lost? (including owners): | | 0001 |

| Purpose of the loan *(i.e. Purchase Real Estate; Construction; Equipment; Inventory; Eligible Debt Refinancing; Working Capital; etc.):* | $ 1,652,50 | for: Working Capital | $ | for: |
|---|---|---|---|---|
| | $ | for: | $ | for: |
| | $ | for: | $ | for: |

*If financial statements provided to the lender do not include a schedule of business debt, provide on a separate attachment.*

## Ownership of the Applicant

List all proprietors, partners, officers, directors, members, and holders of outstanding stock. 100% of ownership must be reflected. Attach a separate sheet if necessary. Based on the instructions to this form not all owners will need to complete the Associate's Information section of this form.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP* | 401K* | COOP* |
|---|---|---|---|---|---|---|---|
| Mulinda Sue Craig | Owner | 100 | ▓▓9822 | 405 20th Ave E | ☐ | ☐ | ☐ |
| | | | | West Fargo ND 58078 | | | |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | | | |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | | | |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | | | |
| | | | | | ☐ | ☐ | ☐ |

If any owner(s) is an ESOP, a 401(k) plan, or a Cooperative, please provide details and relevant documentation to the Lender as appropriate.

\* Any Applicant owned in part, or in whole, by an ESOP or 401(k) plan must also provide to the Lender evidence that the Applicant, ESOP or the 401(k) plan are in compliance with all applicable IRS, Treasury, and Department of Labor requirements and it will comply with all relevant operating and reporting requirements.



### SBA 7(a) Borrower Information Form
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Unless stated otherwise, if any of the questions below are answered "Yes," please provide details on a separate sheet.**

| # | Question | Yes | No |
|---|---|---|---|
| 1 | Are there co-applicants? *(If "Yes," please complete a separate Section I: Applicant Business Information for each.)* | ☐ | ☒ |
| 2 | Has an application for the requested loan ever been submitted to the SBA, a lender, or a Certified Development Company, in connection with any SBA program? | ☐ | ☒ |
| 3 | Has the Applicant and/or its Affiliates ever obtained or applied for a direct or guaranteed loan from SBA, or another Federal agency loan program (including, but not limited to USDA, B&I, FSA, EDA), or been a guarantor on such a loan? *(if "Yes," answer questions 3.a) and 3.b) below.)* | ☒ | ☐ |
| | a)  Is any of the financing currently delinquent? | ☐ | ☒ |
| | b)  Did any of this financing ever default and cause a loss to the Federal Government? | ☐ | ☒ |
| 4 | Is the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? | ☐ | ☒ |
| 5 | Does the Applicant Business operate under a Franchise/License/Distributor/Membership/Dealer/ Jobber or other type of Agreement? *(If "Yes," provide copies of your agreement(s) and any other relevant documents.)* | ☐ | ☒ |
| 6 | Does the Applicant have any Affiliates per 13 CFR 121.301? *(If "Yes", attach a listing of all Affiliates.)* | ☒ | ☐ |
| 7 | Has the Applicant and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☒ |
| 8 | Is the Applicant and/or its Affiliates presently involved in any pending legal action? | ☐ | ☒ |
| 9 | Are any of the Applicant's products and/or services exported (directly or indirectly), is there a plan to begin exporting (directly or indirectly) as a result of this loan, or is this an Export Working Capital Program (EWCP)* loan?  *(If "Yes," answer questions 9.a) and 9.b) below.)* | ☐ | ☒ |
| | a)  Provide the estimated total export sales this loan will support. | $ | |
| | *\* (For EWCP loans, in a separate attachment, provide details of the underlying transaction(s) for which the loan is needed, countries where the buyers are located and a description of products and/or services to be exported.)* | | |
| | b)  List of principal countries of export (list at least 1) | | |
| 10 | Has the Applicant paid or committed to pay a fee to the Lender or a third party to assist in the preparation of the loan application or application materials, or has the Applicant paid or committed to pay a referral agent or broker a fee? | ☒ | ☐ |
| 11 | Are any of the Applicant's revenues derived from gambling, loan packaging, or from the sale of products or services, or the presentation of any depiction, displays or live performances, of a prurient sexual nature?  If "Yes," provide details under a separate attachment. | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No : 3245-0348
Expiration Date: 09/30/2023

SBA may not provide financial assistance to an applicant where there is any appearance of a conflict of interest with an SBA or other Federal government employee. *If any of the questions below are answered "Yes," please provide details on a separate sheet.*

With the exception of question 15, if any of the questions below are answered "Yes," this application may not be submitted under any delegated processing method, but must be submitted by the Lender under non-delegated processing. Note: This does not mean that your loan will be denied, only that your Lender will need to use different SBA procedures to process this loan. If the answer to question 15 is "Yes," the application may be processed under a lender's delegated authority only after the lender receives clearance to do so from SBA.

| # | Question | Yes | No |
|---|----------|-----|-----|
| 12 | Is any sole proprietor, partner, officer, director, stockholder with a 10 percent or more interest in the Applicant an SBA employee or a Household Member of an SBA employee? (13 CFR 105.204). "Household Member" means spouse and minor children of an employee, all blood relations of the employee and any spouse who resides in the same place of abode with the employee (13 CFR §105.201(d)). | ☐ | ☒ |
| 13 | Is any employee, owner, partner, attorney, agent, owner of stock, officer, director, creditor or debtor of the Applicant a former SBA employee who has been separated from SBA for less than one year prior to the request for financial assistance? (13 CFR 105.203) | ☐ | ☒ |
| 14 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member of Congress, or an appointed official or employee of the legislative or judicial branch of the Federal Government? (13 CFR 105.301(c)) | ☐ | ☒ |
| 15 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a Federal Government employee or Member of the Military having a grade of at least GS-13 or higher (or Military equivalent)? (13 CFR 105.301(a)) | ☐ | ☒ |
| 16 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member or employee of a Small Business Advisory Council or a SCORE volunteer? (13 CFR 105.302(a)) | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

