UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 25-30002 |
|---|---|
| Generations on 1st LLC, | Chapter 11 |
| Debtor. | |
| In Re: | Case No. 25-30003 |
| Parkside Place LLC, | Chapter 11 |
| Debtor. | (Jointly Administered) |

## NINTH STIPULATION FOR USE OF CASH COLLATERAL

This Stipulation for Use of Cash Collateral ("Stipulation"), is entered into effective December 15, 2025, by Red River State Bank ("Bank") and Debtors Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively "the Debtors") by and through their undersigned attorneys, pursuant to Fed. R. Bankr. P 4001(d). RRSB, Generations, and Parkside are hereinafter collectively referred to as the "Parties."

## RECITALS

A. The Debtors commenced these cases on January 6, 2025 (the "Petition Date") by filing voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code.

B. Both of these cases are single-asset real estate pursuant to 11 U.S.C. § 101(51B). Generations is the owner of a mixed-use apartment building located at 26 1st Ave SW, Watertown, South Dakota (the "Generations Real Property"). Parkside is the owner of a mixed-use apartment building located at 8 2nd St. NE, Watertown, South Dakota (the "Parkside Real Property").

C. On October 1, 2024, a receiver was appointed by the Codington County Circuit Court of South Dakota to collect the rents and manage the Generations Real Property and the Parkside Real Property.

D. As of the Petition Date, the receiver was holding pre-petition rents in the sum of $110,948.58 for Parkside (the "Parkside Pre-Petition Rents") and $211,201.59 for Generations (the "Generations Pre-Petition Rents").

E. As of the Petition Date, the Debtors' prior property management company, CP Business Management, Inc., was holding tenant security deposits of $33,985.00 for Parkside (the "Parkside Security Deposits") and $56,695.00 for Generations (the "Generations Security Deposits").

F. On January 7, 2025, Generations and Parkside each filed a Motion for Leave to Use Cash Collateral [Generations ECF No. 12; Parkside ECF No. 12] (collectively, the "Cash Collateral Motions") seeking to use cash collateral consisting of the pre-petition and post-petition rents being held by the receiver and in which the Bank claims an interest.

G. On January 15, 2025, the Bank filed its Objection to Debtor's Motion for Leave to Use Cash Collateral (collectively, the "Objections"). [Generations ECF No. 31; Parkside ECF No. 31]

H. On January 17, 2025, the Parties filed a Stipulation for Use of Cash Collateral [Generations ECF No. 44] and subsequently filed on February 3, 2025 an Amended Stipulation for Use of Cash Collateral [Generations ECF No. 54].

I. On January 27, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through March 15, 2025 [Generations ECF 50].

J.  On March 3, 2025, Parkside and Generations filed a Second Motion for Leave to Use Cash Collateral. [Generations ECF No. 63]

K.  On March 12, 2025, the Parties entered into a Second Stipulation for Use of Cash Collateral for the time period of March 16, 2025 through May 15, 2025. [Generations ECF No. 69]

L.  On March 13, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through May 15, 2025. [Generations ECF 74]

M.  On May 5, 2025, the Parties entered into a Third Stipulation for Use of Cash Collateral for the time period of May 16, 2025 through July 15, 2025. [Generations ECF No. 91]

N.  On July 8, 2025, the Parties stipulated, on the record in open court, to the continued use of cash collateral, on the same terms as set forth in the Third Stipulation for Use of Cash Collateral, for the time period of July 15, 2025 through August 14, 2025, which the Bankruptcy Court approved. [Generations ECF 125]

O.  On August 7, 2025, the Parties stipulated, on the record in open court, to the continued use of cash collateral, on the same terms as set forth in the Third Stipulation for Use of Cash Collateral, for the time period of August 14, 2025 through August 28, 2025, which the Bankruptcy Court approved. [Generations ECF 141]

P.  On August 26, 2025, the Parties entered into a Sixth Stipulation for Use of Cash Collateral for the time period of August 28, 2025 through October 15, 2025. [Generations ECF No. 159]

