**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re:<br><br>Generations on 1st, LLC,<br><br>Debtor. | Lead Case No.: 25-30002<br>(Jointly Administered)<br><br>Chapter 11 |
| In re:<br><br>Parkside Place, LLC,<br><br>Debtor. | Case No.: 25-30003 |

**DISCLOSURE STATEMENT OBJECTION**

**(PARKSIDE ONLY)**

Red River State Bank (the "Bank") hereby objects to approval of the Disclosure Statement (the "Disclosure Statement") [ECF 242] for the First Amended Chapter 11 Plan of Reorganization (the "Plan") [ECF 241] filed by Parkside Place, LLC (the "Debtor" or "Parkside").

Introduction

1. In the first instance, the Bank objects to approval of the Disclosure Statement because Debtor has not satisfied the legal requirements set forth in 11 U.S.C. § 1125. In addition to such technical grounds for disapproval, the Bank is willing and able to supply admissible evidence to demonstrate that the Debtor has not filed this case or proposed the Plan in good faith. Ultimately, the Disclosure Statement should not be approved because it is

fundamentally misleading and its approval would enable the Debtor to utilize the Chapter 11 process for a bad faith purpose.

2. Debtor has casually made allegations of misconduct against the Bank to perpetuate a false narrative about why three related real estate projects fell into default before the Petition Date. Notwithstanding a veritable saga of litigation, the record confirms Debtor has purposefully avoided every opportunity to provide concrete evidence to support its claims.

3. For example, the Debtor objected to the Bank's proof of claim, insinuating in several hearings and written submissions to this Court that the Bank was withholding a "payment history" in bad faith. [Case No. 25-30002, ECF 96] After the Bank painstakingly detailed each and every physical check and counter deposit slip – all of which were physically signed and/or witnessed by the statutory insider who is directing the work of Debtor's counsel in this case-- the Debtor stipulated to full allowance of the Bank's claims. [Case No. 25-30002, ECF 98, 164-167, 177]

4. Similarly, when the Bank filed a motion to reduce the exclusivity period in this case [Case No. 25-30002, ECF 174] and prepared extensive evidence of the insider's bad faith purpose for filing this case [Case No. 25-30002, ECF 185, 186, 190-195, 199-200, 203-205, 207-213, 215-216, 227-228], Debtor quickly conceded that the exclusivity period could be reduced and effectively mooted any opportunities to demonstrate the insider's bad faith reason for filing this case.

5. For almost a full year, Debtor has stonewalled the secured creditors' attempts to obtain standard information for a Chapter 11 case. For example, the Bank was forced to file a formal notice of default to obtain basic information about its insurance coverage. [Case No. 25-30002, ECF 168-169]. Similarly, the Bank was forced to file a formal objection to the

2

Debtor's first plan on May 16, 2025 after its repeated attempts to discuss a consensual plan were wholly ignored by the Debtor. [Case No. 25-30002, ECF 106]. The Bank has submitted informal plan comments and requested cash flow projections and other information relevant to feasibility on several occasions. To date, Debtor has never responded.

6. Against this backdrop, the Disclosure Statement seems to be yet another effort by Debtor to use the Chapter 11 process to hinder and delay creditors, and to conceal basic information required by such creditors to evaluate the sincerity or feasibility of its efforts to reorganize. By contrast, the Plan and Disclosure Statement make abundantly clear that the Debtor is committed to buying time for statutory insiders to outrun applicable statutes of limitation, resulting in *de facto*, non-consensual third-party releases, regardless of whether the reorganization succeeds or fails.

7. The "new" Plan and Disclosure Statement have the same fundamental defects as the original plan, including gamesmanship with respect to classification and gerrymandering, making it clear that the Debtor's primary goal is to "cram up" on secured creditors and force through a plan that shields the insiders from liability for prepetition conduct for up to five years.

8. Debtor has not concerned itself with the feasibility of the Plan – as evidenced by its failure to provide any cash flow projections, nor has it concerned itself with the best interests of creditors – as evidenced by its failure to include even a cursory liquidation analysis. From the insider's point of view, if confirmation deepens the Debtor's insolvency or is ultimately followed by a subsequent Chapter 11 filing, the case will nonetheless have "succeeded" if creditors are precluded from investigating or prosecuting the insiders for their prepetition conduct. The Bank respectfully urges the Court to put an end to this ruse, to stop

3

the needless accrual of legal fees and other administrative claims, in service of the insiders' unapologetic misuse of the Chapter 11 process to delay creditors for their personal advantage.

