UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>Generations on 1st, LLC<br><br>        Debtor. | Bankr. No. 25-30002<br><br>Chapter 11 |
| In re:<br><br>Parkside Place, LLC | Bankr. No. 25-30003<br><br>Chapter 11 |

**AFFIDAVIT OF JENNIFER COLLINS**

STATE OF SOUTH DAKOTA      )
                              :SS
COUNTY OF CODINGTON       )

    I, Jennifer Collins, hereby state and declare as follows:

    1.      I am the Licensing and Records Manager for the City of Watertown, South

Dakota, a position which I have occupied for approximately 1 ½ years.

    2.      I have personal knowledge of the matters described in this Affidavit.

    3.      Attached as <u>Exhibit A</u> and incorporated herein by reference is a true and correct

copy of a Development Agreement between the City of Watertown and Generations on 1st, LLC,

that is maintained by the City of Watertown in the ordinary course of its business.  I am one of

the persons who has custody and control of such document.

    4.      Attached as <u>Exhibit B</u> and incorporated herein by reference is a true and correct

copy of a Development Agreement between the City of Watertown and Parkside Place, LLC,

that is maintained by the City of Watertown in the ordinary course of its business. I am one of

the persons who has custody and control of such document.

Dated this **22nd** day of December 2025.

_____
Jennifer Collins

Subscribed and sworn to before me
this 22nd day of December, 2025.



_____
Notary Public – South Dakota
My commission expires:

A. HALLING
NOTARY PUBLIC
SEAL    SOUTH DAKOTA    SEAL
My Commission Expires 09/08/2031

2



INSTRUMENT NO. 202100279 Pages: 51
BOOK: 4T  DEVELOPMENT AGREEMENT
PAGE: 8523

1/15/2021 3:26:00 PM

*Ann Rasmussen*

ANN RASMUSSEN, REGISTER OF DEEDS
CODINGTON COUNTY, SOUTH DAKOTA
Recording Fee: 32.00
Return To: CITY OF WATERTOWN

Document Prepared By:
Matthew T. Roby
City Attorney
23 2ⁿᵈ St NE | PO Box 910
Watertown, SD 57201-0910
605-882-6200

## TIF #13 DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (this "*Agreement*") is entered into as of this 8th day of January 2021 ~~21ˢᵗ day of December 2020~~ (the "*Effective Date*") by and between the **CITY OF WATERTOWN** a South Dakota Municipality ("*City*"), and **GENERATIONS ON 1ˢᵗ, LLC**, a South Dakota Limited Liability Company ("*Developer*").

### RECITALS:

**WHEREAS**, City has an interest in promoting economic development and is authorized pursuant to SDCL Chapter 11-9 (the "*Act*"), and any amendments thereto, to create tax increment districts for such purposes; and

**WHEREAS**, Developer intends to construct a building containing a mixed-use of apartments and a senior activities center located in historic Downtown Watertown based in part on the City's creation of a tax increment district that will provide a grant to Developer; and

**WHEREAS**, in order to accelerate the development of certain property that would not otherwise occur solely through private investment in the reasonably foreseeable future, the City Council of the City of Watertown (the "*Council*") on November 2, 2020 adopted Resolution No. 20-56, a true and correct copy of which is attached hereto as *Exhibit A,* to create Tax Increment District Number 13 (the "*TID*" or "*District*" or "*TIF #13*"), encompassing the following described real property (the "*TID Property*"):

> *LOTS 1-4 OHTNESS SUBD OF LOTS 12-14 BLK 17 ORIGINAL PLAT & LOT 11 OF BLK 17 ORIGINAL PAT & W10' OF EASTERLY ADJOINING ALLEY TO ALL AFOREMENTIONED LOTS*

**WHEREAS**, the Act authorizes the expenditure of funds derived within a tax increment district for the payment of expenditures made or estimated to be made and monetary obligations incurred or estimated to be incurred by the City establishing the TID, for grants, costs of public works or public improvements in the TID, plus other costs incidental to those expenditures and obligations, consistent with the project plan of the TID, which expenditures and monetary obligations constitute project costs, as defined in Section 11-9-14 of the Act; and

# EXHIBIT A

**WHEREAS**, on November 2, 2020, the Council adopted Resolution No. 20-56 to approve the Tax Increment Project Plan, a true and correct copy of which is attached hereto as *Exhibit B* and incorporated by reference, providing for development of the TID Property (the "*Project Plan*"), which included the payment of a grant to Developer in an amount not to exceed $2,070,349 toward certain costs of development as described in the Project Plan.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants, obligations, apportionment and benefits contained in this Agreement, City and Developer hereby agree as follows:

## Section 1. Definitions

Unless the context otherwise requires, the terms used in this Agreement will have the meanings set forth in this Section. If not defined in this Agreement, capitalized terms will have the meaning given to them in the Project Plan.

**"Base Revenues"** means the taxes collected on the Base Value.

**"Base Value"** means the value of the TID Property at the time of the creation of the district as certified by the South Dakota Department of Revenue.

**"Construction Schedule"** means the timetable for constructing the improvements specified in Section 3.01(b).

**"Grant"** means an amount not to exceed $2,070,349 through the use of Tax Increment Revenues.

**"Project"** means the construction of a a building containing a mixed-use of apartments and a senior activities center located in historic Downtown Watertown.

**"Project Costs"** means $2,070,349 of construction costs associated with the Project.

**"Public Improvements"** means all improvements referenced in the Project Plan that constitute public improvements to be dedicated to the City upon completion.

**"Tax Increment Revenue(s)"** means all tax revenues of the TID Property in excess of the Base Revenues.

Words used herein in the singular, where the context so permits, also includes the plural and vice versa, unless otherwise specified. Unless otherwise specified, the terms used in this Agreement found in the Act shall have the meaning set forth in the Act.

## Section 2. Obligation and Representations

**2.01   Remittance of Tax Increment Revenues.** City agrees to pay to Developer through a grant, but solely from Tax Increment Revenues, a sum not to exceed $2,070,349.

2

**2.02    Grant.** The parties acknowledge that Developer's right to receive the Tax Increment Revenues hereunder is a grant under the Act, and a personal property right vested with Developer on the date hereof.

**2.03    No Certificated Tax Increment Revenue Bonds.** City will have no obligations to the Developer except as set forth in this Agreement, and will not issue any certificated tax increment revenue bonds to evidence such obligations.

**2.04    Developer's Representations.**

    (a)    Developer is a limited liability company organized in the State of South Dakota.

    (b)    Developer has the authority to enter into this Agreement and to perform the requirements of this Agreement.

    (c)    Developer's performance under this Agreement will not violate any applicable judgment, order, law or regulation.

    (d)    Developer's performance under this Agreement will not result in the creation of any claim against City for money or performance, any lien, charge, encumbrance or security interest upon any asset of City.

    (e)    Developer will have sufficient capital to perform all of its obligations under this Agreement.

    (f)    Developer owns the TID Property.

    (g)    Developer waives its right to participate in the County's Property Tax Reduction Program for the Project.

**2.05    Approvals.** The City's obligations pursuant to this Agreement are specifically conditioned upon the resolution implementing TIF #13 becoming effective. The City will make good faith efforts to timely introduce and secure approval of such resolution.

**2.06    Payment of Tax Increment Revenues.** Upon Developer's real estate tax payments to Codington County each April and October, Developer will provide City with documentation confirming such payments. City will refund to Developer the Tax Increment Revenue portion of each payment within a reasonable time, but not later than each June 15 and December 15, respectively.

**2.07    Continued Cooperation.** City and Developer represent each to the other that they will make reasonable efforts to expedite the subject matters hereof and acknowledge that the successful performance of this Agreement requires its continued cooperation.

**2.08    No General Obligation of the City.** City's obligations hereunder are limited obligations payable solely out of the Tax Increment Revenues and are not payable from any other revenues of

3

City, nor a charge against its general taxing power.  Developer shall bear all risks that such Tax Increment Revenues may be insufficient to pay the maximum amounts specified in Section 2.01.

**2.09    Assignment of Payments**.  For the purpose of financing its obligations related to this Agreement, Developer hereby assigns its right to payments hereunder to Watertown Development Company, a South Dakota non-profit industrial development corporation, 1 E Kemp Ave, Watertown, SD 57201. Upon written notice to the City, and with the express written consent of Watertown Development Company, Developer may re-assign to itself or another third party its right to payments hereunder. Irrespective of the assignee, Developer's right to such payments is subject to the other limitations of this Agreement.

<u>Section 3.  The Project.</u>

**3.01    The Project.**  The Project will be comprised of real estate, and the design, construction, assembly, and installation of the improvements described in the Project Plan.

>    (a)    Description of the Project.  The Project consists of $2,070,349 of improvements to the property as described in the Project Plan.

>    (b)    Completion of the Project Improvements.  Developer shall diligently work to complete the respective portions of the project by January 1, 2022.

The time periods set forth above in this Section 3.01(b) shall be extended by reason of delays caused by Force Majeure.  As used herein, "Force Majeure" shall refer to delays caused by or occasioned by labor disputes, acts of God, moratoriums, war, riots, insurrections, civil commotion, a general inability to obtain labor or materials, fire, unusual delay in transportation, severe and adverse weather conditions preventing performance of work, unavoidable casualties, failures to act by any governmental entity or their respective agents or employees, governmental restrictions, regulations or controls including the inability to obtain the necessary governmental approvals and/or permits necessary to complete any portion of the Project.

**3.02    Construction of the Public Improvements.**  The City of Watertown will cause Public Improvements to be constructed by the Developer through private contract.  The City will not bid nor contract any improvement described in the Project Plan or this Agreement.

**3.03    Financing of the Project and Improvements.**  Payment of all Project Costs will be made from Developer's own capital and/or other sources obtained solely by Developer. Developer may use any or part of the TID Property as collateral for such loans as required to pay Project Costs.

<u>Section 4.  Developer Covenants</u>

**4.01    Duties and Obligations of Developer.**  Developer hereby agrees to:  (a) complete, or cause to be completed, all improvements described in the Project Plan and this Agreement, (b) provide, or cause to be provided, all materials, labor, and services for completing the Project, (c) obtain or cause to be obtained, all necessary permits and approvals from City and/or all other governmental agencies having jurisdiction over the construction of improvements to the TID Property, (d) provide the City all necessary information, including documentation of actual expenses incurred

4

for Reimbursable Project Costs, and (e) submit written annual reports, starting no later than thirty (30) days following the end of the fiscal year in which the TID was created detailing the amount of Tax Increment Revenues received and the amounts thereof applied to pay Developer's Project Costs.

**4.02    Insurance.** Developer will maintain a policy of liability insurance, acceptable to City, with liability limits of at least One Million Dollars ($1,000,000) that names City as an additional insured. Such a policy must remain in effect until City accepts the improvements. City will provide no insurance for the Project.

**4.03    Indemnification.** Except to the extent of the negligence or willful misconduct of Indemnitees, Developer will without a determination of liability or payment being made FULLY INDEMNIFY, DEFEND, and HOLD HARMLESS, City (and the elected officials, employees, officers, directors, and representatives of City) (collectively, "Indemnitees") from and against any and all costs, claims, liens, damages, losses, expenses, fees, fines, penalties, proceedings, actions, demands, causes of action, liability and suits of any kind and nature, including but not limited to, personal injury or death and property damage, made upon City directly or indirectly arising out of, resulting from or related to Developer's negligence, willful misconduct or criminal conduct in Developer's activities under this Agreement, including any such acts or omissions of Developer, its Members, Managers, any agent, officer, director, representative, employee, consultant or subconsultants of Developer, and their respective officers, agents, employees, directors and representatives while in the exercise or performance of the rights or duties under this Agreement, all without, however, waiving any governmental immunity available to City under South Dakota law and without waiving any defenses of the parties under South Dakota law. The provisions of this INDEMNIFICATION are solely for the benefit of the parties hereto and not intended to create or grant any rights, contractual or otherwise, to any other person or entity. Developer will promptly advise City in writing of any claim or demand against City related to or arising out of Developer's activities under this Agreement and will see to the investigation and defense of such claim or demand at Developer's cost to the extent required in this paragraph. City will have the right, at its option and expense, to participate in such defense with attorneys of its choice, without relieving Developer of any of its obligations under this paragraph. Neither party shall be liable for incidental, indirect, special or consequential damages hereunder, even if advised of the possibility thereof.

**4.04    Liability.** Developer will be solely responsible for compensation and taxes payable to any employee or contractor of Developer, and none of Developer's employees or contractors will be deemed to be employees or contractors of City. No elected official, director, officer, employee, representative or agent of City shall be personally responsible for any liability arising out of or resulting from this Agreement.

**4.05    Taxes & Licenses.** Developer will pay, on or before their respective due dates, to the appropriate collecting authority all Federal, State, and local taxes and fees that are now or may hereafter be levied upon the TID Property or upon Developer or upon the business conducted on the TID Property, or upon any of Developer's property used in connection therewith, including employment taxes; and Developer shall maintain in current status all Federal, State, and local licenses and permits required for the operation of the business conducted by Developer.

5

**4.06** **Examination of Records.** Developer will allow City to conduct examinations and makes copies, during regular business hours and following notice to Developer by City, of the books and records related to this Agreement no matter where books and records are located.

### Section 5.  Term and Termination

**5.01** **Term.**  The term of this Agreement shall commence on the date the resolution approving this Agreement becomes effective and end on the date which is the *earliest* to occur of the following, at which time City's obligations hereunder will be deemed fully discharged:

  (i)   the date on which the amount payable under Section 2.01 has been paid in full to Developer, or to Developer's assign(s) pursuant to Section 2.09;

  (ii)  the date this Agreement is terminated as provided in Section 5.02; or

  (iii) the 20th anniversary of the creation of the TID.

**5.02** **Default and Termination.**  If Developer fails to commence and complete construction substantially in accordance with the construction schedule detailed in Section 3.01(b) above, City may terminate this Agreement if Developer does not fully cure its failure within sixty (60) calendar days after receiving written notice from City requesting the failure be cured.  If the Agreement is terminated as set forth in this Section, City's obligations under this Agreement will be deemed fully discharged.

### Section 6.  Miscellaneous

**6.01** **Non-Waiver.**  Provisions of this Agreement may be waived only in writing.  No course of dealing on the part of City, or Developer nor any failure or delay by City or Developer in exercising any right, power, or privilege under this Agreement shall operate as a waiver of any right, power or privilege owing under this Agreement.

**6.02** **Entire Agreement.**  This Agreement embodies the final and entire agreement between the parties hereto concerning the subject matter herein.  The Exhibits attached to this Agreement are incorporated herein and shall be considered a part of this Agreement for the purposes stated herein, except that if there is a conflict between any such Exhibit and a provision of this Agreement, the provision of this Agreement will control.

**6.03** **Amendments.**  All amendments to this Agreement and the Project Plan may only be made in a writing executed by City and Developer, after obtaining all necessary approvals.

**6.04** **Severability.**  If any clause or provision of this Agreement is held invalid or unenforceable, such holding will not invalidate or render unenforceable any other provision hereof.

**6.05** **Venue and Governing Law.**  This Agreement shall be construed under and in accordance with the laws of the state of South Dakota.  Any legal action or proceeding brought or maintained, directly or indirectly, as a result of this Agreement shall be heard and determined in Codington County, South Dakota.

6

**6.06    Notice.** Any notice sent under this Agreement shall be written and mailed with sufficient postage, sent by certified mail, return receipt requested, documented facsimile or delivered personally to an officer of the receiving party at the following addresses:

<table>
<tr><td><u>**City:**</u></td><td><u>**Developer:**</u></td></tr>
<tr><td>City of Watertown<br>23 2nd St. NE | PO Box 910<br>Watertown, SD 57201</td><td>Generations on 1st, LLC<br>1405 1st Ave N | PO Box 426<br>Fargo, ND 58102 (PO Box Zip: 58107)</td></tr>
</table>

Any of the above parties may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates, or other communications may be sent.

**6.07    Assignment.** This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of Developer.

**6.08    Captions.** Captions used herein are only for the convenience of reference and shall not be construed to have any effect or meaning as to the agreement between the parties hereto.

IN WITNESS THEREOF, the parties hereto have caused this instrument to be duly executed as of the day and year first written above.

**GENERATIONS ON 1ST, LLC**                    **CITY OF WATERTOWN**

_____                _____
Jesse Craig                                     Sarah Caron, PE, CFM
Managing Member                                 Mayor

                                                **ATTEST:**

                                                _____
                                                Kristen Bobzien
                                                Finance Officer

                                                (SEAL)

7

**GENERATIONS ON 1ST, LLC**

Jesse Craig
Managing Member

**CITY OF WATERTOWN**

Sarah Caron, PE, CFM
Mayor

**ATTEST:**

Kristen Bobzien
Finance Officer

(SEAL)

STATE OF SOUTH DAKOTA    )
                          : SS.
COUNTY OF CODINGTON       )

On this the __8__ day of __January__, 202__1__, before me, the undersigned officer, personally appeared Sarah Caron and Kristen Bobzien, who acknowledged themselves to be the Mayor and Finance Officer, respectively, of the City of Watertown, a municipal corporation, and that they as such Mayor and Finance Officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the City of Watertown by themselves as Mayor and Finance Officer.

IN WITNESS THEREOF I hereunto set my hand and official seal.

Kristine Gutchak
SEAL NOTARY PUBLIC SEAL
SOUTH DAKOTA

Notary Public – South Dakota
My Commission Expires: 12|2|2026

STATE OF _North Dakota_   )
                          : SS.
COUNTY OF _Cass_          )

On this the __22__ day of __December__, 202__0__, before me, the undersigned officer, personally appeared Jesse Craig, who acknowledged himself to be the Managing Member of Generations on 1st, LLC, and that he as such Managing Member, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of Generations on 1st, LLC, by himself as Managing Member.

IN WITNESS THEREOF I hereunto set my hand and official seal.

(SEAL)
CAROLYN HOLTGREWE
Notary Public
State of North Dakota
My Commission Expires Jan. 4, 2022

Notary Public – South Dakota North Dakota
My Commission Expires: Jan 4th, 2022

8

# EXHIBIT A

### RESOLUTION NO. 20-56

### A RESOLUTION TO PROVIDE FOR THE CREATION OF
### TAX INCREMENT DISTRICT NUMBER THIRTEEN

**WHEREAS,** the Plan Commission of the City of Watertown has held a public hearing on April 9th, 2020 and adopted and recommended the district boundaries and tax increment plan for Tax Increment District Number Thirteen, City of Watertown, South Dakota and;

**WHEREAS,** the City Council of the City of Watertown, South Dakota (the "City"), has the powers, pursuant to SDCL 11-9-2, to create Tax Increment District Number Thirteen, City of Watertown, South Dakota, and to define its boundaries.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF WATERTOWN, SOUTH DAKOTA:**

That pursuant to SDCL Chapter 11-9, the City Council hereby declares the following:

1. **Authority and Declaration of Necessity.** The City of Watertown, South Dakota, declares the necessity for the creation of Tax Increment District Number Thirteen, City of Watertown, (hereinafter sometimes referred to as the "District"), pursuant to SDCL Chapter 11-9. Further, the City finds that the improvements of the area within the District are likely to enhance significantly the value of substantially all of the other real property in the District and is necessary for economic development within the City for the construction and expansion of an existing manufacturer's building.

2. **Findings.** The City Council makes the following findings with regard to economic development:
   a. More than 50% of the property in the District by area will stimulate and develop the general economic welfare and prosperity of the City;
   b. Improvements to the District will significantly and substantially enhance the value of all property within the District;
   c. Development of the District will enhance sales tax revenue and create employment in the District;
   d. Development of the District will create an opportunity for a future development and employment once the improvements have been made.

3. **Findings of Maximum Percentage of Tax Increment Districts.** The aggregate assessed value of the taxable property in the District, plus all other tax increment districts, does not exceed ten percent (10%) of the total assessed valuation of the City.

4. **Creation of District.** There is hereby created, pursuant to SDCL Chapter 11-9, Tax Increment District Number Thirteen, City of Watertown, South Dakota. The District is hereby created on the day this resolution becomes effective which shall be twenty (20) days after publication of this resolution.

5. **Designation of District Boundaries.** The District shall be located within the northern, southern, western and eastern boundaries of the following described real property:

**LOTS 1-4 OHTNESS SUBD OF LOTS 12-14 BLK 17 ORIGINAL PLAT & LOT 11 OF BLK 17 ORIGINAL PLAT & W10' OF EASTERLY ADJOINING ALLEY TO ALL FORMENTIONED LOTS**

6. <u>Creation of Tax Increment Fund.</u>  There is hereby created, pursuant to SDCL 11-9-31, a Tax Increment District Number Thirteen Fund, which shall be a segregated asset account.  All tax increments collected pursuant to Tax Increment District Number Thirteen shall be deposited into the Tax Increment District Number Thirteen Fund.  All funds in the Tax Increment District Number Thirteen Fund shall be used solely for those purposes expressly stated and reasonably inferred in SDCL Chapter 11-9 and per the Developer's Agreement between the Developer and City of Watertown.

