## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>GENERATIONS ON 1ST, LLC,<br><br>Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>PARKSIDE PLACE, LLC,<br><br>Debtor. | Case No.: 25-30003<br><br>Chapter 11 |

### OBJECTION OF RED RIVER STATE BANK TO DEBTORS' SIXTH MOTION FOR LEAVE TO USE CASH COLLATERAL

#### INTRODUCTION

Red River State Bank ("RRSB"), by and through the undersigned counsel, hereby objects (the "Objection") to the Sixth Motion for Leave to Use Cash Collateral (the "Motion") filed by Debtor Generations on 1st, LLC ("Generations") and Debtor Parkside Place, LLC ("Parkside") (collectively, the "Debtors"). ECF No. 277. In support, RRSB states as follows:

#### BACKGROUND

**I.   Generations Collateral**

The amount due to RRSB from Generations is evidenced by the following outstanding Promissory Notes:

      a.    Promissory Note dated April 17, 2023, in the original principal sum of $8,100,000.00 ("Eighth Generations Note"). Generations ECF No. Claim 1 Part 2, Ex. H; and

4935-8468-1861 v.5

  b.  Promissory Note dated April 17, 2023, in the original principal sum of $561,365.10 ("Ninth Generations Note"). Generations ECF No. Claim 1 Part 2, Ex. I.

(hereinafter, collectively, the "Generations Notes").

RRSB's claim is further evidenced by the following promissory notes, all of which were executed and delivered by Mulinda Craig (collectively, the "Mulinda Notes"):

  a.  Promissory Note dated April 26, 2021 in the original principal sum of $1,477,500.00 ("First Mulinda Note") Generations ECF No. Claim 1 Part 2, Ex. J.

  **b.**  Promissory Note dated May 27, 2021 in the principal sum of $1,321,100.00 ("Second Mulinda Note") Generations ECF No. Claim 1 Part 2, Ex. K.

  c.  Promissory Note dated June 22, 2021 in the principal sum of $1,652,500.00 ("Third Mulinda Note") Generations ECF No. Claim 1 Part 2, Ex. L.

(hereinafter, collectively, the "Mulinda Notes").

The Generations Notes and Mulinda Notes are secured by a mortgage (the "First RRSB Mortgage") on Generations' real property located at 26 1st Ave. SW, Watertown, SD 57201 (the "Generations Real Property"). The First RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 7262 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 3, 2021, at 10:09 a.m. Generations ECF No. Claim 1 Part 2, Ex. Q.

RRSB's claim against Generations is further secured by an Assignment of Rents (the "Generations AOR") with respect to the Generations Real Property. The Generations AOR was properly executed, acknowledged, and recorded in Book 992 on Page 154 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on May 5, 2023, at 10:12 a.m. Generations ECF No. Claim 1 Part 2, Ex. S.

2

4935-8468-1861 v.5

RRSB began enforcement of its assignment of rents set forth in both the RRSB Mortgage and the Generations AOR in February 2024 by sending notice to Generations and to all known tenants of the Generations Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the Generations Real Property via an Order Appointing Receiver in the state court action of *RRSB v. Generations et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota. Generations ECF No. Claim 1 Part 2, Ex. T.

## II.     Parkside Collateral

The amount due to RRSB from Parkside is evidenced by a Promissory Note dated as of December 13, 2021, in the original principal amount of $4,200,000 (the "Parkside Note"). Parkside Proof of Claim No. 1, Part 2, Ex. A.

The Parkside Note and the Mulinda Notes are secured by a mortgage (the "Parkside Mortgage") on Parkside's real property located at 82nd St. NE, Watertown, SD 57201 (the "Parkside Real Property"). The Parkside Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 8073 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:11 a.m. Parkside ECF No. Claim 1 Part 2, Ex. I.

RRSB's claim against Parkside is further secured by an Assignment of Rents (the "Parkside AOR") with respect to the Parkside Real Property. The Parkside AOR was properly executed, acknowledged, and recorded in Book 990 on Page 8076 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021, at 10:14 a.m. Parkside ECF No. Claim 1 Part 2, Ex. J.

3

RRSB began enforcement of its assignment of rents set forth in both the Parkside Mortgage and the Parkside AOR in February 2024 by sending notice to Parkside and to all known tenants of the Parkside Real Property. On or about October 1, 2024, a receiver was appointed to take possession of the rents and manage the Parkside Real Property via an Order Appointing Receiver in the state court action of *RRSB v. Parkside et al.*, Circuit Court, County of Codington, Third Judicial Circuit, State of South Dakota. Parkside ECF No. Claim 1 Part 2, Ex. K.

## LAW AND ARGUMENT

Under Section 363, a debtor in possession may only use cash collateral: (a) with the consent of the secured creditor, or (b), after notice and a hearing, through order of the court. 11 U.S.C. § 363(c)(2). Because RRSB has not consented beyond January 15, 2026, Debtors may only use cash collateral "in accordance with the provisions of" Section 363. Debtors admit Section 363 requires it to pay RRSB "adequate protection" for the use of cash collateral in which RRSB possesses an interest. *See* 11 U.S.C. § 363(e).

