IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: ) | Case No. 25-30002 | |
| ) | (Chapter 11) | |
| GENERATIONS ON 1ST, LLC ) | | |
| ) | | |
| Debtor ) | | |
| ) | | |
| ) | | |
| In re: ) | Case No. 25-30003 | |
| ) | (Chapter 11) | |
| PARKSIDE PLACE, LLC ) | | |
| ) | | |
| Debtor ) | | |
| ) | Jointly Administered | |

**APPLICATION TO APPROVE EMPLOYMENT OF
MICHAEL T. SCHMITZ AS CHIEF RESTRUCTURING OFFICER**

Come now Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 327 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), as well as Federal Rule of Bankruptcy Procedure 2014, and apply to employ Michael T. Schmitz ("Mr. Schmitz") as chief restructuring officer ("CRO") of the Debtors, and in support thereof state as follows:

**I.      Introduction**

The Debtors seeks to appoint Mr. Schmitz to serve as their CRO, granting him authority to oversee the financial and operational restructuring of Generations and Parkside for the duration of this case and through the term of one or more plans of reorganization. Critical to this appointment is the Debtors' intent that Mr. Schmitz function as a CRO whose authority is not subject to removal by the directors and other officers of the Debtors, but only by this Honorable Court (with directors and officers, of course, retaining standing to bring a motion demonstrating cause for removal).

1

While the Debtors did not previously believe that a CRO is necessary in these case, the ongoing attacks of Red River State Bank ("RRSB") have created a prism whereby the Debtors appreciate that appointment of a CRO will (i) afford added confidence in the integrity of the Debtors' reorganization; (ii) prevent a potentially-calamitous conversion of these cases to Chapter 7; (iii) allow for an independent fiduciary to investigate—and, if appropriate—pursue claims against insiders; and (iv) help restore focus on the efforts of Generations and Parkside to use this case as a vehicle through which monies can be strategically pursued and collected for the benefit of all creditors and equity holders. While all chapter 11 cases present unique challenges, the intricacies of this case invite introduction of a CRO with both substantial expertise and unimpeachable credibility. Mr. Schmitz's appointment ensures the Debtors' representative possesses the qualifications, independence, and loyalty necessary to navigate these challenges effectively and in the best interest of the estate. Approving Mr. Schmitz's employment as CRO will provide the leadership and stability required for a successful restructuring.

**II.     Standard**

Familiarly, a debtor-in-possession (standing in the shoes of a trustee) is permitted to "employ one or more … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in

carrying out the [debtor-in-possession's] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).[1]

Additionally, under 11 U.S.C. § 363(b), a debtor-in-possession may use estate property outside the ordinary course of business after notice and a hearing. Courts interpreting § 363(b) have routinely authorized the employment of interim corporate officers, such as CROs, when the proposed action reflects a sound exercise of the debtor's business judgement. See *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Gander Mountain Co.*, No. 17-30673 (Bankr. D. Minn. Mar. 30, 2017) (approving employment of a CRO under § 363(b)).

The Federal Rules of Bankruptcy Procedure, in turn, require an application such as this shall, *inter alia*:

> … state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

### III.     Formalistic Recitations

Pursuant to the rigors of the above-cited rule, the Debtors note that (i) Mr. Schmitz is the person to be employed; (ii) Mr. Schmitz has been selected based on his sterling credentials,

---

[1] The term "professional persons" is not defined in Title 11 of the United States Code. However, "[s]ome courts have defined the term as an individual who takes a central role in the bankruptcy estate and proceedings, as opposed to one who provides services that are necessary irrespective of bankruptcy." *In re Evan Johnson & Sons Constr., Inc.*, 2019 WL 5057948, at *3 (Bankr. S.D. Miss. Mar. 11, 2019) (citing *In re Bannerman Holdings, LLC*, 2010 WL 2404313 at *2-3 (Bankr. E.D.N.C. June 10, 2010); *In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 893 (Bankr. E.D. Wis. 1989); *In re D'Lites of Am., Inc.*, 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

familiarity with financial restructuring, and longstanding reputation for integrity; (iii) his experience in leadership roles, both in the private and public sectors, demonstrates his capability to manage complex financial challenges with precision and credibility; (iv) as CRO, Mr. Schmitz will act as the debtors-in-possession's representative in this jointly administered case, being vested with complete decision-making authority; and (iv) Mr. Schmitz seeks to be compensated at his professional hourly rate, as adjusted from time to time, with his compensation being subject to the approval of this Honorable Court and with said compensation to come from the Debtors and their estates.

IV. Argument

    a. **Mr. Schmitz is Well Qualified both Legally and Pragmatically**

Mr. Schmitz holds a bachelor of science degree in business administration and accounting, as well as an MBA in accountancy from the University of Mary. He is a Certified Public Accountant (CPA) licensed to practice in North Dakota and is also a Chartered Global Management Accountant (CGMA). With over forty years of professional experience, Mr. Schmitz has demonstrated expertise in supervising engagements, performing audits, and providing business and tax consulting services.

Mr. Schmitz is currently a shareholder and partner in Point CPA, formerly known as Schmitz-Holmstrom CPA, which he established in 2019 through the purchase of the Bismark and Hazen officers of Widmer Roel PC. His extensive career includes serving as a senior trust officer for over five years, director of finance for a private company for two and a half years, and partner in charge of audit, review, compilation, and tax engagements for five and a half years. Additionally, he has accumulated eight years of experience as a manager and staff accountant.

