# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>        Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>        Debtor. | Case No.: 25-30003<br><br>Chapter 11 |
| Red River State Bank,<br><br>        Plaintiff,<br><br>   vs.<br><br>Craig Development, LLC, Craig Properties, LLC, Jesse Craig, and Jordan Horner,<br><br>        Defendants. | Adversary No.: |

## PLAINTIFF'S ADVERSARY COMPLAINT

Plaintiff Red River State Bank ("RRSB"), as and for its Adversary Complaint against Defendants, states as follows:

### PARTIES

1.    RRSB is a financial institution chartered under the laws of the State of Minnesota.

2.    Upon information and belief, Defendant Jesse Craig ("Jesse") is a resident of the State of North Dakota.

3.    Upon information and belief, Defendant Jordan Horner ("Jordan") is a resident of the State of North Dakota.

4.    Upon information and belief, Debtor Generations on 1st, LLC ("Generations") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota.  The sole member of Generations is Jesse.  The principal place of business of Generations is in Fargo, North Dakota.

5.    Upon information and belief, Debtor Parkside Place, LLC ("Parkside") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota.  The sole member of Generations is Jesse.  The principal place of business of Parkside is in Fargo, North Dakota.

6.    Upon information and belief, Defendant Craig Development, LLC ("Craig Development") is a limited liability company formed and existing under the law of the State of North Dakota, wholly owned by Jesse.

7.    Upon information and belief, Defendant Craig Properties, LLC ("Craig Properties") is a limited liability company formed and existing under the law of the State of North Dakota, wholly owned by Jesse and his daughter Jordan.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction over these claims under Section 1334 of Title 28 of the United States Code.

9.      Venue is properly before the Court under Section 1334 of Title 28 of the United

States Code because the various claims herein arise under Title 11 of the United States Code

and all claims herein are related to one or more proceedings pending before the Court.

**FACTUAL BACKGROUND**

**I.      The Parkside Loans**

10.      On or about October 19, 2020, RRSB provided Parkside with a memorandum

outlining "the terms and conditions of the construction and permanent financing of a 36-unit

apartment complex known as 'Parkside Place' in Watertown SD" (the "Parkside Term Sheet").

A true and correct copy of the Parkside Term Sheet is available as Exhibit K to ECF No. 22 in

related North Dakota Adversary Proceeding 25-07009, and the same incorporated herein by

reference.

      A.      Parkside Loan 40930

11.      On or about October 30, 2020, RRSB agreed to loan Parkside $300,983.52 for

the construction of a 36-unit apartment complex to be known as "Parkside Place" (the

"Parkside Development"), as evidenced by the following documents: Promissory Note;

Commercial Security Agreement; and Disbursement Request and Authorization (collectively,

the "40930 Parkside Loan Documents").  True and correct copies of the 40930 Parkside Loan

Documents are available as **Exhibit A**, and the same incorporated herein by reference.  The

$300,983.52 loaned through the 40930 Parkside Loan Documents shall be referred to as

"Parkside Loan 40930."

      B.      Parkside Loan 40953

12.      On or about December 24, 2020, RRSB agreed to loan Parkside an additional

$296,000.00 related to the Parkside Development, as evidenced by the following documents:

Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "40953 Parkside Loan Documents").  True and correct copies of the 40953 Parkside Loan Documents are available as **Exhibit B**, and the same incorporated herein by reference.  The $296,000.00 loaned through the 40953 Parkside Loan Documents shall be referred to as "Parkside Loan 40953."

C.    Parkside Loan 40989

13.    On or about January 20, 2021, RRSB agreed to loan Momentum Properties, LLC (another entity owned by Jesse Craig on information and belief) an additional $829,003.51 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "40989 Parkside Loan Documents").  True and correct copies of the 40989 Parkside Loan Documents are available as **Exhibit C**, and the same incorporated herein by reference.  The $829,003.51 loaned through the 40989 Parkside Loan Documents shall be referred to as "Parkside Loan 40989."

D.    Parkside Loan 41063

14.    On or about February 8, 2021, RRSB agreed to loan Parkside an additional $359,509.42 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "41063 Parkside Loan Documents").  True and correct copies of the 41063 Parkside Loan Documents are available as **Exhibit D**, and the same incorporated herein by reference.  The $359,509.42 loaned through the 41063 Parkside Loan Documents shall be referred to as "Parkside Loan 41063."

E.    Parkside Loan 41099

15.     On or about February 26, 2021, RRSB agreed to loan Parkside an additional $458,407.56 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "41099 Parkside Loan Documents").  True and correct copies of the 41099 Parkside Loan Documents are available as **Exhibit E**, and the same incorporated herein by reference.  The $458,407.56 loaned through the 41099 Parkside Loan Documents shall be referred to as "Parkside Loan 41099."

F.     Parkside Loan 41120

16.     On or about March 15, 2021, RRSB agreed to loan Parkside an additional $2,601,400.00 related to the Parkside Development, as evidenced by the following documents: Business Loan Agreement; Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "41120 Parkside Loan Documents").  True and correct copies of the 41120 Parkside Loan Documents are available as **Exhibit F**, and the same incorporated herein by reference.  The $2,601,400.00 loaned through the 41120 Parkside Loan Documents shall be referred to as "Parkside Loan 41120."

G.     Parkside Loan 51393

17.     On or about August 26, 2021, RRSB agreed to loan Parkside an additional $940,371.80 related to the Parkside Development, as evidenced by the following documents: Business Loan Agreement; Construction Loan Agreement; Promissory Note; Disbursement Request and Authorization; and Guaranty of Completion and Performance (collectively, the "51393 Parkside Loan Documents").  True and correct copies of the 51393 Parkside Loan Documents are available as **Exhibit G**, and the same incorporated herein by reference.  The

$940,371.80 loaned through the 51393 Parkside Loan Documents shall be referred to as "Parkside Loan 51393."

    H.    <u>Parkside Loan 51438</u>

18.    On or about December 13, 2021, RRSB agreed to provide Parkside a consolidation loan in the amount of $4,200,000.00 related to the Parkside Development, as evidence by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "<u>51438 Parkside Loan Documents</u>").  True and correct copies of the 51438 Parkside Loan Documents are available as Exhibit K to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $4,200,000.00 loaned through the 51438 Parkside Loan Documents shall be referred to as "<u>Parkside Loan 51438</u>."

19.    Parkside Loan 40930, Parkside Loan 40953, Parkside Loan 40989, Parkside Loan 41063, Parkside Loan 41099, Parkside Loan 41120, Parkside Loan 51393, and Parkside Loan 51438 shall be collectively referred to as the "<u>Parkside Loans</u>."

    I.    <u>Parkside Draw Request No. 4</u>

20.    On or about October 18, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 4, seeking $300,983.52 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 4 is available as Exhibit 4 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

21.    RRSB funded Parkside Draw Request No. 4 on October 30, 2020, via cashier's check 200829 for $300,983.52.

22.     Upon information and belief, Parkside transferred the $300,983.52 to Craig Development by depositing cashier's check 200829 into an account owned by Craig Development at First Community Credit Union ("FCCU").

23.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to its receipt of $300,983.52.

24.     The $300,983.52 that RRSB provided for Parkside Draw Request No. 4 was funded through Parkside Loan 40930.

J.     <u>Parkside Draw Request No. 5</u>

25.     On or about November 1, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 5, seeking $600,430.71 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 5 is available as Exhibit 5 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

26.     In part, RRSB funded Parkside Draw Request No. 5 on December 24, 2020, via cashier's check 200849 for $295,850.00.

27.     Upon information and belief, Parkside transferred the $295,850.00 to Craig Development by depositing cashier's check 200849 into an account owned by Craig Development at FCCU.

28.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $295,850.00.

29.     The $295,850.00 that RRSB provided for Parkside Draw Request No. 5 was funded through Parkside Loan 40953.

30.     In part, RRSB funded Parkside Draw Request No. 5 on January 20, 2021, via cashier's check 200867 for $267,940.45.

31.     Upon information and belief, Parkside transferred the $267,940.45 to Craig Development by depositing cashier's check 200867 into an account owned by Craig Development at FCCU.

32.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $267,940.45.

33.     The $267,940.45 that RRSB provided for Parkside Draw Request No. 5 was funded through Parkside Loan 40989

K.      Parkside Draw Request No. 6

34.     On or about December 31, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 6, seeking $728,153.04 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 6 is available as Exhibit 6 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

35.     In part, RRSB funded Parkside Draw Request No. 6 on January 1, 2021, via cashier's check 200868 for $296,769.43.

36.     Upon information and belief, Parkside transferred the $296,769.43 to Craig Development by depositing cashier's check 200868 into an account owned by Craig Development at FCCU.

37.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $296,769.43.

38.     The $296,769.43 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 40989.

39.     In part, RRSB funded Parkside Draw Request No. 6 on February 8, 2021, via cashier's check 200897 for $359,509.42.

40.     Upon information and belief, Parkside transferred the $359,509.42 to Craig Development by depositing cashier's check 200897 into an account owned by Craig Development at FCCU.

41.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $359,509.42.

42.     The $359,509.42 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 41063.

43.     In part, RRSB funded Parkside Draw Request No. 6 on March 15, 2021, via cashier's check 200955 for $71,874.19.

44.     Upon information and belief, Parkside transferred the $71,874.19 to Craig Development by depositing cashier's check 200955 into an account owned by Craig Development at FCCU.

45.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $71,874.19.

46.     The $71,874.19 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 41120.

L.     Parkside Draw Request No. 7

47.     On or about January 1, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 7, seeking $884,021.21 for materials and labor allegedly contributed to the

Parkside Development.  A true and correct copy of Parkside Draw Request No. 7 is available as Exhibit 7 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

48.     In part, RRSB funded Parkside Draw Request No. 7 on March 15, 2021, via cashier's check 200956 for $319,424.33.

49.     Upon information and belief, Parkside transferred the $319,424.33 to Craig Development by depositing cashier's check 200956 into an account owned by Craig Development at FCCU.

50.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $319,424.33.

51.     The $319,424.33 that RRSB provided for Parkside Draw Request No. 7 was funded through Parkside Loan 41120.

52.     In part, RRSB funded Parkside Draw Request No. 7 on March 15, 2021, via cashier's check 200957 for $319,424.32.

53.     Upon information and belief, Parkside transferred the $319,424.32 to Craig Development by depositing cashier's check 200957 into an account owned by Craig Development at FCCU.

54.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $319,424.32.

55.     The $319,424.32 that RRSB provided for Parkside Draw Request No. 7 was funded through Parkside Loan 41120.

    M.     <u>Parkside Draw Request No. 8</u>

56.     On or about February 28, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 8, seeking $390,554.50 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 8 is available as Exhibit 8 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

57.     In part, RRSB funded Parkside Draw Request No. 8 on March 15, 2021, via cashier's check 200958 for $340,531.68.

58.     Upon information and belief, Parkside transferred the $340,531.68 to Craig Development by depositing cashier's check 200958 into an account owned by Craig Development at FCCU.

59.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $340,531.68.

60.     The $340,531.68 that RRSB provided for Parkside Draw Request No. 8 was funded through Parkside Loan 41120.

N.     Parkside Draw Request No. 12

61.     On or about June 30, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 12, seeking $523,516.85 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 12 is available as Exhibit 12 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

62.     RRSB funded Parkside Draw Request No. 12 on August 30, 2021, via a wire transfer of $940,371.80, $523,516.85 of which related to Parkside Draw Request No. 12.

63.     Upon information and belief, Parkside transferred the $523,516.85 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

64.     Upon information and belief, Craig Properties did not provide materials or services to Parkside reasonably equivalent to receipt of $523,516.85.

65.     The $523,516.85 that RRSB provided for Parkside Draw Request No. 12 was funded through Parkside Loan 51393.

O.     Parkside Draw Request No. 13

66.     On or about July 31, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 13, seeking $416,854.95 for materials and labor allegedly contributed to the Parkside Development.   A true and correct copy of Parkside Draw Request No. 13 is available as Exhibit 13 of ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

67.     RRSB funded Parkside Draw Request No. 13 on August 30, 2021, via a wire transfer of $940,371.80, $416,854.95 of which related to Parkside Draw Request No. 13.

68.     Upon information and belief, Parkside transferred the $416,854.95 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties.

69.     Upon information and belief, Craig Properties did not provide materials or services to Parkside reasonably equivalent to receipt of $416,854.95.

70.     The $416,854.95 that RRSB provided for Parkside Draw Request No. 13 was funded through Parkside Loan 51393.

**II.     The Generations Loans**

71.    On or about November 23, 2020, RRSB provided Generations with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 72-unit apartment complex known as 'Generations on 1st' in Watertown SD" (the "Generations Term Sheet").   A true and correct copy of the Generations Term Sheet is available as Exhibit A to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.

A.    Generations Loan 41121

72.    On or about March 15, 2021, RRSB agreed to loan Generations $1,565,200.00 for the construction of a 72-unit apartment complex to be known as "Generations on 1st" (the "Generations Development"), as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "41121 Generations Loan Documents").   True and correct copies of the 41121 Generations Loan Documents are available as Exhibit B to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.   The $1,565,200.00 loaned through the 41121 Generations Loan Documents shall be referred to as "Generations Loan 41121."

B.    Generations Loan 51404

73.    On or about September 14, 2021, RRSB agreed to loan Generations an additional $2,976,430.98 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request

13

Summary (collectively, the "51404 Generations Loan Documents").  True and correct copies of the 51404 Generations Loan Documents are available as Exhibit C to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $2,976,430.98 loaned through the 51404 Generations Loan Documents shall be referred to as "Generations Loan 51404."

   C.  Generations Loan 51425

   74.  On or about October 14, 2021, RRSB agreed to loan Generations an additional $1,094,025.15 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51425 Generations Loan Documents").  True and correct copies of the 51425 Generations Loan Documents are available as Exhibit D to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $1,094,025.15 loaned through the 51425 Generations Loan Documents shall be referred to as "Generations Loan 51425."

   D.  Generations Loan 51437

   75.  On or about November 9, 2021, RRSB agreed to loan Generations an additional $424,259.84 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51437 Generations Loan Documents").  True and correct copies

of the 51437 Generations Loan Documents are available as Exhibit E to ECF No. 22 in ND

Adversary Proceeding 25-07009, and the same incorporated herein by reference.   The

$424,259.84 loaned through the 51437 Generations Loan Documents shall be referred to as

"Generations Loan 51437."

E.   Generations Loan 51449

76.   On or about December 8, 2021, RRSB agreed to loan Generations an additional

$843,168.59 related to the Generations Development, as evidenced by the following

documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request

and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and

Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the

"51449 Generations Loan Documents").   True and correct copies of the 51449 Generations

Loan Documents are available as Exhibit F to ECF No. 22 in ND Adversary Proceeding 25-

07009, and the same incorporated herein by reference.   The $843,168.59 loaned through the

51449 Generations Loan Documents shall be referred to as "Generations Loan 51449."

F.   Generations Loan 51471

77.   On or about January 5, 2022, RRSB agreed to loan Generations an additional

$653,729.65 related to the Generations Development, as evidenced by the following

documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request

and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and

Performance; and Notice of Final Agreement; (collectively, the "51471 Generations Loan

Documents").   True and correct copies of the 51471 Generations Loan Documents are

available as Exhibit G to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same

incorporated herein by reference.  The $653,729.65 loaned through the 51471 Generations Loan Documents shall be referred to as "Generations Loan 51471."

G.    Generations Loan 51488

78.    On or about February 3, 2022, RRSB agreed to loan Generations an additional $274,043.60 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51488 Generations Loan Documents").  True and correct copies of the 51488 Generations Loan Documents are available as Exhibit H to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $274,043.60 loaned through the 51488 Generations Loan Documents shall be referred to as "Generations Loan 51488."

H.    Generations Loan 51676

79.    On or about April 17, 2023, RRSB agreed to loan Generations $8,100,000.00 related to the Generations Development, as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; and Notice of Final Agreement (collectively, the "51676 Generations Loan Documents").  True and correct copies of the 51676 Generations Loan Documents are available as Exhibit I to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $8,100,000.00 loaned through the 51676 Generations Loan Documents shall be referred to as "Generations Loan 51676."

I.    Generations Loan 51677

80.     On or about April 17, 2023, RRSB agreed to loan Generations $561,365.10 related to the Generations Development, as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; and Notice of Final Agreement (collectively, the "51677 Generations Loan Documents").  True and correct copies of the 51677 Generations Loan Documents are available as Exhibit J to ECF No. 22 in ND Adversary Proceeding 25-07009, and the same incorporated herein by reference.  The $561,365.10 loaned through the First Generations Loan Documents shall be referred to as "Generations Loan 51677."

81.     Generations Loan 41121, Generations Loan 51404, Generations Loan 51425, Generations Loan 51437, Generations Loan 51449, Generations Loan Generations Loan 51471, Generations Loan 51488, Generations Loan 51676, and Generations Loan 51677 shall be collectively referred to as the "Generations Loans."

J.      Generations Draw Request No. 4

82.     On or about December 31, 2020, Generations caused to be served on RRSB Generations Draw Request No. 4, seeking $540,039.74 for materials and labor allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 4 is available as Exhibit 4 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

83.     In part, RRSB funded Generations Draw Request No. 4 on March 15, 2021, via cashier's check 200950 for $149,005.53.

84.     Upon information and belief, Generations transferred the $149,005.53 to Craig Development by depositing cashier's check 200950 into an account owned by Craig Development at FCCU.

17

85.     Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to receipt of $149,005.53.

86.     The $149,005.53 that RRSB provided via cashier's check 200950 for Generations Draw Request No. 4 was funded by Generations Loan 41121.

K.      Generations Draw Request No. 5

87.     On or about January 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 5, seeking $376,020.84 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 5 is available as Exhibit 5 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

88.     In part, RRSB funded Generations Draw Request No. 5 on March 15, 2021, via cashier's check 200951 for $163,020.84.

89.     Upon information and belief, Generations transferred the $163,020.84 to Craig Development by depositing cashier's check 200951 into an account owned by Craig Development at FCCU.

90.     Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to receipt of $163,020.84.

91.     The $163,020.84 that RRSB provided for Generations Draw Request No. 5 was funded through Generations Loan 41121.

L.      Generations Draw Request No. 10

92.     On or about June 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 10, seeking $339,580.56 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw

Request No. 10 is available as Exhibit 10 to ECF No. 185 on the Generations bankruptcy docket, and the same incorporated herein by reference.

93.     RRSB funded Generations Draw Request No. 10 on September 14, 2021, via a wire transfer of $339,580.56.

94.     Upon information and belief, Generations transferred the $339,580.56 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

95.     Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $339,580.56.

96.     The $339,580.56 that RRSB provided for Generations Draw Request No. 10 was funded through Generations Loan 51404.

M.     Generations Draw Request No. 11

97.     On or about July 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 11, seeking $1,423,600.00 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 11 is available as Exhibit 11 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

98.     RRSB funded Generations Draw Request No. 11 on September 14, 2021, via a wire transfer of $1,423,600.00.

99.     Upon information and belief, Generations transferred the $1,423,600.00 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

100.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $1,423,600.00.

101.    The $1,423,600.00 that RRSB provided for Generations Draw Request No. 11 was funded through Generations Loan 51404.

N.    Generations Draw Request No. 12.1

102.    On or about July 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 12.1, seeking $229,896.66 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 12.1 is available as pp. 168-169 of Exhibit 12 in ECF No. 185-1, and the same incorporated herein by reference.

103.    RRSB funded Generations Draw Request No. 12.1 on September 14, 2021, via a wire transfer of $229,896.66.

104.    Upon information and belief, Generations transferred the $229,896.66 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

105.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $229,896.66.

106.    The $229,896.66 that RRSB provided for Generations Draw Request No. 12.1 was funded through Generations Loan 51404.

O.    Generations Draw Request No. 12.2

107.    On or about August 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 12.2, seeking $983,353.76 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw

20

Request No. 12.2 is available as pp. 170-194 of Exhibit 12 in ECF No. 185-1 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

108.    RRSB funded Generations Draw Request No. 12.2 on September 14, 2021, via a wire transfer of $983,353.76.

109.    Upon information and belief, Generations transferred the $983,353.76 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

110.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $983,353.76.

111.    The $983,353.76 that RRSB provided for Generations Draw Request No. 12.2 was funded through Generations Loan 51404.

P.      Generations Draw Request No. 13

112.    On or about September 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 13, seeking $1,094,025.15 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 13 is available as Exhibit 13 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

113.    RRSB funded Generations Draw Request No. 13 on October 14, 2021, via a wire transfer of $1,094,025.15.

114.    Upon information and belief, Generations transferred the $1,094,025.15 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

115.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $1,094,025.15.

116.    The $1,094,025.15 that RRSB provided for Generations Draw Request No. 13 was funded through Generations Loan 51425.

Q.      Generations Draw Request No. 14

117.    On or about October 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 14, seeking $424,259.84 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 14 is available as Exhibit 14 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

118.    RRSB funded Generations Draw Request No. 14 on November 9, 2021, via a wire transfer of $424,259.84.

119.    Upon information and belief, Generations transferred the $424,259.84 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

120.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $424,259.84.

121.    The $424,259.84 that RRSB provided for Generations Draw Request No. 14 was funded through Generations Loan 51437.

R.      Generations Draw Request No. 15

122.    On or about November 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 15, seeking $843,168.59 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw

Request No. 15 is available as Exhibit 15 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

123.   RRSB funded Generations Draw Request No. 15 on December 9, 2021, via a wire transfer of $843,168.59.

124.   Upon information and belief, Generations transferred the $843,168.59 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

125.   Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $843,168.59.

126.   The $843,168.59 that RRSB provided for Generations Draw Request No. 15 was funded through Generations Loan 51449.

S.     Generations Draw Request No. 16

127.   On or about December 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 16, seeking $653,729.65 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 16 is available as Exhibit 16 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

128.   RRSB funded Generations Draw Request No. 16 on January 4, 2022, via a cashier's check 101723 for $653,729.65.

129.   Upon information and belief, Generations transferred the $653,729.65 to Craig Development by depositing cashier's check 101723 into an account owned by Craig Development at FCCU.

130.    Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to $653,729.65.

131.    The $653,729.65 that RRSB provided for Generations Draw Request No. 16 was funded through Generations Loan 51471.

T.    Generations Draw Request No. 17

132.    On or about January 31, 2022, Generations caused to be served on RRSB Generations Draw Request No. 17, seeking $274,043.60 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 17 is available as Exhibit 17 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

133.    RRSB funded Generations Draw Request No. 17 on February 3, 2022, via a wire transfer of $274,043.60.

134.    Upon information and belief, Generations transferred the $274,043.60 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

135.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $274,043.60.

136.    The $274,043.60 that RRSB provided for Generations Draw Request No. 17 was funded through Generations Loan 51488.

## COUNT 1: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-04(1)(b)
#### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

137.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

24

138.    Parkside was and is a "debtor" of RRSB, who was and is a "creditor" of Parkside, as such terms are used under N.D.C.C. ch. 13-02.1.

139.    Parkside transferred a portion of the proceeds from the Parkside Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

140.    At the time of the transfers to Craig Development and Craig Properties, Parkside's remaining assets were unreasonably small in relation to Parkside's business.

141.    At the time of the transfers to Craig Development and Craig Properties, Parkside believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

142.    Pursuant to N.D.C.C. § 13-02.1-04(1)(b), RRSB is entitled to a judgment avoiding the transfers to Craig Development and Craig Properties as to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 2: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-05
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

143.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

144.    Parkside was and is a "debtor" of RRSB, who was and is a "creditor" of Parkside, as such terms are used under N.D.C.C. ch. 13-02.1.

145.    Parkside transferred a portion of the Parkside Loans proceeds to Craig Development and Craig Properties without receiving reasonably equivalent value.

146.    At the time of the transfers to Craig Development and Craig Properties, Parkside was insolvent as such term is used under N.D.C.C. ch. 13-02.1.

147.     Pursuant to N.D.C.C. § 13-02.1-05, RRSB is entitled to a judgment avoiding the transfers to Craig Development and Craig Properties as to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 3: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-04(1)(b)
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

148.     RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

149.     Generations was and is a "debtor" of RRSB, who was and is a "creditor" of Generations, as such terms are used under N.D.C.C. ch. 13-02.1.

150.     Generations transferred a portion of the proceeds from the Generations Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

151.     At the time of the transfers to Craig Development and Craig Properties, Generations's remaining assets were unreasonably small in relation to Generations's business.

152.     At the time of the transfers to Craig Development and Craig Properties, Generations believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

153.     Pursuant to N.D.C.C. § 13-02.1-04(1)(b), RRSB is entitled to a judgment avoiding the transfers to Craig Development and Craig Properties as to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 4: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-05
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

154.     RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

155.    Generations was and is a "debtor" of RRSB, who was and is a "creditor" of Generations, as such terms are used under N.D.C.C. ch. 13-02.1.

156.    Generations transferred a portion of the proceeds from the Generations Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

157.    At the time of the transfers to Craig Development and Craig Properties, Generations was insolvent as such term is used under N.D.C.C. ch. 13-02.1.

158.    Pursuant to N.D.C.C. § 13-02.1-05, RRSB is entitled to a judgment avoiding the transfers to Craig Development and Craig Properties as to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

## COUNT 5: PIERCING THE CORPORATE VEIL
### (AGAINST JESSE)

159.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

160.    Craig Development was insufficiently capitalized for purposes of its corporate undertakings.

161.    Craig Development failed to observe corporate formalities.

162.    Craig Development failed to pay dividends.

163.    Craig Development was insolvent at the time of the transactions at issue.

164.    Jesse Craig siphoned funds from Craig Development.

165.    At all times relevant hereto, Jesse Craig was the sole functioning officer or director of Craig Development.

166.    Craig Development failed to create and maintain adequate corporate records.

167.    Craig Development existed as a mere façade for Jesse Craig's individual dealings.

168.    Absent a piercing of Craig Development's corporate veil, an injustice, inequity, or unfairness would occur.

## COUNT 6: PIERCING THE CORPORATE VEIL
### (AGAINST JESSE AND JORDAN)

169.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

170.    Craig Properties was insufficiently capitalized for purposes of its corporate undertakings.

171.    Craig Properties failed to observe corporate formalities.

172.    Craig Properties failed to pay dividends.

173.    Craig Properties was insolvent at the time of the transactions at issue.

174.    Jesse and Jordan siphoned funds from Craig Properties.

175.    At all times relevant hereto, Jesse and Jordan were the sole functioning officers or directors of Craig Properties.

176.    Craig Properties failed to create and maintain adequate corporate records.

177.    Craig Properties existed as a mere façade for Jesse and Jordan's individual dealings.

178.    Absent a piercing of Craig Properties's corporate veil, an injustice, inequity, or unfairness would occur.

WHEREFORE, RRSB respectfully requests that the Court grant the following relief:

1.      For the avoidance of all fraudulent transfers made by Generations and Parkside to Craig Development, in an amount to be determined at trial.

2.      For Jesse to be held personally liable for any judgment entered against Craig Development.

3.      For the avoidance of all fraudulent transfers made by Generations and Parkside to Craig Properties, in an amount to be determined at trial.

4.      For Jesse and Jordan to be held personally liable for any judgment entered against Craig Properties.

5.      For its costs, disbursements, and reasonable attorneys' fees incurred herein if permitted by law.

6.      For such other and further relief as this Court deems just and equitable.

Dated this 27th day of January, 2026.

**VOGEL LAW FIRM**


BY:*/s/ Drew J. Hushka* _____
        Caren W. Stanley (#06100)
        cstanley@vogellaw.com
        Kesha L. Tanabe
        ktanabe@vogellaw.com
        Drew J. Hushka (#08230)
        dhushka@vogellaw.com
        218 NP Avenue
        PO Box 1389
        Fargo, ND  58107-1389
        701.237.6983
        ATTORNEYS FOR PLAINTIFF RED RIVER STATE BANK