UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>Generations on 1st, LLC,<br><br>       Debtor. | Lead Case No.: 25-30002<br><br>(Chapter 11) |
| In re:<br><br>Parkside Place, LLC,<br><br>Debtor. | Case No.: 25-30003<br><br>(Chapter 11)<br><br>Jointly Administered |

**RRSB'S OBJECTION TO APPLICATION TO APPROVE EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER**

Red River State Bank (the "Bank") objects to the Application to Approve Employment (the "Application") of Michael T. Schmitz ("Mr. Schmitz") as Chief Restructuring Officer ("CRO") [ECF 291]. The Bank objects to the Application because: (1) the services of a CRO are unnecessary and potentially duplicative of the property management company; (2) Mr. Schmitz should not be retained for services outside the scope of his professional training and subject matter expertise; and (3) Mr. Schmitz has failed to disclose his relationship with Debtors' counsel.

First, the Application should be denied because the services of a CRO are not needed in these cases. Traditionally, a CRO is a type of financial professional who is retained by a Chapter 11 bankruptcy estate to improve its financial reporting, obtain new financing or modify existing financing, address tax issues, sell assets, negotiate contracts, change staffing, implement cost cuts, etc. If these cases were filed to reorganize going-concern businesses, for example, it may have made sense to hire a CRO to identify and implement operational changes at the outset of the case. But neither of the Debtors is a going-concern; they are both single asset real estate entities ("SAREs").  SAREs do not typically require the services of a traditional CRO; they tend to be operated by a property management company who collects rents, handles

maintenance and repairs, and executes leases with tenants. The Debtors have already retained CP Business Management, Inc. to act as their property manager. The Application does not suggest that CP Business Management, Inc. will be replaced by the CRO. Therefore, the Bank objects to the Application on the grounds that Debtors have failed to demonstrate a business justification or need for the traditional services of a CRO in these cases. To the contrary, the administrative expense of a CRO, for work that arguably overlaps with the existing property management company, does not serve the best interests of the estate, nor can there be a business justification for duplicative expenses in a Chapter 11 case.

Second, to the extent the Application seeks to retain Mr. Schmitz to provide services outside the scope of a traditional CRO, the Bank respectfully objects to his qualifications. The Declaration of Michael T. Schmitz (the "Schmitz Declaration") [ECF 291-1] confirms that Mr. Schmitz has substantial education, training, credentials, and professional experience in the realm "financial consulting, tax services, and operational oversight." If the Debtors had a demonstrated need for any such services, the Bank would likely support his employment. But to the extent the Debtors seek to hire Mr. Schmitz to investigate, prosecute or settle causes of action, such as the Debtors' potential Chapter 5 claims against insiders or the claims currently pending in related adversary proceedings or State court litigation, the Schmitz Declaration provides no evidence of formal training, subject matter expertise, or other professional experience to demonstrate why he is qualified for such work, or why the Debtors selected him instead of a person with legal training and/or bankruptcy-related expertise for such work.

Third, the Bank objects to the Application because it lacks confidence that the proposed CRO is truly independent and thus resolves any trust-related issues in these cases. The Schmitz Declaration fails to disclose Mr. Schmitz's prior connections with Debtors' counsel, as required by FRBP 2014(a)(3). Similarly, the Application fails to satisfy the requirement to disclose "to the best of the applicant's knowledge, all the person's connections with the debtor…any other party in interest; their respective attorneys and accountants," as required by FRBP 2014(a)(2)(F). The Application purports to restore trust, but when it was drafted, Debtors' counsel included a negative characterization of the Bank. In similar fashion, the Debtors purport to introduce independence with respect to the investigation and prosecution of claims

2

against insiders, but the Application repeats the Debtors' position that there are no meritorious claims against insiders in these cases. These are more than passing remarks. If the CRO is to work in concert with Debtors' counsel, and Debtors' counsel continue to hold the views set forth in the Application, and the Debtors continue to be debtors in possession under Section 1107, it is wholly unclear how the dynamic in the case will be improved by the employment of a new professional with an undisclosed prior professional relationship to Debtors' counsel. A CRO, like the existing property management company, would simply be another professional employed by the Debtors. But the Debtors will continue to be debtors-in-possession with all the powers set forth in the Code and the case will continue to be run from a pre-existing viewpoint about potential claims against insiders.

In conclusion, the proposed employment of a CRO creates ambiguity and whether intentional or not, it may function as a sleight of hand with respect to important issues in these cases. What we do know is that the Debtors are not agreeing to removal and they intend to remain debtors in possession. There continues to be an attorney-client relationship between the debtors in possession and Debtors' counsel. There is no agreement to appointment a trustee or examiner under Section 1104. Debtors' counsel has expressly articulated a pre-existing view of the Bank and the merits of potential Chapter 5 claims against insiders. Insiders will continue to manage the property and influence the work of Debtors' counsel in these cases. The proposed employment will not change the statutory duties and powers of the debtor in possession, and thus it is unclear if it can resolve the extensive conflicts of interest that have come to light in these related bankruptcy cases. What is clear is that the employment of an additional professional will increase administrative expenses in these cases, and important work related to prepetition causes of action should be directed by someone who is truly impartial and with appropriate professional training and subject matter expertise. For all the foregoing reasons, the Bank urges the Court to deny approval of the Application. If Debtors seek the appointment of a bona fide trustee or examiner in these cases, an application to employ an accountant is not a procedurally appropriate mechanism for doing so.

Dated: February 5, 2026.	**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*　　　　　　　　　　　
　　Kesha L. Tanabe
　　ktanabe@vogellaw.com
　　Caren W. Stanley (#06100)
　　cstanley@vogellaw.com
　　Drew J. Hushka (#08230)
　　dhushka@vogellaw.com
　　218 NP Avenue
　　Fargo, ND  58107-1389
　　701.237.6983
　　**ATTORNEYS FOR RED RIVER STATE BANK**

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In re: | Lead Case No.: 25-30002 |
|---|---|
| Generations on 1st, LLC,<br><br>Debtor. | Chapter 11 |
| In re:<br><br>Parkside Place, LLC<br><br>Debtor. | Case No.: 25-30003<br><br>Chapter 11<br><br>Jointly Administered |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that it caused the objection of Red River State Bank to Debtors' Application to Employ a CRO be filed in the above-captioned case, which caused CM/ECF service upon all registered parties to the case.

Dated: February 5, 2026

*/s/ Kesha L. Tanabe*

5