UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| **In Re:**<br><br>Generations on 1st, LLC,<br><br>**Debtor.** | Case No.: 25-30002<br>Chapter 11 |

DISCLOSURE STATEMENT FOR

CREDITOR'S PLAN OF LIQUIDATION FOR GENERATIONS ON 1ST, LLC

1. **INTRODUCTION**

    *1.1   What is the Purpose of this Disclosure Statement?*

    Red River State Bank ("RRSB" or the "Plan Proponent") has filed a Plan of Liquidation (the "Plan") for Generations on 1st, LLC (the "Debtor"). This Disclosure Statement is intended to provide "adequate information" about the Debtor and the Plan, as defined in Section 1125(b) of Bankruptcy Code, to allow creditors to make an informed judgment about the Plan. If this Disclosure Statement is approved by the Bankruptcy Court, it will be used to solicit votes from creditors for or against the Plan. [By Order dated _____, this Disclosure Statement was approved by the Bankruptcy Court and it may be used to solicit votes from creditors for or against the Plan.]

    The Plan Proponent strongly urges you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtor's history and finances. The Disclosure Statement also provides information about alternatives to the Plan. A copy of the Plan accompanies this Disclosure Statement as a separate document.

    Note, the Plan includes a table of definitions. You should refer to the Plan for the definitions of capitalized terms used in the Disclosure Statement. Cites to "ECF" numbers are references to motions, affidavits, and orders that have been filed on the docket in the Bankruptcy Case.

    *1.2   Brief Description of the Debtor and Its Bankruptcy Filing*

    The Debtor is owned by Mr. Jesse Craig and historically, it was managed by his spouse, Ms. Mulinda Craig, through a business entity they own called CP Business Management, Inc.

    The Debtor's principal asset is an apartment building located at 26 1st Avenue SW (the "GO1 Project") in Watertown, South Dakota (the "City"). The GO1 Project consists of a single, five-story apartment building with attached parking. The gross building area, including the parking garage, is 119,859 square feet. The building was built in 2022 and it has a useful life of approximately 55 years total.

1

The non-residential/commercial area of the building includes an enclosed parking garage. Additionally, the first floor of the building is currently used to operate a senior center with a large community room, craft room, conference room, game room and a full commercial kitchen (the "Watertown Senior Center"). The Watertown Senior Center has been leased to the City for a term of 99 years at a rate of $1 per year. It is an amenity to tenants, but it generates no income for the Debtor.

The residential portion of the building includes 72 apartment units. The apartments are 1-2 bedrooms.. The occupancy rate of the building is approximately 95%, which is considered "stabilized" for a building of its kind. With one exception, the apartments are leased at market rate and generate consistent monthly income for the Debtor. Monthly rents in the GO1 Project range from $1050-1580 per month, depending on size. The exception is Unit 3507, which is currently rented by the Debtor to CP Business Management, Inc. for $450/month, which is approximately 50% of market rate. [ECF 1, Schedule G.] The unit is currently used to generate short-term rental income for Insiders through web sites such as AirBnB.com and VRBO.com, but such rentals generate no income for the Debtor.

Prior to the Petition Date, the GO1 Project went into default. Gross rents were not sufficient to pay all expenses and debt service as they came due. In October 2024, a South Dakota state court appointed a receiver called HME, an independent third party, to collect rents and operate the GO1 Project. Debtor filed this Chapter 11 bankruptcy case on January 6, 2025. [ECF 1]

Notwithstanding the fact that construction is complete and rental income is stabilized, the GO1 Project is still insolvent. Debtor's cashflow is not sufficient to make all monthly payments on the Debtor's debt as it comes due. The Debtor simply has too much debt.

### 1.3  *Brief Summary of the Creditor's Plan*

The Plan provides two sources of recovery for creditors: a sale process and a creditor trust. First, RRSB will liquidate 100% of its collateral. Sale Proceeds will be used to pay down secured claims. Second, the Plan will establish a Creditor Trust to fund the investigation and prosecution of any Causes of Action owned by the Debtor. RRSB will provide $50,000 to fund the work of the Creditor Trust. All proceeds of litigation or settlement will be distributed pro rata to Class 3 general unsecured Creditors. RRSB will also pay all allowed Administrative Claims and Priority Tax Claims on the Effective Date.

### 1.4  *Confirmation of Plan.*

1.4.1  **Requirements.** The requirements for Confirmation of the Plan are set forth in detail in Section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

(a)  **Acceptance by Impaired Classes.** Except to the extent that the cramdown provisions of Section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims must either vote to accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

2

(b)     **Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

(c)     **"Best Interest" Test.** The Bankruptcy Court must find that the Plan is in the "best interest" of all Holders of Claims. To satisfy this requirement, the Bankruptcy Court must determine that each Holder of a Claim against the Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such Holder would receive if the Debtor's property was liquidated under Chapter 7 of the Bankruptcy Code on such date.

(d)     **"Cramdown" Provisions.** Under certain circumstances which are set forth in detail in Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even though a Class of Claims or Equity Interests has not accepted the Plan, so long as one Impaired Class of Claims has accepted the Plan, excluding the votes of Insiders (as defined in the Bankruptcy Code), if the Plan is fair and equitable and does not discriminate unfairly against such non-accepting Classes. The Plan Proponent will invoke the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code as to holders of Equity Interests since under the Plan, the Class in which Equity Interests reside are deemed to have rejected the Plan. Should any voting Class fail to accept the Plan, the Plan Proponent will also invoke the "cramdown" provision as to such Class.

1.4.2   *Procedure.* To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code (the "***Confirmation Hearing***"). The Bankruptcy Court has set _____, at [•] [•].m. Central Standard Time, for the Confirmation Hearing.

1.4.3   *Objection to Confirmation.* Any party-in-interest may object to Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set _____, at [•] [•].m. Central Time, as the deadline for filing and serving upon the Plan Proponent's counsel, and the United States Trustee's Office, objections to Confirmation of the Plan. Objections to Confirmation must be filed with the Bankruptcy Court at the following address:

> U.S. Bankruptcy Court for the District of North Dakota
> 655 1st Avenue North, #210
> Fargo, ND  58102

with a copy served upon counsel to the Plan Proponent:

> Caren W. Stanley
> Kesha L. Tanabe
> Drew J. Hushka
> Vogel Law Firm
> 218 NP Avenue
> PO Box 1389
> Fargo, ND  58107-1389

3

and a copy served upon the Office of the United States Trustee:

> United States Trustee
> Suite 1015 U.S. Courthouse
> 300 South Fourth Street
> Minneapolis, MN 55415

1.4.4   ***Effect of Confirmation.*** Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall irrevocably vest in the liquidating Debtor for purposes of administration, by the Plan Proponent, of all of its respective rights, title, and interest in and to all assets. The Plan provides for the wind down of the Debtor's affairs, continued liquidation and conversion of all of the Debtor's remaining assets to cash and the distribution of the net proceeds realized therefrom, in addition to Cash on Hand on the Effective Date of the Plan, to Holders of allowed Claims in accordance with the relative priorities established in the Bankruptcy Code. The Plan does not provide for a distribution to Holders of Equity Interests, and their votes are not being solicited. The Plan contemplates the creation of a Creditor Trust and the appointment of a Creditor Trustee to pursue any unreleased Causes of Action and to make Distributions to Holders of allowed Claims. Confirmation serves to make the Plan binding upon the Debtor, all Creditors, Holders of Equity Interests, and other parties-in-interest, regardless of whether they cast a ballot ("***Ballot***") to accept or reject the Plan.

*1.5*   *Voting on the Plan.*

1.5.1   ***Impaired Claims or Equity Interest.*** Pursuant to Section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving distributions or other treatment under the Plan may vote on the Plan. Pursuant to Section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class. Holders of Claims not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan.

1.5.2   ***Estimation.*** Pursuant to Section 502(c) of the Bankruptcy Code, the amount of a claim may be estimated for purposes of voting and plan confirmation. Estimation is used when it is too costly or time-consuming to litigate the exact amount of a specific claim prior to voting or a confirmation hearing. Estimation is not the same as claim allowance, which is used to determine a creditor's right to receive a distribution under a plan. For the purpose of this Plan, RRSB and WDC shall have estimated general unsecured claims in the amount of $8,092,281 and $564,343.04, respectively.

1.5.3   ***Eligibility.*** In order to vote on the Plan, a Holder of a Claim must have timely filed or been assigned a timely filed proof of Claim, unless its Claim is scheduled by the Debtor and is not identified as disputed, unliquidated or contingent on the Debtor's Schedules of Assets and Liabilities (the "***Schedules***"). Holders having a Claim in more than one Class may vote in each Class in which they hold a separate Claim by casting a Ballot in each Class.

1.5.4  **Binding Effect.** Whether a Holder of a Claim votes on the Plan or not, such Person will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a Holder of a Claim will not be included in the vote:  (i) for purposes of accepting or rejecting the Plan; or (ii) for purposes of determining the number of Persons voting on the Plan.

1.5.5  **Procedure.** Members of Classes 1, 2, and 4 are unimpaired and not entitled to vote. Class 3 may vote to accept or reject the Plan. Class 5 is comprised entirely of Insiders and their votes are disregarded for purposes of plan confirmation. In order for your vote to count, you must complete, date, sign and properly mail the enclosed Ballot (please note that envelopes have been included with the Ballot) to:

>Kesha L. Tanabe
>Vogel Law Firm
>218 NP Avenue
>PO Box 1389
>Fargo, ND  58107-1389

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by mail or overnight delivery at the address set forth above on or before 4:00 p.m. Central Standard Time on [_____.] Once you have delivered your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing.

Any Ballot received that is incomplete in any way shall be deemed to be cast as follows:

(i)  Ballots received that do not evidence the amount or evidence an incorrect amount of such Holder's Claim shall be completed or corrected, as the case may be, based upon the Schedules filed by the Debtor if no proof of Claim has been filed by such Holder, or based upon timely filed proofs of Claim, and counted as a vote to accept or reject the Plan upon request to the Court by either the Debtor or such Holder of a Claim;

(ii)  Ballots received that do not identify the Holder of the Claim, whether or not signed by the Holder, shall not be counted as a vote to accept or reject the Plan;

(iii)  Ballots received that do not reflect in which Class such Ballot is cast or incorrectly classify such Holder's Claim and that are otherwise properly completed may be completed or corrected, as the case may be, and counted as a vote to accept or reject the Plan upon request to the Court by either the Plan Proponent or such Holder of a Claim; and

(iv)  Ballots that are completed, except that such Holder of a Claim failed to vote to accept or reject the Plan, shall not be counted as a vote to accept or reject the Plan.

1.6  *Acceptance of the Plan.*

1.6.1  **Holder Acceptance.** As a Holder of a Claim, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code. At least one impaired Class of Creditors, excluding the votes of Insiders, must actually vote to accept the Plan. You are urged to complete, date, sign and promptly mail the enclosed Ballot. Please be sure to complete the Ballot properly and legibly identify the exact amount of your Claim and the name of the Holder of the Claim.

1.6.2  **Cramdown Election.** If all Classes do not accept the Plan, but at least one Impaired Class votes to accept the Plan, excluding the votes of Insiders, the Plan Proponent may attempt to invoke the "cramdown" provisions of the Bankruptcy Code. Cramdown may be an available remedy, because the Plan Proponent believes that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of Section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

*1.7*   *Sources of Information.* The information contained in this Disclosure Statement has been obtained from the Debtor's books and records, from formal discovery in the bankruptcy case, and from motions and other papers filed with the Bankruptcy Court by the Debtor, the Plan Proponent and other parties-in-interest. Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof. Any value given as to the assets of the Debtor is based upon an estimation of such value. You are strongly urged to consult with your financial and legal advisors to understand fully the Plan and Disclosure Statement.

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits. If any conflicts exist between the Plan and Disclosure Statement, the terms of the Plan shall control.

*1.8*   *Additional Information.*

Should you have any questions regarding the Plan or this Disclosure Statement, or require clarification of any information presented herein, please contact:

Kesha L. Tanabe
Caren W. Stanley
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
ktanabe@vogellaw.com
cstanley@vogellaw.com

6

## 2. THE DEBTOR

### 2.1 Description of the Debtor.

The Debtor's principal asset is a single, five-story apartment building with attached parking located in Watertown, South Dakota. The Debtor filed a Chapter 11 bankruptcy case on January 6, 2025. Prior to filing for bankruptcy, the secured creditor commenced a foreclosure proceeding in Codington County, South Dakota. The Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### 2.2 The Debtor's Ownership and Other Statutory Insiders.

The Debtor is wholly owned by Mr. Jesse R. Craig. Other statutory "Insiders" include Mr. Craig's spouse, Mulinda "Mindy" Craig, as well as his two daughters: Jordan Horner and Sydney Craig. Mr. Craig also owns and controls several related entities such as Craig Holdings, LLC, Craig Properties, LLC, Craig Development, LLC, and CP Business Management, Inc. Ms. Craig currently performs the majority of the Debtor's administrative and management services through an entity called CP Business Management, Inc.

### 2.3 The Debtor's Debt Structure.

As of the Petition Date, Debtor's senior secured creditor was Red River State Bank. Debtor has stipulated to allowance of RRSB's Claim in the aggregate principal amount of $13,878,457.38. The Debtor had granted security interests in, and liens on, all or substantially all of its assets to secure its obligations to RRSB.

Debtor's junior secured creditor was Watertown Development Company ("WDC"). WDC submitted Proof of Claim No. 4 for $2,122,790.70.

### 2.4 The Debtor's Employment of Professionals.

2.4.1 The Debtor requested and obtained the authority to employ the Dakota Bankruptcy Firm as its counsel.

### 2.5 Claims Against the Debtor.

2.5.1 *Administrative Expenses.* Plan Proponent estimates Administrative Expenses as of the Effective Date will be $50,000, part of which will be satisfied by a prepetition retainer of approximately $15,000.

2.5.2 *Priority Tax Claims.* As of the date of the Disclosure Statement, the amount of Priority Tax Claims filed against the Debtor is approximately $76,494.98. The Plan Proponent estimates that $76,494.98 in Priority Tax Claims will be allowed and unpaid as of the Effective Date of the Plan.

2.5.3    *Other Administrative Claims.* As of the date of the Disclosure Statement, the Plan Proponent estimates $0 for other Administrative Claims (excluding Professional Fees, Priority Tax Claims, and UST fees) as of the Effective Date.

2.5.4    *Classes 1 and 2 Secured Claims.* The value of the secured claims of RRSB and WDC will be determined by a Sale. RRSB will receive Sale Proceeds on account of its Secured Claim, net of the RRSB Plan Contribution. RRSB will have a deficiency based on the most recent appraisal, resulting in a general unsecured claim estimated to be $8,092,281. WDC's secured claim is junior to RRSB and undersecured. As a result, WDC is estimated to have a general unsecured deficiency claim of $564,343.04. The Plan Proponent does not believe there are any other Secured Claims.

2.5.5    *Class 3 General Unsecured Claims.* The Plan Proponent estimates the total amount of Class 3 general unsecured claims against the Debtor (excluding Convenience Class Claims) to be $5.7 million. Holders of Class 3 claims will receive their pro rata share of all distributions made by the Creditor Trust.

2.5.6    *Class 4 Convenience Class Claims.* The Plan Proponent anticipates there will be three general unsecured claims for less than $5,000: Watertown Municipal Utilities, White Glove Cleaning and Cannon Electric LLC. Holders of Class 4 claims will receive payment in full on the Effective Date.

2.5.7    *Class 5 Equity Interests*.  Holders of Equity Interests in Class 5 shall have their Equity Interests against the Debtor extinguished as of the Effective Date and shall receive no Distributions under this Plan.

3.    SUMMARY OF PLAN IMPLEMENTATION

   *3.1    In General.*

The Plan is proposed by RRSB. The Holders of allowed Claims will be paid in accordance with priorities set forth in the Bankruptcy Code, a structure that the Plan Proponent believes will produce a fundamentally equitable outcome for all Creditors.

3.1.1    *Sale Process.* The Real Property will be sold by a Broker and Sale Proceeds will be distributed pursuant to the Plan on the Effective Date.  The Broker will be entitled to a commission of 5% of gross sale proceeds. Broker shall market the Real Property for at least 60 days and then conduct an auction for qualified bidders. Broker, in consultation with Plan Proponent, shall clearly advertise bidding procedures for, among other things: (a) qualification of bidders; (b) submission of binding bids by a bid deadline; (c) bidding increments; and (d) a mandatory earnest money deposit.

3.1.2    *Free and Clear Sale*. The Real Estate shall be transferred to the prevailing bidder free and clear of all liens, claims, interests, and encumbrances to the maximum extent permitted by the Bankruptcy Code, with such security interests attaching to the Sale Proceeds with

8

the same validity, priority, and extent as existed prepetition, for subsequent distribution under the Plan.

       3.1.3   *Credit Bidding*. Any Holder of an allowed Secured Claim may credit bid at the Sale in accordance with section 363(k)..

       3.1.4   *Creditor Trust.* A trust shall be formed on the Effective Date for the benefit of Class 3 creditors (the "Creditor Trust") pursuant to a trust agreement**.** Debtor's records confirm the existence of potentially avoidable transfers. On the Effective Date, all Causes of Action shall be assigned to the Creditor Trust. The Creditor Trustee shall investigate, litigate and/or settle Causes of Action for the benefit of all Holders of Class 3 Claims. The RRSB Plan Contribution will provide no less than $50,000 to fund the Creditor Trust.

   **3.2**   ***Claim Objection, Debt Recharacterization, and Equitable Subordination of Insider Claims***. On the Effective Date, any proof(s) of claim filed by Insiders seeking allowance of claims against the Debtor shall be equitably subordinated to all other holders of Class 3 Claims pursuant to 11 USC § 510, due to the Insiders' prepetition misconduct.

   **3.3**   ***RRSB Settlement***. In exchange for the RRSB Plan Contribution, all claims against RRSB made by the Debtor in the Adversary Proceeding and all claims that were raised or could have been raised by Debtor against RRSB and any of its employees, officers, directors, and representatives in the Foreclosure Proceeding (captioned as *RRSB v. Generations on 1st, LLC et. al.*, Codington County Circuit Court, South Dakota, Case No. CV-24-000064) shall be dismissed with prejudice. In further consideration thereof, RRSB will dismiss the Foreclosure Proceeding with respect to the Debtor on or before the Effective Date.

   **3.4**   ***Leases and Executory Contracts***. Any executory contracts with Insiders will be deemed rejected as of the Effective Date. Residential leases with current tenants of the GO1 Project, the long-term lease for the Watertown Senior Center, and all TIF Agreements are not terminated or otherwise modified by the Plan.

   **3.5**   ***Modification of the Plan.*** The Plan Proponent may alter, amend or modify the Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation hearing. After the Confirmation Date and prior to the Effective Date, the Plan Proponent may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Equity Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. From and after the Effective Date and prior to substantial consummation of the Plan (as defined in Section 1101(2) of the Bankruptcy Code), the Plan Proponent may seek non-material modification or amendment of the Plan as permitted by the Bankruptcy Code.

   **3.6**   ***Plan Controls.***  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of this Disclosure Statement, the provisions of the Plan will control.

*3.7* **Binding Effect.** The provisions of the Plan and the Confirmation Order are binding and will inure to the benefit of the Holders of Claims against, and Equity Interests in, the Debtor and its respective successors, assigns, heirs and personal representatives, whether or not such persons voted to accept or reject the Plan.

*3.8* **Tax Consequences.** The Federal income tax consequences of the Plan to a Holder of a Claim or Equity Interest will depend upon a number of factors and can be complex. In general, a Holder of a Claim that receives cash in satisfaction of its allowed Claim will generally receive a gain or loss with respect to the principal amount of the allowed Claim equal to the difference between: (i) the Holder's basis in the Claim (other than any Claim in respect to accrued interest); and (ii) the balance of the cash received after any allocation to the accrued interest. The Plan Proponent has not determined the character of any gain or loss to be recognized by a Holder with respect to any distribution, if any, such Holder may receive under the Plan. FOR THE FOREGOING REASONS, HOLDERS OF CLAIMS AND HOLDERS OF EQUITY INTERESTS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) OF THE PLAN. THE PLAN PROPONENT IS NOT MAKING ANY REPRESENTATION REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, NOR IS THE PLAN PROPONENT RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES. HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TREATMENT OF DISTRIBUTIONS MADE UNDER THE PLAN.

**4.    POST-CONFIRMATION ISSUES**

*4.1    Exculpation and Limitation of Liability*

4.1.1    *No Liability for Solicitation or Participation.* As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

4.1.2    *Exculpation* Pursuant to § 1125(e) of the Bankruptcy Code; the Plan Proponent and the Creditor Trustee, and their Professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan

("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

## 5. FEASIBILITY

### 5.1 Financial Feasibility Analysis.

**5.1.1 Bankruptcy Code Standard.** The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless contemplated by the Plan.

**5.1.2 No Need for Further Reorganization of Debtor.** The Plan provides for the liquidation of all of the Debtor's assets. Accordingly, the Plan Proponent believes that all Plan obligations will be satisfied without the need for further reorganization of the Debtor.

## 6. ALTERNATIVES TO PLAN

### 6.1 Chapter 7 Liquidation.

**6.1.1 Bankruptcy Code Standard.** Notwithstanding acceptance of the Plan by the requisite number of Holders of Claims and Equity Interests of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each Impaired Class of Claims and Equity Interests a recovery that has a value at least equal to the value of the distribution that each such Person would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

**6.1.2 Plan is in Best Interest of Creditors.** The Plan Proponent believes that the Plan satisfies this standard because the Plan provides for an orderly liquidation of the assets. The RRSB Plan Contribution improves the rate of recovery for Holders of Administrative and Class 3 and 4 Claims. A Chapter 7 Liquidation Analysis attached hereto as **Exhibit 1** and Plan Projections are attached hereto as **Exhibit 2**. Creditors may ascertain the potential benefit of voting in favor of the Plan by comparing their projected recovery in Exhibits 1 and 2.

### 6.2 Risk Factors.

6.2.1 The amount of Sale Proceeds to be generated by the Sale can be estimated from the appraised value of the Real Property and the Broker's advice, but there can be no guarantee of success.

11

6.2.2    The Plan Proponent has reviewed the actual date and amount of potentially fraudulent transfers in this case to estimate the gross value of the Causes of Action that will be transferred to the Creditor Trust. However, the Plan Proponent cannot predict or guarantee the value of future settlements or litigation proceeds to be collected by the Creditor Trust.

**6.3    Recommendations.**    The Plan Proponent believes the Creditor's Plan provides Creditors with the best possible mechanism for selling the Real Estate and ensuring that the Causes of Action are investigated, litigated or settled for the benefit of all Creditors in this bankruptcy case. By contrast, the Debtor's plan is likely to result in an additional bankruptcy filing, which will result in greater delay and financial losses for all Creditors. The Debtor's plan is also designed to enjoin all Creditors from seeking to recover loan proceeds that may have been transferred out of the Debtor to Insiders. By the time the Debtor's plan fails, critical statutes of limitations will have lapsed and it will be impossible to recover such transfers for the benefit of Creditors. Unless these transfers are clawed back, there will be no recovery for Class 3 Creditors.

## GENERAL DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT RELATES TO A CHAPTER 11 PLAN OF LIQUIDATION FOR GENERATIONS ON 1ST, LLC FILED BY RED RIVER STATE BANK, AND IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN, AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT IN THE FUTURE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER

AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY FRE 408. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR. EACH CREDITOR SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED IN THE PLAN.

**THE PLAN PROPONENT RECOMMENDS THAT YOU VOTE IN FAVOR OF THE CREDITOR'S PLAN.**

**7.    CONCLUSION**

It is important that you exercise your right to vote on the Plan. It is the Plan Proponent's belief and recommendation that the Creditor Plan fairly and equitably provides for the treatment of all Claims against the Debtor and it will not result in a serial bankruptcy filing by the Debtor.

February 5, 2026                                    **VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Kesha L. Tanabe
ktanabe@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
Telephone: (701) 237-6983
Fax: (701) 476-7676

*COUNSEL TO PLAN PROPONENT*

4922-1459-4943 v.3

# **EXHIBIT 1**

**(Liquidation Analysis)**

**Generations on First, LLC**
Liquidation Analysis

| | Recoverable Assets: | $ Amount | Liquidation Analysis Scenarios | | |
|---|---|---|---|---|---|
| | | | LOW | MID | HIGH |
| a | Cash (DIP Account Balance) | $ 135,914 | $ 135,914 | $ 135,914 | $ 135,914 |
| | *Recovery Rate* | | 100% | 100% | 100% |
| b | Projected Future Tax Increment Revenue | 1,558,447.66 | $ 1,246,758 | $ 1,402,603 | $ 1,558,448 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| c | Real Property (tax assessed value) | $ 5,786,176 | $ 4,628,941 | $ 5,207,558 | $ 5,786,176 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| d | Prepetition Retainer (Statement of Compensation for Debtor's Counsel) | $ 15,000 | $ 12,000 | $ 13,500 | $ 15,000 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| e | Litigation against RRSB (Complaint does not seek specific monetary damages) | $ 50,000 | $ 40,000 | $ 45,000 | $ 50,000 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| f | Chapter 5 Claims (Gross Value of Potentially Avoidable Transfers to Insiders) | $ 2,883,110 | $ 951,426 | $ 1,441,555 | $ 1,902,853 |
| | *Recovery Rate* | | 33% | 50% | 66% |
| | **Chapter 7 Priority Claims:** | | | | |
| g | Chapter 7 Trustee Compensation | | $ 841,805 | $ 989,536 | $ 1,133,807 |
| h | CH 7 Trustee Professionals/Contingent Fees for CH 5 litigation | | $ 190,285.28 | $ 288,311.03 | $ 380,570.56 |
| i | Priority Tax Claims (Codington County RE Tax) | $ 76,495 | $ 76,495 | $ 76,495 | $ 76,495 |
| | **Estimated Liquidation Proceeds Available for Debt** | | $ 5,906,454 | $ 6,891,789 | $ 7,857,518 |
| | **Senior Secured Lender** | | | | |
| j | Red River State Bank (First on Cash + Real Estate) | $ 13,878,457 | $ 4,764,855 | $ 5,343,472 | $ 5,922,090 |
| | **Total Senior Secured Lender** *Recovery Rate* | | 34% | 39% | 43% |
| | **Funds Available for Junior Secured Debt and Unsecured Debt** | | $ - | $ - | $ - |
| | **Junior Secured Debt** | | | | |
| k | Watertown Development Corporation (First on Future Tax Revenue) | $ 2,122,791 | $ 1,246,758 | $ 1,402,603 | $ 1,558,448 |
| | *Recovery Rate* | | 59% | 66% | 73% |
| | **Net Funds Available for Chapter 11 Claims** | | $ - | $ 145,713 | $ 376,980 |
| l | Administrative Claims - Chapter 11 Professionals | $ 50,000 | $ - | $ 50,000 | $ 50,000 |
| | *Recovery Rate* | | 0% | 100% | 100% |
| | **Net Funds Available for Unsecured Debt** | | $ - | $ 95,713 | $ 326,980 |
| | **Unsecured Debt** | | | | |
| m | General Unsecured Claims | $ 11,000,000.00 | $ - | $ - | $ 326,980 |
| | *Recovery Rate* | | 0% | 0% | 3% |
| | **Funds Available for Equity** | | $ - | $ - | $ - |

**Assumptions:**

f: Based on gross value of potentially avoidable transfers (ECF 210)
m: RRSB and WDC deficiency claims, plus POC Nos. 2, 5-8)

# EXHIBIT 2

**(Plan Projections)**

**Generations on First, LLC**
Plan Projections

| | Recoverable Assets: | $ Amount | Liquidation Analysis Scenarios | | |
|---|---|---|---|---|---|
| | | | LOW | MID | HIGH |
| a | Cash on Hand (DIP Account Balance) | $ 135,914 | $ 135,914 | $ 135,914 | $ 135,914 |
| | *Recovery Rate* | | 100% | 100% | 100% |
| b | Future Tax Increment Revenue | 1,558,447.66 | $ 1,246,758 | $ 1,402,603 | $ 1,558,448 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| c | Real Property (tax assessed value) | $ 5,786,176 | $ 4,628,941 | $ 5,207,558 | $ 5,786,176 |
| | *Recovery Rate* | | 80% | 90% | 100% |
| d | Prepetition Retainer (Statement of Compensation for Debtor's Counsel) | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 |
| | *Recovery Rate* | | 100% | 100% | 100% |
| e | RRSB Plan Contribution/Settlement Payment | $ 200,000 | $ 200,000 | $ 200,000 | $ 200,000 |
| | *Recovery Rate* | | 100% | 100% | 100% |
| f | Chapter 5 Claims (Gross Value of Potentially Avoidable Transfers to Insiders) | $ 2,883,110 | $ 951,426 | $ 1,441,555 | $ 1,902,853 |
| | *Recovery Rate* | | 33% | 50% | 66% |
| | **Gross Value of Assets to be Liquidated under the Plan** | | $ 7,178,039 | $ 8,402,630 | $ 9,598,390 |
| | **Admin Expenses and Priority Claims to be Paid under the Plan** | | | | |
| g | Administrative Claims - Chapter 11 Professionals | | $ 50,000 | $ 50,000 | $ 50,000 |
| h | Priority Tax Claims (Codington County RE Tax) | | $ 76,495 | $ 76,495 | $ 76,495 |
| i | UST Fees | | $ 71,780.39 | $ 84,026.30 | $ 95,983.90 |
| | **Liquidation Proceeds Available for Classified Debt under the Plan** | | $ 6,979,764 | $ 8,192,109 | $ 9,375,912 |
| | **Senior Secured Lender** | | | | |
| j | Red River State Bank (First on Cash + Real Estate) | $ 13,878,457 | $ 4,764,855 | $ 5,343,472 | $ 5,922,090 |
| | **Total Senior Secured Lender** | *Recovery Rate* | 34% | 39% | 43% |
| | **Funds Available for Junior Secured Debt and Unsecured Debt** | | $ - | $ - | $ - |
| | **Junior Secured Debt** | | | | |
| k | Watertown Development Corporation (First on Future Tax Revenue, Second on Real Estate) | $ 2,122,791 | $ 1,246,758 | $ 1,402,603 | $ 1,558,448 |
| | *Recovery Rate* | | 59% | 66% | 73% |
| | **Net Funds Available for Unsecured Debt** | | $ 968,151 | $ 1,446,034 | $ 1,895,374 |
| l | Convenience Class Claims | $6,305 | $6,305 | $6,305 | $6,305 |
| | *Recovery Rate* | | 100% | 100% | 100% |
| m | General Unsecured Claims | $ 10,000,000.00 | $ 961,846 | $ 1,439,729 | $ 1,889,069 |
| | *Recovery Rate* | | 10% | 14% | 19% |
| | **Funds Available for Equity** | | $ - | $ - | $ - |

Assumptions:

f: Based on gross value of potentially avoidable transfers (ECF 210)
l: Sum of all General Unsecured Claims under $5,000
m: Estimated RRSB and WDC Deficiency Claims, plus POC Nos. 2, 5-8)