**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| In Re: | Case No.: 25-30002 |
|---|---|
| Generations on 1st LLC, | Chapter 11 |
| Debtor. | |

| In Re: | Case No.: 25-30003 |
|---|---|
| Parkside Place LLC, | Chapter 11 |
| Debtor. | |

**NOTICE OF RED RIVER STATE BANK'S MOTION FOR DERIVATIVE**
**STANDING TO PURSUE CLAIMS ON BEHALF OF THE ESTATE**

PLEASE TAKE NOTICE that Creditor Red River State Bank ("RRSB") has filed the accompanying Motion for Derivative Standing to Pursue Claims on Behalf of the Estate (the "Motion").

PLEASE TAKE FURTHER NOTICE that written responses or objections to the Motion, if any, must be filed with the clerk of the U.S. Bankruptcy Court, Quentin N. Burdick Courthouse, 655 1st Avenue North, Suite 201, Fargo, North Dakota 58102-4932, within 14 days from the date of the mailing of this notice. At the same time, you must serve a copy of your objection or response on RRSB's counsel, the Vogel Law Firm. Any objections not timely filed and served may be deemed waived.

PLEASE TAKE FURTHER NOTICE that if no responses or objections are timely filed the Court may enter an order granting the relief requested in the Motion without further notice or hearing.

Dated this 6th day of February, 2026.

**VOGEL LAW FIRM**

BY: */s/ Drew J. Hushka* _____
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Kesha L. Tanabe
ktanabe@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
*ATTORNEYS FOR CREDITOR RED RIVER STATE BANK*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re:<br><br>Generations on 1st LLC,<br><br>          Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| --- | --- |
| In Re:<br><br>Parkside Place LLC,<br><br>Debtor. | Case No.:  25-30003<br><br>Chapter 11 |

## RED RIVER STATE BANK'S MOTION FOR DERIVATIVE STANDING TO PURSUE CLAIMS ON BEHALF OF THE ESTATES

Creditor Red River State Bank ("RRSB") respectfully moves this Court for standing to pursue certain insider claims on behalf of Debtors Generations on 1st LLC ("Generations") and Parkside Place LLC ("Parkside") (Generations and Parkside shall be collectively referred to as "Debtors"), and respectfully states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are 11 U.S.C. §§ 105(a), 1103(c)(5), and 1109(b).

**RELIEF REQUESTED**

4.      RRSB is seeking an order granting it standing to pursue the claims identified herein and in the demand letter (the "Demand Letter") attached hereto as **Exhibit A**, as well as any other claims or causes of action that arise from the same nucleus of operative facts or that may be brought against the entities identified therein in connection with these cases (the "Claims"). These entities include, without limitation, the following (the "Insider Entities"):

- Jesse Craig
- Parkside
- Generations
- The Ruins, LLC
- The Lofts, LLC
- Craig Holdings, LLC
- Craig Development, LLC
- Craig Properties, LLC
- CP Business Management, Inc.
- Mulinda Craig
- Jordan Horner

**STATEMENT OF FACTS**

**I.      Parkside Claims**

5.      Parkside executed numerous construction loan agreements with RRSB related to the construction of a real estate development located at 8 2nd St. NE, Watertown, SD 57201 (the "Parkside Development").[1] Each loan agreement required that Parkside would only use

---

[1]    Ex. A, at 3.

2

loan proceeds provided to it for the Parkside Development.[2]  Nevertheless, the documentary evidence obtained to date by RRSB establishes that Parkside, acting through its principal Jesse Craig, fabricated documents to support draw requests, misappropriated funds advanced for the Parkside Development, and funneled funds to Insider Entities.[3]

6.    These transactions give rise to serious questions with respect to, among other things, potential claims for breach of fiduciary duty, fraudulent transfer, and self-dealing.

## II.    Generations Claims

7.    Generations executed numerous construction loan agreements with RRSB related to the construction of a real estate development located at 26 1st Ave., Watertown, SD 57201 (the "Generations Development").[4]  Each loan agreement required that Generations would only use loan proceeds provided to it for the Generations Development.[5]  Nevertheless, the documentary evidence obtained to date by RRSB establishes that Generations, acting through its principal Jesse Craig, fabricated documents to support draw requests, misappropriated funds advanced for the Generations Development, and funneled funds to Insider Entities.[6]

8.    These transactions give rise to serious questions with respect to, among other things, potential claims for breach of fiduciary duty, fraudulent transfer, and self-dealing.

## III.    Debtors have refused to pursue the Claims.

---

[2]    *Id.*

[3]    *See id.* at 4-8.

[4]    *Id.* at 9.

[5]    *Id.*

[6]    *Id.* at 9-18

9.      Despite repeated overtures by RRSB, Debtors have consistently indicated that they are unwilling to consider settlement or compromise of the Claims, absent litigation.

10.      Accordingly, on February 19, 2025, RRSB requested written confirmation from Debtors by February 26, 2025, that Debtors would not pursue the Claims.[7]  RRSB indicated that, upon receiving such confirmation, that it would file a motion with the Court seeking derivative standing to prosecute the claims for the benefit of Debtors' estates.[8]

11.      Debtors responded on February 26, 2025.[9]  Debtors first pushed aside the evidence of insider dealings as "allegations . . . that have been made—and addressed— previously."[10]  Nevertheless, Debtors claimed that if they received "actual evidence that shows Jesse Craig ("Mr. Craig"), or any other agent of [Debtors], misappropriated funds improperly," than Debtors would, "to the extent necessary," take "appropriate remedial actions[.]"[11] However, Debtors closed their response with their true thoughts on the evidence of improper insider dealings by characterizing RRSB's concern's as a "folly[.]"[12]

12.      To date, Debtors have taken no action to pursue the Claims and have not amended their schedules to even identify the Claims as possible assets.

---

[7]    Ex. A, at 1-2.

[8]    *Id.*

[9]    *See generally* Ex. B.

[10]    *Id.* at 1.

[11]    *Id.*

[12]    *Id.* at 2.

## BASIS FOR RELIEF REQUESTED

13.     As unambiguously articulated by the Eighth Circuit Court of Appeals, "derivative standing is available to a creditor to pursue avoidance actions when it shows that a . . . debtor-in-possession in the case of Chapter 11[] is 'unable or unwilling' to do so."[13]

14.     To—

establish derivative standing, a creditor must show: (1) it petitioned the trustee to bring the claims and the trustee refused; (2) its claims are colorable; (3) it sought permission from the bankruptcy court to initiate an adversary proceeding; and (4) the trustee unjustifiably refused to pursue the claims.[14]

RRSB satisfies all four elements in this case.

## IV.   Debtors refused RRSB's petition to bring the Claims.

15.     "[P]etitioning the [debtor-in-possession] . . . ought to be a mere formalit[y]."[15] RRSB has satisfied that mere formality.

16.     On February 19, 2025, through the Demand Letter, RRSB identified the Claims for the Debtors, requesting that Debtors pursue the same.[16]

17.     Debtors responded on February 26, 2025, accusing of RRSB of fraud and "poor record keeping," and of casting allegations at Insider Entities "without a proper factual mooring."[17]  Further, Debtors characterized any attempt to pursue the Claims to be a "folly[.]"[18]  Debtors' have steadfastly refused to pursue the Claims.

---

[13]   *PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Services, Inc.)*, 540 F.3d 892, 898 (8th Cir. 2008) (footnote omitted).

[14]   *Id.* at 900.

[15]   *In re Racing Servs.*, 540 F.3d at 900.

[16]   *See generally* Ex. A.

[17]   Ex. B, at 2.

[18]   *Id.*

## V.    The Claims are—at least—colorable.

18.    "A creditor's claims are colorable if they would survive a motion to dismiss."[19] Federal Rule of Bankruptcy Procedure 7012(b) provides that Rule 12(b) of the Federal Rules of Civil Procedure applies in adversary proceedings.[20]  When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts as true the factual allegations in the complaint and construes all reasonable inference in favor of the plaintiff.[21] To withstand a motion to dismiss, a complaint must include facts sufficient to "state a claim to relief that is plausible on its face."[22]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]  Based on the documentary evidence identified above by RRSB[24] and also as identified on the Court's docket through extensive and detailed Declarations of RRSB's representatives[25] the Claims would survive a motion to dismiss.

## VI.    RRSB seeks permission from this Court to initiate an adversary proceeding.

---

[19]    *In re Racing Servs.*, 540 F.3d at 900.

[20]    *See* Fed. R. Bankr. P. 7012(b).

[21]    *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir.2013).

[22]    *Retro Television Network, Inc. v. Luken Commc'ns, LLC.*, 696 F.3d 766, 768 (8th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[23]    *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[24]    *See* ¶¶ 5-8, *supra*.

[25]    *See* ECF 208 (Declaration of Charles Aarestad In Support of Motion to Terminate Exclusivity RE: Parkside); ECF 210 (Declaration of Charles Aarestad In Support of Motion to Terminate Exclusivity RE: Generations); and ECF 271 (Declaration of Danielle Harless RE: Transfers of Funds Unrelated to the Parkside and Generations Projects).

19.     "[P]etitioning the . . . bankruptcy court ought to be a mere formalit[y]."[26]  RRSB, through this Motion, has satisfied this formality.

## VII.   Debtors unjustifiably refused to pursue the Claims.

20.     To be granted derivative standing, a moving party must show the refusal to pursue claims is unjustified.[27]  "To satisfy its burden, the creditor, at a minimum, must provide the bankruptcy court with *specific* reasons why it believes the trustee's refusal is unjustified."[28]  "A creditor's request for derivative standing must be supported by competent evidence[.]"[29]  The burden of persuasion remains on the moving creditor so that "even if the [debtor-in-possession] offers no reasons for his refusal to pursue the creditor's proposed claims, the bankruptcy court may nevertheless reject the creditor's request to proceed derivatively."[30]  Debtors' refusal to pursue the Claims was unjustified.

21.     Debtors' "justification" for not pursuing the Claims is simply the desire to avoid personal accountability for wrongdoing.  Debtors' principal, Jesse Craig, was asked about the possibility of investigating and pursuing insider claims, describing the possibility as a "conundrum" because he "would in essence be suing myself or going after myself."[31]  Indeed,

---

[26]  *In re Racing Servs.*, 540 F.3d at 900.

[27]  *In re Racing Servs.*, 540 F.3d at 900.

[28]  *Id.* (emphasis in original).

[29]  *Id.* at 900 n.8.

[30]  *Id.* at 900 n.9 (citation omitted).

[31]  *See In re Ruins*, N.D. Bankr. Ct. Case No. 25-30004, Tr. from Nov. 4, 2025, Hr'g at 36:1-8.

Jesse Craig admitted that he was not inclined include to sue himself.[32]  Respectfully, Debtors'

self-serving disinclination to pursue viable claims again Insider Entities is not "justification."

### <u>NOTICE</u>

22.    RRSB has provided notice of this Motion to: (a) counsel for Debtors; (b) the

Office of the United States Trustee; and (c) those parties that have requested notice pursuant

to Bankruptcy Rule 2002.  RRSB submits that, in light of the nature of the relief requested, no

other or further notice need be given.

### <u>NO PRIOR REQUEST</u>

23.    No prior request for the relief sought in this Motion has been made to this or

any other court.

WHEREFORE, RRSB respectfully requests that the Court grant this Motion and enter

an order which:

1.    Grants the Motion;

2.    Grants RRSB standing to pursue the Claims set forth in the Demand Letter on
behalf, and for the benefit of, the Debtors' estates and their creditors; and

3.    Retains jurisdiction with respect to all matters arising from or related to the
implementation of this Order.

Dated this 6th day of February, 2026.

---

[32]    *Id.*

**VOGEL LAW FIRM**

BY:/s/ Drew J. Hushka _
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Kesha L. Tanabe
ktanabe@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR CREDITOR RED RIVER
STATE BANK

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically

upon filing by this Court's CM/ECF System on all parties receiving electronic notice in this

case.

Dated February 6, 2026.

*/s/ Drew J. Hushka*
BY:   Drew J. Hushka (#08230)

# EXHIBIT A

**RRSB Demand Letter**



Phone: 701.237.6983
218 NP Avenue | Fargo, ND 58102
PO Box 1389 | Fargo, ND 58107-1389
Fax: 701.476.7676
cstanley@vogellaw.com

February 19, 2025

**VIA EMAIL & U.S. MAIL**

mac@dakotabankruptcy.com

Mac VerStandig
The Dakota Bankruptcy Firm
1630 1st Ave N
Fargo, ND  58102

Re:   **Red River State Bank v. Generations on 1st**
      **Red River State Bank v. Parkside**
      **Bankr. No.: 25-30002**
                 **25-30003**
      **Our File No.: 034534.25027**
                      **034534.25026**

Dear Mr. VerStandig:

Based upon the preliminary analysis and investigation undertaken by Red River State Bank ("RRSB"), it appears Parkside Place, LLC ("Parkside") and Generations on 1st, LLC ("Generations") (Parkside and Generations are hereinafter collectively, the "Debtors") have strong claims against certain insiders and entities with insider ties, including but not limited to the following (collectively, the "Insider/Affiliated Entities"):

- Jesse Craig
- Parkside Place, LLC (Jesse Craig is the sole member)
- Generations on 1st, LLC (Jesse Craig is the sole member)
- The Ruins, LLC (Jesse Craig is the sole member)
- The Lofts, LLC (Jesse Craig previously was the sole member at all times relevant)
- Craig Holdings, LLC (Jesse Craig is the sole member)
- Craig Development, LLC (Jesse Craig is the sole member)
- Craig Properties, LLC (Jesse Craig holds 90% membership interests and his daughter Jordan Horner holds 10% of membership interests)
- CP Business Management, Inc. (50/50 ownership of Jesse Craig and Mulinda Craig)

To date, the Debtors have failed to identify these claims in their respective bankruptcy schedules and/or have failed to pursue these claims. RRSB requests written confirmation no later than **5:00 p.m. CST on Wednesday, February 26, 2025**, that the Debtors will not pursue these claims.

February 19, 2025
Page 2

Upon receiving such confirmation, RRSB intends to file a motion with the Bankruptcy Court seeking derivative standing to prosecute such claims based on the Debtors' inability or unwillingness to do so. *See e.g., In re Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008) (holding that the bankruptcy court may grant derivative standing to a creditor where the debtor-in-possession is "unable or unwilling" to pursue claims); *In re Deitz*, 411 B.R. 650, 658 (Bankr. D.N.D. 2009) (stating a creditor may proceed to pursue its claim derivatively).

The prior discovery from the foreclosure actions in Codington County Circuit Court have established serious concerns as to the Debtors' falsification of invoices, insider transactions, fraudulent transfers, and self-dealing. Based on the information gleaned from that discovery, which included the issuance of twenty-five (25) subpoenas to subcontractors that performed work on the three projects, RRSB is informed and believes that these claims include, but are not limited to, the following.

## I.    Jesse Craig

Mr. Craig is the sole member of all three of the Debtor entities. He is also the sole member of Craig Development, LLC, Craig Holdings, LLC, a 90% owner of Craig Properties, LLC, and 50% owner with his spouse Mulinda Craig of CP Business Management, Inc. Mr. Craig testified at the 341 meeting that he had primary responsibility for submitting the requests for funding to RRSB and Watertown Development Corp. ("WDC"). Mr. Craig also testified at the 341 meeting that he was the one responsible for providing information to CBRE (the appraiser).

Under Minnesota law[1], to make out a claim for fraudulent misrepresentation, the plaintiff must establish that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

---

[1]    RRSB's loan documents include a Minnesota choice of law clause, although law would remain similar, and analysis would not meaningfully change, if North or South Dakota law were to apply.

February 19, 2025
Page 3

*Hoyt Properties, Inc. v. Production Resource Group, L.L.C.*, 736 N.W.2d 313 (Minn. 2007) quoting *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986).

A director's fiduciary responsibility to an LLC includes the duties of good faith, care, and loyalty, and also includes the duty to avoid self-dealing. The preliminary analysis and investigation has uncovered sufficient facts to indicate that there are serious questions with respect to, among other things, potential claims for breach of fiduciary duty, fraudulent transfer, and self-dealing in connection with Debtors' dealings with the Insider/Affiliated Entities under the common control of Jesse Craig.

## II.    **Parkside**

### a) *Requirements of the Loan Documents*

Parkside executed numerous Construction Loan Agreements, including one of date 8/26/2021, with respect to RRSB's funding for construction of the Parkside Place Apartments to be located at 8 2nd St NE, Watertown, SD 57201 (the "Parkside Project"). The Construction Loan Agreement(s) had the following conditions precedent before funds would be disbursed:

CONDITIONS PRECEDENT TO EACH ADVANCE. DRAW REQUESTS TOTALED AND ORGANIZED FROM THE CONSTRUCTION MANAGEMENT COMPANY OR DEVELOPMENT COMPANY SUBMITTED BY THE 15TH OF EACH MONTH.

DISBURSEMENT OF LOAN FUNDS. The following provisions relate to the disbursement of funds from the Loan Fund.

Application for Advances. Each application shall be stated on a standard AIA payment request form or other form approved by Lender, executed by Borrower, and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in the Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement.

The Construction Loan Agreement(s) also specifically stated:

> Borrower shall use the Loan Funds solely for the following specific purposes: AS PER THE SIGNED UPDATED SWORN CONSTRUCTION STATEMENT.
>
> …
>
> **Loan Proceeds**. Use all Loan proceeds solely for the following specific purposes: **AS PER THE SIGNED UPDATED SWORN CONSTRUCTION STATEMENT.**

February 19, 2025
Page 4

### b) *Draw Requests*

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB what were identified as Draw Requests ## 1-13. The following issues are noted with respect to these Draw Requests:

**Draw #1**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB what was identified as Draw Request #1 as the work on the Parkside Project that had been reimbursed/paid for by the WDC. RRSB relied on this information as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$300,000** requested for reimbursement for Gage Bros. Concrete Products Inc. However, the property that was the subject of this $300,000 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 7-12.

- **$189,000** requested for reimbursement for T.L. Stroh Architects. However, the documentation submitted by **TL Stroh** pursuant to a subpoena was that its work performed on the Parkside Project was a fixed fee of $167,000 and Terry Stroh indicated he had no record of the $189,000 invoice submitted in support of Draw #1. *See* Plaintiff's Requests for Admission re: Parkside (Set II), Nos 98-101. Accordingly, Mr. Stroh has essentially confirmed these invoices were falsified.

**Draw #2**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB what was identified as Draw Request #2 as the work on the Parkside Project that had been reimbursed/paid for by the WDC. RRSB relied on this information as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$75,000** requested reimbursement for Limoges Construction Inc. However, the property that was the subject of this $75,000 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 13-20.

February 19, 2025
Page 5

**Draw #3**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB what was represented as Draw #3 as work and materials for the improvement of the Parkside Project. RRSB relied on the information provided in Draw #3 as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$109,080** was allegedly paid to Limoges Construction Inc. Based on the documentation provided by Limoges Construction Inc. pursuant to subpoena, it appears Invoice #7687 submitted in support of Draw #3 was deliberately falsified and was for the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 21-27.

**Draw #4**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB Draw #4 requesting the sum of $300,983.52. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Parkside Project. RRSB relied on the information provided in Draw #4 in making the disbursement and also as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$12,746.70** requested reimbursement for Limoges Construction Inc. However, the property that was the subject of this $12,746.70 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 28-32.

- **$46,050** requested reimbursement for R.L. Drywall and Insulation, Inc. However, the property that was the subject of this $46,050 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. The $46,050 invoice appears to have been falsified. *See* Plaintiff's Requests for Admission re: Parkside (Set II), Nos. 102-109.

**Draw #5**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB Draw #5 requesting the sum of $563,790.45. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Parkside Project. RRSB relied on the information provided in Draw #5 in

February 19, 2025
Page 6

making the disbursement and also as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$74,500** requested reimbursement for Watertight Inc. However, the property that was the subject of this $74,500 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 33-39.

- **$15,210** requested reimbursement for Baete-Forseth HVAC LLC. However, the property that was the subject of this $15,210 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 40-44.

**Draw #6**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB Draw #6 requesting the sum of $728,153.04. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Parkside Project. RRSB relied on the information provided in Draw #6 in making the disbursement and also as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$105,000** requested reimbursement to Craig Development, LLC for part of its developer's fee. The Pay Application submitted by **Craig Development, LLC** does not reflect that the sum of $105,000 was actually credited to the development fee. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 47-53.

**Draw #10**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig Development, LLC, provided to RRSB Draw #10 requesting the sum of $619,483.54. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Parkside Project. RRSB relied on the information provided in Draw #10 in making the disbursement and also as it was reflected in the Parkside Contractor Disbursement Summar(ies) (discussed below).

- **$5,280.76** reimbursement requested for Codington County real estate taxes for **The Ruins, LLC**. *See* Plaintiff's Requests for Admission re: Parkside (Set I), Nos. 67-71.

February 19, 2025
Page 7

**Draw #11**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig
Development, LLC, provided to RRSB Draw #11 requesting the sum of $437,316.35. Pursuant to
the Construction Loan Agreement(s), requests for disbursements were only to be used for work
done by Craig Development, LLC (as the General Contractor), and for materials and equipment
incorporated into the Parkside Project. RRSB relied on the information provided in Draw #11 in
making the disbursement and also as it was reflected in the Parkside Contractor Disbursement
Summar(ies) (discussed below).

- **$130,000** reimbursement requested for R.L. Drywall and Insulation, Inc. Parkside
  and Jesse Craig admitted that R.L. Drywall and Insulation Inc. was to be paid the
  stipulated amount of $228,000 for work performed on the Parkside Project. It
  appears this was a duplicate request for $130,000 that was also made in Draw #10.
  *See* Plaintiff's Requests for Admission re: Parkside (Set II), Nos. 102, 110-114.

**Draw #13**

Jesse Craig, individually and/or in his capacity as representative of Parkside and Craig
Development, LLC, provided to RRSB Draw #13 requesting the sum of $416,54.95. Pursuant to
the Construction Loan Agreement(s), requests for disbursements were only to be used for work
done by Craig Development, LLC (as the General Contractor), and for materials and equipment
incorporated into the Parkside Project. RRSB relied on the information provided in Draw #13 in
making the disbursement and also as it was reflected in the Parkside Contractor Disbursement
Summar(ies) (discussed below).

- **$98,000** reimbursement requested for R.L. Drywall and Insulation, Inc. RL Drywall
  was to be paid a total of $228,000 for its work on the Parkside Project. However,
  based on the amounts submitted in Draw #4 ($46,050 – for the Lofts Apartments),
  Draw Request #10 ($130,000), Draw #11 ($130,000), and Draw #13 ($98,000), it
  would appear that Parkside and/or Craig Development, LLC received a total of
  $404,050 for reimbursement for work allegedly performed by R.L. Drywall and
  Insulation, Inc. which is $176,050 more than should have been disbursed. *See*
  Plaintiff's Requests for Admission re: Parkside (Set II), Nos. 102-116.

- **$1,009 and $3,600** reimbursements requested for Xtreme Fire Protection. However,
  the property that was the subject of these $1,009 and $3,600 reimbursement requests
  was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See*
  Plaintiff's Requests for Admission re: Parkside (Set II), Nos. 117-119.

February 19, 2025
Page 8

- **$4,776** for reimbursement to Clausen Construction Inc. However, the property that was the subject of this $4,776 reimbursement request was the **Generations on 1st Apartments** located at 26 1st Ave., Watertown, SD. *See* Plaintiff's Requests for Admission re: Parkside (Set II), Nos. 120-122.

### c) *Parkside Construction Disbursement Summar(ies) and the CBRE Appraisals*

Jesse Craig, individually and/or in his capacity as President of Craig Development, LLC provided to RRSB various executed Contractor Disbursement Summar(ies) for the Parkside Project ("Parkside Contractor Disbursement Summar(ies)"). A copy of the Parkside Contractor Disbursement Summary dated August 26, 2021 is attached hereto as **Exhibit 1**.

In executing the Parkside Contractor Disbursement Summar(ies), Jesse Craig, individually and in his capacity as contractor and owner of the Parkside Project:

> deposes and says that the foregoing are the names of all parties having contracts or subcontracts for specific portions of the work on said property and building or materials entering into the construction thereof, and the amounts due and to be due to each of said parties; that the items mentioned include all labor and material required to complete said buildings according to plans and specifications; that there are no other contracts outstanding; and that there is nothing due or to become due to any person for material, labor, or other work of any kind due upon said building other than as stated above.

The falsified and/or incorrect amounts discussed above were incorporated into the Parkside Contractor Disbursement Summar(ies). Jesse Craig presented these the Parkside Contractor Disbursement Summar(ies) to RRSB so it would continue providing funds to finish the work remaining on the Parkside Project, in particular through the Mulinda Loans (*i.e.*, loans of $1,321,100 on 3/15/2021; $1,477,500 on 4/26/2021; and $1,652,500 on 6/22/2021 made out to Mulinda Craig for funds to be used in the construction of the Parkside Project and the Generations Project).

Additionally, the Parkside Contractor Disbursement Summar(ies) were also provided to CBRE for the three (3) appraisals that it completed for the Parkside Project. The Parkside Contractor Disbursement Summar(ies) were included in the Addenda for the CBRE appraisals and formed the basis of the "cost approach" appraisal methodology.

### d) *Claims Against Insider/Affiliated Entities*

Under Section 513.44(a)(1) of the Minnesota Uniform Voidable Transactions Act ("MUVTA"), "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any

February 19, 2025
Page 9

creditor of the debtor." Minn. Stat. § 513.44(a)(1). Additionally, under Section 513.44(a)(2), "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor[] (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Minn. Stat. § 513.44(a)(2).

As outlined above, preliminary analysis and investigation shows that Parkside transferred property with actual intent to defraud creditors by transferring property for the benefit of insiders, *cf.* Minn. Stat. § 513.44(b)(1), or transferred property without receiving reasonably equivalent value by paying for the debts of insiders and related entities.

## III.   Generations

### a) Requirements of the Loan Documents

Generations executed numerous Construction Loan Agreement(s), including one of date 9/14/2021, with respect to RRSB's funding for construction of the Generations on 1st Apartments to be located at 26 1st Ave., Watertown, SD 57201 (the "Generations Project"). The Construction Loan Agreement(s) had the following conditions precedent before funds would be disbursed:

> **DISBURSEMENT OF LOAN FUNDS.** The following provisions relate to the disbursement of funds from the Loan Fund.
>
> **Application for Advances.** Each application shall be stated on a standard AIA payment request form or other form approved by Lender, executed by Borrower, and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in the Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement.

The Construction Loan Agreement also specifically required that "Borrower shall use the Loan Funds solely for the following specific purposes: As Per the Updated Sworn Construction Statement."

### b) Draw Requests

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB what were identified as Draw Requests ## 1-17. The following issues are noted with respect to these Draw Requests:

**Draw #1**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB what was identified as Draw Request #1 as the work on

February 19, 2025
Page 10

the Generations Project that had been reimbursed/paid for by the WDC. RRSB relied on this information as it was reflected in the Generations Contractor Disbursement Summar(ies) (discussed below).

- **$158,000** requested for reimbursement for Clausen Construction. However, the property that was the subject of this $158,000 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 1-14.

- **$92,000** requested reimbursement for T.L. Stroh Architects. However, the property that was the subject of this $92,000 reimbursement request was <u>not</u> the Generations Project. Documents provided by T.L. Stroh Architects pursuant to subpoena identified four invoices totaling $350,000 for its work performed on the Generations Project (*i.e.*, $52,500, $87,500, $157,500, and $52,500). This $92,000 invoice submitted in support of Draw Request #1 appears to have been falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 15-20.

- **$120,000** requested reimbursement for Limoges Construction. However, the property that was the subject of this $120,000 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 21-23.

- **$180,000** requested reimbursement for Gage Bros. However, the property that was the subject of this $180,000 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 25-27.

- **$10,472** requested reimbursement for Infrastructure Design Group, Inc. However, the property that was the subject of this $10,472 reimbursement request was **Parkside Project**. This invoice appears to have been deliberately falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 28-32.

**Draw #2**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB what was identified as Draw Request #2 as the work on the Generations Project that had been reimbursed/paid for by the WDC. RRSB relied on this information as it was reflected in the Generations Contractor Disbursement Summar(ies) (discussed below).

- **$68,000** requested reimbursement for T.L. Stroh Architects. However, the property that was the subject of this $68,000 reimbursement request was <u>not</u> the Generations

February 19, 2025
Page 11

Project. Documents provided by T.L. Stroh Architects pursuant to subpoena identified four invoices totaling $350,000 for its work performed on the Generations Project (*i.e.*, $52,500, $87,500, $157,500, and $52,500). This $68,000 invoice submitted in support of Draw Request #2 appears to have been falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 33-36.

- **$120,000** requested reimbursement for Gage Bros. However, the property that was the subject of this $120,000 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 37-39.

**Draw #3**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB what was identified as Draw Request #3 as the work on the Generations Project that had been reimbursed/paid for by the WDC. RRSB relied on this information as it was reflected in the Generations Contractor Disbursement Summar(ies) (discussed below).

- **$145,000** requested reimbursement for Gage Bros. However, the property that was the subject of this $145,000 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 40, 43-45.

**Draw #4**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #4 requesting the sum of $540,039.74. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #4 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$126,905** requested reimbursement for Clausen Construction. However, the property that was the subject of this $126,905 reimbursement request was the **Parkside Project**. This invoice appears to have been deliberately falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 50-53.

- **$58,450** requested reimbursement for T.L. Stroh Architects. However, the property that was the subject of this $58,450 reimbursement request was <u>not</u> the Generations Project. Documents provided by T.L. Stroh Architects pursuant to subpoena

February 19, 2025
Page 12

identified four invoices totaling $350,000 for its work performed on the Generations Project (*i.e.*, $52,500, $87,500, $157,500, and $52,500). This $58,450 invoice submitted in support of Draw Request #4 appears to have been deliberately falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 54-57.

**Draw #5**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #5 requesting the sum of $376,020.84. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #5 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$9,287** requested reimbursement for Clausen Construction. However, the property that was the subject of this $9,287 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 62-63.

**Draw #8**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #8 requesting the sum of $701,477.21. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #8 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$101,255** reimbursement requested for Lowe's but no supporting documentation was provided. It is unknown if this $101,255 was for materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 72-79.

**Draw #9**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #9 requesting the sum of $1,215,028.04. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #9

February 19, 2025
Page 13

in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$180,000** reimbursement requested for Craig Development, LLC for a "sheetrock deposit" but no supporting documentation was provided. It is unknown if this $180,000 was for labor and/or materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 80-87.

- **$50,000** reimbursement requested for Craig Development, LLC for "ICAP HVAC" but no supporting documentation was provided. It is unknown if this $50,000 was for labor and/or materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 88-91.

**Draw #11**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #11 requesting the sum of $1,423,600. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #11 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$308,500** reimbursement requested for Kloos Electric. However, the property that was the subject of this $380,500 reimbursement request was <u>not</u> the Generations Project. Documents provided by Kloos Electric pursuant to subpoena did not include any payment application for $308,500 for its work performed on the Generations Project. This $308,500 payment application submitted in support of Draw Request #11 appears to have been deliberately falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 96-103.

- **$4,527** reimbursement requested for East River Homes Inc. However, the property that was the subject of this $4,527 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 103-106.

- **$12,648** reimbursement requested for Cashway Lumber Inc. However, the property that was the subject of this $12,649 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 107-109.

February 19, 2025
Page 14

- **$5,607** reimbursement requested for Clausen Construction. However, the property that was the subject of this $5,607 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 110-112.

- **$7,760 and $5,300** reimbursement requested for T.L. Stroh Architects. However, the property that was the subject of these $7,760 and $5,300 reimbursement requests was <u>not</u> the Generations Project. Documents provided by T.L. Stroh Architects pursuant to subpoena identified four invoices totaling $350,000 for its work performed on the Generations Project (*i.e.*, $52,500, $87,500, $157,500, and $52,500). *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 54-57, 113-115.

- **$1,548 and $4,644** reimbursement requested for Hebron Brick. However, the property that was the subject of $1,548 and $4,644 reimbursement requests was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 116-118.

**Draw #12.2**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #12.2 requesting the sum of $983,353.76. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #12.2 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$4,561** reimbursement requested for Infrastructure Design Group Inc. However, the property that was the subject of the $4,561 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 121-129.

- **$4,825** reimbursement requested for Infrastructure Design Group Inc. However, the property that was the subject of the $4,825 reimbursement request was **The Ruins Apartments** located at 315 E. Kemp Ave., Watertown, SD. This invoice appears to have been deliberately falsified. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 130-134.

February 19, 2025
Page 15

## Draw #13

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #13 requesting the sum of $1,094,025.15 Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #13 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$8,045** reimbursement requested for Kloos Electric. However, the property that was the subject of this $8,045 reimbursement request was <u>not</u> the Generations Project. Documents provided by Kloos Electric pursuant to subpoena did not include any payment application for $8,045 for its work performed on the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 135-141.

- **$187,000** reimbursement requested for Craig Development, LLC for "finishing materials" but no supporting documentation was provided. It is unknown if this $187,000 was for materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 142-145.

- **$5,521** reimbursement requested for Burghardt Construction. However, the property that was the subject of the $5,521 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 146-148.

- **$4,260** reimbursement requested for Commercial Cleaning. However, the property that was the subject of the $4,260 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 149-151.

## Draw #14

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #14 requesting the sum of $424,259.84. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #14 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

February 19, 2025
Page 16

- **$32,880** reimbursement requested for Pro Tec (ARS). However, the property that was the subject of the $32,880 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 152-158.

- **$175,000** reimbursement requested for Craig Development, LLC for "steel panels" but no supporting documentation was provided. It is unknown if this $175,000 was for materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 159-162.

**Draw #15**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #15 requesting the sum of $843,168.59. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor) and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #15 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$32,171** reimbursement requested for Limoges Construction. However, the property that was the subject of the $32,171 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 163-169.

- **$156,000** reimbursement requested for Watertight Inc. It is unknown if the funds disbursed by RRSB went towards the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 170-172.

**Draw #16**

Jesse Craig, individually and/or in his capacity as representative of Generations and Craig Development, LLC, provided to RRSB Draw #16 requesting the sum of $653,729.65. Pursuant to the Construction Loan Agreement(s), requests for disbursements were only to be used for work done by Craig Development, LLC (as the General Contractor), and for materials and equipment incorporated into the Generations Project. RRSB relied on the information provided in Draw #16 in making the disbursement and also as it was reflected in the Generations Contractor Disbursement Summa(ies) (discussed below).

- **$1,375** reimbursement requested for Commercial Cleaning. However, the property that was the subject of the $1,375 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 176-182.

February 19, 2025
Page 17

- **$1,909** requested reimbursement for Levijoki Drywall. However, the property that was the subject of this $1,909 reimbursement request was the **Lofts Apartments** located at 10 N. Broadway St., Watertown, SD. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 183-185.

- **$1,924** reimbursement requested for Infrastructure Design Group. However, the property that was the subject of the $1,924 reimbursement request was the **Parkside Project**. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 186-188.

- **$79,900** reimbursement requested for Craig Development, LLC for "appliances" but no supporting documentation was provided. It is unknown if this $79,900 was for materials incorporated into the Generations Project. *See* Plaintiff's Requests for Admission re: Generations (Set I), Nos. 189-192.

### c) *Generations Construction Disbursement Summar(ies) and the CBRE Appraisals*

Jesse Craig, individually and/or in his capacity as President of Craig Development, LLC provided to RRSB various executed Contractor Disbursement Summar(ies) for the Generations Project ("Generations Contractor Disbursement Summary"). A copy of the Generations Contractor Disbursement Summary executed in August 2021 is attached hereto as **Exhibit 2**.

In executing the Generations Contractor Disbursement Summar(ies), Jesse Craig, individually and in his capacity as contractor and owner of the Generations Project:

> deposes and says that the foregoing are the names of all parties having contracts or subcontracts for specific portions of the work on said property and building or materials entering into the construction thereof, and the amounts due and to be due to each of said parties; that the items mentioned include all labor and material required to complete said buildings according to plans and specifications; that there are no other contracts outstanding; and that there is nothing due or to become due to any person for material, labor, or other work of any kind due upon said building other than as stated above.

The falsified and/or incorrect amounts discussed above were incorporated into the Generations Contractor Disbursement Summar(ies). Jesse Craig presented these the Generations Contractor Disbursement Summar(ies) to RRSB so it would continue providing funds to finish the work remaining on the Generations Project, in particular through the Mulinda Loans (*i.e.*, loans of $1,321,100 on 3/15/2021; $1,477,500 on 4/26/2021; and $1,652,500 on 6/22/2021 made out to Mulinda Craig for funds to be used in the construction of both the Parkside Project and the Generations Project).

February 19, 2025
Page 18

Additionally, the Generations Contractor Disbursement Summar(ies) were also provided to CBRE for the three (3) appraisals completed for the Generations Project. The Generations Contractor Disbursement Summar(ies) were included in the Addenda for the CBRE appraisals and formed the basis of the "cost approach" appraisal methodology.

### d) Claims Against Insider/Affiliated Entities

Again, under Section 513.44(a)(1) of the MUVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor."   Minn. Stat. § 513.44(a)(1).   And under Section 513.44(a)(2), "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor[] (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."   Minn. Stat. § 513.44(a)(2).

As outlined above, preliminary analysis and investigation shows that Generations transferred property with actual intent to defraud creditors by transferring property for the benefit of insiders, *cf.* Minn. Stat. § 513.44(b)(1), or transferred property without receiving reasonably equivalent value by paying for the debts of insiders and related entities.

In the event you did not receive copies of the discovery referenced in this letter from the Parkside and Generations state court foreclosure cases from your clients, my assistant will send you a link to download copies later today.

Regards,

Caren W. Stanley

Enclosures

cc:   Client
      Anthony Hohn

4896-6967-5033 v.1

**PARKSIDE PLACE**
**WATERTOWN, SOUTH DAKOTA**
**CRAIG DEVELOPMENT**
Contract Disbursement Summary
Monday, August 26, 2019

| | | | |
|---|---|---|---|
| Balance required for Construction | | $ | 6,057,866.22 |
| Expenses | | $ | 7,557,405.34 |
| Total to Complete | | $ | (999,539.14) |
| Loan (Net) | | $ | 4,929,000.00 |
| Additional Amount Required | | $ | 1,137,806.22 |

36 units

| Bid Package | Contractor | Contract | Amount Paid | Balance |
|---|---|---|---|---|
| General Conditions | | 179,900.00 | 196,587.76 | (16,687.76) |
| Testing & Inspections | By Owner | 50,000.00 | 52,577.65 | (2,577.65) |
| Construction Staking | 0 | 20,000.00 | 20,630.00 | (630.00) |
| Site Survey | Infrastructure Design Group | 37,847.55 | 37,847.55 | - |
| Soil Borings | Northern Technologies | 12,500.00 | 13,263.41 | (763.41) |
| Building Demolition | Clausen Construction | 56,000.00 | 119,498.28 | (63,498.28) |
| Concrete | Limoges Construction | 310,000.00 | 491,509.47 | (181,509.47) |
| Concrete - Cold Weather Charges | 0 | | | |
| Excavation | Clausen Construction | 204,500.00 | 209,266.16 | (4,766.16) |
| Foundation Waterproofing | Benchmark Foam | | 3,034.06 | |
| Precast Concrete - Materials / Erection ** | Gage Brothers** | 608,000.00 | 608,011.00 | (11.00) |
| Gypcrete | Don Johnson Construction | 29,325.00 | 29,325.00 | - |
| Masonry | Innovative Wall Systems | 585,000.00 | 670,538.81 | (85,538.81) |
| CMU Block | 0 | 158,000.00 | 164,236.08 | (6,236.08) |
| Misc. Metals | Mac Steel | 12,200.00 | 15,712.45 | (3,512.45) |
| General W & L Rough Carpentry Labor | 0 | 165,000.00 | 228,150.70 | (63,150.70) |
| General W & L Rough Carpentry Materials | Cashway | 298,034.00 | 455,299.43 | (157,265.43) |
| General W & L - Finish Carpentry Labor | Circle C | 56,619.50 | 56,619.50 | - |
| General Work - Finish Carpentry Materials | inclw/42 | | 3,034.06 | |
| Millwork - Cabinets | Russo Window Company | 53,347.80 | 57,209.30 | (3,861.50) |
| Countertops - Kitchen | Fabricators Unlimited | 24,133.00 | 24,059.54 | 73.46 |
| Bathroom Vanities | By Owner (Allowance) | 8,820.50 | 8,820.50 | (0.50) |
| Wood Components / Trusses | Cashway | 114,628.00 | 123,882.50 | (9,254.50) |
| Moisture Protections | Construction Specialties | 176,365.00 | 176,365.00 | - |
| Building Insulation | RL Drywall & Insulation | 70,000.00 | 69,942.69 | 57.31 |
| Exterior Insulation & Finish System | 0 | | 57,569.62 | (57,569.62) |
| Metal Awnings | 0 | 8,047.00 | 8,047.70 | (0.70) |
| Sealants | 0 | | 2,208.78 | 0.22 |
| Commercial Doors, Frames & Hardware | inc w/45 | | | |
| Residential Wood Doors & Frames | Cashway | inc w/29 | | |
| Overhead Doors | Skold Specialty Contracting | 17,400.00 | 17,326.56 | 73.44 |
| Vinyl Windows | Russo Window Company | 70,132.00 | 70,132.38 | (0.38) |
| Glass & Glazing | Brians Glass | 46,475.00 | 48,250.00 | (1,775.00) |
| Drywall | RL Drywall & Insulation | 228,000.00 | 404,050.00 | (176,050.00) |
| Carpet/Epoxy | 0 | 20,200.00 | 28,440.00 | (8,240.00) |
| Painting / Staining | Burghardts Construction | 54,308.00 | 49,383.92 | 4,924.08 |
| Patio Railings | 0 | | | |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | 6,500.00 | 7,249.55 | (749.55) |
| Exterior Signage | By Owner (Allowance) | | - | |
| Fire Extinguishers & Cabinets | Tri State Specialties | 2,394.12 | 2,394.12 | - |
| Ceiling Fans | By Owner (Allowance) | 4,680.00 | 4,680.00 | - |
| Closet Shelving/Bath Hooks | By Owner (Allowance) | | - | |
| Toilets | By Owner (Allowance) | 14,875.00 | 14,875.00 | - |
| Appliances & AC Units | Queens | 104,500.00 | 149,955.62 | (45,455.62) |
| Kitchen Sinks/Faucets | By Owner (Allowance) | 8,190.00 | 8,190.00 | - |
| Bath Faucets | By Owner (Allowance) | 5,733.00 | 5,733.00 | - |
| Bathroom Mirrors | By Owner (Allowance) | 4,527.00 | 4,527.00 | - |
| Window Treatments | By Owner (Allowance) | 9,450.00 | 9,450.00 | - |
| Conveying Systems | Schumacher Elevator | 125,479.00 | 121,103.00 | (1,624.00) |
| Building Sprinkles | Xtreme Fire Protection | 56,100.00 | 59,700.00 | (3,600.00) |
| Plumbing | Watertight ** | 335,000.00 | 335,010.21 | (10.21) |
| HVAC | Barte Forseth | 84,200.00 | 99,410.00 | (15,210.00) |
| Electrical/Security System | Kloos Electric | 275,000.00 | 331,000.01 | (56,000.01) |
| Accrued Interest/Excise tax | | 175,600.00 | 175,575.91 | 24.09 |
| Tenant Improvements | 3713 sq ft/$15 | 55,695.00 | | |
| Site Fencing / Accessories / Dumpster Enclosure | By Owner (Allowance) | 15,221.00 | 15,221.00 | - |
| Site Utilities | By City | By City | 126,535.72 | |
| Land | | 425,000.00 | 425,000.00 | - |
| **Total Bid Packages** | Prevail | **5,385,135.37** | - | (960,396.19) |
| Construction Management | | 49,000.00 | 49,000.00 | - |
| Total Construction Bid Package Cost | | 5,434,135.37 | | 5,434,135.37 |
| Architect/Engineer (4%) | TL Stroh | 189,000.00 | 189,000.00 | - |
| General Contractor Fee | Craig Development | 217,365.41 | 205,000.00 | 12,365.41 |
| Developer Fee | Craig Development | 217,365.41 | 196,000.00 | 22,365.41 |
| **TOTAL CONSTRUCTION COST** | | 6,057,866.20 | 57,057,405.34 | (999,539.14) |

State of SOUTH DAKOTA (County of Codington)
The undersigned being first duly sworn, each individually, as contractor and owner of the property as the address shown on Page 1 hereof, deposes and says that the foregoing are the names of all parties having contracts or subcontracts for specific portions of the work on said property and furnish of building or material, entering into the construction thereof, and the amounts due and to become due to each of said parties, that the items mentioned include all labor and material required to complete said buildings according to plans and specifications; that there are no other contracts outstanding; and that there is nothing due or to become due to any person for furnishing materials or labor of any kind due upon said buildings other than as above stated...

EXHIBIT 1

**GENERATIONS ON 1ST**
**WATERTOWN, SOUTH DAKOTA**
**CRAIG DEVELOPMENT**
Contract Disbursement Summary - Bid Group II Summary
Tuesday, December 15, 2020

| | | |
|---|---|---|
| Units | | 72 |
| Balance required for Construction | $ | 12,172,108.52 |
| Expenses | $ | 7,811,498.64 |
| Total to Complete | $ | 4,360,609.88 |
| Loan (Net) | $ | 9,726,764.00 |
| Additional Amount Required | $ | 2,445,344.52 |

EXHIBIT **2**

| Bid Package | Contractor | Contractor | Amount Paid | Balance |
|---|---|---|---|---|
| General Conditions | | $ 178,033.00 | $ 161,160.64 | $ 16,872.36 |
| Testing & Inspections | | $ 23,581.96 | $ 24,657.61 | $ (1,075.65) |
| Construction Staking | 0 | $ 19,636.36 | $ 26,517.78 | $ (6,881.42) |
| Site Survey | Infastructure Design Group (A | $ 10,472.73 | $ 10,472.73 | $ (0.00) |
| Soil Borings | Northern Technologies | $ 35,380.00 | $ 35,831.56 | $ (451.56) |
| Building Demolition | Boldt Construction | $ 158,000.00 | $ 158,000.00 | $ - |
| Concrete | Limoges Construction | $ 679,000.00 | $ 656,069.70 | $ 22,930.30 |
| Concrete - Cold Weather Charges | | $ 13,384.80 | $ 13,384.80 | $ - |
| Concrete - Waterproofing & Insulation | | $ 5,005.50 | $ 5,005.50 | $ - |
| Excavation | Clausen | $ 303,415.00 | $ 399,032.56 | $ (95,617.56) |
| Precast Concrete - Materials / Erection | Gage Brothers | $ 1,469,500.00 | $ 1,469,500.00 | $ - |
| Gypcrete | Don Johnson Construction | $ 85,435.00 | $ - | $ 85,435.00 |
| Masonry | Innovative Wall | $ 585,525.00 | $ 569,218.66 | $ 16,306.34 |
| CMU Block | Innovative Wall | $ 275,149.00 | $ 289,519.80 | $ (14,370.80) |
| Balconies | 0 | $ - | $ - | |
| Railings | 0 | $ 25,204.88 | $ 1,377.85 | $ 23,827.03 |
| General W & L Rough Carpentry Labor | 0 | $ 383,303.00 | $ 251,909.62 | $ 131,393.38 |
| General W & L Rough Carpentry Materials | 0 | $ 335,327.00 | $ 440,228.26 | $ (104,901.26) |
| General W & L - Finish Carpentry Material | D&M | $ 352,925.00 | $ - | $ 352,925.00 |
| General Finish Work & Labor | 0 | $ 72,785.45 | $ - | $ 72,785.45 |
| Millwork - Cabinets | Rusco Window Company | $ 111,602.62 | $ - | $ 111,602.62 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ 45,697.75 | $ - | $ 45,697.75 |
| Bathroom Vanities | By Owner (Allowance) | $ 19,450.00 | $ 18,473.76 | $ 976.24 |
| Wood Componenets / Trusses | 0 | $ 596,530.18 | $ 509,495.88 | $ 87,034.30 |
| Roofing | Pro-Tec Roofing | $ 331,650.00 | $ - | $ 331,650.00 |
| Building Insulation | Interstate Insulation | $ 172,000.00 | $ - | $ 172,000.00 |
| Exterior Insulation & Finish System | 0 | $ 275,129.00 | $ - | $ 275,129.00 |
| Metal Siding / Metal Panels | 0 | $ - | $ - | $ - |
| Sealants | 0 | $ 1,500.00 | $ - | $ 1,500.00 |
| Commercial Doors, Frames & Hardware | incl w/32 | | $ - | $ - |
| Residential Wood Doors & Frames | Cashway | incl w/32 | $ - | |
| Overhead Doors | Skold Specialty Contracting | $ 15,408.00 | $ 15,408.19 | $ (0.19) |
| Vinyl Windows | Rusco Window Company | $ 100,110.00 | $ - | $ 100,110.00 |
| Glass & Glazing | Brians Glass | $ 63,540.00 | $ - | $ 63,540.00 |
| Drywall | RL Drywall & Insulation | $ 584,400.00 | $ 180,000.00 | $ 404,400.00 |
| Carpet | 0 | $ 122,905.00 | $ - | $ 122,905.00 |
| Painting / Staining | 0 | $ 88,000.00 | $ - | $ 88,000.00 |
| Fill Nail Holes | 0 | $ 2,877.00 | $ - | $ 2,877.00 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ 11,924.00 | $ - | $ 11,924.00 |
| Exterior Signage | By Owner (Allowance) | $ 9,800.00 | $ 9,800.00 | $ - |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ 16,224.87 | $ - | $ 16,224.87 |
| Ceiling Fans | By Owner (Allowance) | $ 19,217.45 | $ 15,188.88 | $ 4,028.57 |
| Closet Shelving | By Owner (Allowance) | $ 13,745.45 | $ 13,745.00 | $ 0.45 |
| Toilets/Accessories | By Owner (Allowance) | $ 24,371.00 | $ 24,370.92 | $ 0.08 |
| Appliances & AC Units | Dugens | $ 243,929.00 | $ - | $ 243,929.00 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ 22,300.00 | $ 22,143.96 | $ 156.04 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ 6,467.00 | $ 6,466.32 | $ 0.68 |
| Bathroom Mirrors | By Owner (Allowance) | $ 7,520.00 | $ 7,519.68 | $ 0.32 |
| Window Treatments | By Owner (Allowance) | $ 14,753.45 | $ 14,753.00 | $ 0.45 |
| Conveying Systems | Schumacher Elevator | $ 152,500.00 | $ 38,125.00 | $ 114,375.00 |
| Building Sprinkler | Xtreme Fire Protection | $ 140,100.00 | $ 114,882.00 | $ 25,218.00 |
| Plumbing | Watertight | $ 659,955.00 | $ 158,395.95 | $ 501,559.05 |
| HVAC | Baete | $ 236,875.00 | $ 79,618.23 | $ 157,256.77 |
| Electrical/Security System | Kloos | $ 875,994.00 | $ 425,500.00 | $ 450,494.00 |
| Accrued Interest/Excise tax | 0 | $ 399,272.73 | $ 162,312.80 | $ 236,959.93 |
| Paving & Sidewalks | By City | By City | $ - | |
| Site Fencing / Accessories / Dumpster Encl | By Owner (Allowance) | $ 23,202.33 | $ 23,202.00 | $ 0.33 |
| Site Utilities | By City | By City | $ - | |

| | | | | |
|---|---|---|---|---|
| Project Management | Prevail | $ 55,000.00 | $ 55,000.00 | $ - |
| Land | | $ 305,000.00 | $ - | $ 305,000.00 |
| **Total Bid Packages** | | $ 10,780,014.52 | $ - | $ 10,780,014.52 |
| Senior Center | | $ - | $ - | $ - |
| Architect/Engineer (4%) | Stroh Architects | $ 560,000.00 | $ 567,250.00 | $ (7,250.00) |
| General Contractor (5%) | Craig Development | $ 441,047.00 | $ 447,960.00 | $ (6,913.00) |
| Development fee (5%) | Craig Development | $ 391,047.00 | $ 390,000.00 | $ 1,047.00 |
| **TOTAL CONSTRUCTION COST** | | $ 12,172,108.52 | $ 7,811,498.64 | $ 4,360,609.88 |

State of  SOUTH DAKOTA (County of Codington)

The undersigned being first duly sworn, each individually, as contractor and owner of the property at the address shown on Page 1 hereof, deposes and says that the foregoing are the names of all parties having contracts or subcontracts for specific portions of the work on said property and building or material entering into the construction thereof, and the amounts due and to become due to each of said parties; that the items mentioned include all labor and material required to complete said buildings according to plans and specifications; that there are no other contracts outstanding; and that there is nothing due or to become due to any person for material, labor or other work of any kind due upon said building other than as above stated.

without furnishing information on same to Fidelity National Title Insurance Company with additional deposits to cover such increase; that, in the event of any such increase, no orders or claims will be made on said company until such information and additional deposits shall have been completed; that the purpose of said statement is to induce said company to pay out the proceeds of a loan of $_____secured by a mortgage on said property; and that, upon payment of the specific unpaid items listed herein, the undersigned contractor hereby agrees to waive all claims of priority to said mortgage and both parties herein will save said company harmless as to any other claims of priority of lien for any labor or material, furnished or to be furnished, for completion of construction.

Contractor: _____

By: _____

Its: _____

Subscribed and sworn to before me this ____ day of _____, 20 ____.

_____

(Signature of Notarial Officer)                                    (seal)

Owner(s): _____

_____

Subscribed and sworn to before me this ____ day of _____, 20 ____.

_____

(Signature of Notarial Officer)
(seal)

## E<small>XHIBIT</small> B

**Debtors' Response Letter**



Telephone: (701) 394-3215                                        Toll Free: (855) 987-DEBT

February 26, 2025

**<u>VIA ELECTRONIC MAIL</u>**
Caren Stanley, Esq
Vogel Law Firm
218 NP Avenue
Fargo, North Dakota 58102
cstanley@vogellaw.com

> **Re:**    ***In re Generations on 1st, LLC,***
> **Case No. 25-30002 (Bankr. D.N.D. 2025)**
>
> ***In re Parkside Place, LLC,***
> **Case No. 25-30003 (Bankr. D.N.D. 2025)**

Ms. Stanley:

This letter follows on your correspondence of February 19, 2025, wherein your client—Red River State Bank ("RRSB")—suggests Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside") and The Ruins, LLC ("Ruins") to possess "strong claims against certain insiders and entities with insider ties." Your letter then goes on to set forth a large number of allegations in support of these alleged claims.

As a starting point, it appears the at-issue allegations are ones that have been made—and addressed—previously. I am informed these mirror closely inquiries made during the pendency of state court litigation, pre-petition, in South Dakota. I am also informed that substantive responses were furnished by my clients' state court counsel at the time these concerns and allegations were first raised.

Additionally, it bears generalized comment that your letter, taken as a whole, seems to suggest that one or more errors were made as part of the draw and lien release process related to three construction projects. As I believe a review of pertinent records will reveal, this is genuinely not the case—much of what your letter suggests is counterfactual in nature. However, if you have any actual evidence that shows Jesse Craig ("Mr. Craig"), or any other agent of any of my three clients, misappropriated funds improperly, please do pass it along. Such would, of course, prompt a significant internal inquiry on my clients' part and, to the extent necessary, appropriate remedial actions would be taken—whether through plan provisions, the employment of external professionals, or otherwise.

To the extent there do exist minor errors in the draw and invoicing process, I would be remiss to not observe that (i) such is indicative of little more than human fallibility; (ii) this may well be why your client promised to use a local title company to handle all draw requests and lien releases, from the outset of these three projects, only to then think better of honoring its

**1 of 2**
*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*



commitment; and (iii) this is also why your client's pattern and practice of funding multiple draws, to multiple borrowers, through single distributions, is so innately problematic.

I will not use this letter to further harp upon the various ills outlined in the adversary complaint filed earlier today, and I will similarly forbear from utilizing this medium to address your client's now-pending request to re-subpoena multiple parties. But I will observe, generally, that the poor record keeping—coupled with record destruction—of RRSB appears to not only work a disservice to the bank for all the predictable reasons but, too, because such invites scenarios such as this where allegations are cast without a proper factual mooring.

The foregoing notwithstanding, please let me know a time that would be convenient for yourself—and, if desirable, your client—to meet with my client's principal and myself, via Zoom (or in-person, if desirable), in the coming weeks. I will ask the meeting be protected by Federal Rule of Evidence 408, as part of a larger effort to bridge the disconnects between our respective clients. But I also suspect that if you are afforded occasion to review these concerns and allegations with Mr. Craig and myself, in a less formal setting, you will promptly discover the folly in the pursuits outlined in your letter.

Sincerely,

Maurice B. VerStandig, Esq.

cc:     Jesse Craig (via electronic mail, under separate cover)

*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*