**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re:<br><br>Generations on 1st, LLC,<br><br>Debtor. | Lead Case No.: 25-30002<br>(Jointly Administered)<br><br>Chapter 11 |
| In re:<br><br>Parkside Place, LLC,<br><br>Debtor. | Case No.: 25-30003 |

**DISCLOSURE STATEMENT OBJECTION**

**(PARKSIDE ONLY)**

Red River State Bank (the "Bank") hereby objects to approval of the Disclosure Statement (the "Disclosure Statement") [ECF 313] for the Second Amended Chapter 11 Plan of Reorganization (the "Plan") [ECF 312] filed by Parkside Place, LLC (the "Debtor" or "Parkside"). In support of its objection, the Bank hereby states as follows:

Introduction

1. The Disclosure Statement should not be approved because Debtor has failed to satisfy the legal requirements set forth in 11 U.S.C. § 1125. The Debtor has filed three versions of the Plan, all of which advance the cause of insiders at the risk of and to the detriment of its creditors.

2. Notwithstanding the appointment of a Chief Restructuring Officer, Debtor has not withdrawn or revised a Disclosure Statement that perpetuates a false narrative about the

cause of the Debtor's prepetition default, receivership, and subsequent bankruptcy filing. Additionally, Debtor continues to seek relief for insiders who are making no financial contribution to the Debtor's reorganization.

3. Additionally, the "new" Plan and Disclosure Statement contain the same fundamental defects as the original plan, including gamesmanship with respect to classification and gerrymandering, making it clear that the Debtor's primary goal is to "cram up" on secured creditors and force through a plan that shields the insiders from liability for prepetition conduct with a plan injunction.

4. Debtor's "cash flow projections" in the Disclosure Statement are inaccurate and misleading. First, Debtor has attached a cash collateral budget to the Disclosure Statement in lieu of a true cash flow projection with plan payments. [ECF 313-1, Exhibit B] Second, the "net cash flow" shown in the Debtor's Disclosure Statement is higher the monthly operating reports filed in the case. This fundamentally misleads creditors and this court about the feasibility of the Debtor's plan. Third, the cash collateral budget obscures the extent to which insiders have been taking money out of the estates during the pendency of these cases to enrich themselves, a pattern that will apparently continue after confirmation if the insiders are allowed to manage the property at above-market rates.

5. Debtor has not concerned itself with the best interests of creditor's test, as evidenced by its liquidation analysis on page 14 of the Disclosure Statement. [ECF 313, p. 14] Debtor has made no attempt to ascertain the current value of its assets or a potential distribution to creditors in a Chapter 7 case. Debtor merely asserts that a liquidation would "fetch" less money than its plan.

2

Legal Standard for Approval

6. "The primary purpose of a disclosure statement is to give creditors the information they need to decide whether to accept the plan." In re Monnier Bros., 755 F.2d 1336, 1342 (8th Cir. 1985). To that end, the Bankruptcy Code requires the Disclosure Statement to contain "adequate information," which is defined as:

> "[I]nformation of a kind, and in sufficient detail, as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan…"

11 U.S.C. § 1125(a)(1).

7. Simply put, "adequate information" is what allows creditors "to vote intelligently on the plan." In re Farmland Indus., Inc., 286 B.R. 888, 892 (Bankr. W.D. Mo. 2002). To evaluate whether the information provided by the plan proponent is "adequate," many Courts in our Circuit have considered and weighed the following types of information:

(1) the events which led to the filing of a bankruptcy petition;

(2) a description of the available assets and their value;

(3) the anticipated future of the company;

(4) the source of information stated in the disclosure statement;

(5) a disclaimer;

(6) the present condition of the debtor while in Chapter 11;

(7) the scheduled claims;

(8) the estimated return to creditors under a Chapter 7 liquidation;

(9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

(10) the future management of the debtor;

(11) the Chapter 11 plan or a summary thereof;

(12) the estimated administrative expenses, including attorneys' and accountants' fees;

(13) the collectability of accounts receivable;

(14) financial information, data, valuations, or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;

(15) information relevant to the risks posed to creditors under the plan;

(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

(17) litigation likely to arise in a nonbankruptcy context;

(18) tax attributes of the debtor; and

(19) the relationship of the debtor with the affiliates.

See, e.g., In re Puff, No. BR 10-01877, 2011 WL 2604759, at *3 (Bankr. N.D. Iowa June 30, 2011).

8. To be adequate, a disclosure statement does not need to include information from every category in the preceding list. The Court has discretion to determine which types of information, and how much detail, is adequate on a case-by-case basis. Id. The court may also determine that specific omissions render a disclosure statement substantially incomplete, materially inaccurate, or misleading to creditors.

9. One of the only "hard and fast" requirements for the content of a disclosure statement is set forth Federal Rule of Bankruptcy Procedure 3016(b). If a plan includes an injunction, Rule 3016(b) requires the plan proponent to make an express disclosure of such

4

injunction in "conspicuous language (bold, italic, or underlined text)" in the Disclosure Statement.

10.  It is the Debtor, as plan proponent, who bears the burden of proving the adequacy of its Disclosure Statement. In accord with Section 1125(a)(2), creditors should not be presumed or expected to obtain the information they need to evaluate a plan by unusual means. If such information is readily available to the Debtor, but it has strategically opted to omit it from the Disclosure Statement, creditors should not be expected to uncover or deduce such information before they can vote on the Plan. Rather, it is the Debtor who should bear the burden of redrafting its Disclosure Statement to provide such information to its creditors.

11.  Lastly, a Court may deny approval of a disclosure statement if a plan is facially unconfirmable as a matter of law. It is a waste of resources to approve a disclosure statement, for example, if the plan impermissibly classifies creditors or the proposed plan treatment clearly violates confirmation standards such as priority rules, or cramdown requirements. <u>In Re Atlanta West VI</u>, 91 B.R. 620, 622 (Bkr. N. D. Ga. 1988).

Specific Deficiencies of the Debtor's Disclosure Statement

12.  <u>Inaccurate and Misleading Description of Events Leading to CH 11</u>: As discussed in the introduction to this objection, the Disclosure Statement fundamentally "hides the ball" about the role of statutory insiders in this case, the existence of admissible evidence of prepetition self-dealing and misappropriation of funds, as key events leading up to the Debtor's bankruptcy filing. Instead, Debtor devotes several sections of the Disclosure Statement to wholly unproven allegations against the Bank, and generic claims about the existence of a global pandemic several years before the Petition Date, to explain how and why it ended up in receivership and then bankruptcy. [Case No. 25-30002, ECF 313, pp. 3-5]

13. <u>Chapter 11 Confirmation Process</u>. Debtor's description of the voting process is misleading. The Disclosure Statement should be amended to explain that the votes of insiders must be disregarded and similarly situated unsecured creditors should not be categorized into multiple classes to increase the probability of an "impaired accepting class," *i.e.,* gerrymandering.[ ECF 313, p. 4]

14. <u>Description of Bank's Claim</u>: In Article IV of the Disclosure Statement, Debtor's description of the Bank's proposed treatment fundamentally misleads creditors about what treatment of secured claims is permitted under the Bankruptcy Code, which in turn misleads creditors about the feasibility of the Plan and cash available to pay other claims. [ECF 313, pp. 5-6]. The Disclosure Statement should be amended to comply with the "fair and equitable" requirement in Chapter 11 and Debtor should delete the legally inaccurate statement that the allowed amount of the secured portion of the Bank's total claim can be diminished by post-petition adequate protection payments. The secured portion of the Bank's claim will be determined by the value of its collateral, as required by the Bankruptcy Code.

15. As explained in the Bank's Proof of Claim, the Bank's claim against Parkside is based on several promissory notes, with different terms, most of which have already matured. [Case No. 25-30002, POC No. 1; Case No. 25-30002, ECF 98, 177]. Debtor provides no legal support for its claim that it can cherry pick the rate of interest or the amortization schedule for the Bank's promissory notes, nor is there any legal support for the Debtor's claim that it can reinstate debt that matured before the Petition Date in Debtor's case, or that it could do so at a non-market rate of interest and with no additional interest to account for default risk. <u>See</u> 11 U.S.C. § 1124(2) and 11 U.S.C. § 1129(b); cf. <u>In re Topp</u>, 75 F.4th 959 (8th Cir. 2023); <u>In re Moshe</u>, 567 B.R. 450 (Bankr. E.D.N.Y. 2017) (proposed Chapter 11 plan that provided

6

for curing debtor's prepetition mortgage default, not by plan payments at contractual default rate of 24%, but by payments at significantly lower pre-default rate of 8%, was patently unconfirmable and prevented bankruptcy court from approving debtor's disclosure statement). Debtor has also provided no information about its ability to pay a balloon seven years from now unless such claim is based on the "take out financing" already discussed *infra*.

16. The Disclosure Statement should be amended to remove the Debtor's statement that the Adversary Proceeding is "reasonably expected to significantly setoff the total size of the Claim of RRSB in this case." [ECF 313, p. 5] Debtor has no factual basis for this claim, and it misleads creditors into believing the Adversary Proceeding will dramatically improve feasibility of the Plan.

17. <u>Description of WDC Claim</u>: Debtor's description of the secured claim of Watertown Development Corporation ("<u>WDC</u>") as "impaired" is not accurate. [ECF 313, pp. 6-8] Debtor has revised this section of the Plan and Disclosure Statement in cooperation with WDC counsel. The reconciliation process described in the Plan and Disclosure Statement is intended to eliminate a deficiency for WDC and to guarantee that WDC is always receiving the "benefit of its bargain." Thus, the Disclosure Statement should be amended to indicate that WDC is unimpaired and not entitled to vote.

18. <u>Description of Priority Claims</u>: The description of Codington County's priority tax claim in the Disclosure Statement is inaccurate and misleading. [ECF 313, p. 8]. The County's proof of claim indicates that it is owed approximately $41,423 for a priority tax claim. [Case No. 25-30003, POC 3-1] The Disclosure Statement should not indicate that the County's claim is impaired or imply it is entitled to vote, rather it should explain that priority tax claims are typically not classified in a plan and/or they are not entitled to priority under the

Bankruptcy Code. See 11 U.S.C. §§ 507(a)(8) and 1123(a)(1). Failing to correct this classification misleads creditors about voting in this case. Additionally, the Disclosure Statement indicates that the County's priority claim is $0 because it was already paid after the petition date in this case. There is no evidence to support the accuracy of this claim. The County still has a valid, timely proof of claim that asserts a priority claim. Debtor has not objected and the County has not withdrawn such proof of claim.

19. <u>Description of Unsecured Claims</u>. The classification of unsecured claims in the Plan and Disclosure Statement has no basis in applicable Bankruptcy law. Debtor should not be permitted to solicit a plan that arbitrarily classifies holders of non-priority unsecured claims into Classes 4, 5, 6, and 7. [ECF 313, pp. 8-9] This section of the Disclosure Statement should also be amended to clarify that the votes of statutory and non-statutory insiders must be disregarded under the Bankruptcy Code. Debtor should clarify whether Blacktail is an insider, whether its claim is properly asserted against the Debtor as opposed to an insider, and whether Blacktail has assigned its claim. The Plan indicates that the Blacktail claim was assigned, but there is no evidence on the docket to support this claim.

20. <u>Description of Equity Interests</u>. The Disclosure Statement currently indicates that equity interests shall "remain unchanged." [ECF 313, p. 9] First, the Disclosure Statement should explain that the votes of statutory insiders like Jesse R. Craig are disregarded under Section 1129(a)(10) and that Mr. Craig is not entitled to receive a distribution under the Plan until he resolves his liability to the estate under Sections 547, 584, and 550, per Section 502(d). Second, the Disclosure Statement incorrectly implies that equity is typically entitled to a distribution in Chapter 11. The Disclosure Statement fails to explain that holders of equity interests are not entitled to receive a distribution under the Plan, including retention of their

prepetition equity, unless Debtor complies with the absolute priority rule in this case. 11 U.S.C. § 1129. Alternatively, the Disclosure Statement should be amended to describe the "new value" exception to the absolute priority rule and quantify the new capital, if any, that will be contributed to fund the reorganization and whether it is equivalent in value to the interest retained by the insider. If the Debtor is not proposing a plan that satisfies either the absolute priority rule or the new value exception, then the Disclosure Statement should not be approved because the Plan is patently unconfirmable as a matter of law.

21.　　Plan Injunction: The Disclosure Statement does not disclose the injunction set forth in the Plan for the benefit of statutory insiders, as expressly required by Rule 3016(b). The Disclosure Statement should be amended to include an express disclosure that complies with Rule 3016, to explain the legal standard for approving third party releases and injunctions, and the fact that insiders have offered no consideration in exchange for the injunction they will receive under the Debtor's Plan.

22.　　Satisfaction and Release. The Disclosure Statement can be read to mean that any payments or distributions under the Plan, and even proposed plan treatment regardless of the status of implementation, constitutes "full and complete satisfaction" of such claims. [ECF 313, p. 9] This statement should be amended to clarify what Debtor intended by this language.

23.　　Cash Flow Analyis and Feasibility: The Disclosure Statement includes a new section called "Cash Flow Analysis" that is incomplete, inaccurate, and misleading to creditors. [ECF 313, pp. 9-10]. First, the numbers in the Disclosure Statement do not match the Debtor's monthly operating reports in the case. Second, the description of "disbursements" and "profit" is materially misleading. Among other things, the stipulated adequate protection payments during the pendency of the Parkside case are also less than the payments due under

9

its Plan. Third, Debtor's description of the DIP account balances and distributions to the Bank during the case is inaccurate and misleading. As explained in several cash collateral stipulations filed in this case, a prepetition receiver was holding pre-petition rents in the sum of $110,948.58 for Parkside. [ECF 91, 159, 160] These funds were transferred into the Debtor's DIP account after the petition date. The Bank maintains that such prepetition rents were assigned to it prior to the petition date. Debtor has "released" such funds from the DIP account to the Bank as a stipulated resolution of the Parties' dispute. It is incorrect to characterize such funds as an indication of the Debtor's profitability, the success of the Debtor's current management, or its ability to cash flow and generate plan payments. The Disclosure Statement should be revised to remove inaccurate and misleading statements about cash flow and plan feasibility. Additionally, the Disclosure Statement should not be approved until the Debtor appends a traditional cash flow analysis, as opposed to a recycled cash collateral budget, so that Debtor can demonstrate a "payment waterfall," or a feasibility analysis, as is customary in Chapter 11 plans of reorganization. Without a feasibility analysis, creditors lack adequate information to determine how the Plan will affect their potential recovery and whether the Plan will simply result in deepening insolvency and a delayed conversion to Chapter 7. See In re Cardinal Congregate I, 121 B.R. 760 (Bankr. S.D. Ohio 1990) (Chapter 11 debtor's disclosure statement which identified "net cash flow" as source of funds for satisfaction of allowed claims and interests, had to clearly state how "net cash flow" was defined and calculated); In re Dakota Rail, Inc., 104 B.R. 138 (Bankr. D. Minn. 1989) (financial projections must be substantiated and not misleading).

24. <u>Administrative Expenses Inadequate Information re Administrative Solvency</u>. As evidenced by the numerous cash collateral stipulations filed in this case, all the Debtor's

"Cash on Hand" is subject to the Bank's liens. In fact, the Bank maintains that the prepetition rents collected by the prepetition receiver are not even property of the estate under Section 541. The Disclosure Statement should be amended to clarify that the Bank has not consented to the use of its collateral to pay administrative expenses in this case, unless as expressly memorialized in one of the cash collateral stipulations on the docket in this case. If the Debtor lacks access to the Bank's collateral for payment of its administrative expenses, Debtor should indicate what alternative source of payment is available to ensure the estate is administratively solvent.

25.    Debtor should not be allowed to rely upon existing DIP account balances to create the illusion that the Debtor is profitable and administratively solvent. Debtor's monthly operating reports confirm it is still holding prepetition rents collected by the receiver in its DIP account. The Disclosure Statement willfully conceals the fact that such funds are not property of the estate under Section 541; they were legally assigned from the Debtor to the Bank prior to the Petition Date and held in trust by the receiver. Moreover, any post-petition rents are currently subject to the Bank's liens and Debtor has only been permitted access to such funds by stipulation. The Disclosure Statement should explain that unless the Bank consents, administrative creditors like Debtor's counsel are not legally entitled to payment of their administrative expenses from a secured creditor's collateral. <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 2000 WL 684180, - S.Ct. – (May 30, 2000). If Debtor does not have a source of unencumbered cash that is sufficient to pay its administrative expenses, the Plan is unconfirmable as a matter of law under Section 1129(a)(9) and Debtor's should not be permitted to incur unnecessary administrative expenses to solicit an unconfirmable Plan.

26. <u>Claims Against Insiders</u>. A description of the potential avoidance actions against insiders has been added to the Disclosure Statement, but it is buried on page 11 of 20. [ECF 313, p. 11] First, the gross value of documented prepetition transfers to insiders is several million dollars. The Disclosure Statement should be amended to include a reference to this information in the description of "Litigation." [ECF 313, p. 4] The Disclosure Statement should also be amended to refer parties to the information available on the docket about the potential value of such claims. [See, e.g., ECF 271] The Disclosure Statement should be amended to disclose that the Debtor did not previously investigate potential claims against insiders, and it sought appointment of a CRO, in response to Mr. Jesse Craig's personal conflict of interest.

27. <u>Take-Out Financing:</u> Debtor has not provided any information that will allow creditors to make an informed judgment about the viability of the "take out financing" described in the Plan. [ECF 313, pp. 11-12] The Disclosure Statement should be amended to explain that Debtor's prior attempts to obtain such financing have failed because it is significantly overleveraged by many millions of dollars, Debtor cannot currently satisfy the standard loan to value ratio required to qualify for such financing, and equity interest holders are not willing to make a standard capital contribution to facilitate such a refinancing. Debtor casually states that it could obtain such financing at some point in the future but obscures the fact that Debtor cannot satisfy standard conditions precedent to such financing without several million dollars' worth of passive asset appreciation or a multi-million-dollar capital contribution from equity within the next few years. The Disclosure Statement implies take-out financing could easily or routinely occur, and that it could be used to make plan payments, when in fact all empirical evidence suggests it is very unlikely to occur. The Disclosure

Statement should not be approved if it contains incomplete or materially misleading information about take-out financing and its impact on plan feasibility.

28. <u>Inaccurate Information re Best Interests of Creditors Test:</u> The Disclosure Statement should not be approved because it does not include an accurate or complete liquidation analysis, and as a result, it fails to provide creditors with adequate information about whether the Plan satisfies the "best interests of creditors" test. [ECF 313, pp. 14-15.]

29. First, it is not possible to ascertain the total liquidation value of Parkside's assets because it is incomplete. The liquidation analysis should be amended to contain adequate information for creditors to compare their recoveries under the Plan versus a Chapter 7 liquidation of the Debtor. It is not sufficient to simply claim, based on generalized assumptions, that liquidation under chapter 7 would "fetch" less money and result in no distributions to unsecured creditors. Debtor has provided no evidence to support such claim. [ECF 313, p. 15].

30. At a minimum, the Disclosure Statement should acknowledge the gross value of potentially avoidable transfers and the fact that avoidance actions are available to pay administrative expenses and general unsecured claims. Debtor should therefore remove inaccurate, unsupported claims such as the assertion that Chapter 5 claims against insiders in this case "may be relatively small," when in fact the gross value of such avoidance actions are worth several million dollars. This misleads creditors about the cost of choosing the Plan (which prioritizes the interests of the equity interest holder and other insiders) versus their possible recovery in Chapter 7. <u>Id.</u> The Bank further urges the Court not to approve a Disclosure Statement and allow solicitation for a Plan that fails to satisfy the best interests of creditors test and is thus unconfirmable on its face under Section 1129(a)(7).

31. <u>Incomplete Disclosure re Sale of Real Estate</u>: The Plan refers to a possible future sale of the Debtor's Real Estate. [ECF 313, pp. 11-12] Debtor implies that a sale would generate funds to pay off the Bank. Parkside has stipulated to allowance of the Bank's claim in the total amount of $8,794,170. [ECF 177, p. 3] First, the Disclosure Statement fails to provide any valuation information to support Debtor's statement that a sale would be sufficient to pay off the Bank's claim. The parties have previously stipulated that the secured portion of the claim is at least $3.3 million less than the total amount owed to the Bank. <u>Id.</u>

32. Second, the Disclosure Statement also fails to disclose that the Bank has an absolute right to credit bid under Section 363(k) in any such bankruptcy sale. <u>RadLAX Gateway Hotel, LLC v. Amalgamated Bank</u>, 566 U.S. 639 (2012). By failing to disclose the Bank's credit bid rights, the Disclosure Statement is thus misleading about the Debtor's ability to use a sale to generate cash to make plan payments, and by implication, its ability to "free up" cash to pay unsecured creditors in this case.

33. <u>Acceptance and Confirmation of Plan</u>. The Disclosure Statement contains inaccurate and misleading information about whether the Plan satisfies the confirmation requirements under the Bankruptcy Code. First, the Disclosure Statement should be amended to clarify that Debtor is not entitled to solicit votes from insiders for the purpose of determining acceptance of the Plan. Second, the Disclosure Statement should be amended to remove the false claim that Debtor's proposed classification of unsecured claims does not "discriminate unfairly" and satisfies the "fair and equitable" test in Chapter 11. [ECF 313, pp. 12-13] Third, the Disclosure Statement obscures the fact that the proposed distribution to equity under the Plan does not satisfy the "fair and equitable" test, *i.e.*, the absolute priority rule, for unsecured creditors. [ECF 313, p. 13].

34. <u>Good Faith Requirement</u>: By concealing the existence of claims against insiders, the Disclosure Statement diverts attention from Debtor's impermissible motivation of filing a Chapter 11 bankruptcy case to obtain relief for the benefit of such insiders. Debtor should disclose that if it cannot prove the Plan is proposed in good faith, it will not be confirmable as a matter of law. 11 U.S.C. § 1129(a)(3).

35. <u>Risks Related to the Plan</u>: The Disclosure Statement should not be approved because it does not accurately describe the risks associated with the Plan. [ECF 313, p. 15] Debtor does not explain the risk that it would not be able to sell its real property or obtain take-out financing to fund its obligations under the Plan. Debtor does not explain the risk to feasibility of the fact that the Plan does not have a customary capital reserve to address major repairs over the 5+ year post-confirmation period. As explained throughout this objection, the Disclosure Statement does not provide adequate information about the likelihood that post-petition cashflow will not be sufficient to fund plan payments, the likelihood that the case is administratively insolvent, and the likelihood that the Debtor will have to file another bankruptcy case in the near future.

36. <u>Plan Injunction:</u> Critically, the Disclosure Statement makes no mention of an injunction in Section 4.10 of the Plan for the benefit of statutory insiders, as expressly required by Rule 3016(b). The Disclosure Statement should explain that confirmation of the Plan will preclude investigation or recovery of avoidance actions against insiders in any forum. The Disclosure Statement should also clearly explain that if the case proceeded under Chapter 7, the Court would appoint a trustee who would have a statutory duty to investigate and pursue potential recoveries from avoidance actions for distribution to unsecured creditors. The Disclosure Statement should also be amended to explain the legal standard for approving third

15

party releases and injunctions, and the fact that insiders have offered no consideration in exchange for the injunction they will receive under the Debtor's Plan. Lastly, the Disclosure Statement should clearly explain the interplay between the injunction and the applicable statute of limitations, transmuting what is nominally an injunction into a *de facto* third-party release. See Harrington v. Purdue Pharma L.P. (In re Purdue Pharma), 603 U.S. 204, (2024).

37. The Plan and Disclosure Statement do not describe any remedies for post-confirmation defaults, and thus lacks an "adequate means of implementation," as required by 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). The Plan and Disclosure Statement should be amended accordingly before solicitation begins to ensure that stakeholders are properly informed about their rights in the event of a post-confirmation plan default.

Conclusion

To authorize solicitation of the Plan would be to allow the insiders to continue their bad faith use of the Chapter 11 process at the expense of stakeholders in this case. The Plan repeatedly prioritizes the interests of insiders over the Debtor's fiduciary duty to its creditors in this case. The Disclosure Statement ignores the Debtor's express obligation to disclose such information to creditors. The Debtor's transparent purpose for pursuing confirmation in this case is not to reorganize, but to lure hopeful creditors into granting a long-term injunction to insiders. The Plan has other instances of bad faith, including gerrymandering with the aim of cramming down confirmation over objecting creditors. The Bank respectfully submits the Disclosure Statement is inadequate as a matter of law, and the Plan is facially unconfirmable under 11 U.S.C. § 1129(a)(1) or § 1129(a)(3). And most importantly, the Debtor is unlikely to carry its burden to prove the Plan is proposed in good faith. For all the foregoing reasons, the Bank urges the Court to deny approval of the Disclosure Statement.

Dated: March 12, 2026.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe*
    Kesha L. Tanabe
    ktanabe@vogellaw.com
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    Fargo, ND  58107-1389
    701.237.6983
    **ATTORNEYS FOR RED RIVER STATE BANK**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that it caused the Disclosure Statement objection of Red River State Bank to be filed in the above-captioned case, which caused CM/ECF service upon all registered parties to the case.

Dated: March 12, 2026

*/s/ Kesha L. Tanabe*

17