IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | (Jointly Administered) |
| | ) | |

**OBJECTION OF PARKSIDE PLACE, LLC TO APPROVAL
OF DISCLOSURE STATEMENT FILED BY RED RIVER STATE BANK**

Comes now Parkside Place, LLC ("Parkside" or the "Debtor"), by and through undersigned counsel, and objects to approval of the disclosure statement (the "Disclosure Statement"), DE #306, filed by Red River State Bank ("RRSB"), and in support thereof states as follows:

**I.      Introduction**

The Disclosure Statement proposed by RRSB should not be approved because (i) the document lacks adequate information, as that term is used in title 11 of the United States Code (the "Bankruptcy Code"), and (ii) the document is in furtherance of a patently unconfirmable plan of reorganization. Independently, each of these issues is fatal to the Disclosure Statement. Cumulatively, these issues militate in favor of the denial of approval of the Disclosure Statement.

The former problem is exemplified by (i) a lack of information concerning the potential claims against RRSB that the underlying plans seek to compromise; (ii) a lack of discussion of the rationale for equitable subordination of certain creditors' claims; and (iii) insufficient discussion

1

of the financial assumptions giving rise to sweeping statements about the Debtor's putatively insufficient cash flow and alleged resultant inability to make ordinary course debt payments.

The latter problem is exemplified by the liquidating trust agreement (the "Trust Agreement") central to the underlying plan of reorganization (the "Plan"), DE #305. The Trust Agreement (a) fails to identify the trustee, leaving creditors blind to the identity of the person who will act as a fiduciary and their bona fides and potential conflicts; (b) fails to identify the individuals who will form the oversight committee to which the trustee reports, inviting the same concerns about credentials and conflicts; (c) fails to identify who will select the trustee under the Trust Agreement (inviting the same variety of concerns); (d) binds the trustee to an unconstitutional term of service; and (e) appears to furnish woefully insufficient monetary consideration for a trustee to meaningfully supervise trust activities that are expected to entail the pursuit of complex litigation.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged this objection be sustained and approval of the Disclosure Statement be denied.

## II.   Argument:

### a.  The Disclosure Statement Does Not Contain Adequate Information

The Disclosure Statement is without the sort of information necessary to properly and adequately inform creditors—and other parties in interest—seeking to assess the merits, *vel non*, of the accompanying Plan. RRSB has failed—nearly *en toto*—to describe the litigation claims being pursued against the bank, the history of the litigation, the history of alleged regulatory violations underlying the litigation, and the bank's potential liability. The plan proponent has also failed to meaningfully describe the actions that are asserted to give rise to an equitable

subordination of certain claims. Without this information, the Disclosure Statement does not satisfy the rigors of the Bankruptcy Code.

Approval of a disclosure statement requires a finding the same contains "adequate information." 11 U.S.C. § 1125(b). Such is defined as:

> . . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information. . .

11 U.S.C. § 1125(a)(1). *See also Nelson v. Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)*, 1998 U.S. App. LEXIS 21387, at *10 (4th Cir. Aug. 31, 1998) ("The disclosure statement must contain 'adequate information,' i.e. sufficient information to permit a reasonable, typical creditor to make an informed judgment about the merits of the proposed plan.") (citing 11 U.S.C. § 1125(a)).

Here, the Disclosure Statement describes a blanket release and waiver of RRSB in the correlative Plan:

> In exchange for the RRSB Plan Contribution, all claims against RRSB made by the Debtor in the Adversary Proceeding and all claims that were raised or could have been raised by Debtor against RRSB and any of its employees, officers, directors, and representatives in the Foreclosure Proceeding (captioned as *RRSB v. Parkside Place, LLC et. al.*, Codington County Circuit Court, South Dakota, Case No. CV-24-000064) shall be dismissed with prejudice. In further consideration thereof, RRSB will dismiss the Foreclosure Proceeding with respect to the Debtor on or before the Effective Date.

Disclosure Statement, DE #306, at § 3.3.

3

No doubt, RRSB is legally permitted to bargain for its own release through a plan of reorganization. In so doing, however, the bank has a duty to educate creditors and parties in interest as to the nature of the claims and causes of action being released, just as would be required in a motion brought under Rule 9019. *See, e.g.*, *ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002) ("In exercising its discretion to approve a proposed settlement under Bankruptcy Rule 9019, a court must weigh four factors bearing on the reasonableness of the settlement: (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views."). In fact, insofar as part of the adversary proceeding to be resolved through the Plan is a claim objection, at least one court has suggested that a *higher* standard than that under Rule 9019 must apply, since such a settlement deprives a party of its right to pursue claim objections. *See In re Yellow Corp.*, 670 B.R. 397, 407-08 (Bankr. D. Del. 2025) (citing *In re C.P. Hall Co.*, 513 B.R. 540, 542 (Bankr. N.D. Ill. 2014)).

RRSB has not made *any* such showing here—whether under Rule 9019 or the higher standard suggested by the *Yellow Corp.* Court. The Disclosure Statement does not mention that RRSB is being sued for fraud, the avoidance of fraudulent conveyances, and other forms of relief. Nor does the document recite that a negligence *per se* claim against RRSB emanates from an alleged violation of banking laws. Nor does the Disclosure Statement note the regulatory actions taken against RRSB in connection with its dealings with the Debtor, or how those actions inform parts of the claims being released. Nor does the Disclosure Statement note that an officer of RRSB is alleged to have fraudulently altered the interest rate in a forbearance agreement, between presenting the document for pre-execution review and then presenting the document for execution.

4

Similarly, the Disclosure Statement does nothing to address the procedural history of the adversary proceeding against RRSB. There is no discussion of which causes of action survived a motion to dismiss, what claims have been brought as counterclaims, or how related claim objections were resolved in a manner that leaves an unresolved contingency for any setoff rights stemming from the claims against the bank

The failure to discuss those potential setoff rights also renders the Disclosure Statement facially misleading. In the Disclosure Statement, the bank insists, *inter alia*, "[n]otwithstanding the fact that construction is complete and rental income is stabilized, the Project is still insolvent. Debtor's cashflow is not sufficient to make all monthly payments on the Debtor's debt as it comes due. The Debtor simply has too much debt." Disclosure Statement, DE #306, at § 1.2.

The aforementioned omissions, coupled with these assertions, are troublesome. The Debtor has cash flow that may well be sufficient to make debt service payments, depending on how those payments are structured. Of equal import, though, success in the adversary proceeding would equate to a lessening of the debt to be serviced and, through such reduction, a lighter load of forward-looking payments requisite to satisfy the debt.

Equally scant ink is devoted to the equitable subordination endeavored through the Plan. The bank notes, *inter alia*, "[o]n the Effective Date, any proof(s) of claim filed by Insiders seeking allowance of claims against the Debtor shall be equitably subordinated to all other holders of Class 3 Claims pursuant to 11 USC § 510, due to the Insiders' prepetition misconduct." Disclosure Statement, DE #306, at § 3.2.

In this judicial circuit, "[e]quitable subordination requires proof of inequitable conduct by the claimant that injured other creditors or conferred an unfair advantage." *Kaler v. Bala (In re*

*Racing Servs.)*, 571 F.3d 729, 731 (8th Cir. 2009) (citing *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 (8th Cir. 1988)). This typically involves application of a three-prong analysis:

> (i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

*In re Bellanca Aircraft Corp.*, 850 F.2d at 1282 (quoting *Wilson v. Huffman (In re Missionary Baptist Foundation)*, 712 F.2d 206, 212 (5th Cir. 1983); citing *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986); *Sepco, Inc. v. Valley State Bank (In re Sepco, Inc.)*, 36 B.R. 279, 287 (D.S.D. 1984)).

Here, the Disclosure Statement only alleges, in threadbare fashion, that insiders have engaged in inequitable conduct, and never goes on to delineate the nature of such alleged conduct. Nor does the Disclosure Statement contain any discussion of how that conduct has occasioned any injury to the Debtor or unfair advantage to insiders. And the Disclosure Statement assuredly does not discuss why equitable subordination is consistent with the dictates of the Bankruptcy Code.

To be sure, there are allegations of inequitable conduct that are familiar to the Debtor and, no doubt, to this Honorable Court. RRSB has not been shy in imprinting such allegations upon the docket of this case. Yet such familiarity cannot be imputed to creditors and parties in interest who have not kept up with every docket entry or who have not attended every hearing (especially where such docket entries and hearings have often been in a related-but-separate case). If RRSB is going to seek to compel equitable subordination through the Plan, RRSB needs to set forth information that would give rise to such an extraordinary remedy. This will not only permit the impacted parties to defend against the subject allegations, should they so elect (and such is very much not the Debtor's prerogative), but would also serve to better inform those voting on the Plan as to the

6

nature of litigation rights being transferred to a liquidating trust and the likelihood of success—or a lack thereof—in such litigation.

The latter point merits emphasis: the Plan is founded upon a tri-source funding mechanism, comprised of (i) a contribution from the bank; (ii) a sale of real property (that RRSB posits is likely to solely benefit the bank); and (iii) a liquidating trust. Creditors and other parties in interest are entitled to know more about the litigation rights being placed in the liquidating trust. Such may not be a pleasant exercise for any parties involved (whether it be the insiders who the bank seeks to target or even the bank's own former receiver, whose apparent negligence seemingly invites civil liability). Yet such is a necessary exercise to ensure those voting on the Plan have "adequate information" about the contents thereof and the potential ramifications of confirmation.

### b.  The Plan is Patently Unconfirmable

The Disclosure Statement also merits rejection for the simple reason that the Plan is not confirmable in present form. As discussed *supra*, the Plans relies—heavily—on the mechanics of a liquidating trust. Yet the Trust Agreement appended to the Disclosure Statement is clearly in non-final form and wants for several critical pieces of information. And insofar as the omissions from this agreement are material—not merely internal cross-references or citations to yet-to-be-docketed orders—such is fatal to plan approval. As of present, the Trust Agreement is a proverbial pig in a poke. And nowhere does the Bankruptcy Code permit such an arrangement to form a central portion of a plan of reorganization.

As noted by a sister court: "While courts ordinarily reserve confirmation issues for the confirmation hearing, a court may disapprove a disclosure statement where the underlying plan is clearly unconfirmable." *In re Wong*, 598 B.R. 827, 829 (Bankr. D. Md. 2019) (citing *In re CRIIMI MAE, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000); *In re Am. Capital Equip., LLC*, 688 F.3d 145,

153-55 (3d Cir. 2012)). *See also In re Alexander Props., LLC*, 2011 Bankr. LEXIS 5498, at *5-6 (Bankr. D. Md. Sep. 29, 2011) ("A court may deny approval of a disclosure statement because it describes an uncomfirmable plan. It is a waste of all parties' resources for the court to approve such a disclosure statement and set the parties on the course of preparing for a confirmation hearing on a plan that is not legally viable.") (citing *In re Quigley Co., Inc.*, 377 B.R. 110, 115-116 (S.D.N.Y. 2007)).

The Bankruptcy Code provides that a plan of reorganization may provide for "(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest. . . " 11 U.S.C. § 1123(b)(3).

Here, RRSB is proposing to do just what is envisioned by section 1123, and transfer claims to a trustee appointed for purposes of pursuing such claims. Problematically, however, the bank never actually identifies the trustee who is being so designated. The Trust Agreement defines "[NAME OF TRUSTEE]" as the "Trustee." DE #306 at p. 15. Suffice it to posit, "[NAME OF TRUSTEE]" is a placeholder, not an actual nomination.

The Trust Agreement further provides that "[t]he Trustee has been selected by [_____] and is appointed effective as of the Effective Date. The initial trustee shall be the Trustee." *Id.* at § 9.01. Once more, "[_____]" is a placeholder. And these two placeholders, in concert, result in a universe where those voting on the Plan would not know *either* the identity of the trustee, being charged with creditors' fiduciary well-being, or even the identity of the person(s) electing such trustee.

The concern is not purely hypothetical, either. The Trust Agreement provides the Trustee shall be compensated at the rate of $6,000.00 per annum (plus reimbursement of fees and

expenses). *Id.* at Exhibit A, p. 37. Yet the trustee is being asked to helm what is presumptively complex litigation, against insiders of the Debtor and, potentially, against a former receiver. This fee would seem a pittance to oversee such litigation unless the party being named as the trustee is otherwise self-interested in the outcome of the litigation (i.e., an agent of RRSB, an insider of RRSB, or otherwise). Yet if the trustee is going to be self-interested, or potentially motivated by prior dealings, creditors have a right to know as much.

Similarly, the Trust Agreement—permissibly—establishes an oversight committee to review the trustee's work. *Id.* at § 8.01. Yet the members of the oversight committees are "(A) [ENTITY NAME, CONTACT NAME, CONTACT TITLE], (B) [ENTITY NAME, CONTACT NAME, CONTACT TITLE], and (C) [ENTITY NAME, CONTACT NAME, CONTACT TITLE]." *Id.* Once more, these are clearly placeholders. And, once more, the use of placeholders denies creditors and parties in interest the ability to review the bona fides, credentials, and biases of the persons who will be acting in these critical capacities.

Also similarly, the Trust Agreement provides that professional fees over and above a certain sum are to be reviewed by the aforementioned oversight committees. *Id.* at § 8.04. This is, no doubt, a sensible clause. The relevant sum, though, is defined as "[$NUMBER]." *Id.* So, again, this means creditors voting on the Plan are utterly without knowledge of an exceedingly salient, objective data point.

Finally, the Trust Agreement suffers a peculiar added flaw, insofar as it is to be enforced by this Honorable Court (a federal court): the document provides, *inter alia*, "[i]n no case shall the resignation of the Trustee be effective on less than thirty (30) days' notice." *Id.* at § 9.04. Or, stated otherwise, if a trustee wishes to resign from helming the liquidating trust, that trustee will not be

9

free or able to do so for a period of 30 days—no matter the resolve of the trustee. In the meantime, the trustee will be bound to continue serving, involuntarily, at the helm of the trust.

The Thirteenth Amendment bars "involuntary servitude" in the United States. U.S. CONST. amend. XIII. As explained by the United States District Court for the Northern District of Texas: "[P]recedents clearly define a Thirteenth Amendment prohibition of involuntary servitude enforced by the use or threatened use of physical **or legal coercion**." *Conner v. Kelly*, 2023 U.S. Dist. LEXIS 208507, at *21-22 (N.D. Tex. Oct. 31, 2023) (quoting *United States v. Kozminski*, 487 U.S. 931, 944 (1988)) (emphasis added).

To be sure, it seems highly unlikely any trustee will protest a 30 day notice period, let alone be so unwilling to serve during a gap period as to invoke the strictures of the Thirteenth Amendment based on the prospect of judicial enforcement of the Trust Agreement. But the issue is nonetheless revealing of the larger problem: in a universe where the identity of the trustee is unknown, where the trustee's compensation is *de minimis*, and where the oversight committee is similarly anonymous, concerns necessarily arise as to the burdens and obligations being thrust upon someone charged with those roles. Creditors and parties in interest have a right to be free of such concerns. And unless and until these issues are remedied, the Plan will remain facially unconfirmable in nature.

### III. Conclusion

WHEREFORE, Parkside respectfully prays this Honorable Court (i) sustain this Objection; (ii) deny approval of the Disclosure Statement; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully Submitted,

Dated: March 23, 2026          By:     /s/ Maurice B. VerStandig
                                               Maurice B. VerStandig, Esq.
                                               The Dakota Bankruptcy Firm
                                                 1630 1st Avenue N
                                                 Suite B PMB 24
                                                 Fargo, North Dakota 58102-4246
                                                 Phone: (701) 394-3215
                                                 mac@dakotabankruptcy.com
                                                 *Counsel for Parkside Place, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

                                                 /s/ Maurice B. VerStandig
                                                 Maurice B. VerStandig

11