UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>            Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>            Debtor. | Case No. 25-30003<br><br>Chapter 11<br><br>(Jointly Administered) |

## STIPULATION FOR USE OF CASH COLLATERAL
## (PARKSIDE ONLY)

This Stipulation for Use of Cash Collateral ("Stipulation"), is entered into effective as of May 19, 2026, by Red River State Bank ("Bank") and Debtor Parkside Place, LLC ("Debtor" or "Parkside"), pursuant to Fed. R. Bankr. P 4001(d). RRSB and Parkside are hereinafter collectively referred to as the "Parties."

### RECITALS

A.      The Debtor commenced this case on January 6, 2025 (the "Petition Date") by filing voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code.

B.      This cases is a single-asset real estate pursuant to 11 U.S.C. § 101(51B). Parkside is the owner of a mixed-use apartment building located at 8 2nd St NE, Watertown, South Dakota (the "Parkside Real Property").

C.      On October 1, 2024, a receiver was appointed by the Codington County Circuit Court of South Dakota to collect the rents and manage the Parkside Real Property.

D.      As of the Petition Date, the receiver was holding pre-petition rents in the sum of $110,948.58 for Parkside (the "Parkside Pre-Petition Rents"). Debtor acknowledges that it

continues to hold Parkside Pre-Petition Rents in the DIP Account and such funds are the Bank's collateral.

E.    As of the Petition Date, the Debtors' prior property management company, CP Business Management, Inc., was holding tenant security deposits of $33,985.00 for Parkside (the "Parkside Security Deposits").

F.    On January 7, 2025, Parkside filed a Motion for Leave to Use Cash Collateral [Parkside ECF No. 12] (collectively, the "Cash Collateral Motions") seeking to use cash collateral consisting of the pre-petition and post-petition rents being held by the receiver and in which the Bank claims an interest.

G.    On January 15, 2025, the Bank filed its Objection to Debtor's Motion for Leave to Use Cash Collateral (collectively, the "Objections"). [Parkside ECF No. 31]

H.    On January 17, 2025, the Parties filed a Stipulation for Use of Cash Collateral [Generations ECF No. 44] and subsequently filed on February 3, 2025 an Amended Stipulation for Use of Cash Collateral [Generations ECF No. 54].

I.    On January 27, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through March 15, 2025 [Generations ECF No. 50].

J.    On March 3, 2025, Parkside filed a Second Motion for Leave to Use Cash Collateral. [Generations ECF No. 63]

K.    On March 12, 2025, the Parties entered into a Second Stipulation for Use of Cash Collateral for the time period of March 16, 2025 through May 15, 2025. [Generations ECF No. 69]

L.      On March 13, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through May 15, 2025. [Generations ECF No. 74]

M.      On May 5, 2025, the Parties entered into a Third Stipulation for Use of Cash Collateral for the time period of May 16, 2025 through July 15, 2025. [Generations ECF No. 91]

N.      On July 8, 2025, the Parties stipulated, on the record in open court, to the continued use of cash collateral, on the same terms as set forth in the Third Stipulation for Use of Cash Collateral, for the time period of July 15, 2025 through August 14, 2025, which the Bankruptcy Court approved. [Generations ECF No. 125]

O.      On August 7, 2025, the Parties stipulated, on the record in open court, to the continued use of cash collateral, on the same terms as set forth in the Third Stipulation for Use of Cash Collateral, for the time period of August 14, 2025 through August 28, 2025, which the Bankruptcy Court approved. [Generations ECF No. 141]

P.      On August 26, 2025, the Parties entered into a Sixth Stipulation for Use of Cash Collateral for the time period of August 28, 2025 through October 15, 2025. [Generations ECF No. 159]

Q.      On August 26, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through October 15, 2025. [Generations ECF No. 160]

R.      The use of cash collateral was subsequently stipulated by the Parties, to and through October 20, 2025.

S.      On October 19, 2025, the Parties entered into a Seventh Stipulation for Use of Cash Collateral for the time period of October 20, 2025 through November 15, 2025. [Generations ECF No. 218]

T.      October 21, 2025, the Bankruptcy Court entered its Order Authorizing Use of Cash Collateral which granted the use of cash collateral through November 15, 2025. [Generations ECF No. 224] The Parties subsequently stipulated to the use of cash collateral to and through December 15, 2025, with said stipulation being approved by the Bankruptcy Court. [Generations ECF No. 233]

U.      On February 3, 2026, the Parties filed the Tenth Stipulation for Use of Cash Collateral for the time period December 15, 2025 through March 27, 2026. [Generations ECF No. 295]

V.      On February 4, 2026, the Bankruptcy Court entered an order which granted the use of cash collateral through March 27, 2026 and continued a cash collateral hearing from Thursday, February 5, 2026 to Thursday, April 2, 2026.

W.      On March 31, 2026, the Bankruptcy Court entered an order which granted the use of cash collateral through May 18, 2026 and continued a cash collateral hearing from April 2, 2026 to May 21, 2026.

X.      The Parties have engaged in discussions and now enter into this Stipulation regarding use of cash collateral for the time period of May 19, 2026 through July 7, 2026. The Parties have further agreed to seek continuance of the May 21, 2026 cash collateral hearing to July 7, 2026.

## AGREEMENT

In consideration of the covenants in this Stipulation, the Parties agree as follows:

1. <u>Recitals</u>. The recitals set forth in this Stipulation are true and correct and incorporated by reference.

2. <u>Projections/Budget</u>. The Debtors have prepared an estimated cash flow budget demonstrating the projected use of cash collateral and budgets during the term of the Stipulation and are authorized and permitted to use cash collateral as that term is defined in 11 U.S.C. § 363, but only in accordance with the budgets attached hereto as **Exhibit 1** (the "<u>Budgets</u>").

3. <u>Permitted Use of Cash Collateral</u>. Subject to the terms of this Stipulation, the Debtors may use the Bank's cash solely to pay its ordinary and necessary business expenses in accordance with the Budgets.

4. <u>Impermissible Uses of Cash Collateral</u>. The Debtors will not use any of the Bank's cash collateral to pay items:

  i. Not contained in the Budgets except as approved by the Bankruptcy Court after written notice to the Bank and a hearing or after written request to the Bank and the Bank's written consent.

  ii. In excess of one hundred ten percent (110%) of the amount set forth in the Budget, in the aggregate from the Petition Date.

  iii. To pay any expenses associated with the operation of a short-term vacation rental business operated by Mindy Craig.

  iv. Rent or monthly expenses associated with rental of an off-site office owned and operated by an Insider.

  v. "Manager Oversite" fees paid to an Insider, as such term is defined in 11 U.S.C. 101, which were previously assessed at a rate of $45 per unit. For the avoidance of doubt, this subparagraph is not intended to preclude the

use of cash collateral for the payment of standard management fees to CP Business Management or a chief restructuring officer ("CRO"), if approved by the Court. Both parties reserve all rights to petition for, or object to, future use of cash collateral to pay "Manager Oversite" fees or approved compensation due to a CRO, after the term of this Stipulation expires.

5.    Adequate Protection and Replacement Liens. In consideration of and as adequate protection for use of the Banks' cash collateral and post-petition cash generated from rents or other cash sources of income, the Parties request:

    i.    Parkside will pay the sum of $19,266.67.00 on the 15th day of each month to be applied to debt service.

    ii.    Parkside shall each remit to the Bank, within three (3) business days of the entry of an order granting this stipulation, the added sum of $40,000 to be applied to debt service.

    iii.    The adequate protection payments to the Bank set forth in this paragraph 5(i) and (ii) will be deemed sufficient to satisfy the requirements of 11 U.S.C. § 362(d)(3)(B) for the equal number of months that payments are made.

    iv.    The Bank shall be granted perfected replacement liens and security interests, pursuant to 11 U.S.C. § 552, in Debtors' postpetition accounts receivables, general intangibles, cash, and rents of the same priority, dignity, and effect as the prepetition liens and security interests on the prepetition property of Debtor, to the extent of any diminution in cash collateral or prepetition accounts receivables, general intangibles, cash, and

rents. The liens and security interests granted to the Bank herein shall not be primed by any other lien or encumbrance, whether by order of the Bankruptcy Court or the passage of time. The postpetition grant of the liens and security interests shall be supplemental of, and in addition to, the liens and security interests, if any, which the Bank possesses pursuant to its loan documents. The replacement liens and security interests granted by Debtor will be deemed properly perfected without further act or deed on the part of the Debtor or the Bank. Notwithstanding anything contained herein, the post-petition cash collateral shall not include any cause of action or proceeds thereof recovered pursuant to Chapter 5 of the Bankruptcy Code.

v.    The liens and security interests granted herein to the Bank and the priorities of the same shall not be affected by the incurrence of indebtedness pursuant to 11 U.S.C. § 364, or otherwise.

6.    <u>Insurance</u>. Debtor agrees to maintain all necessary insurance, including, without limitation, fire, hazard, comprehensive, public liability, and worker's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged and with respect to the Parkside Real Property naming the Bank as primary mortgage holder and lender loss payee. Debtors agree to maintain the Parkside Real Property in its present condition, ordinary wear and tear excepted, and unforeseen acts of god excepted. Debtors will furnish proof of such insurance within two (2) business days of written request by the Bank.

7.    <u>Inspection</u>. Debtors agree to the Bank's inspection of the Parkside Real Property upon 48-hours prior notice to the Debtors and its counsel with said inspection to occur during

normal business hours. The Bank has designated two natural persons who may carry out said inspections, and such inspections must be undertaken by one or both of those persons (though either may be substituted should they cease to be an agent of the Bank). The inspections shall occur not more often than once per calendar month absent court order. The Bank acknowledges that such inspections shall not include inspections of units subject to active leases in favor of third parties.

       8.      <u>Reporting Requirements</u>. During the term the Debtor is using the Bank's cash collateral, the Debtor shall furnish to the Bank such financial and other information as the Bank shall reasonably request including, but not limited to:

    i.    Timely filing the monthly operating reports required by the US Trustee and the Bankruptcy Court, and provide copies of such reports to counsel for the Bank.

    ii.    Monthly reports due on the 15th day of the month through and including March 15, 2025 for the month preceding of:  1) dedicated rent roll, 2) rent receivable aging report, 3) summary of new leases signed, short cancel notifications, and leases ended; and 4) accounts payable aging report.

    iii.    Due on the 15th day of the month through and including March 15, 2025 for the month preceding of copies of invoices or requests for payment from vendors, 2) copies of checks, ACH payments, Venmo payments, or other transactions in which cash collateral was utilized (to the extent not reflected in the Debtors' monthly operating reports).

    iv.    Providing copies to the Bank of all current and existing leases within 14-days of the docketing of this Stipulation and furnishing copies of all new leases within ten business days of the full execution thereof.

9.      Bank Accounts.[1] Parkside has established an operating account at Starion Bank (the "DIP Account"), alongside a tenant security deposit account, in the form of a savings account at an FDIC-insured financial institution (the "DIP Savings Account"). All rents will be deposited into the DIP Account and the Debtors will use only the DIP Account for business operations. Debtors may not hold property of the estate in any accounts other than the DIP Account. Additionally, the Debtors will cause CP Business Management Inc. to deposit all tenant security deposits into the respective DIP Savings Accounts. Parkside shall take steps to permit the Bank to have online viewing privileges for all four of these accounts, though such privileges shall not extend to permitting the Bank to undertake any banking activity (aside from the viewing of activities) in connection with any of the four accounts. Parkside shall give the Bank three days' advanced notice before causing any monies to be removed from the tenant security deposit accounts.

10.      Limitations on Transactions with CP Business Management, Inc. and other Insiders. Debtor agrees that CP Business Management, Inc. or other insiders will not be permitted to request payments for services or reimbursement of expenses, except in the case of incidentals not exceeding $250 per month, without written agreement of the Bank or leave of court.

11.      Occupancy Requirements. Occupancy with respect to the Parkside Real Property must be maintained at 90% or greater.

12.      Term. This Stipulation for use of cash collateral will expire on the earlier of 11:59 p.m. on July 7, 2026, or the happening of any of the following:  dismissal of Debtor's Chapter 11 case or conversion of Debtor's Chapter 11 case to case under Chapter 7; lifting of the automatic stay as to the cash collateral or the Parkside Real Property; confirmation of a Chapter

---

[1] The use of the Yardi accounts has arguably breached the cash collateral stipulation. Debtors need to stop comingling cash collateral with an insider bank account during the pendency of a CH 11 case.

11 plan; any sale of any of the Debtor's property outside the ordinary course of business, including a sale under 11 U.S.C. §363; or the occurrence of an event of default under this Stipulation.

13. Event of Default. An event of default shall occur upon the occurrence of any of the following:

i. Failure of the Debtor to timely:  1) comply with any obligation contained in this Stipulation; 2) properly maintain and make repairs to the Parkside Real Property; 3) maintain insurance;

ii. Entry of an order altering or vacating the order approving this Stipulation, lifting the automatic stay as to any other creditor, or providing for conversion or dismissal of this case, unless the Bank shall consent to said order; or

iii. Failure to make any payments required under this Stipulation.

14. Remedies. Upon the occurrence of an event of default, the Bank shall give written notice to the Debtor's counsel, by email with a copy to follow by U.S. Mail to the Debtors (the "Default Notice"), clearly identifying in all caps and bold font as a "NOTICE OF DEFAULT", allowing the Debtor twenty calendar days from the date of the Default Notice to cure such claimed default. If the Debtor fails to timely cure the default, the Bank shall be entitled to file an affidavit of default and the Debtor agrees the Bankruptcy Court shall enter an order terminating the automatic stay as to the Bank and the Parkside Real Property and personal property collateral as set forth in the Bank's loan documents, or an order converting the case to Chapter 7 of the Bankruptcy Code, as the case may be.

15. Stipulation Subject to Court Order. This Stipulation is conditioned upon, and shall be effective only upon, the entry of an order approving the Stipulation.

16.      Complete Agreement. This Stipulation contains the complete agreement of the Parties relative to its subject matter, and may not be modified or waived, except by a writing signed by the Parties.

17.      Binding Effect. This Stipulation shall be binding upon the Parties hereto and each of their successors in interest.

18.      No Waivers. Except as set forth specifically herein, neither Debtor nor the Bank waive any rights to which they are entitled under the terms of the loan documents. No failure or delay by the Bank in exercising any right hereunder or under any of the loan documents shall be a waiver thereof, nor shall any single or partial exercise of such right preclude any other right.

19.      Form of Signatures. The Parties consent to and authorize the filing of this Stipulation on the Bankruptcy Court's docket with their electronic signatures and such signatures shall be effective as original signatures for all purposes.

20.      Dates. When any obligation hereunder is to occur on a given date, and said date is a Saturday, Sunday, or holiday observed by either or both of (i) the Bank; and/or (ii) the United States Postal Service, said obligation shall instead be deemed to be fall on the next succeeding business day.

IN WITNESS WHEREOF, the Parties have executed this Stipulation on the dates indicated below.

Dated:  May 28, 2026

**VOGEL LAW FIRM**

*/s Kesha L. Tanabe*

BY:  Kesha L. Tanabe
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone: 701.237.6983
*Attorneys for Red River State Bank*

Dated:  May 28, 2026

**THE DAKOTA BANKRUPTCY FIRM**

*/s/ Maurice B. VerStandig*

BY:  Maurice B. VerStandig, Esq.
1630 1st Ave N
Suite B PMB 24
Fargo, ND  58102-4246
Phone:  701.394.3215
mac@dakotabankruptcy.com
*Counsel for Debtor*

4927-8782-5328 v.1

Page **12** of **12**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>       Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>       Debtor. | Case No. 25-30003<br><br>Chapter 11<br><br>(Jointly Administered) |

## CERTIFICATE OF SERVICE

On May 28, 2026, the undersigned caused the following document(s):

## STIPULATION FOR USE OF CASH COLLATERAL
## (PARKSIDE ONLY)

to be served electronically to the following:

*All ECF Filing Participants*

*/s/ Kesha L. Tanabe*
Kesha L. Tanabe

2

# EXHIBIT 1

# PARKSIDE CASH COLLATERAL

## Parkside: Cash Collateral Budget

| | June | July |
|---|---|---|
| **Total Income** | **$ 41,000** | **$ 41,000** |
| | | |
| Maintenance Expenses | | |
| Maintenance Staff Costs | 200 | 200 |
| Caretaker/Resident Manager | 300 | 300 |
| Repairs / Maintenance | 300 | 300 |
| Janitorial | 550 | 550 |
| Carpet Cleaning | 150 | 150 |
| Painting | 100 | 100 |
| Plumbing | 250 | 250 |
| Electrical / Fire Protection | 50 | 50 |
| HVAC | 75 | 75 |
| Elevator | 25 | 25 |
| Flooring | - | - |
| Appliances/Laundry | 100 | 100 |
| Extermination | 20 | 20 |
| Snow Removal | - | - |
| Less Resident Chargebacks | - | - |
| Total Maintenance Expenses | 2,120 | 2,120 |
| | | |
| Admin/Utility Expenses | | |
| Advertising / Marketing | - | - |
| Lease Commissions | 200 | 200 |
| Software Fees | 38 | 38 |
| Internet & Telephone Costs/Service | 251 | 251 |
| Property Management 5% Collected | 2,000 | 2,000 |
| Real Estate Taxes/Escrow | 3,460 | 3,460 |
| CAM Reimburse | - | - |
| Property Insurance | 1,650 | 1,650 |
| Electricity - Apts | 100 | 100 |
| Electricity - Building | 600 | 600 |
| Natural Gas - Building | 250 | 250 |
| Water & Sewer | 2,081 | 2,081 |
| Garbage Removal | 230 | 230 |
| Total Admin & Utility Exp. | 10,859 | 10,859 |
| Total Operating Expenses | 12,979 | 12,979 |
| | | |
| **Net Operating Income** | **28,021** | **28,021** |
| | | |
| Other Expenses | | |
| US Trustee | 350 | 350 |
| Contingencies | 500 | 500 |
| Professional Fees | 25,000 | 20,000 |
| Total Other Expenses | 25,850 | 20,850 |
| Total Monthly Expenses | 38,829 | 33,829 |
| | | |
| **Net Profit** | **$ 2,171** | **$ 7,171** |

Source: Debtor