IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>GENERATIONS ON 1ST, LLC<br><br>Debtor | Case No.:  25-30002<br>(Chapter 11) |
| In re:<br><br>PARKSIDE PLACE, LLC<br><br>Debtor | Case No.:  25-30003<br>(Chapter 11)<br><br><br>(Jointly Administered) |

**INTERESTED PARTY JESSE CRAIG'S OBJECTION TO
DISCLOSURE STATEMENT FOR CREDITOR'S FIRST AMENDED
PLAN OF LIQUIDATION FOR PARKSIDE PLACE, LLC**

Interested Party Jesse Craig ("Craig") objects to the Disclosure Statement for Creditor's First Amended Plan of Liquidation for Parkside Place, LLC (Doc. 431) (the "Disclosure Statement").  The Disclosure Statement is proposed as part of the Creditor's First Amended Plan of Liquidation for Parkside Place, LLC (Doc. 430) (the "Liquidation Plan").  The Disclosure Statement lacks adequate information as required under the Bankruptcy Code and should not be approved by this Court.

**DISCUSSION**

A disclosure statement must contain "adequate information" in order to be approved under 11 U.S.C. § 1125(b).  "Adequate information" is defined in 11 U.S.C. § 1125(a)(1) as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that

1

would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

The Disclosure Statement fails to meet this standard at numerous points. Specifically, the Disclosure Statement does not provide adequate information of the following.

- The claims against Red River State Bank ("RRSB") that would be dismissed with prejudice.

- The basis for equitable subordination against insiders.

- The value of strengths of the alleged claims against insiders.

- A full and transparent disclosure of the fiduciaries appointed to serve as part of the Creditor Trust, including their inherent conflicts of interest.

- Accurate information for the purported reason the Liquidation Plan is filed solely by RRSB.

At its most basic level, the proposed Liquidation Plan is only in part about the sale of the Parkside Place property. It is equally about allowing RRSB to take control of the litigation in the various adversary proceedings related to this case. It does so by releasing with prejudice the claims against itself and also by creating a creditor trust to pursue insiders of the Debtor for possible Chapter 5 claims.

**A.    The Disclosure Statement contains virtually no analysis of the adversary proceeding claims against RRSB that are to be dismissed with prejudice.**

In the first instance, the claims the Debtor has brought against RRSB (Adversary No. 7009) are dismissed with prejudice. However, section 2.5 of the Disclosure Statement contains only a cursory discussion of the claims against the Bank. It provides no discussion of the history of

2

litigation.  It states that the core of the case revolves around the forbearance agreement described in the Amended Complaint but does not provide any disclosure or analysis of the claims against RRSB for deceit, fraud, or negligence *per se* due to RRSB's various regulatory violations.

The Disclosure Statement also contains no analysis of RRSB's potential liability other than a self-serving statement that RRSB believes there are no damages that can be proven.  It offers only a self-interested litigation opinion of the target defendant.  RRSB must educate creditors and other parties in interest as to the claims to be released under the same standard as Bankruptcy Rule 9019.  "In exercising its discretion to approve a proposed settlement under Bankruptcy Rule 9019, a court must weigh four factors bearing on the reasonableness of the settlement: (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views." ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors (In re Trism, Inc.), 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002).

The release of RRSB is effectively a Rule 9019 compromise embedded in a chapter 11 plan.  However, the Disclosure Statement has no Rule 9019 analysis of the settlement of the adversary claims against RRSB.  The Disclosure Statement contains no information permitting creditors to evaluate whether the proposed settlement falls above or below the lowest point in the range of reasonableness required under Rule 9019.  There is no analysis of why the purported consideration for the dismissal is sufficient.  There is also no analysis of how any damages or setoff rights would benefit the bankruptcy estate.  Without this, the Disclosure Statement does not provide adequate information.  As such, creditors need estimate of damages, defenses, probability of success, litigation costs, collection analysis, explanation of consideration.

**B.      The Disclosure Statement does not provide adequate information to justify and educate other parties in interest about the asserted equitable subordination.**

Section 3.8 of the Disclosure Statement states that all proofs of claim filed by insiders "shall be equitably subordinated to all other Holders of Class 3 Claims, due to prepetition misconduct by Insiders." However, there is no explanation as to what misconduct is alleged that relates to the Debtor's estate. There is also no discussion of how any alleged misconduct injured the Debtor or gave insiders an unfair advantage in this case. "Equitable subordination requires proof of inequitable conduct by the claimant that injured other creditors or conferred an unfair advantage." Kaler v. Bala (In re Racing Servs.), 571 F.3d 729, 731 (8th Cir. 2009) (citing In re Bellanca Aircraft Corp., 850 F.2d 1275, 1282 (8th Cir. 1988)). A proponent of equitable subordination must satisfy the following three elements:

> (i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

In re Bellanca Aircraft Corp., 850 F.2d 1275, 1282 (8th Cir. 1988). The Disclosure Statement contains no analysis of this test.

**C.      The Disclosure Statement does not provide adequate information to support the alleged value of RRSB's adversary proceeding against insiders.**

Section 2.6 of the Disclosure Statement references the adversary proceeding against Craig Development, LLC, Criag Properties, LLC, Craig, and Jordan Horner and asserts they obtained "in excess of $3.4 million in loan proceeds without providing reasonably equivalent value for receipt of such funds . . . ." However, there is no support given to this alleged amount or why RRSB claims this adversary proceeding may produce that value to the bankruptcy estate. In fact, it is Craig's understanding that the Chief Restructuring Officer ("CRO") appointed to the Debtor undertook a significant forensic accounting of the Debtor, but the Disclosure Statement provides

4

no information about this forensic accounting, what it may have produced that would support the adversary proceeding referenced, and what the strengths and weaknesses of the adversary proceeding may be.  The other parties in interest have a right to adequate disclosure of this information before such weight is given to the adversary proceeding, which would be assigned to the proposed creditor trust.

Furthermore, Section 2.6 is materially misleading in that it states the insiders have not disputed the factual allegations.  This is a clear misstatement of law and fact.  This statement is materially misleading as a matter of law because the Disclosure Statement does not disclose that the defendants in the adversary proceeding have filed a motion to dismiss the adversary proceeding.  Under Federal Rule of Civil Procedure 12, the defendants are not obligated to admit or deny the allegations against them until the motion to dismiss is decided.  Furthermore, this statement is a material misstatement of fact because the defendants to the adversary proceeding have disputed the allegations against them in their Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Adversary Complaint (Adversary No. 26-07003, Doc. 14, p. 2) in response to RRSB's incorrect assertion that the defendants had to deny the allegations notwithstanding their motion to dismiss.  This comment makes the Disclosure Statement materially misleading in that it implies that the defendants to the adversary proceeding do not intend to contest or otherwise dispute the allegations against them, which is not the case, and would therefore make the adversary proceeding more viable and valuable to the bankruptcy estate.

The statement improperly invites creditors to infer that the adversary proceeding is meritorious because the defendants purportedly have not disputed the underlying facts. The statement omits the procedural posture of the litigation, including the pending motion to dismiss

5

and the defendants' legal challenges to standing and claim ownership. The Disclosure Statement

presents a one-sided and inappropriate description of contested litigation.

**D.      The Creditor Trust causes of action are grossly overbroad without any analysis of potential outcomes.**

The definition of "Causes of Action" in the Liquidation Plan is incredibly broad.  The

definition includes all known and unknown claims, all direct and derivative claims, securities

claims, officer and director claims, insurance claims, state law claims, professional malpractice

claims, virtually every conceivable other cause of action.  The Liquidation Plan then transfers all

Causes of Action to the Creditor Trust.  However, the Disclosure Statement does not adequately

identify who will be sued, what claims may exist, the estimated value of those claims, a litigation

budget for those claims that would allow a hypothetical investor to weigh the cost benefit analysis

of the Creditor Trust (particularly when sale proceeds are committed to the trust rather than being

used to pay creditor claims), or the Trust's likely damages award and expected recovery.  A

creditor, sitting as a hypothetical investor cannot intelligently vote on the Liquidation Plan without

this information.

**E.      The Disclosure Statement does not provide adequate information about the proposed Creditor Trust.**

The Disclosure Statement also fails to provide adequate information about the proposed

creditor Trust.  First, the proposed Liquidation Plan and the Disclosure Statement describes the

Trust as being funded with "no less than $50,000" from the sale proceeds.  However, this does not

provide a hypothetical investor with adequate information about what amount will be used for the

Creditor Trust, what a possible litigation budget for the Creditor Trust may be, or the cost-benefit

analysis of using $50,000 of sale proceeds to pursue disputed claims.

Second, the proposed Liquidation Plan proposes that Michael Schmitz ("Schmitz") be the Creditor Trustee.  However, the Disclosure Statement nowhere discloses that Schmitz is the appointed chief restructuring officer for the related Generations on 1st, LLC bankruptcy case.  This poses an inherent conflict of interest if there are claims that Debtor Parkside Place, LLC may have against Debtor Generations on 1st, LLC as has been implied.  Schmitz cannot both be the Creditor Trustee in charge of pursuing claims on behalf of the Parkside Place Estate and also be the chief restructuring officer who would be responsible for defending against those claims.  This is the conflict of interest that RRSB argued prevented Schmitz from serving as sole chief restructuring officer for both Debtors (Doc. 300, p. 3).  Despite this, now RRSB suggests Schmitz may act in multiple fiduciary capacities.  The Disclosure Statement does not disclose this conflict of interest.  This is information that any hypothetical investor would need to know in order to make an educated decision.

Finally, the proposed Liquidation Plan appoints Charles Aarestad and Danielle Harless of RRSB and Lane Warzecha of the proposed property manager HME Properties, LLC as the Oversight Committee.  In other words, RRSB proposes to kill claims against RRSB that this Court has determined are plausible (Adversary No. 25-07009, Docs. 18 and 25), allow a Creditor Trustee with a conflict of interest to pursue claims against insiders, and create a committee to provide oversight of that Trustee by two officers of RRSB who have the most knowledge of RRSB's improper actions.  This Court is well aware of how bitter the litigation has been in these cases, but the Liquidation Plan doubles down on that bitterness by appointing actors in that litigation as the fiduciaries to oversee the Creditor Trust.  This Court has also heard evidence of how poor HME Properties, Inc. did in managing the properties at issue in these cases, but a representative of HME is the third oversight committee member.  The Disclosure Statement fails to include any

7

discussions of (a) conflicts of interest these individuals may have in serving as the oversight committee, (b) the qualifications of these individuals to serve in the important fiduciary role of an oversight committee, or (c) why two bank officers of a very small community bank have the experience or expertise for overseeing a trust.  This is all information a hypothetical investor should have.

These potential conflicts of interest are particularly important because the Liquidation Plan releases RRSB without discussing a basis for doing so under a Rule 9019, transfers claims against insiders to the Creditor Trust, appoints RRSB officers to oversee the litigation it wants to pursue, allows RRSB to influence pursuit of Estate causes of action, and gives oversight authority to individuals affiliated with parties who are now and may themselves be potential litigation targets. The question is not merely whether a conflict exists. The question is who decides which claims are pursued and which are not.  This structure is certainly not designed with a neutral estate fiduciary at the helm.  The Disclosure Statement does not explain the litigation decision process, settlement approval process, or fiduciary duties of the creditor trustee or the oversight committee. Rather, the Creditor Trust is set up to be self-interested.

The Disclosure Statement does not adequately disclose the governance structure of the Creditor Trust. It fails to explain who possesses ultimate authority to initiate litigation, abandon litigation, settle litigation, compromise claims, or decline to pursue claims. Because officers of RRSB serve on the Oversight Committee while claims against RRSB are simultaneously being extinguished, creditors are entitled to a far more detailed explanation regarding the independence of trust decision-making and protections against conflicted conduct.

**F.      The Disclosure Statement fails to address alternative options or outcomes.**

While a disclosure statement need not discuss every conceivable alternative, where a plan liquidates the primary asset of the Estate, settles estate litigation filed against the plan proponent, and transfers the remaining assets comprised solely of other causes of action to a litigation trust, creditors, as hypothetical investors, are entitled to receive comparative information sufficient to evaluate the settlement of the claims against the plan proponent.  For example, does reorganization remain possible, what would be expected to be received in a chapter 7 recovery, and what potential value would benefit the Estate if the litigation against RRSB succeeds.

This is particularly true here where the Liquidation Plan anticipates recovery for Class 3 claims solely through the Creditor Trust and extinguishes Craig's equity interest and provides no recovery to equity while simultaneously acknowledging:  (1) the property is approximately 95% occupied and stabilized; (2) the property generates consistent rental income; and (3) the Debtor has pending litigation against RRSB that may yield a recovery for unsecured creditors but for the release provided in the Liquidation Plan.  These factors beg the question while a typical reorganization plan that allows payments to creditors over several years or a period in which to refinance, such as the plans proposed by the Debtor prior to the Liquidation plan would not yield a better result for all creditors.

**G.      The Disclosure Statement fails to provide any meaningful valuation of the Estate's primary remaining assets.**

As noted above, the Liquidation Plan is, in substance, a litigation trust plan sponsored by the main secured creditor that has conflicts of interest and is self-driven to extinguish the claims against it. After payment of RRSB's secured claim through sale proceeds, the only realistic source of recovery for Class 3 creditors is the prosecution of causes of action assigned to the Creditor Trust. Despite that reality, the Disclosure Statement provides no liquidation analysis, no estimate

9

of expected recoveries, no range of outcomes, no probability analysis, no estimated costs of prosecuting the causes of action, and no estimate of net proceeds available for distribution. A hypothetical investor cannot make an informed judgment regarding a litigation trust where the trust's assets, risks, expenses, and expected recoveries remain largely undisclosed.

**H.      The Disclosure Statement fails to disclose material Federal tax consequences.**

Section 1125(a)(1) expressly identifies discussion of material federal tax consequences as a component of adequate information. The Disclosure Statement contains no meaningful discussion of federal tax consequences arising from the sale transaction, the creation of the Creditor Trust, the transfer of causes of action to the Creditor Trust, distributions from the Trust, cancellation of indebtedness issues, or tax consequences affecting creditors and equity holders. The absence of this information alone warrants denial of approval.

**I.      Section 2.4 of the Disclosure Statement contains irrelevant and misleading information that is intended to impugn Craig.**

Section 2.4 of the Disclosure Statement describes a communication between RRSB's counsel and Craig's counsel. However, the account of this communication is misleading, is irrelevant for purposes of the Disclosure Statement, and is intended only to impugn Craig by implying he has attempted to interfere with the CRO and RRSB.

First, the account of this communication is misleading. Section 2.4 references a communication between counsel on June 10, 2026. Section 2.4 of the Disclosure Statement clearly misrepresents the context of the exchange, which actually occurred on June 9, 2026. RRSB's counsel demanded Mindy Craig, in her capacity as a property manager with CP Business Management, Inc., allow access to the Parkside Place property on few hours' notice to allow Archer Land Co. to tour the property. The email was sent to Mindy Craig directly without copying the undersigned, who has noted an appearance for Mindy Craig in this case as well (Doc. 380).

Craig, Mindy Craig, and the undersigned had no prior notice or knowledge that RRSB or the CRO was in conversation with Archer Land Co. about the Parkside Place Property. RRSB claimed the current Cash Collateral Order (Doc. 415) gave them authority to conduct inspections. However, contrary to the Cash Collateral Order, this request was on less than 48 hours' notice, did not identify who the representatives of RRSB would be, and did not allow for only the designated RRSB representatives to conduct inspection, so the Cash Collateral Order clearly did not apply to this setting. Furthermore, the CRO had made no request to Mindy Craig or the undersigned to allow for the inspection. RRSB instead demanded it, representing that the CRO had allowed it, but there was no direct confirmation of that from the CRO or Debtor's counsel. Furthermore, such inspections and the sale of the property by the CRO acting alone without acting in association with the managing member of the Debtor is outside of the scope of the CRO's appointment. (Doc. 335-2; Doc. 337). The CRO has now conceded on the record that there is at least a question as to the CRO's authority to sell the property without the approval of Craig as the managing member of the Debtor.

Furthermore, the description of communication is irrelevant for a Disclosure Statement. It provides no additional information that a creditor or interested party may use for deciding whether to vote for or against the proposed liquidation plan. Aside from the first two sentences of Section 2.4 addressing the Debtor's employment of a professional CRO, there is nothing added by the rest of the section.

Section 2.4 is also materially misleading in that it claims Craig was somehow interfering with the proposed sale of the property to Archer Land Co., which he had no idea was even occurring. The sole purpose of including this passage appears to be to impugn Craig.

11

Finally, Section 2.4 is also materially misleading in that it implies the Liquidation Plan is a joint plan, even though it is not presented as a joint plan.  If the Liquidation Plan was contemplated as a joint plan, the Disclosure Statement does not adequately disclose the circumstances surrounding the development of the Plan, the role of the CRO, the extent of the CRO's investigation, including the forensic investigation referenced above, or the basis upon which the Debtor has not elected to continue with its own plan, particularly because (1) the property is approximately 95% occupied and stabilized; and (2) the property generates consistent rental income.  Creditors are entitled to understand the process by which the proposed compromise was reached rather than veiled references.

## CONCLUSION

Because of all these serious defects, the Court should deny approval of the Disclosure Statement.

Dated this 19th day of June, 2026.

 /s/ Douglas W. Murch
Douglas W. Murch, ND ID #05983
CONMY FESTE LTD.
3369 45th Street South
Fargo, ND  58104
(701) 293-9911
dmurch@conmylaw.com

ATTORNEY FOR JESSE CRAIG

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>GENERATIONS ON 1ST, LLC<br><br>      Debtor | Case No.:  25-30002<br>(Chapter 11) |
| In re:<br><br>PARKSIDE PLACE, LLC<br><br>      Debtor | Case No.:  25-30003<br>(Chapter 11)<br><br><br>(Jointly Administered) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee at the law firm of Conmy Feste

Ltd., and is a person of such age and discretion as to be competent to serve papers.

That on June 19, 2026, she served a copy of:

**INTERESTED PARTY JESSE CRAIG'S OBJECTION TO
DISCLOSURE STATEMENT FOR CREDITOR'S FIRST AMENDED
PLAN OF LIQUIDATION FOR PARKSIDE PLACE, LLC**

electronically by Notice of Electronic Filing upon all parties who have requested service in this

case by filing the same via ECF with the Bankruptcy Court in the District of North Dakota and

by United States mail on the following parties.

| ATTORNEY FOR CREDITOR | UNITED STATES TRUSTEE |
|---|---|
| Kesha L. Tanabe | Mary R. Jensen, Acting U.S. Trustee |
| Vogel Law Firm | Suite 1015 U.S. Courthouse |
| PO Box 1389 | 300 South Fourth Street |
| Fargo, ND 58107-1389 | Minneapolis, MN 55415 |

/s/ *Leslyn A. Anderson*
Leslyn A. Anderson

13