United States Bankruptcy Court
District of North Dakota

In re: Case No. 25-30002-skh
Generations on 1st LLC Chapter 11
Debtor

# CERTIFICATE OF NOTICE

District/off: 0868-3 User: admin Page 1 of 3
Date Rcvd: Aug 25, 2026 Form ID: pdf2some Total Noticed: 1

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 27, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| intp | + | Parkside Place LLC, 1405 1st Ave N, P.O. Box 426, Fargo, ND 58107-0426 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 27, 2026 Signature: /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 25, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Caren Stanley | on behalf of Defendant Red River State Bank cstanley@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Caren Stanley | on behalf of Creditor Red River State Bank cstanley@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Caren Stanley | on behalf of Plaintiff Red River State Bank cstanley@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Christianna A. Cathcart | on behalf of Plaintiff Parkside Place LLC christianna@dakotabankruptcy.com Cathcart.ChristiannaB114029@notify.bestcase.com |
| Christianna A. Cathcart | on behalf of Interested Party Parkside Place LLC christianna@dakotabankruptcy.com Cathcart.ChristiannaB114029@notify.bestcase.com |

| | |
|---|---|
| Christianna A. Cathcart | on behalf of Debtor Generations on 1st LLC christianna@dakotabankruptcy.com Cathcart.ChristiannaB114029@notify.bestcase.com |
| Christianna A. Cathcart | on behalf of Debtor Parkside Place LLC christianna@dakotabankruptcy.com Cathcart.ChristiannaB114029@notify.bestcase.com |
| Christianna A. Cathcart | on behalf of Plaintiff Generations on 1st LLC christianna@dakotabankruptcy.com Cathcart.ChristiannaB114029@notify.bestcase.com |
| Dan Frisk | on behalf of Interested Party Craig Holdings LLC peggy@stflawfirm.com |
| Dan Frisk | on behalf of Interested Party Craig Development LLC peggy@stflawfirm.com |
| Dan Frisk | on behalf of Interested Party CP Business Management Inc. peggy@stflawfirm.com |
| Dan Frisk | on behalf of Interested Party Mulinda a/k/a Mindy Craig peggy@stflawfirm.com |
| Dan Frisk | on behalf of Interested Party Craig Properties LLC peggy@stflawfirm.com |
| Dan Frisk | on behalf of Interested Party Jesse Craig peggy@stflawfirm.com |
| David R. Strait | on behalf of Creditor Watertown Development Company david@austinlawsd.com aphillips@austinlawsd.com |
| Douglas Murch | on behalf of Defendant Jordan Horner dmurch@conmylaw.com rstallman@conmylaw.com;landerson@conmylaw.com |
| Douglas Murch | on behalf of Defendant Craig Development LLC dmurch@conmylaw.com, rstallman@conmylaw.com;landerson@conmylaw.com |
| Douglas Murch | on behalf of Interested Party Mulinda a/k/a Mindy Craig dmurch@conmylaw.com rstallman@conmylaw.com;landerson@conmylaw.com |
| Douglas Murch | on behalf of Interested Party Jesse Craig dmurch@conmylaw.com rstallman@conmylaw.com;landerson@conmylaw.com |
| Douglas Murch | on behalf of Defendant Craig Properties LLC dmurch@conmylaw.com, rstallman@conmylaw.com;landerson@conmylaw.com |
| Douglas Murch | on behalf of Defendant Jesse Craig dmurch@conmylaw.com rstallman@conmylaw.com;landerson@conmylaw.com |
| Drew J. Hushka | on behalf of Creditor Red River State Bank dhushka@vogellaw.com lstanley@vogellaw.com,kjohnson@vogellaw.com |
| Drew J. Hushka | on behalf of Plaintiff Red River State Bank dhushka@vogellaw.com lstanley@vogellaw.com,kjohnson@vogellaw.com |
| Drew J. Hushka | on behalf of Debtor Generations on 1st LLC dhushka@vogellaw.com lstanley@vogellaw.com,kjohnson@vogellaw.com |
| Drew J. Hushka | on behalf of Defendant Red River State Bank dhushka@vogellaw.com lstanley@vogellaw.com,kjohnson@vogellaw.com |
| ERIK A. AHLGREN | on behalf of Plaintiff The Ruins LLC erik@ahlgrenlawoffice.net, lisa@ahlgrenlawoffice.net;michael@ahlgrenlaw.net;jill@ahlgrenlawoffice.net;eaa@trustesolutions.net;hadley@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net |
| ERIK A. AHLGREN | on behalf of Counter-Defendant The Ruins LLC erik@ahlgrenlawoffice.net, lisa@ahlgrenlawoffice.net;michael@ahlgrenlaw.net;jill@ahlgrenlawoffice.net;eaa@trustesolutions.net;hadley@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net |
| Erik A. Ahlgren | on behalf of Counter-Defendant The Ruins LLC erik@ahlgrenlawoffice.net, trustee@prtel.com;erik@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net;eaa@trustesolutions.net;hadley@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net |
| Erik A. Ahlgren | on behalf of Plaintiff The Ruins LLC erik@ahlgrenlawoffice.net, trustee@prtel.com;erik@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net;eaa@trustesolutions.net;hadley@ahlgrenlawoffice.net;jill@ahlgrenlawoffice.net |

| | |
|---|---|
| Jordan J Feist | on behalf of Creditor Watertown Development Company jordan.feist@woodsfuller.com bailey.jacobsma@woodsfuller.com |
| Kesha Tanabe | on behalf of Defendant Red River State Bank ktanabe@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Kesha Tanabe | on behalf of Creditor Red River State Bank ktanabe@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Kesha Tanabe | on behalf of Plaintiff Red River State Bank ktanabe@vogellaw.com lstanley@vogellaw.com;kjohnson@vogellaw.com |
| Maurice VerStandig | on behalf of Debtor Parkside Place LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Counter-Defendant Generations on 1st LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Interested Party Parkside Place LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Counter-Defendant Parkside Place LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Debtor Generations on 1st LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Plaintiff Parkside Place LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Maurice VerStandig | on behalf of Plaintiff Generations on 1st LLC mac@mbvesq.com mac@dakotabankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email |
| Sarah J. Wencil | on behalf of U.S. Trustee United States Trustee sarah.j.wencil@usdoj.gov |
| United States Trustee | USTPRegion12.SX.ECF@usdoj.gov |

TOTAL: 42

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA**

---

In re:

Parkside Place, LLC,

Debtor.

Case No.: 25-30002; 25-30003
Chapter 11 Case

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
RE: CONFIRMATION OF THE PROPOSED
SECOND AMENDED CHAPTER 11 PLAN
FOR PARKSIDE PLACE, LLC**

---

Red River State Bank (RRSB) filed Creditor's First Amended Plan of Liquidation for Parkside Place, LLC, on June 22, 2026. Doc. 442. RRSB also filed its Amended Disclosure Statement for Creditor's First Amended Plan of Liquidation for Parkside Place, LLC, on June 22, 2026. Doc. 440. On June 23, 2026, the Court entered an Order Approving Disclosure Statement and Setting Deadline for Return of Ballots and Objections to Confirmation and Scheduling Confirmation Hearing. Doc. 444. On the same day, RRSB served the Amended Disclosure Statement, Creditor's First Amended Plan of Liquidation, Order Approving Disclosure Statement and Setting Deadline for Return of Ballots and Objections to Confirmation and Scheduling Confirmation Hearing, and Ballot for Accepting or Rejecting Red River State Bank's First Amended Chapter 11 Plan of Liquidation, on interested parties. Doc. 445.

On July 21, 2026, RRSB filed the Chapter 11 Computations summarizing the ballots for or against the Creditor's First Amended Plan of Liquidation. Doc. 495. It also filed a Preconfirmation Hearing Brief in support of the Plan. Doc. 511. Interested Party

Jesse Craig filed an objection. Doc. 496. Debtor filed a limited objection to confirmation of the Creditor's First Amended Plan of Liquidation. Doc. 498.

Additionally, RRSB filed a proposed Second Amended Chapter 11 Plan for Parkside Place, LLC on July 27, 2026. Doc. 515. Interested Party Jesse Craig filed an objection to the proposed Second Amended Chapter 11 Plan. Doc. 520.

The Court held confirmation hearings on July 28, 2026, August 6, 2026, and August 10, 2026.

For the reasons stated below and based on the contents of the proposed Second Amended Chapter 11 Plan, Amended Disclosure Statement, Ballot Report, Preconfirmation Hearing Brief, evidence received during the confirmation hearing, and the complete record of this case, the Court finds that the proposed Second Amended Chapter 11 Plan for Parkside Place, LLC, meets all requirements of 11 U.S.C. § 1129 and other applicable provisions of the Bankruptcy Code except as discussed below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. The Court has jurisdiction over this matter and this case pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction and authority to enter a final order confirming a plan of liquidation.

B. RRSB properly served Creditor's First Amended Plan of Liquidation, Amended Disclosure Statement, and Confirmation Hearing Order.

C. The proposed Second Amended Chapter 11 Plan includes revisions based on objections and Court concerns. In this revised version of its Plan, RRSB changed the process for equitable subordination of Insider Claims, requiring a

postconfirmation adversary proceeding; agreed to replace the proposed Plan Administrator and Creditor Trustee with an independent and qualified designee; designated a Plan Administrator as the person responsible for postconfirmation administration, rather than the Plan Proponent who is responsible for selecting a replacement Plan Administrator if he is not willing or able to serve; updated its estimates of postconfirmation administrative expenses; removed language from Classes 5 and 6 suggesting these classes were disregarded or extinguished; added language to the Archer Land Company (ALC) Transaction regarding the nature of the sale; added a provision to the sale process regarding the retention of a broker if proposed sales are not consummated; added VKB Properties, LLC, as a backup bidder; and requested language in the confirmation order clarifying sale terms. Doc. 515 at 7-10, 12-15.

Craig objected to the proposed Second Amended Chapter 11 Plan, arguing that RRSB filed it only one day before the confirmation hearing. Craig also argues that the new proposal contains substantive revisions, which should have been noticed and served on interested parties. Craig maintains "the proposed amendments are substantive changes intended to undercut the well-placed objections to the plan on the eve of the confirmation hearing." Doc. 520 at 2.

Craig is correct that RRSB revised certain provisions in response to Craig's objections and Court concerns, which is appropriate and helpful. The question is whether RRSB must notice the proposed Second Amended Plan to interested parties. To decide this, the Court must ascertain whether any of the revisions adversely affect the substantive rights of creditors and other interested parties that did not receive notice of these revisions.

The Court finds that none of the proposed changes related to the sale of estate assets adversely affect the substantive rights of creditors. To the contrary, RRSB added provisions that provide for VKB Properties as a backup bidder for only $50,000 less than the sale proposal and arranged for a broker to market and sell the property at issue if the first two proposed sales are not consummated. These contingencies help to ensure prompt sale of estate property and distribution of proceeds. While Craig expressed concern about the sale process, the creditors with the largest secured and unsecured claims, RRSB and Watertown Development Company, supported it. No creditor objected to the proposed Second Amended Plan. Furthermore, the Court is not convinced that adding VKB Properties as a backup bidder and providing for a brokered sale in the proposed Second Amended Chapter 11 Plan adversely affected Craig, the equity interests he holds or Affiliates.

In his brief and during closing argument, Craig also expressed concern about the new provisions in the proposed Second Amended Chapter 11 Plan that relate to the Plan Administrator. Based on Court inquiries in a related case, RRSB replaced Plan Proponent with Plan Administrator for all postconfirmation administration functions. In the proposed Plan, the Plan Proponent retains authority to designate a replacement person with similar qualifications if the Plan Administrator is unable to or unwilling to serve. This revision does not adversely affect interested parties because RRSB held this authority in its Amended Chapter 11 Plan of Liquidation, relinquished control over all other functions assigned to the Plan Administrator and assigned them to a qualified designee.

In his Objection to the proposed Second Amended Chapter 11 Plan, Craig also argues that RRSB designated a backup Creditor Trustee in the Plan without allowing him sufficient time to investigate and vet possible objections to this designee. In its proposed Second Amended Chapter 11 Plan, RRSB designated Steve Huff, Esq., of Marlow, Woodward and Huff, PLLC, as Creditor Trustee if the Court finds that Mike Schmitz has a conflict of interest. Huff is an attorney licensed to practice in Iowa and South Dakota. RRSB called Huff as a witness on July 28, 2026. Huff testified that he has 20 years of bankruptcy experience. He also has served as a court-appointed receiver.

On cross examination and during oral argument, Craig highlighted that Huff has no accounting background or experience. Craig argues that Huff is not qualified to serve as a Creditor Trustee. He also maintains that designating Huff as the Creditor Trustee will result in additional costs and inefficiencies because he is new to the case and must retain an accountant to analyze the fraudulent transfers alleged in a pending adversary proceeding.

The Court is not convinced that listing Huff as an alternative Creditor Trustee adversely affects interested parties—including Craig. Although Huff is not a Certified Public Accountant or forensic accountant, he has collaborated with forensic accountants. Huff has the requisite background to serve as a Creditor Trustee, and he is disinterested. Huff testified he has no connections to RRSB, Mike Schmitz, Watertown Development Company or HME Properties, LLC. Craig's argument that Huff is not qualified to serve as a Creditor Trustee is rejected.

Craig's assertion that appointing Huff as the Creditor Trustee will result in additional costs and inefficiencies is correct. Mike Schmitz, RRSB's preference and the person designated in Creditor's First Amended Chapter 11 Plan of Liquidation, is an accountant who served as Chief Restructuring Officer for Generations on 1st, LLC, and who was appointed the Creditor Trustee in a related bankruptcy case. He is the most efficient and cost-effective choice, but Craig objects to the Court appointing Schmitz, arguing he has a conflict of interest. The Court agrees.

Evidence regarding fund transfers from RRSB to Craig Development, LLC, to Debtor, Generations on 1st, LLC, The Ruins, LLC, and other entities related to Craig, as well as transfers among these entities suggest that Debtor and Generations may have conflicting interests. The adverse consequences of these conflicts—previously acknowledged by RRSB—are remedied by designating Huff, who is disinterested and has no conflicts. Although Craig suggests Edward T. Gavin, the Parkside Place Chief Restructuring Officer, is a better and more efficient choice for Creditor Trustee, this decision is left to the Plan Proponent who prepared the Plan before the Court for confirmation.

Importantly, Craig received an opportunity to question Huff at the confirmation hearing, and Craig acknowledged notice of the other revisions in the proposed Second Amended Plan on July 27, 2026, 14 days before the close of evidence. The objections he asserted and the evidence he offered convince the Court that he had sufficient time to respond to these revisions.

The pool of interested parties in this case is small: only six classes, three of which are unimpaired. The impaired class of unsecured creditors is composed of only

three creditors. All creditors eligible to vote accepted Creditor's First Amended Plan of Liquidation, and the two unsecured creditors who hold the large majority of unsecured debt affirmatively support the Plan and the proposed Second Amended Chapter 11 Plan. Other than Craig, no interested parties objected to the Plan RRSB served (except Debtor who appeared at all the confirmation hearings) or to the proposed revisions. The Court finds that RRSB's revisions to its proposed Second Amended Chapter 11 Plan do not adversely affect the substantive rights of creditors and other interested parties that did not receive notice of these revisions. RRSB is not required to renotice and serve the proposed Second Amended Chapter 11 Plan. Craig's objection is overruled.

D. RRSB solicited votes for acceptance and rejection of the Creditor's First Amended Plan of Liquidation in compliance with 11 U.S.C. §§ 1125 and 1126, Fed. R. Bankr. P. 3017 and 3018, the Disclosure Statement, and the Confirmation Hearing Order.

E. Interested Party Jesse Craig filed an objection to Creditor's First Amended Chapter 11 Plan of Liquidation and the proposed Second Amended Chapter 11 Plan.

F. Debtor filed a limited objection to confirmation. Specifically, Debtor objects to confirmation of Creditor's First Amended Chapter 11 Plan of Liquidation to the extent Craig or any other party provides evidence at the confirmation hearing that the party has secured financing for the purchase of Debtor's assets, the ability to purchase the assets by August 15, 2026, and a desire to do so for a price higher that the proposed sale in the Plan. Neither Craig nor any other party submitted an overbid under the terms proposed in the Plan. No party offered evidence that it had the ability

to purchase Debtor's assets by August 15, 2026. Accordingly, it appears that Debtor asserts no objection to the Plan. To the extent Debtor asserted an objection, it is overruled because the Court finds that the sale proposed in the Second Amended Chapter 11 Plan is sound exercise of business judgment consistent with Bankruptcy Code.

G. The Court makes the following specific findings for each applicable provision of 11 U.S.C. § 1129:

1. <u>11 U.S.C. § 1129(a)(1).</u>

RRSB, as Plan Proponent, did not separately classify identical claims, and it demonstrated a reasonable and good faith basis for its classifications in the proposed Second Amended Chapter 11 Plan. The Court received no objections to the classifications or priorities in the Plan. The Plan contains the necessary components and complies with sections 1122 and 1123(a).

Under section 1123(b)(3), settlement of claims may be included in a plan. RRSB proposes to settle all claims against RRSB and/or any of its employees, representatives, officers, and directors, that were raised or could have been raised in the Adversary Proceeding or Foreclosure Proceeding in consideration for RRSB's agreement to release proceeds from the sale of its collateral to pay certain claims and to fund the Creditor Trust. The Plan also includes broad exculpation and injunction provisions that apply to "any Person[1] for any act taken or omitted to be taken in connection with or related to the Chapter 11 case . . . or any contract, instrument,

[1] The Plan adopts the definition of "Person" provided in the Bankruptcy Code. Doc. 515. ¶ 1.2(kk.). "The term 'person' includes individual, partnership, and corporation, but does not include governmental unit[.]" 11 U.S.C. § 101(41).

release or other agreement . . . or any other act taken or omitted to be taken in connection with … the Plan … or related agreement[.]" Doc. 515 at § 8.1.

Craig objected to the settlement of claims against RRSB, arguing that the Plan contained no analysis of RRSB's potential liability, which is paramount because RRSB is the Plan Proponent proposing to release the claims. Craig also argues that the Plan Proponent shows lack of good faith by including RRSB among the Plan Participants receiving the benefit of exculpation and injunctions in the Plan.

In deciding whether the provisions dismissing with prejudice all claims against RRSB and releasing RRSB and Plan Professionals from liability in connection with this case for consideration sufficient to meet the business judgment and/or Rule 9019 standards, the Court considered evidence offered at the hearing and the terms of the Plan, which provides:

> **RRSB Settlement**. Pursuant to Federal Rule of Bankruptcy Procedure 9019 and/or 11 U.S.C. 1123(b)(3)(A), on the Effective Date of the Plan, any and all claims against RRSB and/or any of its employees, representatives, officers, and directors, that were raised or could have been raised in the Adversary Proceeding[[2]] or Foreclosure Proceeding, shall be dismissed with prejudice. In consideration thereof, RRSB has agreed to permit proceeds of the sale of the Real Estate Collateral to be used on the Effective Date to pay all Administrative Expenses, Priority Tax Claims, UST fees, and to fund the Creditor Trust. Additionally, RRSB will dismiss the Foreclosure Proceeding with respect to the Debtor as soon as practicable after the Effective Date.

Doc. 515 at § 4.11.

> **Limitation of Liability in Connection with the Case, the Plan, and Related Documents**. Pursuant to § 1125(e) of the Bankruptcy Code; the Plan Proponent and the Creditor Trustee, and their Professionals, representatives, successors, and assigns (collectively, the "Plan

[2] The Plan defines Adversary Proceeding as "the adversary proceeding brought by the Debtor AP-25-7009 in the United States Bankruptcy Court for the District of North Dakota." Doc. 515 at 5.

> Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11 case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.
>
> *All Persons* are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, *whether directly, derivatively, on account of or respecting any Claim*, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

Doc. 515 at § 8.1. (emphasis added).

Consideration for the release in the Plan fairly includes future United States Trustee fees (which the RRSB anticipates will exceed $44,000), $50,000 to fund the Creditor Trust, and professional fees due and owing on confirmation which will likely total in excess of $45,000 ($29,660 currently owing to Debtor's counsel and CRO fees estimated to be not less than $15,000). `

Danielle Harless, Executive Vice President at RRSB, testified that Debtor's claims against RRSB in Adversary Proceeding 25-7009 have no value, supporting RRSB's argument that the consideration offered is more than the value of Debtor's claims. Harless explained that Counts I and II alleging a fraudulent conveyance in the context of a forbearance agreement Debtor signed on February 17, 2023, (POC 1, Ex. F.,"Forbearance Agreement"), did not include notes owed by Debtor Parkside Place.

Consequently, the alleged interest rate increase at the heart of the fraudulent conveyance claim does not relate to Debtor, and these causes of action have no value.

With regard to the deceit and fraud causes of action alleged in Adversary Proceeding 25-7009, Harless suggested that these causes of action also relate to the Forbearance Agreement, which does not include Parkside Place notes. She maintains these claims are valueless as well.

While it is true that the fraud and deceit causes of action allege claims related to swapping out a different version of the Forbearance Agreement for the Forbearance Agreement Craig and Mulinda Craig signed but did not review, Counts III and IV allege claims and seek damages for conduct other than interest rate increases. Debtor also alleges RRSB violated applicable lending limit laws, and it lacked funds to make the requisite loans at issue.

Evidence received during the confirmation hearings shows Charles Aarestad (Senior Vice President of RRSB) acknowledged that a RRSB employee violated lending limit laws. Ex. E10. The evidence also shows that Martin Peterson, a former loan officer with RRSB, worked with Craig on loans to Debtor, Generations on 1st, LLC, and The Ruins, LLC, each of which borrowed money from RRSB to build residential apartment buildings in Watertown, South Dakota. Peterson, acting on behalf of RRSB, arranged and approved $4,451,100 in Small Business Administration-guaranteed loans to Mulinda Craig (the Mulinda loans). Peterson approved these loans to work around lending limits knowing that the loans would be used to fund the construction of Generations and Parkside Place residential apartment buildings and knowing that

Mulinda Craig had no ability to repay these loans. Approximately $1,240,000 of this sum is attributable to Parkside Place.

RRSB argues it loaned Debtor more than the sum originally proposed in the term sheet dated October 19, 2020, in which RRSB contemplated a construction phase loan in the sum of $3,862,148. Ex. RR-8. The loans from RRSB to Debtor totaled $4,200,000. POC 1, Ex. A. Additionally, RRSB maintains that Debtor benefited from these loans because they were necessary to complete construction of the residential apartment buildings. Accordingly, it argues that Debtor can show no damages arising from any alleged lending violations or failure to loan money.

In response, Craig maintains that, but for the Mulinda loans, which were wrapped into the Forbearance Agreement, Debtor would have never been in default on its payment obligations. See POC 1, Ex. N. Craig argues that RRSB is liable for all the damages caused by Debtor's default, including costs and attorney fees incurred in the foreclosure, receivership and bankruptcy cases, loss of cash flow and other undefined losses. Without itemizing these losses, Craig testified that these damages are in excess of $150,000 or the sum RRSB offers as consideration for the release and exculpation clauses in the Plan.

Craig's argument ignores the premise that Debtor needed the loans to complete construction of the Parkside Place residential apartment complex and that Debtor willingly accepted and used the funds to complete this construction. The Court understands that Craig (on behalf of Debtor) accepted these funds, assuming that Debtor would receive other longer-term loans that would satisfy Mulinda Craig's debt. But this understanding (without written contracts memorializing this agreement) does

not change the fact that Debtor received the funds it needed through the Mulinda loans, benefited from them and intended to repay them. Recovery for reckless lending typically belongs to the bank, its shareholders and its insurers, not to the borrowers who spent the money loaned. See Cogan v. Triad Am. Energy, 944 F. Supp. 1325, 1329 (S.D. Tex. 1996). Craig provides no authority for the proposition that Debtor's receipt of funds derived through violation of lending limit laws or other imprudent lending to Mulinda Craig harmed Debtor.

Given the lack of evidence showing damages to Debtor may exceed the consideration RRSB offers in the Plan, the low probability of recovery, the expense of litigation, the delay caused by litigation, and the benefits RRSB offers to creditors through the Plan, the Court finds that the Plan Proponent exercised good business judgment in seeking to release Counts I-IV of the Adversary Proceeding and the Foreclosure Proceeding.[3]

Craig also maintains that the evidence RRSB offered is insufficient to meet the Bankruptcy Rule 9019 standards. The Court is not entirely convinced that a nondebtor plan proponent must meet Rule 9019 standards. Nevertheless, based on Harless's testimony, Debtor's allegations against RRSB and evidence received at the hearing, the Court finds the settlement in the Plan limited to Counts I-IV of the Adversary Proceeding and the Foreclosure Proceeding is fair and equitable and in the best interests of the

[3] Although RRSB and Craig make no arguments regarding the state court foreclosure proceeding RRSB initiated and agreed to release, the evidence shows that Debtor was in default in the terms of promissory notes and the Forbearance Agreement and that RRSB holds mortgages against Debtor's property. See POC 1. Accordingly, the Court finds that RRSB holds plausible foreclosure causes of action it agreed to release, electing to pursue a negotiated sale vetted through the confirmation process in lieu of foreclosure.

bankruptcy estate. In reaching this conclusion, the Court considered the allegations in Counts I-IV and prayer for relief in the Adversary Proceeding Complaint and Harless's testimony regarding the probability of recovering in excess of the consideration offered in the Plan; the probability that the Creditor Trust could collect the judgment if it prevailed; the complexity of the litigation and the cost and delay necessary to obtain a resolution; and the interests of the creditors—who filed no objection to the release, exculpation provisions or any other provision in Creditor's First Amended Chapter 11 Plan.

This conclusion does not complete the analysis of the release as it relates to the pending Adversary Proceeding, however. Neither RRSB nor Craig specifically address Count VI, in which Debtor alleges negligence per se arising from Debtor's claim that Aarestad corruptly solicited or demanded Debtor sell its assets to Aarestad for less than they were worth. Adv. Pro. 25-7009, Compl. at ¶¶ 142-151.

The Court received evidence suggesting Aarestad and/or his assignors offered to purchase Debtor's property for $5,440,771.81 in a letter advising Debtor it was in default under the terms of the notes and Forbearance Agreement. See Ex. E2. Craig testified that this sum was equivalent to the sum Debtor owed under the $4.2 million loan and the portion of the Mulinda notes allocated to Parkside Place, which totaled $1.24 million. Craig declined this offer on behalf of Debtor, maintaining that the property was worth $6,640,000. He testified that he felt like the offer was extortion.

When Debtor refused Aarestad's offer, Debtor claims RRSB subjected Generations and Parkside Place to an assignment of rents and, eventually, a receivership, causing them to suffer by paying "disproportionately expensive sums to a

receiver" and "being without sufficient funds to pay operating expenses." Adv. Pro. 25-7009, Doc. 28 at ¶¶ 149. The Court received no evidence suggesting RRSB offered consideration sufficient to release this claim. No witness referenced Count VI at the confirmation hearings. Since the Plan Proponent carries the burden of proof, the Court will not approve the release through confirmation of the Plan, unless RRSB excepts the claims and causes of action alleged in Count VI from the proposed release.

Further, given the receipt of evidence suggesting a "Person" may have plausible claims against RRSB relating to lending law violations and negligence per se, the Court also declines to confirm a plan of liquidation that includes an exculpation clause and injunction purporting to bind any "Person" to a liability release and injunction applicable to all Plan Participants, including RRSB. While the Court often approves exculpation and release provisions pertaining to bankruptcy professionals, including RRSB in the Plan Participant definition for the purpose of these provisions is too broad. In other words, the scope of any release, injunction or exculpation clause relieving RRSB of liability must be limited to Debtor's release of claims against RRSB for the conduct defined in Counts I-IV of Adversary Proceeding 25-7009.

Craig's objections are overruled in part. Except for the release, exculpation and injunction provisions discussed above and the limitations included in paragraph 6.1 discussed below, the proposed Second Amended Chapter 11 Plan complies with applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1122, 1123 and 1126. The requirements of 11 U.S.C. § 1129(a)(1) are satisfied in part.

2. 11 U.S.C. § 1129(a)(2).

Except as provided in this Order, RRSB, as proponent of the proposed Second Amended Chapter 11 Plan, complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including the solicitation of acceptances and rejections of the Plan. Craig's objections are overruled in part. The requirements of 11 U.S.C. § 1129(a)(2) are satisfied in part.

3. 11 U.S.C. § 1129(a)(3).

Section 1129(a)(3) requires that the Plan must be proposed in good faith and not by any means forbidden by law. Craig argues that RRSB failed to meet this burden. Specifically, Craig argues that the Plan fails to maximize the value of the estate for the benefit of creditors and interested parties because the property Plan Proponent seeks to sell was not properly marketed, the proposed liquidation does not maximize the value of estate assets and Craig presented a "superior alternative that provides greater value to the estate and its stakeholders"; the Plan allows for automatic equitable subordination of insider claims without adjudication and fails to satisfy the requirements of 11 U.S.C. § 510(c); the Plan releases the estate's claim against RRSB without adequate consideration or justification; the Plan diverts $50,000 of sale proceeds to the Creditor Trust but provides no demonstrated benefit to the estate and unnecessarily increases the costs of administration; and the Creditor Trust will be overseen by people with conflicts of interest. Craig argues these objections should not be considered in isolation, but rather collectively, to establish that the Plan was not proposed in good faith.

"[A] plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.), 933 F.3d 918, 927 (8th Cir. 2019) (quoting Hanson v. First Bank of S.D., N.A., 828 F.2d 1310, 1315 (8th Cir. 1987)). "These standards include serving Bankruptcy Code objectives, such as 'preserving going concerns and maximizing property available to satisfy creditors, giving debtors a fresh start in life, discouraging debtor misconduct, the expeditious liquidation and distribution of the bankruptcy estate to its creditors, and achieving fundamental fairness and justice.'" Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.), 582 B.R. 771, 783 (E.D. Mo. 2017), aff'd, 933 F.3d 918 (8th Cir. 2019) (quoting In re WR Grace & Co., 729 F.3d 332, 346 (3d Cir. 2013)). Courts consider the totality of the circumstances surrounding the creation of a plan in determining whether the plan was proposed in good faith. In re Peabody Energy Corp., 933 F.3d at 927. "The proper [good faith] inquiry is whether the plan constitutes an abuse of the provisions, purpose or spirit of the Code." In re J & J Oilfield Servs., Inc., 2015 WL 3750143, at *9 (Bankr. D.N.D. June 12, 2015) (quoting Cutcliff v. Reuter (In re Reuter), 427 B.R. 727, 770 (Bankr. W.D. Mo. 2010)).

In response to concerns expressed by Craig, RRSB filed its proposed Second Amended Chapter 11 Plan, which included revisions to § 4.10, Equitable Subordination of Insider Claims. The revised language provides that "[e]quitable subordination of Insider Claims may be determined post-confirmation through an adversary proceeding, claim objection, or other appropriate process." Doc. 515 at § 4.10. RRSB also deleted

the sentence in the description of Class 6, providing that all equity interests will be extinguished on confirmation. Additionally, the revisions to the description of Class 5 and 6 also clarify that these classes are no longer disregarded for the purposes of voting. Instead, they are deemed to reject the Plan. These changes resolve Craig's objections to automatic equitable subordination and categorize Equity and Affiliate interests more accurately, demonstrating compliance with section 1129 requirements.

Craig also argues that the proposed Creditor Trust provides no demonstrated benefit to the estate and unnecessarily increases costs of administration. As an example, Craig argues that RRSB's Complaint against Craig Development, LLC, Craig Properties, LLC, Craig, and Jordan Horner in Adversary Proceeding No. 26-7003 "consists largely of conclusory allegations" that do not support the need for a litigation trust.

The adversary complaint is not the only evidence in the record suggesting viable claims for the Creditor Trust to pursue. The Court received evidence that Craig Development and Craig Properties transferred more than $5 million in RRSB loan proceeds from its accounts with First Community Credit Union to persons or entities unrelated to Debtor, Generations or the construction of Debtors' residential apartment buildings, most of whom had connections to Craig or related entities. In the Complaint and Amended Disclosure Statement, RRSB estimates that Insiders obtained more than $3.4 million of the loan proceeds without reasonably equivalent value. At the confirmation hearing, Harless testified that the projected value of these claims range from $330,000 to $990,000. See also Doc. 440 at 17.

Through Craig's testimony and on cross examination of Harless, Craig established that funds other than loan proceeds from RRSB were deposited in the First Community Credit Union accounts, including rent proceeds, fees to Craig Development from unrelated projects and "TIF amounts." In explaining the transfers Harless listed, Craig also testified he was compelled to transfer funds from various sources unrelated to Debtor to pay construction costs because RRSB was not promptly approving and funding Debtor's draw requests. Craig offered no specific examples of transactions or estimated deposits showing that the sum of deposits other than RRSB loan proceeds exceeded the sum of transfers to Insiders and no reconciliation showing that transfers to Insiders were simply repayment of funds previously borrowed to pay Debtor's construction costs.

While Harless's transaction summaries showing transfers to Insiders is not sufficient to prove a cause of action against the Insiders, this evidence and the allegations in Adversary Proceeding 25-7003 are sufficient to show potential value to the Creditor Trust in excess of the $50,000 RRSB proposes to invest in postconfirmation litigation. In addition to claims against Insiders, the Creditor Trustee possesses the right to pursue other claims on behalf of the Creditor Trust. Accordingly, the Court finds that RRSB's decision to invest $50,000 in sale proceeds to fund the Creditor Trust was a proper exercise of business judgment and it proposed the Creditor Trust in good faith and not for an improper purpose.

Additionally, Craig asserts that the Creditor Trust governance structure was not proposed in good faith because the Plan appoints a Creditor Trustee with a conflict of interest, and the Plan appoints individuals to the Creditor Trust Oversight Committee

who are affiliated with RRSB or parties whose interests may not be fully aligned with those of the estate. In response to Craig's arguments regarding the Creditor Trustee's potential conflicts, RRSB appointed Steven Huff as an alternate Creditor Trustee in its proposed Second Amended Chapter 11 Plan. As explained in section C above, RRSB remedied the potential conflict of interest by designating Steven Huff, who is disinterested and has no conflicts.

Under the Trust document attached as Exhibit B to the proposed Second Amended Chapter 11 Plan, the Oversight Committee is comprised of Danielle Harless from RRSB, Lane Warzecha from HME Properties, Inc, and Chris Clifton, Executive Director of the Watertown Development Company. RRSB, HME Properties and Watertown Development Company (the only creditors in Class 3), are the creditors who will benefit if the Creditor Trust is successful in pursuing the bankruptcy estate's claims. In fact, the Creditor Trust is designed with the purpose of investigating, litigating and/or settling Causes of Action for the benefit of all Holders of Class 3 Claims. Doc. 515 at 14. It is not uncommon for a plan proponent to appoint creditor representatives to serve on a creditor trust committee. Here, all three are represented.

The members appointed to the Creditor Trust Oversight Committee are well-suited to provide guidance to the Creditor Trustee. Harless testified that she and HME Properties representatives know and understand Debtor's relationship with Craig and affiliated entities, who are targets of a pending adversary proceeding. Additionally, the Court received summaries of fund transfers to Insiders that Harless assisted in compiling. Presumably, this background would be helpful to the Creditor Trustee in deciding whether to pursue claims against Insiders.

Craig expresses concerns about appointing representatives to the Oversight Committee who may not "exercise independent judgment free from divided loyalties," who may be influenced by RRSB or who may possess interests adverse to the estate. Under the terms of the Plan, proceeds from the sale of Debtor's property will be used to pay priority tax claims (if any), administrative expense claims, United States Trustee fees and part of the first priority secured claim. RRSB proposes to create a Creditor Trust to pay the unsecured creditors, who it maintains are next in line to receive payment under the Bankruptcy Code. Craig offered no argument or opposition to these priorities, yet he suggests that RRSB and HME may not be represented on the Oversight Committee because they hold interests that are not fully aligned with those of the estate. Craig offers no authority for the proposition that Creditor Trust Committee Members must be selflessly disinterested or fully aligned with the postconfirmation estate. As designed, the Creditor Trust Oversight Committee does not hold interests adverse to the estate or the Creditor Trust created through the Plan.

To the extent the Creditor Trustee learns that the Creditor Trust holds viable claims against a member of the Creditor Trust Oversight Committee or the entity with which it is affiliated, the Trust Agreement provides a recusal process. The Creditor Trustee holds sole discretion to bring claims on behalf of the Trust. There is no evidence suggesting Huff would not exercise independent judgment in doing so. RRSB's decision to appoint creditor representatives to the Oversight Committee was a proper exercise of business judgment. Based on review of the totality of circumstances and the terms of the Trust Agreement, the Court finds that RRSB met its burden of

showing that it proposed the Creditor Trust Oversight Committee in good faith and not for any improper purpose.

Craig devotes much of his argument and evidence in opposition to plan confirmation on his claim that the proposed sale and overbid procedures in the proposed Plan were not designed to maximize the value of the estate for the benefit of creditors and other interested parties. In his written objection, Craig argues that "RRSB has not presented evidence of a comprehensive marketing effort, broker opinion of value, capitalization rate analysis, comparable sales analysis, or other recognized valuation methodology demonstrating that the negotiated purchase price represents the highest value reasonably obtainable." Doc. 496 at 8. In support of his objection, Craig explained that construction on Parkside Place was completed several years ago, and the apartment complex income has stabilized at over a 95% occupancy rate, which maximizes its value. Craig testified that the sale process proposed in the Plan restricted or limited the pool of buyers by demanding a 10% earnest money deposit and not permitting bidding contingencies. He also maintains the $4,900,000 sale price proposed in the Second Amended Chapter 11 Plan is too low, claiming previous offers and appraisals demonstrate the property is worth more.

In 2023, RRSB urged Craig to sell the Parkside Place residential apartment complex. He worked with a real estate agent, who listed the property for a price of $6,640,000. VKB Properties offered to buy the apartment complex for $5.1 million in July 2023, but Craig (on behalf of Parkside Place, LLC) refused the offer because he thought it was too low. In September 2023, VKB Properties offered to buy the property

for $5.5 million. Craig refused this offer because he believed the offer price was still too low.

In December 2023, Craig received a Notice of Default on loans Parkside Place, LLC and Generations on 1st, LLC received from RRSB. In the letter, Charles Aarestad and/or his assignors offered to purchase the Parkside Place residential apartment complex for $5,400,771.81. Believing this price was too low, Craig declined this offer as well.

In December 2025, Kelly J. Zander, Craig's former business partner from the early 2000s, offered to purchase the Parkside Place residential apartment complex for $5,230,000. According to Craig, the offer was contingent on RRSB providing financing to Zander for 12 months, after which Zander planned to refinance with Wells Fargo. This offer did not result in a sale.

In June 2026, RRSB served Creditor's First Amended Chapter 11 Plan proposing to sell the Parkside Place residential apartment complex to ALC for $4,900,000. ALC signed a purchase agreement and deposited $490,000 in earnest money pursuant to the requirements outlined in the Plan. According to ALC's owner, Kellen Bludorn, ALC originally offered to purchase the Parkside Place residential apartment complex for $3.6 million but increased the offer to $4.9 million due to competition from other bidders. Bludorn testified that ALC is using its resources to pay 20% of the purchase price and financing the remainder of the purchase price. Bludorn maintained that $4.9 million is ALC's "highest and best" offer because it must ensure the project will cash flow. Further, Bludorn confirmed that ALC's offer is not contingent on inspection, an appraisal, or assumption of financing by RRSB.

During the confirmation hearing, Craig offered the testimony of Alan P. Leirness, an expert in real estate valuation who has been performing appraisal services since 1976. Leirness opined that the Parkside Place residential apartment complex is worth $5,500,000. In his view, offers to purchase the property for $4,900,000 or $5,000,000 are "within reason." Although Craig claimed $4.9 million is not the "top price," he also conceded the offer was reasonable.

Likewise, Jonathan Cuticelli, a Hilco Global Real Estate broker with 16 years of experience, opined that the $4.9 million sale to ALC under the terms proposed in the Plan was reasonable. Similarly, Michael Martin an employee at NAI Sioux Falls, who also has 16 years of experience in commercial real estate and 11 years of experience as a broker, estimated that Debtor's property would likely sell for $4.5 million to $4.6 million.

In his objection and during the confirmation hearing, Craig proposed to purchase Debtor's property for $5,000,000. Craig testified that his offer depends on financing from Sell You Money, which provided a term sheet but refused to provide a loan commitment letter before closing. Craig did not submit this offer to RRSB, provide a signed copy of the purchase agreement, or deposit earnest money through the overbid process designed in the Plan. On cross examination, RRSB highlighted the absence of evidence establishing that Sell You Money is a licensed money lender or mortgage lender in South Dakota.[4]

[4] The Court took judicial notice that a search of the NMLS consumer access system referenced under South Dakota law for "Sell You Money," "SellYouMoney," and "SellYouMoney LLC" conducted on August 7, 2026, at 11:17 a.m., revealed no records that match those three searches.

Despite the lack of a clear commitment from Sell You Money to loan Craig money or a demonstrated licensure to loan money in South Dakota, Craig contends that his offer is superior to ALC's because it would provide $100,000 more to the estate and does not depend on the Court approving broad exculpations and releases in favor of RRSB, dismissal of estate claims against RRSB or the creation of a postconfirmation Creditor Trust. Craig has not filed and noticed a plan of reorganization; his offer was not submitted in the context of a motion to sell; and he did not sign a purchase agreement, offer earnest money or follow any of the overbid procedures outlined by RRSB in its Plan. The Court considers Craig's $5,000,000 purchase proposal as evidence of whether the Plan proposal to sell estate property to ALC for $4.9 million was an exercise in sound business judgment and consistent with the standards prescribed by the Bankruptcy Code—nothing more.[5]

---

[5] In his objection, Craig questions "whether the Bankruptcy Code permits confirmation of a liquidation plan in which virtually every material component of the liquidation—from the purchaser, to the releases, to the litigation, to the trust governance—has been selected by the party receiving the greatest benefit from confirmation." Doc. 496 at 4. The answer is "yes."

The Bankruptcy Code grants debtors and other interested parties a variety of avenues to pursue their interests in estate property. Debtors may design plans of liquidation or reorganization and sell property free and clear of liens, which may adversely affect creditor claims. Creditors and other interested parties may pursue relief from the stay or design their own plans of liquidation or reorganization, which adversely affect other interests. These remedies are available as long as the movant or plan proponent serves notice, interested parties have an opportunity to be heard and the outcome complies with Bankruptcy Code and bankruptcy procedure requirements.

The Court declines to endorse Craig's attempts to work around bankruptcy procedure and notice requirements by testifying about his ideas for a plan of liquidation or his proposal for a sale procedure without filing a Chapter 11 plan of reorganization or liquidation or persuading Debtor to pursue a motion to sell, allowing him to submit a bid. Consequently, the Court sustained RRSB's objection to considering Craig's testimony outside the issues relevant to confirmation of the Plan before the Court.

Despite all the appraiser and broker opinions supporting the reasonableness of the sale of the Parkside Place residential apartment building to ALC for $4.9 million, Craig argues that RRSB failed to demonstrate that the liquidation process it used was reasonably designed to obtain the highest and best value reasonably available under the circumstances. Doc. 496 at 8. He also argues RRSB failed to demonstrate that the marketing process was reasonably designed to expose the property to the market place. Doc. 496 at 9. Craig cites no authority for imposing this burden of proof. As noted above, to survive an objection grounded in lack of good faith, RRSB must show there is a reasonable likelihood the Plan will achieve results consistent with the standards prescribed under the Code, which include maximizing property available to satisfy creditors and the expeditious liquidation and distribution of the bankruptcy estate to its creditors. See In re Peabody Energy Corp., 933 F.3d at 927; In re Peabody Energy Corp. 582 B.R. at 783.

In support of the private sale outlined in Creditor's First Amended Chapter 11 Plan of Liquidation and the proposed Second Amended Chapter 11 Plan, Harless explained that RRSB considered using a broker to sell Parkside Place, but it ultimately decided against it. Harless opined that a private sale process was in the best interest of creditors because it was more cost effective, more efficient, and came with less risk. Based on the industry-standard broker commission of 5% of the sale price, Harless claimed the broker would be entitled to a commission of $245,000 that would otherwise go to creditors.

Rather than enlisting the services of a broker, RRSB employed a less expensive process for selling Debtor's property. Harless testified that she personally contacted

over 25 bidders that were involved in The Ruins[6] sale process to alert them that the Parkside Place residential apartment complex was for sale, responded to multiple unsolicited calls from potential bidders, and provided information about Parkside Place to interested bidders. Harless further explained that RRSB designed an overbid process that allowed bidders to submit a higher bid. RRSB marketed the overbid process by serving notice of the overbid opportunity on all creditors and all bidders from The Ruins sale process and published the overbid notice in The Fargo Forum, The Argus Leader and The Watertown Public Opinion once per week for three consecutive weeks. Harless reported that four parties requested additional materials, three of which were also bidders in The Ruins. Despite this interest, no party submitted an overbid.

Under the totality of the circumstances unique to this case, RRSB met its burden of showing that the sale proposed in the Plan will achieve results consistent with the standards prescribed under the Bankruptcy Code. RRSB solicited buyers from a pool of potential bidders who had recently bid or expressed interest in bidding on a similar residential apartment complex in Watertown, South Dakota. Harless followed leads and answered questions from interested bidders. She advertised the overbid process in local media. RRSB employed a sale process that resulted in the receipt of not less than three offers within the range of reasonableness according to the appraiser and all of the real estate brokers who testified at the hearing: ALC offered $4,900,000; VKB

[6] The Ruins is a residential apartment building in Watertown, South Dakota. The Ruins, LLC, is an entity wholly owned by Craig, which petitioned for bankruptcy relief on the same day as Debtor. The Court converted The Ruin's Chapter 11 bankruptcy case to a case under Chapter 7 in 2026. The Chapter 7 Trustee recently sold The Ruins property for $6,100,000, after the high bidder at the sale failed to consummate its $11,265,000 offer. Bk. Case No. 25-30004 at Doc. 405.

Properties offered $4,850,000; and Craig offered $5 million. The offers and value estimates summarized above demonstrate the negotiated sale price RRSB included in the Plan was an accurate reflection of the market at the time it was offered and the highest value reasonably obtainable under the circumstances. The process maximized value for the estate. RRSB's decision to solicit interested bidders it discovered during The Ruins sale process while avoiding the broker fees in commissions also resulted in efficiencies, cost savings and expeditious liquidation.

While the record includes higher value estimates and unconsummated offers over the last several years, the totality of the circumstances shows that the sale price under the terms proposed in the Plan is reasonable given the delay necessary to market more broadly, increased expenses and no guarantee of a higher offer. RRSB, the first priority secured lien holder, would benefit from a higher price, but it asks the Court to confirm the private sale it proposed as the Plan Proponent. Likewise, Watertown Development Company maintains that the sale included in the proposed Second Amended Chapter 11 Plan is in its best interests. No creditor objected to the proposed sale or any provision in the Creditor's First Amended Plan of Liquidation or the proposed Second Amended Chapter 11 Plan. In the creditors' view, the expeditious liquidation and distribution of the bankruptcy estate to its creditors offsets the speculative possibility of a higher offer. Accordingly, the Court finds that the sale proposed in Creditor's First Amended Plan of Liquidation and the proposed Second Amended Chapter 11 Plan is a sound exercise of business judgment. RRSB proposed this sale in good faith and not by any means forbidden by law.

Finally, Craig argues that the release, injunction and exculpation provisions in the Creditor's First Amended Plan of Liquidation and proposed Second Amended Chapter 11 Plan were not proposed in good faith. For the reasons stated above, the Court also declines to confirm a plan of liquidation that includes an exculpation clause and injunction purporting to bind any "Person" to a liability release and injunction applicable to all Plan Participants, including RRSB. Under the circumstances of this case, the exculpation and injunction provisions in section 8.1 of the proposed Second Amended Chapter 11 Plan do not conform to Code requirements and were not proposed in good faith. The scope of any release, injunction or exculpation clause relieving RRSB of liability must be limited to Debtor's release of claims against RRSB for the conduct defined in Counts I-IV of Adversary Proceeding 25-7009.

Craig's objections under 11 U.S.C. § 1129(a)(3) are overruled, except as they relate to the release, exculpation and injunction provisions. The requirements of 11 U.S.C. § 1129(a)(3) are satisfied in part.

4. <u>11 U.S.C. § 1129(a)(4).</u>

The proposed Second Amended Chapter 11 Plan provides that professional fees and expenses, as well as other allowed administrative expense claims, are subject to Court approval and will be paid in full in cash on the Effective Date from proceeds of the collateral sale. The requirements of 11 U.S.C. § 1129(a)(4) are satisfied.

5. <u>11 U.S.C. § 1129(a)(5).</u>

Pursuant to the terms of the proposed Second Amended Chapter 11 Plan, the Plan Administrator/Creditor Trustee will administer, collect and liquidate Debtor's assets and implement the Plan after confirmation. There appear to be no insiders or affiliates

of Debtor who will serve as a director, officer or voting trustee of the reorganized debtor. The requirements of 11 U.S.C. § 1129(a)(5) are satisfied.

6. 11 U.S.C. § 1129(a)(6).

This section appears to be inapplicable in this case.

7. 11 U.S.C. § 1129(a)(7).

The proposed Second Amended Chapter 11 Plan is a liquidating plan. Chapter 7 fees will reduce distribution to creditors, and the liquidation process will be delayed if the case were converted to a Chapter 7 case. Accordingly, the Court finds that each holder of an allowed claim or interest has voted to accept the Plan or will receive under the Plan on account of such claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive if Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The requirements of 11 U.S.C. § 1129(a)(7) are satisfied.

8. 11 U.S.C. § 1129(a)(8).

The proposed Second Amended Chapter 11 Plan provides that only one class is entitled to vote: Class 3. This class voted to accept the Plan. Classes 1, 2 and 4 are deemed to accept the plan because they are unimpaired.

Classes 5 and 6 are deemed to reject the Plan. The requirements of 11 U.S.C. § 1129(a)(8) are not satisfied.

9. 11 U.S.C. § 1129(a)(9).

The proposed Second Amended Chapter 11 Plan provides that administrative expense claims, priority tax claims and United States Trustee fees will be paid on the effective date of the Plan. The requirements of 11 U.S.C. § 1129(a)(9) are satisfied.

10. 11 U.S.C. § 1129(a)(10).

Class 3 is an impaired class that voted to accept the Creditor's First Amended Chapter 11 Plan of Liquidation. Because at least one impaired class voted to accept the Plan, the requirements of 11 U.S.C. § 1129(a)(10) are satisfied.

11. 11 U.S.C. § 1129(a)(11).

Based on the record, the Court finds that confirmation of the proposed Second Amended Chapter 11 Plan is not likely to be followed by the need for further reorganization. The Plan appears workable, the sale process and alternatives viable and the Creditor Trust funded. There is a reasonable likelihood the Plan can be performed. The Plan is feasible. The requirements of 11 U.S.C. § 1129(a)(11) are satisfied.

12. 11 U.S.C. § 1129(a)(12).

Section 2.3 of the proposed Second Amended Chapter 11 Plan provides that all fees owed under 28 U.S.C. § 1930 have been paid or will be paid. The requirements of 11 U.S.C. § 1129(a)(12) are satisfied.

13. 11 U.S.C. § 1129(a)(13).

Debtor is not obligated to pay, and the proposed Second Amended Chapter 11 Plan offers no "retiree benefits," as that term is defined by 11 U.S.C. § 1114(a). Accordingly, 11 U.S.C. § 1129(a)(13) is inapplicable in this case.

14. 11 U.S.C. § 1129(a)(14).

Section 1129(a)(14) is inapplicable in this case.

15. 11 U.S.C. § 1129(a)(15).

The Plan Proponent, RRSB, is not an individual. Consequently, 11 U.S.C. § 1129(a)(15) is inapplicable in this case.

16. 11 U.S.C. § 1129(a)(16).

This section is not applicable to Debtor, which is a for-profit business.

17. 11 U.S.C. § 1129(b).

No party objected to the classification and payment priorities in the Plan. Although the Court finds that Classes 5 and 6 did not accept the Plan and 11 U.S.C. § 1129(a)(8) is not satisfied as discussed above, this finding does not preclude confirmation because the Court also finds that the proposed Second Amended Chapter 11 Plan satisfies 11 U.S.C. § 1129(b).

18. 11 U.S.C. § 1129(c).

Creditor's First Amended Chapter 11 Plan of Liquidation with revisions suggested in the proposed Second Amended Chapter 11 Plan is the only plan before the Court.

19. 11 U.S.C. § 1129(d).

No party in interest, including, but not limited to, any governmental unit, has requested that this Court deny confirmation of Creditor's First Amended Chapter 11 Plan of Liquidation or the revisions proposed in the Second Amended Chapter 11 Plan on grounds that the principal purpose of the Plan is "the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933," and the principal purpose of the Plan is not tax avoidance. Accordingly, the proposed Second Amended Chapter 11 Plan satisfies the requirements of 11 U.S.C. § 1129(d).

20. 11 U.S.C. 1129(e).

This case is not a small business case. Therefore, 11 U.S.C. § 1129(e) is inapplicable.

**Accordingly, IT IS ORDERED:**

The proposed Second Amended Chapter 11 Plan meets all the requirements of 11 U.S.C. § 1129 and other related provisions of the Bankruptcy Code, except to the extent it:

1. Conditions effectiveness of the Plan on a confirmation order that in form and substance is acceptable to the Plan Proponent in paragraph 6.1.
2. Releases RRSB from liability under Count VI of Adversary Proceeding 25-7009;
3. Includes RRSB as a Plan Participant in the exculpation and injunction provisions in paragraph 8.1.

RRSB is granted 14 days to file a Third Amended Chapter 11 Plan of Liquidation incorporating all changes proposed in the Second Amended Chapter 11 Plan, curing the exceptions noted above and designating Steven Huff, Esq. of Marlow, Woodward, and Huff, PLLC, as the Creditor Trustee. If the revisions comport with Court expectations, it will confirm the Third Amended Chapter 11 Plan of Liquidation.

If RRSB elects to forgo filing a Third Amended Chapter 11 Plan of Liquidation during the time allowed, the Court will enter an order denying confirmation for the reasons provided above.

Dated: August 25, 2026.

Shon Hastings

Shon Hastings, Judge
United States Bankruptcy Court