**THEUNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Generations on 1st, LLC,<br><br>Debtor. | Case No.: 25-30002<br><br>Chapter 11 |

## NOTES ACCOMPANYING MONTHLY OPERATING REPORT

### I. Notes on Final Monthly Operating Report

**A. Period of Operating Report.** The Second Amended Joint Chapter 11 Plan for Generations on 1st, LLC[1] [Doc. 487] (the "Plan") became effective on August 25, 2026 (the "Effective Date"), on the first business day following the closing of the sale contemplated by the Plan[2]. *See* Notice of: (A) Entry of Confirmation Order; (B) Effective Date; and (C) Substantial Consummation [Doc. 545]. As such, the reporting period for this final monthly operating report spans August 1, 2026, through August 24, 2026 (the "Reporting Period"). Transactions that occurred on or after the Effective Date will be reported in the first post-confirmation quarterly report.

**B. Reconciliation of Reported Receipts and Disbursements.**

[1] Capitalized terms used but not otherwise defined herein shall have those meanings ascribed to them in the Plan.

[2] The Court entered its Order Confirming Second Amended Joint Chapter 11 Plan for Generations on 1st, LLC (the "Confirmation Order") on July 24, 2026. Doc. 504.

1. **Receipts.** The bank statement for Debtor's checking account ending -8666 held at Starion Bank reflects total credits of $153,322.00 during the Reporting Period. The following non-operating credits were excluded from the operating receipts of $54,382.00 reported on Part 2, Line b of the monthly operating report:

| Date | Credit Amount | Reason for Exclusion |
|---|---|---|
| 08/03/2026 | $30,055.00 | Credit reversed. *See* $30,005.00 debit on 08/04/2026. |
| 08/04/2026 | $1,135.00 | ACH item returned/stopped. *See* $1,135 debit on 08/06/2026. |
| | $1,640.00 | ACH item returned/stopped. *See* $1,640 debit on 08/06/2026. |
| 08/21/2026 | $4,200.00 | Internal transfer from security deposit account. |
| 08/21/2026 | $61,910.00 | Internal transfer from security deposit account. |

2. **Disbursements.** The bank statement for Debtor's checking account ending -8666 held at Starion Bank reflects total debits of $149,245.82 during the Reporting Period. The following non-operating debits were excluded from the operating disbursements of $115,715.82 reported on Part 2, Line c of the monthly operating report:

| Date | Debit Amount | Reason for Exclusion |
|---|---|---|
| 08/04/2026 | $30,055.00 | Debit of reversed transfer. Later re-credited to account. *See* $30,055 credit on 08/04/2026. |
| 08/06/2026 | $1,135.00 | ACH item returned/stopped. |
| 08/06/2026 | $1,640.00 | ACH item returned/stopped. |
| 08/20/2026 | $700.00 | Internal transfer to security deposit account. |

**C. July Expenses.** Several checks for July expenses, as identified on the Statement of Cash Receipts and Disbursements, cleared the Debtor's checking account during the Reporting Period. As these expenses were previously reported in Part 4 of the July operating report, with related invoices filed therein, such expenses are not duplicated in Part 4 of the current operating report.

**D. Professional Fees and Expenses.**

1. **Debtor's Counsel.** The Court approved two fee applications by The VerStandig Law Firm, LLC d/b/a The Dakota Bankruptcy Firm, Debtor's Counsel, granting total fees in the sum of $45,676.67 and total expenses in the sum of $304.05. Docs. 450 and 544. Proceeds from the Sale in the amount of $36,702.05 were disbursed to pay such approved fees and expenses. The remaining $9,278.67 in approved fees were paid using Debtor's prepetition retainer.

2. **Chief Restructuring Officer.** The Court approved an interim fee application by Michael T. Schmitz, Chief Restructuring Officer for Debtor ("CRO"), for $15,430.00 of fees and $0.00 of expenses due to Point CPA. Doc. 503. Proceeds from the Sale in the amount of $15,430.00 were disbursed to Point CPA to pay the CRO's fees. Note, the CRO retired from Point CPA, and continued to work Michael Schmitz Co. An additional $1,933.75 in sale proceeds were disbursed to Michael Schmitz Co. at the closing.

## II. Schedule of Asset Sales

**A.** Upon entry of the Confirmation Order, the Court approved the Sale contemplated by the Plan of the Debtor's real and personal property to VKB Properties, LLC and/or its assigns. The Sale, as further described below, closed on August 24, 2026.

**B.** **Date and Description of the Sale.** The real and personal property located at 26 1st Avenue SW, Watertown, SD 57201 was sold on August 24, 2026 (the "Sale"), by seller Generations on 1st, LLC to buyer Generations DTW, LLC, as assignee of VKB Properties, LLC ("VKB"), pursuant to the Confirmation Order, and the Real Estate Purchase and Sale Agreement, Assignment and Assumption of Purchase Agreement, and Assignment and Bill of Sale attached hereto.

**C.** **Gross Sales Price.** The gross sales price approved by the Confirmation Order was $8,840,000.00.

**D.** **Payments Made from Sale Proceeds.** At the closing, First Dakota Title (the "Title Company") disbursed payments totaling $8,840,000.00 from sale proceeds to third parties, as detailed in the attached Seller's Settlement Statement dated August 24, 2026. Administrative expenses paid to Debtor's counsel and the CRO in the total sum of $54,065.80 are further described above. A payment made on prepetition debt in amount of $8,431,557.13 is further described below. Excluding various closing costs of $8,044.24 paid to the Title Company, the remaining Sale Proceeds were disbursed as follows:

a. $42,109.56 was disbursed to Codington County Treasurer for the second half of 2025 real estate taxes, which were to be due October 31, 2026;

b. $54,223.27 was disbursed to Codington County Treasurer for the seller's prorated portion of 2026 real estate taxes; and

c. $250,000.00 was earmarked for the Generations on 1st, LLC Creditor Trust, which formed on the Effective Date as contemplated by Section 4.7 of the Plan.

E. **Net Sale Proceeds Received on Behalf of the Estate.** No proceeds have been or will be received by Debtor's estate from the Sale.

## III. Payments Made on Prepetition Debt

A. **Red River State Bank.** Proceeds from the Sale in the sum of $8,431,557.13 were disbursed by the Title Company to pay Red River State Bank ("RRSB"), a prepetition creditor of Debtor with the first-position mortgage on the Real Estate Collateral. This amount reflects a partial payoff of the amount due by Debtor to RRSB.

Statement of Cash Receipts and Disbursements
Generations on 1st, LLC: Aug 1-Aug 24, 2026
Starion Bank Checking Account -8666

| **Cash Receipts** | | **Aug 1-24** |
|---|---|---|
| Cash Sales | $ | - |
| Accounts Receivable Collections | $ | - |
| Loans and Advances | $ | - |
| Sale of Assets | $ | - |
| Lease or Rental Income | $ | 54,382.00 |
| Gifts | $ | - |
| Equity Contributions | $ | - |
| Other | $ | - |
| **Total Cash Receipts** | **$** | **54,382.00** |

| **Disbursements** | | | | | | **Aug 1-24** |
|---|---|---|---|---|---|---|
| | **Mortgage or Lease Payments** | | | | **$** | **-** |
| | **Utilities** | | | | **$** | **-** |
| | **Professional Fees/Expenses** | | | | **$** | **13,768.67** |
| | Date | Amount | Payee | Purpose | | |
| * | 8/3/2026 | $ 7,836.41 | CP Business Management | Property Management Fees - Check 30394 | | |
| * | 8/7/2026 | $ 45.00 | CP Business Management | "Paylease App Fee; Sonaly" - Check 30389 | | |
| | 8/24/2026 | $ 5,887.26 | HME Companies | Property Management Fees - ACH | | |
| | TOTAL: | $ 13,768.67 | | | | |
| | **Maintenance** | | | | **$** | **1,982.62** |
| | Date | Amount | Payee | Purpose | | |
| * | 8/3/2026 | $ 203.90 | Automatic Building Controls | Battery Repair/Replacement - Check 30380 | | |
| * | 8/3/2026 | $ 304.00 | Bradley Warns | Maintenance Work - Check 30388 | | |
| * | 8/7/2026 | $ 103.86 | Hirshfields Watertown | Painting Supplies - Check 30390 | | |
| * | 8/6/2026 | $ 679.61 | Homemaker's Villa | Air Conditioner - Check 30391 | | |
| * | 8/10/2026 | $ 393.75 | Libby Burghardt | Painting and Repairs - Check 30392 | | |
| * | 8/10/2026 | $ 297.50 | Libby Burghardt | Painting and Repairs - Check 30393 | | |
| | TOTAL: | $ 1,982.62 | | | | |
| ** | **Other** | | | | **$** | **99,964.53** |
| | Date | Amount | Payee | Purpose | | |
| ** | 8/21/2026 | $ 61,910.00 | Generations DTW, LLC | Transfer of Security Deposits to Buyer | | |
| ** | 8/21/2026 | $ 19,802.20 | Generations DTW, LLC | Transfer of Prorated August Rents to Buyer | | |
| ** | 8/21/2026 | $ 18,252.33 | Generations DTW, LLC | Transfer of Funds to HME for Debtor's Share of August Expenses | | |
| | TOTAL: | $ 99,964.53 | | | | |
| **Total Disbursements** | | | | | **$** | **115,715.82** |
| **Net Cash Flow (Receipts - Disbursements)** | | | | | **$** | **(61,333.82)** |

* These disbursements were checks issued for July expenses that cleared in August. All were reported in the July 2026 operating report (Doc. 539), with relevant invoices included therein. As such, they were not reported as expenses in Part 4 of the current operating report.

** These disbursements were transferred in a single transaction totaling $99,964.53 on 08/21/2026.

Statement of Operations
Generations on 1st, LLC: Aug 1-Aug 24, 2026

| **Income** | | | | | **Aug 2026** |
|---|---|---|---|---|---|
| **Gross Income** | | | | **$** | **54,382.00** |
| Gross Rent Collected | $ | 57,157.00 | | | |
| Less Returned ACHs: | $ | (2,775.00) | | | |
| TOTAL: | $ | 54,382.00 | | | |
| **Gross Sales** | | | | **$** | **8,840,000.00** |
| Real & personal property located at 26 1st Ave SW, Watertown, SD 57201 | $ | 8,840,000.00 | | | |

| **Expenses** | | | | | **Aug 2026** |
|---|---|---|---|---|---|
| **Cost of Goods Sold** | | | | **$** | **8,840,000.00** |
| Date | | Amount | Description | | |
| 8/24/2026 | $ | 8,840,000.00 | Real & personal property located at 26 1st Ave SW, Watertown, SD 57201 | | |

| **Selling Expenses*** | | | | | **$** | **8,044.24** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 8/24/2026 | $ | 6,500.00 | First Dakota Title | Owner Title Insurance | | |
| 8/24/2026 | $ | 159.30 | First Dakota Title | Search Fee | | |
| 8/24/2026 | $ | 897.50 | First Dakota Title | Settlement Fee | | |
| 8/24/2026 | $ | 127.44 | First Dakota Title | Wire Fees for Closing Disbursements | | |
| 8/24/2026 | $ | 360.00 | First Dakota Title | Recording Fees | | |
| TOTAL: | $ | 8,044.24 | | | | |

* Paid from $8.4MM sale proceeds as part of closing. Excluded from Gross Expenses in the below calculation to avoid duplication. Reported in MOR Part 4, Line d.

| **General and Administrative Expenses** | | | | | **$** | **14,973.79** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 7/31/2026 | $ | 414.18 | George's Sanitation | Trash Removal | | |
| 8/1/2026 | $ | 169.92 | TruGreen | Lawn Maintenance | | |
| 8/1/2026 | $ | 493.83 | Schumacher Elevator | Elevator Maintenance | | |
| 8/3/2026 | $ | 649.00 | Apartments.com | Advertisement | | |
| 8/5/2026 | $ | 651.66 | Williams Carpet One | Carpet Repairs | | |
| 8/9/2026 | $ | 204.54 | Midco | Communications/Technology | | |
| 8/11/2026 | $ | 1,141.63 | Karls | Appliance Repairs | | |
| 8/19/2026 | $ | 122.45 | Jake's Garage Door | Garage Door Maintenance | | |
| 8/20/2026 | $ | 3,662.14 | Riddle's Glass | Glass Repairs | | |
| 8/24/2026 | $ | 5,887.26 | HME Companies | Property Management Fee and Expense Reimbursement | | |
| Various Dates | $ | 345.15 | Norris American Carpet Care | Carpet Cleaning and Repairs | | |
| Various Dates | $ | 1,232.03 | Marotz Cleaning and Maintenance | General Cleaning and Maintenance | | |
| TOTAL: | $ | 14,973.79 | | | | |

| **Other Expenses** | | | | | **$** | **81,712.20** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 8/21/2026 | $ | 61,910.00 | Generations DTW, LLC | Transfer of Security Deposits to Buyer | | |
| 8/21/2026 | $ | 19,802.20 | Generations DTW, LLC | Transfer of Prorated August Rents to Buyer | | |
| TOTAL: | $ | 81,712.20 | | | | |

| **Interest/Debt Service*** | | | | | **$** | **8,431,557.13** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 8/24/2026 | $ | 8,431,557.13 | Red River State Bank | Debt Service | | |
| TOTAL: | $ | 8,431,557.13 | | | | |

* Paid from $8.4MM sale proceeds as part of closing. Excluded from Gross Expenses in the below calculation to avoid duplication. Reported in MOR Part 4, Line h.

| **Taxes*** | | | | | **$** | **96,332.83** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 8/24/2026 | $ | 42,109.56 | Codington County Treasurer | 2025 Property Taxes - 2nd Half | | |
| 8/24/2026 | $ | 54,223.27 | Codington County Treasurer | 2026 Property Taxes - Prorated (235 Days) | | |
| TOTAL: | $ | 96,332.83 | | | | |

* Paid from $8.4MM sale proceeds as part of closing. Excluded from Gross Expenses in the below calculation to avoid duplication. Reported in MOR Part 4, Line i.

| **Reorganization Items*** | | | | | **$** | **304,065.80** |
|---|---|---|---|---|---|---|
| Date | | Amount | Payee | Purpose | | |
| 8/24/2026 | $ | 36,702.05 | Dakota Bankruptcy Firm | Approved Professional Fees (Docs. 450 and 544) | | |
| 8/24/2026 | $ | 15,430.00 | Point CPA | Approved CRO Fees (Doc. 503) | | |
| 8/24/2026 | $ | 1,933.75 | Michael Schmitz Co. | CRO Fees | | |
| 8/24/2026 | $ | 250,000.00 | GO1 Creditor Trust | Proceeds Earkmarked per Article IV of Plan | | |
| TOTAL: | $ | 304,065.80 | | | | |

* Paid from $8.4MM sale proceeds as part of closing. Excluded from Gross Expenses in the below calculation to avoid duplication. Reported in MOR Part 4, Line j.

| | | |
|---|---|---|
| **Gross Income/Sales** | **$** | **8,894,382.00** |
| **Gross Expenses** | **$** | **8,936,685.99** |
| | | |
| **Profit** | **$** | **(42,303.99)** |

Starion Bank
PO Box 848
Mandan, ND 58554

## Statement Ending 08/31/2026

GENERATIONS ON 1ST LLC **Page 1 of 6**
**Customer Number:** [redacted] 666

### Managing Your Accounts

| | | |
|---|---|---|
| Branch | 2754 Brandt Dr S<br>Fargo, ND 58104 |
| Phone | 701.281.5600 |
| Website | Starionbank.com |

GENERATIONS ON 1ST LLC
DEBTOR IN POSSESSION CASE 25-30002
PO BOX 9379
FARGO ND 58106-9379

### Summary of Accounts



Do you have questions about your statement? You can contact us by phone, email customerservice@starionbank.com or chat online with a Starion Bank representative. Our customer service hours are Monday through Friday from 7 a.m. to 6 p.m.

| Account Type | Account Number | Ending Balance |
|---|---|---|
| ND STAR CHECKING | [redacted]8666 | $84,637.94 |

## ND STAR CHECKING - [redacted]8666

**Account Summary**

| Date | Description | Amount |
|---|---|---|
| **08/01/2026** | **Beginning Balance** | **$175,561.76** |
| | 19 Credit(s) This Period | $248,322.00 |
| | 16 Debit(s) This Period | $339,245.82 |
| **08/31/2026** | **Ending Balance** | **$84,637.94** |

**Deposits**

| Date | Description | Amount |
|---|---|---|
| 08/31/2026 | DEPOSIT | $95,000.00 |

**Other Credits**

| Date | Description | Amount |
|---|---|---|
| 08/03/2026 | CPBUSINESSMANAGE Settlement 000027678153518 | $474.00 |
| 08/03/2026 | YARDI CARD DEP 1111Transf XXXXX9693 | $1,055.00 |
| 08/03/2026 | CP BUSINESS MANA Rent XXXXX6888 | $30,055.00 |
| 08/04/2026 | YARDI CARD DEP 1111Transf XXXXX5864 | $1,020.00 |
| 08/04/2026 | CPBUSINESSMANAGE Settlement 000027686645290 | $1,135.00 |
| 08/04/2026 | CP BUSINESS MANA Rent XXXXX6888 | $30,055.00 |
| 08/05/2026 | CPBUSINESSMANAGE Settlement 000027696191542 | $2,190.00 |
| 08/05/2026 | YARDI CARD DEP 1111Transf XXXXX0817 | $4,300.00 |
| 08/06/2026 | YARDI CARD DEP 1111Transf XXXXX5915 | $527.50 |
| 08/06/2026 | CPBUSINESSMANAG_ Settlement 000027780762810 | $895.00 |
| 08/06/2026 | YARDI CARD DEP 1111Transf XXXXX3469 | $1,762.50 |
| 08/06/2026 | YARDI CARD DEP 1111Transf XXXXX4697 | $4,358.00 |
| 08/06/2026 | CPBUSINESSMANAGE Settlement 000027709939630 | $5,125.00 |
| 08/07/2026 | CPBUSINESSMANAGE Settlement 000027751015374 | $2,452.50 |
| 08/10/2026 | YARDI CARD DEP 1111Transf XXXXX2579 | $527.50 |
| 08/10/2026 | CPBUSINESSMANAGE Settlement 000027767028606 | $1,280.00 |
| 08/21/2026 | xfer from 8669 to 8666 - Security Deposit Refunds: 3403 1010 | $4,200.00 |

### INFORMATION FOR CONSUMER ACCOUNTS WITH ELECTRONIC TRANSFERS

In case of errors or questions about your electronic transfers, TELEPHONE OR WRITE US AT THE TELEPHONE NUMBER OR ADDRESS LOCATED ON THE FRONT OF THIS STATEMENT as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

### DISCLOSURE TO READY CREDIT CONSUMER CUSTOMERS

**Billing Rights Summary**

***What To Do If You Think You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at the address shown on your statement

In your letter give us the following information:

(1) *Account information:* Your name and account number
(2) *Dollar amount:* The dollar amount of the suspected error
(3) *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

(1) We cannot try to collect the amount in question, or report you as delinquent on that amount.
(2) The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
(3) While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
(4) We can apply any unpaid amount against your credit limit.

**Computing the Interest Charge on Ready Credit**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances and fees and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

(1) The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
(2) You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
(3) You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at the address on the front of this statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

### HOW TO BALANCE YOUR ACCOUNT

1. Subtract from your check register any service, miscellaneous, or automatic charge(s) posted on this statement.
2. Mark (√) your register after each check listed on front of statement.
3. Check off deposits shown on the statement against those shown in your check register.
4. Complete the form below.
5. The final "balance" in the form below should agree with your check register balance. If it does not, read "HINTS FOR FINDING DIFFERENCES" below.

### HINTS FOR FINDING DIFFERENCES

Recheck all additions and subtractions or corrections.

Verify the carryover balance from page to page in your check register.

Make sure you have subtracted the service or miscellaneous charge(s) from your check register balance.

| | | |
|---|---|---|
| NEW BALANCE<br>TRANSFER AMOUNT FROM OTHER SIDE | | $ |
| ADD<br>DEPOSITS MADE SINCE ENDING DATE ON STATEMENT | | |
| | | |
| | | |
| SUB TOTAL | | $ |
| CHECKS NOT LISTED ON THIS OR PRIOR STATEMENTS | | |
| NUMBER | AMOUNT | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL CHECKS NOT LISTED → | | |
| SUBTRACT TOTAL CHECKS NOT LISTED FROM SUB-TOTAL ABOVE | BALANCE | $ |

THIS SHOULD AGREE WITH YOUR CHECK REGISTER BALANCE

Starion Bank
PO Box 848
Mandan, ND 58554



## ND STAR CHECKING - [redacted]8666 (continued)

### Other Credits (continued)

| Date | Description | Amount |
|---|---|---|
| 08/21/2026 | xfer from 8669 to 8666 - Security Deposits ACHd from Checkin | $61,910.00 |

### Other Debits

| Date | Description | Amount |
|---|---|---|
| 08/04/2026 | CP BUSINESS MANA REVERSAL XXXXX6888 | $30,055.00 |
| 08/06/2026 | ACH ITEM RETURNED TIMOTHY BEAUDRY PAYMENT STOPPED | $1,135.00 |
| 08/06/2026 | ACH ITEM RETURNED KAREN JENSEN PAYMENT STOPPED | $1,640.00 |
| 08/20/2026 | xfer from 8666 to 8669 - 700 SD for 3205 Coyle Per Mindys Em | $700.00 |
| 08/21/2026 | GENERATIONS ON 1 Closing XXXXX6148 | $99,964.53 |
| 08/24/2026 | GENERATIONS ON 1 HME SD XXXXX6148 | $5,887.26 |
| 08/31/2026 | MISCELLANEOUS DEBIT | $95,000.00 |
| 08/31/2026 | MISCELLANEOUS DEBIT | $95,000.00 |

### Checks Cleared

| Check Nbr | Date | Amount | Check Nbr | Date | Amount | Check Nbr | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 30380 | 08/03/2026 | $203.90 | 30390 | 08/07/2026 | $103.86 | 30393 | 08/10/2026 | $297.50 |
| 30388* | 08/03/2026 | $304.00 | 30391 | 08/06/2026 | $679.61 | 30394 | 08/03/2026 | $7,836.41 |
| 30389 | 08/07/2026 | $45.00 | 30392 | 08/10/2026 | $393.75 | | | |

* Indicates skipped check number

### Daily Balances

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 08/03/2026 | $198,801.45 | 08/07/2026 | $218,963.48 | 08/24/2026 | $179,637.94 |
| 08/04/2026 | $200,956.45 | 08/10/2026 | $220,079.73 | 08/31/2026 | $84,637.94 |
| 08/05/2026 | $207,446.45 | 08/20/2026 | $219,379.73 | | |
| 08/06/2026 | $216,659.84 | 08/21/2026 | $185,525.20 | | |

### Overdraft and Returned Item Fees

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

SN
091310757
Branch: 60
Teller: 4004
Date: 08/31/2026
Start Time: 3:24:09 PM
Amount: 95,000.00
Account Number: [redacted]666
DDA Credit
Deposit
Comments:
RT: 091310767 TC: 9

#0000 08/31/2026 $95,000.00

The Image for this Item could not be located

#0000 08/20/2026 $700.00

SN
091310757
Branch: 60
Teller: 7601
Date: 08/31/2026
Start Time: 12:31:05 PM
Amount: 95,000.00
Account Number: [redacted]666
DDA Debit
Withdrawal
Comments:
RT: 091310767 TC: 37

#0000 08/31/2026 $95,000.00

SN
091310757
Branch: 60
Teller: 4004
Date: 08/31/2026
Start Time: 4:06:20 PM
Amount: 95,000.00
Account Number: [redacted]666
DDA Debit
Withdrawal
Comments:
RT: 091310767 TC: 37

#0000 08/31/2026 $95,000.00

GENERATIONS ON 1ST, LLC — 30380
TO THE ORDER OF: AUTOMATIC BUILDING CONTROLS
$203.90

#30380 08/03/2026 $203.90

GENERATIONS ON 1ST, LLC — 30388
07/31/26
**** THREE HUNDRED FOUR AND 00/100 DOLLARS $304.00
TO THE ORDER OF: BRADLEY KERNS, WATERTOWN, SD 57201

#30388 08/03/2026 $304.00

GENERATIONS ON 1ST, LLC — 30389
07/31/26
**** FORTY FIVE AND 00/100 DOLLARS $45.00
TO THE ORDER OF: CP BUSINESS MANAGEMENT, PO BOX 7370, FARGO, ND 58106

#30389 08/07/2026 $45.00

GENERATIONS ON 1ST, LLC — 30390
**** ONE HUNDRED THREE AND 86/100 DOLLARS $103.86
TO THE ORDER OF: HERSHEY'S ... WATERTOWN, WATERTOWN, SD 57201

#30390 08/07/2026 $103.86

GENERATIONS ON 1ST, LLC — 30391
**** SIX HUNDRED SEVENTY NINE AND 61/100 DOLLARS $679.61
TO THE ORDER OF: HOMEMAKER S VILLA, MOORHEAD, MN 56560

#30391 08/06/2026 $679.61

GENERATIONS ON 1ST, LLC — 30392
07/30/26
**** THREE HUNDRED NINETY THREE AND 75/100 DOLLARS $393.75
TO THE ORDER OF: LIBBY BURGHARDT, 311 OAK STREET, GARRETSON, SD 57216

#30392 08/10/2026 $393.75

Starion Bank

PO Box 848
Mandan, ND 58554

## Statement Ending 08/31/2026

*GENERATIONS ON 1ST LLC* 

**Customer Number:** [redacted]8666

GENERATIONS ON 1ST, LLC
DEBTOR IN POSSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30393

07/31/26

$297.50*****

TO THE ORDER OF **** TWO HUNDRED NINETY SEVEN AND 50/100 DOLLARS

LIBBY BURGHARDT
311 OAK STREET
BRANDT, SD 57218

⑈030393⑈ ⑆091310767⑆ [redacted]6666⑈

| #30393 | 08/10/2026 | $297.50 |
|---|---|---|

GENERATIONS ON 1ST, LLC
DEBTOR IN POSSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30394

07/31/26

$7,836.41***

TO THE ORDER OF **** SEVEN THOUSAND EIGHT HUNDRED THIRTY SIX AND 41/100 DOLLARS

CP BUSINESS MANAGEMENT
PO BOX 9379
FARGO, ND 58106
701-237-0169, 58106

⑈030394⑈ ⑆091310767⑆ [redacted]8666⑈

| #30394 | 08/03/2026 | $7,836.41 |
|---|---|---|

Starionbank.com

Starion Bank
PO Box 848
Mandan, ND 58554

## *Statement Ending 08/31/2026*

*GENERATIONS ON 1ST LLC* **Page 1 of 2**
*Customer Number:* [redacted]8669

### *Managing Your Accounts*

| | |
|---|---|
| Branch | 2754 Brandt Dr S<br>Fargo, ND 58104 |
| Phone | 701.281.5600 |
| Website | Starionbank.com |

GENERATIONS ON 1ST LLC
DEBTOR IN POSSESSION CASE 25-30002
PO BOX 9379
FARGO ND 58106-9379

### *Summary of Accounts*



Do you have questions about your statement? You can contact us by phone, email customerservice@starionbank.com or chat online with a Starion Bank representative. Our customer service hours are Monday through Friday from 7 a.m. to 6 p.m.

| Account Type | Account Number | Ending Balance |
|---|---|---|
| REGULAR SAVINGS NON PERS | [redacted]8669 | $360.98 |

## REGULAR SAVINGS NON PERS - [redacted]8669

**Account Summary**

| Date | Description | Amount |
|---|---|---|
| **07/01/2026** | **Beginning Balance** | **$69,385.98** |
| | 3 Credit(s) This Period | $2,100.00 |
| | 3 Debit(s) This Period | $71,125.00 |
| **08/31/2026** | **Ending Balance** | **$360.98** |

**Account Activity**

| Post Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| **07/01/2026** | **Beginning Balance** | | | **$69,385.98** |
| 07/01/2026 | EDEPOSIT | | $700.00 | $70,085.98 |
| 07/08/2026 | EDEPOSIT | | $700.00 | $70,785.98 |
| 07/13/2026 | xfer from 8669 to 8666 - 3411-1600 3211-1520 3408-985 | $5,015.00 | | $65,770.98 |
| 08/20/2026 | xfer from 8666 to 8669 - 700 SD for 3205 Coyle Per Mindys Em | | $700.00 | $66,470.98 |
| 08/21/2026 | xfer from 8669 to 8666 - Security Deposit Refunds: 3403 1010 | $4,200.00 | | $62,270.98 |
| 08/21/2026 | xfer from 8669 to 8666 - Security Deposits ACHd from Checkin | $61,910.00 | | $360.98 |
| **08/31/2026** | **Ending Balance** | | | **$360.98** |

**Overdraft and Returned Item Fees**

| | Total for this period | Total year-to-date |
|---|---|---|
| **Total Overdraft Fees** | $0.00 | $0.00 |
| **Total Returned Item Fees** | $0.00 | $0.00 |

EQUAL HOUSING LENDER Member FDIC

### INFORMATION FOR CONSUMER ACCOUNTS WITH ELECTRONIC TRANSFERS

In case of errors or questions about your electronic transfers, TELEPHONE OR WRITE US AT THE TELEPHONE NUMBER OR ADDRESS LOCATED ON THE FRONT OF THIS STATEMENT as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

### DISCLOSURE TO READY CREDIT CONSUMER CUSTOMERS

**Billing Rights Summary**

***What To Do If You Think You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at the address shown on your statement

In your letter give us the following information:

(1) *Account information:* Your name and account number
(2) *Dollar amount:* The dollar amount of the suspected error
(3) *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

(1) We cannot try to collect the amount in question, or report you as delinquent on that amount.
(2) The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
(3) While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
(4) We can apply any unpaid amount against your credit limit.

**Computing the Interest Charge on Ready Credit**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances and fees and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

### Your Rights If You Are Dissatisfied With Your Credit Card Purchases

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

(1) The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
(2) You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
(3) You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at the address on the front of this statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

### HOW TO BALANCE YOUR ACCOUNT

1. Subtract from your check register any service, miscellaneous, or automatic charge(s) posted on this statement.
2. Mark (√) your register after each check listed on front of statement.
3. Check off deposits shown on the statement against those shown in your check register.
4. Complete the form below.
5. The final "balance" in the form below should agree with your check register balance. If it does not, read "HINTS FOR FINDING DIFFERENCES" below.

### HINTS FOR FINDING DIFFERENCES

Recheck all additions and subtractions or corrections.

Verify the carryover balance from page to page in your check register.

Make sure you have subtracted the service or miscellaneous charge(s) from your check register balance.

| | | | |
|---|---|---|---|
| NEW BALANCE<br>TRANSFER AMOUNT FROM OTHER SIDE | | $ | |
| ADD<br>DEPOSITS MADE SINCE ENDING DATE ON STATEMENT | | | |
| | | | |
| | | | |
| SUB TOTAL | | $ | |
| CHECKS NOT LISTED ON THIS OR PRIOR STATEMENTS | | | |
| NUMBER | AMOUNT | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL CHECKS NOT LISTED → | | | |
| SUBTRACT TOTAL CHECKS NOT LISTED FROM SUB-TOTAL ABOVE | BALANCE | $ | |

THIS SHOULD AGREE WITH YOUR CHECK REGISTER BALANCE

**AMENDED PLAN EXHIBIT A: VKB Purchase Agreement**

**GENERATIONS ON 1ST REAL ESTATE PURCHASE AND SALE AGREEMENT**

| | |
|---|---|
| **Effective Date:** | **JULY 1, 2026** |
| **Address:** | 26 1st Avenue SW, Watertown, South Dakota |
| **PIN:** | 9580 |

**PURCHASER INFORMATION:**

| | |
|---|---|
| NAME(S) | VKB Properties, LLC (or its assigns) |
| ADDRESS | 501 Olson Dr., Ste. 210, Papillon, NE 68046 |
| PHONE: | 402-935-1916 |
| E-mail: | vince@bellinoenterprises.com |

PURCHASER'S ATTORNEY: Brett Beller, Esq.
Fullenkamp Jobeun Johnson & Beller LLP
11440 W CENTER RD, SUITE C, OMAHA, NE 68144
(402) 691-5264
bbeller@fjjblaw.com

**SELLER INFORMATION:**

| | |
|---|---|
| NAME: | Michael T. Schmitz, solely in his capacity as Chief Restructuring Officer for the bankruptcy estate of Generations on 1st, LLC, Bk. Case No 25-30002 |
| ADDRESS: | ~~Point CPA~~ MICHAEL SCHMITZ CO<br>~~4585 Coleman Street~~, Suite 101 1018 Voyager Drive<br>Bismarck, ND ~~58503~~ 58504 |
| EMAIL: | ~~mschmitz@pointcpa.com~~ mike4bismarck@gmail.com |

1. **PURCHASE & DESCRIPTION OF REAL ESTATE**: Seller agrees to sell to Purchaser (also referred to herein as "Purchaser") and Purchaser agrees to purchase from Seller the real estate and improvements, if any, situated in State of South Dakota, County of Codington, commonly known as Generations on 1st, located 26 1st Avenue SW, Watertown, South Dakota, together with any and all buildings, improvements, fixtures owned by the Seller located in, on, attached to the Property; and all privileges and appurtenances pertaining thereto including any right, title and interest, if any, of Seller in and to adjacent streets, or rights-of-way, Seller's interest in any assignable warranties or guaranties relating to the Property and fixtures located on, attached to, or used in connection with the Property; all of the above hereinafter collectively called "Property", legally described in Exhibit A attached hereto and made a part hereof.

2. **PURCHASE PRICE AND TERMS:**

(A) The **Purchase Price** in the amount of $ 8,840,000.00 (the "Purchase Price"), shall be payable in U.S. dollars by Purchaser as follows:

(1) **"Initial Earnest Money"** in the amount of $ 200,000.00 shall be paid in the form of a certified or cashier's check made payable to the order of First Dakota Title, as Escrow Agent (the "Escrow Agent"). The Initial Earnest Money is due upon delivery of this Agreement signed by Purchaser, receipt of which is hereby acknowledged and shall be nonrefundable.

(2) **Additional Earnest Money** in the amount of $ 684,000.00 shall be paid no later than **June 19, 2026** in the form of a certified or cashier's check made payable to the order of First Dakota Title, as Escrow Agent.

(3) The **Balance of the Purchase Price,** in the amount of $7,956,000, plus or minus prorations and closing adjustments, if any, is due at the Closing (defined below) and must be paid by immediately available funds by wire transfer or Purchaser's official cashier's check from a bank, made payable to the Escrow Agent or such other payee(s) as Seller may hereafter designate in writing.

(B) Delivery of a trustee's deed and acceptance by Purchaser at the Closing shall be deemed to be full performance and discharge of all obligations (either express or implied) on the part of Seller to be performed pursuant to this Agreement. No representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

3. **ALL-CASH TRANSACTION:** This is an all-cash sale and purchase; and is NOT contingent upon obtaining financing. Although, the Purchaser may apply to a lending institution of Purchaser's choice for a loan but, Purchaser has been advised that neither his receipt of a commitment from such a lending institution, nor his acceptance of said commitment, does not in any way alter Purchaser's obligations under this Agreement.

4. **CLOSING:** Closing shall occur at 10:00 a.m. on or before **August 14, 2026,** at the offices of the Escrow Agent, or at such other location that Seller may designate ("Closing").

5. **CLOSING DOCUMENTS:**

A. **At the Closing, Seller shall deliver to Purchaser, at Seller's sole cost and expense, the following:**

(1) A duly executed and acknowledged Trustee's Deed in recordable form conveying title in fee simple to all of the Property, free and clear of any and all liens, encumbrances, and subject to the Permitted Title Exceptions attached hereto as Exhibit B;

(2) Internal Revenue Code reporting requirements or disclosure including FIRPTA;

(3) Seller shall by written instrument assign all of the Leases if any to Purchaser, and Purchaser shall accept such assignment and agrees to discharge and assume all of the obligations and duties of landlord under the Leases (including, without limitation, all obligations pertaining to security deposits) which accrue or arise under the Leases for the period from and after the closing.

(4) Letters to the tenants advising the tenants of the sale and directing all future rents to be sent to Purchasers or as Purchaser may direct.

(5) Bill of Sale, without warranties, for any personal property being transferred free of liens or encumbrances; and

(6) Seller shall transfer all refundable security deposits and other tenants' deposits under Leases that are in Seller's possession except to the extent applied prior to the Closing Date.

(7) All other documents that are reasonably customary to close this transaction; in accordance with the terms and conditions of this Agreement.

B. **At the Closing, Purchaser shall:**

(1) Pay the cash portion of the Purchase Price including prorations and adjustments, if any;

(2) If Purchaser is a corporation or a limited liability company, deliver to Seller:

(a) Certified resolutions of the board of directors of Purchaser (or managing member) authorizing all the transactions contemplated by this Agreement;

(b) An incumbency certificate with respect to those officers (or managing member) of Purchaser executing any documents or instruments in connection with the transactions contemplated herein; and

(c) Certificate of Good Standing for the entity acquiring title from the Secretary of State or other appropriate governmental office of the state in which the entity was formed.

(3) execute such other and further documents necessary to close this transaction; in accordance with the terms and conditions of this Agreement.

6. **SALES EXPENSES TO BE PAID IN CASH AT OR PRIOR TO CLOSING:**

A. **SELLER'S EXPENSES:** All costs of releasing and recording any release of Mortgage required by the terms of this Agreement; All costs of the Owner's Title Policy (if any). State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

B. **PURCHASER'S EXPENSES:** All recording costs of the Mortgage, the Deed, and the Collateral Documents, ALTA Mortgage Title Policy and escrow fees charged by the (if Purchaser is using a lender); and expenses stipulated to be paid by Purchaser under other provisions of this Agreement. State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

7. **PRORATIONS AND ADJUSTMENTS:** The following shall be prorated and adjusted between Seller and Purchaser as of the time of closing, except as otherwise expressly provided herein:

A. Water, electricity, sewer, gas, telephone and other utility charges based, to extent practicable, on final meter readings and/or final invoices.

B. Amounts paid or payable under any assigned maintenance or other service contracts shall be prorated as of the time of closing.

C. Accrued general real estate taxes shall be prorated as of the time of closing. If such bills are not available, then such taxes shall be prorated on the basis of 100% of the most recent ascertainable tax bills.

D. Special Assessments - If at the time of Closing, the Premises are affected by an assessment which is or may become payable in installments, then only those installments due prior to the date of the Closing shall be paid by the Seller, and all installments due subsequent to Closing shall be paid by Purchaser.

E. Such other items that are customarily prorated in transactions of this nature shall be ratably prorated as of the Closing Date. Except as expressly provided herein, all prorations shall be final. The covenants and agreements set forth in this Paragraph shall survive the closing.

F. As of Closing, Purchaser shall be responsible for the transfer of accounts and establishment of all utility services to the Property to the name of Purchaser, including the making of any new utility deposits with the utility providers. Seller shall be entitled to receive a refund of utility service deposits, if any, covering the period prior to the Closing Date.

G. Real estate tax assessment reductions, tax refunds, and credits received after the Closing Date after deducting the expenses of collection thereof including attorney's fees which obligation shall survive the Closing that are:

1. attributable to the tax year during which the Closing Date occurs and thereafter shall be prorated between Seller and Purchaser;

2. attributable to all tax years before the year in which the Closing occurs belong to the Seller.

8. <u>DEFAULTS</u>: A failure to appear at the time and place stated in the notice of the Closing Date, a failure to pay any amounts due hereunder (including Initial and/or Additional Earnest Money), a failure to enter into, execute and deliver customary closing documents, or Purchaser's failure to perform any obligation of Purchaser required under the Agreement and any supplemental written agreements made a part of the Agreement shall be a default. In the event of Purchaser's default, the Total Earnest Money shall be retained or collected by Seller as liquidated damages, and not as a penalty as Seller's sole and exclusive remedy in law and equity. In the event Seller shall fail or be unable to deliver title to the Property as herein provided on account of title defects which Purchaser is unwilling to waive, this Agreement shall be terminated and the Total Earnest Money shall be returned forthwith to Purchaser. The return of Earnest Money to Purchaser shall be Purchaser's sole and exclusive remedy in the event of any form of Seller's default under this Agreement. **UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES.**

9. <u>WARRANTY DISCLAIMERS</u>:

(A) **THE PROPERTY IS BEING SOLD "AS IS". SELLER HEREBY EXCLUDES AND DISCLAIMS ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BY WAY OF ILLUSTRATION AND NOT LIMITATION, WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, HABITABILITY AND MERCHANTABILITY. SELLER NEITHER ASSUMES NOR AUTHORIZES ANY PERSON TO ASSUME FOR SELLER ANY LIABILITY IN CONNECTION WITH THE SALE OR USE OF THE PROPERTY, AND THERE ARE NO AGREEMENTS OR WARRANTIES, EITHER ORAL OR WRITTEN, COLLATERAL TO OR AFFECTING THIS AGREEMENT, THE PROPERTY. PURCHASER ACKNOWLEDGES THAT NO WARRANTY CLAIMS FOR ANY MATTERS RELATING TO THE CONDITION OF THE PROPERTY MAY BE MADE AGAINST SELLER. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER'S ACCEPTANCE OF SELLER'S DISCLAIMER OF WARRANTIES, INCLUDING THE DISCLAIMER OF ANY APPLICABLE IMPLIED WARRANTY OF HABITABILITY, IS AN ESSENTIAL PART OF THE AGREEMENT REACHED BETWEEN PURCHASER AND SELLER.**

(B) Purchaser acknowledges and understands that if a dispute arises with Seller and the dispute results in a lawsuit, Purchaser will not be able to rely on the Implied Warranty of

Habitability described above, as a basis for suing Seller or as the basis of a defense if Seller sues Purchaser.

(C) Seller shall not be responsible for any incidental or consequential damages.

10. **POSSESSION:** Purchaser shall not take possession of the Premises or commence any work prior to delivery of the Deed and full compliance with the terms of this Agreement. The Property shall be delivered at Closing. Purchaser shall be responsible for installing new locks on the Property immediately after the Closing, and Purchaser shall hold Seller and Seller's representatives and agents harmless from any and all damages, claims, liens, liabilities, costs, injuries and expenses of any kind that may be made against Seller as a result of Purchaser's failure to install new locks on the property.

11. **BROKER'S COMMISSION**: Seller has not retained a broker and it shall not be responsible for payment of any broker's commission upon closing of the sale contemplated in this Agreement. If Purchaser has retained a broker, Purchaser shall pay any commission due to such broker.

12. **CONSULT YOUR ATTORNEY:** THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY. NO REPRESENTATION OR RECOMMENDATION IS MADE BY SELLER OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS DOCUMENT OR THE TRANSACTION RELATING THERETO. THESE ARE QUESTIONS FOR YOUR ATTORNEY. CONSULT YOUR ATTORNEY BEFORE SIGNING. THE SELLER CANNOT GIVE YOU ANY LEGAL ADVICE.

13. **DISCLAIMER:**

(A) EXCEPT AS OTHERWISE SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE OF, AS TO, OR CONCERNING THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON.

(B) EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HAS NOT MADE AND IS NOT MAKING ANY REPRESENTATION OR WARRANTY REGARDING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ENVIRONMENTAL CONDITIONS, ZONING OR THE AVAILABILITY OF UTILITIES OR PERMITS.

(C) PURCHASER ACKNOWLEDGES THAT HAVING BEEN GIVEN A SUFFICIENT OPPORTUNITY TO INSPECT THE PROPERTY, AND TO REVIEW OTHER MATERIAL GIVEN TO PURCHASER, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY IN ARRIVING AT ITS DECISION TO PURCHASE THE PROPERTY AND HAS NOT RELIED UPON ANY PLANS SELLING BROCHURES, ADVERTISEMENTS,

REPRESENTATIONS WARRANTES, STATEMENTS OR ESTIMATES OF ANY NATURE WRITTEN OR ORAL BY SELLER OR SELLER'S AGENT IN DECIDING TO PURCHASE THE PROPERTY AT THE STATED PRICE.

(D) PURCHASER IS PURCHASING THE PROPERTY IN ITS PRESENT CONDITION, "AS IS, WHERE IS", AND SELLER HAS NO OBLIGATION TO CONSTRUCT ANY IMPROVEMENTS THEREON, OR TO PERFORM ANY OTHER ACT REGARDING THE PROPERTY, EXCEPT AS EXPRESSLY PROVIDED HEREIN.

(E) ANY FACTUAL INFORMATION SUCH AS PROPERTY DIMENSIONS, SQUARE FOOTAGE, OR SKETCHES SHOWN TO PURCHASER OR SET FORTH HEREIN ARE OR MAY BE APPROXIMATE AND PURCHASER REPRESENTS TO SELLER THAT THEY HAVE INSPECTED AND VERIFIED THE FACTS AND INFORMATION PRIOR TO THE EXECUTION OF THIS AGREEMENT. NO LIABILITY FOR ANY INACCURACIES, ERRORS OR OMISSIONS IS ASSUMED BY THE SELLER OR ITS AGENTS.

(F) THE PARTIES TO THIS TRANSACTION HAVE NO EXPERTISE WITH RESPECT TO ENVIRONMENTAL MATTERS. PROPER INSPECTIONS OF THE PROPERTY BY QUALIFIED EXPERTS ARE ENCOURAGED TO DETERMINE WHETHER OR NOT THERE ARE ANY CURRENT OR POTENTIAL ENVIRONMENTAL CONCERNS RELATING TO THE PROPERTY. THE PARTIES TO THIS TRANSACTION HAVE NOT MADE, NOR WILL THEY MAKE, ANY REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, REGARDING THE EXISTENCE OR NON-EXISTENCE OF ANY SUCH ENVIRONMENTAL CONCERNS IN OR ON THE PROPERTY.

(G) PURCHASER HAS BEEN MADE AWARE OF ANY DEED RESTRICTIONS THAT ARE ATTACHED TO THIS PROPERTY AND IS BUYING SUBJECT TO THOSE DEED RESTRICTIONS.

14. <u>RISK OF LOSS:</u> If any material portion of the property is damaged or destroyed prior to the Closing Date, as determined by Seller in its sole discretion, Seller shall give Purchaser written notice thereof. Purchaser shall have the option, within ten (10) business days after receipt of such written notice, to either (a) terminate this Agreement, or (b) consummate this Agreement in accordance with its terms. In any event, Seller shall not be deemed in default under this Agreement as a result of such damage or destruction. Purchaser shall be deemed to have waived his right to terminate this Agreement if Purchaser does not notify Seller in writing of it election to terminate this Agreement within ten (10) business days after receipt of Seller's written notice of material damage. If within five (5) days after Seller's receipt of such written notice of termination by Purchaser, Seller delivers to Purchaser Seller's written agreement to repair at its sole cost and expense all such damage, then any such termination notice given by Purchaser shall be rendered ineffective. In such event, the Closing Date shall be deemed automatically extended until such time as the Seller completes the repairs, upon completion Purchaser will be given notice that such repair is complete and will have five (5) business days to close. Purchaser shall not be

entitled to any insurance proceeds or obtain any rights with respect to any claims Seller may have with respect to the Property.

15. **DISCLOSURES:** Purchaser acknowledges and agrees that Purchaser has received and had adequate opportunity to read and understand all disclosures, if any, made available by Seller regarding the property. Purchaser shall execute at or prior to Closing, all federal, state and local disclosures concerning the property that Purchaser is required to execute under applicable laws and regulations. Purchaser acknowledges that any information provided by or on behalf of Seller with respect to the Property and Disclosures were obtained from a variety of sources and Seller has not verified such information and makes no representation as to the accuracy or completeness of said information.

16. **OCCUPIED PROPERTY:** Seller makes no representations or warranties as to whether the property is occupied as of the Closing Date. Purchaser expressly waives any right to terminate this Agreement based on the status of the occupancy of the Property. Purchaser acknowledges that Purchaser may be subject to any federal, state, or local laws in regards to protecting the rights of tenants who may be occupying the Property.

17. **MISCELLANEOUS:**

(A) NOTICES: All notices and demands required hereunder shall be made in writing and the mailing of notice by first class registered, certified, overnight mail, courier delivery or facsimile transmission with a copy by regular first class mail to Seller or Purchaser or to their attorneys at the addresses given in this Agreement shall be sufficient.

(B) TIME IS OF THE ESSENCE OF THIS AGREEMENT

(C) NO RECORDING: Neither this Agreement nor any type of memorandum thereof shall be recorded with the office of the Recorder of Deeds or with any other governmental agency, and any purported recordation or filing hereof by Purchaser shall constitute a default on the part of Purchaser.

(C) ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the parties as to the subject matter hereof and supersedes all prior understandings and agreements. There are no representations, agreements arrangements or understandings oral or written between the parties relating to the subject matter contained in this Agreement which is not fully expressed or referred to herein.

(D) SUCCESSORS AND ASSIGNS: The provisions of this Agreement shall bind and inure to the benefit of Purchaser and Purchaser's heirs, legal representatives, successors and permitted assigns and shall bind and inure to the benefit of the Seller and its successors and assigns.

(E) PURCHASER ASSIGNMENT TO TAKE TITLE: Purchaser may request the conveyance be made to another, persons or entity ("Nominee"), upon notification in writing delivered to Seller at least ten days prior to the date of Closing. Purchaser's designation of a Nominee to take title to the Property shall not relieve the Purchaser of any obligation hereunder. Any additional transfer taxes due as a result of the designation of a Nominee shall be Purchaser's obligation to pay.

(F) JOINT PURCHASERS: The term "Purchaser" shall be read as "Purchasers" if more than one person is the Purchaser of the Property, in which case their obligations shall be joint and several.

(G) FURTHER ASSURANCES: Either party shall execute, acknowledge and deliver to the other party such instruments and take such other actions, in addition to the instruments and actions specifically provided for herein at any time and from time to time after execution of this Agreement whether before or after the Closing, as such other party may reasonably request in order to effectuate the provisions of this Agreement or the transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to this transaction, provided that neither party shall be required to incur any material expense in connection therewith.

(H) SEVERABILITY: If any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby. All other clauses or provisions of this Agreement, not found invalid or unenforceable shall be and remain valid and enforceable.

(I) STRICT COMPLIANCE: Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

(J) GOVERNING LAW: The provisions of this Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of North Dakota. The parties consent to jurisdiction in Federal court in Fargo, North Dakota.

(K) WAIVER OF JURY TRIAL: **EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY.** With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

(L) ATTORNEYS FEES: A party to this Agreement who is the prevailing party in any legal proceeding against any other party brought under or with respect to this Agreement or the transaction contemplated hereby shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

(M) GENDER: A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

(N) CERTAIN REFERENCES: The term "herein", "hereof" or "hereunder" or similar terms used in this Agreement refer to this entire Agreement and not to the particular provision in which the term is used. Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

(O) SINGULAR ALSO MEANS PLURAL: Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

(P) CAPTIONS: The captions in this Agreement are for convenience and reference only and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

(Q) NO ORAL CHANGES: This Agreement cannot be changed or any provision waived orally. ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

(R) DATE OF PERFORMANCE: If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state in which the Property is located, the date for such performance shall be the next succeeding business day.

(S) NO PRESUMPTION REGARDING DRAFTING: It is acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the parties hereto and approved as to form by their respective counsel. It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

(T) COUNTERPARTS: This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of the Property under the laws of this state. It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

(U) COUNTERPART FACSIMILE EXECUTION: For purposes of, executing this Agreement, a document signed and transmitted by facsimile machine shall be treated as an original document. The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. At the request of either party, any facsimile document shall be re-executed by both parties in original form. No party hereto may raise the use of a facsimile machine or the fact that any signature was transmitted through the use of a facsimile machine as a defense to the enforcement of this Agreement or any amendment executed in compliance with this Paragraph. This Paragraph does not supersede the requirements of the "Notices" Paragraph.

(V) FIRPTA: Seller represents and warrants to Purchaser that Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

18. <u>IRREVOCABLE OFFER</u>: Purchaser further acknowledges that this Agreement is executed and delivered by Purchaser pursuant to a Chapter 11 plan of liquidation conducted on behalf of Seller. In consideration of the following: (a) preserving the integrity of the liquidation process and assuring that all offers are made in conformity therewith and in reliance thereon; (b) the monies spent by Seller to arrange for the Chapter 11 plan; (c) the opportunity of the Purchaser to bid for the Property; (d) the promise by the Seller to sell the Property to Purchaser if this Agreement is accepted by Seller as hereinafter provided and (e) for other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by Purchaser, including the mutual promises made by each party, this Agreement constitutes an irrevocable offer to purchase by Purchaser in accordance with this Agreement which cannot be revoked by Purchaser. Such offer to purchase shall not be deemed accepted by Seller until executed by Seller or Seller's duly authorized agent.

19. <u>APPROVAL BY BANKRUPTCY COURT</u>: Purchaser acknowledges that the sale contemplated by this Agreement shall be made by Seller pursuant to a plan of liquidation under Chapter 11 of the Bankruptcy Code (the "Plan"). This Agreement is expressly subject to and contingent upon the entry of an order approving the sale and confirming the Plan (the "Confirmation Order"), by the United States Bankruptcy Court for the District of North Dakota in Case Number 25-30002. Seller will seek approval of the Plan at a hearing on July 7, 2026. Purchaser shall cooperate in good faith with the Seller to secure the Confirmation Order, including, but not limited to, attending the hearing to consider the entry of the Confirmation Order, and, if necessary, testifying before the Bankruptcy Court and providing documentary evidence as to Purchaser's financial wherewithal to perform the obligations of Purchaser under this Agreement. In the event that the Bankruptcy Court enters an order denying the entry of the Confirmation Order, Seller shall return the Total Earnest Money to Purchaser within five (5) business days of the entry of such order and this Agreement shall be deemed to be null and void.

20. <u>EXHIBITS</u>: The attached Exhibits shall be and hereby are made a part of this Agreement. Any Exhibits attached hereto containing blank spaces, which exhibit is to be executed and

delivered at the Closing shall be completed in accordance with the terms and provisions contained herein, prior to or at the time of execution and delivery thereof. The exhibits marked below are attached to this Agreement and incorporated herein:

☒ Legal Description – Exhibit A
☒ Permitted Title Exceptions – Exhibit B

IN WITNESS WHEREOF, this Agreement has been executed as of the Effective Date.

SELLER:

By: [signature]
Name: MICHAEL T. SCHMITZ

Effective Date: 7/27/26

PURCHASER:

[signature]
Signature

Vincent Bellino
Print Name

Signature

Print Name

Date of Execution:
7/27/2026

# EXHIBIT "A"

## Legal Description

Generations on 1st Addition, Codington County, South Dakota (Parcel ID 9580), also known as 26 1st Avenue SW, Watertown, SD 57201

# EXHIBIT "B"

## Permitted Title Exceptions

A. General Exceptions

(1) Rights of current tenants under existing residential leases

(2) [omitted]

B. Specific Exceptions

(1) Covenants, Conditions, Easements and Restrictions of record.

(2) General Real Estate Taxes not due and payable and subsequent years.

(3) Special Assessments and installments due after the date of Closing.

(4) Drainage Ditches and Laterals

**ASSIGNMENT AND ASSUMPTION OF PURCHASE AGREEMENT**

This Assignment and Assumption of Lot Purchase Agreement is made and entered into as of August 24th, 2026, by and between VKB Properties, LLC, a Nebraska limited liability company ("Assignor") and Generations DTW, LLC, a Nebraska limited liability company ("Assignee").

WHEREAS, Assignor, as Buyer, entered into that certain Real Estate Purchase Agreement dated effective as of July 1, 2026, with Michael T. Schmitz, solely in his capacity as Chief Restructuring Office for the bankruptcy estate of Generations on 1st, LLC, Bk. Case No 25-30002, as Seller (the "Purchase Agreement"), whereunder Buyer agreed to purchase and Seller agreed to sell certain real property generally located 26 1st Avenue SW, Watertown, South Dakota 57201 (the "Property"), as further described in the Purchase Agreement.

WHEREAS, Assignor agrees to assign and Assignee agrees to assume Assignor's right, title, interest and duties under the Purchase Agreement, including, but not limited to, all of Assignor's rights, title and interest in any security deposits deposited by Assignor thereunder.

NOW, THEREFORE, the parties hereto agree as follows:

1. Effective on the date hereof, Assignor hereby assigns, transfers and conveys to Assignee all of its right, title and interest in the Purchase Agreement, including any rights, title and interest in any security deposits deposited by Assignor thereunder.

2. Assignee hereby accepts such assignment and agrees to be bound by and to perform all of the Assignor's obligations under the Purchase Agreement, and shall indemnify Assignor for any costs, fees, or liabilities related to or arising under the Purchase Agreement.

3. Assignee shall be responsible for all costs and fees incurred in connection the Purchase Agreement.

4. This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, and which together shall be deemed one and the same Purchase Agreement.

[Remainder of Page Left Intentionally Blank; Execution Page Follows]

IN WITNESS WHEREOF, the parties have executed this agreement as their free and voluntary act and deed, on the date indicated by each signature.

**ASSIGNOR:**

VKB Properties, LLC, a Nebraska limited liability company

By: ______________________
Name: Vincent Bellino
Title: Owner

**ASSIGNEE:**

Generations DTW, LLC, a Nebraska limited liability company

By: ______________________
Name: Vincent Bellino
Title: Managing Member

**ASSIGNMENT AND BILL OF SALE**

THIS ASSIGNMENT AND BILL OF SALE ("Bill of Sale") is effective as of August 24, 2026, and is delivered to Generations DTW, LLC, a Nebraska limited liability company ("Buyer"), by Michael T. Schmitz, solely in his capacity as Chief Restructuring Office for the bankruptcy estate of Generations on 1st, LLC, Bk. Case No 25-30002 ("Seller"), in relation to that certain Real Estate Purchase and Sale Agreement dated as of July 1, 2026 ("Agreement"), by and between Seller and Buyer pursuant to which Seller is transferring to Buyer certain real property described in the Agreement, and located 26 1st Avenue SW, Watertown, South Dakota (the "Real Property"). The covenants, agreements, representations, warranties, indemnities and limitations provided in the Agreement with respect to the property conveyed hereunder, are hereby incorporated herein by this reference as if herein set out in full and shall inure to the benefit of and shall be binding upon Buyer and Seller and their respective successors and assigns. All capitalized terms used in this Assignment without separate definition shall have the same meanings assigned to them in the Agreement.

FOR VALUE RECEIVED, receipt of which is hereby acknowledged, Seller agrees as follows:

1. Assignment and Transfer. Except as otherwise provided in the Agreement, Seller hereby conveys, assigns, and transfers to Buyer all of the right, title and interest in and to all of the following whether now existing or hereafter arising, acquired or created: all of Seller's interest in the items of tangible and intangible personal property (the "Property") located on, or forming a portion of the improvements located on the Real Property, including, without limitation, all of Seller's interest, if any, in the equipment, mechanical systems, appliances, tools, machinery, supplies, building materials, and all other personal property of Seller attached to, appurtenant to, located in, or used exclusively in connection with the operation of the real property, excepting, however, those items of personal property located on the real property that is owned by Seller's property management company, and as listed on the written notice of such personal property provided to Grantee in accordance with Section 1(b) of the Purchase Agreement, if any. The Seller hereby warrants and represents that Sellers owns good and marketable title to all items constituting the Property and that all Property is transferred free and clear of all liens, encumbrances, charges, and claims whatsoever. The Seller further agrees that Seller will execute and deliver any and all conveyances, deeds, assignments, bills of sale, certificates, instruments of transfer, and other documents which may be reasonably necessary or appropriate to fully effectuate the terms hereof, and to vest in the Grantee, its successors and assigns, title in and to each and all of the Property.

This Bill of Sale is given on the condition and agreement that ALL ASSETS ARE BEING SOLD "AS IS" AND "WHERE IS" AND SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES REGARDING THE QUALITY AND/OR QUANTITY OF THE ASSETS.

2. Construction. If any provision of this Bill of Sale or the application thereof to any person or circumstances shall to any extent be invalid, the remainder of this Bill of Sale shall not be affected thereby and each provision of this Bill of Sale shall be valid and enforced to the fullest extent permitted by law.

3. Successors and Assigns. This Bill of Sale shall be binding upon and inure to the benefit of the successors, assigns, personal representatives, heirs and legatees of the respective parties hereto.

4. Governing Law. This Bill of Sale shall be governed by and construed in accordance with the laws of the State in which the Property is located.

5. Counterparts. This Bill of Sale may be executed in one or more counterparts which, when executed, shall constitute one Assignment.

6. Authority to Execute. Seller represents and warrants to Buyer that it has the right and authority to enter into and execute this Bill of Sale.

(*Signature page is next.*)

IN WITNESS WHEREOF, Seller has executed this Bill of Sale effective as of the date first written above.

Michael T. Schmitz, solely in his capacity as Chief Restructuring Office for the bankruptcy estate of Generations on 1st, LLC, Bk. Case No 25-30002

By: ______________________

Print Name: CRO

Title: 8/20/2026

First Dakota Title
THE TITLE RESOURCE NETWORK

**First Dakota Title**
600 S Main Ave, Suite 101
Sioux Falls, SD 57104
Phone: (605)338-6505 Fax:
(605)338-0443

## Seller's Settlement Statement

| | |
|---|---|
| **Settlement Date:** | August 24, 2026 |
| **Disbursement Date:** | August 24, 2026 |
| **Order Number:** | SD-2688831-CO |
| **Buyer:** | Generations DTW, LLC<br>501 Olson Drive, Suite 210<br>Papillion, NE 68046 |
| **Seller:** | Generations on 1st, LLC<br>1018 Voyager Drive<br>Bismarck, ND 58504 |
| **Property:** | 26 1st Avenue SW<br>Watertown, SD 57201 |

| | Seller | |
|---|---|---|
| | **Debit** | **Credit** |
| **Total Consideration** | | |
| Purchase Price | | 8,840,000.00 |
| **Prorations/Adjustments** | | |
| 2026 RE Tax Proration<br>235 days @ 230.737315 per day at $84,219.12<br>01/01/26-08/24/26 | 54,223.27 | |
| **Payoffs** | | |
| 2nd Half 2025 RE Taxes (#9580) to Codington County Treasurer | 42,109.56 | |
| Net Seller Proceeds to Red River State Bank | 8,431,557.13 | |
| **Title/Escrow Charges** | | |
| Owner Title Insurance (Split 50/50) | 6,500.00 | |
| Search Fee (Split 50/50) | 159.30 | |
| Settlement Fee (Split 50/50) | 897.50 | |
| Wire Fees for Closing Disbursements | 127.44 | |
| **Taxes and Other Governmental Fees** | | |
| Recording Fees - RRSBank Sats (7) to Simplifile | 210.00 | |
| Recording Fees - WDC Sats (4) to Simplifile | 120.00 | |
| Recording Fee - Release of Lis Pendens to Simplifile | 30.00 | |
| **Miscellaneous Charges** | | |
| Administrative Expenses/CRO to Point CPA | 15,430.00 | |
| Administrative Expenses/CRO to Michael Schmitz Co | 1,933.75 | |
| Administrative Expenses/Debtor's Attorney Fees to VerStandig Law Firm | 26,042.05 | |
| Administrative Expenses/Debtor's Attorney Fees to VerStandig Law Firm | 10,660.00 | |
| Transfer to Post-Confirmation Trust to Red River State Bank | 250,000.00 | |
| **Subtotals** | **8,840,000.00** | **8,840,000.00** |
| **Balance Due TO/FROM Seller** | **0.00** | **0.00** |

**Seller's Settlement Statement**

| | Seller | |
|---|---|---|
| | **Debit** | **Credit** |
| **Totals** | **8,840,000.00** | **8,840,000.00** |

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement. We/I authorize First Dakota Title to cause the funds to be disbursed in accordance with this statement.

SELLER:

Michael T. Schmitz, soley in his capacity as Chief Restructuring Officer for the bankruptcy estate of Generations on 1st, LLC, Bk. Case No 25-30002

By: Michael T. Schmitz

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

First Dakota Title

BY:
Nancy J. Hughes