## By Signing Below, You Make the Following Representations, Acknowledgement, and Certification
### REPRESENTATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.
- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

### ACKNOWLEDGEMENT

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

### ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_____
Signature of Authorized Representative of Applicant

Mulinda Sue Craig
Print Name

06/15/2021
Date:

Owner
Title



| SBA 7(a) Borrower Information Form | | | OMB Control No.: 3245-0348 |
|---|---|---|---|
| (Section II: Individual Owner Information) | | | Expiration Date: 09/30/2023 |

| Individual Owner's Full Legal Name | Social Security / Tax ID No. | Date of Birth | Place of Birth (City, State, Country) |
|---|---|---|---|
| Mulinda Sue Craig | ▮▮9822 | ▮▮ | Tomah, WI USA |
| **Home Address** | | **Home Phone** | **% of Ownership** |
| | | 701-369-0980 | 100 |
| Applicant Legal Name: | | Mulinda Sue Craig | |

Veteran/Gender/Race/Ethnicity data is collected for program reporting purposes only.

Disclosure is voluntary and has no bearing on the credit decision.

| | | Enter Response |
|---|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not | 1 |
| Gender | M=Male; F=Female; X=Not Disclosed | F |
| Race (more than 1 may be) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5 |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N |

| | Question | Yes | No |
|---|---|---|---|
| 17 | Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? (If "YES," the loan request is not eligible for SBA assistance.) | ☐ | ☒ |
| | **Initial here to confirm your response to question 17 (originally initialed, or an acceptable electronic signature, and not typed.) →** | | |
| 18 | Have you been arrested in the last 6 months for any criminal offense? | ☐ | ☒ |
| | **Initial here to confirm your response to question 18 (originally initialed, or an acceptable electronic signature, and not typed.) →** | | |
| 19 | For any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | ☐ | ☒ |
| | **Initial here to confirm your response to question 19 (originally initialed, or an acceptable electronic signature, and not typed.) →** | | |

If you answer "Yes" to questions 18 or 19, you must furnish details, including dates, location, fines, sentences, level of charge (whether misdemeanor or felony), dates of parole/probation, unpaid fines or penalties, name(s) under which charged, and any other pertinent information. If you answer "Yes" to question 19 and are currently on parole or probation, the loan request is not eligible for SBA assistance.

| 20 | ☒ I am a U.S. Citizen OR<br>☐ I have Lawful Permanent Resident (LPR) status.<br>☐ I am not a U.S. Citizen or Lawful Permanent Resident.* | USCIS Registration Number: | |
|---|---|---|---|
| | | Country of Citizenship: | |
| | **Initial here to confirm your response to question 20 (originally initialed, or an acceptable electronic signature, and not typed.) →** | | *mc* |

\* Businesses with ownership that includes Foreign Nationals or Foreign Entities may be eligible only if the business is at least 51% owned and controlled by U.S. citizens and/or those who have LPR status from USCIS whose status will be verified by the Lender in accordance with SBA Loan Program Requirements.

SBA Form 1919 (Revised 09/20)  6



**SBA 7(a) Borrower Information Form**
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

*If any of the questions below are answered "Yes," please provide details on a separate sheet.*

| | Question | Yes | No |
|---|---|---|---|
| 21 | Are you presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? (If "Yes," the application is not eligible for SBA financial assistance) | ☐ | ☒ |
| 22 | If you are a 50% or more owner of the Applicant, are you more than 60 days delinquent on any obligation to pay child support arising under an administrative order, court order, repayment agreement between the holder and a custodial parent, or repayment agreement between the holder and a state agency providing child support enforcement services. (If "Yes," the application is not eligible for SBA financial assistance) | ☐ | ☒ |
| 23 | Do you have any ownership in other businesses which would be defined as an Affiliate of the Applicant in the definition found on page 1? *(If "Yes," attach a listing of all businesses, your title and ownership percentage in the business.)* | ☒ | ☐ |
| 24 | Have you, or any business you controlled, ever filed for bankruptcy protection? *If yes, provide details.* | ☐ | ☒ |
| 25 | Are you, or any business you control, presently involved in any legal action (including divorce)? *If yes, provide details.* | ☐ | ☒ |
| 26 | Have you or any business owned or controlled by you ever obtained a direct or guaranteed loan from SBA or any other Federal agency or been a guarantor on such a loan? (This includes, but is not limited to USDA, FHA, EDA, and student loans.) | ☒ | ☐ |
| | (a) If you answered "Yes" to Question 26, is any of the financing presently considered delinquent? | ☐ | ☒ |
| | (b) If you answered "Yes" to Question 26, did any loan that was made for business purposes ever default and cause a loss to the Government, including a compromise, resolution or settlement of a loan's principal balance for less than the full amount due? *(If you answer "Yes" to either 26(a) or 26(b) above, please provide Lender with a written explanation.)* | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification

## REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.

- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.

- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.

- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

## ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_____
Signature

06/15/2021
Date:

Mulinda Sue Craig
_____
Print Name and Title

SBA Form 1919 (Revised 09/20)                    8



**SBA 7(a) Borrower Information Form**
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Applicant Legal Name: | |
|---|---|

| Entity Owner Legal Name | Tax ID | Phone |
|---|---|---|
| | | |

| Address of Entity Owner | Primary Contact Name | Email Address |
|---|---|---|
| | | |

| Identify in what capacity you are Completing this Section?  Check all that apply. | | |
|---|---|---|
| ☐ 401(k) Plan | ☐ ESOP | ☐ Other (Explain in separate attachment): |

### Entity Ownership

List all proprietors, partners, officers, directors, members, Trustees, and holders of outstanding stock in the entity owner. 100% of ownership must be disclosed. Attach a separate sheet if necessary.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP * | 401(k) * | Co-Op* |
|---|---|---|---|---|---|---|---|
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |

*If any of the questions below are answered "Yes," please provide details on a separate sheet.*

| # | Question | Yes | No |
|---|---|---|---|
| 27 | Is the Entity, or any of its owners, presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? (If "Yes," the application is not eligible for SBA financial assistance). | ☐ | ☐ |
| 28 | Does the entity have any Affiliates? *(If "Yes," attach a listing of all Affiliates.)* | ☐ | ☐ |
| 29 | Has the entity and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☐ |
| 30 | Is the entity and/or its Affiliates presently involved in any pending legal action? | ☐ | ☐ |
| 31 | Has the Entity ever obtained a direct or guaranteed loan from SBA or any other Federal agency or been a guarantor on such a loan?  (This includes, but is not limited to USDA, FHA, EDA.) | ☐ | ☐ |
| | (a) If you answered "Yes" to Question 31, is any of the financing presently considered delinquent? | ☐ | ☐ |
| | (b) If you answered "Yes" to Question 31, did any loan that was for a business purpose ever default and cause a loss to the Government, including a compromise, resolution or settlement of a loan's principal balance for less than the full amount due? *(If you answer "Yes" to either 31(a) or 31(b) above, please provide Lender with a written explanation)* | ☐ | ☐ |

SBA Form 1919 (Revised 09/20)                    9



**SBA 7(a) Borrower Information Form**
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification**

## REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.
- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.
- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

## ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.


Signature of Authorized Representative of Entity          Date:


Print Name and Title



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Please read the following notices regarding use of federal financial assistance programs and then sign and date the certification.**

This application and any assistance provided pursuant to this application is subject to the following laws, regulations, and Executive Orders.

## Privacy Act (5 U.S.C. 552a); Collection of Social Security Number (31 U.S.C.7701)

*Authorities and Purpose for Collecting Information*: SBA is collecting the information on this form, including social security numbers and other personal information, to make a character and credit eligibility decision in connection with you or your company's application for SBA assistance. SBA may also use social security numbers for the purpose of collecting and reporting on any delinquent fees or other amounts owed SBA. Under the provisions of 31 U.S.C. 7701, the applicant business and any guarantor of the loan are required to provide their social security numbers or other taxpayer identification numbers in order to do business with SBA. Failure to provide this information would affect your ability to obtain a 7(a) loan. For other individuals signing this application, the submission of the social security number is voluntary and failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled.

In evaluating whether the applicant satisfies the criteria for a 7(a) loan, SBA considers whether the applicant and each of its Associates possess good character. In making this determination, SBA considers the person's integrity, candor, and criminal history if any. SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), of the Small Business Act, 15 USC Section 636(a)(1)(B). In addition, for all forms of assistance, SBA is authorized to make all investigations necessary to ensure that a person has not engaged in acts that violate or will violate the Small Business Act, 15 U.S.C. 634(b)(11). In conducting the criminal background check, SBA also uses your social security number to distinguish you from other individuals with the same or similar name or other personal identifiers. This use is permitted under Executive Order 9397.

*Routine Uses*: Some of the information collected may be checked against criminal history indices of the Federal Bureau of Investigation. When the information collected indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature, SBA may refer it to the appropriate agency, whether Federal, State, local, or foreign, charged with responsibility for or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. See SBA's Privacy Act System of Records, at 74 Fed. Reg. 14890 (2009) (as amended from time to time) for other published r

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** -- As required by this statute, SBA provides this notice of its right to access your financial records held by financial institutions, including any institution participating in a loan or loan guarantee, that are or have been doing business with you or your business. The law provides that SBA shall have a right of access to your financial records in connection with its consideration or administration of assistance to you in the form of a Government loan or loan guaranty agreement. SBA is required to provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records, after which no further certification is required for subsequent access. The law also provides that SBA's access rights continue for the term of any approved loan or loan guaranty agreement. No further notice to you of SBA's access rights is required during the term of any such agreement.

The law also authorizes SBA to transfer to another Government authority any financial records included in an application for a loan, or concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan or loan guarantee or to collect on a defaulted loan or loan guarantee. No other transfer of your financial records to another Government authority will be permitted by SBA except as required or permitted by law.

**Freedom of Information Act (5 U.S.C. 552)** -- This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers the amount of the loan, and the type of loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Debt Collection Act of 1982 (5 U.S.C. 5514 note) and Debt Collection Improvement Act of 1996 (31 U.S.C. 3701 et seq.)** -- These laws require SBA to aggressively collect any loan or other payments that become delinquent. SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may take one or more of the following actions: (1) report the status of your loan(s) or other debt owed to SBA to credit bureaus, (2) hire a collection agency to collect your loan or other delinquent debt, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice or other attorneys for litigation, or (6) foreclose on collateral or take other action permitted in the loan instruments. Finally, if you default on an SBA loan and fail to fully reimburse the Agency for any resulting loss, SBA may
refer you to the computer database of delinquent Federal debtors maintained by the Department of Housing and Urban Development or another Federal agency. This referral may result in your being disqualified from receiving financial assistance from other Federal agencies. In addition, unless SBA is reimbursed in full for the loss, you will not eligible for additional SBA financial assistance.

**Flood Disaster Protection Act (42 U.S.C. 4011)** -- Regulations have been issued by the Federal Insurance Administration (FIA) and by SBA implementing this Act and its amendments. These regulations prohibit SBA from making certain loans in an FIA designated floodplain unless Federal Flood insurance is purchased as a condition of the loan. Failure to maintain the required level of flood insurance makes the applicant ineligible for any financial assistance from SBA, including disaster assistance.

**Executive Orders -- Floodplain Management and Wetland Protection (42 F.R. 26951 and 42 F.R. 26961)** -- SBA discourages settlement in or development of a floodplain or a wetland. This statement is to notify all SBA loan applicants that such actions are hazardous to both life and property and should be avoided. The additional cost of flood preventive construction must be considered in addition to the possible loss of all assets and investments due to a future flood.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** -- The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces.  They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights Legislation (13 C.F.R. 112, 113, 117)** -- All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. This includes making their goods and services available to handicapped clients or customers. All business borrowers will be required to display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** -- The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Executive Order 11738 -- Environmental Protection (38 F.R. 251621)** -- The Executive Order charges SBA with administering its loan programs in a manner that will result in effective enforcement of the Clean Air Act, the Federal Water Pollution Act and other environment protection legislation.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Lead-Based Paint Poisoning Prevention Act (42 U.S.C. 4821 et seq.)** -- Borrowers using SBA funds for the construction or rehabilitation of a residential structure are prohibited from using lead-based paint (as defined in SBA regulations) on all interior surfaces, whether accessible or not, and exterior surfaces, such as stairs, decks, porches, railings, windows and doors, which are readily accessible to children under 7 years of age. A "residential structure" is any home, apartment, hotel, motel, orphanage, boarding school, dormitory, day care center, extended care facility, college or other school housing, hospital, group practice or community facility and all other residential or institutional structures where persons reside.

**Executive Order 12549, Debarment and Suspension (2 CFR 180, adopted by reference in 2 CFR Part 2700 (SBA Debarment Regulations))**
-- By submission of this loan application, you certify and acknowledge that neither you nor any Associates have within the past three years been: (a) debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a transaction by any Federal department or agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the Regulations; or (d) delinquent on any amounts due and owing to the U.S. Government or its agencies or instrumentalities as of the date of execution of this certification.

If you are unable to certify and acknowledge (a) through (d), you must obtain and attach a written statement of exception from SBA permitting participation in this loan. You further certify that you have not and will not knowingly enter into any agreement in connection with the goods and/or services purchased with the proceeds of this loan with any individual or entity that has been debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a Transaction. All capitalized terms have the meanings set forth in 2 C.F.R. Part 180.

**NOTE:** According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 15 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503.
**PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**



**SBA 7a Borrower Information Form**
For use with all 7(a) Programs

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

## Purpose of this form:

The purpose of this form is to collect information about the Small Business Applicant ("Applicant") and its owners, the loan request, existing indebtedness, information about current or previous government financing, and certain other topics. The information also facilitates background checks as authorized by section 7(a)(1)(B) of the Small Business Act, 15 U.S.C. 636(a)(1)(B). Submission of the requested information is required for SBA or the Lender to determine eligibility for financial assistance. Failure to submit the information would affect that determination.

Instructions for completing this form: *This form is to be completed by the Applicant and all individuals identified below and submitted to an SBA Participating Lender.* This form is divided into three sections: Section I requests information about the Small Business Applicant and must be completed in its entirety, signed and dated by an authorized representative of the Small Business Applicant that is requesting a business loan. *A separate Section I is required to be completed and signed for each co-applicant (e.g. "Eligible Passive Company (EPC)" or "Operating Company (OC)").*

Sections II and III of this form requests information about each of the Applicant's owners - Section II for individuals, Section III for each entity owning an equity interest in the Applicant (e.g. Employee Stock Ownership Plan ("ESOP"), 401(k) plan, Limited Liability Company, or other entity owner entities and trusts. *A separate Section II and/or Section III is required to be completed and signed by:*

- o For a sole proprietorship, the sole proprietor;
- o For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm; or any partner that is involved in management of the applicant business;
- o For a corporation, all owners of 20% or more of the corporation, and each officer and director;
- o For limited liability companies, all members owning 20% or more of the company, each officer, director, and managing member;
- o Any person hired by the Applicant to manage day-to-day operations of the Applicant business ("key employee"); and
- o Any Trustor (if the Applicant is owned by a trust).
- o Each entity owning an equity interest in the Applicant.

All parties listed above are considered "Associates" of the Small Business Applicant as defined in 13 CFR § 120.10. *A separate Section I (for the Applicant and each Co-Applicant), Section II (for individuals), and Section III (for entities) is required to be completed and signed by each Associate of the Small Business Applicant.*

## Definitions:

1. **Affiliation** - Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party (or parties) controls or has power to control both. For example, affiliation may arise through ownership, common management (including through a management agreement), or when there is an identity of interest between close relatives with identical, or substantially identical, business interests. The complete definition of "affiliation" is found at 13 CFR § 121.301(f).

2. **Close Relative** - Close Relative is a spouse; a parent; or a child or sibling, or the spouse of any such person.

3. **Eligible Passive Company ("EPC")** - is a small entity or trust which does not engage in regular and continuous business activity which leases real or personal property to an Operating Company for use in the Operating Company's business, and which complies with the conditions set forth in 13 CFR § 120.111.

4. **Household Member** - A "household member" of an SBA employee includes: a) the spouse of the SBA employee; b) the minor children of said individual; and c) the blood relatives of the employee, and the blood relatives of the employee's spouse who reside in the same place of abode as the employee. [13 CFR § 105.201(d)]

5. **Operating Company ("OC")** - is an eligible small business actively involved in conducting business operations now or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations personal property owned by an Eligible Passive Company.

*For clarification regarding any of the questions or terms contained herein, please contact your Lender.*



EXHIBIT __31__
WIT: MCRAIG
DATE: 9/24/25
CHARLA A. PAWLIK



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Applicant Business Legal Name (OC ☐ EPC ☐): | Mulinda Sue Craig | |
|---|---|---|
| Operating Business Legal Name (OC): | | |
| DBA or Trade name, if applicable: | | |

| Is the Applicant a?: Cooperative: ☐   ESOP: ☐   401(k) Plan: ☐   Trust: ☐   Other: ☐   N/A: ☒ |
|---|
| Do you plan to use a 401(K) Plan (including a Rollover for Business Start Up (ROBS) Plan) for equity? ☐ Yes   ☒ No |
| Will a Management Company be hired by the Applicant to manage the day-to-day operations? ☐ Yes   ☒ No (If yes, provide a copy of the management agreement) |

| Primary Business Address | | Business Tax ID | Primary Business Phone |
|---|---|---|---|
| 1405 1st Ave N Fargo ND 58102 | | | 701-239-2630 |
| Project Address (if other than primary business address) | | Primary Contact Name | Email Address |
| | | Mindy Craig | mindyphotography@live.com |

| Amount of Loan Request: | $ 1,321,100 | # of existing employees employed by business? (including owners): | 0001 |
|---|---|---|---|
| | | # of jobs to be created as a result of the loan? (including owners): | 0000 |
| | | # of jobs that will be retained as a result of the loan that otherwise would have been lost? (including owners): | 0001 |

| Purpose of the loan (i.e. Purchase Real Estate; Construction; Equipment; Inventory; Eligible Debt Refinancing; Working Capital; etc.): | $ 1,321,10 for: Working Capital | | $ _____ for: _____ |
|---|---|---|---|
| | $ _____ for: _____ | | $ _____ for: _____ |
| | $ _____ for: _____ | | $ _____ for: _____ |

*If financial statements provided to the lender do not include a schedule of business debt, provide on a separate attachment.*

### Ownership of the Applicant

List all proprietors, partners, officers, directors, members, and holders of outstanding stock. 100% of ownership must be reflected. Attach a separate sheet if necessary. Based on the instructions to this form not all owners will need to complete the Associate's Information section of this form.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP* | 401K* | COOP* |
|---|---|---|---|---|---|---|---|
| Mulinda Sue Craig | Owner | 100 | ████9822 | 405 20th Ave E<br>West Fargo ND 58078 | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |

If any owner(s) is an ESOP, a 401(k) plan, or a Cooperative, please provide details and relevant documentation to the Lender as appropriate.

* Any Applicant owned in part, or in whole, by an ESOP or 401(k) plan must also provide to the Lender evidence that the Applicant, ESOP or the 401(k) plan are in compliance with all applicable IRS, Treasury, and Department of Labor requirements and it will comply with all relevant operating and reporting requirements.



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Unless stated otherwise, if any of the questions below are answered "Yes," please provide details on a separate sheet.**

| # | Question | Yes | No |
|---|----------|-----|-----|
| 1 | Are there co-applicants? *(If "Yes," please complete a separate Section I: Applicant Business Information for each.)* | ☐ | ☒ |
| 2 | Has an application for the requested loan ever been submitted to the SBA, a lender, or a Certified Development Company, in connection with any SBA program? | ☐ | ☒ |
| 3 | Has the Applicant and/or its Affiliates ever obtained or applied for a direct or guaranteed loan from SBA, or another Federal agency loan program (including, but not limited to USDA, B&I, FSA, EDA), or been a guarantor on such a loan? *(if "Yes," answer questions 3.a) and 3.b) below.)* | ☒ | ☐ |
| | a)  Is any of the financing currently delinquent? | ☐ | ☒ |
| | b)  Did any of this financing ever default and cause a loss to the Federal Government? | ☐ | ☒ |
| 4 | Is the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? | ☐ | ☒ |
| 5 | Does the Applicant Business operate under a Franchise/License/Distributor/Membership/Dealer/ Jobber or other type of Agreement? *(If "Yes," provide copies of your agreement(s) and any other relevant documents.)* | ☐ | ☒ |
| 6 | Does the Applicant have any Affiliates per 13 CFR 121.301? *(If "Yes", attach a listing of all Affiliates.)* | ☒ | ☐ |
| 7 | Has the Applicant and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☒ |
| 8 | Is the Applicant and/or its Affiliates presently involved in any pending legal action? | ☐ | ☒ |
| 9 | Are any of the Applicant's products and/or services exported (directly or indirectly), is there a plan to begin exporting (directly or indirectly) as a result of this loan, or is this an Export Working Capital Program (EWCP)* loan? *(If "Yes," answer questions 9.a) and 9.b) below.)* | ☐ | ☒ |
| | a)  Provide the estimated total export sales this loan will support.  $ | | |
| | *\* (For EWCP loans, in a separate attachment, provide details of the underlying transaction(s) for which the loan is needed, countries where the buyers are located and a description of products and/or services to be exported.)* | | |
| | b)  List of principal countries of export (list at least 1) | | |
| 10 | Has the Applicant paid or committed to pay a fee to the Lender or a third party to assist in the preparation of the loan application or application materials, or has the Applicant paid or committed to pay a referral agent or broker a fee? | ☒ | ☐ |
| 11 | Are any of the Applicant's revenues derived from gambling, loan packaging, or from the sale of products or services, or the presentation of any depiction, displays or live performances, of a prurient sexual nature?  If "Yes," provide details under a separate attachment. | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

SBA may not provide financial assistance to an applicant where there is any appearance of a conflict of interest with an SBA or other Federal government employee. *If any of the questions below are answered "Yes," please provide details on a separate sheet.*

With the exception of question 15, if any of the questions below are answered "Yes," this application may not be submitted under any delegated processing method, but must be submitted by the Lender under non-delegated processing. Note: This does not mean that your loan will be denied, only that your Lender will need to use different SBA procedures to process this loan. If the answer to question 15 is "Yes," the application may be processed under a lender's delegated authority only after the lender receives clearance to do so from SBA.

| # | Question | Yes | No |
|---|----------|-----|-----|
| 12 | Is any sole proprietor, partner, officer, director, stockholder with a 10 percent or more interest in the Applicant an SBA employee or a Household Member of an SBA employee? (13 CFR 105.204). "Household Member" means spouse and minor children of an employee, all blood relations of the employee and any spouse who resides in the same place of abode with the employee (13 CFR §105.201(d)). | ☐ | ☒ |
| 13 | Is any employee, owner, partner, attorney, agent, owner of stock, officer, director, creditor or debtor of the Applicant a former SBA employee who has been separated from SBA for less than one year prior to the request for financial assistance? (13 CFR 105.203) | ☐ | ☒ |
| 14 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member of Congress, or an appointed official or employee of the legislative or judicial branch of the Federal Government? (13 CFR 105.301(c)) | ☐ | ☒ |
| 15 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a Federal Government employee or Member of the Military having a grade of at least GS-13 or higher (or Military equivalent)? (13 CFR 105.301(a)) | ☐ | ☒ |
| 16 | Is any sole proprietor, general partner, officer, director, or stockholder with a 10 percent or more interest in the Applicant, or a household member of such individual, a member or employee of a Small Business Advisory Council or a SCORE volunteer? (13 CFR 105.302(a)) | ☐ | ☒ |



**SBA 7(a) Borrower Information Form**
(Section I: Business Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

## By Signing Below, You Make the Following Representations, Acknowledgement, and Certification

### REPRESENTATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.
- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

### ACKNOWLEDGEMENT

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

### ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

| | |
|---|---|
| _(signature)_ | 05/15/2021 |
| Signature of Authorized Representative of Applicant | Date: |
| Mulinda Sue Craig | Owner |
| Print Name | Title |



**SBA 7(a) Borrower Information Form**
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Individual Owner's Full Legal Name | Social Security / Tax ID No. | Date of Birth | Place of Birth (City, State, Country) |
|---|---|---|---|
| Mulinda Sue Craig | 9822 | 10/21/1986 | Tomah, WI USA |
| Home Address | | Home Phone | % of Ownership |
| | | 701-369-0980 | 100 |
| Applicant Legal Name: | | Mulinda Sue Craig | |

Veteran/Gender/Race/Ethnicity data is collected for program reporting purposes only.

Disclosure is voluntary and has no bearing on the credit decision.

| | | Enter Response |
|---|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not | 1 |
| Gender | M=Male; F=Female; X=Not Disclosed | F |
| Race (more than 1 may be) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5 |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N |

| | Question | Yes | No |
|---|---|---|---|
| 17 | Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? (If "YES," the loan request is not eligible for SBA assistance.) | ☐ | ☒ |
| | Initial here to confirm your response to question 17 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |
| 18 | Have you been arrested in the last 6 months for any criminal offense? | ☐ | ☒ |
| | Initial here to confirm your response to question 18 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |
| 19 | For any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | ☐ | ☒ |
| | Initial here to confirm your response to question 19 (originally initialed, or an acceptable electronic signature, and not typed.) → | | |

If you answer "Yes" to questions 18 or 19, you must furnish details, including dates, location, fines, sentences, level of charge (whether misdemeanor or felony), dates of parole/probation, unpaid fines or penalties, name(s) under which charged, and any other pertinent information. If you answer "Yes" to question 19 and are currently on parole or probation, the loan request is not eligible for SBA assistance.

| 20 | ☒ I am a U.S. Citizen OR <br> ☐ I have Lawful Permanent Resident (LPR) status. <br> ☐ I am not a U.S. Citizen or Lawful Permanent Resident.* | USCIS Registration Number: |
|---|---|---|
| | | Country of Citizenship: |
| | Initial here to confirm your response to question 20 (originally initialed, or an acceptable electronic signature, and not typed.) → | |

\* Businesses with ownership that includes Foreign Nationals or Foreign Entities may be eligible only if the business is at least 51% owned and controlled by U.S. citizens and/or those who have LPR status from USCIS whose status will be verified by the Lender in accordance with SBA Loan Program Requirements.

SBA Form 1919 (Revised 09/20)    6



**SBA 7(a) Borrower Information Form**
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

*If any of the questions below are answered "Yes," please provide details on a separate sheet.*

| | Question | Yes | No |
|---|---|---|---|
| 21 | Are you presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? (If "Yes," the application is not eligible for SBA financial assistance) | ☐ | ☒ |
| 22 | If you are a 50% or more owner of the Applicant, are you more than 60 days delinquent on any obligation to pay child support arising under an administrative order, court order, repayment agreement between the holder and a custodial parent, or repayment agreement between the holder and a state agency providing child support enforcement services. (If "Yes," the application is not eligible for SBA financial assistance) | ☐ | ☒ |
| 23 | Do you have any ownership in other businesses which would be defined as an Affiliate of the Applicant in the definition found on page 1? *(If "Yes," attach a listing of all businesses, your title and ownership percentage in the business.)* | ☒ | ☐ |
| 24 | Have you, or any business you controlled, ever filed for bankruptcy protection? *If yes, provide details.* | ☐ | ☒ |
| 25 | Are you, or any business you control, presently involved in any legal action (including divorce)? *If yes, provide details.* | ☐ | ☒ |
| 26 | Have you or any business owned or controlled by you ever obtained a direct or guaranteed loan from SBA or any other Federal agency or been a guarantor on such a loan?  (This includes, but is not limited to USDA, FHA, EDA, and student loans.) | ☒ | ☐ |
| | (a) If you answered "Yes" to Question 26, is any of the financing presently considered delinquent? | ☐ | ☒ |
| | (b) If you answered "Yes" to Question 26, did any loan that was made for business purposes ever default and cause a loss to the Government, including a compromise, resolution or settlement of a loan's principal balance for less than the full amount due? *(If you answer "Yes" to either 26(a) or 26(b) above, please provide Lender with a written explanation.)* | ☐ | ☒ |



SBA 7(a) Borrower Information Form
(Section II: Individual Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification**

REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.

- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.

- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.

- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_____

Signature

Mulinda Sue Craig

Print Name and Title

05/15/2021
_____

Date:



**SBA 7(a) Borrower Information Form**
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

| Applicant Legal Name: | | | |
|---|---|---|---|
| **Entity Owner Legal Name** | | **Tax ID** | **Phone** |
| | | | |
| **Address of Entity Owner** | | **Primary Contact Name** | **Email Address** |
| | | | |

| Identify in what capacity you are Completing this Section? Check all that apply. |
|---|
| ☐ 401(k) Plan ☐ ESOP ☐ Other (Explain in separate attachment): |

### Entity Ownership

List all proprietors, partners, officers, directors, members, Trustees, and holders of outstanding stock in the entity owner. 100% of ownership must be disclosed. Attach a separate sheet if necessary.

| Owner's Legal Name | Title | % Owned | TIN (SSN/EIN) | Address | ESOP * | 401(k) * | Co-Op* |
|---|---|---|---|---|---|---|---|
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ |

*If any of the questions below are answered "Yes," please provide details on a separate sheet.*

| # | Question | Yes | No |
|---|---|---|---|
| 27 | Is the Entity, or any of its owners, presently suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency? (If "Yes," the application is not eligible for SBA financial assistance). | ☐ | ☐ |
| 28 | Does the entity have any Affiliates? *(If "Yes," attach a listing of all Affiliates.)* | ☐ | ☐ |
| 29 | Has the entity and/or its Affiliates ever filed for bankruptcy protection? | ☐ | ☐ |
| 30 | Is the entity and/or its Affiliates presently involved in any pending legal action? | ☐ | ☐ |
| 31 | Has the Entity ever obtained a direct or guaranteed loan from SBA or any other Federal agency or been a guarantor on such a loan? (This includes, but is not limited to USDA, FHA, EDA.) | ☐ | ☐ |
| | (a) If you answered "Yes" to Question 31, is any of the financing presently considered delinquent? | ☐ | ☐ |
| | (b) If you answered "Yes" to Question 31, did any loan that was for a business purpose ever default and cause a loss to the Government, including a compromise, resolution or settlement of a loan's principal balance for less than the full amount due? *(If you answer "Yes" to either 31(a) or 31(b) above, please provide Lender with a written explanation)* | ☐ | ☐ |



**SBA 7(a) Borrower Information Form**
(Section III: Entity Owner Information)

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**By Signing Below, You Make the Following Representations, Acknowledgement, Authorization, and Certification**

## REPRESENTATIONS, ACKNOWLEDGEMENT AND AUTHORIZATION

I represent that:

- I have read the Statements Required by Law and Executive Order and I understand them.
- I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- The Applicant is not knowingly engaged and will not knowingly engage in any activity that is illegal under federal, state, or local law or that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.
- I understand, acknowledge, agree, and consent that the Lender can use and share any tax information that I have provided and/or that the Lender has obtained from the Internal Revenue Service with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

I acknowledge that:

- SBA encourages the purchase, to the extent feasible, of American-made equipment and supplies.

I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

## ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_____
Signature of Authorized Representative of Entity

_____
Date:

_____
Print Name and Title



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Please read the following notices regarding use of federal financial assistance programs and then sign and date the certification.**

This application and any assistance provided pursuant to this application is subject to the following laws, regulations, and Executive Orders.

## Privacy Act (5 U.S.C. 552a); Collection of Social Security Number (31 U.S.C.7701)

*Authorities and Purpose for Collecting Information*: SBA is collecting the information on this form, including social security numbers and other personal information, to make a character and credit eligibility decision in connection with you or your company's application for SBA assistance. SBA may also use social security numbers for the purpose of collecting and reporting on any delinquent fees or other amounts owed SBA. Under the provisions of 31 U.S.C. 7701, the applicant business and any guarantor of the loan are required to provide their social security numbers or other taxpayer identification numbers in order to do business with SBA. Failure to provide this information would affect your ability to obtain a 7(a) loan. For other individuals signing this application, the submission of the social security number is voluntary and failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled.

In evaluating whether the applicant satisfies the criteria for a 7(a) loan, SBA considers whether the applicant and each of its Associates possess good character. In making this determination, SBA considers the person's integrity, candor, and criminal history if any. SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), of the Small Business Act, 15 USC Section 636(a)(1)(B). In addition, for all forms of assistance, SBA is authorized to make all investigations necessary to ensure that a person has not engaged in acts that violate or will violate the Small Business Act, 15 U.S.C. 634(b)(11). In conducting the criminal background check, SBA also uses your social security number to distinguish you from other individuals with the same or similar name or other personal identifiers. This use is permitted under Executive Order 9397.

*Routine Uses*: Some of the information collected may be checked against criminal history indices of the Federal Bureau of Investigation. When the information collected indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature, SBA may refer it to the appropriate agency, whether Federal, State, local, or foreign, charged with responsibility for or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. See SBA's Privacy Act System of Records, at 74 Fed. Reg. 14890 (2009) (as amended from time to time) for other published r

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** -- As required by this statute, SBA provides this notice of its right to access your financial records held by financial institutions, including any institution participating in a loan or loan guarantee, that are or have been doing business with you or your business. The law provides that SBA shall have a right of access to your financial records in connection with its consideration or administration of assistance to you in the form of a Government loan or loan guaranty agreement. SBA is required to provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records, after which no further certification is required for subsequent access. The law also provides that SBA's access rights continue for the term of any approved loan or loan guaranty agreement. No further notice to you of SBA's access rights is required during the term of any such agreement.

The law also authorizes SBA to transfer to another Government authority any financial records included in an application for a loan, or concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan or loan guarantee or to collect on a defaulted loan or loan guarantee. No other transfer of your financial records to another Government authority will be permitted by SBA except as required or permitted by law.

**Freedom of Information Act (5 U.S.C. 552)** -- This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers the amount of the loan, and the type of loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Debt Collection Act of 1982 (5 U.S.C. 5514 note) and Debt Collection Improvement Act of 1996 (31 U.S.C. 3701 et seq.)** -- These laws require SBA to aggressively collect any loan or other payments that become delinquent. SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may take one or more of the following actions: (1) report the status of your loan(s) or other debt owed to SBA to credit bureaus, (2) hire a collection agency to collect your loan or other delinquent debt, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice or other attorneys for litigation, or (6) foreclose on collateral or take other action permitted in the loan instruments. Finally, if you default on an SBA loan and fail to fully reimburse the Agency for any resulting loss, SBA may
refer you to the computer database of delinquent Federal debtors maintained by the Department of Housing and Urban Development or another Federal agency. This referral may result in your being disqualified from receiving financial assistance from other Federal agencies. In addition, unless SBA is reimbursed in full for the loss, you will not eligible for additional SBA financial assistance.

**Flood Disaster Protection Act (42 U.S.C. 4011)** -- Regulations have been issued by the Federal Insurance Administration (FIA) and by SBA implementing this Act and its amendments. These regulations prohibit SBA from making certain loans in an FIA designated floodplain unless Federal Flood insurance is purchased as a condition of the loan. Failure to maintain the required level of flood insurance makes the applicant ineligible for any financial assistance from SBA, including disaster assistance.

**Executive Orders -- Floodplain Management and Wetland Protection (42 F.R. 26951 and 42 F.R. 26961)** -- SBA discourages settlement in or development of a floodplain or a wetland. This statement is to notify all SBA loan applicants that such actions are hazardous to both life and property and should be avoided. The additional cost of flood preventive construction must be considered in addition to the possible loss of all assets and investments due to a future flood.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** -- The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces.  They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights Legislation (13 C.F.R. 112, 113, 117)** -- All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. This includes making their goods and services available to handicapped clients or customers. All business borrowers will be required to display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** -- The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Executive Order 11738 -- Environmental Protection (38 F.R. 251621)** -- The Executive Order charges SBA with administering its loan programs in a manner that will result in effective enforcement of the Clean Air Act, the Federal Water Pollution Act and other environment protection legislation.



**SBA 7(a) Borrower Information Form**
Statements Required by Law and Executive Order

OMB Control No.: 3245-0348
Expiration Date: 09/30/2023

**Lead-Based Paint Poisoning Prevention Act (42 U.S.C. 4821 et seq.)** -- Borrowers using SBA funds for the construction or rehabilitation of a residential structure are prohibited from using lead-based paint (as defined in SBA regulations) on all interior surfaces, whether accessible or not, and exterior surfaces, such as stairs, decks, porches, railings, windows and doors, which are readily accessible to children under 7 years of age. A "residential structure" is any home, apartment, hotel, motel, orphanage, boarding school, dormitory, day care center, extended care facility, college or other school housing, hospital, group practice or community facility and all other residential or institutional structures where persons reside.

**Executive Order 12549, Debarment and Suspension (2 CFR 180, adopted by reference in 2 CFR Part 2700 (SBA Debarment Regulations))**
-- By submission of this loan application, you certify and acknowledge that neither you nor any Associates have within the past three years been: (a) debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a transaction by any Federal department or agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the Regulations; or (d) delinquent on any amounts due and owing to the U.S. Government or its agencies or instrumentalities as of the date of execution of this certification.

If you are unable to certify and acknowledge (a) through (d), you must obtain and attach a written statement of exception from SBA permitting participation in this loan. You further certify that you have not and will not knowingly enter into any agreement in connection with the goods and/or services purchased with the proceeds of this loan with any individual or entity that has been debarred, suspended, declared ineligible from participating in, or voluntarily excluded from participation in a Transaction. All capitalized terms have the meanings set forth in 2 C.F.R. Part 180.

**NOTE:** According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 15 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503.
**PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**



**CRAIG DEVELOPMENT, LLC**
1617 1ST AVE N SUITE B
FARGO, ND 58107

First Community Credit Union
PO Box 2180
Jamestown, ND 58402-2180
800-850-7676

10001
77-7869/2913

DATE 6.18-22   AMOUNT

$1600

PAY
TO THE
ORDER
OF: Brady Plint
Six hundred dollas +no/100

vivs transport

⑈0 10001 ⑈  ⑈291378693⑈  050007171 10⑈

AUTHORIZED SIGNATURE

FCCU Subpoena 000669

EXHIBIT   32
WIT: M CRAIG
DATE: 9/24/25
CHARLA A. PAWLIK



**CRAIG DEVELOPMENT, LLC**
1617 1ST AVE N SUITE B
FARGO, ND 58107

10002
77-7869/2913

First Community Credit Union
PO Box 2180
Jamestown, ND 58402-2180
800-850-7676

DATE

AMOUNT
$9,000.00

PAY
TO THE
ORDER
OF:
Nichole Mathiason
Nine-thousand tho)roo

3 saddles

AUTHORIZED SIGNATURE

⑈0⑆0002⑈ ⑇291378693⑇ 0500071711⑈

FCCU Subpoena 000665



EXHIBIT 33
WIT: M CRAIG
DATE: 9/24/25
CHARLA A. PAWLIK



**CRAIG DEVELOPMENT, LLC**
1617 1ST AVE N SUITE B
FARGO, ND 58107

PAY
TO THE
ORDER
OF:

10005
77-7869/2913

First Community Credit Union
PO Box 2180
Jamestown, ND 58402-2180
800-850-7676

DATE 6-29-22

AMOUNT $6,232.55

AUTHORIZED SIGNATURE

⑁"010005"⑁ ⑁:291378693⑁: 05000717110"

RRSB FCCU Subpoena 000838



EXHIBIT 34
WIT: M CRAIG
DATE: 9/24/25
CHARLA A. PAWLIK