Q. On August 26, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through October 15, 2025. [Generations ECF 160]

R. The use of cash collateral was subsequently stipulated by the Parties, to and through October 20, 2025.

S. On October 19, 2025, the Parties entered into a Seventh Stipulation for Use of Cash Collateral for the time period of October 20, 2025 through November 15, 2025. [Generations ECF No. 218]

T. October 21, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through November 15, 2025. [Generations ECF 224]

U. The Parties subsequently stipulated to the use of cash collateral to and through December 15, 2025, with said stipulation being approved by the Bankruptcy Court. [Generations ECF 233]

V. The Parties have engaged in discussions and now enter into this Stipulation regarding use of cash collateral for the time period of December 15, 2025 through January 15, 2026.

**AGREEMENT**

In consideration of the covenants in this Stipulation, the Parties agree as follows:

1. <u>Recitals</u>. The recitals set forth in this Stipulation are true and correct and incorporated by reference.<u>Projections/Budget.</u> The Debtors have prepared an estimated cash flow budget demonstrating the projected use of cash collateral and budgets during the term of the Stipulation and are authorized and permitted to use cash collateral as that term is defined in 11

U.S.C. § 363, but only in accordance with the budgets attached to the Cash Collateral Motion as **Exhibit 1** and for the period of December 15, 2025 through January 15, 2026 (the "Budgets").

    3.    <u>Permitted Use of Cash Collateral</u>. Subject to the terms of this Stipulation, the Debtors may use the Bank's cash solely to pay its ordinary and necessary business expenses in accordance with the Budgets.

    4.    <u>Impermissible Uses of Cash Collateral</u>. The Debtors will not use any of the Bank's cash collateral to pay items:

    i.    Not contained in the Budgets except as approved by the Bankruptcy Court after written notice to the Bank and a hearing or after written request to the Bank and the Bank's written consent; or

    ii.    In excess of one hundred ten percent (110%) of the amount set forth in the Budget, in the aggregate from the Petition Date.

    5.    <u>Adequate Protection and Replacement Liens</u>. In consideration of and as adequate protection for use of the Banks' cash collateral and post-petition cash generated from rents or other cash sources of income, the Parties request:

    i.    Debtors waive and release any claim against the Bank that the Pre-Petition Rents remitted under paragraph 10 below are property of the estate or that the Bank did not have a properly perfected lien in these specific monies, to the extent of any allowed claims of the Bank.

    ii.    Parkside will pay the sum of $19,266.67.00 on the 15th day of each month to be applied to debt service.

    iii.    Generations will pay the sum of $39,666.67 on the 15th day of each month to be applied to debt service.

iv. Parkside and Generations shall *each* remit to the Bank, within three (3) business days of the entry of an order granting this stipulation, the added sum of $25,000.00, to be applied to debt service.

v. The adequate protection payments to the Bank set forth in this paragraph 5(i) and (ii) will be deemed sufficient to satisfy the requirements of 11 U.S.C. § 362(d)(3)(B) for the equal number of months that payments are made.

vi. The Bank shall be granted perfected replacement liens and security interests, pursuant to 11 U.S.C. § 552, in Debtors' postpetition accounts receivables, general intangibles, cash, and rents of the same priority, dignity, and effect as the prepetition liens and security interests on the prepetition property of Debtors, to the extent of any diminution in cash collateral or prepetition accounts receivables, general intangibles, cash, and rents. The liens and security interests granted to the Bank herein shall not be primed by any other lien or encumbrance, whether by order of the Bankruptcy Court or the passage of time. The postpetition grant of the liens and security interests shall be supplemental of, and in addition to, the liens and security interests, if any, which the Bank possesses pursuant to its loan documents. The replacement liens and security interests granted by Debtors will be deemed properly perfected without further act or deed on the part of the Debtors or the Bank. Notwithstanding anything contained herein, the post-petition cash collateral shall not include any cause of action or proceeds thereof recovered pursuant to Chapter 5 of the Bankruptcy Code.

      vii.    The liens and security interests granted herein to the Bank and the priorities of the same shall not be affected by the incurrence of indebtedness pursuant to 11 U.S.C. § 364, or otherwise.

6.    <u>Insurance</u>. Debtors agree to maintain all necessary insurance, including, without limitation, fire, hazard, comprehensive, public liability, and worker's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtors are engaged and with respect to the Generations Real Property and the Parkside Real Property naming the Bank as primary mortgage holder and lender loss payee. Debtors agree to maintain the Generations Real Property and the Parkside Real Property in its present condition, ordinary wear and tear excepted, and unforeseen acts of god excepted. Debtors will furnish proof of such insurance within two (2) business days of written request by the Bank.

7.    <u>Inspection</u>. Debtors agree to the Bank's inspection of the Generations Real Property and/or the Parkside Real Property upon 48-hours prior notice to the Debtors and its counsel with said inspection to occur during normal business hours. The Bank has designated two natural persons who may carry out said inspections, and such inspections must be undertaken by one or both of those persons (though either may be substituted should they cease to be an agent of the Bank). The inspections shall occur not more often than once per calendar month absent court order. The Bank acknowledges that such inspections shall not include inspections of units subject to active leases in favor of third parties.

8.    <u>Reporting Requirements</u>. During the term the Debtors are using the Bank's cash collateral, the Debtors shall furnish to the Bank such financial and other information as the Bank shall reasonably request including, but not limited to:

   i. Timely filing the monthly operating reports required by the US Trustee and the Bankruptcy Court, and provide copies of such reports to counsel for the Bank.

   ii. Monthly reports due on the 15th day of the month through and including August 15, 2025 for the month preceding of: 1) dedicated rent roll, 2) rent receivable aging report, 3) summary of new leases signed, short cancel notifications, and leases ended; and 4) accounts payable aging report.

   iii. Due on the 15th day of the month through and including August 15, 2025 for the month preceding of copies of invoices or requests for payment from vendors, 2) copies of checks, ACH payments, Venmo payments, or other transactions in which cash collateral was utilized (to the extent not reflected in the Debtors' monthly operating reports).

   iv. Providing copies to the Bank of all current and existing leases within 14-days of the docketing of this Stipulation and furnishing copies of all new leases within ten business days of the full execution thereof.

  9. <u>Bank Accounts</u>. Parkside and Generations have each established an operating account, in the form of a checking account at an FDIC-insured financial institution, alongside a tenant security deposit account, in the form of a savings account at an FDIC-insured financial institution. All rents will be deposited in said operating accounts and the Debtors will only use the DIP operating accounts for business operations. Additionally, the Debtors will cause CP Business Management Inc. to deposit all tenant security deposits into the respective savings accounts. Parkside and Generations shall each take steps to permit the Bank to have online viewing privileges for all four of these accounts, though such privileges shall *not* extend to permitting the Bank to

undertake any banking activity (aside from the viewing of activities) in connection with any of the four accounts. Parkside and Generations shall each, respectively, give the Bank three days' advanced notice before causing any monies to be removed from the tenant security deposit accounts.

    10.    <u>Limitations on Reimbursements to CP Business Management, Inc. or Insiders</u>. Debtors agree that CP Business Management, Inc. or other insiders will not be permitted to request reimbursement of expenses, except in the case of incidentals not exceeding $250 per month, without written agreement of the Bank or leave of court.

    11.    <u>Occupancy Requirements</u>. Occupancy with respect to the Parkside Real Property must be maintained at 90% or greater. Occupancy with respect to the Generations Real Property must be maintained at 80% or greater.

    12.    <u>Term</u>. This Stipulation for use of cash collateral will expire on the earlier of 11:59 p.m. on January 15, 2026, or the happening of any of the following: dismissal of Debtor's Chapter 11 case or conversion of Debtor's Chapter 11 case to case under Chapter 7; lifting of the automatic stay as to the cash collateral or the Generations Real Property or the Parkside Real Property; confirmation of a Chapter 11 plan; any sale of any of the Debtor's property outside the ordinary course of business, including a sale under 11 U.S.C. §363; or the occurrence of an event of default under this Stipulation.

    13.    <u>Event of Default</u>. An event of default shall occur upon the occurrence of any of the following:

        i.    Failure of the Debtors to timely: 1) comply with any obligation contained in this Stipulation; 2) properly maintain and make repairs to the Generations Real Property and/or Parkside Real Property; 3) maintain insurance;

    ii. Entry of an order altering or vacating the order approving this Stipulation, lifting the automatic stay as to any other creditor, or providing for conversion or dismissal of this case, unless the Bank shall consent to said order; or

    iii. Failure to make any payments required under this Stipulation.

  14. <u>Remedies</u>. Upon the occurrence of an event of default, the Bank shall give written notice to the Debtors' counsel, by email with a copy to follow by U.S. Mail to the Debtors (the "Default Notice"), clearly identifying in all caps and bold font as a "NOTICE OF DEFAULT", allowing the Debtors twenty calendar days from the date of the Default Notice to cure such claimed default. If the Debtors failure to timely cure the default, the Bank shall be entitled to file an affidavit of default and the Debtors agree the Bankruptcy Court shall enter an order terminating the automatic stay as to the Bank and the Parkside Real Property and/or the Generations Real Property and personal property collateral as set forth in the Bank's loan documents.

  15. <u>Stipulation Subject to Court Order</u>. This Stipulation is conditioned upon, and shall be effective only upon, the entry of an order approving the Stipulation.

  16. <u>Complete Agreement</u>. This Stipulation contains the complete agreement of the Parties relative to its subject matter, and may not be modified or waived, except by a writing signed by the Parties.

  17. <u>Binding Effect</u>. This Stipulation shall be binding upon the Parties hereto and each of their successors in interest.

  18. <u>No Waivers</u>. Except as set forth specifically herein, neither Debtors nor the Bank waive any rights to which they are entitled under the terms of the loan documents. No failure or

delay by the Bank in exercising any right hereunder or under any of the loan documents shall be a waiver thereof, nor shall any single or partial exercise of such right preclude any other right.

19. <u>Form of Signatures</u>. The Parties consent to and authorize the filing of this Stipulation on the Bankruptcy Court's docket with their electronic signatures and such signatures shall be effective as original signatures for all purposes.

20. <u>Dates</u>. When any obligation hereunder is to occur on a given date, and said date is a Saturday, Sunday, or holiday observed by either or both of (i) the Bank; and/or (ii) the United States Postal Service, said obligation shall instead be deemed to be fall on the next succeeding business day.

*[Continued on Following Page]*

Page **11** of **12**

IN WITNESS WHEREOF, the Parties have executed this Stipulation on the dates indicated below.

|  |  |
|---|---|
| Dated:  December 13, 2025 | VOGEL LAW FIRM<br><br>By:  /s/ Kesha L. Tanabe<br>(signed w/ express permission)<br>Caren W. Stanley (#06100)<br>cstanley@vogellaw.com<br>Drew J. Hushka (#08230)<br>dhushka@vogellaw.com<br>Kesha L. Tanabe<br>ktanabe@vogellaw.com<br>218 NP Avenue<br>PO Box 1389<br>Fargo, ND  58107-1389<br>Telephone: 701.237.6983<br>*Attorneys for Red River State Bank* |
| Dated:  December 13, 2025 | THE DAKOTA BANKRUPTCY FIRM<br><br>By:  /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>1630 1st Ave N<br>Suite B PMB 24<br>Fargo, ND 58102-4246<br>Phone: (701) 394-3215<br>mac@dakotabankruptcy.com<br>*Counsel for Debtor* |