<u>Legal Standard for Approval</u>

9. "The primary purpose of a disclosure statement is to give creditors the information they need to decide whether to accept the plan." <u>In re Monnier Bros</u>., 755 F.2d 1336, 1342 (8th Cir. 1985). To that end, the Bankruptcy Code requires the Disclosure Statement to contain "adequate information," which is defined as:

> "[I]nformation of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan…"

11 U.S.C. § 1125(a)(1).

10. Simply put, "adequate information" is what allows creditors "to vote intelligently on the plan." <u>In re Farmland Indus., Inc</u>., 286 B.R. 888, 892 (Bankr. W.D. Mo. 2002). To evaluate whether the information provided by the plan proponent is "adequate," many Courts in our Circuit have considered and weighed the following types of information:

(1) the events which led to the filing of a bankruptcy petition;

(2) a description of the available assets and their value;

(3) the anticipated future of the company;

(4) the source of information stated in the disclosure statement;

(5) a disclaimer;

(6) the present condition of the debtor while in Chapter 11;

(7) the scheduled claims;

(8) the estimated return to creditors under a Chapter 7 liquidation;

4

(9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

(10) the future management of the debtor;

(11) the Chapter 11 plan or a summary thereof;

(12) the estimated administrative expenses, including attorneys' and accountants' fees;

(13) the collectability of accounts receivable;

(14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

(15) information relevant to the risks posed to creditors under the plan;

(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

(17) litigation likely to arise in a nonbankruptcy context;

(18) tax attributes of the debtor; and

(19) the relationship of the debtor with the affiliates.

See, e.g., In re Puff, No. BR 10-01877, 2011 WL 2604759, at *3 (Bankr. N.D. Iowa June 30, 2011).

11. To be adequate, a disclosure statement does not need to include information from every category in the preceding list. The Court has discretion to determine which types of information, and how much detail, is adequate on a case-by-case basis. Id. The court may also determine that specific omissions render a disclosure statement substantially incomplete, materially inaccurate, or misleading to creditors.

12. One of the only "hard and fast" requirements for the content of a disclosure statement is set forth Federal Rule of Bankruptcy Procedure 3016(b). If a plan includes an

injunction, Rule 3016(b) requires the plan proponent to make an express disclosure of such injunction in "conspicuous language (bold, italic, or underlined text)."

13. It is the Debtor, as plan proponent, who bears the burden of proving the adequacy of its Disclosure Statement. In accord with Section 1125(a)(2), creditors should not be presumed or expected to obtain the information they need to evaluate a plan by unusual means. If such information is readily available to the Debtor, but it has strategically opted to omit it from the Disclosure Statement, creditors should not be expected to uncover or deduce such information before they can vote on the Plan. Rather, it is the Debtor who should bear the burden of redrafting its Disclosure Statement to provide such information to its creditors.

14. Lastly, a Court may deny approval of a disclosure statement if a plan is facially unconfirmable as a matter of law. It is a waste of resources to approve a disclosure statement, for example, if the plan impermissibly classifies creditors or the proposed plan treatment clearly violates confirmation standards such as priority rules, or cramdown requirements. In Re Atlanta West VI, 91 B.R. 620, 622 (Bkr. N. D. Ga. 1988).

Specific Deficiencies of the Debtor's Disclosure Statement

15. Inaccurate and Misleading Description of Events Leading to CH 11: As discussed in the introduction to this objection, the Disclosure Statement fundamentally "hides the ball" about the role of statutory insiders in this case, the existence of admissible evidence of prepetition self-dealing and misappropriation of funds, as key events leading up to the Debtor's bankruptcy filing. Instead, Debtor devotes several sections of the Disclosure Statement to wholly unproven allegations against the Bank, and generic claims about the existence of a global pandemic several years before the Petition Date, to explain how and why it ended up in receivership and then bankruptcy. [Case No. 25-30002, pp. 3-5]

16. <u>Incomplete Description of Litigation and Failure to Disclose Avoidance Actions</u>: The Disclosure Statement section titled "Litigation" is materially misleading because it overstates the significance of the Bank's recent motion to dismiss the Adversary Proceeding, incorrectly implying that this Court has "tested" and weighed in on the merits of Debtor's claims against the Bank. [ECF 242, pp. 4-5.] The Litigation section of the Disclosure Statement is also materially incomplete because it omits any mention of potential claims adverse to the Debtor and insiders. Debtor's description of the Adversary Proceeding does not even acknowledge the counterclaims asserted by the Bank against Debtor and insiders. <u>Id.</u> The Disclosure Statement should clearly explain that the Debtor currently has exclusive standing to prosecute such claims and why the Debtor has proposed a Plan that prevents any other party from investigating and prosecuting such claims for up to five years. The Disclosure Statement should further explain the interplay with applicable statues of limitations, in particular for fraudulent transfers as these claims are currently set to expire on the second anniversary of the Petition Date, causing the estate to forfeit its largest unencumbered asset. 11 U.S.C. § 546(e).

17. <u>Good Faith Requirement</u>: By concealing the existence of claims against insiders, the Disclosure Statement diverts attention from Debtor's impermissible motivation of filing a Chapter 11 bankruptcy case to obtain relief for the benefit of such insiders. Debtor should disclose that if it cannot prove the Plan is proposed in good faith, it will not be confirmable as a matter of law. 11 U.S.C. § 1129(a)(3). At a high level, the Bank urges the Court to consider whether the recent evidentiary hearing about the insiders' prepetition bad faith conduct vis-à-vis Debtor's affiliate is reason enough to slow down the solicitation process and reconsider the appropriateness of Debtor's continued use of the Chapter 11 process. The Bank has already introduced some of the evidence it has obtained in discovery, albeit only a small fraction of it,

7

that demonstrates the existence of actionable insider conduct against the Debtor. The Debtor's principal has an ongoing and continuous conflict of interest (which Mr. Craig admitted by testifying that he is in a "conundrum" as it relates to Chapter 5 insider claims because "I would in essence be suing myself or going after myself" and that he was not inclined to sue himself.) *See* Tr. from Nov. 4, 2025, Hr'g at 36:1-8 in the Ruins, LLC bankruptcy case. This unresolvable conflict of interest permeates the Debtor's reorganization process and precludes the good faith finding necessary for confirmation of the Debtor's plan. See e.g., In re Coram Healthcare Corp., 271 B.R. 228, 235 (Bankr. D. Del. 2001) (A Chapter 11 debtor-in-possession, as well as its senior officers, is bound by a duty of loyalty that includes an obligation to refrain from self-dealing, to avoid conflicts of interest and the appearance of impropriety).

18.  Plan Injunction: Critically, the Disclosure Statement makes no mention of a five-year injunction in Section 4.7 of the Plan for the benefit of statutory insiders, as expressly required by Rule 3016(b). The Disclosure Statement should explain that confirmation of the Plan will preclude any party from investigating or recovering avoidance actions against insiders in any forum. It should also clearly explain that if the case proceeded under Chapter 7, the Court would appoint a trustee who would have a statutory duty to investigate and pursue potential recoveries from avoidance actions for distribution to unsecured creditors. The Disclosure Statement should also be amended to explain the legal standard for approving third party releases and injunctions, and the fact that insiders have offered no consideration in exchange for the injunction they will receive under the Debtor's Plan. Lastly, the Disclosure Statement should clearly explain the interplay between the injunction and the applicable statute

8

of limitations, transmuting what is nominally an injunction into a *de facto* third party release. See Harrington v. Purdue Pharma L.P. (In re Purdue Pharma), 603 U.S. 204, (2024).

19. Feasibility: The Disclosure Statement avers that the Plan will be feasible, even if the Debtor fails to reduce the Bank's claim through litigation, because plan payments are "pegged to future rental streams and take out financing." [ECF 242, p. 5]. Debtor has provided no evidentiary support in the Plan or Disclosure Statement for such statements. At a minimum, the Disclosure Statement should not be approved because Debtor has not explained what future rents will be in a standard cash flow projection, a "payment waterfall", or any other feasibility analysis, as is customary in Chapter 11 plans of reorganization. Without a feasibility analysis, creditors lack adequate information to determine how the Plan will affect their potential recovery. See In re Cardinal Congregate I, 121 B.R. 760 (Bankr. S.D. Ohio 1990) (Chapter 11 debtor's disclosure statement which identified "net cash flow" as source of funds for satisfaction of allowed claims and interests, had to clearly state how "net cash flow" was defined and calculated); In re Dakota Rail, Inc., 104 B.R. 138 (Bankr. D. Minn. 1989) (financial projections must be substantiated and not misleading).

20. Take-Out Financing: Debtor has not provided any information that will allow creditors to make an informed judgment about the viability of the "take out financing" described in Section 4.4 of the Plan. The Disclosure Statement should be amended to explain that Debtor's prior attempts to obtain such financing have failed because it is significantly overleveraged by many millions of dollars and Debtor cannot currently satisfy the standard loan to value ratio required to qualify for such financing. Debtor casually states that it could obtain such financing at some point in the future, but obscures the fact that Debtor cannot satisfy a ubiquitous condition precedent to such financing without several million dollars'

9

worth of passive asset appreciation or a multi-million-dollar capital contribution from equity within the next few years. The Disclosure Statement implies take-out financing could easily or routinely occur, and that it could be used to make plan payments, when in fact all empirical evidence suggests it is very unlikely to occur. The Disclosure Statement should not be approved because it contains materially misleading statements about plan feasibility.

21. <u>Description of Bank's Claim</u>: In Article IV, Section 1.1.1 of the Disclosure Statement, Debtor's description of the Bank's proposed treatment fundamentally misleads creditors about what treatment of secured claims is permitted under the Bankruptcy Code, which in turn misleads creditors about the feasibility of the Plan and cash available to pay other claims. [ECF 242, pp. 5-6]. First, the Disclosure Statement fundamentally mischaracterizes the Bank's claim against Parkside as a single debt. <u>Id.</u> As explained in the Bank's prior filings in this case, the Bank's claim against Parkside is based on several promissory notes with different terms, the majority of which have already matured. [Case No. 25-30002, ECF 98, 164; Case No. 25-30003, POC No. 1]. Debtor provides no legal support for its claim that it can cherry pick the rate of interest or the amortization schedule for the Bank's promissory notes, nor is there any legal support for the Debtor's claim that it can reinstate debt that matured before the Petition Date in Debtor's case, or that it could do so at a non-market rate of interest and with no additional interest to account for default risk. <u>See</u> 11 U.S.C. § 1124(2) and 11 U.S.C. § 1129(b); cf. <u>In re Topp</u>, 75 F.4th 959 (8th Cir. 2023); <u>In re Moshe</u>, 567 B.R. 450 (Bankr. E.D.N.Y. 2017) (proposed Chapter 11 plan that provided for curing of debtor's prepetition mortgage default, not by plan payments at contractual default rate of 24%, but by payments at significantly lower pre-default rate of 8%, was patently unconfirmable and prevented bankruptcy court from approving debtor's disclosure statement). Debtor has also provided no

10

information about its ability to pay a balloon seven years from now, unless such claim is based on the "take out financing" already discussed *infra*.

22. <u>Description of WDC Claim</u>: Debtor's description of the secured claim of Watertown Development Corporation ("<u>WDC</u>") is fundamentally misleading. [Case No. 25-3002, ECF 242, pp. 6-7] As explained in previous filings in these cases, the Debtor consistently, inaccurately describes what it refers to as the "TIF" or "TIF Arrangement", notwithstanding formal and informal efforts by its secured creditors to correct such misinformation. [POC 4-1]. The Disclosure Statement incorrectly implies that the TIF is property of the estate under 11 U.S.C. 541. However, the cash flows related to the TIF should not be described as payments made under the Plan because they are no longer property of the estate. See <u>In re Dakota Rail, Inc.</u>, 104 B.R. 138 (Bankr. D. Minn. 1989) (rejecting a disclosure statement because it contained misleading asset ownership information). Debtor is on notice that any cash flows related to the TIF were assigned to WDC prior to the Petition Date in this case, and such assignments were recorded in publicly available documents, all of which have been provided to Debtor before it filed the Plan and Disclosure Statement. The Disclosure Statement should be clarify that WDC is wholly unsecured in this case and Debtor will make no payments to WDC on account of the Plan. Debtor should not be permitted to solicit a Plan and Disclosure Statement that contain willfully inaccurate statements about the TIF.

23. <u>Description of Priority Claims</u>: The description of the Codington County tax claim in the Disclosure Statement is both inaccurate and misleading. [Case No. 25-3002, ECF 242, p. 7]  The Disclosure Statement should not indicate that the County's claim is impaired or imply it is entitled to vote, rather it should explain that priority tax claims are typically not classified in a plan and they are statutorily entitled to specific priority and treatment under the

Bankruptcy Code. See 11 U.S.C. § § 507(a)(8) and 1123(a)(1). Failing to correct this classification misleads creditors about voting, the feasibility of the plan, and the Debtor's likelihood of satisfying the statutory requirements to confirm the Plan.

24.　Description of Unsecured Claims and Gerrymandering: The Disclosure Statement should not be approved because the classification of Classes 4, 5, 6, and 7 in the Plan is clearly not permitted under Section 1122. [Case No. 25-3002, ECF 242, pp. 7-8] There is no basis for classifying holders of general unsecured claims into four separate classes. This is a bad faith attempt to gerrymander an impaired accepting class. Unless the Debtor creates a convenience class, there is no basis to classify the deficiency claims of the Bank and WDC differently than other general unsecured creditors. The Disclosure Statement also fails to explain that the votes of statutory insiders like CP Business Management are disregarded under Section 1129(a)(10) and that CP Business Management is not entitled to receive a distribution under the Plan until it resolves its liability to the estate under Sections 547, 584, and 550, per Section 502(d). The Disclosure Statement should also clarify whether the claim of Blacktail Investments, LLC is properly asserted against the Debtor, or whether it is an obligation against a statutory insider. Debtor's monthly operating reports imply this was a "capital contribution" of the insiders to the estate. Additionally, the Disclosure Statement should clarify whether Blacktail Investments, LLC is a statutory insider, or if it is voting at the direction of a statutory insider for the purpose of gerrymandering an accepting impaired class. If so, the Disclosure Statement should explain why its vote must be disregarded for the purpose of a cram down confirmation. U.S. Bank N.A. v. Village at Lakeridge, LLC, 583 U.S. ___, 138 S. Ct. 960 (2018). The Disclosure Statement should not be approved because it describes a plan that is patently unconfirmable as a matter of law, it has not been proposed in good faith, and it

fundamentally misleads creditors about the legality of the Debtor's approach to classification, voting rights, cram down confirmation, and the role of statutory and non-statutory insiders in the Debtor's case.

25. <u>Failure to Disclose Absolute Priority Rule</u>: The Disclosure Statement should not be approved because the description of Class 8 is misleading. [Case No. 25-3002, ECF 242, p. 8] First, the Disclosure Statement should explain that the votes of statutory insiders like Jesse R. Craig are disregarded under Section 1129(a)(10) and that Mr. Craig is not entitled to receive a distribution under the Plan until he resolves his liability to the estate under Sections 547, 584, and 550, per Section 502(d). Second, the Disclosure Statement incorrectly implies that equity is typically entitled to a distribution in Chapter 11. [ECF 242, p. 10]. The Disclosure Statement fails to explain that holders of equity interests are not entitled to receive a distribution under the Plan, including retention of their prepetition equity, unless Debtor complies with the absolute priority rule in this case. 11 U.S.C. § 1129. Alternatively, the Disclosure Statement should be amended to describe the "new value" exception to the absolute priority rule and quantify the new capital, if any, that will be contributed to fund the reorganization and whether it is equivalent in value to the interest retained by the insider. If the Debtor is not proposing a plan that satisfies either the absolute priority rule or the new value exception, then the Disclosure Statement should not be approved because the Plan is patently unconfirmable as a matter of law.

26. <u>Inadequate Information re Administrative Solvency:</u> The Disclosure Statement should not be approved because it does not provide adequate information about Debtor's administrative solvency. [Case No. 25-3002, ECF 242, pp. 8-9]. Creditors currently have no visibility about administrative expenses, including professional fees, from the general docket

13

in this case. The Disclosure Statement does not provide an estimate of administrative expenses; it also does not explain that Debtor must have sufficient unencumbered cash on hand to pay its administrative expenses on the Effective Date of its Plan. Debtor has been intentionally vague about the source of funds to pay its administrative expenses on the Effective Date of the Plan, relying upon the DIP account balances to create the illusion that the Debtor is profitable and administratively solvent. But Debtor's monthly operating reports confirm it is still holding prepetition rents collected by the receiver in its DIP account. The Disclosure Statement willfully conceals the fact that such funds are not property of the estate under Section 541; they were legally assigned from the Debtor to the Bank prior to the Petition Date and held in trust by the receiver. Moreover, any post-petition rents are currently subject to the Bank's liens and Debtor has only been permitted access to such funds by stipulation. The Disclosure Statement should explain that unless the Bank consents, administrative creditors like Debtor's counsel are not legally entitled to payment of their administrative expenses from a secured creditor's collateral. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 2000 WL 684180, - S.Ct. – (May 30, 2000). If Debtor does not have a source of unencumbered cash that is sufficient to pay its administrative expenses, the Plan is unconfirmable as a matter of law under Section 1129(a)(9).

27.     Inaccurate Information re Best Interests of Creditors Test: The Disclosure Statement should not be approved because Article IX misleads creditors about Debtor's ability to satisfy the "best interests of creditors" test. Debtor claims, without providing any supporting factual information, that "liquidation under chapter 7 would result in lesser distribution than proposed by the Plan." [Case No. 25-3002, ECF 242, p. 11]. The Disclosure Statement should be amended to explain that the Debtor must satisfy such test as a condition of confirmation

14

under Section 1129(a)(7). Debtors should also disclose that the largest unencumbered asset in this case are avoidance actions against statutory insiders, the Plan currently precludes any recoveries on such claims, and if the case was managed by a Chapter 7 trustee, such claims could be investigated and prosecuted for the benefit of creditors. The Disclosure Statement should not be approved because Debtor has not provided a liquidation analysis. And if Debtor had provided an honest analysis of the avoidance actions that could be recovered by a Chapter 7 trustee and its impact of recoveries for general unsecured creditors, the Plan would not satisfy the best interests of creditors test. At a minimum, the Disclosure Statement should provide adequate information about the potential recovery general unsecured creditors will forgo if they vote in favor of the Plan. The Bank further urges the Court not to approve a Disclosure Statement for a Plan that fails to satisfy the best interests of creditors test and is thus unconfirmable under Section 1129(a)(7).

28. <u>No Information re Future Management</u>: The Plan and Disclosure Statement do not contain adequate information because each fails to disclose that Debtor will continue to employ and pay statutory insiders rather than an independent third party to manage the Debtor's property. The Plan also affirmatively misleads creditors, stating that the insider's management services cost less than the prepetition receiver. [Case No. 25-3002, ECF 242, p. 10] Bank is prepared to introduce evidence that this statement is false and misleading. Bank is further prepared to introduce evidence that the insiders have utilized the post-petition management position to charge the Debtor above-market management fees and to seek reimbursement for inappropriate expenses during the pendency of this case. The Bank has attempted to resolve this issue informally with the Debtor on several occasions, but Mr. Craig,

15

and his wife Mulinda Craig, have refused to reduce the money they take out of the estate on a monthly basis.

29. <u>Inaccurate Statements about Post-Petition Cash Flow and Profitability</u>: The Plan contains false and misleading statements about the Debtor's profitability under the insider's management, stating "Since resuming operation of the Real Estate post-petition, the Debtor has been able to…draw a profit from operations, all while making cash collateral payments to RRSB." [Case No. 25-3002, ECF 242, p. 10] The Bank is prepared to introduce evidence to demonstrate that this statement is false and intended to mislead creditors and this Court about the Debtor's average monthly cash flow and plan feasibility. Debtor has been permitted to utilize cash collateral in exchange for monthly payments to the Bank pursuant to stipulation, but the stipulated monthly payments are less than an interest-only payment on the Bank's debt. In fact, the majority of the cash that appears on the Debtor's monthly operating statements represents prepetition rents collected by the receiver. It is dishonest to claim that Debtor's "surplus" is the result of the insider profitably operating the Debtor. Debtor should not be permitted to solicit the Plan until all false statements about its financial operations and condition have been corrected in both the Plan and Disclosure Statement. Moreover, if Parkside cannot prove feasibility, the Plan will be unconfirmable under §1129(a)(11) and the Disclosure Statement should not be approved. Debtor's current operations would not allow it to make full debt service payments for the duration of the Plan. Debtor likely made a strategic decision to omit normal cash flow projections to conceal this defect of the Plan and perpetuate its elaborate scheme to hinder and delay the Bank from exercising its rights with respect to its collateral. The Bank urges the Court to deny approval of the Disclosure Statement because the Plan is unconfirmable under Section 1129(a)(11).

30. <u>Incomplete Disclosure re Sale of Real Estate</u>: The Plan refers to a possible future sale of the Debtor's Real Estate. Debtor implies that a sale would generate funds to pay off the Bank. [Case No. 25-3002, ECF 242, p. 10] The Disclosure Statement fails to provide any valuation information to support Debtor's statement that a sale would be sufficient to pay off the Bank's claim. The Disclosure Statement also fails to disclose that the Bank has an absolute right to credit bid under Section 363(k) in any such bankruptcy sale. <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639 (2012). Without additional information, the Disclosure Statement is thus misleading about the Debtor's ability to use a sale to generate cash to make plan payments, and by implication, its ability to "free up" cash to pay unsecured creditors in this case.

31. <u>Risks Related to the Plan</u>: The Disclosure Statement should not be approved because it does not accurately describe the risks associated with the Plan. [Case No. 25-3002, ECF 242, p. 11] Debtor does not explain the risk that it would not be able to sell its real property or obtain take out financing to fund its obligations under the Plan. Debtor does not explain the potential recovery for unsecured creditors in Chapter 7, if avoidance actions were pursued by a truly independent fiduciary for the estate. As explained throughout this objection, the Disclosure Statement does not provide adequate information about the likelihood that post-petition cashflow will not be sufficient to fund plan payments, the likelihood that the case is administratively insolvent, and the likelihood that the Debtor will have to file another bankruptcy case in the near future. The Disclosure Statement does not explain that the Plan lacks any remedies for post-confirmation defaults, and thus lacks an "adequate means of implementation," as required by 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). The Disclosure Statement fails to explain that Debtor is unlikely to satisfy the confirmation standards set forth

in Section 1129. Most importantly, Debtor makes no effort to disclose the lucrative advantages that will be obtained by insiders if the Plan is confirmed, ranging from a de facto release of prepetition claims to ongoing financial benefits associated with "managing" the building. Throughout the Disclosure Statement, Debtor has willfully concealed information that is readily available to it, and as a result, Debtors will solicit votes on a Plan that fundamentally misleads them about the sincerity and feasibility of Debtor's reorganization.

## Conclusion

To authorize solicitation of the Plan would be to allow the insiders to continue their bad faith use of the Chapter 11 process at the expense of stakeholders in this case. The Plan repeatedly prioritizes the interests of insiders over the Debtor's fiduciary duty to its creditors in this case. The Disclosure Statement ignores the Debtor's express obligation to disclose such information to creditors. The Debtor's transparent purpose for pursuing confirmation in this case is not to reorganize, but to lure hopeful creditors into granting a long-term injunction to insiders. The Plan has other instances of bad faith, including gerrymandering with the aim of cramming down confirmation over objecting creditors. The Bank respectfully submits the Disclosure Statement is inadequate as a matter of law, and the Plan is facially unconfirmable under 11 U.S.C. § 1129(a)(1) or § 1129(a)(3). And most importantly, the Debtor is unlikely to carry its burden to prove the Plan is proposed in good faith. For all the foregoing reasons, the Bank urges the Court to deny approval of the Disclosure Statement.

Dated: December 29, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
    Kesha L. Tanabe
    ktanabe@vogellaw.com
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    Fargo, ND  58107-1389
    701.237.6983
    **ATTORNEYS FOR RED RIVER STATE BANK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that it caused the Disclosure Statement objection of Red River State Bank to be filed in the above-captioned case, which caused CM/ECF service upon all registered parties to the case.

Dated: December 29, 2025

                        */s/ Kesha L. Tanabe*