7. <u>Adoption of Tax Increment Plan.</u>  The City Council of the City of Watertown does hereby adopt the Tax Increment Plan Number Thirteen as presented.

Dated this 2nd day of November, 2020

The above and foregoing Resolution was moved for adoption by Alderperson Holien, seconded by Alderperson Vilhauer, and upon voice vote motion carried, whereupon the Mayor declared the Resolution to be duly passed and adopted.

I hereby certify that Resolution No. 20-56 was published in the Watertown Public Opinion, the official newspaper of said City, on the 7th day of November, 2020.

Kristen Bobzien, Finance Officer

ATTEST:

Kristen Bobzien
Finance Officer

CITY OF WATERTOWN

Sarah Caron, PE, CFM
Mayor

## EXHIBIT B

City of Watertown, S.D.

Tax Increment Financing District

Plan No. 13



Prepared by:

Traci Stein, CEDFP

Watertown Development Company

March 10th, 2020

## Table of Contents

*Introduction, Summary, and Purpose*............................................................................................ *4*

*Project Plan Requirements – Contents as per SDCL § 11-9-13*.............................................. *7*
    The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District;............7
    Economic Feasibility Study ...................................................................................................................7
    Detailed List of Estimated Project Costs................................................................................................7
    Fiscal Impact Statement .......................................................................................................................7
    Description of Methods of Financing.......................................................................................................7

    **Additional contents of project plan. The project plan for each District shall also include SDCL**
    **§ 11-9-16:** ............................................................................................................................... **7**
      (1)  A map showing the existing uses and conditions of real property in the district; .......................................7
      (2)  A map showing the proposed improvements and uses;.......................................................................7
      (3)  A map showing the proposed changes of zoning ordinances;................................................................7
      (4)  A statement listing changes needed in the master plan, map, building codes, and municipal ordinances;.7
      (5)  A list of estimated non-project costs; and.........................................................................................7
      (6)  A statement of a proposed method for the relocation of persons to be displaced. .....................................7

*Property Location of Tax Increment Financing District No. 13* ........................................... *8*

*Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or*
*Improvements Within the District SDCL 11-19-13(1)*.................................................................. *9*

    **Capital Costs / Real Property Assembly Costs 11-9-15(1)** ................................................................ **10**
    Property, Right of Way and Easement Acquisition ..................................................................................10
    Acquisition of Easements....................................................................................................................10
    Demolition.........................................................................................................................................10
    Site Grading.......................................................................................................................................10
    Sanitary Sewer System Improvements..................................................................................................10
    Water System Improvements ...............................................................................................................10
    Stormwater Management System Improvements .....................................................................................11
    Electric Service ..................................................................................................................................11
    Gas Service ........................................................................................................................................11
    Communication Infrastructure ..............................................................................................................11
    Street Improvements ...........................................................................................................................11
    Streetscaping and Landscaping .............................................................................................................11

    **Financing Costs SDCL 11-9-15(2)** ...................................................................................................... **12**

    **Professional Service Costs SDCL 11-9-15(4)**...................................................................................... **12**

    **Imputed Administrative Costs SDCL 11-9-15(5)**................................................................................ **12**

    **Organizational Costs SDCL 11-9-15(7)** ............................................................................................. **12**

    **Environmental Audits and Remediation** ............................................................................................ **12**

*Maximum Amount of Tax Increment Revenue*............................................................................ *13*

*Expenditures Exceeding Estimated Cost* ..................................................................................... *13*

    **Eligible Project Costs** ........................................................................................................................ **13**

*Schedule 2: Economic Feasibility Study*......................................................................................... *14*

Key Assumptions ................................................................................................................14
Analysis of Demand for New Housing .............................................................................14
Financing and Implementation ........................................................................................15

*Schedule 3: Detailed List of Estimated Project Costs*...................................................... **16**

*Schedule 4: Fiscal Impact to Taxing Authorities*............................................................. **19**

**Definitions**.......................................................................................................................... **19**

**Assumptions** ....................................................................................................................... **19**

**Estimated Captured Taxable Values** .............................................................................. **20**
Estimated Impact of Tax Increment Financing on Revenues of Taxing Jurisdictions......................................20

*Taxable Value of City of Watertown* .................................................................................. **22**

**Maximum Percentage of Taxable Property in Municipality Permitted in District**....................... **22**

*Schedule 5: Method of Financing*...................................................................................... **23**

*Additional Contents of Project Plan as Required by SDCL 11-9-16(1)*................................... **24**

**Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)** .......................... **24**

**Proposed Improvements and Uses Map SDCL 11-9-16(2)** ........................................... **25**

**Proposed Improvements** ................................................................................................... **26**

**Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)** ......................................... **27**

**Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances SDCL 11-9-16(4)** ......................................................................................................................... **28**

*Estimated Non-Eligible Project Costs 11-9-16(5)*............................................................... **29**

*Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)*. **30**

*Performance Bond, Surety Bond, or Other Guaranty SDCL 11-9-43*...................................... **31**

*TIF District No. 13 Classification* ..................................................................................... **32**

*Establishing Economic Development Purpose* .................................................................... **33**

**Summary of Findings in Establishing Economic Development Purpose** ........................ **34**

*Required Findings in Resolution Creating District*............................................................ **35**

**Economic Development Analysis of City of Watertown TIF District No. 13**.................... **35**

*Definitions Used in This Plan* ........................................................................................... **36**

## Introduction, Summary, and Purpose

Tax increment financing (TIF) is an incentive utilized by local governments to attract private development and investment. New investment creates new jobs, more customers, and in turn, more investment opportunity. TIF can also retain existing businesses that might otherwise find more attractive options elsewhere. The jobs and additional investment, both private and public, mean more revenue for the community. TIF helps to overcome the extraordinary costs that often prevent redevelopment and private investment from occurring in difficult to develop areas of the community. As a result, the TIF District itself improves and property values increase.

In Watertown, TIF funding has been used for the following purposes: to encourage the redevelopment of deteriorated, or otherwise blighted real property; to stimulate economic development in the community by assisting projects that promote the long term economic vitality of Watertown; and, to stimulate increased private investment in areas that would have otherwise remained undeveloped or under-developed and which will, in the long term, provide a significant source of additional tax revenues to all taxing entities.



As set forth in South Dakota Codified Law, Chapter 11-9, a local government can designate a specific area within its boundaries as a redevelopment area appropriate for TIF district and prepare a plan for development. TIF projects must be approved by the City Planning Commission and the City Council.

The City of Watertown has been requested to assist in a major development project by creating a Tax Increment Financing District to fund a portion of eligible site improvements at property located around the area of 26 1st Avenue SW in downtown Watertown. The Watertown Development Company, later referred to throughout this document as "WDC", made the request on behalf of Jesse Craig, of Craig Properties, LLC., who plans to be the primary owner of the development property as "Generations on 1st, LLC".

This Plan was prepared for adoption by the Watertown City Council in recognition that the renewal area requires a coordinated, cooperative strategy, with financing possibilities, to eliminate blight, prevent the spread of blight, and accomplish the City's development objectives for improving the continued viability of downtown Watertown.

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 13, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan.

By utilizing Tax Increment Financing, proceeds from anticipated increases in property taxes can be used to fund necessary and eligible improvements at the Project Site. The District is being created by the City of Watertown under the authority provided by SDCL 11-9 and will be designated as a "Economic Development District" based on SDCL 13-13-10.10 which defines Economic Development classification as "...any area where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the land contained within the tax increment financing district."

Tax Increment Financing District No. 13 will be a housing project consisting of an apartment building and senior citizen center located in a historic Watertown downtown neighborhood. The property is situated off of 1st Ave SW and next to the Codington County Courthouse.

The project is called "Generations On 1st" and would start construction in June 2020. The architectural/engineering would be provided by TL Stroh Architects of Fargo, ND and built by Craig Development, LLC, and bid out to local contractors and material suppliers. Once construction is complete, the property will be managed by CP Business Management out of Fargo, N.D.

Generations On 1st, LLC, will be listed as owner of the property.

The unit finishes will be clean and modern while offering premium amenities to its residents.  There will be 72 apartment units with 6 unique floor plans within the building. First floor will have 11,062 square feet of commercial space for the new Senior Center, which will be open to the public.  The 2nd, 3rd, and 4th floors will be modern wood frame apartment units with various floorplans. The residents of the building will have access and use of a 50-stall parking garage.

This would be a significant capital investment into the Downtown of Watertown and would spur future development as well as provide homes for senior citizens of Watertown.

The Developer, Jesse Craig of Craig Properties, LLC in Fargo, N.D. will construct the facility which is expected to result in over $10.3 million dollars in investment over a one-year timeframe. The development is estimated to produce an incremental valuation over $2.7 million dollars over the 20-year life of the TIF District.

The Project Costs included in this Plan relate directly to promoting economic development in the District that are consistent with the purpose for which the District was created.

The driving interest in the establishment of this Plan is to offer Tax Increment Financing as a tool to stimulate and leverage private sector development. The development of commercial or industrial property which allows for the expansion of existing businesses, the expansion of the city workforce, the

generation of additional sales tax to the state and city, are all essential governmental purposes and stimulate further economic development.

The primary objective of TIF District No. 13 is to provide improvements to an area in downtown Watertown to support new and existing commercial retail development and housing for professionals locating to northeast South Dakota. The development is expected to create jobs and create and rehabilitate new infrastructure and site improvements which in turn are expected to enhance Watertown's ability to encourage future growth.

A combination of private investment and tax increment financing will assist in the progress toward the following objectives for the City of Watertown:

- To address and remedy conditions in the area that impair or arrest the sound growth of the City;
- To redevelop and rehabilitate the area in a manner which is compatible with and complementary to unique circumstances in the area;
- To encourage the voluntary rehabilitation of buildings, improvements, and conditions;
- To improve areas that are likely to significantly enhance the value of substantially all property in the district, and
- To ultimately contribute to increased revenues for all taxing entities.

The development of residential and commercial property which allows for the expansion of market rate housing, and the generation of property and sales tax in downtown Watertown, is an essential governmental purpose and stimulates further economic development.

## Project Plan Requirements – Contents as per SDCL § 11-9-13

SDCL states that the planning commission shall adopt a project plan for each district and submit the plan to the governing body.

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 13, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan:

The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District; Included as Schedule 1 is the kind, number, and location of all proposed public works or improvements within the district SDCL § 11-9-13(1).

Economic Feasibility Study included as Schedule 2 is an Economic Feasibility Study per SDCL § 11-9-13(2)

Detailed List of Estimated Project Costs Included as Schedule 3 is a detailed list of estimated Project Costs for the project as per SDCL § 11-9-13(3).

Fiscal Impact Statement Included as Schedule 4 is a Fiscal Impact Statement showing the impact of the Tax Increment Financing District upon all entities levying property taxes in the district. Required as per SDCL § 11-9-13(4).

Description of Methods of Financing SDCL § 11-9-13(5). Included as Schedule 5 is a description of the methods of financing all estimated project costs and the time when related costs or monetary obligations are to be incurred.

### Additional contents of project plan. The project plan for each District shall also include SDCL § 11-9-16:

(1) A map showing the existing uses and conditions of real property in the district;
(2) A map showing the proposed improvements and uses;
(3) A map showing the proposed changes of zoning ordinances;
(4) A statement listing changes needed in the master plan, map, building codes, and municipal ordinances;
(5) A list of estimated non-project costs; and
(6) A statement of a proposed method for the relocation of persons to be displaced.

## Property Location of Tax Increment Financing District No. 13

The proposed Tax Increment Financing District No. 13 Location is in the approximate location of 26 1st Avenue SW in Watertown.

**The TIF Boundary will consist of the following 6 Properties:**
1. **Legal Description: LOT 1 OHTNESS SUBD LOTS 12-14 BLK 17 ORIGINAL PLAT**
2. **Legal Description: LOT 4 OHTNESS SUBD LOTS 12-14 BLK 17 ORIGINAL PLAT TAX EXEMPT**
3. **Legal Description: LOT 3 OHTNESS SUBD LOTS 12-14 BLK 17 ORIGINAL PLAT TAX EXEMPT**
4. **Legal Description: LOT 2 OHTNESS SUBD LOTS 12-14 BLK 17 ORIGINAL PLAT**
5. **Legal Description: N30' E70' LOT 11 BLK 17 ORIGINAL PLAT**
6. **Legal Description: LOT 11 LESS N30' E70' BLK 17 ORIGINAL PLAT**
7. **A portion of the alley of easterly adjoining properties**

Which, after transfer to the developer, will have a combined legal description of:
**LOTS 1-4 OHTNESS SUBD OF LOTS 12-14 BLK 17 ORIGINAL PLAT & LOT 11 OF BLK 17 ORIGINAL PLAT & W10' OF EASTERLY ADJOINING ALLEY TO ALL FORMENTIONED LOTS**

Total Assessed Value: $70,748.00 (This value does not include existing buildings, as they will be torn down.)

## Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or Improvements Within the District SDCL 11-19-13(1)

Project costs are any expenditure made, estimated to be made, or monetary obligations incurred or estimated to be incurred as outlined in this Plan. Project Costs will be diminished by any income, special assessments or other revenues, including user fees or charges.

With all Project Costs, the costs of engineering, design, survey, inspection, materials, construction,

TIF Plan No.13 - Boundary Map



March 16, 2020

restoring property to its original condition, apparatus necessary for public works, legal and other consultant fees, testing, environmental studies, permits, updating ordinances and plans, judgements or claims for damages and other expenses are included as Project Costs.

The following is a list of public works and other tax increment financing eligible costs that the Developer expects to make, or may need to make, in conjunction with the implementation of the District's Plan. The maps found in this document along with a Detailed List of Project Costs included as Schedule 3 of this Plan provide additional information as to the kind, number and location of potential Project Costs.

## Capital Costs / Real Property Assembly Costs 11-9-15(1)

Include the actual costs of the construction of public works or improvements, buildings, structures, and permanent fixtures; the demolition, alteration, remodeling, repair, or reconstruction of existing buildings, structures, and permanent fixtures; the acquisition of equipment; the clearing and grading of land; and the amount of interest payable on tax increment bonds issued pursuant to this chapter until such time as positive tax increments to be received from the district, as estimated by the project plan, are sufficient to pay the principal of and interest on the tax increment bonds when due;

### Property, Right of Way and Easement Acquisition

To facilitate development of the Project, the Developer will acquire property within the District. The cost of property acquired, and any costs associated with the transaction, are eligible Project Costs. Following acquisition, other Project Costs within the categories detailed in this Section may be incurred to make the property suitable for development. Any revenue received by the Developer from the sale of property acquired pursuant to the execution of this Plan will be used to reduce total Project Costs of the District. If Total Project Costs incurred by the Developer to acquire the property and make it suitable for development exceeded the revenues or other consideration received from the sale or lease of that property, the net amount shall be considered "real property assembly costs" as defined in SD 11-9-15(3)

### Acquisition of Easements

The Developer may need to acquire temporary or permanent easements to allow for installation and maintenance of streets, driveways, alleyways, utilities, stormwater management practices and other public infrastructure. Costs incurred by the Developer to identify, negotiate and acquire easement rights are eligible Project Costs.

### Demolition

To make the site suitable for development, the Developer will incur costs relation to demolition and removal of structures or other land improvements, to include abandonment of existing utility services.

### Site Grading

Land within the District may require grading to make it suitable for development, to provide access, and to control stormwater runoff. The Developer may need to remove and dispose of excess material or bring in fill material to provide for proper site elevations. Expenses incurred by the Developer for site grading are eligible Project Costs.

### Sanitary Sewer System Improvements

There may be inadequate sanitary sewer facilities serving the District. To allow development to occur, the Developer will need to construct, alter, rebuild or expand sanitary sewer infrastructure within and outside of District. Eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or expansion of collection mains; manholes and cleanouts; service laterals; force mains; interceptor sewers; pumping stations; lift stations; and all related appurtenances.

### Water System Improvements

There may be inadequate water distribution facilities servicing the District. To allow development to occur, the Developer will need to construct, alter, rebuild or expand water system infrastructure within the District. Eligible Project Cost include, but are not limited to, construction, alterations, rebuilding or

expansion of distribution mains, manholes and valves, hydrants, service laterals, pumping stations, and all related appurtenances.

Stormwater Management System Improvements
To manage stormwater runoff, the Developer will need to construct, alter, rebuild or expand stormwater management infrastructure within the District. Eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or expansion of stormwater collection mains, inlets, manholes and valves, service laterals.

Electric Service
To create a site suitable for development the Developer may incur costs to provide, relocate, or upgrade electric services. Relocation may require abandonment and removal of existing poles or towers, installation of new poles or towers, or burying of overhead electric lines. Costs incurred by the Developer to undertake this work are eligible Project Costs.

Gas Service
To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade gas mains and services. Costs incurred by the Developer to undertake this work are eligible Project Costs.

Communication Infrastructure
To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade infrastructure required for voice and data communications, including, but not limited to: telephone lines, cable lines, and fiber optic cable. Costs incurred by the Developer to undertake this work are eligible Project Costs.

Street Improvements
There are inadequate street improvements serving areas of the District. To allow development to occur, the Developer may need to construct or reconstruct streets, access drives and parking areas. Eligible Project Costs include, but are not limited to: excavation; removal or placement of fill; construction of road base; asphalt or concrete paving or repaving; installation of curb and gutter; installation of sidewalks and bicycle lanes; utility relocation, to include burying overhead utility lines; street lighting; installation of traffic control signage and traffic signals; pavement marking; right-of-way restoration; installation of retaining walls; and installation of fences, berms, and landscaping.

Streetscaping and Landscaping
To attract development consistent with the objectives of this Plan, the Developer may install amenities to enhance the development site, right-of-way, and other public space. These amenities include but are not limited to: Landscaping; lighting of streets, sidewalks, parking areas and public areas; installation of planters, benches, clocks, tree rings, trash receptacles, and similar items; and installation of brick or other decorative walks, terraces and street crossings. These and any other similar amenities installed by the Developer are eligible Project Costs.

11

### Financing Costs SDCL 11-9-15(2)

Interest expense, debt issuance expenses, redemption premiums, and any other fees and costs incurred in conjunction with obtaining financing for projects undertaken in this Plan are eligible Project Costs.

### Professional Service Costs SDCL 11-9-15(4)

The costs of professional services rendered, and other costs incurred, in relation to the creation, administration and termination of the District, and the undertaking of the projects contained within this Plan, are eligible Project Costs. Professional services include but are not limited to architectural; environmental; planning; engineering; legal; audit; financial.

### Imputed Administrative Costs SDCL 11-9-15(5)

The Developer may charge to the District as eligible Project Costs reasonable allocations of administrative costs, including, but not limited to, a City Administrative Fee.

### Organizational Costs SDCL 11-9-15(7)

The Developer may charge to the District as eligible Project Costs the costs of informing the public with respect to the creation of the District and the implementation of the Plan.

### Environmental Audits and Remediation

If it becomes necessary to evaluate any land or improvement within the District, any cost incurred by the Developer related to site surveys, environmental audits, soil boring testing and remediation are eligible Project Costs.

## Maximum Amount of Tax Increment Revenue

The maximum amount of tax increment revenue monetary obligations to be paid through Tax Increment Financing District No.13 shall be the amount sufficient to reimburse the WDC for the payments made for Project Costs and pay all other monetary obligations in an amount not to exceed the total tax increment revenue generated by the Tax Increment District in 20 years. At the time of the creation of the TIF District No. 13, the total amount of tax increment revenue estimated to be generated within 20 years is $2,657,345 million dollars. The final terms and conditions will be set forth in the Developer's Agreement.

## Expenditures Exceeding Estimated Cost

The Developer understands that any expenditures, which in sum would exceed the total estimated amount for Project Costs by 35% included within this Plan of an estimated $10.3 million dollars, will require an amendment of this Plan. All amendments would be undertaken pursuant to SDCL §11-9-23.

SDCL §11-9-23 describes that If the Project Costs are not provided for in this Plan, the governing body would be required to amend the plan which requires the South Dakota Department of Revenue to re-determine the tax increment base when additional Project Costs are added to a plan.

### Eligible Project Costs

| Capital Costs | | | | Total | |
|---|---|---|---|---|---|
| Land, title, closing cost other land purchase cost | $ | 305,000.00 | | | x |
| | $ | - | $ | 305,000.00 | x |
| Other Capital Cost as defined by SDLC 11-9-15 | | | | | |
| Demolition and Site Clearing | $ | 158,000.00 | | | x |
| Site Survey | $ | 10,472.73 | | | x |
| Soil Borings | $ | 20,290.91 | | | x |
| | | | $ | 188,763.64 | |
| **Financing Costs** | | | | | |
| Interest expense | $ | 668,718.00 | | | x |
| Financing fee, closing fees, legal, etc | | | | | |
| | | | $ | 668,718.00 | |
| **Professional Services Costs** | | | | | |
| A&E Fees | $ | 527,798.80 | | | x |
| Organization fees | $ | - | | | |
| Professional service/fee-legal/acct./design | $ | 351,865.87 | | | |
| | | | $ | 879,664.67 | |
| **Public Works Improvements** | | | | | |
| New Public Sidewalks | $ | - | | | x |
| Perimeter Safety  (Site Fence) | $ | 23,202.33 | | | x |
| | | | $ | 23,202.33 | |
| | | | | | |
| **Imputed Administrative Costs** | | | | | |
| Estimated City/administrative/municipal cost | $ | 5,000.00 | $ | 5,000.00 | x |
| | | | | | |
| | | Total Cost: $ | | 2,070,349 | |

## Schedule 2: Economic Feasibility Study

The table below establishes the current Base Value of the property located in the proposed TIF District No. 13 and estimated incremental tax revenue.

| | | | |
|---|---|---|---|
| Certified base assessed valuation | | | $70,748.00 |
| Estimated assessed value of improvements | | $ | 10,098,748 |
| Estimated total full and true valuation | | $ | 10,169,496 |
| Estimated assessed valuation calculated at | 85% | $ | 8,583,936 |
| Revenue estimates from tax increments | | | $2,657,345.91 |
| *refer to detailed spreadsheet | | | |
| Estimated total valuation in year 20 | | $ | 10,370,330 |

### Key Assumptions

For the purposes of this Plan, the Developer is projecting that the mixed-use development will be built and fully developed by year 2021.

### Analysis of Demand for New Housing

A Comprehensive Housing Market Study was done for Watertown, South Dakota conducted by Maxfield Research and Consulting, LLC in 2019. The study projects housing demand from 2019 through 2030 and provides recommendations on the amount and type of housing that could be built in Watertown to satisfy demand from current and future residents over the next decade.

The study identified a potential demand for about 2,100 new housing units through 2030. This demand will be generated by both new households and existing households based on changing demographic trends and housing preferences. Demand was divided between general-occupancy housing (65%) and age-restricted senior housing (35%). Because of the strong growth in the 55+ age cohort in Watertown and the market area, there will be strong demand for maintenance-free housing types; both for-sale and rental.

Although new rental housing has recently been completed in Watertown; the vacancy rate among all rental housing product types is only 2.6%; nearly 0% for affordable and subsidize rental housing and 3.4% for market rate housing. Therefore, there is pent-up demand for rental housing. The for-sale market is experiencing peak pricing today and supply is low across all price points for buyers. The current lot supply is able to meet demand in the short-term; but new lots need to be platted to accommodate future for-sale housing growth.

Finally, the senior housing market has a vacancy rate of only 2.7% across all service levels; indicating pent-up demand for senior housing products.

Financing and Implementation

It is assumed that all obligations incurred by the Developer would be adequately secured as to allow the payment of principle and interest when due from lenders involved in the project.

The City's role is to act as a conduit for the revenue and pass on all positive increment to the WDC to reimburse for their Project Costs, or up to 20 years, whichever comes first.

It is understood by the Developer that the estimated revenue from the TIF may not fully satisfy the Project Costs incurred within 20 years from the implementation of the TIF District. If there is a shortfall of revenue, the Developer understands that he will be responsible for satisfying any remaining costs.

In addition, if TIF Eligible Project Costs, in sum, exceed the total value set forth by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

City of Watertown TIF No. 13 is proven feasible based on the calculations made by the WDC, projecting a total of $2,657,345 million dollars in tax increment revenue during the life of the 20-year TIF District. The calculations of the estimated tax increment valuation and tax generated for the TIF District can be found in Schedule 3.

15

## Schedule 3: Detailed List of Estimated Project Costs

The proposed development will begin construction in 2020 and is comprised of one building. In total, the project is expected to include an apartment building, senior center space, and tenant parking garage. The total overall project costs are estimated to be $10.3 million dollars.

| Units | | 72 |
| --- | --- | --- |
| Bid Package | Contractor | TIF Eligible Costs Highlighted in Yellow |
| General Conditions | | $ 203,694.55 |
| Testing & Inspections | | $ 45,818.18 |
| Construction Staking | 0 | $ 19,636.36 |
| Site Survey | Infastructure Design Group (Allowance) | $ 10,472.73 |
| Soil Borings | Northern Technologies | $ 20,290.91 |
| Building Demolition | | $ 158,000.00 |
| Concrete | Limoges Construction | $ 509,236.36 |
| Concrete - Cold Weather Charges | 0 | $ 72,000.00 |
| Concrete - Waterproofing & Insulation | Herzog Coatings | $ 34,690.91 |
| Concrete - Parking Deck Waterproofing Membrane | 0 | $ 204,218.18 |
| Precast Concrete - Materials / Erection | Gage Brothers | $ 625,745.45 |
| Gypcrete | Don Johnson Construction | $ 115,435.64 |
| Masonry | Ottertail Stucco and Stone | $ 621,933.38 |
| Steel - Erection | 0 | $ 107,345.45 |
| Misc. Metals | Red River Fabricating | $ 21,135.27 |
| General W & L Rough Carpentry Labor | 0 | $ 256,581.82 |
| General W & L Rough Carpentry Materials | 0 | $ 135,327.27 |
| General W & L - Finish Carpentry Labor | 0 | $ 115,854.55 |
| General Work & Labor - Finish Carpentry Materials | 0 | $ 72,785.45 |
| Millwork - Cabinets | Rusco Window Company | $ 111,602.62 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ 45,697.75 |
| Bathroom Vanities | By Owner (Allowance) | $ 24,480.00 |
| Wood Componenets / Trusses | 0 | $ 261,530.18 |
| Moisture Protections | Pro-Tec Roofing | $ 100,250.18 |
| Building Insulation | RL Drywall & Insulation | $ 189,818.18 |
| Exterior Insulation & Finish System | 0 | $ - |
| Metal Siding / Metal Panels | 0 | $ 235,636.36 |
| Sealants | 0 | $ 52,363.64 |
| Commercial Doors, Frames & Hardware | Central Door & Hardware | $ 273,835.64 |
| Residential Wood Doors & Frames | Central Door & Hardware | incl with 38A |
| Overhead Doors | Skold Specialty Contracting | $ 18,850.91 |
| Vinyl Windows | Rusco Window Company | $ 101,847.27 |
| Glass & Glazing | Fargo Glass & Paint | $ 73,741.09 |
| Drywall | RL Drywall & Insulation | $ 370,472.73 |
| Carpet | 0 | $ 177,905.45 |
| Painting / Staining | 0 | $ 183,272.73 |
| Fill Nail Holes | 0 | $ 15,709.09 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ 18,981.82 |
| Exterior Signage | By Owner (Allowance) | $ 18,981.82 |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ 16,224.87 |
| Ceiling Fans | By Owner (Allowance) | $ 19,217.45 |
| Closet Shelving | By Owner (Allowance) | $ 13,745.45 |
| Toilets/Accessories | By Owner (Allowance) | $ 19,472.73 |
| Appliances & AC Units | Dugens | $ 215,345.45 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ 16,874.18 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ 14,050.47 |
| Bathroom Mirrors | By Owner (Allowance) | $ 17,685.82 |
| Window Treatments | By Owner (Allowance) | $ 14,753.45 |
| Conveying Systems | Thyssenkrupp Elevators | $ 149,236.36 |
| Building Sprinkler | Xtreme Fire Protection | $ 123,185.45 |
| Plumbing | 0 | $ 373,745.45 |
| HVAC | 0 | $ 242,181.82 |
| Electrical/Security System | 0 | $ 399,272.73 |
| Accrued Interest | 0 | $ 668,718.00 |
| Paving & Sidewalks | By City | By City |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | $ 23,202.33 |
| Site Utilities | By City | By City |
| Land | Craig Development | $ 305,000.00 |
| **Total Bid Packages** | | $ 8,257,091.96 |
| 11900 sq ft commerical | | $ 809,000.00 |
| Architect/Engineer (6%) | Stroh Architects | $ 543,965.52 |
| General Contractor (4%) | Craig Development | $ 362,643.68 |
| Development fee (4%) | Craig Development | $ 362,643.68 |
| **TOTAL CONSTRUCTION COST** | | $ 10,335,344.84 |

16

| Capital Costs | | | | Total | |
|---|---|---|---|---|---|
| Land, title, closing cost other land purchase cost | $ | 305,000.00 | | | x |
| | $ | - | $ | 305,000.00 | x |
| Other Capital Cost as defined by SDLC 11-9-15 | | | | | |
| Demolition and Site Clearing | $ | 158,000.00 | | | x |
| Site Survey | $ | 10,472.73 | | | x |
| Soil Borings | $ | 20,290.91 | | | x |
| | | | $ | 188,763.64 | |
| Financing Costs | | | | | |
| Interest expense | $ | 668,718.00 | | | x |
| Financing fee, closing fees, legal, etc | | | | | |
| | | | $ | 668,718.00 | |
| Professional Services Costs | | | | | |
| A&E Fees | $ | 527,798.80 | | | x |
| Organization fees | $ | - | | | |
| Professional service/fee-legal/acct./design | $ | 351,865.87 | | | |
| | | | $ | 879,664.67 | |
| Public Works Improvements | | | | | |
| New Public Sidewalks | $ | - | | | x |
| Perimeter Safety  (Site Fence) | $ | 23,202.33 | | | x |
| | | | $ | 23,202.33 | |
| | | | | | |
| Imputed Administrative Costs | | | | | |
| Estimated City/administrative/municipal cost | $ | 5,000.00 | $ | 5,000.00 | x |
| | | | | | |
| | | Total Cost: $ | | 2,070,349 | |

The items listed above are estimated TIF Eligible Project Costs. The final total may be greater or smaller. The costs represent identified activities expected to be incurred for the development to occur and for which this TIF District and Project Plan is created.

Eligible expenses are intended to be expended as allowed by SDCL 11-9-32 by the Developer. The total TIF Eligible Costs are $2,070,349 million dollars. The estimated Tax Increment Revenue is $2,657,345,00 million. The property payout is calculated to be 20 years. All obligations of the City are subject to creation of the District and the Development Agreement becoming effective.

If Eligible Project Costs, in sum, exceed the total value set forth above by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

The property included within TIF District No. 13 is currently assessed at $70,748. The improvements to be made to the property included within TIF District No. 13 are estimated to add $10.3 million dollars to the assessed valuation of the property within. The estimated annual tax increment is expected to be fully realized in tax year 2022 (payable in 2023) with no annual escalator of value during the term of TIF District No. 13.

The information in the table below establishes an assessed full and true value of approximately $10,370,330 as of the estimated stabilized year of 2039 generating a total of $2,657,345 increment payable to TIF District No. 13.

17

| | | | |
|---|---|---|---|
| Certified base assessed valuation | | | $70,748.00 |
| Estimated assessed value of improvements | | $ | 10,098,748 |
| Estimated total full and true valuation | | $ | 10,169,496 |
| Estimated assessed valuation calculated at | 85% | $ | 8,583,936 |
| Revenue estimates from tax increments | | | $2,657,345.91 |
| *refer to detailed spreadsheet | | | |
| Estimated total valuation in year 20 | | $ | 10,370,330 |

| Construction Year | Valuation Year | Revenue Year | Total Mill Rate | % completed | TAXABLE VALUATION | Base Value | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|---|
| 2020 | 2020 | 2021 | $16.870 | 0% | $70,748.00 | $1,139.87 | $0.00 |
| 2021 | 2021 | 2022 | $16.870 | 50% | $4,291,967.90 | $1,139.87 | $71,265.63 |
| 2022 | 2022 | 2023 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2023 | 2023 | 2024 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2024 | 2024 | 2025 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2025 | 2025 | 2026 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2026 | 2026 | 2027 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2027 | 2027 | 2028 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2028 | 2028 | 2029 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2029 | 2029 | 2030 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2030 | 2030 | 2031 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2031 | 2031 | 2032 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2032 | 2032 | 2033 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2033 | 2033 | 2034 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2034 | 2034 | 2035 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2035 | 2035 | 2036 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2036 | 2036 | 2037 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2037 | 2037 | 2038 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2038 | 2038 | 2039 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2039 | 2039 | 2040 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| *85% of Full and True Value | | | | | | | $2,657,345.91 |

18

## Schedule 4: Fiscal Impact to Taxing Authorities

The fiscal impact statement is intended to provide an analysis of the estimated impact of the Tax Increment Financing District to the public pursuant to 11-9-13(4). It is not intended to rival the level of detail required by a detailed financial analysis. A fiscal impact statement shows the impact of TIF District No. 13 both until and after the obligations are repaid, upon all entities levying taxes upon property within the District.

During the reimbursement phase that can last up to twenty years from the date TIF District No. 13 is created, the anticipated annual increase in taxes is expected to reimburse the Developer for Project Costs and is expected to have a positive fiscal impact on all entities levying taxes upon property in TIF District No. 13 after the District is dissolved.

### Definitions

**Assumptions** means factors or definitions used in the fiscal analysis. Assumptions may include facts and figures identified by the District and educated guesses that are sometimes necessary when not all of the information is available. Assumptions are often used to extrapolate an estimate. Assumptions may include an estimate of tax levies of each taxing entity, the school aid formula contribution, the value of the real property, etc.

**Base Revenue** means the taxes collected on the base value.

**Fiscal Impact** means the increase or decrease in revenues and generally refers to an impact to revenues caused by the District.

**Revenue** means ad valorem taxes.

**Tax Increment Financing District** means City of Watertown, Tax Increment Financing District No. 13.

**Taxing Districts** means all political subdivisions of the state which have ad valorem taxing power over property within the boundaries of the Tax Increment Financing District.

**Tax Increment Revenues** means all revenues above the Base Revenues.

### Assumptions

1. The property will have improvements which at completion will be valued for taxable purposes at $10,098,748 million dollars.
2. The average tax levy of all taxing districts will be $16.87 per $1,000 dollars of taxable valuation.
3. Tax increment will start to be collected in 2022 and end in 2040.
4. **The discretionary formula will be waived by the property owner.**

19

## Estimated Captured Taxable Values

The tables below detail the tax capture implications to each of the local taxing jurisdictions. After the repayment of the monetary obligations, taxing entities will receive their proportionate share of tax dollars for the base value and the tax incremental values.

The following dollars per thousand are the current taxing rates of the local taxing jurisdictions for Non-AG Other property types.

| 2018 Payable in 2019 | Dollars Per $1,000 Assessed |
|---|---|
| City of Watertown (includes Event Center.313) | $2.47 |
| Codington County (includes EDWCD .024) | $3.11 |
| School District "Other" | $11.29 |
| **Total Tax Levy** | $16.87 |

| Construction Year | Valuation Year | Revenue Year | Total Mill Rate | % completed | TAXABLE VALUATION | Base Value | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|---|
| 2020 | 2020 | 2021 | $16.870 | 0% | $70,748.00 | $1,139.87 | $0.00 |
| 2021 | 2021 | 2022 | $16.870 | 50% | $4,291,967.90 | $1,139.87 | $71,265.63 |
| 2022 | 2022 | 2023 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2023 | 2023 | 2024 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2024 | 2024 | 2025 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2025 | 2025 | 2026 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2026 | 2026 | 2027 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2027 | 2027 | 2028 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2028 | 2028 | 2029 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2029 | 2029 | 2030 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2030 | 2030 | 2031 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2031 | 2031 | 2032 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2032 | 2032 | 2033 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2033 | 2033 | 2034 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2034 | 2034 | 2035 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2035 | 2035 | 2036 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2036 | 2036 | 2037 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2037 | 2037 | 2038 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2038 | 2038 | 2039 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| 2039 | 2039 | 2040 | $16.870 | 100% | $8,583,935.80 | $1,139.87 | $143,671.13 |
| *85% of Full and True Value | | | | | | | $2,657,345.91 |

*Actual Taxable Valuation will depend upon the value determined by the Codington County Director of Equalization when assessed with the application of dollars-per-thousand from local taxes. All tax increment revenues shall be from Generally Applicable Taxes attributable to the improvements to be constructed in the TIF District. The potential for total increment collections are estimated to be at the maximum range of $2,657,345, covering a span of captured tax years not to exceed 20. Collection is anticipated to begin in 2022, and the schedule carries out the tax captured 20 years from the date of Plan adoption.

## Estimated Impact of Tax Increment Financing on Revenues of Taxing Jurisdictions

The site will generate taxes to the local jurisdictions at or above the assessed value of the base. The tax increment will be available to the taxing jurisdictions at or before twenty years after the creation of the District.

Below is a table showing the estimated impact on each taxing entity during the duration of TIF District No. 13.

| Year | Projected Tax Increment | School District | County | City | |
|------|------------------------|-----------------|--------|------|---|
| 2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2021 | $71,265.63 | $48,275.34 | $13,298.17 | $10,561.57 | $143,400.70 |
| 2022 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2023 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2024 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2025 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2026 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2027 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2028 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2029 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2030 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2031 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2032 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2033 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2034 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2035 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2036 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2037 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2038 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| 2039 | $143,671.13 | $97,322.82 | $26,809.03 | $21,292.06 | $289,095.04 |
| | $2,657,346 | $1,800,086 | $495,861 | $393,819 | $5,347,111 |

All public-school districts are funded through the State Aid to Education Formula. The two primary channels of the formula are State Aid and Local Effort. Multiple agencies of the State of South Dakota calculate the amount of General Fund money to be distributed to school districts each year through the State portion. Local effort is considered the amount of revenue that is generated by local property taxes at maximum levies.

If a TIF is classified as Economic Development, Industrial or Affordable Housing, the school funding that would be generated by the increment valuation is considered lost local effort and is paid through the State Aid side of the formula.

City of Watertown TIF District No. 13 is expected to be classified as Economic Development; therefore, any lost local effort will be funded through the State Aid to Education Formula.

21

## Taxable Value of City of Watertown

### Maximum Percentage of Taxable Property in Municipality Permitted in District

The resolution required by SDCL § 11-9-7 shall contain a finding that the aggregate assessed value of the taxable property in the district plus the tax increment base of all other existing districts does not exceed ten percent of the total assessed value of all taxable property in the municipality.

As confirmed with the Codington County Auditor, the 2019 Taxes Payable value for the City of Watertown is $1,729,064,855.00. The base value of the taxable property for inclusion into this Tax Increment Financing District No. 13, as estimated but not yet verified by S.D. Department of Revenue, is $70,748.

Currently, there are eleven other active and inactive TIF Districts under the jurisdiction of the City of Watertown, South Dakota. The total base value for all TIFs, including TIF District No. 13, is $5,107,251,00.

| Tax Increment District Base Value | | Maturity |
|---|---|---|
| 1 | $84,064.00 | 2024 |
| 2 | $25,494.00 | 2024 |
| 3 | $33,117.00 | Dissolved |
| 4 | $0.00 | Dissolved |
| 5 | $496,156.00 | 2030 |
| 6 | $3,542,623.00 | 2029 |
| 7 | $123,142.00 | 2039 |
| 8 | $473,200.00 | 2039 |
| 9 | $0.00 | 2039 |
| 10 | $71,466.00 | 2039 |
| 11 | $119,673.00 | Not Active |
| 12 | $67,568.00 | Not Active |
| 13 | $70,748.00 | Not Active |
| TOTAL | $5,107,251.00 | |

**City of Watertown Current Taxable Value:** $1,729,064,855.00
**All TIF Base Value must be less than 10%:** $17,290,648.50

The total current value of all active and inactive TIF Districts in the City of Watertown is $5,107,251.00. Using the estimates provided for TIF District No. 13, the value of all existing Tax Increment Financing Districts combined is less than 1% of the total 2019 Taxable Valuation.

22

## Schedule 5: Method of Financing

The payment of Project Costs is expected to be made by the City to the WDC from the special fund of the Tax Increment Financing District. SDCL 11-9-30(1). Pursuant to the Developer's Agreement, the City will pay to the WDC all Tax Increment Revenue it receives from the District to satisfy all monetary and financing costs, of which, are never to exceed the amount of Tax Increment Revenue generated, or 20 years, whichever comes first.

There shall be no advances by the City of Watertown. The WDC may reimburse itself for administrative and professional costs from the tax increment.

TIF No. 13 is a site-specific TIF District. In this type of transaction, the local government (TIF issuer) provides a financing commitment to a Developer to pay up to a certain maximum amount of future TIF revenue, arising only from the Project itself.

Public-sector risk is extremely limited in this type of TIF District because the TIF funding commitment is only supported by a pledge of site-specific revenues to the extent they materialize. Therefore, if the Project is only partially completed and TIF revenues are less than projected, the developer will simply receive less in payments than originally hoped and be responsible for making up the shortfall.

## Additional Contents of Project Plan as Required by SDCL 11-9-16(1)

### Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)

The property within the TIF District is currently occupied by landowners and renters and parking. The buildings on the properties within the TIF boundary will be torn down and the site built up for development of the new Project.

TIF Plan No.13 - Existing Uses and Conditions Map



March 16, 2020

## Proposed Improvements and Uses Map SDCL 11-9-16(2)

The aerial map below shows the location at its current state, and to follow, pictures of the proposed improvements are provided.

TIF Plan No.13 - Proposed Improvements and Uses



March 16, 2020

Disclaimer: Map and parcel data are believed to be accurate, but accuracy is not guaranteed. This is not a legal document and should not be substituted for a title search,appraisal, survey, or for zoning verification.

25

Proposed Improvements



## Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)

The property within the TIF is currently zoned as C1.

Zoning of the property is expected to be changed from C1 to C1-Conditional Use by the Board of Adjustments in the near future. C1-Conditional Use supports the proposed development.

TIF Plan No.13 - Current Zoning

March 16, 2020

27

## Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances SDCL 11-9-16(4)

The Plan conforms to the City of Watertown's Comprehensive Land Use Plan for 2020. Proposed uses within the boundaries of TIF District No. 13 are allowed within the established zoning district, but further zoning will be required for conditional use.

Proposed structures and improvements within the boundaries of TIF No. 13 shall be in compliance with all applicable building, fire, and zoning codes of the City of Watertown.

## Estimated Non-Eligible Project Costs 11-9-16(5)

The total estimated non-eligible project costs are shown in the table below. TIF Eligible Project Costs are highlighted in yellow.

| Bid Package | Contractor | TIF Eligible Costs Highlighted in Yellow | |
|---|---|---|---|
| General Conditions | | $ | 203,694.55 |
| Testing & Inspections | | $ | 45,818.18 |
| Construction Staking | 0 | $ | 19,636.36 |
| Site Survey | Infastructure Design Group (Allowance) | $ | 10,472.73 |
| Soil Borings | Northern Technologies | $ | 20,290.91 |
| Building Demolition | | $ | 158,000.00 |
| Concrete | Limoges Construction | $ | 509,236.36 |
| Concrete - Cold Weather Charges | 0 | $ | 72,000.00 |
| Concrete - Waterproofing & Insulation | Herzog Coatings | $ | 34,690.91 |
| Concrete - Parking Deck Waterproofing Membrane | 0 | $ | 204,218.18 |
| Precast Concrete - Materials / Erection | Gage Brothers | $ | 625,745.45 |
| Gypcrete | Don Johnson Construction | $ | 115,435.64 |
| Masonry | Ottertail Stucco and Stone | $ | 621,933.38 |
| Steel - Erection | 0 | $ | 107,345.45 |
| Misc. Metals | Red River Fabricating | $ | 21,135.27 |
| General W & L Rough Carpentry Labor | 0 | $ | 256,581.82 |
| General W & L Rough Carpentry Materials | 0 | $ | 135,327.27 |
| General W & L - Finish Carpentry Labor | 0 | $ | 115,854.55 |
| General Work & Labor - Finish Carpentry Materials | 0 | $ | 72,785.45 |
| Millwork - Cabinets | Rusco Window Company | $ | 111,602.62 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ | 45,697.75 |
| Bathroom Vanities | By Owner (Allowance) | $ | 24,480.00 |
| Wood Componenets / Trusses | 0 | $ | 261,530.18 |
| Moisture Protections | Pro-Tec Roofing | $ | 100,250.18 |
| Building Insulation | RL Drywall & Insulation | $ | 189,818.18 |
| Exterior Insulation & Finish System | 0 | $ | - |
| Metal Siding / Metal Panels | 0 | $ | 235,636.36 |
| Sealants | 0 | $ | 52,363.64 |
| Commercial Doors, Frames & Hardware | Central Door & Hardware | $ | 273,835.64 |
| Residential Wood Doors & Frames | Central Door & Hardware | incl with 38A | |
| Overhead Doors | Skold Specialty Contracting | $ | 18,850.91 |
| Vinyl Windows | Rusco Window Company | $ | 101,847.27 |
| Glass & Glazing | Fargo Glass & Paint | $ | 73,741.09 |
| Drywall | RL Drywall & Insulation | $ | 370,472.73 |
| Carpet | 0 | $ | 177,905.45 |
| Painting / Staining | 0 | $ | 183,272.73 |
| Fill Nail Holes | 0 | $ | 15,709.09 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ | 18,981.82 |
| Exterior Signage | By Owner (Allowance) | $ | 18,981.82 |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ | 16,224.87 |
| Ceiling Fans | By Owner (Allowance) | $ | 19,217.45 |
| Closet Shelving | By Owner (Allowance) | $ | 13,745.45 |
| Toilets/Accessories | By Owner (Allowance) | $ | 19,472.73 |
| Appliances & AC Units | Dugens | $ | 215,345.45 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ | 16,874.18 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ | 14,050.47 |
| Bathroom Mirrors | By Owner (Allowance) | $ | 17,685.82 |
| Window Treatments | By Owner (Allowance) | $ | 14,753.45 |
| Conveying Systems | Thyssenkrupp Elevators | $ | 149,236.36 |
| Building Sprinkler | Xtreme Fire Protection | $ | 123,185.45 |
| Plumbing | 0 | $ | 373,745.45 |
| HVAC | 0 | $ | 242,181.82 |
| Electrical/Security System | 0 | $ | 399,272.73 |
| Accrued Interest | 0 | $ | 668,718.00 |
| Paving & Sidewalks | By City | By City | |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | $ | 23,202.33 |
| Site Utilities | By City | By City | |
| Land | Craig Development | $ | 305,000.00 |
| **Total Bid Packages** | | $ | 8,257,091.96 |
| 11900 sq ft commerical | | $ | 809,000.00 |
| Architect/Engineer (6%) | Stroh Architects | $ | 543,965.52 |
| General Contractor (4%) | Craig Development | $ | 362,643.68 |
| Development fee (4%) | Craig Development | $ | 362,643.68 |
| **TOTAL CONSTRUCTION COST** | | $ | 10,335,344.84 |

## Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)

Pursuant to SDCL 11-9-16 (6), a statement of a proposed method for the relocation of persons to be displaced needs to be provided.

The residents residing in the Proposed District will be relocating to other housing within the City of Watertown.

## Performance Bond, Surety Bond, or Other Guaranty SDCL 11-9-43

Performance bond required of purchaser or lessee of property.

According to SDCL 11-9-43, as security for its fulfillment of the agreement with the governing body, a purchaser or lessee of redevelopment property shall furnish a performance bond, with such surety and in such form and amount as the governing body may approve or make such other guaranty as the governing body may deem necessary in the public interest.

The Developer may also sign a personal guaranty matching the funds distributed to the project from a lender.

## TIF District No. 13 Classification

Mechanisms are built within State Codified Law to ensure that school districts are held harmless by TIF districts for their General and Special Education Funds. For these purposes, law (SDCL 13-13- 10.10) defines four classifications of Tax Increment Financing Districts.

- **Economic Development** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Economic Development TIF district is not considered in the state-aid to education formula.

- **Industrial** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Affordable Housing** – During the 2018 Legislative Session, the legislature created a fourth TIF district classification for Affordable Housing. The criteria for an Affordable Housing TIF are as follows:

  (1) The original selling price of any house in the district will be at or below the first-time homebuyer purchase price limit being used by the South Dakota Housing Development Authority as of the date the house is sold; or

  (2) The monthly rental rate of all multifamily housing units in the district will be at or below the calculated rent for the state's eighty percent area median income, being used by the South Dakota Housing Development Authority, as of the date the TIF district is created, for a minimum of five years following the date of first occupancy.

  This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Local** –Local TIF Districts are not presently defined in statute. Rather, local classification is the default classification. Unless the TIF district meets the definition of an Industrial, Economic Development, or Affordable Housing TIF district, it is a Local TIF district. For further clarification, in this classification, the project usually benefits the local government instead of having a regional or statewide benefit. Unlike the other classifications, the assessed value of a Local TIF District for purposes of the state-aid-formula is the total assessed value of the district. The County Auditor is required to impose an additional school levy on all real property within any impacted school district to hold the district(s) harmless.

TIF District No. 13 is expected to be classified as **Economic Development**; therefore, this classification is exempt from the provisions of SDCL § 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Economic Development TIF district is not considered in the state-aid to education formula.

## Establishing Economic Development Purpose

South Dakota law describes economic development as activity that stimulates and develops the general economic welfare and prosperity of the state through the promotion and advancement of industrial, commercial, manufacturing, agricultural, or natural resources. The definition of Economic Development for State Aid to Education Formula purpose is any area where there is or will be one or more businesses engaged in any activity defined as commercial or industrial.

The area within the boundaries of TIF District No. 13 to be developed will include a mixed-use commercial building that will include over 11,000 square feet of retail space, private parking, and 72, 1- and 2-bedroom apartment units. The development is expected to help the Region realize new opportunities for growth and attract more retail development to the area.

The project will lie within the following area:
**Physical Address:** 26 1ˢᵗ Avenue SW, Watertown SD.
**Legal Description:** *LOTS 1-4 OHTNESS SUBD OF LOTS 12-14 BLK 17 ORIGINAL PLAT & LOT 11 OF BLK 17 ORIGINAL PLAT & W10' OF EASTERLY ADJOINING ALLEY TO ALL FORMENTIONED LOTS*

The Project is expected to expand the city's presence, increase the availability of senior housing, and is projected to bring an annual economic impact to the Region.

The Project is expected to be completed by the middle of Calendar Year 2021. The Project Costs relate directly to promoting economic development in the District consistent with the purpose for which the District is created.

## Summary of Findings in Establishing Economic Development Purpose

Below, the WDC has provided a "But For" analysis of the project. SDCL does not require that a "But For" analysis be met before a TIF Plan can be approved, however, this type of analysis is strongly recommended as it helps to answer questions about the transformative nature of the project and the goals and objectives of the community in relation to using TIF.

As documented in this Plan and the attachments contained and referenced herein, the following findings are made:

1. **That "But For" the creation of this District, the development projected to occur as detailed in this Plan: 1) would not occur; or 2) would not occur in the manner, at the values, or within the timeframe desired by the Developer**. In reaching this determination, the WDC has considered that in making the area within the District suitable for development, the Project will require a substantial investment to pay for the costs of: acquisition, demolition and clean-up of the property, installation and rehabilitation of utilities; professional, legal and financing costs and other expenses. Due to the extensive initial investment needed to allow the Project to occur, the Developer has determined that development of the area as proposed will not occur solely from private investment.

Accordingly, the Developer finds that absent the use of Tax Increment Financing, the Project as proposed would not proceed.

2. **The economic benefits of the Tax Increment Financing District, as measured by increased employment, attraction of retail development to the Region, business and personal income, and property value, are sufficient to compensate for the Project Costs incurred.** In making this determination, the WDC has considered the following:

Analysis prepared by the WDC projects that the anticipated economic benefits to be realized within Watertown, Codington County, and Northeast South Dakota are as follows:

- An estimated $10.3 million dollars of capital investment to construct and equip the building and develop private parking.
- Additional effects include indirect effects of the Developer purchasing from area, and suppliers and induced effects of employee households spending locally for goods and services from retailers, restaurants, and service companies.

It is expected that once the improvements within the Project Plan are made, they will enhance significantly the value of it and other real property surrounding the district.

It is noted that some local governments apply standards to determine the level of TIF assistance to be provided to a project. This would include TIF set at a fixed percentage of total project costs, a percentage of the total TIF revenue the project is anticipated to produce, a uniform amount of TIF assistance per job created, or matching the TIF amount to the developer's equity contribution. However, these types of benchmarks do not adequately take into account changing market and financial conditions or the unique nature of redevelopment projects in disinvested and blighted areas.

## Required Findings in Resolution Creating District

### Economic Development Analysis of City of Watertown TIF District No. 13

The City of Watertown has been approached concerning the creation of a tax increment financing district (TIF District) located within the City limits. Per South Dakota Codified Law 11-9-8, the Governing Body must make a finding that at least 25% of the real property within the district to be blighted or at least 50% of the real property in the district will be developed for economic development purposes and the improvement will significantly enhance the value of all other real property in the district.

Tax Increment Financing District No. 13 is a proposed mixed-use of commercial and housing that will be created to pay the costs of public infrastructure, property acquisition, and other expenses needed to facilitate the construction of approximately 11,000 square feet of commercial space on the first floor, 72 1-and 2 bedroom apartments total on the above floors, and tenant parking spaces.

The investment of about $10.3 million dollars will stimulate and develop the general economic welfare and prosperity of the State through the promotion of development and advancement of commerce during the construction period. Upon completion, the Project is expected to enhance the Region by creating additional jobs, and increase the availability of housing for senior citizens, having a substantial annual economic impact to the Region and state.

Therefore, it is found that not less than 50%, by area, of the real property within the District will stimulate and develop the general economic welfare and prosperity of the State of South Dakota through the promotion and advancement of industrial, commercial, manufacturing, agricultural, and natural resources. It is also found that the improvement of the area is likely to enhance significantly the value of all real property in the District in accordance with SDCL 11-9-8.

.

## Definitions Used in This Plan

The following terms found in this Plan are defined as the following:

**Base Value or Tax Incremental Base Value** means the aggregate assessed value of all taxable property located within a Tax Incremental District on the date the District is created, as determined by SDCL 11-9-20.

**Blighted** means property that meet any of the criteria as defined and established by SDCL 11-9-9.

**Developer** means any individual or entity responsible for carrying out any portion of the projects listed in the TIF Plan, including both expenses considered eligible for TIF reimbursement and any other costs associated with private projects within the plan. In this Plan, the Developer is Crestone Builders, LLC.

**Developer Project Developer Agreement** means any agreement which is binding between the City and one or more Developers and which specifies the duties, responsibilities, and obligations of all parties relative to the implementation of this plan. The agreement commits the Developer to complete listed projects and commits the City to payments of tax increment revenues to the developer(s), among other items. The agreement can include contingency and performance revisions.

**Economic Development** means all powers expressly granted and reasonable inferred pursuant to SDCL 9-54.

**Generally Applicable Taxes** means taxes that have a uniform rate that is applied to all persons of the same classification in the appropriate jurisdiction, and the tax has a generally applicable manner of determination and collection.

**Governing Body** means the Watertown, S.D. City Council.

**Plan** means this Project Plan.

**Planning Commission** means the City of Watertown S.D. Planning Commission.

**Project Costs** means any expenditure or monetary obligations by the City of Watertown, whether made, estimated to be made, incurred or estimated to be incurred, which are listed as project Costs herein will include any costs incidental thereto but diminished by any income, special assessments, or other revenues, other than tax increments, received, or reasonably expected to be received, by the City of Watertown in connection with the implementation of this Plan.

**Project Plan** refers to this plan.

**Project Site** means the location of the project.

**Public Works** means the Infrastructure Improvements, the acquisition by purchase or condemnation of real and personal property within the Tax Increment District and the sale, lease, or other disposition of such property to private individuals, partnerships, corporations, or other entities at a price less than the

cost of such acquisition which benefit or further the health, safety, welfare, and economic development of the City and Project Costs.

**SDCL** means South Dakota Codified Law.

**Taxable Property** all real taxable property located in a Tax Incremental District.

**Tax Increment District** a contiguous geographic area within the City of Watertown defined and created by resolution of the governing body and named "City of Watertown Tax Increment Financing District Number Twelve" (TIF No.13).

**Tax Increment Valuation** is the total value of the Tax Increment Financing District minus the tax incremental base pursuant to 11-9-19.

**TIF Note** the developer uses a future pledge of TIF revenues from a local government to convince a construction lender to provide additional funding for the project and obligates the local government to pay TIF funds to the developer if certain conditions (i.e., project completion and availability of tax revenues) are met. The lender treats the TIF Note as additional collateral over and above the value of the real estate project during the underwriting and sizing of the construction Note. The lender's rights to the TIF proceeds and the mortgage on the property "cross collateralize" each other.

**TIF Plan** refers to this project plan.

**All other definitions in SDCL 11-9 shall apply.**

37

# Tax Increment Financing District No. 13 Boundary Map
## "Generations on 1st"



**RESOLUTION NO. 20-56**

**A RESOLUTION TO PROVIDE FOR THE CREATION OF
TAX INCREMENT DISTRICT NUMBER THIRTEEN**

**WHEREAS,** the Plan Commission of the City of Watertown has held a public hearing on April 9th, 2020 and adopted and recommended the district boundaries and tax increment plan for Tax Increment District Number Thirteen, City of Watertown, South Dakota and;

**WHEREAS,** the City Council of the City of Watertown, South Dakota (the "City"), has the powers, pursuant to SDCL 11-9-2, to create Tax Increment District Number Thirteen, City of Watertown, South Dakota, and to define its boundaries.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF WATERTOWN, SOUTH DAKOTA:**

That pursuant to SDCL Chapter 11-9, the City Council hereby declares the following:

1. <u>Authority and Declaration of Necessity.</u>  The City of Watertown, South Dakota, declares the necessity for the creation of Tax Increment District Number Thirteen, City of Watertown, (hereinafter sometimes referred to as the "District"), pursuant to SDCL Chapter 11-9. Further, the City finds that the improvements of the area within the District are likely to enhance significantly the value of substantially all of the other real property in the District and is necessary for economic development within the City for the construction and expansion of an existing manufacturer's building.

2. <u>Findings.</u>  The City Council makes the following findings with regard to economic development:
   a. More than 50% of the property in the District by area will stimulate and develop the general economic welfare and prosperity of the City;
   b. Improvements to the District will significantly and substantially enhance the value of all property within the District;
   c. Development of the District will enhance sales tax revenue and create employment in the District;
   d. Development of the District will create an opportunity for a future development and employment once the improvements have been made.

3. <u>Findings of Maximum Percentage of Tax Increment Districts.</u>  The aggregate assessed value of the taxable property in the District, plus all other tax increment districts, does not exceed ten percent (10%) of the total assessed valuation of the City.

4. <u>Creation of District.</u>  There is hereby created, pursuant to SDCL Chapter 11-9, Tax Increment District Number Thirteen, City of Watertown, South Dakota. The District is hereby created on the day this resolution becomes effective which shall be twenty (20) days after publication of this resolution.

5. <u>Designation of District Boundaries.</u>  The District shall be located within the northern, southern, western and eastern boundaries of the following described real property:

   LOTS 1-4 OHTNESS SUBD OF LOTS 12-14 BLK 17 ORIGINAL PLAT & LOT 11 OF BLK 17 ORIGINAL PLAT & W10' OF EASTERLY ADJOINING ALLEY TO ALL FORMENTIONED LOTS

6. <u>Creation of Tax Increment Fund.</u> There is hereby created, pursuant to SDCL 11-9-31, a Tax Increment District Number Thirteen Fund, which shall be a segregated asset account. All tax increments collected pursuant to Tax Increment District Number Thirteen shall be deposited into the Tax Increment District Number Thirteen Fund. All funds in the Tax Increment District Number Thirteen Fund shall be used solely for those purposes expressly stated and reasonably inferred in SDCL Chapter 11-9 and per the Developer's Agreement between the Developer and City of Watertown.

7. <u>Adoption of Tax Increment Plan.</u> The City Council of the City of Watertown does hereby adopt the Tax Increment Plan Number Thirteen as presented.

Dated this 2nd day of November, 2020

The above and foregoing Resolution was moved for adoption by Alderperson _____, seconded by Alderperson _____, and upon voice vote motion carried, whereupon the Mayor declared the Resolution to be duly passed and adopted.

I hereby certify that Resolution No. 20-56 was published in the Watertown Public Opinion, the official newspaper of said City, on the ____ day of September, 2020.

Kristen Bobzien, Finance Officer

ATTEST:                                                  CITY OF WATERTOWN


_____          _____
Kristen Bobzien                                          Sarah Caron, PE, CFM
Finance Officer                                          Mayor

| GENERATIONS ON 1ST TIF ELIGIBLE COSTS | | | |
|---|---|---|---|
| WATERTOWN, SOUTH DAKOTA | | | |
| CRAIG DEVELOPMENT | | | |
| Contract Disbursement Summary - Bid Group II Summary | | | |
| Thursday, October 29, 2020 | | | |
| Units | | 72 | |
| Bid Package | Contractor | Contractor | |
| Disconnect Utilities | | $ 33,490.00 | |
| Testing & Inspections | NTI | $ 45,818.18 | |
| Construction Staking | Infrastructure Design Group | $ 19,636.36 | |
| Site Survey | Infastructure Design Group | $ 56,560.00 | |
| Excavation | Clausen Construction | $ 178,890.00 | |
| Soil Borings | Northern Technologies | $ 21,300.00 | |
| Building Demolition | Boldt Construction | $ 84,850.00 | |
| Paving & Sidewalks | By City | By City | |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | $ 66,700.00 | |
| Closing Costs/Interest | | $ 193,430.00 | |
| Remove Alleys/Sidewalks | By City | $ 23,590.00 | |
| Land | Craig Development | $ 315,000.00 | |
| Total Bid Packages | | $ 1,039,264.55 | |
| | | $ - | |
| Architect/Engineer (4%) | Stroh Architects | $ 387,600.00 | |
| General Contractor (5%) | Craig Development | $ 487,000.00 | |
| Development fee (5%) | Craig Development | $ 487,000.00 | |
| TOTAL CONSTRUCTION COST | | $ 2,400,864.55 | |
| | | | |

INSTRUMENT NO. 202003531 Pages: 49
BOOK: 4T DEVELOPMENT AGREEMENT
PAGE: 8197

7/31/2020 9:42:00 AM

*Ann Rasmussen*

**ANN RASMUSSEN, REGISTER OF DEEDS
CODINGTON COUNTY, SOUTH DAKOTA**
Recording Fee: 30.00
Return To: CITY OF WATERTOWN

<u>Document Prepared By:</u>
Matthew T. Roby
City Attorney
23 2nd St NE | PO Box 910
Watertown, SD 57201-0910
605-882-6200

## DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (this "*Agreement*") is entered into as of this 12th day of June, 2020 (the "*Effective Date*") by and between the **CITY OF WATERTOWN** a South Dakota Municipality ("*City*"), and **PARKSIDE PLACE, LLC**, a South Dakota Limited Liability Company ("*Developer*").

## RECITALS:

**WHEREAS**, City has an interest in promoting economic development and is authorized pursuant to SDCL Chapter 11-9 (the "*Act*"), and any amendment thereto, to create tax increment districts for such purposes; and

**WHEREAS**, Developer intends to construct a mixed-use facility consisting of 3,803 square feet of retail/commercial space on the first floor, 36 one-bedroom apartments on floors two through four, and 36 first floor tenant parking spaces in Downtown Watertown based in part on the City's creation of a tax increment district that will provide a grant to Developer; and

**WHEREAS**, in order to accelerate the development of certain property that would not otherwise occur solely through private investment in the reasonably foreseeable future, the City Council of the City of Watertown (the "*Council*") on May 18, 2020 adopted Resolution No. 20-17, a true and correct copy of which is attached hereto as *Exhibit A*, to create Tax Increment District Number 12 (the "*TID*" or "*District*" or "*TIF #12*"), which encompasses the following described real property (the "*TID Property*").:

*Lots 15 and 16 in Block 2 of the Original Plat of the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.*

**WHEREAS**, the Act authorizes the expenditure of funds derived within a tax increment district for the payment of expenditures made or estimated to be made and monetary obligations incurred or estimated to be incurred by the City establishing the TID, for grants, costs of public works or public improvements in the TID, plus other costs incidental to those expenditures and obligations, consistent with the project plan of the TID, which expenditures and monetary obligations constitute project costs, as defined in Section 11-9-14 of the Act; and

**WHEREAS**, on May 18, 2020, the Council adopted Resolution No. 20-17 to approve the Tax Increment Project Plan, a true and correct copy of which is attached hereto as *Exhibit B* and incorporated by reference, providing for development of the TID Property (the "*Project Plan*"), which included the payment of a grant to Developer in an amount not to exceed $1,466,470 toward certain costs of development as described in the Project Plan.

# EXHIBIT B

**NOW, THEREFORE,** in consideration of the mutual promises, covenants, obligations, apportionment and benefits contained in this Agreement, City and Developer hereby agree as follows:

### Section 1. Definitions

Unless the context otherwise requires, the terms used in this Agreement will have the meanings set forth in this Section. If not defined in this Agreement, capitalized terms will have the meaning given to them in the Project Plan.

> **"Base Revenues"** means the taxes collected on the Base Value.

> **"Base Value"** means the value of the TID Property at the time of the creation of the district as certified by the South Dakota Department of Revenue.

> **"Construction Schedule"** means the timetable for constructing the improvements specified in Section 3.01(b).

> **"Grant"** means an amount not to exceed $1,466,470 through the use of Tax Increment Revenues.

> **"Project"** means the construction of a mixed-use facility consisting of 3,803 square feet of retail/commercial space on the first floor, 36 one-bedroom apartments on floors two through four, and 36 first floor tenant parking spaces use in Downtown Watertown.

> **"Project Costs"** means $1,466,470 of construction costs associated with the Project.

> **"Public Improvements"** means all improvements referenced in the Project Plan that constitute public improvements to be dedicated to the City upon completion.

> **"Tax Increment Revenue(s)"** means all tax revenues of the TID Property in excess of the Base Revenues.

Words used herein in the singular, where the context so permits, also includes the plural and vice versa, unless otherwise specified. Unless otherwise specified, the terms used in this Agreement found in the Act shall have the meaning set forth in the Act.

### Section 2. Obligation and Representations

**2.01    Remittance of Tax Increment Revenues.** City agrees to pay to Developer through a grant, but solely from Tax Increment Revenues, a sum not to exceed $1,466,470.

**2.02    Grant.** The parties acknowledge that Developer's right to receive the Tax Increment Revenues hereunder is a grant under the Act, and a personal property right vested with Developer on the date hereof.

**2.03    No Certificated Tax Increment Revenue Bonds.**  City will have no obligations to the Developer except as set forth in this Agreement, and will not issue any certificated tax increment revenue bonds to evidence such obligations.

**2.04    Developer's Representations.**

(a)    Developer is a limited liability company organized in the State of South Dakota.

(b)    Developer has the authority to enter into this Agreement and to perform the requirements of this Agreement.

(c)    Developer's performance under this Agreement will not violate any applicable judgment, order, law or regulation.

(d)    Developer's performance under this Agreement will not result in the creation of any claim against City for money or performance, any lien, charge, encumbrance or security interest upon any asset of City.

(e)    Developer will have sufficient capital to perform all of its obligations under this Agreement.

(f)    Developer owns the TID Property.

(g)    Developer waives its right to participate in the County's Property Tax Reduction Program for the Project.

**2.05    Approvals.**  The City's obligations pursuant to this Agreement are specifically conditioned upon the resolution implementing TIF #12 becoming effective. The City will make good faith efforts to timely introduce and secure approval of such resolution.

**2.06    Payment of Tax Increment Revenues.**  Upon Developer's real estate tax payments to Codington County each April and October, Developer will provide City with documentation confirming such payments. City will refund to Developer the Tax Increment Revenue portion of each payment within a reasonable time, but not later than each June 15 and December 15, respectively.

**2.07    Continued Cooperation.**  City and Developer represent each to the other that they will make reasonable efforts to expedite the subject matters hereof and acknowledge that the successful performance of this Agreement requires its continued cooperation.

**2.08    No General Obligation of the City.**  City's obligations hereunder are limited obligations payable solely out of the Tax Increment Revenues and are not payable from any other revenues of City, nor a charge against its general taxing power.  Developer shall bear all risks that such Tax Increment Revenues may be insufficient to pay the maximum amounts specified in Section 2.01.

**2.09    Assignment of Payments.**  For the purpose of financing its obligations related to this Agreement, Developer hereby assigns its right to payments hereunder (except reimbursements

3

pursuant to Section 2.10) to Watertown Development Company, a South Dakota Non-Profit Corporation, 1 E Kemp Ave, Watertown, SD 57201. Upon written notice to the City, and with the express written consent of Watertown Development Company, Developer may re-assign to itself or another third party its right to payments hereunder. Irrespective of the assignee, Developer's right to such payments is subject to the other limitations of this Agreement.

**2.10    Utilites, Sidewalks, and Alley Reimbursements.** City agrees to reimburse Developer for costs not to exceed $18,500 related to site utilities improvements, not to exceed $22,000 for sidewalk removal and replacement, and not to exceed $23,500 for alley removal. Developer shall first make payments to its contractors for these expenses and submit receipts to City for reimbursement.

## Section 3. The Project.

**3.01    The Project.** The Project will be comprised of real estate, and the design, construction, assembly, and installation of the improvements described in the Project Plan.

(a)    Description of the Project. The Project consists of $1,466,470 of improvements to the property as described in the Project Plan.

(b)    Completion of the Project Improvements: Developer shall diligently work to complete the respective portions of the project by July 1, 2021.

The time periods set forth above in this Section 3.01(b) shall be extended by reason of delays caused by Force Majeure. As used herein, "Force Majeure" shall refer to delays caused by or occasioned by labor disputes, acts of God, moratoriums, war, riots, insurrections, civil commotion, a general inability to obtain labor or materials, fire, unusual delay in transportation, severe and adverse weather conditions preventing performance of work, unavoidable casualties, failures to act by any governmental entity or their respective agents or employees, governmental restrictions, regulations or controls including the inability to obtain the necessary governmental approvals and/or permits necessary to complete any portion of the Project.

**3.02    Construction of the Public Improvements.** The City of Watertown will cause Public Improvements to be constructed by the Developer through private contract. The City will not bid nor contract any improvement described in the Project Plan or this Agreement.

**3.03    Financing of the Project and Improvements.** Payment of all Project Costs will be made from Developer's own capital and from other sources obtained solely by Developer. Developer may use any or part of the TID Property as collateral for such loans as required to pay Project Costs.

## Section 4. Developer Covenants

**4.01    Duties and Obligations of Developer.** Developer hereby agrees to: (a) complete, or cause to be completed, all improvements described in the Project Plan and this Agreement, (b) provide, or cause to be provided, all materials, labor, and services for completing the Project, (c) obtain or cause to be obtained, all necessary permits and approvals from City and/or all other governmental

4

agencies having jurisdiction over the construction of improvements to the TID Property, (d) provide the City all necessary information, including documentation of actual expenses incurred for Reimbursable Project Costs, and (e) submit written annual reports, starting no later than thirty (30) days following the end of the fiscal year in which the TID was created detailing the amount of Tax Increment Revenues received and the amounts thereof applied to pay Developer's Project Costs.

**4.02    Insurance.** Developer will maintain a policy of liability insurance, acceptable to City, with liability limits of at least One Million Dollars ($1,000,000) that names City as an additional insured. Such a policy must remain in effect until City accepts the improvements. City will provide no insurance for the Project.

**4.03    Indemnification.** Except to the extent of the negligence or willful misconduct of Indemnitees, Developer will without a determination of liability or payment being made FULLY INDEMNIFY, DEFEND, and HOLD HARMLESS, City (and the elected officials, employees, officers, directors, and representatives of City) (collectively, "Indemnitees") from and against any and all costs, claims, liens, damages, losses, expenses, fees, fines, penalties, proceedings, actions, demands, causes of action, liability and suits of any kind and nature, including but not limited to, personal injury or death and property damage, made upon City directly or indirectly arising out of, resulting from or related to Developer's negligence, willful misconduct or criminal conduct in Developer's activities under this Agreement, including any such acts or omissions of Developer, its Members, Managers, any agent, officer, director, representative, employee, consultant or subconsultants of Developer, and their respective officers, agents, employees, directors and representatives while in the exercise or performance of the rights or duties under this Agreement, all without, however, waiving any governmental immunity available to City under South Dakota law and without waiving any defenses of the parties under South Dakota law. The provisions of this INDEMNIFICATION are solely for the benefit of the parties hereto and not intended to create or grant any rights, contractual or otherwise, to any other person or entity. Developer will promptly advise City in writing of any claim or demand against City related to or arising out of Developer's activities under this Agreement and will see to the investigation and defense of such claim or demand at Developer's cost to the extent required in this paragraph. City will have the right, at its option and expense, to participate in such defense with attorneys of its choice, without relieving Developer of any of its obligations under this paragraph. Neither party shall be liable for incidental, indirect, special or consequential damages hereunder, even if advised of the possibility thereof.

**4.04    Liability.** Developer will be solely responsible for compensation and taxes payable to any employee or contractor of Developer, and none of Developer's employees or contractors will be deemed to be employees or contractors of City. No elected official, director, officer, employee, representative or agent of City shall be personally responsible for any liability arising out of or resulting from this Agreement.

**4.05    Taxes & Licenses.** Developer will pay, on or before their respective due dates, to the appropriate collecting authority all Federal, State, and local taxes and fees that are now or may hereafter be levied upon the TID Property or upon Developer or upon the business conducted on the TID Property, or upon any of Developer's property used in connection therewith, including employment taxes; and Developer shall maintain in current status all Federal, State, and local licenses and permits required for the operation of the business conducted by Developer.

5

**4.06    Examination of Records.** Developer will allow City to conduct examinations and makes copies, during regular business hours and following notice to Developer by City, of the books and records related to this Agreement no matter where books and records are located.

## Section 5. Term and Termination

**5.01    Term.** The term of this Agreement shall commence on the date the resolution approving this Agreement becomes effective and end on the date which is the *earliest* to occur of the following, at which time City's obligations hereunder will be deemed fully discharged:

> (i)    the date on which the amount payable under Section 2.01 has been paid in full to Watertown Development Company pursuant to an assignment by Developer of the amount payable under Section 2.01;

> (ii)    the date this Agreement is terminated as provided in Section 5.02; or

> (iii)    the 20th anniversary of the creation of the TID.

**5.02    Default and Termination.** If Developer fails to commence and complete construction substantially in accordance with the construction schedule detailed in Section 3.01(b) above, City may terminate this Agreement if Developer does not fully cure its failure within sixty (60) calendar days after receiving written notice from City requesting the failure be cured. If the Agreement is terminated as set forth in this Section, City's obligations under this Agreement will be deemed fully discharged.

## Section 6. Miscellaneous

**6.01    Non-Waiver.** Provisions of this Agreement may be waived only in writing. No course of dealing on the part of City, or Developer nor any failure or delay by City or Developer in exercising any right, power, or privilege under this Agreement shall operate as a waiver of any right, power or privilege owing under this Agreement.

**6.02    Entire Agreement.** This Agreement embodies the final and entire agreement between the parties hereto concerning the subject matter herein. The Exhibits attached to this Agreement are incorporated herein and shall be considered a part of this Agreement for the purposes stated herein, except that if there is a conflict between any such Exhibit and a provision of this Agreement, the provision of this Agreement will control.

**6.03    Amendments.** All amendments to this Agreement and the Project Plan may only be made in a writing executed by City and Developer, after obtaining all necessary approvals.

**6.04    Severability.** If any clause or provision of this Agreement is held invalid or unenforceable, such holding will not invalidate or render unenforceable any other provision hereof.

**6.05    Venue and Governing Law.** This Agreement shall be construed under and in accordance with the laws of the state of South Dakota. Any legal action or proceeding brought or maintained,

6

directly or indirectly, as a result of this Agreement shall be heard and determined in Codington County, South Dakota.

**6.06    Notice.** Any notice sent under this Agreement shall be written and mailed with sufficient postage, sent by certified mail, return receipt requested, documented facsimile or delivered personally to an officer of the receiving party at the following addresses:

<table>
<tr><td><u>City:</u></td><td><u>Developer:</u></td></tr>
<tr><td>City of Watertown<br>23 2nd St. NE | PO Box 910<br>Watertown, SD 57201</td><td>Parkside Place, LLC<br>1405 1st Ave N | PO Box 426<br>Fargo, ND 58102 (PO Box: 58107)</td></tr>
</table>

Any of the above parties may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates, or other communications may be sent.

**6.07    Assignment.** This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of Developer.

**6.08    Captions.** Captions used herein are only for the convenience of reference and shall not be construed to have any effect or meaning as to the agreement between the parties hereto.

IN WITNESS THEREOF, the parties hereto have caused this instrument to be duly executed as of the day and year first written above.

**PARKSIDE PLACE, LLC**                                    **CITY OF WATERTOWN**


Jesse Craig                                                          Sarah Caron, PE, CFM,
Managing Member                                               Mayor

ATTEST:


Kristen Bobzien
Finance Officer
(SEAL)

7

STATE OF SOUTH DAKOTA    )
                               : SS.
COUNTY OF CODINGTON    )

On this the 29 day of July, 2020, before me, the undersigned officer, personally appeared Sarah Caron and Kristen Bobzien, who acknowledged themselves to be the Mayor and Finance Officer, respectively, of the City of Watertown, a municipal corporation, and that they as such Mayor and Finance Officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the City of Watertown by themselves as Mayor and Finance Officer.

IN WITNESS THEREOF I hereunto set my hand and official seal.

(SEAL)

**Christine E. Dolney**
SEAL NOTARY PUBLIC SEAL
SOUTH DAKOTA

Notary Public – South Dakota
My Commission Expires: 3/10/2026

STATE OF SOUTH DAKOTA    )
                               : SS.
COUNTY OF CODINGTON    )

On this the 30th day of July, 2020, before me, the undersigned officer, personally appeared Jesse Craig, who acknowledged himself to be the Managing Member of Parkside Place, LLC, and that he as such Managing Member, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of Parkside Place, LLC, by himself as Managing Member.

IN WITNESS THEREOF I hereunto set my hand and official seal.

(SEAL)

NICOLE RISLOV
SEAL NOTARY PUBLIC SEAL
SOUTH DAKOTA

Notary Public – South Dakota
My Commission Expires: 2/10/2022

8

# EXHIBIT A

## RESOLUTION NO. 20-17

### A RESOLUTION TO PROVIDE FOR THE CREATION OF
### TAX INCREMENT DISTRICT NUMBER TWELVE

**WHEREAS,** the Planning Commission of the City of Watertown has held a public hearing on March 19th, 2020 and adopted and recommended the district boundaries and tax increment plan for Tax Increment District Number Twelve, City of Watertown, South Dakota and;

**WHEREAS,** the City Council of the City of Watertown, South Dakota (the "City"), has the powers, pursuant to SDCL 11-9-2, to create Tax Increment District Number Twelve, City of Watertown, South Dakota, and to define its boundaries.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF WATERTOWN, SOUTH DAKOTA:**

That pursuant to SDCL Chapter 11-9, the City Council hereby declares the following:

1. <u>Authority and Declaration of Necessity.</u> The City of Watertown, South Dakota, declares the necessity for the creation of Tax Increment District Number T, City of Watertown, (hereinafter sometimes referred to as the "District"), pursuant to SDCL Chapter 11-9. Further, the City finds that the improvements of the area within the District are likely to enhance significantly the value of substantially all of the other real property in the District and is necessary for economic development within the City for the construction and expansion of an existing manufacturer's building.

2. <u>Findings.</u> The City Council makes the following findings with regard to economic development:
    a. More than 50% of the property in the District by area will stimulate and develop the general economic welfare and prosperity of the City;
    b. Improvements to the District will significantly and substantially enhance the value of all property within the District;
    c. Development of the District will enhance sales tax revenue and create employment in the District;
    d. Development of the District will create an opportunity for a future development and employment once the improvements have been made.

3. <u>Findings of Maximum Percentage of Tax Increment Districts.</u> The aggregate assessed value of the taxable property in the District, plus all other tax increment districts, does not exceed ten percent (10%) of the total assessed valuation of the City.

4. <u>Creation of District.</u> There is hereby created, pursuant to SDCL Chapter 11-9, Tax Increment District Number Twelve, City of Watertown, South Dakota. The District is hereby created on the day this resolution becomes effective which shall be twenty (20) days after publication of this resolution.

5. <u>Designation of District Boundaries.</u> The District shall be located within the northern, southern, western and eastern boundaries of the following described real property:
    ALLEYS ADJ NORTHERLY, EASTERLY & SOUTHERLY TO LOTS 15-16 BLK 2 ORIGINAL PLAT & ALLEY ADJ EASTERLY TO LOT 7 J BENNETTS SUBD OF LOTS 17-18 BLK 2 ORIGINAL PLAT

6.  <u>Creation of Tax Increment Fund.</u>  There is hereby created, pursuant to SDCL 11-9-31, a Tax Increment District Number Twelve Fund, which shall be a segregated asset account.  All tax increments collected pursuant to Tax Increment District Number Twelve shall be deposited into the Tax Increment District Number Twelve Fund.  All funds in the Tax Increment District Number Twelve Fund shall be used solely for those purposes expressly stated and reasonably inferred in SDCL Chapter 11-9 and per the Developer's Agreement between the Developer and City of Watertown.

7.  <u>Adoption of Tax Increment Plan.</u>  The City Council of the City of Watertown does hereby adopt the Tax Increment Plan Number Twelve as presented.

Dated this 18th day of May, 2020

The above and foregoing Resolution was moved for adoption by Alderperson Holien, seconded by Alderperson Heuer, and upon voice vote motion carried, whereupon the Mayor declared the Resolution to be duly passed and adopted.

I hereby certify that Resolution No. 20-17 was published in the Watertown Public Opinion, the official newspaper of said City, on the 23rd day of May, 2020.

Kristen Bobzien, Finance Officer


ATTEST:

Kristen Bobzien
Finance Officer

CITY OF WATERTOWN

Sarah Caron, PE, CFM
Mayor

# EXHIBIT B

## City of Watertown, S.D.
## Tax Increment Financing District
## Plan No. 12

## PARKSIDE PLACE, LLC

## Prepared by:
## Traci Stein, CEDFP
## Watertown Development Company
## February 4, 2020

## Table of Contents

*Introduction, Summary, and Purpose* ........................................................................................... 4

*Project Plan Requirements – Contents as per SDCL § 11-9-13* ........................................... 7
    The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District; .......... 7
    Economic Feasibility Study .............................................................................................................. 7
    Detailed List of Estimated Project Costs ......................................................................................... 7
    Fiscal Impact Statement ................................................................................................................... 7
    Description of Methods of Financing ............................................................................................... 7

    **Additional contents of project plan. The project plan for each District shall also include SDCL § 11-9-16:** ............................................................................................................................... 7
    (1)  A map showing the existing uses and conditions of real property in the district; ........................ 7
    (2)  A map showing the proposed improvements and uses; ............................................................... 7
    (3)  A map showing the proposed changes of zoning ordinances; ..................................................... 7
    (4)  A statement listing changes needed in the master plan, map, building codes, and municipal ordinances; 7
    (5)  A list of estimated non-project costs; and ................................................................................. 7
    (6)  A statement of a proposed method for the relocation of persons to be displaced. ...................... 7

*Property Location of Tax Increment Financing District No. 12* ........................................... 8

*Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or Improvements Within the District SDCL 11-19-13(1)* ............................................................... 9

    **Capital Costs / Real Property Assembly Costs 11-9-15(1)** ................................................... 9
    Property, Right of Way and Easement Acquisition .......................................................................... 9
    Acquisition of Easements ................................................................................................................. 9
    Demolition ....................................................................................................................................... 9
    Site Grading ................................................................................................................................... 10
    Sanitary Sewer System Improvements ............................................................................................ 10
    Water System Improvements .......................................................................................................... 10
    Stormwater Management System Improvements .............................................................................. 10
    Electric Service .............................................................................................................................. 10
    Gas Service .................................................................................................................................... 10
    Communication Infrastructure ........................................................................................................ 10
    Street Improvements ...................................................................................................................... 11
    Streetscaping and Landscaping ...................................................................................................... 11

    **Financing Costs SDCL 11-9-15(2)** .................................................................................... 11

    **Professional Service Costs SDCL 11-9-15(4)** .................................................................... 11

    **Imputed Administrative Costs SDCL 11-9-15(5)** .............................................................. 11

    **Organizational Costs SDCL 11-9-15(7)** ............................................................................ 11

    **Environmental Audits and Remediation** ......................................................................... 11

*Maximum Amount of Tax Increment Revenue* .................................................................... 12

*Expenditures Exceeding Estimated Cost* ............................................................................. 12

    **Eligible Project Costs** ........................................................................................................ 12

*Schedule 2: Economic Feasibility Study* .............................................................................. 13
    Key Assumptions ........................................................................................................................... 13
    Analysis of Demand for New Housing ............................................................................................ 13
    Analysis of Demand for Future Retail Opportunities and Potential .................................................. 13
    Financing and Implementation ....................................................................................................... 14

*Schedule 3: Detailed List of Estimated Project Costs* ................................................................16

*Schedule 4: Fiscal Impact to Taxing Authorities* ......................................................................19

    **Definitions** ....................................................................................................................................19

    **Assumptions** .................................................................................................................................19

    **Estimated Captured Taxable Values** ......................................................................................20
        Estimated Impact of Tax Increment Financing on Revenues of Taxing Jurisdictions .......................20

*Taxable Value of City of Watertown* ...........................................................................................22

    **Maximum Percentage of Taxable Property in Municipality Permitted in District** .....................22

*Schedule 5: Method of Financing* .................................................................................................23

*Additional Contents of Project Plan as Required by SDCL 11-9-16(1)* ..................................24

    **Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)** .............................24

    **Existing Uses and Conditions, Continued** ............................................................................25

    **Proposed Improvements and Uses Map SDCL 11-9-16(2)** ..................................................26

    **Proposed Improvements** ..........................................................................................................27

    **Proposed Improvements, Continued** .....................................................................................28

    **Proposed Improvements, Continued** .....................................................................................29

    **Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)** ..............................................30

    **Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances SDCL 11-9-16(4)** ..............................................................................................................................31

*Estimated Non-Eligible Project Costs 11-9-16(5)* ......................................................................32

*Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)* ..33

*TIF District No. 12 Classification* .................................................................................................34

*Establishing Economic Development Purpose* .............................................................................35

    **Summary of Findings in Establishing Economic Development Purpose** ...............................36

*Required Findings in Resolution Creating District* ....................................................................37

    **Economic Development Analysis of City of Watertown TIF District No. 12** ......................37

*Definitions Used in This Plan* .......................................................................................................38

## Introduction, Summary, and Purpose

Tax increment financing (TIF) is an incentive utilized by local governments to attract private development and investment. New investment creates new jobs, more customers, and in turn, more investment opportunity. TIF can also retain existing businesses that might otherwise find more attractive options elsewhere. The jobs and additional investment, both private and public, mean more revenue for the community. TIF helps to overcome the extraordinary costs that often prevent redevelopment and private investment from occurring in difficult to develop areas of the community. As a result, the TIF District itself improves and property values increase.

In Watertown, TIF funding has been used for the following purposes: to encourage the redevelopment of deteriorated, or otherwise blighted real property; to stimulate economic development in the community by assisting projects that promote the long term economic vitality of Watertown; and, to stimulate increased private investment in areas that would have otherwise remained undeveloped or under-developed and which will, in the long term, provide a significant source of additional tax revenues to all taxing entities.



As set forth in South Dakota Codified Law, Chapter 11-9, a local government can designate a specific area within its boundaries as a redevelopment area appropriate for TIF district and prepare a plan for development. TIF projects must be approved by the City Planning Commission and the City Council.

The City of Watertown has been requested to assist in a major development project by creating a Tax Increment Financing District to fund a portion of eligible site improvements at property located at 8 2nd Street NE in downtown Watertown. The Watertown Development Company, later referred to throughout this document as "WDC", made the request on behalf of the owner, Parkside Place LLC., who plans to be the primary owner of the development property.

This Plan was prepared for adoption by the Watertown City Council in recognition that the renewal area requires a coordinated, cooperative strategy, with financing possibilities, to eliminate blight, prevent the spread of blight, and accomplish the City's development objectives for improving the continued viability of downtown Watertown.

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 12, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan.

By utilizing Tax Increment Financing, proceeds from anticipated increases in property taxes can be used to fund necessary and eligible improvements at the Project Site. The District is being created by the City of Watertown under the authority provided by SDCL 11-9 and will be designated as an "Economic Development District" based on SDCL 13-13-10.10 which defines Economic Development classification as "...any area where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the land contained within the tax increment financing district."

Tax Increment Financing District No. 12 is a proposed mixed-use of commercial and housing that will be created to pay the costs of public infrastructure, property acquisition, and other expenses needed to facilitate the construction of 3,803 square feet of retail/commercial space and 36 car tenant parking garage on the first floor, and 36 one-bedroom apartments total on the 2nd, 3rd, and 4th floors.

The Developer, Jesse Craig of Craig Development, LLC in Fargo, N.D. will construct the facility which is expected to result in over $5.1 million dollars in investment over a one-year timeframe and result in the creation and/or retention of up to 20 jobs. The development is estimated to produce an incremental valuation over $1.4 million dollars over the 20-year life of the TIF District. The owner of the project will be Parkside Place, LLC.

The Project Costs included in this Plan relate directly to promoting economic development in the District that are consistent with the purpose for which the District was created.

The driving interest in the establishment of this Plan is to offer Tax Increment Financing as a tool to stimulate and leverage private sector development. The development of commercial or industrial property which allows for the expansion of existing businesses, the expansion of the city workforce, the generation of additional sales tax to the state and city, are all essential governmental purposes and stimulate further economic development.

The primary objective of TIF District No. 12 is to provide improvements to an area in downtown Watertown to support new and existing commercial retail development and housing for professionals locating to northeast South Dakota. The development is expected to create jobs, fill professional positions for area employers, create and rehabilitate new infrastructure and site improvements which in turn are expected to enhance Watertown's ability to encourage future growth.

A combination of private investment and tax increment financing will assist in the progress toward the following objectives for the City of Watertown:
- To address and remedy conditions in the area that impair or arrest the sound growth of the City;

- To redevelop and rehabilitate the area in a manner which is compatible with and complementary to unique circumstances in the area;
- To effectively utilize undeveloped and underdeveloped land;
- To encourage the voluntary rehabilitation of buildings, improvements, and conditions;
- To improve areas that are likely to significantly enhance the value of substantially all property in the district, and
- To ultimately contribute to increased revenues for all taxing entities.

The development of commercial residential property which allows for the expansion of market rate housing, the generation of property tax in downtown Watertown, and the growth of the city's workforce is an essential governmental purpose and stimulates further economic development.

## Project Plan Requirements – Contents as per SDCL § 11-9-13

SDCL states that the planning commission shall adopt a project plan for each district and submit the plan to the governing body.

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 12, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan:

The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District; Included as Schedule 1 is the kind, number, and location of all proposed public works or improvements within the district SDCL § 11-9-13(1).

Economic Feasibility Study Included as Schedule 2 is an Economic Feasibility Study per SDCL § 11-9-13(2)

Detailed List of Estimated Project Costs Included as Schedule 3 is a detailed list of estimated Project Costs for the project as per SDCL § 11-9-13(3).

Fiscal Impact Statement Included as Schedule 4 is a Fiscal Impact Statement showing the impact of the Tax Increment Financing District upon all entities levying property taxes in the district. Required as per SDCL § 11-9-13(4).

Description of Methods of Financing SDCL § 11-9-13(5). Included as Schedule 5 is a description of the methods of financing all estimated project costs and the time when related costs or monetary obligations are to be incurred.

Additional contents of project plan. The project plan for each District shall also include SDCL § 11-9-16:

(1) A map showing the existing uses and conditions of real property in the district;
(2) A map showing the proposed improvements and uses;
(3) A map showing the proposed changes of zoning ordinances;
(4) A statement listing changes needed in the master plan, map, building codes, and municipal ordinances;
(5) A list of estimated non-project costs; and
(6) A statement of a proposed method for the relocation of persons to be displaced.

## Property Location of Tax Increment Financing District No. 12

The proposed location of the TIF District is in downtown Watertown, which is currently known as the County Fair Banquet Hall.

**Proposed Tax Increment Financing District No. 12 Location:**
8 2nd St N.E., Watertown S.D. 57201

**Legal Description:** *ALLEYS ADJ NORTHERLY, EASTERLY & SOUTHERLY TO LOTS 15-16 BLK2 ORIGINAL PLAT & ALLEY ADJ EASTERLY TO LOT 7 J BENNETTS SUBD OF LOTS 17-18 BLK 2 ORIGINAL PLAT*

**Total Assessed Value: $126,325**

### TIF 12 BOUNDARY MAP



## Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or Improvements Within the District SDCL 11-19-13(1)

Project costs are any expenditure made, estimated to be made, or monetary obligations incurred or estimated to be incurred as outlined in this Plan. Project Costs will be diminished by any income, special assessments or other revenues, including user fees or charges.

With all Project Costs, the costs of engineering, design, survey, inspection, materials, construction, restoring property to its original condition, apparatus necessary for public works, legal and other consultant fees, testing, environmental studies, permits, updating ordinances and plans, judgements or claims for damages and other expenses are included as Project Costs.

The following is a list of public works and other tax increment financing eligible costs that the Developer expects to make, or may need to make, in conjunction with the implementation of the District's Plan. The maps found in this document along with a Detailed List of Project Costs included as Schedule 3 of this Plan provide additional information as to the kind, number and location of potential Project Costs.

### Capital Costs / Real Property Assembly Costs 11-9-15(1)

Include the actual costs of the construction of public works or improvements, buildings, structures, and permanent fixtures; the demolition, alteration, remodeling, repair, or reconstruction of existing buildings, structures, and permanent fixtures; the acquisition of equipment; the clearing and grading of land; and the amount of interest payable on tax increment bonds issued pursuant to this chapter until such time as positive tax increments to be received from the district, as estimated by the project plan, are sufficient to pay the principal of and interest on the tax increment bonds when due;

### Property, Right of Way and Easement Acquisition

To facilitate development of the Project, the Developer will acquire property within the District. The cost of property acquired, and any costs associated with the transaction, are eligible Project Costs. Following acquisition, other Project Costs within the categories detailed in this Section may be incurred to make the property suitable for development. Any revenue received by the Developer from the sale of property acquired pursuant to the execution of this Plan will be used to reduce total Project Costs of the District. If Total Project Costs incurred by the Developer to acquire the property and make it suitable for development exceeded the revenues or other consideration received from the sale or lease of that property, the net amount shall be considered "real property assembly costs" as defined in SD 11-9-15(3)

### Acquisition of Easements

The Developer may need to acquire temporary or permanent easements to allow for installation and maintenance of streets, driveways, alleyways, utilities, stormwater management practices and other public infrastructure. Costs incurred by the Developer to identify, negotiate and acquire easement rights are eligible Project Costs.

### Demolition

To make the site suitable for development, the Developer will incur costs relation to demolition and removal of structures or other land improvements, to include abandonment of existing utility services.

## Site Grading

Land within the District may require grading to make it suitable for development, to provide access, and to control stormwater runoff. The Developer may need to remove and dispose of excess material or bring in fill material to provide for proper site elevations. Expenses incurred by the Developer for site grading are eligible Project Costs.

## Sanitary Sewer System Improvements

There may be inadequate sanitary sewer facilities serving the District. To allow development to occur, the Developer will need to construct, alter, rebuild or expand sanitary sewer infrastructure within and outside of District. Eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or expansion of collection mains; manholes and cleanouts; service laterals; force mains; interceptor sewers; pumping stations; lift stations; and all related appurtenances.

## Water System Improvements

There may be inadequate water distribution facilities servicing the District. To allow development to occur, the Developer will need to construct, alter, rebuild or expand water system infrastructure within the District. Eligible Project Cost include, but are not limited to, construction, alterations, rebuilding or expansion of distribution mains, manholes and valves, hydrants, service laterals, pumping stations, and all related appurtenances.

## Stormwater Management System Improvements

To manage stormwater runoff, the Developer will need to construct, alter, rebuild or expand stormwater management infrastructure within the District. Eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or expansion of stormwater collection mains, inlets, manholes and valves, service laterals.

## Electric Service

To create a site suitable for development the Developer may incur costs to provide, relocate, or upgrade electric services. Relocation may require abandonment and removal of existing poles or towers, installation of new poles or towers, or burying of overhead electric lines. Costs incurred by the Developer to undertake this work are eligible Project Costs.

## Gas Service

To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade gas mains and services. Costs incurred by the Developer to undertake this work are eligible Project Costs.

## Communication Infrastructure

To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade infrastructure required for voice and data communications, including, but not limited to: telephone lines, cable lines, and fiber optic cable. Costs incurred by the Developer to undertake this work are eligible Project Costs.

Street Improvements

There are inadequate street improvements serving areas of the District. To allow development to occur, the Developer may need to construct or reconstruct streets, access drives and parking areas. Eligible Project Costs include, but are not limited to: excavation; removal or placement of fill; construction of road base; asphalt or concrete paving or repaving; installation of curb and gutter; installation of sidewalks and bicycle lanes; utility relocation, to include burying overhead utility lines; street lighting; installation of traffic control signage and traffic signals; pavement marking; right-of-way restoration; installation of retaining walls; and installation of fences, berms, and landscaping.

Streetscaping and Landscaping

To attract development consistent with the objectives of this Plan, the Developer may install amenities to enhance the development site, right-of-way, and other public space. These amenities include but are not limited to: Landscaping; lighting of streets, sidewalks, parking areas and public areas; installation of planters, benches, clocks, tree rings, trash receptacles, and similar items; and installation of brick or other decorative walks, terraces and street crossings. These and any other similar amenities installed by the Developer are eligible Project Costs.

Financing Costs SDCL 11-9-15(2)

Interest expense, debt issuance expenses, redemption premiums, and any other fees and costs incurred in conjunction with obtaining financing for projects undertaken in this Plan are eligible Project Costs.

Professional Service Costs SDCL 11-9-15(4)

The costs of professional services rendered, and other costs incurred, in relation to the creation, administration and termination of the District, and the undertaking of the projects contained within this Plan, are eligible Project Costs. Professional services include but are not limited to architectural; environmental; planning; engineering; legal; audit; financial.

Imputed Administrative Costs SDCL 11-9-15(5)

The Developer may charge to the District as eligible Project Costs reasonable allocations of administrative costs, including, but not limited to, a City Administrative Fee.

Organizational Costs SDCL 11-9-15(7)

The Developer may charge to the District as eligible Project Costs the costs of informing the public with respect to the creation of the District and the implementation of the Plan.

Environmental Audits and Remediation

If it becomes necessary to evaluate any land or improvement within the District, any cost incurred by the Developer related to site surveys, environmental audits, soil boring testing and remediation are eligible Project Costs.

11

## Maximum Amount of Tax Increment Revenue

The maximum amount of tax increment revenue monetary obligations to be paid through Tax Increment Financing District No.12 shall be the amount sufficient to reimburse the Developer for the payments made for Project Costs and pay all other monetary obligations in an amount not to exceed the total tax increment revenue generated by the Tax Increment District in 20 years. At the time of the creation of the TIF District No. 12, the total amount of tax increment revenue estimated to be generated within 20 years is $1,466,470 million dollars. The final terms and conditions will be set forth in the Developer's Agreement.

## Expenditures Exceeding Estimated Cost

The Developer understands that any expenditures, which in sum would exceed the total estimated amount for Project Costs by 35% included within this Plan of $1,466,470 million dollars will require an amendment of this Plan. All amendments would be undertaken pursuant to SDCL §11-9-23.

SDCL §11-9-23 describes that if the Project Costs are not provided for in this Plan, the governing body would be required to amend the plan which requires the South Dakota Department of Revenue to re-determine the tax increment base when additional Project Costs are added to a plan.

## Eligible Project Costs

| Capital Costs | | | Total |
|---|---|---|---|
| Land, title, closing cost other land purchase cost | $ | 425,000.00 | |
| | $ | 8,750.00 | |
| Other Capital Cost as defined by SDLC 11-9-15 | | | |
| Demolition and Site Clearing | $ | 56,000.00 | |
| Clearing/Grading | $ | 108,000.00 | |
| Site Survey | $ | 5,000.00 | |
| Soil Borings | $ | 5,857.50 | |
| Testing & Inspections | $ | 35,000.00 | |
| | | $ | 643,607.50 |
| **Financing Costs** | | | |
| Interest expense | $ | 195,600.00 | |
| Financing fee, closing fees, legal, etc | | | |
| | | $ | 195,600.00 |
| **Professional Services Costs** | | | |
| A&E Fees | $ | 178,996.84 | |
| General Contractor / Developer Fee / Professional Services | $ | 455,992.09 | |
| General Conditions / Professional Services | $ | 89,800.00 | |
| | | $ | 724,788.93 |
| **Public Works Improvements** | | | |
| Paving and Sidewalks - City | $ | - | |
| Perimeter Safety (Site Fence) | $ | 17,724.00 | |
| | | $ | 17,724.00 |
| **Imputed Administrative Costs** | | | |
| Estimated City/administrative/municipal cost | $ | 5,000.00 | $ | 5,000.00 |
| | | Total Cost: $ | 1,586,720 |

12

## Schedule 2: Economic Feasibility Study

The table below establishes the current Base Value of the property located in the proposed TIF District No. 12 and estimated incremental tax revenue.

| | | | |
|---|---|---|---|
| Certified base assessed valuation | | | $126,325.00 |
| Estimated assessed value of improvements | | $ | 5,226,325 |
| Estimated total full and true valuation | | $ | 5,352,650 |
| Estimated assessed valuation calculated at | 85% | $ | 4,442,376 |
| Revenue estimates from tax increments | | | $1,466,470.84 |
| *refer to detailed spreadsheet | | | |
| Estimated total valuation in year 20 | | $ | 5,366,875 |
| (full and true value, 1% increase per year) | | | |

### Key Assumptions

For the purposes of this Plan, the Developer is projecting that the mixed-use development will be built and fully developed by year 2021.

### Analysis of Demand for New Housing

A Comprehensive Housing Market Study was done for Watertown, South Dakota conducted by Maxfield Research and Consulting, LLC in 2019. The study projects housing demand from 2019 through 2030 and provides recommendations on the amount and type of housing that could be built in Watertown to satisfy demand from current and future residents over the next decade.

The study identified a potential demand for about 2,100 new housing units through 2030. This demand will be generated by both new households and existing households based on changing demographic trends and housing preferences. Demand was divided between general-occupancy housing (65%) and age-restricted senior housing (35%). Because of the strong growth in the 55+ age cohort in Watertown and the market area, there will be strong demand for maintenance-free housing types; both for-sale and rental.

Although new rental housing has recently been completed in Watertown; the vacancy rate among all rental housing product types is only 2.6%; nearly 0% for affordable and subsidize rental housing and 3.4% for market rate housing. Therefore, there is pent-up demand for rental housing. The for-sale market is experiencing peak pricing today and supply is low across all price points for buyers. The current lot supply is able to meet demand in the short-term; but new lots need to be platted to accommodate future for-sale housing growth. Finally, the senior housing market has a vacancy rate of only 2.7% across all service levels; indicating pent-up demand for senior housing products.

### Analysis of Demand for Future Retail Opportunities and Potential

*Consumer Characteristics & Market Segmentation*

**Population growth may help drive new retail demand.** Major new housing development projects may lead to an increase in the town's population in the near future, which will help move the needle

13

in terms of retail potential.

**Two Major Consumer Segments.** The local consumer base is largely characterized by two dominant market segments: middle class and affluent (and generally older) households. Each presents unique opportunities, but the greatest potential is for businesses that cater to both markets such as restaurants and entertainment businesses.

**Commuters Represent Potential.** Watertown serves as an employment center in Northeast South Dakota and new retail may be supportable by these commuters, especially in areas close to major employers.

*Retail Leakage (Gap) Analysis*
**Area Residents are Shopping Outside of Town.** Based on information the WDC has received from a national retail study firm, retail spending by residents is occurring at least one-hundred miles, if not hundreds of miles outside of town and online, at retailers far enough away that it provides opportunity for new retail businesses to be successful in Watertown.

**Watertown is a Dining Destination.** The leakage analysis showed that spending at restaurants and bars in town (the largest component of the town's retail industry) far exceeds the expected spending from residents, which indicates a significant number of people from outside of town are patronizing these types of businesses in the town.

*Retail Opportunities & Potential*
**Potential to enhance downtown as a dining and entertainment destination.** There may be an opportunity for the town to build off its strength as a dining destination while catering to the two primary market segments in the town through new restaurants, bars, and entertainment businesses.

Capturing unmet spending potential may support up to several new businesses. Based on a five-year outlook, capturing retail leakage and unmet retail spending potential in Watertown could support one to two new clothing stores, two health and personal care stores, one "other general merchandise" store, one "miscellaneous" store retailer, and one gas station.

Financing and Implementation
It is assumed that all obligations incurred by the Developer would be adequately secured as to allow the payment of principle and interest when due from lenders involved in the project.

The City's role is to act as a conduit for the revenue and pass on all positive increment to the Developer to reimburse for their Project Costs, or up to 20 years, whichever comes first.

It is understood by the Developer that the estimated revenue from the TIF may not fully satisfy the Project Costs incurred within 20 years from the implementation of the TIF District. If there is a shortfall of revenue, the Developer understands that he will be responsible for satisfying any remaining costs.

In addition, if TIF Eligible Project Costs, in sum, exceed the total value set forth by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

14

## Schedule 3: Detailed List of Estimated Project Costs

The proposed development will begin construction in 2020 and is comprised of one building. In total, the project is expected to include an apartment building, retail space, and tenant parking garage. The total overall project costs are estimated to be $5,100,000.

| Bid Package | Contractor | Contract |
|---|---|---|
| General Conditions | | $ 80,800.00 |
| Testing & Inspections | By Owner | $ 35,000.00 |
| Construction Staking | 0 | $ 20,000.00 |
| Site Survey | Infastructure Design Group (Allowance) | $ 5,000.00 |
| Soil Borings | Northern Technologies | $ 5,857.50 |
| Building Demolition | Clausen Construction | $ 56,000.00 |
| Concrete | Limoges Construction | $ 389,000.00 |
| Concrete - Cold Weather Charges | 0 | $ 50,000.00 |
| Excavation | Clausen Construction | $ 108,000.00 |
| Concrete - Parking Deck Waterproofing Membrane | 0 | $ - |
| Precast Concrete - Materials / Erection | Gage Brothers | $ 489,000.00 |
| Gypcrete | Don Johnson Construction | $ 44,140.00 |
| Masonry | Ottertail Stucco and Stone | $ 344,200.00 |
| Steel - Erection | 0 | $ 1,200.00 |
| Misc. Metals | Red River Fabricating | $ 6,345.00 |
| General W & L Rough Carpentry Labor | 0 | $ 146,750.00 |
| General W & L Rough Carpentry Materials | 0 | $ 83,375.00 |
| General W & L - Finish Carpentry Labor | 0 | $ 58,500.00 |
| General Work & Labor - Finish Carpentry Materials | 0 | $ 19,500.00 |
| Millwork - Cabinets | Rusco Window Company | $ 59,805.00 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ 14,908.38 |
| Bathroom Vanities | By Owner (Allowance) | $ 11,700.00 |
| Wood Components / Trusses | 0 | $ 149,780.00 |
| Moisture Protections | Pro-Tec Roofing | $ 76,580.00 |
| Building Insulation | RL Drywall & Insulation | $ 105,000.00 |
| Exterior Insulation & Finish System | 0 | $ 60,000.00 |
| Metal Siding / Metal Panels | 0 | $ - |
| Sealants | 0 | $ 20,000.00 |
| Commercial Doors, Frames & Hardware | Central Door & Hardware | $ 89,816.00 |
| Residential Wood Doors & Frames | Central Door & Hardware | incl with 38A |
| Overhead Doors | Skold Specialty Contracting | $ 14,400.00 |
| Vinyl Windows | Rusco Window Company | $ 47,462.98 |
| Glass & Glazing | Fargo Glass & Paint | $ 66,760.00 |
| Drywall | RL Drywall & Insulation | $ 183,000.00 |
| Carpet | 0 | $ 48,000.00 |
| Painting / Staining | 0 | $ 76,006.00 |
| Fill Nail Holes | 0 | $ 8,000.00 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ 4,500.00 |
| Exterior Signage | By Owner (Allowance) | $ 2,000.00 |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ 2,394.12 |
| Ceiling Fans | By Owner (Allowance) | $ 4,680.00 |
| Closet Shelving | By Owner (Allowance) | $ 5,500.00 |
| Toilet/ Accessories | By Owner (Allowance) | $ 14,875.00 |
| Appliances & AC Units | Dugens | $ 104,500.00 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ 8,190.00 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ 5,733.00 |
| Bathroom Mirrors | By Owner (Allowance) | $ 3,510.00 |
| Window Treatments | By Owner (Allowance) | $ 1,275.00 |
| Conveying Systems | Thyssenkrupp Elevators | $ 104,500.00 |
| Building Sprinkler | Xtreme Fire Protection | $ 66,509.00 |
| Plumbing | 0 | $ 205,145.00 |
| HVAC | 0 | $ 115,600.00 |
| Electrical/Security System | 0 | $ 205,000.00 |
| Accrued Interest/Excise tax | 0 | $ 195,000.00 |
| Paving & Sidewalks | By City | By City |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | $ 17,724.00 |
| Site Utilities | By City | By City |
| Land | | $ 425,000.00 |
| **Total Bid Packages** | | **$ 4,474,920.88** |
| Construction Management | Craig Development | $ 85,000.00 |
| **Total Construction Bid Package Cost** | | **$ 4,559,920.88** |
| Architect/Engineer (4%) | TL Stroh | $ 178,996.84 |
| General Contractor/Developer Fee | Craig Development | $ 455,992.09 |
| **TOTAL CONSTRUCTION COST** | | **$ 5,194,909.80** |

| Capital Costs | | | Total |
|---|---|---|---|
| Land, title, closing cost other land purchase cost | $ | 425,000.00 | |
| | $ | 8,750.00 | |
| Other Capital Cost as defined by SDCL 11-9-15 | | | |
| Demolition and Site Clearing | $ | 56,000.00 | |
| Clearing/Grading | $ | 108,000.00 | |
| Site Survey | $ | 5,000.00 | |
| Soil Borings | $ | 5,857.50 | |
| Testing & Inspections | $ | 35,000.00 | |
| | | | $ 643,607.50 |
| **Financing Costs** | | | |
| Interest expense | $ | 195,600.00 | |
| Financing fee, closing fees, legal, etc | | | |
| | | | $ 195,600.00 |
| **Professional Services Costs** | | | |
| A&E Fees | $ | 178,996.84 | |
| General Contractor / Developer Fee / Professional Services | $ | 455,992.09 | |
| General Conditions / Professional Services | $ | 89,800.00 | |
| | | | $ 724,788.93 |
| **Public Works Improvements** | | | |
| Paving and Sidewalks - City | $ | - | |
| Perimeter Safety (Site Fence) | $ | 17,724.00 | |
| | | | $ 17,724.00 |
| **Imputed Administrative Costs** | | | |
| Estimated City/administrative/municipal cost | $ | 5,000.00 | $ 5,000.00 |
| | | **Total Cost:** $ | **1,586,720** |

The items listed above are estimated TIF Eligible Project Costs. The final total may be greater or smaller. The costs represent identified activities expected to be incurred for the development to occur and for which this TIF District and Project Plan is created.

Eligible expenses are intended to be expended as allowed by SDCL 11-9-32 by the Developer. The total TIF Eligible Costs are $1,586,720. The estimated Tax Increment Revenue is $1,466,470. The property payout is calculated to be 20 years. All obligations of the City are subject to creation of the District and the Development Agreement becoming effective.

If Eligible Project Costs, in sum, exceed the total value set forth above by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

The property included within TIF District No. 12 is currently assessed at $126,325. The improvements to be made to the property included within TIF District No. 12 are estimated to add $5,100,000 million dollars to the assessed valuation of the property within. The estimated annual tax increment is expected to be fully realized in tax year 2022 (payable in 2023) with a .01% annual escalator of value during the term of TIF District No. 12.

The information in the table below establishes an assessed full and true value of approximately $5,366,875 as of the estimated stabilized year of 2039 generating a total of $1,466,470 increment payable to TIF District No. 12.

17

| | | | |
|---|---|---|---|
| Certified base assessed valuation | | | $126,325.00 |
| Estimated assessed value of Improvements | | $ | 5,226,325 |
| Estimated total full and true valuation | | $ | 5,352,650 |
| Estimated assessed valuation calculated at | 85% | $ | 4,442,376 |
| Revenue estimates from tax Increments | | | $1,466,470.84 |
| *refer to detailed spreadsheet | | | |
| Estimated total valuation In year 20 | | $ | 5,366,875 |
| (full and true value, 1% increase per year) | | | |

| Construction Year | Valuation Year | Revenue Year | % completed | TAXABLE VALUATION | Base Value | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|
| 2020 | 2020 | 2021 | 0% | $126,325.00 | $2,157.18 | $0.00 |
| 2021 | 2021 | 2022 | 50% | $2,221,188.13 | $2,157.18 | $35,314.26 |
| 2022 | 2022 | 2023 | 100% | $4,442,376.25 | $2,157.18 | $72,785.71 |
| 2023 | 2023 | 2024 | 100% | $4,486,800.01 | $2,157.18 | $73,535.14 |
| 2024 | 2024 | 2025 | 100% | $4,531,668.01 | $2,157.18 | $74,292.06 |
| 2025 | 2025 | 2026 | 100% | $4,576,984.69 | $2,157.18 | $75,056.55 |
| 2026 | 2026 | 2027 | 100% | $4,622,754.54 | $2,157.18 | $75,828.69 |
| 2027 | 2027 | 2028 | 100% | $4,668,982.09 | $2,157.18 | $76,608.55 |
| 2028 | 2028 | 2029 | 100% | $4,715,671.91 | $2,157.18 | $77,396.21 |
| 2029 | 2029 | 2030 | 100% | $4,762,828.62 | $2,157.18 | $78,191.74 |
| 2030 | 2030 | 2031 | 100% | $4,810,456.91 | $2,157.18 | $78,995.23 |
| 2031 | 2031 | 2032 | 100% | $4,858,561.48 | $2,157.18 | $79,806.75 |
| 2032 | 2032 | 2033 | 100% | $4,907,147.10 | $2,157.18 | $80,626.39 |
| 2033 | 2033 | 2034 | 100% | $4,956,218.57 | $2,157.18 | $81,454.23 |
| 2034 | 2034 | 2035 | 100% | $5,005,780.75 | $2,157.18 | $82,290.34 |
| 2035 | 2035 | 2036 | 100% | $5,055,838.56 | $2,157.18 | $83,134.82 |
| 2036 | 2036 | 2037 | 100% | $5,106,396.94 | $2,157.18 | $83,987.74 |
| 2037 | 2037 | 2038 | 100% | $5,157,460.91 | $2,157.18 | $84,849.19 |
| 2038 | 2038 | 2039 | 100% | $5,209,035.52 | $2,157.18 | $85,719.25 |
| 2039 | 2039 | 2040 | 100% | $5,261,125.88 | $2,157.18 | $86,598.01 |
| *85% of Full and True Value | | | | | | $1,466,470.84 |

18

## Schedule 4: Fiscal Impact to Taxing Authorities

The fiscal impact statement is intended to provide an analysis of the estimated impact of the Tax Increment Financing District to the public pursuant to 11-9-13(4). It is not intended to rival the level of detail required by a detailed financial analysis. A fiscal impact statement shows the impact of TIF District No. 12 both until and after the obligations are repaid, upon all entities levying taxes upon property within the District.

During the reimbursement phase that can last up to twenty years from the date TIF District No. 12 is created, the anticipated .01% annual increase in taxes is expected to reimburse the Developer for Project Costs and is expected to have a positive fiscal impact on all entities levying taxes upon property in TIF District No. 12 after the District is dissolved.

### Definitions

*Assumptions* means factors or definitions used in the fiscal analysis. Assumptions may include facts and figures identified by the District and educated guesses that are sometimes necessary when not all of the information is available. Assumptions are often used to extrapolate an estimate. Assumptions may include an estimate of tax levies of each taxing entity, the school aid formula contribution, the value of the real property, etc.

*Base Revenue* means the taxes collected on the base value.

*Fiscal Impact* means the increase or decrease in revenues and generally refers to an impact to revenues caused by the District.

*Revenue* means ad valorem taxes.

*Tax Increment Financing District* means City of Watertown, Tax Increment Financing District No. 12.

*Taxing Districts* means all political subdivisions of the state which have ad valorem taxing power over property within the boundaries of the Tax Increment Financing District.

*Tax Increment Revenues* means all revenues above the Base Revenues.

### Assumptions

1. The property will have improvements which at completion will be valued for taxable purposes at $5,226,325 million dollars.
2. The average tax levy of all taxing districts will be $16.87 per $1,000 dollars of taxable valuation.
3. Tax increment will start to be collected in 2022 and end in 2040.
4. **The discretionary formula will be waived by the property owner.**

19

Estimated Captured Taxable Values

The tables below detail the tax capture implications to each of the local taxing jurisdictions. After the repayment of the monetary obligations, taxing entities will receive their proportionate share of tax dollars for the base value and the tax incremental values.

The following dollars per thousand are the current taxing rates of the local taxing jurisdictions for Non-AG Other property types.

| 2018 Payable in 2019 | Dollars Per $1,000 Assessed |
|---|---|
| City of Watertown (includes Event Center.313) | $2.47 |
| Codington County (includes EDWCD .024) | $3.11 |
| School District "Other" | $11.29 |
| **Total Tax Levy** | $16.87 |

| Construction Year | Valuation Year | Revenue Year | % completed | TAXABLE VALUATION | Base Value | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|
| 2020 | 2020 | 2021 | 0% | $126,325.00 | $2,157.18 | $0.00 |
| 2021 | 2021 | 2022 | 50% | $2,221,188.13 | $2,157.18 | $35,314.26 |
| 2022 | 2022 | 2023 | 100% | $4,442,376.25 | $2,157.18 | $72,785.71 |
| 2023 | 2023 | 2024 | 100% | $4,486,800.01 | $2,157.18 | $73,535.14 |
| 2024 | 2024 | 2025 | 100% | $4,531,668.01 | $2,157.18 | $74,292.06 |
| 2025 | 2025 | 2026 | 100% | $4,576,984.69 | $2,157.18 | $75,056.55 |
| 2026 | 2026 | 2027 | 100% | $4,622,754.54 | $2,157.18 | $75,828.69 |
| 2027 | 2027 | 2028 | 100% | $4,668,982.09 | $2,157.18 | $76,608.55 |
| 2028 | 2028 | 2029 | 100% | $4,715,671.91 | $2,157.18 | $77,396.21 |
| 2029 | 2029 | 2030 | 100% | $4,762,828.62 | $2,157.18 | $78,191.74 |
| 2030 | 2030 | 2031 | 100% | $4,810,456.91 | $2,157.18 | $78,995.23 |
| 2031 | 2031 | 2032 | 100% | $4,858,561.48 | $2,157.18 | $79,806.75 |
| 2032 | 2032 | 2033 | 100% | $4,907,147.10 | $2,157.18 | $80,626.39 |
| 2033 | 2033 | 2034 | 100% | $4,956,218.57 | $2,157.18 | $81,454.23 |
| 2034 | 2034 | 2035 | 100% | $5,005,780.75 | $2,157.18 | $82,290.34 |
| 2035 | 2035 | 2036 | 100% | $5,055,838.56 | $2,157.18 | $83,134.82 |
| 2036 | 2036 | 2037 | 100% | $5,106,396.94 | $2,157.18 | $83,987.74 |
| 2037 | 2037 | 2038 | 100% | $5,157,460.91 | $2,157.18 | $84,849.19 |
| 2038 | 2038 | 2039 | 100% | $5,209,035.52 | $2,157.18 | $85,719.25 |
| 2039 | 2039 | 2040 | 100% | $5,261,125.88 | $2,157.18 | $86,598.01 |
| *85% of Full and True Value | | | | | | $1,466,470.84 |

*Actual Taxable Valuation will depend upon the value determined by the Codington County Director of Equalization when assessed with the application of dollars-per-thousand from local taxes. All tax increment revenues shall be from Generally Applicable Taxes attributable to the improvements to be constructed in the TIF District. The potential for total increment collections are estimated to be at the maximum range of $1,466,470 covering a span of captured tax years not to exceed 20. Collection is anticipated to begin in 2022, and the schedule carries out the tax captured 20 years from the date of Plan adoption.

Estimated Impact of Tax Increment Financing on Revenues of Taxing Jurisdictions

The site will generate taxes to the local jurisdictions at or above the assessed value of the base. The tax increment will be available to the taxing jurisdictions at or before twenty years after the creation of the District.

20

Below is a table showing the estimated impact on each taxing entity during the duration of TIF District No. 12.

| Year | Projected Tax Increment | School District | County | City |
|------|------------------------|-----------------|--------|------|
| 2020 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2021 | $35,314.26 | $23,921.88 | $6,589.64 | $5,233.57 |
| 2022 | $72,785.71 | $49,305.04 | $13,581.81 | $10,786.84 |
| 2023 | $73,535.14 | $49,812.70 | $13,721.66 | $10,897.91 |
| 2024 | $74,292.06 | $50,325.44 | $13,862.90 | $11,010.08 |
| 2025 | $75,056.55 | $50,843.31 | $14,005.55 | $11,123.38 |
| 2026 | $75,828.69 | $51,366.35 | $14,149.63 | $11,237.81 |
| 2027 | $76,608.55 | $51,894.63 | $14,295.16 | $11,353.39 |
| 2028 | $77,396.21 | $52,428.19 | $14,442.13 | $11,470.12 |
| 2029 | $78,191.74 | $52,967.08 | $14,590.58 | $11,588.02 |
| 2030 | $78,995.23 | $53,511.37 | $14,740.51 | $11,707.09 |
| 2031 | $79,806.75 | $54,061.09 | $14,891.94 | $11,827.36 |
| 2032 | $80,626.39 | $54,616.32 | $15,044.88 | $11,948.83 |
| 2033 | $81,454.23 | $55,177.09 | $15,199.36 | $12,071.52 |
| 2034 | $82,290.34 | $55,743.48 | $15,355.38 | $12,195.43 |
| 2035 | $83,134.82 | $56,315.52 | $15,512.96 | $12,320.58 |
| 2036 | $83,987.74 | $56,893.29 | $15,672.11 | $12,446.98 |
| 2037 | $84,849.19 | $57,476.84 | $15,832.86 | $12,574.65 |
| 2038 | $85,719.25 | $58,066.22 | $15,995.21 | $12,703.59 |
| 2039 | $86,598.01 | $58,661.49 | $16,159.19 | $12,833.83 |
| | **$1,466,471** | **$993,387** | **$273,643** | **$217,331** |

All public-school districts are funded through the State Aid to Education Formula. The two primary channels of the formula are State Aid and Local Effort. Multiple agencies of the State of South Dakota calculate the amount of General Fund money to be distributed to school districts each year through the State portion. Local effort is considered the amount of revenue that is generated by local property taxes at maximum levies.

If a TIF is classified as Economic Development, Industrial or Affordable Housing, the school funding that would be generated by the increment valuation is considered lost local effort and is paid through the State Aid side of the formula.

City of Watertown TIF District No. 12 will be classified as Economic Development; therefore, any lost local effort will be funded through the State Aid to Education Formula.

## Taxable Value of City of Watertown

Maximum Percentage of Taxable Property in Municipality Permitted in District
The resolution required by SDCL § 11-9-7 shall contain a finding that the aggregate assessed value of the
taxable property in the district plus the tax increment base of all other existing districts does not exceed
ten (10) percent of the total assessed value of all taxable property in the municipality.

As confirmed with the Codington County Auditor, the 2019 Taxes Payable value for the City of
Watertown is $1,729,064,855.00. The base value of the taxable property for inclusion into this Tax
Increment Financing District No. 12, as estimated but not yet verified by S.D. Department of Revenue, is
$126,325.00.

Currently, there are eleven other active and inactive TIF Districts under the jurisdiction of the City of
Watertown, South Dakota. The total base value for all TIFs, including TIF District No. 12, is
$5,036,503.00.

| Tax Increment District | Base Value | Maturity |
|---|---|---|
| 1 | $84,064.00 | 2024 |
| 2 | $25,494.00 | 2024 |
| 3 | $33,117.00 | Dissolved |
| 4 | $0.00 | Dissolved |
| 5 | $496,156.00 | 2030 |
| 6 | $3,542,623.00 | 2029 |
| 7 | $123,142.00 | 2039 |
| 8 | $473,200.00 | 2039 |
| 9 | $490,590.00 | 2039 |
| 10 | $0.00 | 2039 |
| 11 | $119,673.00 | Not Active |
| 12 | $126,325.00 | Not Active |
| **TOTAL** | $5,514,384.00 | |

**City of Watertown Current Taxable Value: $1,729,064,855.00**
**All TIF Base Value must be less than 10%: $17,290,648.50**

The total current value of all active and inactive TIF Districts in the City of Watertown is $5,514,384.
Using the estimates provided for TIF District No. 12, the value of all existing Tax Increment Financing
Districts combined is less than 10% of the total 2019 Taxable Valuation.

22

## Schedule 5: Method of Financing

The payment of Project Costs is expected to be made by the City to the Developer from the special fund of the Tax Increment Financing District. SDCL 11-9-30(1). Pursuant to the Developer's Agreement, the City will pay to the Developer all Tax Increment Revenue it receives from the District to satisfy all project costs, of which, are never to exceed the amount of Tax Increment Revenue generated, or 20 years, whichever comes first.

There shall be no advances by the City of Watertown. The WDC may reimburse itself for administrative and professional costs from the tax increment.

TIF No. 12 is a site-specific TIF District. In this type of transaction, the local government (TIF issuer) provides a financing commitment to a Developer to pay up to a certain maximum amount of future TIF revenue, arising only from the Project itself.

Public-sector risk is extremely limited in this type of TIF District because the TIF funding commitment is only supported by a pledge of site-specific revenues to the extent they materialize. Therefore, if the Project is only partially completed and TIF revenues are less than projected, the developer will simply receive less in payments than originally hoped and be responsible for making up the shortfall.

23

## Additional Contents of Project Plan as Required by SDCL 11-9-16(1)

Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)
The property within the TIF District is currently not occupied. It was previously used as a banquet hall for events held by County Fair grocery store. The building on the property will be torn down and the site built up for development of the new Project.

### TIF 12 EXISTING USES AND CONDITIONS



May 13, 2020

1:1,128

Sources: Esri, HERE, Garmin, USGS, Intermap, INCREMENT P, NRCan, Esri Japan, METI, Esri China (Hong Kong), Esri Korea, Esri (Thailand), NGCC, (c) OpenStreetMap contributors, and the GIS User Community

Disclaimer: Map and parcel data are believed to be accurate, but accuracy is not guaranteed. This is not a legal document and should not be substituted for a title search, appraisal, survey, or for

24

Existing Uses and Conditions, Continued





Proposed Improvements and Uses Map SDCL 11-9-16(2)

The aerial map below shows the location at its current state, and to follow, pictures of the proposed improvements are provided.

### TIF 12 EXISTING USES AND CONDITIONS



May 13, 2020

Proposed Improvements





Proposed Improvements, Continued



IST FLOOR
SCALE:1/8"=1'-0"




2ND FLOOR
SCALE:1/8"=1'-0"

28

Proposed Improvements, Continued





3RD FLOOR





4TH FLOOR

29

Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)
The property within the TIF is currently zoned as C1.

The property is expected to be changed from C1 to C1-Conditional Use by the Board of Adjustments in
the near future. C1-Conditional Use supports the proposed development.

### TIF 12 ZONING MAP



May 13, 2020

1:1,128

0    35    70    140 ft
├──┼──┼──┤
0    10   20    40 m

Sources: Esri, HERE, Garmin, USGS, Intermap, INCREMENT P, NRCan,
Esri Japan, METI, Esri China (Hong Kong), Esri Korea, Esri (Thailand),
NGCC, (c) OpenStreetMap contributors, and the GIS User Community

Disclaimer: Map and parcel data are believed to be accurate, but accuracy not guaranteed. This is not a legal document and should not be substituted for a title search, appraisal, survey, or for

30

Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances
SDCL 11-9-16(4)

The Plan conforms to the City of Watertown's Comprehensive Land Use Plan for 2020. Proposed uses within the boundaries of TIF District No. 12 are allowed within the established zoning district, but further zoning will be required for conditional use.

Proposed structures and improvements within the boundaries of TIF No. 12 shall be in compliance with all applicable building, fire, and zoning codes of the City of Watertown.

31

## Estimated Non-Eligible Project Costs 11-9-16(5)

The total estimated non-eligible project costs are shown in the table below. TIF Eligible Project Costs are highlighted in yellow.

| Bid Package | Contractor | Contract |
|---|---|---|
| General Conditions | | $ 89,800.00 |
| Testing & Inspections | By Owner | $ 35,000.00 |
| Construction Staking | | $ 20,000.00 |
| Site Survey | Infrastructure Design Group (Allowance) | $ 5,000.00 |
| Soil Borings | Northern Technologies | $ 5,857.50 |
| Building Demolition | Clausen Construction | $ 96,000.00 |
| Concrete | Limoges Construction | $ 389,000.00 |
| Concrete - Cold Weather Charges | 0 | $ 50,000.00 |
| Excavation | Clausen Construction | $ 308,000.00 |
| Concrete - Parking Deck Waterproofing Membrane | 0 | $ - |
| Precast Concrete - Materials / Erection | Gage Brothers | $ 489,000.00 |
| Gypcrete | Don Johnson Construction | $ 44,140.00 |
| Masonry | Ostertag Stucco and Stone | $ 344,200.00 |
| Steel - Erection | 0 | $ 1,200.00 |
| Misc. Metals | Red River Fabricating | $ 6,145.00 |
| General W & L Rough Carpentry Labor | 0 | $ 146,750.00 |
| General W & L Rough Carpentry Materials | 0 | $ 83,375.00 |
| General W & L - Finish Carpentry Labor | 0 | $ 58,500.00 |
| General Work & Labor - Finish Carpentry Materials | 0 | $ 19,500.00 |
| Millwork - Cabinets | Rusco Window Company | $ 59,805.00 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ 14,908.28 |
| Bathroom Vanities | By Owner (Allowance) | $ 11,700.00 |
| Wood Components / Trusses | 0 | $ 149,780.00 |
| Moisture Protections | Pro-Tec Roofing | $ 76,580.00 |
| Building Insulation | RL Drywall & Insulation | $ 105,000.00 |
| Exterior Insulation & Finish System | 0 | $ 60,000.00 |
| Metal Siding / Metal Panels | 0 | $ - |
| Sealants | 0 | $ 20,000.00 |
| Commercial Doors, Frames & Hardware | Central Door & Hardware | $ 89,816.00 |
| Residential Wood Doors & Frames | Central Door & Hardware | Incl with 38A |
| Overhead Doors | Skold Specialty Contracting | $ 14,450.00 |
| Vinyl Windows | Rusco Window Company | $ 47,462.98 |
| Glass & Glazing | Fargo Glass & Paint | $ 66,760.00 |
| Drywall | RL Drywall & Insulation | $ 183,000.00 |
| Carpet | 0 | $ 48,000.00 |
| Painting / Staining | 0 | $ 76,000.00 |
| Fill Nail Holes | 0 | $ 8,000.00 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ 4,500.00 |
| Exterior Signage | By Owner (Allowance) | $ 2,000.00 |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ 2,394.12 |
| Ceiling Fans | By Owner (Allowance) | $ 4,680.00 |
| Closet Shelving | By Owner (Allowance) | $ 5,500.00 |
| Toilet/ Accessories | By Owner (Allowance) | $ 14,875.00 |
| Appliances & AC Units | Dugens | $ 104,500.00 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ 8,190.00 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ 5,733.00 |
| Bathroom Mirrors | By Owner (Allowance) | $ 3,510.00 |
| Window Treatments | By Owner (Allowance) | $ 1,275.00 |
| Conveying Systems | Thyssenkrupp Elevators | $ 104,500.00 |
| Building Sprinkler | Xtreme Fire Protection | $ 66,599.00 |
| Plumbing | 0 | $ 205,145.00 |
| HVAC | 0 | $ 115,600.00 |
| Electrical/Security System | 0 | $ 205,000.00 |
| Accrued Interest/Excise tax | 0 | $ 195,600.00 |
| Paving & Sidewalks | By City | By City |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | $ 17,724.00 |
| Site Utilities | By City | By City |
| Land | | $ 425,000.00 |
| Total Bid Packages | | $ 4,474,920.88 |
| Construction Management | Craig Development | $ 85,000.00 |
| Total Construction Bid Package Cost | | $ 4,559,920.88 |
| Architect/Engineer (4%) | TL Stroh | $ 178,996.84 |
| General Contractor/Developer Fee | Craig Development | $ 455,992.09 |
| TOTAL CONSTRUCTION COST | | $ 5,194,909.80 |

## Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)

Pursuant to SDCL 11-9-16 (6), a statement of a proposed method for the relocation of persons to be displaced needs to be provided.

The property is a commercial building that hosts events. There are no families or persons residing in the Proposed District and therefore no relocation plan is needed.

## TIF District No. 12 Classification

Mechanisms are built within State Codified Law to ensure that school districts are held harmless by TIF districts for their General and Special Education Funds. For these purposes, law (SDCL 13-13- 10.10) defines four classifications of Tax Increment Financing Districts:

- **Economic Development** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Economic Development TIF district is not considered in the state-aid to education formula.

- **Industrial** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Affordable Housing** – During the 2018 Legislative Session, the legislature created a fourth TIF district classification for Affordable Housing. The criteria for an Affordable Housing TIF are as follows:
  (1) The original selling price of any house in the district will be at or below the first-time homebuyer purchase price limit being used by the South Dakota Housing Development Authority as of the date the house is sold; or
  (2) The monthly rental rate of all multifamily housing units in the district will be at or below the calculated rent for the state's eighty percent area median income, being used by the South Dakota Housing Development Authority, as of the date the TIF district is created, for a minimum of five years following the date of first occupancy.
  This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Local** – Local TIF Districts are not presently defined in statute. Rather, local classification is the default classification. Unless the TIF district meets the definition of an Industrial, Economic Development, or Affordable Housing TIF district, it is a Local TIF district. For further clarification, in this classification, the project usually benefits the local government instead of having a regional or statewide benefit. Unlike the other classifications, the assessed value of a Local TIF District for purposes of the state-aid-formula is the total assessed value of the district. The County Auditor is required to impose an additional school levy on all real property within any impacted school district to hold the district(s) harmless.

TIF District No. 12 is expected to be classified as **Economic Development**; therefore, this classification is exempt from the provisions of SDCL § 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Economic Development TIF district is not considered in the state-aid to education formula.

34

## Establishing Economic Development Purpose

South Dakota law describes economic development as activity that stimulates and develops the general economic welfare and prosperity of the state through the promotion and advancement of industrial, commercial, manufacturing, agricultural, or natural resources. The definition of Economic Development for State Aid to Education Formula purpose is any area where there is or will be one or more businesses engaged in any activity defined as commercial or industrial.

The area within the boundaries of TIF District No. 12 to be developed will include a mixed-use commercial building that will include 3,803 square feet of retail space, private parking, and 36 one-bedroom apartment units. The development is expected help the Region realize new opportunities for growth and attract more workforce talent for the Region's employers.

The project will lie within the following area:
**Physical Address:** 8 2nd Street NE Watertown S.D. 57201
**Legal Description:** *ALLEYS ADJ NORTHERLY, EASTERLY & SOUTHERLY TO LOTS 15-16 BLK2 ORIGINAL PLAT & ALLEY ADJ EASTERLY TO LOT 7 J BENNETTS SUBD OF LOTS 17-18 BLK 2 ORIGINAL PLAT*

The Project is expected to expand the city's presence, increase workforce, and is projected to bring an annual economic impact to the Region.

The Project is expected to be completed by the middle of Calendar Year 2021. The Project Costs relate directly to promoting economic development in the District consistent with the purpose for which the District is created.

35

Summary of Findings in Establishing Economic Development Purpose

Below, the WDC has provided a "But For" analysis of the project. SDCL does not require that a "But For" analysis be met before a TIF Plan can be approved, however, this type of analysis is strongly recommended as it helps to answer questions about the transformative nature of the project and the goals and objectives of the community in relation to using TIF.

As documented in this Plan and the attachments contained and referenced herein, the following findings are made:

**1. That "But For" the creation of this District, the development projected to occur as detailed in this Plan: 1) would not occur; or 2) would not occur in the manner, at the values, or within the timeframe desired by the Developer.** In reaching this determination, the WDC has considered that in making the area within the District suitable for development, the Project will require a substantial investment to pay for the costs of: acquisition, demolition and clean-up of the property, installation and rehabilitation of utilities; professional, legal and financing costs and other expenses. Due to the extensive initial investment needed to allow the Project to occur, the Developer has determined that development of the area as proposed will not occur solely from private investment.

Accordingly, the Developer finds that absent the use of Tax Increment Financing, the Project as proposed would not proceed.

**2. The economic benefits of the Tax Increment Financing District, as measured by increased employment, attraction of professional workforce to the Region, business and personal income, and property value, are sufficient to compensate for the Project Costs incurred.** In making this determination, the WDC has considered the following:

Analysis prepared by the WDC projects that the anticipated economic benefits to be realized within Watertown, Codington County, and Northeast South Dakota are as follows:

- An estimated $5.1 million dollars of capital investment to construct and equip the building and develop private parking.
- Employment of up to 20 retail workers once the Project is fully operational.
- The attraction of additional workforce for the Region.
- Additional effects include indirect effects of the Developer purchasing from area, and suppliers and induced effects of employee households spending locally for goods and services from retailers, restaurants, and service companies.

It is expected that once the improvements within the Project Plan are made, they will enhance significantly the value of it and other real property surrounding the district.

It is noted that some local governments apply standards to determine the level of TIF assistance to be provided to a project. This would include TIF set at a fixed percentage of total project costs, a percentage of the total TIF revenue the project is anticipated to produce, a uniform amount of TIF assistance per job created, or matching the TIF amount to the developer's equity contribution. However, these types of benchmarks do not adequately take into account changing market and financial conditions or the unique nature of redevelopment projects in disinvested and blighted areas.

36

## Required Findings in Resolution Creating District

Economic Development Analysis of City of Watertown TIF District No. 12

The City of Watertown has been approached concerning the creation of a tax increment financing district (TIF District) located within the City limits. Per South Dakota Codified Law 11-9-8, the Governing Body must make a finding that at least 25% of the real property within the district to be blighted or at least 50% of the real property in the district will be developed for economic development purposes and the improvement will significantly enhance the value of all other real property in the district.

Tax Increment Financing District No. 12 is a proposed mixed-use of commercial and housing that will be created to pay the costs of public infrastructure, property acquisition, and other expenses needed to facilitate the construction of 3,803 square feet of retail/commercial space on the first floor, 36 one-bedroom apartments total on the 2nd, 3rd, and 4th floors, and 36 tenant parking spaces on the first floor.

The investment of about $5.1 million dollars will stimulate and develop the general economic welfare and prosperity of the State through the promotion of employment and advancement of commerce during the construction period. Upon completion, the Project is expected to enhance the Region by creating additional jobs, fill various open professional positions that are available in the Region, and housing for professionals, having a substantial annual economic impact to the Region and state.

Therefore, it is found that not less than 50%, by area, of the real property within the District will stimulate and develop the general economic welfare and prosperity of the State of South Dakota through the promotion and advancement of industrial, commercial, manufacturing, agricultural, and natural resources. It is also found that the improvement of the area is likely to enhance significantly the value of all real property in the District in accordance with SDCL 11-9-8.

37

## Definitions Used in This Plan

The following terms found in this Plan are defined as the following:

**Base Value or Tax Incremental Base Value** means the aggregate assessed value of all taxable property located within a Tax Incremental District on the date the District is created, as determined by SDCL 11-9-20.

**Blighted** means property that meet any of the criteria as defined and established by SDCL 11-9-9.

**Developer** means any individual or entity responsible for carrying out any portion of the projects listed in the TIF Plan, including both expenses considered eligible for TIF reimbursement and any other costs associated with private projects within the plan. In this Plan, the Developer is Craig Development, LLC.

**Developer Project Developer Agreement** means any agreement which is binding between the City and one or more Developers and which specifies the duties, responsibilities, and obligations of all parties relative to the implementation of this plan. The agreement commits the Developer to complete listed projects and commits the City to payments of tax increment revenues to the developer(s), among other items. The agreement can include contingency and performance revisions.

**Economic Development** means all powers expressly granted and reasonable inferred pursuant to SDCL 9-54.

**Generally Applicable Taxes** means taxes that have a uniform rate that is applied to all persons of the same classification in the appropriate jurisdiction, and the tax has a generally applicable manner of determination and collection.

**Governing Body** means the Watertown, S.D. City Council.

**Plan** means this Project Plan.

**Planning Commission** means the City of Watertown S.D. Planning Commission.

**Project Costs** means any expenditure or monetary obligations by the City of Watertown, whether made, estimated to be made, incurred or estimated to be incurred, which are listed as project Costs herein will include any costs incidental thereto but diminished by any income, special assessments, or other revenues, other than tax increments, received, or reasonably expected to be received, by the City of Watertown in connection with the implementation of this Plan.

**Project Plan** refers to this plan.

**Project Site** means the location of the project.

**Public Works** means the Infrastructure Improvements, the acquisition by purchase or condemnation of real and personal property within the Tax Increment District and the sale, lease, or other disposition of such property to private Individuals, partnerships, corporations, or other entities at a price less than the

38

cost of such acquisition which benefit or further the health, safety, welfare, and economic development of the City and Project Costs.

**SDCL** means South Dakota Codified Law.

**Taxable Property** all real taxable property located in a Tax Incremental District.

**Tax Increment District** a contiguous geographic area within the City of Watertown defined and created by resolution of the governing body and named "City of Watertown Tax Increment Financing District Number Twelve" (TIF No.12).

**Tax Increment Valuation** is the total value of the Tax Increment Financing District minus the tax incremental base pursuant to 11-9-19.

**TIF Note** the developer uses a future pledge of TIF revenues from a local government to convince a construction lender to provide additional funding for the project and obligates the local government to pay TIF funds to the developer if certain conditions (i.e., project completion and availability of tax revenues) are met. The lender treats the TIF Note as additional collateral over and above the value of the real estate project during the underwriting and sizing of the construction Note. The lender's rights to the TIF proceeds and the mortgage on the property "cross collateralize" each other.

**TIF Plan** refers to this project plan.

**All other definitions in SDCL 11-9 shall apply.**