In turn, Section 361 provides three alternative means for providing adequate protection. *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985). Adequate protection may be provided by:

(1) Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

4

> (3) Granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

What constitutes adequate protection for use of cash collateral must be determined on a case-by-case basis. *See In re Martin*, 761 F.2d at 476. To encourage reorganization, the courts must be flexible in applying the adequate protection standard. *Id*. This flexibility, however, must not operate to the detriment of the secured creditor's interest. *Id.* In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *Id.* at 476-77. Furthermore, if a secured creditor holds both a mortgage securing debt on property and a perfected security interest in rents derived from the property, like RRSB does in this case, such creditor has two distinct and constitutionally-protected property interests which must be considered and adequately protected as a condition of permitting a debtor-in-possession to use such creditor's post-petition rents as cash collateral. *See In re Apple Tree Partners, L.P.*, 131 B.R. 380, 400 (Bankr. W.D. Tenn. 1991).

A debtor in possession has the duty to protect and conserve the property in its possession for the benefit of the creditors. *Matter of Halux, Inc.*, 665 F.2d 213, 216 (8th Cir. 1981); *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (A debtor-in-possession must act as a fiduciary of his creditors to protect and conserve property

5

4935-8468-1861 v.5

in his possession for the benefit of the creditors and to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization of the business). Section 345(b) of the Bankruptcy Code mandates, among other things, that debtors and trustees deposit or invest estate money so as to safeguard the money for the benefit of the debtor's creditors. *In re Ditech Holding Corp.*, 605 B.R. 10, 15 (Bankr. S.D.N.Y. 2019).

In this case, Debtors argue that RRSB is adequately protected if RRSB receives: (i) automatically perfected replacement liens to the extent of any diminution; (ii) $19,266.67 per month from Parkside; and (iii) $39,666.67 per month from Generations. *See* ECF No. 277. Debtors' proposal is insufficient to constitute adequate protection for RRSB.

### A. Replacement Liens are an Illusory Form of Adequate Protection in this Case.

First, Debtors' proposal to give RRSB replacement liens provides no additional protection whatsoever if the Debtors are permitted to spend down RRSB's post-petition rents under a cash collateral order. Recall, RRSB's claims are secured by prepetition liens on all Parkside and Generations Real Property and AOR. Pursuant to § 552(b), RRSB already has a perfected security interest in post-petition rents. Unless the Debtors intended to offer new unencumbered assets to RRSB, such as pledging the Debtors' Chapter 5 claims, the Debtors have no new collateral to which a replacement lien could attach. Put simply, an offer of "replacement liens" does not give RRSB something that it doesn't already have and thus, it cannot constitute adequate protection to RRSB for allowing the Debtors to spend down its cash collateral during the pendency of this case.

### B. If the Secured Debt is Negatively Amortized During the Pendency of these Cases, the Secured Creditor's Risk of Loss is Compounding.

Second, Generations' and Parkside's proposed monthly cash payments are too low to provide adequate protection to RRSB. To evaluate the adequacy of a proposed monthly

6

payment, RRSB respectfully submits Debtors must pay an amount equal to the accrued interest due on the debt as it accrues during the pendency of the case. For example, the Generations Notes are currently accruing interest at a rate of $1,482.16 per diem. To pay interest only on the Generations Notes, the monthly payment to RRSB – just to maintain the current level of indebtedness as of the Petition Date – Generations must pay $44,464.80 per month. By contrast, the Motion proposes that Generations' monthly payment should be only $39,666.67. Debtor bears the burden of providing adequate protection, yet Generations has provided absolutely no explanation or support for why it should be permitted to pay 10% less than the actual accrued interest due on the Generations Notes. By simple math, the court could ascertain the extent to which RRSB would be damaged by the pendency of these cases – almost $5,000 per month. If a debtor in possession can only "cash flow" by negatively amortizing its debt while its case is pending, RRSB respectfully submits that such debtor has failed to "*insure* that the secured creditor receives the value for which he bargained," as the Eighth Circuit clearly required for a finding of adequate protection. *In re Martin*, 761 F.2d at 474 (emphasis in original).

Parkside's proposal to pay $19,266.67 per month to Creditor also fails to adequately protect RRSB. The Parkside Note is currently accruing interest at a rate of $454.28 per diem. The First, Second and Third Mulinda Notes are currently accruing interest at a rate of $159.14 per diem, $235.26 per diem, and $294.28 per diem, respectively. For Parkside to pay interest only as it accrues on the Parkside and Mulinda Notes, Debtor would have to pay RRSB $1,142.96 per diem, or $34,288.80 in interest per month during the pendency of its case. Pursuant to stipulation only, Parkside has paid $19,266.67 per month in adequate protection to RRSB. [ECF No. 248 at p. 5]. But, absent the consent of the secured lender, this payment does

not constitute adequate protection as a matter of law. Again, RRSB respectfully submits that the pendency of the Parkside case will increase RRSB's losses due to Parkside's failure to pay the full amount of interest as it comes due. This is not indubitable equivalence. Again, by simple math, RRSB can demonstrate its losses associated with Debtors' proposed monthly payments. Accordingly, Parkside has failed to meet its burden to prove adequate protection, and the Motion should be denied until Debtors can at least pay accrued interest on the Notes.

      **C.    Excessive Transfers to Insiders Under the Cash Collateral Budget Represent a Dollar-for-Dollar Diminution of RRSB's Cash Collateral.**

Third, RRSB has previously expressed concerns about line items in the cash collateral budget that permit excessive post-petition payments to insiders during the pendency of these cases. In the bankruptcy context, adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property. *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985). CP Business Management, Inc. and other insiders are currently permitted by stipulation to request reimbursement of certain expenses under $250. [ECF No. 248 at p. 9]. However, the MOR for the month of November indicates the Parkside estate paid Jesse Craig $1,755.00 on November 3, 2025, and paid CP Business Management, Inc. $4,435.10 on November 18, 2025. [ECF No. 251-1 at p. 6]. The Parkside estate also has outstanding checks to Jesse Craig for $1,755.00 and CP Business Management, Inc. for $5,896.33. [ECF No. 251-1 at p. 11].

Similarly, the Generations estate paid Jesse Craig $3,285.00 on November 3, 2025, and paid CP Business Management, Inc. $8,491.01 on November 18, 2025. [ECF No. 250-1 at pp. 10-11]. The Generations estate also has outstanding checks to Jesse Craig for $3,285.00 and CP Business Management, Inc. for $9,579.89. [ECF No. 250-1 at p. 16]. These charges are more than double the amount paid to the prepetition receiver for comparable property

8

management services. Additionally, the inclusion of "offsite" rent and utilities raise questions about whether the insiders are allocating part of their general overhead to the Debtors' estates each month. Counsel for RRSB has asked for clarification about the management fees. To date, the Debtors have not resolved such concerns, nor have the insiders agreed to reduce their management fees to a market rate. Excessive payments to insiders constitute a dollar-for-dollar reduction in the value of RRSB's cash collateral. RRSB will not consent, and this Court should not authorize the Debtors to use RRSB's cash collateral unless Debtors reduce payments to insiders under the cash collateral budget. Without adequate controls for such losses, the Motion should be denied.

>    **D.    Substantial Cash Collateral is Trapped in Debtors' DIP Accounts to RRSB's Detriment, With No Corresponding Benefit to the Estate.**

Lastly, RRSB is concerned that excessive cash collateral continues to be held in Debtors' checking accounts ("DIP accounts"). Again, RRSB's claims are secured by prepetition liens on all Parkside and Generations Real Property and AOR.

The most recent MOR for Generations indicates that $143,753.07 in cash is being held in Generations' DIP account. [ECF No. 250 at p. 2]. The most recent MOR for Parkside indicates that $118,546.68 in cash is being held in Parkside's DIP account. [ECF No. 251 at p. 2]. While Debtors are each holding more than $100,000 in cash in their respective DIP accounts, Debtors have refused to even pay the accruing interest on the Generations Notes, Parkside Note, or Mulinda Notes. Debtors have a duty to protect and conserve RRSB's cash in their possession for the benefit of RRSB. Debtors have wholly failed to provide any explanation or support for why their retention of more than $260,000 of RRSB's cash constitutes a "necessary use" of cash collateral. RRSB will not consent, and this Court should not authorize the Debtors to use RRSB's cash collateral unless Debtors turn over the excessive

9

amount of cash being held in the DIP accounts and reduce RRSB's risk of loss by paying down the indebtedness represented by the Notes.

## CONCLUSION

This Court should deny the Motion because Debtors have failed to offer RRSB adequate protection for the use of its both pre- and post-petition rents. Debtors' proposed payments are not sufficient to pay interest only, let alone full debt service, on the Parkside, Generations or Mulinda Notes. Allowing the Debtors to negatively amortize such notes during the pendency of these bankruptcy cases will increase its risk of financial loss by tens of thousands of dollars per month. Debtors have also permitted excessive post-petition payments to insiders out of RRSB's cash collateral, causing a dollar-for-dollar reduction in its cash collateral with no corresponding benefit to the estates. For all the foregoing reasons, Debtors have failed to meet their burden to prove adequate protection in this case and RRSB respectfully requests denial of the Motion.

Dated: January 12, 2026.         **VOGEL LAW FIRM**

BY:    */S/ KESHA L. TANABE*
Kesha L. Tanabe (#0387520)
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
Drew J. Hushka (#08230)
Jack M. Buck (#09539)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK

10

4935-8468-1861 v.5

Re:  **Generations On 1st LLC**
     Case No. 25-30002

   **Parkside Place, LLC**
   Case No. 25-30003

## CERTIFICATE OF SERVICE

On January 12, 2026, the undersigned caused the following document(s):

**OBJECTION OF RED RIVER STATE BANK TO DEBTORS' SIXTH MOTION FOR LEAVE TO USE CASH COLLATERAL**

to be served electronically to the following:

*ALL ECF Participants.*

*/s/ Kesha L. Tanabe*
Kesha L. Tanabe

11

4935-8468-1861 v.5