4

Beyond the private sector, Mr. Schmitz has a distinguished record of public service. He is the current Mayor of the City of Bismark, having been elected in June 2022, and has held various leadership roles within the accounting profession. He is a current board member of the National Association of State Boards of Accountancy (NASBA), chair of the Peer Review Compliance Committee, and a member of the American Institute of Certified Public Accountants (AICPA). He has also served on the North Dakota State Board of Accountancy, including a term as president, during which he led significant administrative changes. His professional service extends to numerous local non-profit organizations, where he contributes his financial acumen as a member of their finance committees.

While Mr. Schmitz holds no economic interest in the Debtors and has never been employed by the Debtors, *see* Declaration of Michael T. Schmitz, attached hereto as Exhibit A, his familiarity with complex financial landscapes and his years of community leadership position him uniquely to navigate the challenges at hand.

### b. Employing Mr. Schmitz as CRO is a Sound Exercise of the Debtor's Business Judgment

The phrase "Chief Restructuring Officer" appears in just under 800 federal court opinions, published and unpublished, discoverable through a LexisNexis search. The lone such opinion to come from this Honorable Court mentions the existence of a CRO in a case related to an adversary proceeding but does not substantively discuss the appointment of the individual. *BMO Harris Bank N.A. v. McMartin (In re McMartin)*, 2021 Bankr. LEXIS 447, at *59 (Bankr. D.N.D. Feb. 26, 2021). Yet a CRO is serving in at least six cases in this Honorable Court presently, *EPIC Companies Midwest,* LLC, Case No. 24-30281 (Bankr. D.N.D. 2024), and, no doubt, CROs have almost assuredly served in cases in this district previously. However, whether by reason of such never proving sufficiently controversial to merit a written opinion or otherwise, there is no binding

5

precedential standard for such an appointment in this Honorable Court. It is hoped the relief sought herein will not prove so contentious as to invite the creation of such precedent.

The Debtors' decision to employ Mr. Schmitz as its CRO is a clear and proper exercise of sound business judgment. Section 363(b) of the Bankruptcy Code authorizes a debtor in possession, after notice and a hearing, to use property of the estate outside the ordinary course of business when there is a demonstrable and legitimate business justification. 11 U.S.C. § 363(b); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to authorize a sale pursuant to 11 U.S.C. § 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales."). The standard is flexible and deferential, focusing on whether the debtor's decision reflects a reasoned, good-faith effort to benefit the estate and its stakeholders. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Judicial intervention is warranted only when decisions are clearly erroneous, arbitrary, or made in bad faith, in violation of fiduciary duties, or contrary to the Bankruptcy Code. *Id.*

Moreover, bankruptcy courts are vested with the power to appoint a "Responsible Officer" for a debtor-in-possession. *Matter of Gaslight Club, Inc.*, 782 F.2d 767, 771 (7th Cir. 1986) (citing *In re FSC Corp.*, 38 B.R. 346 (Bankr. W.D. Penn. 1983)). And this Honorable Court does, too, have the authority to make such appointments in a manner that restricts the subsequent removal of the responsible officer. *See, e.g.*, *In re K.G. IM, LLC*, 620 B.R. 469, 476 (Bankr. S.D.N.Y. 2020) (approving the appointment of a CRO with "all of the powers and duties to operate the Debtors' business" and the "sole and exclusive power to exercise all of the management, voting rights, consent rights and powers of each of the Debtors, without regard to, or requirement of, any management, voting rights, consent rights, consultation rights or powers of any person who has

6

any such rights or powers under any of the Debtors' Operating Agreements…"). This practice recognizes that appointing seasoned, independent professionals can stabilize operations, restore creditor confidence, and improve the debtor's prospects for a successful reorganization

In the current circumstances, the decision to engage Mr. Schmitz is appropriate. While Generations and Parkside do *not* presently believe there exist any meritorious claims against insiders, the prospect of such—as advocated by RRSB—has become a sufficiently cumbersome weight upon these cases as to cry out for the appointment of an independent fiduciary. And as claims continue to be pursued against RRSB, the virtues of such independence will also assuredly help demonstrate the fidelity of the subject claims on their respective merits and aid in avoiding concerns such are merely the byproduct of a feud that would make the Hatfields and McCoys blush.

Mr. Schmitz's qualifications strongly support this appointment. With advanced degrees in business and accounting, CPA certification, and experience in the insolvency industry, he brings unparalleled expertise to this role. His tenure as Mayor of Bismarck further underscores his commitment to transparency and accountability—qualities essential for navigating the restructuring process effectively and building trust among stakeholders.

Additionally, the terms of Mr. Schmitz's engagement are aligned with the estates' best interests. His proposed compensation (presently $445 per hour) is both competitive and reasonable when compared to prevailing market rates for professionals of his caliber. Importantly, his independence from the Debtors ensures that his decisions will prioritize the estates' welfare, free from any conflicts of interest.

Accordingly, and given the Debtors' demonstrated business justification for this decision, this Honorable Court should grant the Motion and authorize the Debtors to retain and employ Mr.

Schmitz as their CRO. His appointment is a critical and necessary step in stabilizing Generations' and Parkside's litigation positions, maximizing the value of the estates, and ensuring a successful reorganization for the benefit of all stakeholders.

### V.  Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) enter an order approving the employment of Michael T. Schmitz as Chief Restructuring Officer to the Debtors; and (ii) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: January 22, 2026     By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtors*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig